Richard G. Grotch, Esq. - SBN 127713
**CODDINGTON, HICKS & DANFORTH**
**A Professional Corporation, Lawyers**
555 Twin Dolphin Drive, Suite 300
Redwood City, California 94065-2133
Tel. (650) 592-5400
Fax. (650) 592-5027
Email: rgrotch@chdlawyers.com

**ATTORNEYS FOR** Defendants
UNITED AIR LINES, INC.,
UAL CORPORATION and DAVID NEVINS

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAHINAH IBRAHIM, an individual, | No. C 06-0545 WHA |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS [FRCP 12(b)(1); 12(b)(6)] |
| vs. | |
| DEPARTMENT OF HOMELAND SECURITY; et al., | Date: May 25, 2006<br>Time: 8:00 a.m. |
| Defendants. | Courtroom: 9 – 19th Floor |
| | Honorable William H. Alsup<br>United States District Judge |

---

Memorandum of Points and Authorities in Support of Motion
to Dismiss – No. C 06-0545 WHA

# TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    This Court Lacks Subject Matter Jurisdiction Over The Claims Asserted By Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    Even If This Court Did Have Subject Matter Jurisdiction, Plaintiff Has Not Stated And Cannot State Claims Against United Upon Which Relief May Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

           1.    The Allegations of the Complaint Do Not Implicate United . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

           2.    Plaintiff's "First Cause of Action" Is Fatally Vague and Uncertain . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

           3.    Plaintiff Cannot Allege In Good Faith That United Violated Her Rights to Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

           4.    Plaintiff Cannot Allege In Good Faith That United Violated Her Rights to Equal Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

           5.    Plaintiff Cannot Allege In Good Faith That United Violated Her Fourth Amendment Right Against Unreasonable Search and Seizure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

           6.    Plaintiff Cannot Allege In Good Faith That United Violated Her First Amendment Rights to Freedom of Religion and Association . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

           7.    Plaintiff Has No Basis For Claims Against United Under California Civil Code §§ 52.1 or 52.3 . . . . . . . . . . . . . . . . . . . . . . . . 12

           8.    Plaintiff Has No Basis For A Claim Against United For False Imprisonment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

           9.    Plaintiff Has No Basis For A Claim Against United For Infliction of Emotional Distress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                a.    Intentional Infliction of Emotional Distress . . . . . . . . . . . . . . . 13

                b.    Negligent Infliction of Emotional Distress . . . . . . . . . . . . . . . 14

           10.  Plaintiff Has No Basis For An Equitable Claim Against United . . . . . . 14

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**CODDINGTON, HICKS & DANFORTH**
A Professional Corp., Lawyers
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

Memorandum of Points and Authorities in Support of Motion to Dismiss – No. C 06-0545 WHA

i

# TABLE OF AUTHORITIES

*Cases*

*Averbach v. Vnescheconombank,*
    280 F.Supp.2d 945 (N.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Brown v. Department of Corrections,*
    132 Cal.App.4th 520, 33 Cal.Rptr.3d 754 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*City and County of San Francisco v. Ballard,*
    136 Cal.App.4th 381, 39 Cal.Rptr.3d 1 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*City & County of San Francisco v. Market St. Ry. Co.,*
    95 Cal. App. 2d 648, 213 P.2d 780 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cochran v. Cochran,*
    65 Cal.App.4th 488, 76 Cal.Rptr.2d 540 (1998) . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Fermino v. Fedco, Inc.,*
    7 Cal.4th 701, 30 Cal.Rptr.2d 18 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gilmore v. Ashcroft,*
    2004 WL 603530 (N.D.Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

*Gilmore v. Gonzales,*
    435 F.3d 1125 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5-8

*Green v. Transportation Security Administration,*
    351 F.Supp.2d 1119 (W.D. Wash. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6-8

*Greenwood v. Fed. Aviation Admin.,*
    28 F.3d 971 (9th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Havas v. Thornton,*
    609 F.2d 372 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Huggins v. Longs Drug Stores California, Inc.,*
    6 Cal.4th 124, 24 Cal.Rptr.2d 587 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Jones v. Kmart,*
    17 Cal.4th 329, 70 Cal.Rptr.2d 844 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*NL Industries, Inc. v. Kaplan,*
    792 F.2d 896 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Potter v. Firestone Tire & Rubber Co.,*
    6 Cal.4th 965, 25 Cal.Rptr.2d 550 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Tur v. Fed. Aviation Admin.,*
    104 F.3d 290 (9th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**CODDINGTON, HICKS & DANFORTH**
A Professional Corp., Lawyers
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

Memorandum of Points and Authorities in Support of Motion to Dismiss – No. C 06-0545 WHA

ii

*Statutes*

49 U.S.C. § 114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 8

49 U.S.C. § 46110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8-9, 15

*Regulations*

49 C.F.R. § 1520.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

49 C.F.R. § 1544.103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

49 C.F.R. § 1544.305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

**CODDINGTON, HICKS**
**& DANFORTH**
**A Professional Corp., Lawyers**
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

Defendants UNITED AIR LINES, INC. (erroneously sued herein as "United Airlines"), UAL CORPORATION and DAVID NEVINS[1] respectfully submit the following memorandum of points and authorities in support of their motion to dismiss plaintiff's complaint.

# I.

# **INTRODUCTION**

In the wake of the terrorist attacks of September 11, 2001, Congress enacted the Aviation and Transportation Security Act ("ATSA") on November 19, 2001. The aim was to "improve aviation security." P.L. 107-71, 2001 § 1447. The ATSA directs the Under Secretary of Transportation for Security, *inter alia*, to establish procedures for notifying airlines "of the identity of individuals known to pose, or suspected of posing, a risk of air piracy or terrorism or a threat to airline or passenger safety." 49 U.S.C. § 114(h)(2).

The Under Secretary must also adopt procedures "*requiring* air carriers - (A) to use [such] information... to identify individuals on passenger lists who may be a threat to civil aviation or national security; and (B) if such an individual is identified, [to] notify appropriate law enforcement agencies, prevent the individual from boarding an aircraft, or take other appropriate action with respect to that individual." *Id.* § 114(h)(3) (emphasis added).

Like others before her, the plaintiff in this case takes issue with the "administration, management and implementation of" such passenger lists, including a list known generally as the "No-Fly List." And, like those who preceded her in attacking certain of the security measures implemented as part of the ATSA, the plaintiff in this case has asserted challenges which are substantively without merit, in a forum which is without the subject matter jurisdiction to entertain them.

With respect to United, plaintiff's challenges to the "administration, management and implementation of the 'No-Fly List'" are especially unmoving. That is because even she admits that "airlines are *required* to check their passenger lists against this No-Fly watchlist (complaint at ¶ 16) (emphasis added) and that "[t]he 'no-fly' list contains names of people which airlines are *prohibited*

---

[1] Except where required for purposes of clarity, these three defendants are referred to collectively herein as "United").

CODDINGTON, HICKS
& DANFORTH
A Professional Corp., Lawyers
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

Memorandum of Points and Authorities in Support of Motion to Dismiss – No. C 06-0545 WHA

1

from transporting" (*id.* at ¶ 33) (emphasis added).[2]

## II.

## STATEMENT OF THE CASE

According to her complaint, the plaintiff is a Malaysian citizen, a Muslim and an individual who "has no criminal record and no ties whatsoever to any terrorist activity." (Complaint at ¶ 38). On January 2, 2005, she was scheduled to fly with her 14 year old daughter from San Francisco to Kuala Lumpur via Hawaii. (*Id.* at ¶¶ 37, 38, 40).

The allegations relating to United are few in number, and benign in nature. Specifically, the plaintiff maintains only that:

- She was scheduled to leave on a United Airlines flight from SFO at 9:00 a.m. (*id.* at ¶ 40);

- As she was checking in, she informed United of certain medical complications and requested wheelchair assistance to the gate (*id.*);

- During the check-in process, David Nevins, a United employee, approached her and asked to see her tickets; and

- Mr. Nevins thereafter called the San Francisco Police Department ("SFPD") and informed them that the plaintiff was on the "no-fly list" (*id.* at ¶ 41).[3]

---

[2] It should be noted, at the outset, that with a few narrow exceptions federal law prohibits the disclosure of Sensitive Security Information ("SSI") related to commercial air travel. The Under Secretary has defined SSI to include "[a]ny security program or security contingency plan issued, established, required, received, or approved by DOT or DHS, including.... [a]ny aircraft operator or airport operator security program" and "[a]ny Security Directive.... [i]ssued by TSA." 49 C.F.R. § 1520.5(b)(1)(i), (b)(2)(i). Aircraft operators such as United are required to "[r]estrict the distribution, disclosure, and availability of information contained in the security program to persons with a need-to-know." 49 C.F.R. § 1544.103(b)(4). Because of the strict prohibitions relating to disclosure of SSI, the information contained in this memorandum is limited to that which is already in the public record.

[3] This is, after all, precisely what federal law required. Recall that by statute, the Under Secretary is mandated, in consultation with other appropriate Federal agencies and air carriers, to establish policies and procedures requiring air carriers – (A) to use information from government agencies to identify individuals on passenger lists who may be a threat to civil aviation or national security; and (B) ***if such an individual is identified, notify appropriate law enforcement agencies***, prevent the individual from boarding an aircraft, or take other appropriate action with respect to that individual. 49 U.S.C. § 114(h)(3) (emphasis added).

Moreover, California Civil Code § 47 gives all persons the right to report crimes to the police, *even* if the report is made in bad faith. *Brown v. Department of Corrections,* 132 Cal.App.4th 520, 525-526, 33 Cal.Rptr.3d 754 (2005). Here, the allegations support the inference that the report was made in *good faith*. A communication concerning possible wrongdoing, made to an official governmental agency such as a local police department, and which communication is designed to prompt action by that entity, is as much a part of an "official proceeding" as a communication made after an official investigation has commenced. As such, it is

(continued...)

CODDINGTON, HICKS
& DANFORTH
A Professional Corp., Lawyers
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

Memorandum of Points and Authorities in Support of Motion to Dismiss – No. C 06-0545 WHA

2

Significantly, plaintiff does *not* allege that Mr. Nevins made a false report to the SFPD, much less that he did so with malice. Indeed, to the contrary, in the complaint, the plaintiff implies that Mr. Nevins' report to the SFPD was completely truthful and altogether accurate. (See *id.* at ¶¶ 41, 46, 58). (United does not – and cannot – state whether or not the plaintiff was or was not on the No-Fly List because that information constitutes SSI; however, United assumes the truth of the plaintiff's allegations for purposes of this motion).

All of the remaining allegations in the complaint relate to claimed acts and omissions of parties other than United. In the main, those additional allegations are that the SFPD responded to Mr. Nevins' call, checked the no-fly list, and called "the TSIS in Washington, D.C." The SFPD was told "to not allow [plaintiff] on the flight, to contact the FBI, and to detail [plaintiff] for questioning." (*Id.* at ¶ 41). The plaintiff stood and waited, in pain, for 90 minutes before being arrested and handcuffed. (*Id.* at ¶¶ 42-43). She was then taken to the police station without being told why she was being arrested. (*Id.* at ¶ 43). At the police station, she was searched; the search included the removal of the plaintiff's hijab, in public view. (*Id.* at ¶ 44). Still in pain, the plaintiff was placed in a holding cell at the police station for approximately two hours. (*Id.* at ¶ 45). After paramedics were summoned, plaintiff was given her medication. (*Id.*)

On information and belief, the plaintiff further alleges that at approximately 11:15 a.m., the FBI requested that the SFPD release her. She "was given no information as to why her name was on the No-Fly List." (*Id.* at ¶ 46). And, certain (unidentified) defendants allegedly represented to her that her name "had been removed from the No-Fly List." (*Id.* at ¶ 47). She alleges that the following day, however, she "discovered that she was still on the No-Fly List when she attempted to fly again." (*Id.*) After some unspecified "effort," she was allowed to fly to Kuala Lumpur. En route, she "was publicly subjected to enhanced searches before boarding any flights." (*Id.*)

///
///

---

[3](...continued)
*absolutely privileged.* Statements made to prompt an official investigation that may result in the initiation of judicial proceedings fall within the section 47(b) privilege as well. *Id.*

CODDINGTON, HICKS
& DANFORTH
A Professional Corp., Lawyers
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

Memorandum of Points and Authorities in Support of Motion to Dismiss – No. C 06-0545 WHA

3

According to the plaintiff, she "brings this lawsuit to challenge defendants' administration, management and implementation of the 'No-Fly List'." (*Id.* at ¶ 31). She does not – and cannot – allege, however, that United had (or has) anything at all to do with the "administration, management and implementation" of the list. In fact, to the contrary, she alleges that the list is one which is "circulated to commercial airlines . . . with *instructions* to detain and question any passenger whose name matches or is similar to one on the No-Fly List." (*Id.*) (Emphasis added). She concedes, as well, that the no-fly list "contains names of people which airlines are *prohibited* from transporting" (*id.* at ¶ 33) (emphasis added) and that other federal defendants "*instruct* recipients of the No-Fly List to detain and interrogate any individual who checks in for a flight whose name is similar or identical to a name on the No-Fly List." (*Id.* at ¶ 35) (Emphasis added).

## III.

## ARGUMENT

A. <u>This Court Lacks Subject Matter Jurisdiction Over The Claims Asserted By Plaintiff</u>

The government's No-Fly and Selectee lists are Security Directives issued by the Transportation Security Administration ("TSA") pursuant to 49 U.S.C. § 114(l)(2)(A) (2005). See *Gilmore v. Gonzales,* 435 F.3d 1125, 1131 n.4 (9th Cir. 2006). Section 114 authorizes the TSA Under Secretary to issue Security Directives without providing notice or an opportunity for comment in order to protect transportation security. (*Id.*) The Security Directive that established the No-Fly List, in particular, is an "order" within the meaning of 49 U.S.C. § 46110. See *Green v. Transportation Security Administration*, 351 F.Supp.2d 1119, 1121 (W.D. Wash. 2005) ("TSA has established Security Directives relating to two groups of individuals who have been assessed to pose a risk to aviation safety[; t]he first group, identified on a 'No-Fly List,' consists of individuals who are prohibited from flying altogether.")

For purposes of United's motion, the fact that the No-Fly List is a federal Security Directive is significant for at least reasons. First, as a substantive matter, compliance with Security Directives by air carriers such as United ("regulated air carriers") is mandatory. *Id.* According to what plaintiff has alleged, United was merely doing what it was legally *compelled* to do. Liability should not, therefore, attach to United's act of calling the police under the circumstances averred and providing

**CODDINGTON, HICKS & DANFORTH**
A Professional Corp., Lawyers
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

Memorandum of Points and Authorities in Support of Motion to Dismiss – No. C 06-0545 WHA

4

1  what plaintiff alleges to have been a truthful report.

2  Second, because the No-Fly List is established in a Security Directive, and since this Security Directive is a final order issued by the TSA, any action for judicial review must be filed with the Court of Appeals. *Green, supra,* 351 F.Supp.2d at 1128. This is because Congress enacted a special review statute for final orders of the Secretary of Transportation promulgated under the Federal Aviation Act. *Id.* at 1123. The applicable statute – 49 U.S.C. § 46110(a)[4] – provides, in part, as follows:

> [A] person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Under Secretary of Transportation for Security with respect to security duties and powers designated to be carried out by the Under Secretary or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator) in whole or in part under this part, part B, or subsection (l) or (s) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued.

In *Gilmore v. Ashcroft,* 2004 WL 603530 (N.D.Cal.), the plaintiff filed a complaint in this Court challenging the constitutionality of several security measures, including the No-Fly and Selectee lists. Much like the plaintiff in the instant case, Mr. Gilmore alleged that these government security policies and provisions violated his right to due process, right to travel, right to be free from unreasonable searches and seizures, right freely to associate, and right to petition the government for redress of grievances. Apart from finding that Mr. Gilmore lacked standing to challenge the No-Fly list and "other 'watchlists,'" this Court found that "[t]he Courts of Appeals have exclusive jurisdiction to review orders issued by the FAA and the TSA," including the Security Directives establishing the challenged lists. *Id.* at **2-3.

Mr. Gilmore appealed. *Gilmore v. Gonzales, supra,* 435 F.3d 1125. The Ninth Circuit conducted an *in camera* review of documentation submitted to the Court under seal and agreed with this Court that the TSA Security Directive that requires airline operators to enforce the policy of

---

[4]This statute was previously codified at 49 U.S.C. § 1486(a).

**CODDINGTON, HICKS & DANFORTH**
A Professional Corp., Lawyers
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

Memorandum of Points and Authorities in Support of Motion to Dismiss – No. C 06-0545 WHA

5

requiring passengers to show identification or undergo secondary screening is "an 'order' within the meaning of § 46110(a)." *Id.* at 1133. The Court of Appeals "also determine[d] that the Security Directive was issued by an appropriate government official and under proper authority as required by § 46110(a)." *Id.* As such, this court – a district court – lacked jurisdiction to hear Mr. Gilmore's challenges to the identification policy. *Id.*

The *Gilmore* case is apposite. But, the case of *Green v. Transportation Security Administration, supra*, is on all fours with the case at bar. Indeed, a comparison of the complaints in the *Green* case and the case at bar reveals that in many instances, allegations were lifted directly – or very nearly so – from the complaint in former and placed into the complaint in the latter. (See the accompanying Request for Judicial Notice at Exhibit "A").

The *Green* case was brought in the Western District of Washington (Seattle) as a class action. The suit was brought "to challenge the . . . TSA's administration and management of the 'No-Fly List,' a list circulated to commercial airlines and security personnel with instructions to detain and question any passenger whose name matches or is similar to one on the No-Fly List." (Green Complaint at ¶ 1).[5]

Like the plaintiff here, the plaintiffs in *Green* alleged they were innocent passengers with no links to terrorist activity, but had names similar or identical to those on the No-Fly List. They complained about enhanced security screening measures to which they claim they were subjected and objected to the delays associated therewith. As here, the plaintiffs in *Green* also complained that information about the No-Fly List, including how names are added and removed, would not be disclosed to them.

The plaintiffs in *Green* alleged that the defendants' actions in maintenance, management, and dissemination of the No-Fly list were unconstitutional. Specifically, the plaintiffs alleged that the defendants "deprive[d] Plaintiffs of liberty and property interests protected by the Fifth Amendment" and "subjected [Plaintiffs] to unreasonable searches and seizures in violation of the Fourth

---

[5]Plaintiff's allegations in paragraph 31 of her complaint are virtually identical; really, the only substantive difference is that the plaintiff here challenges "implementation" of the No-Fly List in addition to "administration" and "management" of the list.

CODDINGTON, HICKS
& DANFORTH
A Professional Corp., Lawyers
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

Memorandum of Points and Authorities in Support of Motion
to Dismiss – No. C 06-0545 WHA

6

Amendment." The *Green* plaintiffs sought a declaratory judgment that the maintenance, management, and dissemination of the No-Fly List was unconstitutional, and sought to require the defendants to remedy what they maintained were due process and Fourth Amendment defects associated with the No-Fly List.

As United does here, the defendants in *Green* moved to dismiss the complaint for lack of subject matter jurisdiction. The defendants argued that the Security Directives are final orders issued by the TSA, and that any action for judicial review must be filed with the Court of Appeals in the first instance. In the alternative, they moved to dismiss plaintiffs' claims for failure to state a claim for which relief can be granted.

Like the Ninth Circuit would subsequently do in *Gilmore*, the district court in *Green* held that "[t]he Security Directives are 'orders' for the purposes of § 46110(a), and the courts of appeal have exclusive jurisdiction over Plaintiffs' claims relating to them. [Citation and footnote omitted] Thus, to the extent these Security Directives establish a No-Fly List of persons who are prohibited from flying, or create a Selectee List resulting in persons who will be selected for additional enhanced screening and resulting delays, this Court has no subject matter jurisdiction."

Both in *Green* and in *Gilmore*, the plaintiffs argued that even if the Security Directives were "orders" within the meaning of Section 46110, the district court nevertheless had jurisdiction because the plaintiffs were raising "broad constitutional challenges" to the Security Directives. The relevant inquiry is whether plaintiffs' claims (a) are "inescapably intertwined" with a review of the procedures and merits surrounding the Security Directives, or (b) raise broad constitutional challenges which do not require a review of the procedures and merits of the Security Directives themselves. If, as here, the challenge is inescapably intertwined with a review of the procedures and merits surrounding the Security Directives, then jurisdiction is solely with the courts of appeal. *Greenwood v. Fed. Aviation Admin.,* 28 F.3d 971, 975 (9th Cir.1994); *Tur v. Fed. Aviation Admin.,* 104 F.3d 290, 291-92 (9th Cir.1997). But, if the claims raise broad constitutional challenges that are not inescapably intertwined with the Security Directives, the district court would have jurisdiction to consider the issues raised notwithstanding the fact that they constitute orders within the meaning of § 46110.

**CODDINGTON, HICKS & DANFORTH**
A Professional Corp., Lawyers
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

Memorandum of Points and Authorities in Support of Motion to Dismiss – No. C 06-0545 WHA

7

In *Gilmore,* the Court of Appeals concluded that the plaintiff's "due process vagueness challenge is 'inescapably intertwined' with a review of the order because it squarely attacks the orders issued by the TSA with respect to airport security. Moreover, Gilmore's other claims are as-applied challenges as opposed to broad facial challenges. Given that they arise out of the particular facts of Gilmore's encounter with Southwest Airlines, these claims must be brought before the courts of appeals." 435 F.3d at 1133, n.9.

Similarly, in *Green,* the district court found that "[p]laintiffs' challenge to the adoption, maintenance, and dissemination of the No-Fly List under the Fourth and Fifth Amendments is inescapably intertwined with a review of the procedures and merits surrounding the adoption of the No-Fly List." 351 F.Supp.2d at 1127. Because the plaintiffs' challenge would involve a direct challenge to the adoption and maintenance of the Security Directives, the district court did not have jurisdiction to consider these alleged constitutional challenges. The Court in *Green* also concluded that the:

> challenge to the heightened security measures under the Fourth Amendment is also inescapably intertwined with a review of the Security Directives. The TSA is required to 'identify individuals on passenger lists who may be a threat to civil aviation or national security,' and when such an individual is identified, to prevent him or her 'from boarding an aircraft' or 'take appropriate action ....' 49 U.S.C. § 114(h)(3). The TSA is authorized to issue Security Directives prescribing specific security measures when such measures "are necessary to respond to a threat assessment or a specific threat against civil aviation." 49 C.F.R. § 1544.305(a). Security Directives also include instructions to air carriers of the security procedures to be followed when individuals identified on the No-Fly List attempt to board commercial aircraft. *Id.*

Thus, the Court held that the plaintiffs' Fourth Amendment claims challenge the merits of the security and screening procedures mandated by the Security Directives, and any adjudication of the Fourth Amendment claims is inescapably intertwined with a review of the Security Directives. *Id.* at 1128.

Moreover, the plaintiffs asked the Court to remedy the alleged Fourth Amendment defects in the No-Fly List by issuing an injunction requiring defendants to modify or amend the challenged security and screening procedures. As such, the Fourth Amendment claims "necessarily would involve a review of the security and screening procedures mandated by the Security Directives, and

**CODDINGTON, HICKS & DANFORTH**
A Professional Corp., Lawyers
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

Memorandum of Points and Authorities in Support of Motion to Dismiss – No. C 06-0545 WHA

8

jurisdiction to challenge these issues is exclusively limited to the courts of appeal pursuant to statute. 49 U.S.C. § 46110 [citation omitted]." *Id.*

Only the TSA's Ombudsman Clearance Procedures – which established a voluntary procedure by which individuals could attempt to expedite future check-in procedures, were found to be within the ambit of the district court's subject matter jurisdiction. *Id.*

In the case at bar, the plaintiff challenges the administration, management and implementation of the No-Fly List (complaint at ¶ 31), including the dissemination of updated versions of the list (*id.* at ¶ 35) and the breadth of the audience to whom the information is distributed (*id.*). Plaintiff complains about how the administration, management, implementation and dissemination of the No-Fly List subjects innocent passengers to stigma, humiliation, interrogation, delay, enhanced searches, detention, travel impediments and, sometimes, physical arrest. (*Id.* at ¶ 36). Thus, her claims, including her position that application of the No-Fly List to *her* violated *her* constitutional rights, are – each and all – inescapably intertwined with a review of the Security Directives. As such, this Court lacks subject matter jurisdiction to adjudicate those claims.

B. <u>Even If This Court Did Have Subject Matter Jurisdiction, Plaintiff Has Not Stated And Cannot State Claims Against United Upon Which Relief May Be Granted</u>

    1. <u>The Allegations of the Complaint Do Not Implicate United</u>

As demonstrated above, the allegations of plaintiff's complaint relate almost entirely to acts and omissions attributed to defendants other than the United defendants. United is alleged to have asked plaintiff to see her ticket, but that is a routine request made of every customer who checks in for a flight, and there is nothing alleged to have been amiss about this particular request. Plaintiff alleges that after looking at her ticket, Mr. Nevins phoned the SFPD. But, again, there is no allegation that the call was made maliciously or for any improper reason; moreover, according to the complaint, what Mr. Nevin related to the SFPD was truthful and accurate information. This is the sum and substance of the actions attributed by plaintiff to the United defendants and these actions were not even remotely improper, much less actionable.

///

**CODDINGTON, HICKS & DANFORTH**
**A Professional Corp., Lawyers**
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

Memorandum of Points and Authorities in Support of Motion to Dismiss – No. C 06-0545 WHA

9

Moreover, as the plaintiff alleges commercial airlines which are provided with the No-Fly List are given "instructions to detain and question any passenger whose name matches or is similar to one on the No-Fly List."[6] (Complaint at ¶ 31). She alleges, too, that "[t]he 'no-fly' list contains names of people which airlines *are prohibited from transporting*." (*Id.* at ¶ 33) (emphasis added). There is – and can be – no allegation that United, as an aircraft operator subject to the affirmative commands of the TSA, did anything which marked a departure from that which it was required to do.

Neither the facts and circumstances as alleged, or those which could in good faith be alleged, can support a viable claim against the United defendants.

2.  Plaintiff's "First Cause of Action" Is Fatally Vague and Uncertain

In her first cause of action, plaintiff alleges, in the vaguest of terms, that the defendants deprived her "of her rights under the United States Constitution as set forth under the First, Fourth, Fifth and Fourteenth Amendments..." (Complaint at ¶ 50). She does not allege, however, which specific rights were infringed by which particular defendant as a result of which specified act or omission. All those essential details are left to guesswork – or to subsequent causes of action. Indeed, because the second through sixth causes of action appear to present these same constitutional claims, with a bit more detail, the "first cause of action" appears to be superfluous. However, to the extent it is regarded as attempting to state any actionable claim, given the vagueness of the allegations, United can do no better than to incorporate its positions with respect to the second through sixth causes of action as discussed below.

///

///

///

---

[6] Because of SSI implications, United cannot describe whatever instructions accompany the No-Fly List. Two things can be said, however. First, for purposes of a motion to dismiss, plaintiff's allegations are accepted as true. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). Second, the TSA regulations do mandate what aircraft operators are required to do, including the obligation to maintain approved security programs and comply with each Security Directive issued to the aircraft operator by TSA, within the time prescribed in the Security Directive for compliance." 49 C.F.R. § 1544.305(b) (2005).

**CODDINGTON, HICKS & DANFORTH**
A Professional Corp., Lawyers
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

Memorandum of Points and Authorities in Support of Motion to Dismiss – No. C 06-0545 WHA

10

### 3. Plaintiff Cannot Allege In Good Faith That United Violated Her Rights to Due Process

For the reasons discussed above, this Court does not have jurisdiction to consider plaintiff's claims relating to the administration and maintenance of the No-Fly List or any resulting liberty or property interest protected by the Fifth Amendment. However, even if the Court did have subject matter jurisdiction, plaintiff cannot state a viable claim against United for deprivation of her due process rights.[7]

Plaintiff's due process claim is predicated upon her allegation, on information and belief, that "the placement of names on the No-Fly List is done in an arbitrary and capricious manner and without any factual findings or rational basis." (Complaint at ¶ 57). She does not allege, however, that United had (or has) anything at all to do with placing names on the No-Fly List. In fact, she alleges just the opposite – that the "list is circulated to commercial airlines and security people with instructions" on its use. (*Id.* at ¶ 31; see also *id.* at ¶ 35). She alleges that it is the TSA which, in November 2001, "assumed responsibility for compiling and administering these directives." (*Id.* at ¶ 33). In contrast, she *does not* allege – and cannot proffer *bona fide* allegations – that United had any responsibility for this activity.

### 4. Plaintiff Cannot Allege In Good Faith That United Violated Her Rights to Equal Protection

The shortcomings in the facts alleged and capable of being alleged are as destructive to an equal protection claim against United as they are to a due process claim against the airline. The equal protection cause of action is founded upon plaintiff's claim that she was arbitrarily and capriciously placed on the No-Fly List. (Complaint at ¶ 65). As discussed above, however, while plaintiff seems to allege that she believes she was on the No-Fly list, she does not – and cannot – allege that United placed her name on the No-Fly List, much less that it did so in an arbitrary or capricious manner. Nor has plaintiff alleged that United arrested her for any reason at all, much less "based on her religious beliefs and her national origin as a citizen of Malaysia." (*Id.*) There just

---

[7]As there was in *Gilmore*, there is also a genuine question here "about the private defendant's [i.e., the airlines'] liability as a state actor." *Gilmore v. Ashcroft,* 2004 WL 603530 at *2. For her part, plaintiff does not allege what qualifies United as a state actor for purposes of her suit.

Memorandum of Points and Authorities in Support of Motion to Dismiss – No. C 06-0545 WHA    11

CODDINGTON, HICKS
& DANFORTH
A Professional Corp., Lawyers
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

simply are no facts which would support a claim that any of the United defendants abridged plaintiff's equal protection rights.

     5.     Plaintiff Cannot Allege In Good Faith That United Violated Her
<u>Fourth Amendment Right Against Unreasonable Search and Seizure</u>

Like her other constitutional challenges, her claim of unreasonable search and seizure in violation of the fourth amendment does not pertain to United. This cause of action is predicated on her allegation that she was "placed . . . on the No-Fly List," "arrested," and "searched . . . without any probabl[e] cause or an arrest or search warrant." (*Id.* at ¶ 72). United is not alleged to have done any of these things and did not in fact do any of these things. Accordingly, there is no basis for a fourth amendment claim against United.

     6.     Plaintiff Cannot Allege In Good Faith That United Violated Her
<u>First Amendment Rights to Freedom of Religion and Association</u>

The plaintiff's fifth cause of action rests upon a claim, based on information and belief, that individuals are placed on the No-Fly List "based on their religious beliefs or appearance." (*Id.* at ¶ 79). Similarly, her sixth cause of action is premised on the notion that individuals are placed on the No-Fly List "based on their association with the Muslim community or the Islamic religion, and based on her [sic] national origin." (*Id.* at ¶ 86). Presumably the inference is that if these associations by themselves land a person on the No-Fly List, then the person would eschew such associations.

But, again, since United did not place names on the No-Fly List, and is not alleged to have done so, there is no basis for a claim that United did anything to violate plaintiff's first amendment rights.

     7.     Plaintiff Has No Basis For Claims Against United Under
<u>California Civil Code §§ 52.1 or 52.3</u>

Civil Code § 52.1 "[requires] an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *City and County of San Francisco v. Ballard*, 136 Cal.App.4th 381, 408, 39 Cal.Rptr.3d 1 (2006), quoting *Jones v. Kmart*, 17 Cal.4th 329, 334, 70 Cal.Rptr.2d 844 (1998). Here, the plaintiff has not alleged and cannot allege that United engaged in any conduct which even remotely reaches the level of a threat of violence or coercion.

**CODDINGTON, HICKS & DANFORTH**
**A Professional Corp., Lawyers**
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

Memorandum of Points and Authorities in Support of Motion to Dismiss – No. C 06-0545 WHA    12

Nor is there any basis for a claim against United under Section 52.3. That statute prohibits government authorities or those acting on behalf of government authorities from engaging in a pattern or practice of conduct by law enforcement officers that deprives any person of rights, privileges or immunities secured or protected by federal or state law or by the U.S. Constitution. Apart from the fact that United is not a law enforcement officer and was not acting in that capacity,[8] as shown above, United is not alleged to have done anything to deprive the plaintiff of her rights under federal or state law or the federal Constitution.

8. Plaintiff Has No Basis For A Claim Against United For False Imprisonment

Here, too, it appears that plaintiff seeks to state this cause of action only against the "police officers" who she avers "maliciously seized and arrested [her], without a warrant, or other legal process." (*Id.* at ¶ 107). There is in any event no basis for a claim against United for false imprisonment and by all appearances no such claim has been alleged against those defendants. The tort of false imprisonment consists of the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short. *Fermino v. Fedco, Inc.,* 7 Cal.4th 701, 715, 30 Cal.Rptr.2d 18 (1994). Fatal to her claim is the fact that plaintiff does not – and cannot – allege that United did anything to confine her at any time.

9. Plaintiff Has No Basis For A Claim Against United For Infliction of Emotional Distress

a. Intentional Infliction of Emotional Distress ("IIED")

A claim for IIED depends upon allegations and proof that defendants engaged in outrageous conduct, that defendants intended to cause plaintiff emotional distress, that plaintiff actually suffered severe emotional distress and that the outrageous conduct of defendants actually or proximately caused the emotional distress suffered by plaintiff. *Cochran v. Cochran,* 65 Cal.App.4th 488, 494, 76 Cal.Rptr.2d 540 (1998); *Averbach v. Vnescheconombank,* 280 F.Supp.2d 945 (N.D. Cal. 2003).

///

///

---

[8]Plaintiff *seems to* concede that this claim does not pertain to United as she makes reference to "defendants, police officers, [who] arrested plaintiff without a warrant or other legal process." (Complaint at ¶ 99).

CODDINGTON, HICKS & DANFORTH
A Professional Corp., Lawyers
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

Memorandum of Points and Authorities in Support of Motion to Dismiss – No. C 06-0545 WHA

13

1 Plaintiff must plead and ultimately prove that defendants' acts were so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Cochran,* 65 Cal.App. at 494. Here, the only acts attributable to United were the following: (1) asking to see plaintiff's flight ticket and then (2) phoning the SFPD to make what even she seems to allege was a truthful report. That conduct cannot be fairly characterized as anything but proper; certainly it was not outrageous. And, as shown in footnote 3, above, the conduct was also absolutely privileged. All the acts described in the complaint as having caused plaintiff severe emotional distress and mental suffering were the acts of defendants other than United. (See Complaint at ¶¶ 115(a)-115(g)).

    b. <u>Negligent Infliction of Emotional Distress ("NIED")</u>

NIED does not exist as an independent tort. *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 984-985, 25 Cal.Rptr.2d 550 (1993). Rather, NIED is simply a "form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply." *Huggins v. Longs Drug Stores California, Inc.*, 6 Cal.4th 124, 129, 24 Cal.Rptr.2d 587 (1993). As a general matter, "there is no duty to avoid negligently causing emotional distress to another...." *Potter, supra,* 6 Cal.4th at 984. Therefore, "unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of *some other legal duty* and the emotional distress is proximately caused by that breach of duty." *Id.* at p. 985, emphasis added.

Here, again, it does not appear that plaintiff has even attempted to state a NIED claim against United. All the acts which allegedly caused plaintiff emotional distress are attributable to others. (See Complaint at ¶¶ 120(a)-120(g)). Moreover, plaintiff cannot plead, much less prove, that United breached a duty of even ordinary care to the plaintiff which caused her to suffer serious emotional distress. In the absence of those essential allegations, plaintiff's final tort claim against United fails.

    10. <u>Plaintiff Has No Basis For An Equitable Claim Against United</u>

Through her twelfth and final cause of action, plaintiff apparently seeks "a declaration that [the] maintenance, management, and dissemination of the No-Fly list are unconstitutional under the First, Fourth, Fifth and Fourteenth Amendments." (Prayer at ¶ d). She also seeks "an injunction requiring defendants to remedy immediately the Constitutional violations in the maintenance,

**CODDINGTON, HICKS & DANFORTH**
**A Professional Corp., Lawyers**
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

Memorandum of Points and Authorities in Support of Motion to Dismiss – No. C 06-0545 WHA   14

management, and dissemination of the No-Fly list. (*Id.* at ¶ e). Finally, she seeks an injunction requiring the removal of her name from the No-Fly List. (*Id.* at ¶ f).

Because United neither maintains, manages, disseminates or has the ability to remove names from the No-Fly List, there is no basis whatsoever for these equitable claims to be maintained against United. An injunction is not the proper remedy to prevent a person from doing an act that he, she or it has never undertaken or threatened to undertake. *City & County of San Francisco v. Market St. Ry. Co.,* 95 Cal. App. 2d 648, 655, 213 P.2d 780 (1950).

## IV.

## **CONCLUSION**

Because the No-Fly List is the product of a Security Directive which constitutes an order for purposes of 49 U.S.C. § 46110, and since plaintiff's claims are inescapably intertwined with a review of the procedures and merits surrounding the Security Directive, this Court lacks subject matter jurisdiction over plaintiff's dispute. The complaint should therefore be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Even if this Court did have a proper basis upon which to exercise subject matter jurisdiction, however, the plaintiff has not alleged, and cannot in good faith allege, claims against United upon which relief can properly be granted. For that reason, plaintiff's claims against United Air Lines, Inc., UAL Corporation and David Nevins should be dismissed. Because amendment would be futile, the claims against these defendants should be dismissed with prejudice. See *Havas v. Thornton*, 609 F.2d 372, 376 (9th Cir. 1979).

For all of the foregoing reasons, the motion of the United defendants should be granted.

Dated: April 17, 2006                          Respectfully submitted,

CODDINGTON, HICKS & DANFORTH

/s/

By:_____
    Richard G. Grotch
    Attorneys for Defendants
    United Air Lines, Inc., UAL Corporation
    and David Nevins

**CODDINGTON, HICKS & DANFORTH**
A Professional Corp., Lawyers
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

Memorandum of Points and Authorities in Support of Motion to Dismiss – No. C 06-0545 WHA      15