1  JAMES McMANIS (40958)]
2  MARWA ELZANKALY (206658)
   KEVIN HAMMON (232360)
3  CHRISTINE PEEK (234573)
   McMANIS, FAULKNER & MORGAN
4  A Professional Corporation
   50 W. San Fernando, 10th Floor
5  San Jose, CA  95113
   Telephone:    (408) 279-8700
6  Facsimile:    (408) 279-3244

7  Attorneys for Plaintiff, Rahinah Ibrahim

8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12

13   RAHINAH IBRAHIM, an individual,        CASE NO.  C 06 0545 WHA

14          Plaintiff,                      **PLAINTIFF, RAHINAH IBRAHIM'S,
                                            OPPOSITION TO MOTIONS TO
15   v.                                     DISMISS OF UNITED DEFENDANTS,
                                            JOHN BONDANELLA, AND FEDERAL
16                                          DEFENDANTS**
     DEPARTMENT OF HOMELAND
17   SECURITY, et al.,                      Date:   June 29, 2006
                                            Time:   8:00 a.m.
18          Defendants.                     Crtrm:  9 – 19th Floor

19

20                                          The Hon. William Alsup

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

STATEMENT OF FACTS .......................................................................................................... 2

      I.        Plaintiff, Rahinah Ibrahim ................................................................... 2

      II.      The United Defendants ........................................................................ 2

      III.    The Federal Defendants ...................................................................... 3

           A. The DHS, FAA and FBI ............................................................... 3

           B. The TSA ........................................................................................ 3

           C. The TSC ........................................................................................ 4

      IV.    Defendant, John Bondanella ............................................................... 5

      V.      The Events of January 2, 2005 ............................................................ 5

LEGAL ARGUMENT ................................................................................................................ 8

      I.        Ibrahim Need Only State "a Short And Plain Statement" Of Her Claims ............. 8

      II.      49 USC § 46110 does not divest this Court of Jurisdiction to Hear Ibrahim's Claims ............................................................................. 9

           A. Section 46110 Does Not Apply To Ibrahim's Claims Because They Do Not Implicate Any "Order Issued By The Secretary or Undersecretary Of Transportation ........................................................................... 10

           B. 49 U.S.C. section 46110(a) Does Not Apply To Ibrahim's Claims Because The TSA Did Not Place Ibrahim On Any Security Watchlist .......... 11

           C. Even If Ibrahim's Claims Implicate "Orders" Within The Context Of Section 46110(a), This Court Retains Jurisdiction Because Ibrahim's Claims Constitute "Broad Constitutional Challenges" ..................................... 13

           D. This Court Retains Jurisdiction Over Ibrahim's Claims To The Extent That Ibrahim's Incarceration and Visa Revocation Do Not Implicate Any "Order" Within The Context Of 49 U.S.C. section 46110(a) ................ 15

      III.    This Court Has Subject Matter Jurisdiction To Hear Ibrahim's State Law Claims Against The Federal Defendants ............................................. 16

      IV.    Plaintiff, Ibrahim, Has Article III Standing To Bring Her Claim ....................... 16

      V.      This Court Has Personal Jurisdiction Over Defendant, John Bondanella ........... 20

           A. Bondanella Is Subject To This Court's Jurisdiction Because His Wrongful Conduct Herein Occurred In California ......................................... 20

           B. Even If Bondanella's Wrongful Conduct Were Deemed Outside Of California, Bondanella Would Still Be Subject To This Court's Jurisdiction Because The Specific Jurisdiction Elements Are Satisfied ............................ 22

C. Even If Bondanella Had Identified Legitimate Jurisdictional Problems, The Court Should Allow Ibrahim To Conduct Discovery As To The Jurisdictional Facts Instead Of Dismissing Bondanella.................................. 28

VI.    Ibrahim Has Poroperly Stated Claims For Relief Against All Defendants Under 42 U.S.C. section 1983 And Under Her State Law Claims ...................... 29

A. Ibrahim Has Properly Stated A Claim Under 42 USC §1983 Against The Federal Defendants, John Bondanella and The United Defendants ......... 30

B. Ibrahim Has Properly Stated Claims Under Civil Code Sections 52.1 Against The United Defendants And Bondanella............................................ 35

C. Ibrahim Has Properly Stated A Claim Fro False Imprisonment Against The United Defendants And Bondanella ............................................. 37

D. Ibrahim Has Properly Stated A Claim For Intentional And Negligent Infliction Of Emotional Distress Against The United Defendants And Bondanella ....... 38

VII.   Ibrahim Has Properly Stated Claims For Declaratory And Injunctive Relief Against The United Defendants And Bondanella.................................. 39

CONCLUSION ......................................................................................................... 40

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir.1990) ........................................................ 19

4

*Alcorn v. Anbro Engineering, Inc*., 2 Cal.3d 493, 497-499 (1970) ............................................... 38

*America West Airlines, Inc. v. GPA Group, Ltd.,* 877 F.2d 793, 801 (9th Cir.1989) .................. 28

5

*Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 925 (9th Cir. 2001) ...................... 30

*Baker v. Cuomo* (2nd Cir. 1995) 58 F.3d 814, 818-819 ............................................................. 30

6

*Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) ............................................................. 22

*Behre v. Thomas*, 665 F. Supp. 89, 93 (D.N.H. 1987) ............................................................... 32

7

*Bennett v. Schmidt* (7th Cir. 1998) 153 F.3d 516, 518 ........................................................... 8, 29

8

*Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) ................... 30, 32, 33 34

*Blum v. Yaretsky,* 457 U.S. 991 1004 (1982) ............................................................................ 34

9

*Bordeaux v. Lynch*, 958 F. Supp. 77, 84 & n.6 (N.D.N.Y. 1997) ............................................... 32

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001) ........ 35

10

*Brown v. Department of Corrections* 132 Cal.App.4th 520 (2005) ....................................... 34, 38

11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ............................................... 20, 21

*Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722 (1961) ......................................... 35

12

*Cabesuela v. Browning-Ferris Industries of California, Inc*., 68 Cal.App.4th 101, 112 ............. 38

*Cabrera v. Martin*, 973 F.2d 735, 743-44 (9th Cir. 1992) ......................................................... 34

13

*Calder v. Jones,* 465 U.S. 783, 790 (1984). ............................................................................ 27

*Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128-129 (9th Cir. 1995) .............. 26

14

*Cauchi v. Brown* (ED CA 1999) 51 F.Supp.2d 1014, 1016 ........................................................ 29

15

*City & County of San Francisco v. Market St. Ry. Co*., 95 Cal.App.2d 648, 655 (1950) ............. 39

*Coalition of Airline Pilots Ass'n v. Federal Aviation Administration*,

16

    370 F.3d 1184, 1186 (D.C. Cir. 2004) .............................................................................. 10

*Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept.*

17

    387 F.Supp.2d 1084, 1102 (N.D. Cal. 2005) .................................................................. 37

Columbia National Resources, Inc. v. Tatum (6th Cir. 1995) 58 F.3d 1101, 1109 ...................... 30

18

Conley v. Gibson (1957) 355 US 41, 45-46 ............................................................................. 30

19

Conley v. Gibson, 255 U.S. 41, 47-48 (1957) ............................................................................. 8

*Core-Vent Corp. v. Nobel Indus*., 11 F.3d 1482, 1485 (9th Cir. 1993) ................................. 23, 25

20

*Crist v. Leippe*, 138 F.3d 801, 803 (9th. Cir. 1998) .................................................................. 13

*Davis v. Passman*, 442 U.S. 228, 243-49 (1979) ....................................................................... 33

21

*Easton v. Sutter Coast Hosp.*, 80 Cal.App.4th 485, 496 (2000) ................................................ 37

22

*Fletcher v. Western National Life Ins. Co*., 10 Cal.App.3d 376, 394 (1970) ............................. 38

*generally Stonecipher v. Bray*, 653 F.2d 398 (9th Cir. 1981) .................................................... 32

23

*Gibson v. United States*, 781 F.2d 1334, 1341-42 (9th Cir. 1986) ............................................. 33

*Gilligan v. Jamzo Develop. Corp.* (9th Cir. 1997) 108 F.3d 246, 249 ....................................... 29

24

*Gilmore v. Gonzales*, 435 F.3d 1125 (9th Cir. 2006) .......................................................... 10, 12

*Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996) .................................................... 26

25

*Graham v. Federal Emergency Management Agency*, 149 F.3d 997, 1003 (9th Cir.1998) ......... 18

*Gray & Co. v. Firstenberg Machinery Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990) ............. 20, 22

26

*Green v. Transportation Security Administration*, 351 F.Supp.2d 1119, 1126 (W.D. Wash. 2005)

27

    .............................................................................................................. 9, 12, 13, 25

*Haddock v. Board of Dental Examiners of Calif.* (9th Cir. 1985) 777 F.2d 462, 464 ........... 29, 32

28

*Hagberg v. California Federal Bank*, 32 Cal.4th 350, 360-61 (2004) ....................................... 38

*Hess v. Pawlowski*, 274 U.S. 352 (1927) ............................................................................ 20

*International Broth. of Teamsters v. Transportation Sec. Admin.*, 429 F.3d 1130, 1133 (D.C. Cir. 2005) ............................................................................................................................... 17

*Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1292 (9th Cir.1997) .................................. 19

*Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978) ......................................................... 31

*Johnson v. State of Calif.*, 207 F.3d 650, 653 (9th Cir 2000) ........................................... 1, 9

*Jones v. Kmart Corp.*, 17 Cal.4th 329 (1998) ........................................................................ 36

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,*
   507 US 163, 168-169 (1993)................................................................................................ 8

*Ley v. State*, for example, 114 Cal.App.4th 1297, 1306 (2004)............................................. 37

*Lillard v. Shelby County Board of Ed.*, 76 F.3d 716, 724 (6th Cir. 1996) ......................... 1, 9

*Lugar v. Edmundson Oil Co.*, 457 U.S. 922, 937, 939 (1982)..................................... 31, 34

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)...................................................... 17

*Lundgren v. Sup Ct.*, 111 Cal.App.3d 477, 484 (1980) ......................................................... 20

*Macy's Calif.  v. Superior Court* 41 Cal.App.4th 744, 748 (1995)........................................ 39

*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* 48 Cal.3d 583, 588 (1989)................. 39

*Marra v. Shea*, 321 F.Supp. 1140, 1143, (N.D. Cal. 1971) .................................................. 20

*Merritt v. Mackey*, 827 F.2d 1368, 1371 n.2 (9th Cir. 1987)................................................. 31

*Minger v. Green* (6th Cir. 2001) 239 F.3d 793, 799-801 ...................................................... 29

*Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661, 664 (1st. Cir. 1972)......................................... 21

*Murphy*, 460 F.2d at 664, *citing Hanson v. Deckla*, 357 U.S. 235, 253 (1958) ...................... 23

*North Carolina ex rel. Haywood v. Barrington*, 256 F. Supp. 2d 452, 460-61 (M.D.N.C. 2003) 32

*Panavision Int'l, L.P. v. Toeppen, Inc.*, 141 F.3d 1316, 1320 (9th Cir. 1998)................... 22, 26

*Pareto v. F.D.I.C.* (9th Cir. 1998) 139 F.3d 696, 699............................................... 30, 31

*Presbyterian Church v. United States*, 870 F.2d 518, 523-24 (9th Cir. 1989) ........................ 33

*Rosenblatt v. American Cyanamid Co.*, 86 S.Ct. 1, 3 (1965) ................................................ 20

*Roth v. Garcia Marquez*, 942 F.2d 617, 724 (9th Cir. 1991)................................................. 27

*Schwarzenneger v. Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004)...................... 23

*Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir. 1990) .......... 8

*Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) ........................................................ 26

*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (DC Cir. 2000).................................. 8

*State Rubbish etc. Assn. v. Siliznoff*, 38 Cal.2d 330, 336-339 (1952) ................................... 38

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)........................................................ 8

*Travers v. Louden*, 254 Cal.App.2d 926, 929 (1967) ............................................................ 39

*Ulrich v. City & County of San Francisco*, 308 F.3d 968........................................................ 14

*United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)..................................................... 16

*United States v. Redwood City* (9th Cir. 1981) 640 F.2d 963, 966......................................... 29

*United States v. White* (CD CA 1995) 893 F.Supp. 1423, 1428.)........................................... 29

*Vishay Intertechnology, Inc. v. Delta International Corp.*, 696 F.2d 1062, 1065- 1066 (4th. Cir. 1982) .................................................................................................................................. 21

*Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005) ......................................................... 17

*Wyatt v. Terhune*, 315 F.3d 1108, 1114, fn. 5 (9th. Cir. 2003)................................................ 13

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
   433 F.3d 1199, 1207 (9th Cir. 2006).................................................................................. 24

*Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).......................................... 23

**Statutes**

TABLE OF AUTHORITIES                                                    Case No. C 06 0545

49 U.S.C § 46110(a) ........................................................................................ 9
§ 1983 31, 34
18 U.S.C. § 1367(a) ........................................................................................ 16
28 U.S.C. § 1367(a) ........................................................................................ 34
28 U.S.C. § 2680(h) ....................................................................................... 16
28 U.S.C. § 531 ............................................................................................... 3
28 U.S.C. §2675(a) ........................................................................................ 16
42 USC §1983 ......................................................................................... passim
49 U.S.C. § 106 ............................................................................................... 3
49 U.S.C. § 114(a) .................................................................................. 3, 4, 10
49 U.S.C. § 46110(a) ................................................................................. 9, 10
49 U.S.C.A. § 102(b) ...................................................................................... 3
5 U.S.C. § 101 ................................................................................................. 3
5 U.S.C. § 702 ............................................................................................... 33
6 U.S.C. § 203(2) ................................................................................... 3, 10
6 U.S.C. § 234 ............................................................................................... 10
6 U.S.C. § 234(a) .......................................................................................... 10
6 U.S.C. §111 ................................................................................................. 3
8 U.S.C § 1182(a)(3)(b) ........................................................................... 7, 18
Calif. Penal Code §§834 and 836 ................................................................. 31
California Code of Civil Procedure § 410.10 ........................................ 20, 21
Civil Code § 47(b) ........................................................................................ 38
Civil Code § 52.1 ......................................................................................... 35
Civil Code § 52.3 ......................................................................................... 36

**Other Authorities**

Erwin Chemerinsky, *Rethinking State Action*, 80 NW.U.L.Rev. 503, 511-16 (1985) ................ 34
Res.2d, Torts §46, Comment j ..................................................................... 38
Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (The Rutter
       Group 2006), Sec. 8:24 ................................................................. 8, 20, 29

**Rules**

FRCP 19(a)2(i) .............................................................................................. 28

## INTRODUCTION

On January 2, 2005, plaintiff, Rahinah Ibrahim ("Ibrahim"), was hand-cuffed and arrested at San Francisco International Airport ("SFO"), before her young daughter, her friend, and the entire airport, and later detained at a police station, for no apparent reason, through a collective effort of the defendants named in her complaint.  (Complaint, ¶¶ 40-46.)  Ibrahim's name, apparently, may have appeared on the "No-Fly List," a list derived from the government watch lists, kept by the Terrorist Screening Center ("TSC").  A person identified on the "No-Fly List", however, is simply to be prohibited from flying.  Ibrahim was not only prohibited from flying, but was arrested and detained for hours.

Ibrahim filed this action, naming a variety of state, corporate and federal defendants, all of whom collectively contributed to her false arrest and imprisonment.  Now, the United defendants, defendant, John Bondanella ("Bondanella"), and the federal defendants, move to dismiss Ibrahim's claims, based on factual declarations, which Ibrahim has had no opportunity to evaluate through discovery, and based on Security Directives, filed with this Court, which Ibrahim has not been allowed to see.

Courts recognize that motions to dismiss in civil rights cases should be "scrutinized with special care." *Lillard v. Shelby County Board of Ed.* (6th Cir. 1996) 76 F.3d 716, 724; and *Johnson v. State of Calif.* (9th Cir. 2000) 207 F.3d 650, 653.  As will be set forth in detail below, defendants' claims are meritless.  This Court clearly has both personal and subject matter jurisdiction to hear Ibrahim's claims, especially as they relate to Ibrahim's apparent placement on a government watch list, maintained by the TSC, not the Transportation Security Administration, without notice, and without any opportunity for relief, and as they relate to Ibrahim's public arrest without probable cause.  Moreover, Ibrahim has properly asserted various state law claims for relief and claims under 42 U.S.C. section 1983.  For those reasons and for the reasons set forth herein, Ibrahim requests that this Court deny defendants' motions to dismiss.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF FACTS**

In her complaint, Ibrahim alleges as follows:

**I.      Plaintiff, Rahinah Ibrahim:**

Ibrahim is an individual, who obtained her Doctorate Degree at Stanford University, while in the United States on a student visa, and currently resides in the country of Malaysia. (Complaint, ¶4.)  Ibrahim has no criminal record and no ties whatsoever to any terrorist related activities.  (Complaint, ¶38)  She is a Muslim woman who is clearly identifiable as Muslim as she wears a head scarf, also known as a "hijab."  *Ibid.*  At the time of the incident, Ibrahim was a student at Stanford University, studying to obtain her Doctorate Degree (PhD), and lawfully in the United States on a student visa.  *Ibid.*  Ibrahim's student visa was valid from September 26, 2001 to January 11, 2007.  *Ibid.*  She was preparing her thesis on affordable housing and on January 2, 2005, Ibrahim was scheduled to fly on a United Airlines flight to Kuala Lumpur, Malaysia, with a changing flight in Hawaii, to present her research findings at a conference sponsored by Stanford University.  *Ibid.*  She was scheduled to return to Stanford in March, 2005, to submit her dissertation and complete her PhD.  *Ibid.*

Prior to her trip, in October, 2004, Ibrahim had a hysterectomy surgery at Stanford University Medical Hospital, with an extremely invasive abdominal approach.  (Complaint, ¶39.) Ibrahim suffered severe complications from her surgery which extended her recovery period for months.  *Ibid.*  Ibrahim also suffered back and abdominal pain from her surgery and was regularly taking medication for these complications.  *Ibid.*

On January 2, 2005, Ibrahim was hand-cuffed and arrested at San Francisco International Airport ("SFO"), before her young daughter, her friend, and the entire airport, and later detained at a police station, for no apparent reason, through a collective effort of the defendants named in her complaint.

**II.     The United Defendants:**

Ibrahim named David Nevins ("Nevins"), United Airlines ("United"), and UAL Corporation ("UAL"), as defendants in this action (collectively "the United defendants.")

Plaintiff, Rahinah Ibrahim's, Opposition To Motions To Dismiss Of United Defendants,          Case No. C 06 0545
John Bondanella and Federal Defendants

1    Nevins is an employee of United, and the Customer Service Supervisor at the United ticket

2    counter at SFO.  (Complaint, ¶25.)[1]

3    **III.    The Federal Defendants:**

4          Ibrahim also named the Department of Homeland Security ("DHS"), the Transportation

5    Security Administration ("TSA"), the Terrorist Screening Center ("TSC"), the Federal Aviation

6    Administration ("FAA"), the Federal Bureau of Investigation ("FBI"), and the directors or

7    administrators of those departments (collectively "the federal defendants.")

8          **A.    The DHS, FAA and FBI:**

9          The DHS is an executive department of the United States, whose mission, in part, is to

10   "prevent terrorist attacks within the United States" and to "carry out all functions of entities

11   transferred to the Department."  (6 U.S.C. §111.)  The FAA is an administration within the

12   Department of Transportation, an executive department of the United States.  (49 U.S.C. § 106;

13   and 5 U.S.C. § 101.)  The head of the Department of Transportation is the Secretary of

14   Transportation, who is appointed by the President, with the advice and consent of the Senate. 49

15   U.S.C.A. § 102(b).  Finally, the FBI is "in the Department of Justice", also an executive

16   department of the United States.  (28 U.S.C. § 531; and 5 U.S.C. § 101.)

17         **B.    The TSA:**

18         The TSA was created shortly after September 11, 2001, as an administration of the

19   Department of Transportation.  (49 U.S.C. § 114(a).)  (Complaint, ¶ 33.)  At that time, the Under

20   Secretary of Transportation for Security was the head of the TSA.  (49 U.S.C. § 114(b)(1).)  In

21   2002, Congress enacted the Homeland Security Act of 2002, transferring the TSA to the DHS,

22   "including the functions of the Secretary of Transportation, and of the Under Secretary of

23   Transportation for Security" as they relate to the TSA.  (6 U.S.C. § 203(2).)  According to the

24   declaration of Joseph Salvator, submitted by the federal defendants in support of their motion to

25   dismiss ("Salvator Decl."), the head of the TSA is now the "Administrator of TSA" or the

26   "Assistant Secretary of Homeland Security for TSA," formerly, defendant, David Stone, and

27   currently, defendant, Kip Hawley.  (Salvator Decl., ¶ 3.)

28

---

[1] UAL is the holding corporation for United.  (Complaint, ¶23.)

3

The TSA is responsible for, among other things, "day-to-day Federal security screening operations for passenger air transportation and intrastate air transportation…" (49 U.S.C. § 114(e)(1).)  In carrying out this function, the TSA issues security directives to commercial airlines in the United States, customs and immigration agents, airport security, and law enforcement agencies.  (Complaint, ¶ 35.)  Attached to the security directives are two government watch lists, the "No-Fly List" and the "Selectee List."  *Ibid.*  The "No-Fly List" contains names of people which airlines are prohibited from transporting.  (Complaint, ¶ 33.)  The "Selectee" list contains names of passengers who must go through additional security screening before boarding an aircraft.  *Ibid.*  (See also Salvator Decl., ¶ 7.)

Finally, the only available administrative remedy with the TSA, for an individual whose name may be on either list is to file a "Passenger Identity Verification Form" with the TSA. (RFJN, Exh. Q.)  The TSA's website provides, however, that this process "will not remove a name from the Watch Lists.  Instead this process distinguishes passengers from persons who are in fact on the Watch Lists by placing their names and identifying information in a cleared portion of the Lists."  (RFJN, Exh. Q.)  The TSA does not provide for any process for removing a name from any "watch lists."

**C.     The TSC:**

The TSC was created by Presidential Directive 6 ("HSPD 6").  On information and belief, Ibrahim alleges that the TSC is an agency of the United States Government, whose mission is "to maintain a list of 'Terrorist Identities Information' for agencies of the United States Government, including the TSA."  (Complaint, ¶11.)  The TSC determines who is on the list that the TSA uses to compile the "No-Fly List."  *Ibid.*  In the Salvatore declaration, the federal defendants set forth the following regarding the TSC:

> The No Fly List and Selectee List are maintained at the Terrorist Screening Center ("TSC"), which was created by the Attorney General in response to the Homeland Security Presidential Directive ("HSPD-6), dated September 16, 2003.  TSC is a multi-agency organization, **which is funded and administratively managed by the Federal Bureau of Investigation ("FBI")**, and is charged with consolidating the federal government's approach to terrorist screening and providing for the appropriate and lawful use of terrorist information in screening processes.  **To accomplish this purpose, TSC maintains the Terrorist Screening Database ("TSDB"), the consolidated federal**

4

**government database of known and suspected terrorists.  TSC exports data from the TSDB to other screening agency databases, including the No Fly and Selectee Lists.**

(Salvator Decl., ¶9.)  (Emphasis added.)  In other words, the TSC is not part of the DHS or the TSA.  Rather, it is "funded" and "managed" by the FBI.  Moreover, although the TSA issues the "No-Fly" and "Selectee" Lists as part of its security directives, the TSC is the organization that gathers and maintains the consolidated terrorist watch list, from which the No-Fly and Selectee Lists are derived.  (See also the Report on Effects on Privacy and Civil Liberties, dated April 27, 2006, where the DHS states that "[o]riginally created and maintained by the Transportation Security Administration (TSA), No-Fly and Selectee lists are now derived from the consolidated terrorist watch list maintained by the Terrorist Screening Center (TSC).") (RFJN, Exh. G, pg. i.)

## IV.    Defendant, John Bondanella:

Ibrahim named John Bondanella ("Bondanella"), as a defendant in this action.[2] According to his declaration, on January 2, 2005, Mr. Bondanella worked as a watch officer, through his employer, US Investigations Services, Inc. ("USIS"), for the Transportation Security Operations Center ("TSOC.")  (See Declaration of John Bondanella In Support Of Motion To Dismiss, filed May 22, 2006 ("Bondanella Decl."), ¶4.)

Apparently, the TSA disburses "Federal Security Directors" ("FSDs") to all of the commercial airlines in the US, to lead and coordinate security activities at the respective airlines. (RFJN, Exh. I, pgs. 7-8.)  The TSOC and in this case, Bondanella, is the "point of contact" for FSD's to seek guidance on handling "security-related operations."  *Ibid.*

## V.    The Events Of January 2, 2005:

On January 2, 2005, Ibrahim, with her daughter, went to the ticket counter to obtain their boarding passes and check in their bags.  (Complaint, ¶40.)  Ibrahim informed United of her medical complications and requested wheelchair transportation to the airline gate.  *Ibid.*  At that

---

[2] Ibrahim also named SFO, the City and County of San Francisco, the San Francisco Police Department, Police Sergeant, Richard Pate, and police officers James Cunningham and Elizabeth Maron (collectively "the San Francisco defendants.")  The San Francisco defendants have answered plaintiff's complaint.

1  time, defendant, Nevins, approached Ibrahim and asked to see her tickets.  *Id.* at ¶41.  On

2  information and belief, Nevins called the San Francisco Police Department and informed them

3  that Ibrahim was on the "No-Fly List."[3]  *Ibid.*  At the request of Nevins, defendants, police

4  sergeant, Richard Pate ("Pate"), and police officer, James Cunningham ("Cunningham"), of the

5  San Francisco Police Department ("SFPD"), arrived at the airport.  *Ibid.*  On information and

6  belief, Pate checked the "No-Fly List" for Ibrahim's name and called defendant, Bondanella.

7  Bondanella told Pate to not allow IBRAHIM on the flight, to contact the FBI, and to detain her

8  for questioning.  *Ibid.*  Meanwhile, Ibrahim stood waiting for an hour and a half, with no

9  wheelchair, while she suffered from back and abdominal pain, even though SFPD officers were

10  informed of Ibrahim's condition.  *Id.* at ¶42.

11  At 8:45 a.m., fifteen minutes before Ibrahim's flight was scheduled to leave, defendant,

12  Cunningham, told Ibrahim that she was being arrested.  *Id.* at ¶43.  Ibrahim was handcuffed by

13  Cunningham, with her hands placed behind her back, in the middle of the airport, in front of her

14  fourteen-year old daughter, and everyone else at SFO.  *Ibid.*  Ibrahim was not informed as to why

15  she was being arrested.  Instead, she was taken to the SFPD police station.  *Ibid.*

16  Upon arriving at the police station, Ibrahim was searched by defendant, police officer,

17  Elizabeth Maron ("Maron").  *Id.* at ¶44.  During this search, Maron attempted to remove

18  Ibrahim's hijab and searched under her hijab in public view, before the other male officers.  *Ibid.*

19  On information and belief, an FBI agent, Paul Wood, was notified of the arrest, and a TSA

20  officer, Lee Korman, arrived on the scene.  (RFJN, Exh. A.)

21  Ibrahim was placed in a holding cell at the SFPD police station for approximately two

22  hours while she continued to suffer from severe back and abdominal pain.  *Id.* at ¶45.  Ibrahim

23  was not given her medication when she asked for it to relieve her pain.  *Ibid.*  Eventually, the

24  paramedics were called as a result of Ibrahim's medical condition, where she was finally given

25  her medication after the paramedics left.  *Ibid.*  The FBI finally requested SFPD to release

26

27  [3] It is not clear to plaintiff to date whether she actually is on the No-Fly list.  The police report prepared by the San
Francisco defendants states that she is on the No-Fly list, however, the Federal Defendants have refused to disclose
28  that information.

Plaintiff, Rahinah Ibrahim's, Opposition To Motions To Dismiss Of United Defendants,        Case No. C 06 0545
John Bondanella and Federal Defendants

Ibrahim at approximately 11:15 a.m., over two hours after her flight had left.  Ibrahim was given no information as to why her name was on the "No-Fly List."  *Id.* at ¶46.

Defendants represented to Ibrahim that her name had been removed from the "No-Fly List." *Id.* at ¶47.  The following day, on January 3, 2006, Ibrahim discovered that she was still on the "No-Fly List" when she attempted to fly again. *Ibid.*  After some effort, Ibrahim was finally allowed to fly to Kuala Lumpur, Malaysia. *Ibid.*  At SFO, however, and at every stop over, Ibrahim was publicly subjected to enhanced searches before boarding any flights. *Ibid.*

On March 24, 2005, Ibrahim submitted a request for Passenger Identity Verification to the TSA, the only procedure available with the TSA, in an attempt to clear her name if the issue is simply a matter of misidentification.  (RFJN, Exh. B.)  A response was not issued to Ms. Ibrahim's request until approximately one year later, in March, 2006, after this action was filed. (RFJN, Exh. O.)  The response essentially amounts to no response at all as it simply states the following:

> [W]e have conducted a review of any applicable records in consultation with other federal agencies, as appropriate.  Where it has been determined that a correction to records is warranted, these records have been modified to address any delay or denial of boarding that you may have experienced as a result of the watch list screening process.

Essentially, the response does not clarify Ibrahim's "No-Fly List" status.  It simply states that "if" a correction to their records was warranted, such correction has been made.  It does not state that a correction was, in fact, warranted, or that her name really is on the list.

In fact, on April 14, 2005, Ibrahim's Visa was revoked by letter from the United States Embassy in Malaysia.  (See Federal Defendants' Motion to Dismiss, Exh. 1.)  The letter cites to Section 212(a)(3)(B) of the Immigration and Nationality Act as the basis for the revocation of her Visa.  That section provides, in part, that any "alien" who "a consular officer, the Attorney General, or the Secretary of Homeland Security knows, or has reasonable ground to believe, is engaged in or is likely to engage after entry in any terrorist activity" is "inadmissible."  8 U.S.C § 1182(a)(3)(b).

1

## LEGAL ARGUMENT

2

**I.    Ibrahim Need Only State "a Short And Plain Statement" Of Her Claims.**

3      In their motions to dismiss, the United defendants, the Federal defendants and

4    Bondanella, all argue that Ibrahim has not set forth sufficient facts to: a) show that this Court has

5    jurisdiction; b) show that she has standing to bring these claims; and c) support her claims for

6    relief.  Rule 8(a) of the Federal Rules of Civil Procedure, however, provides that a complaint

7    need only contain "a short and plain statement of the claim showing that the pleader is entitled to

8    relief."  The federal rules provide for "notice pleading" which means that one's pleadings need

9    only give "fair notice" of the pleader's claim or defense so that opposing parties can respond,

10   conduct discovery and prepare for trial.  *Conley v. Gibson*, 255 U.S. 41, 47-48 (1957).  "The

11   liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which

12   was adopted to focus litigation on the merits of a claim."  *Swierkiewicz v. Sorema N.A.*, 534 U.S.

13   506, 514 (2002).  Detailed evidentiary facts need not be set forth in the complaint:  "[F]ederal

14   courts and litigants must rely on summary judgment and control of discovery to weed out

15   unmeritorious claims..."  *Leatherman v. Tarrant County Narcotics Intelligence & Coordination*

16   *Unit*, 507 US 163, 168-169 (1993).

17       "Federal pleading requirements are extremely liberal.  The rules are designed specifically

18   to minimize disputes over pleading technicalities."  (Schwarzer, Tashima & Wagstaffe, Cal.

19   Prac. Guide: Fed. Civ. Pro. Before Trial (The Rutter Group 2006), Sec. 8:24.)  Moreover,

20   "conclusory allegations are perfectly proper in federal actions."  *Id.* at 8:27.  In fact, "[a]

21   complaint is not required to allege all, or any, of the facts entailed by the claim."  *Bennett v.*

22   *Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998).  (See also *Sparrow v. United Air Lines, Inc.,* 216

23   F.3d 1111, 1115 (DC Cir. 2000).)  Additionally, "It is not always necessary to specify the precise

24   nature of the claim asserted as long as the ***facts*** alleged put defendant on notice thereof."

25   Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (The Rutter

26   Group 2006), Sec. 8:28.2; citing *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d

27   462, 466 (9th Cir. 1990).  Finally, courts recognize that motions to dismiss in civil rights cases

28   should be "scrutinized with special care."  *Lillard v. Shelby County Board of Ed.*, 76 F.3d 716,

1   724 (6th Cir. 1996).  (See also *Johnson v. State of Calif.*, 207 F.3d 650, 653 (9th Cir. 2000) -

2   liberal construction rule particularly important in civil rights cases.)

3       As will be set forth in detail below, Ibrahim's complaint sets forth sufficient facts to put

4   defendants on notice of the nature of her claims, her standing to bring such claims, and this

5   Court's jurisdiction to hear said claims.  For those reasons and for the reasons set forth herein,

6   Ibrahim requests that this Court deny defendants' respective motions to dismiss.

7   **II.     49 USC § 46110 does not divest this Court of Jurisdiction To Hear Ibrahim's**

8   **Claims.**

9       Defendants mistakenly cite 49 U.S.C. § 46110(a) for the proposition that this Court is

10  without jurisdiction to hear Ibrahim's claims.  49 U.S.C. § 46110(a) provides that a litigant

11  disclosing "a substantial interest in an order issued by the Secretary of Transportation… or the

12  Under Secretary of Transportation for Security…or the Administrator of the Federal Aviation

13  Administration" can apply for review of said order by filing a petition for review before an

14  appropriate U. S. Court of Appeals. (49 U.S.C § 46110(a.).) (Hereinafter "section 46110.")

15  Ibrahim's claims do not fall within this section.  First, even if her placement on the "No-Fly List"

16  was carried out by the TSA, the TSA is not referenced in this code section, is no longer part of

17  the Department of Transportation, and is no longer headed by the Under Secretary of

18  Transportation for Security.  As such, this section should not apply to the TSA.

19      Moreover, even if this Court determines that this section applies to "orders" of the TSA,

20  Ibrahim should still be allowed to challenge her apparent placement on a government watch list,

21  which is not part of any "order" of the TSA, but from which the TSA issues its security

22  directives.  Ibrahim's apparent placement on a government watch list was carried out by the

23  TSC, as acknowledged by the federal defendants, an agency that is not part of the Department of

24  Transportation or the FAA, but rather, an agency managed by the FBI, within the US Department

25  of Justice.  Additionally, case law makes clear that this Court retains jurisdiction to review the

26  TSA's "Ombudsman Clearance Procedures," (i.e. the TSA's "clearance procedures" for filing a

27  "Passenger Identity Verification Form") which do not constitute "orders" under section 46110.

28  *Green v. Transportation Security Administration*, 351 F.Supp.2d 1119, 1126 (W.D. Wash. 2005).

9

Plaintiff, Rahinah Ibrahim's, Opposition To Motions To Dismiss Of United Defendants,        Case No. C 06 0545
John Bondanella and Federal Defendants

1  Finally, since the security directives do not appear to authorize the arrest or detention of an

2  individual on either list, such conduct falls squarely outside of the scope of any purported

3  "order" of the TSA and Ibrahim's claims based on such conduct, remain within this Court's

4  jurisdiction.

5      **A.    Section 46110 Does Not Apply To Ibrahim's Claims Because They Do Not**
       **Implicate Any "Order" Issued By The Secretary Or Undersecretary Of**
6      **Transportation.**

7          By its own terms, 49 U.S.C. section 46110(a) only applies to orders issued by either "the

8  Secretary of Transportation" or "the Under Secretary of Transportation for Security" or the FAA.

9  49 U.S.C. § 46110(a).  As set forth above, the TSA is not part of and is not administered or

10 directed by any of those entities or individuals.  It is true that the TSA was created shortly after

11 September 11, 2001, as an administration of the Department of Transportation. 49 U.S.C. §

12 114(a).  At that time, the Under Secretary of Transportation for Security was the head of the

13 TSA.  (49 U.S.C. § 114(b)(1).)  In 2002, however, Congress enacted the Homeland Security Act

14 of 2002, transferring the TSA to the DHS.  (6 U.S.C. § 203(2).)  The Homeland Security Act

15 provides that "the Transportation Security Administration [i.e., the TSA] shall be maintained as a

16 distinct entity within the Department [of Homeland Security] under the Under Secretary for

17 Border Transportation and Security." 6 U.S.C. § 234(a).  The TSA has not been within the

18 Department of Transportation since March of 2003. (RFJN, Exh. E.)  "One year after creating

19 the TSA, Congress transferred the agency to the Department of Homeland Security, placing it

20 under that Department's Under Secretary for Border and Transportation Security." *Coalition of*

21 *Airline Pilots Ass'n v. Federal Aviation Administration*, 370 F.3d 1184, 1186 (D.C. Cir. 2004)

22 (*citing* 6 U.S.C. § 234).

23         Ibrahim's airport detainment and subsequent arrest occurred on January 2, 2005. *See*

24 Complaint, ¶¶ 40- 46.  Thus, the TSA had been within the Department of Homeland Security for

25 almost two years at the time of Ibrahim's detainment and arrest.[4]  Consequently, even if the TSA

26 _____

27 [4] This fact distinguishes the instant action from the *Gilmore v. Gonzales* case cited by Defendants. *See, e.g.,*
   United's Motion to Dismiss, 4:14- 6:5; Federal Defendants' Motion to Dismiss, 8:8- 9:12 *citing Gilmore v.*
28 *Gonzales*, 435 F.3d 1125 (9th Cir. 2006).  Gilmore's airport incident occurred on July 4, 2002, while the TSA was
   located within the Department of Transportation. *See Gilmore*, 435 F.3d at 1142.

did issue some type of order pertaining to Ibrahim's detention or arrest, then section 46110 would not preclude Ibrahim's claims because the TSA is not within the Department of Transportation.

Additionally, the federal defendants themselves acknowledge that the head of the TSA is now the "Administrator of TSA" or the "Assistant Secretary of Homeland Security for TSA," formerly, defendant, David Stone, and currently, defendant, Kip Hawley.  (Salvator Decl., ¶ 3.) Therefore, the Under Secretary of Transportation for Security is no longer the head of the TSA and any "orders" issued by the TSA are not "orders" of the Under Secretary of Transportation for Security and therefore, are not subject to section 46110.

**B.    49 U.S.C. section 46110(a) Does Not Apply To Ibrahim's Claims Because The TSA Did Not Place Ibrahim On Any Security Watchlist.**

Neither the Secretary of Transportation, nor the Under Secretary of Transportation, nor anyone from the TSA decides whether individuals are placed on *any* terrorist screening list.  The federal defendants themselves acknowledge that "it is not TSA but another agency within the Government that makes the determination that an individual poses or is suspected of posing a risk to airline safety, and therefore should be placed on a security watchlist, including the No Fly List." (RFJN, Exh. H.)  Thus, even Defendants admit that the TSA does not place names on any watchlist, including the "No-Fly List."

Instead, the TSC is responsible for creating a consolidated watchlist that is used by *every* governmental agency responsible for terrorist screening.[5]  According to the FBI's website, the TSC "provides 'one-stop shopping' so that every government screener is using the same terrorist watchlist— whether it is an *airport screener*, an embassy official issuing visas overseas, or a state or local law enforcement officer on the street." (RFJN, Exh. D.)  The TSA simply checks the names and dates of birth of passengers on domestic flights against the TSC watchlist. *Id.*  The fact that the TSA has no procedure for removing one's name from the watch lists further indicates that the TSA does not maintain those lists.  Moreover, the federal defendants clearly acknowledge that "TSC maintains the Terrorist Screening Database ("TSDB"), the consolidated

---

[5] As stated above, The TSC was established by Homeland Security Presidential Directive 6. (RFJN, Exh. E.)

Plaintiff, Rahinah Ibrahim's, Opposition To Motions To Dismiss Of United Defendants,       Case No. C 06 0545
John Bondanella and Federal Defendants

1  federal government database of known and suspected terrorists.  TSC exports data from the

2  TSDB to other screening agency databases, including the No Fly and Selectee Lists."  (Salvator

3  Decl., ¶9.)

4      The TSC— not the TSA— would therefore be the governmental agency responsible for

5  Ibrahim's placement on any security watchlist, including the "No-Fly List."  Defendants have

6  not disputed this.  Moreover, any action of the TSC does not fall within section 46110 as the

7  TSC is clearly *outside* of the Department of Transportation.  Instead the TSC is within the

8  Department of Justice. *See, e.g.,* Homeland Security Presidential Directive 6.  "[T]he Attorney

9  General, the Director of Central Intelligence, and the Secretaries of the Departments of State and

10  Homeland Security signed a Memorandum of Understanding creating the TSC and placed it

11  within the Federal Bureau of Investigation, U.S. Department of Justice." (RFJN, Exh. E.)  Again,

12  this is clearly acknowledged by the federal defendants that the FBI manages the TSC.  (Salvator

13  Decl., ¶9.)  Because the TSC is outside of the Department of Transportation, section 46110 has

14  no effect on any policy or order issued by the TSC.  This Court may therefore hear Ibrahim's

15  claims relating to her placement on the government's watch lists because the TSC made the

16  determination that she should be placed on such lists and in turn, on the "No-Fly List."

17      Defendants generally cite *Gilmore v. Gonzales,* 435 F.3d 1125 (9th. Cir. 2006),  for the

18  proposition that the "No-Fly List" is an "order" as contemplated within section 46110. However,

19  defendants fail to point out that the *Gilmore* plaintiff lacked standing to challenge the "No-Fly

20  List." *Id.* at 1152.  "Gilmore's alleged injury stems from the identification policy itself, and does

21  not implicate other security programs that depend upon passenger identification information." *Id.*

22  at 1151.  Therefore, "Gilmore lacks standing to challenge all components of "the Scheme"

23  except the identification policy." *Id.* at 1152.  Ultimately, the *Gilmore* Court held that the TSA's

24  identification policy— not the No-Fly List— is an "order" within the meaning of section 46110.

25  *Id.* at 1149.

26      The Washington district court opinion, *Green v. Transportation Security Administration*,

27  is also not controlling.  In that case, plaintiffs did not name the TSC as a defendant in their action

28  and as such, the Court did not consider whether plaintiffs may challenge the TSC's placement of

12

1  individual names on the government's watch lists.  Moreover, *Green* was decided almost nine

2  months before the TSA's recent admission that it does not place individuals on any watchlist.

3  *See Green v. Transportation Security Administration,* 351 F.Supp.2d 1119 (W.D. Wash. 2005)

4  (**January 7, 2005**); (RFJN, Exh. H (**September 27, 2005**)).  Put simply, the *Green* court did not

5  have the same facts or the same parties that this Court now has before it.

6        Even if the *Green* court actually found that the TSA determines which individuals are

7  placed on the No-Fly List, Defendants may not rely on *Green* in support of that proposition.

8  "Factual findings in one case ordinarily are not admissible for their truth in another case through

9  judicial notice." *Wyatt v. Terhune*, 315 F.3d 1108, 1114, fn. 5 (9th. Cir. 2003).  Instead,

10  Defendants would actually have to present evidence on this matter.  In this case, defendants' own

11  admissions indicate that the policies or orders challenged by Ibrahim were in fact issued by the

12  TSC.  Thus, section 46110 does not deprive this Court of jurisdiction to hear Ibrahim's challenge

13  to her placement on a government watch list, maintained by the TSC.

14
15      **C.**    **Even If Ibrahim's Claims Implicate "Orders" Within The Context Of Section 46110(a), This Court Retains Jurisdiction Because Ibrahim's Claims Constitute "Broad Constitutional Challenges."**

16        Regardless of whether or not Ibrahim's claims implicate "orders" pursuant to 49 U.S.C.

17  section 46110(a), this Court retains jurisdiction because the claims raise broad constitutional

18  challenges. *See Crist v. Leippe*, 138 F.3d 801, 803 (9th. Cir. 1998).  District courts may hear

19  broad constitutional challenges that are not "inescapably intertwined" with "orders" issued by the

20  Department of Transportation. *Id.*; *see also Green v. Transportation Security Administration*,

21  351 F.Supp.2d 1119, 1126 (W.D. Wash. 2005) ("if the claims raise broad constitutional

22  challenges that are not inescapably intertwined with the Security Directives, this Court would

23  have jurisdiction to consider the issues raised not withstanding the fact that they constitute orders

24  within the meaning of § 46110").

25        Even if *Green* applies to the instant action, this Court retains jurisdiction because, *inter*

26  *alia*, the *Green* court explicitly held that the "Ombudsman Clearance Procedures do not

27  constitute "orders" for the purposes of 46110." *Green*, 351 F.Supp.2d at 1128.  Like the *Green*

28

13

Plaintiff, Rahinah Ibrahim's, Opposition To Motions To Dismiss Of United Defendants,    Case No. C 06 0545
John Bondanella and Federal Defendants

1  plaintiffs, Ibrahim alleges that the government's remedial procedures – namely the Passenger

2  Identification Verification process - do not provide adequate notice or a meaningful opportunity

3  for her to clear her name.  (Complaint, ¶¶ 49- 62; *Green,* 351 F.Supp.2d at 1128.)  Unlike the

4  *Green* plaintiffs, Ibrahim was arrested, incarcerated for almost two and a half hours, missed her

5  flight, and subsequently had her visa revoked. (Complaint ¶¶ 43-46.)   In contrast, none of the

6  *Green* plaintiffs missed a flight or were subjected to enhanced screening for more than one hour.

7  *Green*, 351 F.Supp.2d at 1123.

8       The *Green* court analyzed the government's remedial procedures vis-à-vis the Fifth

9  Amendment's stigma-plus doctrine.  A plaintiff will prevail under the Fifth Amendment's

10 stigma-plus doctrine by showing: (1) public disclosure of a stigmatizing statement by the

11 government, the accuracy of which is contested; plus (2) the denial of some more tangible

12 interest such as employment, or the alternation of a right or status recognized by state law.

13 *Green*, 351 F.Supp.2d at 1129, *citing Ulrich v. City & County of San Francisco*, 308 F.3d 968,

14 982 (9th. Cir. 1982).  The *Green* court held that being publicly associated with the No-Fly List

15 satisfies the "stigma" prong of the stigma-plus doctrine. *Green*, 351 F.Supp.2d at 1129.

16 However, the *Green* plaintiffs failed to satisfy the "plus" prong because they did "not allege that

17 they [had] suffered impediments different than the general traveling public." *Id.* at 1130.

18      Ibrahim has a claim under the Fifth Amendment's stigma-plus doctrine.  Like the *Green*

19 plaintiffs, Ibrahim clearly satisfies the "stigma" prong because she has been publicly associated

20 with the No-Fly List.  Unlike the *Green* plaintiffs, Ibrahim will also satisfy the "plus" prong

21 because she was incarcerated, she missed her flight, and her visa was revoked.  Although

22 Ibrahim alleges that her arrest also constitutes a constitutional violation, it is not necessary that

23 the "plus" factor rise to the level of a constitutional violation.  Indeed, if that were the standard,

24 there would be no need to show the "stigma" element because a plaintiff could state a claim

25 using the "plus" factor alone.

26      Moreover, the *Green* court suggested that a wide variety of No-Fly List constitutional

27 challenges would be appropriate.  Specifically, *Green* left open the possibility of a No-Fly List

28

plaintiff seeking "broad equitable relief", including the adoption of the Security Directives or the procedures followed before they were implemented. *Green, supra,* 351 F.Supp.2d at 1126-1127.

Thus, even if *Green* applies, Ibrahim's claims survive under the Fifth Amendment's stigma-plus doctrine and to challenge the TSA's clearance procedure.

> **D.      This Court Retains Jurisdiction Over Ibrahim's Claims To The Extent That Ibrahim's Incarceration and Visa Revocation Do Not Implicate Any "Order" Within The Context Of 49 U.S.C. section 46110(a).**

Defendants provide no evidence to suggest that Ibrahim's incarceration and/or visa revocation were authorized by the TSA's security directives, or any other *alleged* "order" as contemplated within section 46110.  The Federal Defendants describe the security directives as follows:

> "TSA has implemented these requirements by issuing a series of Security Directives to regulated aircraft operators and Emergency Amendments to foreign air carriers, which I refer to collectively below as Security Directives.  These Security Directives direct air carriers to implement specific security procedures and to take specific security measures with respect to individuals who are identified on one of two TSA watch lists:  the "No Fly List" and the "Selectee List."  **Individuals on the No Fly List are prohibited from flying altogether**.  Individuals on the Selectee List must undergo additional security screening prior to boarding an aircraft."

(Salvator Decl., ¶7.)  (Emphasis added.)  In other words, none of the defendants have shown that there is anything in the security directives that authorizes the making of any arrests by virtue of being on the list.  Based on the limited information which has been disclosed regarding the TSA's security directives, they only appear to provide that individuals on the No Fly List are prohibited from flying and individuals on the Selectee List are to undergo additional screening.  Ibrahim's arrest, therefore, was squarely outside the scope of the security directives.  This issue was not addressed in *Green* as in that case, individuals named on the No-Fly List were neither incarcerated nor did they miss their flights. *Green*, 351 F.Supp.2d at 1123.  Thus, even if section 46110 deprived this Court of jurisdiction with respect to defendants' placement of Ibrahim on the No-Fly List and with respect to excluding Ibrahim from her flight, this Court may still entertain Ibrahim's damages and equitable claims as they relate to her arrest and incarceration.

15

Plaintiff, Rahinah Ibrahim's, Opposition To Motions To Dismiss Of United Defendants,      Case No. C 06 0545
John Bondanella and Federal Defendants

**III.    This Court Has Subject Matter Jurisdiction To Hear Ibrahim's State Law Claims Against The Federal Defendants.**

The federal defendants are subject to jurisdiction before this Court with respect to Ibrahim's state law claims.  In fact, the federal defendants must account for their California torts based upon supplemental jurisdiction and the unavailability of sovereign immunity. Supplemental jurisdiction is proper where the relationship between the federal and state claims is such that they "form part of the same cause or controversy." 18 U.S.C. § 1367(a).  The federal and state claims will satisfy 18 U.S.C. section 1367(a) when they arise from a "common nucleus of operative facts" such that a plaintiff "would ordinarily be expected to try them all in a single judicial proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

Ibrahim's federal and state claims both arise from the same "nucleus of operative facts." In fact, Ibrahim's federal and state claims both arise from her arrest, her incarceration, her exclusion from her flight, and her placement on a terrorist screening list. *See*, e.g., Complaint ¶¶ 49, 55, 63, 70, 77, 84, 91, 98, 106, 112, 116, 121 (state and federal claims reallege and incorporate the *same* facts).  Therefore, this Court has jurisdiction over the federal defendants with respect to Ibrahim's state law claims by virtue of this Court's "federal question" jurisdiction over Ibrahim's related federal claims.

Moreover, the federal defendants must account for their California torts before this Court because sovereign immunity is unavailable.  By statute, the federal defendants may be held liable when a federal law enforcement officer commits, *inter alia*, false imprisonment. 28 U.S.C. § 2680(h).[6]  In light of this statutory exception to the sovereign immunity doctrine, the federal defendants are subject to jurisdiction before this Court with respect to Ibrahim's state law claims.

**IV.    Plaintiff, Ibrahim, Has Article III Standing To Bring Her Claim**

To establish Article III standing, Ibrahim must show "(1) she has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it

---

[6] Ibrahim has recently filed federal tort claims against all of the federal agency defendants. (RFJN, Exs. J-N.) Ibrahim's claims are timely as they need only be made within two years of the date of the incident.  (28 U.S.C. §2675(a).)

1    is likely, as opposed to merely speculative, that the injury will be redressed by a favorable

2    decision." *Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005); *see also International Broth. of*

3    *Teamsters v. Transportation Sec. Admin.*, 429 F.3d 1130, 1133 (D.C. Cir. 2005) (Plaintiff must

4    show "three elements: (1) injury-in-fact, (2) causation, and (3) redressability."). Ibrahim meets

5    each criterion.

6         Moreover, Ibrahim's burden of establishing her standing on a motion to dismiss is readily

7    established. In the pleadings, "general factual allegations of injury resulting from the defendant's

8    conduct may suffice." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). On a motion to

9    dismiss, the Court must "presume that the general allegations embrace those specific facts that

10   are necessary to support the claim." *Id.* Indeed, *Lujan* – the only case the Federal Defendants cite

11   for the proposition that Ibrahim lacks standing – ***supports*** Ibrahim's right to redress in this Court.

12   As the Supreme Court held:

13
14        When the suit is one challenging the legality of government action …, the nature and
          extent of facts that must be averred (at the summary judgment stage) or proved (at the
          trial stage) in order to establish standing depends considerably upon whether the ***plaintiff***
15        ***is himself an object of the action*** … at issue. ***If he is, there is ordinarily little question***
          ***that the action … has caused injury, and that a judgment preventing … the action will***
16        ***redress it.***

17        *Id.* at 5661-62 (emphasis added).

18        The problem in *Lujan* was that the case involved the "allegedly unlawful regulation … of

19   *someone else*…." *Id.* at 562 (emphasis in original). But here, the federal defendants took action

20   directly against Ibrahim that caused her harm. This Court has all the Article III power it needs to

21   redress her injuries.

22        The federal defendants argue that because Ibrahim has not established that she holds a

23   Visa to enter this country, the Court is powerless to redress the harm they have caused her. But

24   Ibrahim "need not demonstrate that there is a 'guarantee' that [her] injuries will be redressed by a

25   favorable decision…. [P]laintiffs 'must show only that a favorable decision is *likely* to redress

26   [their injuries], not that a favorable decision *will inevitably* redress [their injuries].'" *Wilbur v.*

27   *Locke*, 423 F.3d 1101, 1108 (9th Cir. 2005) (emphasis original); *Graham v. Federal Emergency*

28

1   *Management Agency*, 149 F.3d 997, 1003 (9th Cir.1998). Instead, "plaintiffs lack standing

2   primarily when the … agency is not before the court, or when redressability 'depends on the

3   unfettered choices made by independent actors not before the courts and whose exercise of broad

4   and legitimate discretion the courts cannot presume either to control or predict.'" *Graham*, 149

5   F.3d at 1003 (citation omitted). The agency that has caused Ibrahim cognizable harm is before

6   this court. To Ibrahim's knowledge, no government agency, which is not a party to this case

7   controls the "No-Fly" list. The federal defendants have not demonstrated otherwise.

8          As alleged, by placing Ibrahim on the "No-Fly" list and refusing to provide a mechanism

9   to safeguard her Due Process rights, the federal defendants subjected Ibrahim to unnecessary and

10  undeserved arrest, incarceration, stigma, embarrassment, harassment, and delay – all actual

11  injuries directly suffered by Ibrahim. The threat of each of these harms recurring remains

12  unabated to this day, should Ibrahim, a scholar associated with Stanford University, attempt to

13  board a United States airline.  Such harm is constitutionally cognizable and distinct from the

14  immigration-related harm caused by the Government's equally unjust and unexplained denial of

15  Ibrahim's student visa.

16         The United States Embassy in Malaysia revoked Ibrahim's student visa on April 14,

17  2005. In a two-paragraph letter, the Consul stated that Ibrahim's visa was revoked under

18  "Section 212(a)(3)(B) of the Immigration and Nationality Act" and that the "revocation of [her]

19  visa does not necessarily indicate that [she] is ineligible to receive a U.S. visa in future [sic]."

20  Thus, the only reason given Ibrahim for the revocation of her visa was a citation to Section 212,

21  entitled "Terrorist Activities."  That section provides, in part, that any "alien" who "a consular

22  officer, the Attorney General, or the Secretary of Homeland Security knows, or has reasonable

23  ground to believe, is engaged in or is likely to engage after entry in any terrorist activity" is

24  "inadmissible."  8 U.S.C § 1182(a)(3)(b).

25

26

27

28

1  The Kotval Declaration, attached to the Federal Defendants' motion to dismiss, is no

2  more elucidating.[7] While Kotval does declare that the decision to revoke Ibrahim's visa was

3  made "without reference to any 'No Fly' list," he does not explain how or why the decision was

4  made.  He also does not claim that the revocation of Ibrahim's Visa was not made because of her

5  placement on the government's watch list.  Kotval raises a distinction without a difference.  The

6  government cannot render its actions non-reviewable by hiding the wrongful actor in a dark

7  corner of secret bureaucracy and claiming that one injury it caused vitiates its responsibility for

8  the others.

9  Ibrahim is not a terrorist and has not supported or aided any terrorist activity, and the

10  government has produced no evidence showing otherwise.  Instead, the government has

11  subjected her to arrest, humiliation and unexplained visa revocation based on nothing more than

12  terse vilification.  The government's flawed decision to place Ibrahim on a watch list, based

13  presumably on the happenstance that "Ibrahim" is a name shared by *millions* of Muslims, may

14  not be rendered non-reviewable because it has caused Ibrahim to suffer multiple distinct harms.

15  The Federal Defendants' attempt to close the courthouse door by the force of their own

16  wrongdoing is the very definition of injustice.

17  In any event, the visa revocation does not affect the redressibility of the claims before this

18  Court. While the lack of a visa impedes Ibrahim's access to the United States, it does not subject

19  her to the same types of harm – unwarranted arrest, incarceration, stigma, embarrassment,

20  harassment, and delay – that placing her name on the "No-Fly" list has caused. Each of these

21  harms would be redressed by a favorable result in these proceedings. Moreover, as the Consul

22  has stated, the revocation of Ibrahim's visa does not indicate that she is ineligible to receive a

23  U.S. Visa in the future. Thus, while the revocation of Ibrahim's Visa constitutes an *additional*

24
25
26
27
28

---

[7] The Court should disregard the Kotval Declaration as improper extrinsic evidence. A "court's role at the 12(b)(6) stage is not to decide winners and losers or evaluate the strength or weakness of claims. Nor can a court resolve factual questions at the 12(b)(6) stage. We must accept as true the allegations in the complaint and decide *only* whether plaintiff has advanced *potentially* viable claims." *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1292 (9th Cir.1997) (emphasis original) (citations omitted) (*overruled on other grounds by* 525 U.S. 432); *see also Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir.1990) ("Our review is based on the contents of the complaint. We accept the allegations as true and construe them in the light most favorable to the plaintiff.  Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (Citations and internal quotation marks omitted.)

harm, it does not render her wrongful placement on a government watch list non-redressible. Ibrahim's case should be heard, and this Court should provide her the Due Process the federal defendants have so far sought to deny her.

**V.      This Court Has Personal Jurisdiction Over Defendant, John Bondanella.**

Defendant, Bondanella, is subject to personal jurisdiction in California because his wrongful conduct occurred in California, and the effect of this conduct was felt within California.  Namely, Bondanella ordered Ibrahim's arrest, and prevented her from boarding an aircraft in California. (Complaint, ¶41.)  Thus, Bondanella is subject to personal jurisdiction for "[d]oing an act in the state giving rise to the cause of action being sued upon." *Marra v. Shea*, 321 F.Supp. 1140, 1143, (N.D. Cal. 1971) *citing* California Code of Civil Procedure § 410.10, Judicial Council Comments (Supp. 1971).  Even if Bondanella's wrongful conduct were deemed outside of California, Bondanella would still be subject to this Court's jurisdiction under the specific jurisdiction test. *See Gray & Co. v. Firstenberg Machinery Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990). [8]

**A.      Bondanella Is Subject To This Court's Jurisdiction Because His Wrongful Conduct Herein Occurred In California.**

If a non-resident defendant engages in wrongful conduct in the forum state, then he is subject to personal jurisdiction in the forum state for claims arising from that conduct. *Hess v. Pawlowski*, 274 U.S. 352 (1927); *Rosenblatt v. American Cyanamid Co.***,** 86 S.Ct. 1, 3 (1965); *Marra v. Shea*, 321 F.Supp. 1140, 1143, (N.D. Cal. 1971); *Lundgren v. Sup Ct.*, 111 Cal.App.3d 477, 484 (1980).  This is true regardless of whether the defendant's contacts with the forum state were "carried on over a short period or a longer period." *Lundgren*, 111 Cal.App.3d at 484. Moreover, if a defendant engages in wrongful conduct that causes "foreseeable injuries" in the

---

[8] "If the nonresident committed the liability-producing acts while physically present in the forum state, this is almost always held a sufficient "contact" to support personal jurisdiction in lawsuits arising from those acts." (Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (The Rutter Group 2005) §3:161, pg. 3-53; *citing Lundgren v. Sup Ct.*, 111 Cal.App.3d 477, 484 (1980).  However, "[i]f the nonresident defendant operates entirely outside the forum state... the three-part test of limited jurisdiction must be met."  (Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (The Rutter Group 2005) §3:168; *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).)

Plaintiff, Rahinah Ibrahim's, Opposition To Motions To Dismiss Of United Defendants,        Case No. C 06 0545
John Bondanella and Federal Defendants

1    forum state, then he is subject to specific personal jurisdiction in the forum state. *Burger King*

2    *Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985). This is true even if the defendant "never even

3    visited [the forum state]." *Id.* at 479.

4         California's long-arm statute provides that a court "may exercise jurisdiction on any

5    basis not inconsistent with the Constitution of this state or of the United States." California Code

6    of Civil Procedure § 410.10. "In cases under these [long-arm] statutes in state and federal courts,

7    jurisdiction on the basis of a *single* tort has been uniformly upheld." *Rosenblatt***,** 86 S.Ct. at 3

8    (emphasis added). Ibrahim's claims against Bondanella arise exclusively from his contact with

9    the forum state, and the effect of his conduct within the forum state. Bondanella ordered

10   Ibrahim's arrest and prevented her from boarding her aircraft. (Complaint, ¶41.) As a

11   foreseeable result of Bondanella's order, Ibrahim was in fact arrested and she did in fact miss her

12   flight. (Complaint, ¶¶40- 47.) The aircraft's departure and Ibrahim's arrest both occurred in the

13   district over which this Court presides, San Francisco, California. *Id.*

14        When the wrongful conduct consists of a telephonic communication *into* the forum state

15   from *outside* of the forum state, the conduct is considered within the forum state for

16   jurisdictional purposes. *Vishay Intertechnology, Inc. v. Delta International Corp.*, 696 F.2d 1062,

17   1065- 1066 (4th. Cir. 1982); *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661, 664 (1st. Cir. 1972).[9]

18   For example, "[w]here a defendant knowingly sends into a state a false statement, intending that

19   it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional

20   purposes, acted within that state." *Murphy.*, 460 F.2d at 664. In *Vishay, supra,* the vice-president

21   of a nonresident corporation misrepresented his identity in a phone call placed into the forum

22   state from outside the forum state. *Vishay Intertechnology, Inc.*, 696 F.2d 1064. Based in part

23   upon this phone call, the non-resident corporation was subject to personal jurisdiction in the

24   forum state for, *inter alia,* unfair and deceptive business practices. *Id.* at 1065-1066.

25        Bondanella's instructions, sent into this state were false. Bondanella instruction the

26   detention of Ibrahim. None of the defendants have shown that any part of the Security

---

[9] "The *Murphy* court "permitted personal jurisdiction over an out-of state defendant whose only contacts with [the forum state] were a few phone calls and letters to the plaintiff." *Vishay Intertechnology, Inc.*, 696 F.2d at 1066. *citing Murphy*, 460 F.2d at 664.

Plaintiff, Rahinah Ibrahim's, Opposition To Motions To Dismiss Of United Defendants,          Case No. C 06 0545
John Bondanella and Federal Defendants

1   Directives authorize the arrest of an individual by their mere placement on the "No-Fly List."

2   According to the federal defendants, a person found on the "No-Fly List" is simply "prohibited

3   from flying." (Salvator Decl., ¶7.) Thus, Bondanella's wrongful conduct (e.g., ordering

4   Ibrahim's arrest ) occurred within California for personal jurisdiction purposes because the

5   conduct consisted of a telephonic communication into California. Therefore, Bondanella is

6   subject to this Court's jurisdiction with respect to Ibrahim's claims.

7       **B.      Even If Bondanella's Wrongful Conduct Were Deemed Outside Of**
             **California, Bondanella Would Still Be Subject To This Court's Jurisdiction**
8             **Because The Specific Jurisdiction Elements Are Satisfied.**

9           Bondanella is subject to specific personal jurisdiction before this Court with respect to

10  Ibrahim's claims against him. A defendant will be subject to a forum state's specific jurisdiction

11  when the following elements are satisfied: (1) the defendant has done some act by which he

12  purposefully avails himself of the privilege of conducting activities in the forum, thereby

13  invoking the benefits and protections of its laws; (2) the claim arises out of the defendant's

14  forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Gray & Co. v.*

15  *Firstenberg Machinery Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990).

16          As discussed below, each element has been met. Bondanella has purposefully availed

17  himself of the privilege of conducting activities in California because his wrongful conduct was

18  directed toward California. Ibrahim's claims against Bondanella arise out of his contacts with

19  California because they satisfy the "but for" causation test. Finally, the exercise of jurisdiction

20  over Bondanella would be reasonable because the seven reasonableness factors weigh in favor of

21  personal jurisdiction. Therefore, Bondanella is subject to this Court's jurisdiction.

22          1.   Bondanella Has Purposefully Availed Himself Of The Privilege Of
                 Conducting Activities In California Because He Has Taken Deliberate
23               Actions Toward California, And Caused Harm In California.

24          Bondanella has "purposefully availed" himself of the privilege of conducting activities in

25  California. The purposeful availment requirement is satisfied if the defendant "has taken

26  deliberate action" toward the forum state. *Panavision Int't, L.P. v. Toeppen, Inc.*, 141 F.3d 1316,

27  1320 (9th Cir. 1998), *citing Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "It is not

28

1   required that a defendant be physically present or have physical contacts with the forum, so long

2   as his efforts are "purposefully directed" toward forum residents." *Id.*

3        When the wrongful conduct consists of an interstate telephonic communication, the "out-

4   of-state sender… has thereby 'purposefully avail[ed] itself of the privilege of conducting

5   activities within the forum state, thus invoking the benefits and protections of its laws.'" *Murphy*,

6   460 F.2d at 664, *citing Hanson v. Deckla*, 357 U.S. 235, 253 (1958).  Because Bondanella's

7   wrongful conduct consists of an interstate telephonic communication, Bondanella satisfies the

8   purposeful availment requirement.

9        Moreover, the purposeful availment element is satisfied under the "effects doctrine"

10   because Bondanella's conduct had its effect in the forum state. *Ziegler v. Indian River County*,

11   64 F.3d 470, 473 (9th Cir. 1995).  Bondanella meets each of the three "effects doctrine"

12   elements: 1) intentional actions; 2) expressly aimed at the forum state; and 3) causing harm in the

13   forum state. *See*, e.g., *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486 (9th Cir.

14   1993); Bondanella's Motion to Dismiss, pg. 9:11-16.

15        Bondanella's direction to arrest Ibrahim and prevent her from boarding an aircraft were

16   clearly "intentional actions" as contemplated in the "effects doctrine."  "Intentional" refers only

17   to an "intent to perform an actual, physical act in the real world, rather than an intent to

18   accomplish a result or consequence of that act." *Schwarzenneger v. Fred Martin Motor Co.*, 374

19   F.3d 797, 806 (9th Cir. 2004).  Thus, Bondanella's order was an "intentional act" regardless of

20   whether he intended that it actually be implemented.

21        The second element is also satisfied.  Bondanella ordered an officer *in California* to

22   prohibit Ibrahim from boarding an aircraft located *in California*. Complaint, ¶¶ 2, 41. Bondanella

23   further ordered that Ibrahim be arrested *in California. Id.*  Therefore, Bondanella's conduct was

24   expressly aimed at the forum state because the relevant events and people were in California.

25        Finally, the "brunt of the harm" (i.e, Ibrahim's arrest and exclusion from her flight)

26   occurred in California.  However, "the 'brunt' of the harm need not be suffered in the forum

27   state" so long as the plaintiff has suffered *sufficient* harm in the forum state. *Yahoo! Inc. v. La*

28

23

Plaintiff, Rahinah Ibrahim's, Opposition To Motions To Dismiss Of United Defendants,   Case No. C 06 0545
John Bondanella and Federal Defendants

1    *Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006).[10]  Thus, even

2    if Ibrahim has suffered harm outside of California, the fact that she has suffered sufficient harm

3    in California satisfies the "harm" prong of the "effects doctrine."  Consequently, the three

4    "effects doctrine" elements are satisfied, and therefore Bondanella has purposefully availed

5    himself of the privilege of conducting activities within the forum state.

6         Bondanella attempts to escape the purposeful availment requirement by arguing that his

7    contact with California was "tortuitous" and based upon the actions of a third party police

8    officer.  (Bondanella's Motion to Dismiss, pg. 10:2-4.)  However, Ibrahim's arrest was a

9    collective effort between Bondanella and the police officers.  Bondanella directed Ibrahim's

10   detention and the police officer carried out the arrest.  Bondanella may not shirk this Court's

11   jurisdiction by hiding behind those responsible for implementing his improper and unauthorized

12   order.

13                     2.    Ibrahim's Claims Arise From Bondanella's Contact With The Forum
                             Because The "But For" Test Is Satisfied.

14        Bondanella satisfies the "arising out of" requirement because Ibrahim's claims against

15   Bondanella arise exclusively from Bondanella's contact with California.  If the injury

16   complained of would not have occurred "but for" the defendant's contact with the forum state,

17   then the "arising out of" requirement is satisfied. *Gray & Co.* 913 F.2d. at 761.[11]  This element is

18   easily satisfied here.  Ibrahim would not have been arrested *but for* Bondanella ordering that she

19   be arrested. (Complaint, ¶¶ 41-43.)  Ibrahim would not have missed her flight *but for* Bondanella

20   ordering that she be prevented from boarding the aircraft.  *Id.*

21        Bondanella's alleged transient history of California contacts is not at issue. (*See*, e.g.,

22   Bondanella's Motion to Dismiss, pg. 10:25- 11:2.)  "A single forum state contact can support

23   jurisdiction if 'the cause of action… arise[s] out of that particular purposeful contact of the

24   defendant with the forum state.'" *Yahoo!* 433 F.3d at 1210, *citing Lake v. Lake,* 817 F.2d 1416,

25   ──────────────────────
     [10] Bondanella improperly cites *Yahoo!* to suggest that Ibrahim may lack "jurisdictionally sufficient" harm in
     California because she is not a U.S. citizen.  (Bondanella's Motion to Dismiss, pg. 9, fn. 6.)  The jurisdictional harm
26   inquiry speaks only to *where* the harm was suffered— not whether the plaintiff is a U.S. citizen or whether the
     plaintiff *currently* resides in the forum state. *Yahoo! Inc., supra,* 433 F.3d at 1207.

27   [11] Bondanella incorrectly suggests that the "arising out of" element may not be satisfied even if the "but for" test is
     satisfied. (Bondanella's Motion to Dismiss, pg. 11, fn. 7.)  Yet as *Gray* reveals, the contact is sufficiently
28   "meaningful" if it satisfies the "but for" test.

1421 (9th Cir.1987).  Bondanella is subject to *specific* personal jurisdiction with respect to Ibrahim's claims before this Court because he directed an officer to arrest Ibrahim in California— not because he may have lived in California more than ten years before Ibrahim's arrest.  (*See*, e.g., Bondanella's Motion to Dismiss, pg. 10:25-27.)

Finally, Bondanella's "No-Fly List" argument is without merit.  Ibrahim was arrested not because her name may have been on a security screening list, but because Bondanella ordered her arrest.  An airline passenger will not be arrested simply because his name appears on the "No-Fly List." *See*, e.g., *Green v. Transportation Security Administration*, 351 F.Supp.2d 1119, 1123 (W.D. Wash. 2005) (airline passengers named on the "No-Fly List" were neither arrested nor did they miss their flights).  Consequently, the second prong of the specific jurisdiction test (i.e., the "arising out of" requirement) is satisfied.

3.     Subjecting Bondanella To This Court's Jurisdiction Is Reasonable Because The Seven Reasonableness Factors Weigh In Favor Of Jurisdiction.

Subjecting Bondanella to this Court's jurisdiction is reasonable.  The reasonableness requirement involves a seven-factor test: 1) the extent of purposeful interjection; 2) the burden on the defendant to defend the suit in the chosen forum; 3) the extent of conflict with the sovereignty of the defendant's state; 4) the forum state's interest in the dispute; 5) the most efficient forum for judicial resolution of the dispute; 6) the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum. *Gray & Co.* 913 F.2d. at 761.

"No one factor is dispositive; a court must balance all seven." *Panavision*, 141 F.3d at 1323, *citing Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1485 (9th Cir. 1993).  On balance, the seven factors favor subjecting Bondanella to this Court's jurisdiction.

a.     *Defendant's Interjection*

It is reasonable to subject Bondanella to this Court's jurisdiction based upon his interjection into the forum state, California.  The purposeful interjection factor strongly favors a finding of personal jurisdiction when the interjection is related to the plaintiff's claims. *Panavision*, *surpa,* 141 F.3d at 1323.  In fact, Ibrahim's claims against Bondanella arise

25

Plaintiff, Rahinah Ibrahim's, Opposition To Motions To Dismiss Of United Defendants,      Case No. C 06 0545
John Bondanella and Federal Defendants

exclusively from his interjection into California.  Bondanella ordered an officer to arrest Ibrahim in California.  Therefore, Bondanella may reasonably anticipate being haled into California for causes of action based upon the arrest.  Moreover, because Bondanella knew that any injury resulting from his order would be felt within California, this factor favors subjecting Bondanella to this Court's jurisdiction. *See Panavision*, *supra,* 141 F.3d at 1323 (purposeful interjection favors jurisdiction where defendant knew his contacts would cause injury in forum state).

### b.    Burden on Defendant

Any burden on Bondanella will not excuse Bondanella from appearing before this Court. Unless the defendant's "inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128-129 (9th Cir. 1995).  Moreover, "'in this era of fax machines and discount air travel' requiring [an individual defendant] to litigate in California is not constitutionally unreasonable." *Panavision*, 141 F.3d at 1323, *quoting Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990).

### c.    Conflict with Sovereignty

The sovereignty factor favors subjecting Bondanella to jurisdiction before this Court because there is no conflict between Virginia (where Bondanella resides) and California (the forum state).  The sovereignty factor favors jurisdiction in the forum state when the plaintiff's federal and state causes of action require the same analysis. *Panavision*, 141 F.3d at 1323. Ibrahim's federal and state claims against Bondanella involve the same analysis because they arise from the same incident.  Thus, this factor favors a finding of personal jurisdiction because there is no conflict between Virginia and California.

### d.    Interest of the Forum State

The "interest of the forum state" factor favors subjecting Bondanella to jurisdiction before this Court.  At the time of her arrest, Ibrahim was a resident of California. Complaint, ¶ 38. "California maintains a strong interest in providing an effective means of redress for its residents tortiously injured." *Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996). Bondanella attempts to evade this Court's jurisdiction by pointing out that Ibrahim is currently

1    domiciled in Malaysia. (Bondanella's Motion to Dismiss, pg. 14:13-15.)  Ultimately, however,

2    Bondanella is subject to jurisdiction before this Court regardless of whether or not Ibrahim

3    resides in California.  It is sufficient that she was injured in California.  "An individual injured in

4    California need not go to [Virginia] to seek redress from persons who, though remaining in

5    [Virginia], knowingly cause the injury in California." *Calder v. Jones,* 465 U.S. 783, 790 (1984).

6                              *e.      Efficient Resolution*

7         The "efficient resolution" factor favors subjecting Bondanella to jurisdiction before this

8    Court.  "This factor focuses on the location of the evidence and witnesses."  *Panavision*, 141

9    F.3d at 1323.  Bondanella admits that "some of the witnesses and evidence will be located in

10   California."  (Bondanella's Motion to Dismiss, pg. 14:21.)  In fact, the majority of the witnesses

11   and evidence are located in California.  For example, the San Francisco Defendants, the United

12   Defendants, and the appropriate representatives for the Federal Defendants are located in

13   California.  The relevant locations (i.e., the airport, the SFPD, and Stanford University) are all

14   located within California.  Therefore, California would provide efficient resolution for Ibrahim's

15   claims against Bondanella.

16                              *f.      Importance of the Forum to the Plaintiff*

17        It is undoubtedly important to Ibrahim that her claims be adjudicated in California. *See,*

18   e.g., *Roth v. Garcia Marquez*, 942 F.2d 617, 724 (9th Cir. 1991) ("no doctorate in astrophysics is

19   required to deduce that trying a case where one lives is almost always a plaintiff's preference").

20   Ibrahim's American home is in California, as she had been living in California with a student

21   Visa valid from September 26, 2001 to January 11, 2007 and has a continuous working

22   relationship with Stanford University.  (Complaint, ¶ 38.)  Moreover, Ibrahim's counsel are in

23   California and the majority of the events which lead to this action occurred in California.

24                              *g.      Existence of an Alternative Forum*

25        There is no "alternative forum" to adjudicate Ibrahim's claims.  Bondanella incorrectly

26   suggests that Virginia would offer "a full and effective forum for relief."  (Bondanella's Motion

27   to Dismiss, pg. 15:25-26.)  Virginia is not an appropriate alternative because Virginia would not

28

have personal jurisdiction (or be the proper venue) over the other defendants.  Bondanella, and the other nonresident defendants, are subject to personal jurisdiction in California because their contacts with California resulted in injuries suffered in California (i.e., Ibrahim's arrest and exclusion from her flight).  It appears that no Defendant, other than Bondanella, has had any contact with Virginia.[12]

### C.     Even If Bondanella Had Identified Legitimate Jurisdictional Problems, The Court Should Allow Ibrahim To Conduct Discovery As To The Jurisdictional Facts Instead Of Dismissing Bondanella.

Bondanella should not be dismissed for lack of personal jurisdiction— even if he had identified legitimate jurisdictional problems.  The Court only has before it, Bondanella's single declaration in support of the issue of personal jurisdiction over Bondanella.  Ibrahim has had no opportunity to evaluate those facts, question Bondanella on any of these facts, or seek to determine whether those facts are complete.  Thus, Ibrahim should be entitled to conduct discovery as to the jurisdictional facts.  "While a dispositive motion is pending, the court should allow discovery which addresses jurisdictional issues." *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 FRD 670, 672 (SD CA 2001), *citing America West Airlines, Inc. v. GPA Group, Ltd.,* 877 F.2d 793, 801 (9th Cir.1989).  Discovery would reveal the extent to which Bondanella is subject to specific and/or general jurisdiction before this Court.

In his declaration, Bondanella alleges a transient history of California contacts. (See Bondanella Decl.)  Bondanella indicates that, between June 2004 and May 2005, he had received "occasional" telephone calls from law enforcement or airline personnel in California. *Id.* at ¶ 11.  However, he does not indicate exactly how many telephone calls he had received from California, or the percentage of his calls from California versus calls from other states.  Bondanella acknowledges that he worked for the TSOC at the time of the incident.  As stated above, the TSOC provides "guidance" to local officials on how to handle "security related" matters.  As part of his work with the TSOC, Ibrahim should be entitled to conduct discovery as

---

[12] Moreover, it would be impossible for Ibrahim to maintain separate actions against Bondanella in Virginia and the other Defendants in California. *See* FRCP 19(a)2(i) (absent parties must be joined if they are so situated that any judgment rendered in their absence "may as a practical matter impair or impede [their] ability to protect that interest)."

1   to how often he worked with airport officials in California.  Bondanella also indicates that he

2   made "occasional" return trips to California between 1992 and 2004, but again fails to provide

3   any specific information. *Id.* at ¶ 10.  Moreover, Bondanella's declaration includes no

4   information relating to his January 2, 2005 order that Ibrahim be excluded from her flight and

5   arrested.  Ibrahim should be allowed to resolve these issues through discovery.

6        Therefore, even if Bondanella had called into question this Court's jurisdiction over him,

7   Ibrahim would be entitled to propound discovery, and dismissal would be improper.

8   **VI.    Ibrahim Has Properly Stated Claims For Relief Against All Defendants Under 42**
         **U.S.C. section 1983 And Under Her State Law Claims.**

9

10        The federal defendants, Bondanella and the United defendants, all seek to dismiss

11   Ibrahim's state law and 42 U.S.C. section1983 claims under rule 12(b)(6) of the Federal Rules of

12   Civil Procedure.  In fact, on a motion to dismiss for failure to state a claim upon which relief

13   may be granted "[t]he test is whether the facts, as alleged, support ***any*** valid claim entitling

14   Plaintiff to relief...not necessarily the one intended by Plaintiff.  Thus, a complaint should not be

15   dismissed because plaintiff erroneously relies on the wrong legal theory if the facts alleged

16   support any valid theory."  (Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro.

17   Before Trial (The Rutter Group 2006), Sec. 9:227; citing *Haddock v. Board of Dental Examiners*

18   *of Calif.* (9th Cir. 1985) 777 F.2d 462, 464; *Minger v. Green* (6th Cir. 2001) 239 F.3d 793, 799-

19   801; *United States v. White* (CD CA 1995) 893 F.Supp. 1423, 1428.)  (Emphasis added.)

20        Moreover, such motions are "viewed with disfavor and (are) rarely granted."  *Gilligan v.*

21   *Jamzo Develop. Corp.* (9th Cir. 1997) 108 F.3d 246, 249.  Dismissal of an action upon a 12(b)(6)

22   motion should only be granted in "extraordinary" cases.  *United States v. Redwood City* (9th Cir.

23   1981) 640 F.2d 963, 966; *Cauchi v. Brown* (ED CA 1999) 51 F.Supp.2d 1014, 1016.  "Instead of

24   lavishing attention on the complaint until the plaintiff gets it just right, a district court should

25   keep the case moving -- if the claim is unclear, by requiring a more definite statement under Rule

26   12(e), and if the claim is clear, but implausible, by inviting a motion for summary judgment."

27   *Bennett v. Schmidt* (7th Cir. 1998) 153 F.3d 516, 518.  "A complaint should not be dismissed for

28   failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

29

1    in support of his claim which would entitle him to relief." *Conley v. Gibson* (1957) 355 US 41,

2    45-46.  Dismissal under rule 12(b)(6) is "especially disfavored in cases where the complaint sets

3    forth a novel legal theory that can best be assessed after factual development." *Baker v. Cuomo*

4    (2nd Cir. 1995) 58 F.3d 814, 818-819.

5           Moreover, in ruling on a motion to dismiss under 12(b)(6), the Court cannot consider

6    material outside the complaint.  *Arpin v. Santa Clara Valley Transp. Agency* (9th Cir. 2001) 261

7    F.3d 912, 925.  Also, the Court must accept as true all material allegations in the complaint, and

8    any reasonable inferences that may be drawn from them.  *Pareto v. F.D.I.C.* (9th Cir. 1998) 139

9    F.3d 696, 699.  When a complaint's allegations are capable of more than one inference, the court

10   must adopt whichever inference supports a valid claim.  *Columbia Natural Resources, Inc. v.*

11   *Tatum* (6th Cir. 1995) 58 F.3d 1101, 1109.

12   **A.      Ibrahim Has Properly Stated A Claim Under 42 USC §1983 Against The**
         **Federal Defendants, John Bondanella and The United Defendants.**
13

14                1.      Ibrahim Has Constitutional Claims Against Bondanella and the Federal
                          Defendants Under 42 USC §1983 and *Bivens v. Six Unknown Federal*
15                        *Narcotics Agents*.

16          In support of their motions to dismiss pursuant to Rule 12(b)(6), Bondanella and the

17   federal defendants argue that Ibrahim cannot assert §1983 claims against them because: a)

18   Bondanella did "nothing" to deprive Ibrahim of her constitutional rights; and b) Bondanella and

19   the federal defendants were acting under federal law, not under color of state law, and federal

20   agencies and agents are not subject to § 1983.  (Bondanella's Motion to Dismiss, pgs. 17:18-

21   18:9; and Federal Defendants' Motion To Dismiss, pgs. 12:1-13:11.)  These arguments,

22   however, are pure conclusions, which are not supported by the law or by any of Ibrahim's

23   allegations.

24          First, Bondanella cites to his declaration in support of this argument, however, his

25   declaration may not be considered for purposes of his Rule 12(b)(6) motion.  In ruling on a

26   12(b)(6) motion, the Court cannot consider material outside the complaint.  *Arpin v. Santa Clara*

27   *Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).  Further, the Court must accept all

28   material allegations in the complaint, and any reasonable inferences that may be drawn from

1    them.  *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  Moreover, whether or not a party

2    was acting under color of state law is a question of fact, and therefore not proper for a motion to

3    dismiss.  *Lugar v. Edmundson Oil Co.*, 457 U.S. 922, 937, 939 (1982).

4          Moreover, Bondanella and the federal defendants' conduct did cause Ibrahim a

5    deprivation of her constitutional rights.  Liability under §1983[13] attaches to anyone who

6    "subjects or causes to be subjected" any person to a deprivation of rights; therefore an individual

7    can be liable for "'setting in motion a series of acts by others which the actor knows or

8    reasonably should know would cause others to inflict the constitutional injury.'"  *Merritt v.*

9    *Mackey*, 827 F.2d 1368, 1371 (9th Cir. 1987) (*quoting Johnson v. Duffy*, 588 F.2d 740, 743-44

10   (9th Cir. 1978)).  As stated above, the TSOC, an agency within the TSA, is the entity to provide

11   "guidance" to local officials on how to deal with "security related" issues.  Bondanella, acting as

12   an agent of the TSOC, instructed local police officers to arrest Ibrahim and contact the FBI.

13   Ibrahim was arrested by local police officers and called the FBI to inform them of the arrest.

14   Moreover, a TSA officer was also notified, who later arrived at the scene.  Ibrahim was not

15   finally released, until the FBI authorized that release.

16         Bondanella and the federal governments' bare assertions that any action they took was

17   pursuant to federal law is insufficient to establish that they did not act under color of state law, or

18   that they acted under color of federal law.  The No Fly List does not provide authority for any of

19   the defendants for that matter to arrest Ibrahim.  The Security Directives, as acknowledged by

20   the federal defendants, only provide that a person on the No Fly List cannot be allowed to fly.

21   Ibrahim's arrest, caused, in part, by Bondanella, and which was participated in by the federal

22   defendants, was therefore, outside the scope of any purported federal authority.  Rather,

23   Bondanella, as well as the federal defendants, used local peace officers, whose power is granted

24   to them by the California Penal Code, (Calif. Penal Code §§834 and 836), to arrest Ibrahim,

25   without any federal authority under the "No-Fly List" and without probable cause.

26

27

28   _____

[13] Because a § 1983 claim and a *Bivens* claim require the same analysis, the *Merritt* court did not
differentiate between them.  *Merritt v. Mackey*, 827 F.2d 1368, 1371 n.2 (9th Cir. 1987).

1    Federal agents may be liable under § 1983 if the agent participated in a conspiracy or

2    acted in concert with state officials under color of state law to deprive the plaintiff of

3    constitutional rights.  *Behre v. Thomas*, 665 F. Supp. 89, 93 (D.N.H. 1987).  For this reason, the

4    cases cited by Bondanella do not support dismissal of the claims against him or the federal

5    defendants.  *See generally Stonecipher v. Bray*, 653 F.2d 398 (9th Cir. 1981); *American Science*

6    *& Eng'g, Inc. v. Califano*, 571 F.2d 58 (1st Cir. 1978); *Behre v. Thomas*, 665 F. Supp. 89

7    (D.N.H. 1987).  The general rule that only state actors can be liable under § 1983 does not

8    require dismissal here, because the Complaint alleges facts showing that Bondanella and the

9    federal defendants acted jointly under color of state law with San Francisco police officers to

10   deprive Ibrahim of constitutional rights.  (Complaint, ¶¶ 41-46.)  Therefore, Ibrahim's

11   allegations are sufficient to state a § 1983 claim against Bondanella.

12   Moreover, even if Bondanella or the federal defendants could establish that they acted

13   under color of federal rather than state law, it would not warrant dismissal of the constitutional

14   claims against them.  Federal agents may be personally liable for constitutional violations under

15   *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and its progeny.  On a

16   motion to dismiss under Rule 12(b)(6), dismissal is improper if the complaint "states a claim

17   under any legal theory, even if the plaintiff erroneously relies on a different legal theory."

18   *Haddock v. Board of Dental Examiners of Cal.*, 777 F.2d 462, 464 (9th Cir. 1985).  A *Bivens*

19   claim lies against individual federal agents and officials who violate the plaintiff's constitutional

20   rights, under the color of law of the United States.  *See generally Bivens*, 403 U.S. 388.

21   To the extent that this Court accepts Bondanella's or the federal defendants' claims that

22   they acted under the direction of the federal government, the Court may simply construe the

23   claims against Bondanella as *Bivens* claims.  *See*, *e.g.*, *North Carolina ex rel. Haywood v.*

24   *Barrington*, 256 F. Supp. 2d 452, 460-61 (M.D.N.C. 2003) (construing § 1983 claims

25   challenging federal forfeiture as *Bivens* claims); *Bordeaux v. Lynch*, 958 F. Supp. 77, 84 & n.6

26   (N.D.N.Y. 1997) (treating § 1983 claims for violation of the Fourth Amendment as properly

27   pleaded under *Bivens*).  Federal courts have recognized a *Bivens* action for damages for

28   violations of the First Amendment (*Gibson v. United States*, 781 F.2d 1334, 1341-42 (9th Cir.

32

1    1986)), the Fourth Amendment (*Bivens*, 403 U.S. at 397), and the Due Process Clause of the

2    Fifth Amendment, including its equal protection component (*Davis v. Passman*, 442 U.S. 228,

3    243-49 (1979)).

4         Here, Ibrahim has alleged that defendants violated her rights under the First, Fourth,

5    Fifth, and Fourteenth Amendments to the United States Constitution.  (Complaint, ¶¶ 50.)

6    Ibrahim has further alleged that Bondanella received a telephone call from San Francisco Police

7    Officer Richard Pate, and instructed Pate not to allow Ibrahim on the flight, to contact the FBI,

8    and to detain Ibrahim for questioning.  (Complaint, ¶ 41.)  The San Francisco police officers

9    arrested Ibrahim, contacted the FBI and the TSA.  (RFJN, Exh. A.)  Ibrahim was not finally

10   released until the FBI "authorized" local police officers to release her.  (Complaint, ¶46.)  The

11   complaint alleges that these acts were committed under color of state law and in violation of

12   Ibrahim's constitutional right to due process, equal protection, freedom against unreasonable

13   search and seizure, freedom of religion, and freedom of association.  (Complaint, ¶¶ 49-90.)

14   Thus, Ibrahim's allegations also support a *Bivens* action against the federal defendants and

15   Bondanella.

16        Moreover, regardless of whether Ibrahim has a §1983 claim against the federal

17   defendants, Ibrahim can pursue prospective relief for constitutional violations against the federal

18   defendants.  This Court has jurisdiction over Ibrahim's constitutional claims for injunctive and

19   declaratory relief under 28 U.S.C. section 1331, because they arise out of the United States

20   Constitution.  *See also Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 404

21   (1971) (Harlan, J. concurring) (noting the "presumed availability of federal equitable relief

22   against threatened invasions of constitutional interests").

23        Under the Administrative Procedure Act ("APA"), the federal defendants' sovereign

24   immunity has been waived for Ibrahim's nonmonetary claims.  5 U.S.C. § 702; *see also*

25   *Presbyterian Church v. United States*, 870 F.2d 518, 523-24 (9th Cir. 1989) (holding that

26   sovereign immunity was waived for nonmonetary claims arising out of the United States

27

28

1  Constitution).  Because this court has the power to review Ibrahim's nonmonetary claims,[14] it

2  also would have supplemental jurisdiction over any state claims Ibrahim can allege against the

3  Federal Defendants.  *See* 28 U.S.C. § 1367(a).

4              2.     Ibrahim Has Constitutional Claims Against the United Defendants Under

5                   42 USC §1983 and *Bivens v. Six Unknown Federal Narcotics Agents*.

6  The United Defendants assert that Ibrahim has failed to "allege what qualifies United as a

7  state actor for purposes of her suit."[15]  (The United Defendants' Motion To Dismiss pg. 11, fn.7.)

8  For a private party to be liable under §1983, his or her conduct must be "fairly attributable" to

9  the state.  *Lugar v. Edmundson Oil Co.*, 457 U.S. 922, 937 (1982).  To meet this test, the

10  deprivation must ultimately be caused by "the exercise of some right or privilege created by the

11  State or by a rule of conduct imposed by the State or by a person for whom the State is

12  responsible."  *Ibid.*  In addition, the party charged with the deprivation must be someone "who

13  may fairly be said to be a state actor," because he or she (1) is a state official; (2) "has acted

14  together with or obtained significant aide from state officials"; or (3) has acted in a way

15  "otherwise chargeable to the State."  *Ibid.*  The extent of state involvement in the action is **a**

16  **question of fact.**  *Id.* at 939.

---

17  [14] Because plaintiff seeks prospective relief, the Federal Defendants' argument that federal officials acting pursuant
18  to federal law are immune from suit does not defeat plaintiff's claims.  (Federal Defendants' Motion to Dismiss,
   12:1-10 (*citing Cabrera v. Martin*, 973 F.2d 735, 743-44 (9th Cir. 1992).)  *Cabrera* also acknowledges that federal
19  officials sued in their official capacity are subject to injunctive relief under § 1983 if they conspire with state
   officials who, under color of state law, act to deprive a person of protected rights.  *Cabrera*, 973 F.2d at 741.  Thus,
20  federal agents and officials are subject to prospective relief for constitutional violations, whether they commit those
   violations under color of state or federal law.

21  [15] Moreover, the United defendants claim that they are immune from liability under Civil Code section 47 and under
   *Brown v. Department of Corrections* 132 Cal.App.4[th] 520 (2005).  Contrary to the United's defendants' assertion,
22  they are not simply a third party who was calling the police to report a crime.  By notifying governmental agencies
   of passengers on a governmental list, United is inherently participating in the process of enforcing the No-Fly list.
23  An entity must comply with the Constitution if the government has authorized, encouraged, or facilitated the
   unconstitutional conduct. *Blum v. Yaretsky*, 457 U.S. 991 1004 (1982); Erwin Chemerinsky, *Rethinking State Action*,
24  80 NW.U.L.Rev. 503, 511-16 (1985).  Therefore, United is liable for violating plaintiff's constitutional rights, since
   the government has assisted in United's ability to implement the No-Fly list.  Here, United plays a vital role in the
25  implementation of the No-Fly list and works with the relevant governmental entities that maintain, construct and
   implement the list, which deprived plaintiff of her constitutional rights.  Therefore United worked closely with the
26  related entities in implementing the No-Fly list and was an integral part of the process in violating plaintiff's rights.
   Because United is entangled with the governmental entities that maintain the No-Fly list, United plays as much of a
27  role in upholding, continuing and protecting the No-Fly list than any other governmental entity.  As a result, United
   is not immune from liability of plaintiff's claims.

28

1     "Only by sifting facts and weighing circumstances can the nonobvious involvement of

2  the State in private conduct be attributed its true significance." *Burton v. Wilmington Parking*

3  *Authority*, 365 U.S. 715, 722 (1961).  A private entity may be characterized as a state actor if it is

4  "pervasively entwined" with state officials.  *Brentwood Academy v. Tennessee Secondary School*

5  *Athletic Ass'n*, 531 U.S. 288 (2001).  Here, the Complaint alleges that David Nevins, an

6  employee of United Air Lines, asked to see Ibrahim's ticket, called the San Francisco police and

7  requested that they send officers to the airport.  (Complaint, ¶¶ 24-25, 41.)  Upon arriving at the

8  airport, the police officers communicated with defendant Bondanella and arrested Ibrahim

9  without probable cause, in violation of her Fourth Amendment rights.  (Complaint, ¶¶ 41, 43, 70-

10  76.)  This deprivation resulted from the exercise of state authority, namely, the power of the San

11  Francisco police officers to arrest individuals.  The Complaint supports a claim that the United

12  Defendants were state actors, because it alleges that Nevins worked with the San Francisco

13  police officers to effect Ibrahim's arrest, resulting in the deprivation of her constitutional rights.

14  (Complaint, ¶ 41.)  Because the extent of state involvement is a question of fact, *Lugar*, 457 U.S.

15  at 939, the Court should not dismiss the claims against the United Defendants before the parties

16  have had the opportunity to conduct discovery.

17          **B.     Ibrahim Has Properly Stated Claims Under Civil Code Sections 52.1 Against
18                 The United Defendants And Bondanella.**

19          The United defendants and Bondanella assert that Ibrahim has failed to state a claim for

20  violation of sections 52.1 and 52.3 of the California Civil Code.  Ibrahim's claims, however, are

21  proper.

                  1.     Ibrahim Has Properly Stated A Claim Against United and Bondanella
22                        Under Civil Code § 52.1

23          Section 52.1(a) provides "if a person or persons, whether or not acting under color of law,

24  interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or

25  coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the

26  Constitution or laws of the United States, or of the rights secured by the Constitution or laws of

27  this state…may institute and prosecute in his or her own name…a civil action…"

28

In *Jones v. Kmart Corp*., 17 Cal.4th 329 (1998), the Court recognized that section 52.1 provides a cause of action based on attempted or completed interferences with rights secured by law, when a private actor interferes with them, even if the wrongdoer could not violate them directly. *Id*. at 334. *Jones* sets forth an example of a burglary victim, who suspects that his stolen property was hidden in a neighboring house. The victim goes to the house with the police and <u>threatens to injure</u> the homeowner if she does not change her mind and consent to an official and warrantless search of her home. *Jones* holds that in this situation, the homeowner may, under section 52.1, be able to sue her neighbor for interfering with her Fourth Amendment rights, assuming for purposes of this example that the Fourth Amendment protected the homeowner against warrantless searches by the state without her consent. The Court provides another example where a private actor's <u>coercive</u> interference with the right to vote may be actionable under section 52.1, since the right to vote is protected by the U.S. Constitution.

Similar to the examples set forth above, both the United defendants and Bondanella interfered with Ibrahim's exercise of her constitutional rights by acting collaboratively with each other and with the federal defendants and the San Francisco defendants to threaten, intimidate and coerce Ibrahim. United implemented a discriminative "No-Fly List" by calling the San Francisco police. San Francisco Police Sergeant Pate then called the TSOC and spoke to Bondanella, who authorized the arrest of Ibrahim, by telling Sgt. Pate to deny Ibrahim from flying, to contact the F.B.I. and to detain her for further questioning. The sequential and collaborative actions of United with other entities prevented Ibrahim from boarding her flight and led to her eventual arrest without any cause, thereby violating her rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

> 2.    <u>Ibrahim Has Properly Stated A Claim Against The United Defendants and Bondanella Under Civil Code § 52.3.</u>

Civil Code § 52.3(a) provides that "no governmental authority, or agent of a governmental authority, or person acting on behalf of a governmental authority, shall engage in a pattern or practice <u>of conduct by law enforcement officers</u> that deprives any person of rights, privileges, or immunities secured or protected by the Constitution…or the laws of California."

The United defendants and Bondanella contend that section 52.3 do not apply because they are not "law enforcement officers." This assertion, however, is not supported by the law. In *Ley v. State*, for example, 114 Cal.App.4th 1297, 1306 (2004), the Court considered whether the conduct of the state, county and public mental health officials deprived plaintiff of his civil rights. There, the court did not say that the state and county were not liable under section 52.3, because they were not "law enforcement officers." Likewise, section 52.3 does not exclude the United defendants and Bondanella, just because they are not law enforcement officers. Section 52.3 applies, because both United and Bondanella acted on behalf of the government by implementing, authorizing and working collaboratively with other entities to enforce the "No-Fly List." By being part of the scheme of entities that deprived Ibrahim of her rights, United and Bondanella are liable to Ibrahim under section 52.3.

### C.    Ibrahim Has Properly Stated A Claim For False Imprisonment Against The United Defendants And Bondanella.

"'The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief.'" *Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept.* 387 F.Supp.2d 1084, 1102 (N.D. Cal. 2005), *citing Easton v. Sutter Coast Hosp.*, 80 Cal.App.4th 485, 496 (2000).

Bondanella and the United defendants satisfy all three elements for Ibrahim's false imprisonment claim. Bondanella and Nevins, acting on behalf of the United defendants, worked collaboratively with the TSOC, the San Francisco defendants, the FBI, and the TSA, to arrest and imprison Ibrahim. Each of these entities, along with Bondanella, had a hand in leading, coordinating and guiding security activities at the airlines. (RFJN, Exh. I, pgs. 7-8.) Therefore Bondanella and the United Defendants played an active role in the imprisonment of Ibrahim and may be liable for Ibrahim's false imprisonment claim.

First, Nevins contacted the San Francisco police, who then contacted Bondanella, who then told them to detain Ibrahim for further questioning. The arrest, not authorized by the "No-Fly List," was made without any probable cause to believe that Ibrahim had committed a crime.

1    The final element for false imprisonment is plaintiff must be held for an appreciable period of

2    time, no matter how brief.  Ibrahim was in fact imprisoned at the San Francisco Airport police

3    station for hours.  Defendants are therefore liable for false imprisonment.[16]

        **D.      Ibrahim Has Properly Stated A Claim For Intentional And Negligent
                  Infliction Of Emotional Distress Against The United Defendants And
                  Bondanella.**

6            The California Supreme Court has described the elements for the tort of Intentional

7    Infliction of Emotional Distress ("IIED"), as follows:  (1) extreme and outrageous conduct by the

8    defendant with the intention of causing, or reckless disregard of the probability of causing,

9    emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3)

10   actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

11   (*Fletcher v. Western National Life Ins. Co*., 10 Cal.App.3d 376, 394 (1970); *Alcorn v. Anbro*

12   *Engineering, Inc*., 2 Cal.3d 493, 497-499 (1970); and *State Rubbish etc. Assn. v. Siliznoff,* 38

13   Cal.2d 330, 336-339 (1952).  Moreover, severe emotional distress "may consist of any highly

14   unpleasant mental reactions such as fright, grief, shame, humiliation, embarrassment, anger,

15   chagrin, disappointment or worry." *Fletcher v. Western Nat. Life Ins. Co.*, 10 Cal.App.3d 376,

16   397 (1970).  "In many cases the extreme and outrageous character of the defendant's conduct is

17   in itself evidence that the distress has existed." Res.2d, Torts §46, Comment j.

18           In this case, the United defendants and Bondanella jointly participated in the humiliation,

19   embarrassment, and degradation of Ibrahim, by causing her to be arrested in public view, before

20   her friend and her fourteen year old daughter, while she was suffering from abdominal pain,

21   without any probable cause and having done nothing wrong.  Ibrahim alleges that she suffered

22   emotional distress as a result of this outrageous conduct.  (Complaint, ¶113.)

---

[16] Like the United defendants, Bondanella cites to Civil Code § 47(b) to claim immunity from liability for false imprisonment.  However, since § 47(b) does not apply to Bondanella.  Section 47(b) establishes a privilege when a communication concerning a possible wrongdoing is reported to an official governmental agency.  *Brown v. Dept. of Corrections*, 132 Cal.App.4th 520, 526 (2005) *citing Cabesuela v. Browning-Ferris Industries of California, Inc*., 68 Cal.App.4th 101, 112; *Hagberg v. California Federal Bank*, 32 Cal.4th 350, 360-61 (2004).  Here, Bondanella was not a mere reporter of  "potentially unlawful conduct to law enforcement." (Bondanella's Motion To Dismiss, p. 19).  Instead, Bondanella represented one of the agencies receiving the report and actually authorized the imprisonment of plaintiff by instructing Sgt. Pate to detain plaintiff.

Moreover, Ibrahim has a claim for NIED.  "[N]egligently causing emotional distress is not an independent tort but the tort of *negligence*. The traditional elements of duty, breach of duty, causation, and damages apply." *Macy's Calif.  v. Superior Court* 41 Cal.App.4[th] 744, 748 (1995) *citing Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* 48 Cal.3d 583, 588 (1989).  The United defendants, as aircraft carriers which Ibrahim was using for her flight, and Bondanella as an agent of a public government agency, had a duty to refrain from causing Ibrahim to be arrested  without probable cause, which duty was breached when the United defendants contacted the police and Bondanella directed the arrest.  Ibrahim was damaged as she missed her flight, suffered severe abdominal pain, was denied her medication, was detained for several hours and was publicly humiliated by being hand-cuffed in the middle of SFO.

**VII.    Ibrahim Has Properly Stated Claims For Declaratory And Injunctive Relief Against The United Defendants And Bondanella.**

Declaratory or injunctive relief is proper to sustain a cause of action against another person when that person has committed or threatened to commit some wrongful conduct.  *City & County of San Francisco v. Market St. Ry. Co*., 95 Cal.App.2d 648, 655 (1950) (injunctive relief); *Travers v. Louden*, 254 Cal.App.2d 926, 929 (1967) (declaratory relief).  Defendant Bondanella contends that Ibrahim does not have a basis for declaratory or injunctive relief, because he has not committed or threatened to commit some wrongful conduct.  On the contrary, declaratory and injunctive relief is proper for Bondanella because Bondanella authorized the detention of Ibrahim to the San Francisco Police Department ("SFPD"), thus depriving Ibrahim of her constitutional rights and causing Ibrahim to suffer physical and emotional harm.  More specifically, Bondanella told Sergeant Pate, of the SFPD, to deny Ibrahim from flying, to contact the F.B.I. and to detain her for further questioning.  (See Notice Of Motion And Memorandum Of Points And Authorities In Support Of Plaintiff's Motion To Amend Complaint To Add New Parties, filed May 31, 2006, pg. 3).  Furthermore, Bondanella is employed by the U.S. Investigations Services, Inc. ("USIS"), for the Transportation Security Operations Center ("TSOC"), which gives guidance on handling "security related" issues.  (See Notice Of Motion And Memorandum Of Points And Authorities In Support Of Plaintiff's Motion To Amend

39

Plaintiff, Rahinah Ibrahim's, Opposition To Motions To Dismiss Of United Defendants,        Case No. C 06 0545
John Bondanella and Federal Defendants

1  Complaint To Add New Parties, filed May 31, 2006, pg. 3).  Therefore Bondanella had the

2  authority and means to guide the SFPD on how to deal with this alleged "security related" issue,

3  which deprived Ibrahim of her constitutional rights.  Bondanella's wrongful conduct

4  consequently entitles Ibrahim to declaratory and injunctive relief.

5        United contends that an injunction is not the proper remedy, since United has never

6  undertaken or threatened to undertake an act in the first place.  Conversely, United plays the

7  most crucial role in the implementation of the "No-Fly List" and therefore is entangled with the

8  scheme of entities that create the "No-Fly List" and deprived Ibrahim of her constitutional rights.

9  Because United plays an active and collaborative role with the entities designated to maintain,

10  manage and disseminate the "No-Fly List," United has performed an act that may properly be

11  remedied through injunctive relief.  Given the aforementioned reasons, declaratory and

12  injunctive relief is proper.

13  **CONCLUSION**

14        For the reasons set forth herein, Ibrahim requests that this Court deny the motions of the

15  United Defendants, John Bondanella and the Federal Defendants to dismiss this action pursuant

16  to Federal Rules of Civil Procedure, rule 12(b)(1)(2)&(6).

17

18  Dated:  June 8, 2006                                    McMANIS FAULKNER & MORGAN

19

20                                         /S/
                                                        JAMES MCMANIS
21                                                      MARWA ELZANKALY

22                                                      Attorneys for Plaintiff,
                                                        RAHINAH IBRAHIM

23

24

25

26

27

28

Plaintiff, Rahinah Ibrahim's, Opposition To Motions To Dismiss Of United Defendants,          Case No. C 06 0545
John Bondanella and Federal Defendants