JAMES McMANIS (40958)
MARWA ELZANKALY (206658)
KEVIN HAMMON (232360)
McMANIS FAULKNER & MORGAN
A Professional Corporation
50 W. San Fernando, 10th Floor
San Jose, CA 95113
Telephone:     (408) 279-8700
Facsimile:     (408) 279-3244

Attorneys for Plaintiff, Rahinah Ibrahim

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RAHINAH IBRAHIM, an individual,<br><br>     Plaintiff,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY; MICHAEL CHERTOFF, in his official capacity as the Secretary of the Department of Homeland Security; TOM RIDGE, in his official capacity as the former Secretary of the Department of Homeland Security; TRANSPORTATION SECURITY ADMINISTRATION; KIP HAWLEY; in his official capacity as Administrator of the Transportation Security Administration; DAVID M. STONE, in his official capacity as Acting Administrator of the Transportation Security Administration; TERRORIST SCREENING CENTER; DONNA A. BUCELLA, in her official capacity as Director of the Terrorist Screening Center; NORM MINETA, in his official capacity as Secretary of Transportation; FEDERAL AVIATION ADMINISTRATION; MARION C. BLAKEY, in her official capacity as Administrator of the Federal Aviation | CASE NO.  C06-0545 WHA<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1) **42 U.S.C. §1983 – Violation of Due Process;**<br>2) **42 U.S.C. §1983 – Violation of Equal Protection**<br>3) **42 U.S.C. §1983 – Violation of Fourth Amendment**<br>4) **42 U.S.C. §1983 – Violation of First Amendment Right to Freedom of Religion**<br>5) **42 U.S.C. §1983 – Violation of First Amendment Right to Freedom of Association**<br>6) **CA Civ. Code §52.1 – Interference With Exercise of Civil Rights**<br>7) **CA Civ. Code §52.3 – Deprivation of Civil Rights**<br>8) **False Imprisonment**<br>9) **Intentional Infliction of Emotional Distress**<br>10) **Negligent Infliction of Emotional Distress**<br>11) **Declaratory and Injunctive Relief** |

1    Administration; FEDERAL BUREAU OF
INVESTIGATION; ROBERT MUELLER,
2    in his official capacity as Director of the
Federal Bureau of Investigation; SAN
3    FRANCISCO AIRPORT; CITY OF SAN
FRANCISCO; COUNTY OF SAN
4    FRANCISCO; COUNTY OF SAN
MATEO; SAN FRANCISCO POLICE
5    DEPARTMENT; UAL CORPORATION;
UNITED AIRLINES; DAVID NEVINS, an
6    individual; RICHARD PATE, an individual;
JOHN BONDANELLA, an individual;
7    JOHN CUNNINGHAM, an individual;
ELIZABETH MARON, an individual;
8    TRANSPORTATION SECURITY
OPERATIONS CENTER;
9    TRANSPORATION SECURITY
INTELLIGENCE SERVICES; US
10    INVESTIGATIONS SERVICES, INC., a
Virginia Corporation; and DOES 4 through
11    100, inclusive.

12        Defendants.

13

14

15

16 Plaintiff hereby alleges as follows:

17                 **INTRODUCTORY STATEMENT**

18      1.      The above-entitled action is brought under 42 U.S.C. section 1983, and California

19 Civil Code sections 52.1 and 52.3, on the grounds that defendants, among other things, violated

20 the federal and state constitutional rights of plaintiff, granted to her under the First, Fourth, Fifth

21 and Fourteenth Amendments to the United States Constitution, and Article I, Sections 3, 4, 7, 13

22 and 15 of the California Constitution.

23                 **JURISDICTION AND VENUE**

24      2.      This case arises under the United States Constitution and the laws of the United

25 States. This Court has jurisdiction over this action pursuant to Article III of the United States

26 Constitution, 5 U.S.C. Sec. 552a, and 28 U.S.C. sections 1331, 1343 and 1361. Venue is proper

27 in this district, pursuant to 28 U.S.C. section 1391(e), because defendants include officers and

28

First Amended Complaint

1   employees of the United States and the acts and conduct complained of herein occurred in this

2   judicial district.

3                              **INTRADISTRICT ASSIGNMENT**

4       3.     Assignment of this action to the San Francisco Division is proper under Civil

5   Local Rule 3-2(d), because a substantial part of the events giving rise to the claims alleged herein

6   occurred in the County of San Mateo.

7                                        **PARTIES**

8       4.     Plaintiff, RAHINAH IBRAHIM, ("IBRAHIM"), is an individual, who obtained

9   her Doctorate Degree at Stanford University, while in the United States on a student visa, and

10  currently resides in the country of Malaysia.  IBRAHIM has no criminal record and no links to

11  terrorist activity.

12      5.     On information and belief, defendant, DEPARTMENT OF HOMELAND

13  SECURITY ("DHS"), is a department of the United States Government, created on October 8,

14  2001, to develop and coordinate the implementation of a comprehensive national strategy to

15  secure the United States from terrorist threats or attacks.  It is the department ultimately

16  responsible for the Transportation Security Administration and, in turn, the No-Fly List.

17      6.     On information and belief, defendant, MICHAEL CHERTOFF ("CHERTOFF"),

18  is the current Secretary and head of the Department of Homeland Security.  He is sued here in

19  his official capacity.

20      7.     On information and belief, defendant, TOM RIDGE ("RIDGE"), is the former

21  Secretary and head of the Department of Homeland Security.  He is sued here in his official

22  capacity.

23      8.     On information and belief, defendant, TRANSPORTATION SECURITY

24  ADMINISTRATION ("TSA"), is a department of the United States Government and a sub-

25  agency of the DHS.  The role of the TSA is to implement the provisions of the Aviation and

26  Transportation Security Act (P.L. 107-71), signed by President George W. Bush on November

27  19, 2001.  The authority to regulate airport security was transferred to the TSA from the Federal

28  Aviation Administration on November 19, 2001, when the TSA was established.

First Amended Complaint

9.      On information and belief, defendant, KIP HAWLEY ("HAWLEY"), is the Administrator of the TSA, and on information and belief, is responsible for maintaining and managing the No-Fly List. He is sued here in his official capacity.

10.     On information and belief, defendant, DAVID M. STONE ("STONE"), was the Acting Administrator of the TSA at the time of the incident, and on information and belief, was responsible for maintaining and managing the No-Fly List. He is sued here in his official capacity.

11.     On information and belief, defendant, TERRORIST SCREENING CENTER ("TSC"), is a department of the United States Government. Its mission is to maintain a list of "Terrorist Identities Information" for agencies of the United States Government, including the TSA. The TSC determines who is on the list that the TSA uses to compile the No-Fly list.

12.     On information and belief, defendant, DONNA A. BUCELLA ("BUCELLA"), is the Director of the TSC, and is being sued in her official capacity as such.

13.     On information and belief, defendant, NORM MINETA, is the Secretary of Transportation and is being sued in his official capacity as such.

14.     On information and belief, defendant, FEDERAL AVIATION ADMINISTRATION ("FAA"), is an independent federal agency that regulates air travel.

15.     On information and belief, defendant, MARION C. BLAKEY, is the Administrator of the FAA and is being sued in her official capacity as such.

16.     On information and belief, defendant, FEDERAL BUREAU OF INVESTIGATION ("FBI"), is a department of the United States Government, and maintains a "No-Fly watchlist" and transmits this list to the Transportation Security Administration. The airlines are required to check their passenger lists against this No-Fly watchlist.

17.     On information and belief, defendant, ROBERT MUELLER, is the director of the FBI, and is being sued in his official capacity as such.

18.     On information and belief, defendant, SAN FRANCISCO INTERNATIONAL AIRPORT ("SFO"), is an international airport located in San Mateo County.

4

First Amended Complaint

1    19.    On information and belief, defendant, CITY OF SAN FRANCISCO ("CITY OF

2    SF"), is a municipal entity, which oversees the San Francisco Police Department.

3    20.    On information and belief, defendant, COUNTY OF SAN FRANCISCO ("SF

4    COUNTY"), is a municipal entity, which also oversees the San Francisco Police Department.

5    21.    On information and belief, defendant, COUNTY OF SAN MATEO ("SM

6    COUNTY"), is a municipal entity, where SFO is located.

7    22.    On information and belief, defendant, SAN FRANCISCO POLICE

8    DEPARTMENT ("SFPD"), is a police department which has jurisdiction over events occurring

9    at SFO.

10    23.    On information and belief, defendant, UAL CORPORATION ("UAL"), is the

11    holding company for United Airlines.

12    24.    On information and belief, defendant, UNITED AIRLINES, ("UNITED"), is a

13    Delaware corporation with its principal place of business in Chicago, Illinois.

14    25.    On information and belief, defendant, DAVID NEVINS ("NEVINS"), is an

15    employee of UNITED, who works at the UNITED ticket counter at SFO as a Customer Service

16    Supervisor.

17    26.    On information and belief, defendant, RICHARD PATE ("PATE"), is a Police

18    Sergeant for SFPD.

19    27.    On information and belief, defendant, J. CUNNINGHAM ("CUNNINGHAM"),

20    badge number 236, is a police officer of the SFPD.

21    28.    On information and belief, defendant, ELIZABETH MARON ("MARON"), is a

22    police officer of the SFPD.

23    29.    On information and belief, defendant, JOHN BONDANELLA,

24    ("BONDANELLA"), from June, 2004, through May, 2005, was an employee of US

25    Investigations Services, Inc., and was serving as a watch offer in the Transportation Security

26    Operations Center.

27    30.    On information and belief, defendant, TRANSPORATION SECURITY

28    OPERATIONS CENTER ("TSOC"), is a department of the United States Government, and a

5

1  sub-agency of the TSA. The TSA disburses "Federal Security Directors" ("FSDs") to all of the

2  commercial airlines in the US, to lead and coordinate security activities at the respective airlines.

3  The TSOC serves as the point of contact for security related operations, incidents, or crises in

4  aviation and all surface modes of transportation, and provides guidance to FSD's as to how to

5  handle security related issues.

6      31.    On information and belief, the TRANSPORATION SECURITY

7  INTELLIGENCE SERVICE ("TSIS"), is a department of the United States Government, and a

8  sub-agency of the TSA. On information and belief, the TSIS is an intelligence agency within the

9  TSA, that serves as a liaison between the TSA and other agencies, including the FBI and the

10  CIA. The TSOC provides the FSDs with intelligence briefings, based on information obtained

11  from the TSIS. The TSIS also provides FSDs, Deputy FSDs, and Assistant FSDs with daily

12  intelligence information containing the most current threat information from the intelligence

13  community, law enforcement agencies, and stakeholders.

14      32.    On information and belief, US INTELLIGENCE SERVICES, INC. ("USIS"), is a

15  corporation, organized and existing under the laws of the State of Virginia, but which does

16  business and has offices all over the United States, including all over California. USIS provides

17  intelligence and staffing services to various entities, including federal agencies. USIS was the

18  employer of defendant, BONDANELLA, and provided BONDANELLA as a watch officer for

19  the TSOC from June, 2004 through May, 2005.

20      33.    The true names or capacities, whether individual, corporate, associate or

21  otherwise of defendants, DOES 1 through 100, inclusive, are unknown to plaintiff, who therefore

22  sues said defendants by such fictitious names. Plaintiff prays leave to amend the complaint to

23  show the true names and capacities of defendants when the same have been ascertained.

24                          **GENERAL ALLEGATIONS**

25      34.    Plaintiff brings this lawsuit to challenge defendants' administration, management

26  and implementation of the "No-Fly List", a list circulated to commercial airlines and security

27  personnel with instructions to detain and question any passenger whose name matches or is

28  similar to one on the No-Fly List.

6

First Amended Complaint

35.     Defendants began implementing the No-Fly List in November, 2001.  Since then, it has resulted in hundreds, if not thousands, of innocent passengers being routinely stopped, questioned, searched, and sometimes physically arrested, as in this case.  Defendants do not inform individuals that they have been placed on the No-Fly List or why they are on the list. Moreover, individuals whom defendants determine are not security threats continue to be identified on the No-Fly List.   Passengers, therefore, have no meaningful opportunity to challenge their identification on the No-Fly List.

36.     For several years before the terrorist attacks of September 11, 2001, the U.S. Government issued directives identifying persons who were deemed to pose a threat to civil aviation.  In November, 2001, the TSA was formed and assumed responsibility for compiling and administering these directives, with the assistance of the TSC.  Today, defendants maintain at least two watch lists of individuals perceived to be threats to aviation security.  The "no-fly" list contains names of people which airlines are prohibited from transporting.  The "selectee" list contains names of passengers who must go through additional security screening before boarding an aircraft.  These two lists collectively are referred to as the "No-Fly List."  On information and belief, the No-Fly List contains thousands of names, primarily names of individuals of Muslim or Middle Eastern descent.

37.     Until November, 2002, defendants denied the existence of the No-Fly List.  Until today, defendants have refused to disclose important information regarding the No-Fly List, including the criteria for placing names on or removing names from the No-Fly List, procedures for amending information on the List such as when it is determined that an individual is not a security threat, or rules for maintaining or managing the List.  Because defendants have refused to provide any of this information, defendants may be using race, religion, ethnicity, national origin, or the exercise of protected First Amendment rights as factors in maintenance and implementation of the No-Fly List.

38.     On information and belief, defendants occasionally disseminate updated versions of the No-Fly List as attachments to security directives and emergency amendments to commercial airlines in the United States.  The 15 domestic airlines have almost half a million

First Amended Complaint

1   employees and, on information and belief, a substantial percentage of these employees have
2   access to the No-Fly List.  On information and belief, these security directives and the No-Fly
3   List are also provided to customs and immigration agents, airport security, and law enforcement
4   agencies.  Moreover, information from the No-Fly List is inputted into other security databases
5   such as the FBI and the FAA.  On information and belief, defendants, TSA and DHS, and the
6   heads of their departments, instruct recipients of the No-Fly List to detain and interrogate any
7   individual who checks in for a flight whose name is similar or identical to a name on the No-Fly
8   List.  Even if the passenger's actual identity is verified, a boarding pass is issued which is
9   stamped with a mark to indicate the passenger must be subjected to enhanced screening, also
10  referred to as "secondary screening."

11      39.     Innocent passengers subjected to this treatment are stigmatized, humiliated, and
12  subjected to interrogations, delays, enhanced searches, detentions, travel impediments, and
13  sometimes actual physical arrest without a warrant or any probable cause.  This treatment is
14  completely unexpected as they have no notice that they have been placed on the No-Fly List.

15      40.     Plaintiff, IBRAHIM, was subjected to this humiliating treatment on January 2,
16  2005, at the SFO, while traveling to Malaysia, through an initial stop in Hawaii.

17      41.     IBRAHIM is a citizen of Malaysia.  She is a Muslim woman who is clearly
18  identifiable as Muslim as she wears a head scarf, also known as a "hijab."  IBRAHIM has no
19  criminal record and no ties whatsoever to any terrorist activity.  At the time of the incident,
20  IBRAHIM was a student at Stanford University, studying to obtain her Doctorate Degree (PhD),
21  and lawfully in the United States on a student visa.  IBRAHIM's student visa was valid from
22  September 26, 2001 to January 11, 2007.  She was preparing her thesis on affordable housing
23  and on January 2, 2005, IBRAHIM was scheduled to fly to Kuala Lumpur, Malaysia, with a
24  changing flight in Hawaii, to present her research findings at a conference sponsored by Stanford
25  University.  She was scheduled to return to Stanford in March, 2005, to submit her dissertation
26  and complete her PhD.

27      42.     Prior to her trip, in October, 2004, IBRAHIM had a hysterectomy surgery at
28  Stanford University Medical Hospital, with an extremely invasive abdominal approach.

First Amended Complaint

IBRAHIM suffered severe complications from her surgery which extended her recovery period for months.   IBRAHIM also suffered back and abdominal pain from her surgery and was regularly taking medication for these complications.

43.   On January 2, 2005, at approximately 7:00 a.m., IBRAHIM arrived at SFO with her fourteen-year old daughter.  IBRAHIM and her daughter were scheduled to leave on a United Airlines flight from SFO, at 9:00 a.m.  IBRAHIM and her daughter, escorted by IBRAHIM's friend, went to the ticket counter to obtain their boarding passes and check in their bags. IBRAHIM informed UNITED of her medical complications and requested wheelchair transportation to the airline gate.

44.   At that time, defendant, NEVINS, approached IBRAHIM and asked to see her tickets.  NEVINS called SFPD and informed them that IBRAHIM was on the No-Fly List.  At the request of NEVINS, defendants, CUNNINGHAM and PATE, of SFPD, arrived at the airport. On information and belief, PATE checked the No-Fly List for IBRAHIM's name.  He called defendant, BONDANELLA, of the TSIS in Washington, D.C.  Defendant, BONDANELLA, told defendant, PATE, to not allow IBRAHIM on the flight, to contact the FBI, and to detain IBRAHIM for questioning.  A SFPD officer, whose name is not known to plaintiff, also arrived at the scene.

45.   Meanwhile, IBRAHIM stood waiting for an hour and a half, with no wheelchair, while she suffered from back and abdominal pain.  IBRAHIM's friend informed the SFPD officers several times of IBRAHIM's medical condition.

46.   At 8:45 a.m., fifteen minutes before IBRAHIM's flight was scheduled to leave, defendant, CUNNINGHAM, told IBRAHIM that she was being arrested.  IBRAHIM was handcuffed by CUNNINGHAM, with her hands placed behind her back, in the middle of the airport, in front of her fourteen-year old daughter, and everyone else at SFO.  IBRAHIM was not informed as to why she was being arrested.  Instead, she was taken to the SFPD police station, escorted by three male officers, while she sat in the back seat, rubbing her abdominal muscles from the pain.

///

9

47.    Upon arriving at the police station, IBRAHIM was searched by defendant, MARON.  During this search, MARON attempted to remove IBRAHIM's hijab and searched under her hijab in public view, before the other male officers.  On information and belief, the police officers also informed the FBI of IBRAHIM's detention.

48.    IBRAHIM was placed in a holding cell at the SFPD police station for approximately two hours while she continued to suffer from severe back and abdominal pain.  IBRAHIM was not given her medication when she asked for it to relieve her pain.  Eventually, the paramedics were called as a result of IBRAHIM's medical condition.  IBRAHIM was finally given her medication after the paramedics left.

49.    On information and belief, the FBI finally requested SFPD to release IBRAHIM at approximately 11:15 a.m., over two hours after her flight had left.  IBRAHIM was given no information as to why her name was on the No-Fly List.

50.    Defendants represented to plaintiff that her name had been removed from the No-Fly List.  The following day, on January 3, 2006, IBRAHIM discovered that she was still on the No-Fly List when she attempted to fly again.  After some effort, IBRAHIM was finally allowed to fly to Kuala Lumpur, Malaysia.  At SFO, however, and at every stop over, IBRAHIM was publicly subjected to enhanced searches before boarding any flights.

51.    On July 1, 2005, plaintiff filed a claim with the City and County of San Francisco and a claim with the City and County of San Mateo for her damages suffered as a result of defendants' conduct.  On August 2, 2005, the County of San Mateo issued a letter rejecting plaintiff's claim.  On September 8, 2005, the City and County of San Francisco issued a letter, also rejecting plaintiff's claim.

///

///

///

///

///

///

10

First Amended Complaint

1

## FIRST CAUSE OF ACTION

2      **(42 U.S.C. Section 1983 Violations of Plaintiffs' Rights Under the United States**

3      **Constitution.)**

4      52.      Plaintiff re-alleges paragraphs 1 through 48 above and incorporates them herein

5      by reference.

6      53.      In doing the acts complained of herein, defendants deprived plaintiff of her rights

7      under the United States Constitution as set forth under the First, Fourth, Fifth and Fourteenth

8      Amendments to the United States Constitution;

9      54.      Defendants, in committing the acts herein alleged, were acting under color of state

10      law.

11      55.      Defendants were acting in accordance with their custom, policy and/or practice in

12      violating plaintiff's constitutional rights as set forth above.

13      56.      As a direct and proximate result of defendants' wrongful acts alleged herein,

14      plaintiff suffered severe damages, including humiliation and damage to her reputation, physical

15      pain, emotional distress, and deprivation of her constitutional rights, according to proof at the

16      time of trial.

17      57.      Defendants committed the actions alleged herein maliciously, fraudulently,

18      oppressively and with the wrongful intention of injuring plaintiff. Defendants acted with an

19      improper motive amounting to malice and with conscious disregard of plaintiff's rights. As

20      such, plaintiff is entitled to recover punitive damages from defendants in an amount according to

21      proof at the time of trial.

22      ## SECOND CAUSE OF ACTION

23      **(42 U.S.C. Section 1983 Violations of Plaintiff's Right to Due Process.)**

24      58.      Plaintiff re-alleges paragraphs 1 through 54 above and incorporates them herein

25      by reference.

26      59.      In doing the acts complained of herein, defendants deprived plaintiff of her right

27      to Procedural and Substantive Due Process under the United States Constitution as set forth

28      under the Fifth and Fourteenth Amendments to the United States Constitution;

First Amended Complaint

60. The No-Fly List and the placement of IBRAHIM on this list is unconstitutional in that it violates the due process protections guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sections 7 and 15 of the California Constitution. On information and belief, the placement of names on the No-Fly List is done in an arbitrary and capricious manner and without any factual findings or rational basis.

61. Defendants' actions in administering and maintaining the No-Fly List deprived plaintiff of liberty and property interests protected by the Fifth Amendment. Defendants are grossly negligent, reckless, and/or deliberately indifferent to the risk that the deprivations these actions cause. The deprivations are without due process of law because plaintiff was not informed of her placement on the No-Fly List or given any opportunity to contest such placement. Also, defendants have failed to provide constitutionally adequate mechanisms for plaintiff to avoid being subjected to the stigma, interrogations, delays, enhanced searches, detentions, and/or other travel impediments associated with having a name identical or similar to a name on the No-Fly List.

62. Defendants, in committing the acts herein alleged, were acting under color of state law.

63. Defendants were acting in accordance with their custom, policy and/or practice in violating plaintiff's constitutional rights as set forth above.

64. As a direct and proximate result of defendants' wrongful acts alleged herein, plaintiff suffered severe damages, including humiliation and damage to her reputation, physical pain, emotional distress, and deprivation of her constitutional rights, according to proof at the time of trial.

65. Defendants committed the actions alleged herein maliciously, fraudulently, oppressively and with the wrongful intention of injuring plaintiff. Defendants acted with an improper motive amounting to malice and with conscious disregard of plaintiff's rights. As such, plaintiff is entitled to recover punitive damages from defendants in an amount according to proof at the time of trial.

///

**THIRD CAUSE OF ACTION**

**(42 U.S.C. Section 1983 Violations of Plaintiff's Right to Equal Protection)**

66.     Plaintiff re-alleges paragraphs 1 through 62 above and incorporates them herein by reference.

67.     In doing the acts complained of herein, defendants deprived plaintiff of her right to Equal Protection under the United States Constitution as set forth under the Fourteenth Amendment to the United States Constitution;

68.     Defendants placed IBRAHIM on the No-Fly List in an arbitrary and capricious manner, and arrested her for several hours.  On information and belief, defendants acted in a discriminatory manner, with the intent to discriminate, in that IBRAHIM was placed on the No-Fly List and arrested based on her religious beliefs and her national origin as a citizen of Malaysia.

69.     Defendants, in committing the acts herein alleged, were acting under color of state law.

70.     Defendants were acting in accordance with their custom, policy and/or practice in violating plaintiff's constitutional rights as set forth above.

71.     As a direct and proximate result of defendants' wrongful acts alleged herein, plaintiff suffered severe damages, including humiliation and damage to her reputation, physical pain, emotional distress, and deprivation of her constitutional rights, according to proof at the time of trial.

72.     Defendants committed the actions alleged herein maliciously, fraudulently, oppressively and with the wrongful intention of injuring plaintiff.  Defendants acted with an improper motive amounting to malice and with conscious disregard of plaintiff's rights.  As such, plaintiff is entitled to recover punitive damages from defendants in an amount according to proof at the time of trial.

///

///

///

13

First Amended Complaint

## **FOURTH CAUSE OF ACTION**

**(42 U.S.C. Section 1983 Violation of Plaintiff's Fourth Amendment Right Against**

**Unreasonable Search and Seizure)**

73.     Plaintiff re-alleges paragraphs 1 through 69 above and incorporates them herein by reference.

74.     In doing the acts complained of herein, defendants deprived plaintiff of her right against unreasonable searches and seizures under the United States Constitution as set forth under the Fourth Amendment to the United States Constitution;

75.     Defendants placed IBRAHIM on the No-Fly List, arrested her, and searched her without any probably cause or an arrest or search warrant.  As alleged above, it is common for individuals who have no links to terrorist activity to be placed on the No-Fly List or to be detained for having a name similar to a name on the No-Fly List and to be subjected to enhanced searches without any cause.

76.     Defendants, in committing the acts herein alleged, were acting under color of state law.

77.     Defendants were acting in accordance with their custom, policy and/or practice in violating plaintiff's constitutional rights as set forth above.

78.     As a direct and proximate result of defendants' wrongful acts alleged herein, plaintiff suffered severe damages, including humiliation and damage to her reputation, physical pain, emotional distress, and deprivation of her constitutional rights, according to proof at the time of trial.

79.     Defendants committed the actions alleged herein maliciously, fraudulently, oppressively and with the wrongful intention of injuring plaintiff.  Defendants acted with an improper motive amounting to malice and with conscious disregard of plaintiff's rights.  As such, plaintiff is entitled to recover punitive damages from defendants in an amount according to proof at the time of trial.

///

///

14

1

## FIFTH CAUSE OF ACTION

2

**(42 U.S.C. Section 1983 Violation of Plaintiff's Right to Freedom of Religion)**

3       80.     Plaintiff re-alleges paragraphs 1 through 76 above and incorporates them herein

4   by reference.

5       81.     In doing the acts complained of herein, defendants deprived plaintiff of her

6   freedom of religion under the United States Constitution as set forth under the First Amendment

7   to the United States Constitution;

8       82.     Plaintiff is an identifiable Muslim woman who wears the hijab.  Defendants

9   violated plaintiff's freedom of religion in that, on information and belief, plaintiff, and other

10  individuals placed on the No-Fly List, are targeted based on their religious beliefs or appearance.

11      83.     Defendants, in committing the acts herein alleged, were acting under color of state

12  law.

13      84.     Defendants were acting in accordance with their custom, policy and/or practice in

14  violating plaintiff's constitutional rights as set forth above.

15      85.     As a direct and proximate result of defendants' wrongful acts alleged herein,

16  plaintiff suffered severe damages, including humiliation and damage to her reputation, physical

17  pain, emotional distress, and deprivation of her constitutional rights, according to proof at the

18  time of trial.

19      86.     Defendants committed the actions alleged herein maliciously, fraudulently,

20  oppressively and with the wrongful intention of injuring plaintiff.  Defendants acted with an

21  improper motive amounting to malice and with conscious disregard of plaintiff's rights.  As

22  such, plaintiff is entitled to recover punitive damages from defendants in an amount according to

23  proof at the time of trial.

24

## SIXTH CAUSE OF ACTION

25

**(42 U.S.C. Section 1983 Violations of Plaintiffs' Right to Freedom of Association)**

26      87.     Plaintiff re-alleges paragraphs 1 through 83 above and incorporates them herein

27  by reference.

28  ///

88.     In doing the acts complained of herein, defendants deprived plaintiff of her freedom of association under the United States Constitution as set forth under the First Amendment to the United States Constitution;

89.     Plaintiff is an identifiable Muslim woman who wears the hijab.  Defendants violated plaintiff's freedom of association in that, on information and belief, plaintiff, and other individuals placed on the No-Fly List, are targeted based on their association with the Muslim community or the Islamic religion, and based on her national origin.

90.     Defendants, in committing the acts herein alleged, were acting under color of state law.

91.     Defendants were acting in accordance with their custom, policy and/or practice in violating plaintiff's constitutional rights as set forth above.

92.     As a direct and proximate result of defendants' wrongful acts alleged herein, plaintiff suffered severe damages, including humiliation and damage to her reputation, physical pain, emotional distress, and deprivation of her constitutional rights, according to proof at the time of trial.

93.     Defendants committed the actions alleged herein maliciously, fraudulently, oppressively and with the wrongful intention of injuring plaintiff.  Defendants acted with an improper motive amounting to malice and with conscious disregard of plaintiff's rights.  As such, plaintiff is entitled to recover punitive damages from defendants in an amount according to proof at the time of trial.

## SEVENTH CAUSE OF ACTION

### (Interference With Exercise Of Civil Rights – California Civil Code Section 52.1)

94.     Plaintiff realleges paragraphs 1 through 90 above and incorporates them herein by reference.

95.     Defendants placed plaintiff on the No-Fly List and on January 2, 2005, defendants, police officers, arrested plaintiff without a warrant or other legal process.

96.     Defendants made the arrest without probable cause to believe that plaintiff had committed a crime.

16

First Amended Complaint

1    97.    The arrest interfered with plaintiff's constitutional rights granted to her under the

2    First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and Article I,

3    Sections 3, 4, 7, 13 and 15 of the California Constitution.

4    98.    On information and belief, the acts of the defendants herein alleged were done

5    with malice, fraud, and oppression, and in reckless disregard of plaintiff's constitutional rights.

6    99.    As a proximate result of the acts of defendants herein alleged, plaintiff incurred

7    both economic and noneconomic damages.

8    100.    Defendants committed the actions alleged herein maliciously, fraudulently,

9    oppressively and with the wrongful intention of injuring plaintiff.  Defendants acted with an

10   improper, evil motive amounting to malice and with conscious disregard of plaintiff's rights.  As

11   such, plaintiff is entitled to recover punitive damages from defendants in an amount according to

12   proof at the time of trial.

13                              **EIGHTH CAUSE OF ACTION**

14              **(Deprivation of Civil Rights – California Civil Code Section 52.3]**

15   101.    Plaintiff realleges paragraphs 1 through 97 above and incorporates them herein by

16   reference.

17   102.    On January 2, 2005, defendants, police officers, arrested plaintiff without a

18   warrant or other legal process.

19   103.    Defendants made the arrest without probable cause to believe that plaintiff had

20   committed a crime.

21   104.    The arrest deprived plaintiff of her constitutional rights granted to her under the

22   First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and Article I,

23   Sections 3, 4, 7, 13 and 15 of the California Constitution.

24   105.    On information and belief, the acts of the defendants herein alleged were done

25   with malice, fraud, and oppression, and in reckless disregard of plaintiff's constitutional rights.

26   106.    On information and belief, the acts of defendants herein alleged, were done

27   pursuant to a pattern and practice of depriving persons of rights, privileges, and immunities

28

First Amended Complaint

1    secured by the laws and Constitution of the State of California, and the laws and Constitution of

2    the United States.

3        107.    As a proximate result of the acts of defendants herein alleged, plaintiff incurred

4    both economic and noneconomic damages.

5        108.    Defendants committed the actions alleged herein maliciously, fraudulently,

6    oppressively and with the wrongful intention of injuring plaintiff. Defendants acted with an

7    improper, evil motive amounting to malice and with conscious disregard of plaintiff's rights. As

8    such, plaintiff is entitled to recover punitive damages from defendants in an amount according to

9    proof at the time of trial.

10                          **NINTH CAUSE OF ACTION**

11                              **(False Imprisonment)**

12        109.    Plaintiff realleges paragraphs 1 through 105 above and incorporates them herein

13    by reference.

14        110.    On January 2, 2005, in the city of San Francisco, defendants, police officers,

15    maliciously seized and arrested plaintiff, without a warrant, or other legal process.

16        111.    Defendants made the arrest without probable cause to believe that plaintiff had

17    committed a crime.

18        112.    Plaintiff was imprisoned at the San Francisco Airport police station for hours.

19        113.    As a proximate result of the acts of defendants herein alleged, plaintiff incurred

20    both economic and noneconomic damages.

21        114.    Defendants committed the actions alleged herein maliciously, fraudulently,

22    oppressively and with the wrongful intention of injuring plaintiff. Defendants acted with an

23    improper, evil motive amounting to malice and with conscious disregard of plaintiff's rights. As

24    such, plaintiff is entitled to recover punitive damages from defendants in an amount according to

25    proof at the time of trial.

26    ///

27    ///

28    ///

First Amended Complaint

## **TENTH CAUSE OF ACTION**

### **(Intentional Infliction of Emotional Distress)**

115.    Plaintiff realleges paragraphs 1 through 111 above and incorporates them herein by reference.

116.    On January 2, 2005, defendants, police officers, arrested plaintiff, knowing that they lacked a warrant or other legal process. Defendants made the arrest, knowing that they lacked probable cause to believe that plaintiff had committed a crime.  Therefore, defendants made the arrest with the intention of causing, or reckless disregard of the probability of causing, emotional distress for plaintiff.

117.    On information and belief, the acts of the defendants herein alleged were willful, despicable, malicious, and oppressive.

118.    As a proximate result of the acts of defendants herein alleged, plaintiff incurred severe emotional distress and mental suffering.  Plaintiff experienced extreme humiliation, shame, and anger when:

a)    Defendants, police officers, handcuffed plaintiff in front of her fourteen year old daughter at the San Francisco Airport, on the morning of January 2, 2005;

b)    A crowd of passengers gathered to watch defendants, police officers, detain and arrest plaintiff, without a warrant or probable cause, at the San Francisco Airport on the morning of January 2, 2005;

c)    Defendants, police officers, forced plaintiff to miss her flight by detaining and arresting her without a warrant or probable cause;

d)    Defendant, MARON, removed part of plaintiff's hijab and loosened plaintiff's hair;

e)    Defendants, police officers, caused plaintiff to experience abdominal pain and high blood pressure by incarcerating plaintiff in a detention area without access to her medications;

f)    Defendants, police officers, forced plaintiff to urinate in a public area while in the holding cell.

First Amended Complaint

g)      Defendants represented to plaintiff that her name had been removed from the No-Fly List, but plaintiff later discovered that defendants had in fact made no effort to remove plaintiff from the No-Fly List.

## ELEVENTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress)

119.   Plaintiff realleges paragraphs 1 through 115 above and incorporates them herein by reference.

120.   On January 2, 2005, defendants, police officers, knew or should have known that arresting and imprisoning plaintiff without a warrant or probable cause would cause plaintiff severe emotional distress.

121.   On January 2, 2005, defendants, police officers, arrested plaintiff, knowing that they lacked a warrant or other legal process. Defendants made the arrest, knowing that they lacked probable cause to believe that plaintiff had committed a crime.

122.   On information and belief, the acts of the defendants herein alleged were willful, despicable, malicious, and oppressive.

123.   As a proximate result of the acts of defendants herein alleged, plaintiff incurred severe emotional distress and mental suffering.  Plaintiff experienced extreme humiliation, shame, and anger when:

a)      Defendants, police officers, handcuffed plaintiff in front of her fourteen year old daughter at the San Francisco Airport, on the morning of January 2, 2005;

b)      A crowd of passengers gathered to watch defendants, police officers, detain and arrest plaintiff, without a warrant or probable cause, at the San Francisco Airport on the morning of January 2, 2005;

c)      Defendants, police officers, forced plaintiff to miss her flight by detaining and arresting her without a warrant or probable cause;

d)      Defendant, MARON, removed part of plaintiff's hijab and loosened plaintiff's hair;

e)      Defendants, police officers, caused plaintiff to experience abdominal

First Amended Complaint

1    pain and high blood pressure by incarcerating plaintiff in a detention area without access to her

2    medications;

3            f)      Defendants, police officers, forced plaintiff to urinate in a public area;

4            g)      Defendants represented to plaintiff that her name had been removed from

5    the No-Fly List, but plaintiff later discovered that defendants had in fact made no effort to

6    remove plaintiff from the No-Fly List.

7                   **TWELFTH CAUSE OF ACTION**

8                **(Declaratory and Injunctive Relief)**

9       124.      Plaintiff realleges paragraphs 1 through 120 above and incorporates them herein

10    by reference.

11       125.      An actual and immediate controversy has arisen and now exists between plaintiff

12    and defendants related to their respective rights and duties. Defendants have unlawfully failed to

13    comply with constitutional requirements by engaging in the acts and omissions described in this

14    Complaint. Plaintiff is, therefore, entitled to a declaration of rights over this controversy.

15       126.      Plaintiff has no adequate remedy at law. Defendants have acted, and continue to

16    act, to deprive plaintiff of her constitutional rights. Plaintiff is suffering and will continue to

17    suffer irreparable injury as a result of the policies and practices described in this Complaint

18    unless those policies and practices are enjoined by this Court. Plaintiff has no plain, adequate, or

19    speedy remedy at law and is entitled to injunctive relief against defendants. Plaintiff has no

20    administrative remedy because defendants' policies and practices preclude any administrative

21    determinations from affording actual relief.

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

First Amended Complaint

## PRAYER

WHEREFORE, plaintiffs pray for the following relief:

a.    For compensatory damages according to proof ;

b.    For exemplary and punitive damages according to proof;

c.    For costs of suit, including attorneys' fees;

d.    For a declaration that defendants' maintenance, management, and dissemination of the No-Fly list are unconstitutional under the First, Fourth, Fifth and Fourteenth Amendments.

e.    For an injunction requiring defendants to remedy immediately the Constitutional violations in the maintenance, management, and dissemination of the No-Fly list.

f.    For an injunction requiring defendants to remove IBRAHIM's name from the No-Fly List.

g.    And such other and further relief as the Court may deem appropriate.

Dated:  July 31, 2006                                    McMANIS FAULKNER & MORGAN

                                                        _____
                                                        JAMES McMANIS
                                                        MARWA ELZANKALY
                                                        KEVIN HAMMON

                                                        Attorneys for Plaintiff,
                                                        RAHINAH IBRAHIM

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated:  July 31, 2006                                    McMANIS FAULKNER & MORGAN

                                                        _____
                                                        JAMES McMANIS
                                                        MARWA ELZANKALY
                                                        KEVIN HAMMON

                                                        Attorneys for Plaintiff,
                                                        RAHINAH IBRAHIM

First Amended Complaint