**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAHINAH IBRAHIM, an individual,<br><br>          Plaintiff,<br><br>   v.<br><br>DEPARTMENT OF HOMELAND SECURITY, MICHAEL CHERTOFF, in his official capacity as the Secretary of the Department of Homeland Security, TOM RIDGE, in his official capacity as the former Secretary of the Department of Homeland Security, TRANSPORTATION SECURITY ADMINISTRATION, KIP HAWLEY, in his official capacity as Administrator of the Transportation Security Administration, DAVID M. STONE, in his official capacity as Acting Administrator of the Transportation Security Administration, TERRORIST SCREENING CENTER, DONNA A. BUCELLA, in er official capacity as Director of the Terrorist Screening Center, NORM MINETA, in his official capacity as Secretary of Transportation, FEDERAL AVIATION ADMINISTRATION, MARION C. BLAKEY, in her official capacity as Administrator of the Federal Aviation Administration, FEDERAL BUREAU OF INVESTIGATION, ROBERT MUELLER, in his official capacity as Director of the Federal Bureau of Investigation, SAN FRANCISCO AIRPORT, CITY OF SAN FRANCISCO, COUNTY OF SAN FRANCISCO, COUNTY OF SAN MATEO, SAN FRANCISCO POLICE DEPARTMENT, UAL CORPORATION, UNITED AIRLINES; DAVID NEVINS, an individual, RICHARD PATE, an individual, JOHN BONDANELLA, an individual, JOHN CUNNINGHAM, an individual, ELIZABETH MARON, an individual, and DOES 1 THROUGH 100, inclusive,<br><br>          Defendants.<br>_____ / | No. C 06-00545 WHA<br><br>**ORDER GRANTING FEDERAL DEFENDANTS' MOTION FOR CLARIFICATION OF AUGUST 2006 ORDER; GRANTING PLAINTIFF'S MOTION TO STAY; DENYING USIS AND SAN FRANCISCO DEFENDANTS' MOTIONS TO DISMISS AS MOOT; AND VACATING HEARING** |

**INTRODUCTION**

This is an action involving a challenge by plaintiff Rahinah Ibrahim to the so-called "No-Fly List" and a related challenge to plaintiff's arrest and interrogation by the San Francisco Police Department at the San Francisco International Airport. This Court issued an order on August 16, 2006, dismissing plaintiff's claims as to three groups of defendants, primarily on grounds that the court of appeals rather than this Court had subject-matter jurisdiction to consider plaintiff's constitutional challenge to the No-Fly List. The Court entered partial judgment in favor of defendants, and plaintiff filed a notice of appeal to the Ninth Circuit. The remaining defendants in this action, a group of San Francisco municipal defendants and United States Investigations Services, Inc., did not join the initial round of motions to dismiss. These remaining defendants now move to dismiss plaintiff's amended complaint on the same basic theories that this Court already addressed in the August 2006 order. Plaintiff, in turn, seeks to stay this action and resolution of the remaining defendants' motions until the Ninth Circuit rules on plaintiff's appeal. Given the overlap of the issues between the remaining defendants' motions and the issues pending appeal, this Court finds that a stay is appropriate. Plaintiff's motion is **GRANTED**. The remaining defendants' motions are **DENIED AS MOOT**.

As a separate matter, the federal defendants in this action move to make minor clarifications to the August 2006 order pursuant to Federal Rule of Civil Procedure 60(a). These minor clarifications have no effect on the substance of the August 2006 order and are justified. Accordingly, federal defendants' motion is **GRANTED**.

**STATEMENT**

The factual and statutory framework for plaintiff's action was set forth in detail in this Court's August 2006 order granting the motions to dismiss brought by federal defendants, United Airlines defendants, and defendant John Bondanella. Briefly, both before and after the terrorist attacks of September 11, 2001, federal law has prohibited a host of violent or threatening conduct committed aboard aircrafts. On November 19, 2001, in the wake of the September 11 attacks, Congress enacted the Aviation and Transportation Security Act. P.L. 107-71 (2001). In the ATS Act, Congress authorized additional prophylactic measures

relating to aircraft security. One significant component of the Act was to confer the responsibility for airline security upon the Under Secretary of Transportation for Security, who is the head of the Transportation Security Administration. Pursuant to the Act, the TSA became an agency within the Department of Transportation. 49 U.S.C. 114(a). In March 2003, after the creation of the Department of Homeland Security, the TSA shifted and became an agency under the DHS. 6 U.S.C. 203(2). The ATS Act stated that "[t]he Under Secretary shall prescribe regulations to protect passengers and property on an aircraft operating in air transportation or intrastate air transportation against an act of criminal violence or aircraft piracy." 49 U.S.C. 44903(b). Pursuant to the ATS Act, TSA has implemented the provisions of the ATS Act through a series of security directives.

One such TSA directive is the so-called "No-Fly List," which is one subject of plaintiff Ibrahim's action. The No-Fly List is actually comprised of two separate watch lists. One list is known as the "Selectee List." The Selectee List identifies individuals who must undergo additional security screening, above and beyond the screening imposed on all passengers. The other list is the actual "No-Fly List." The actual No-Fly List identifies individuals who are prohibited from boarding aircrafts and flying altogether. A separate agency from the TSA known as the Terrorist Screening Center actually compiles the list of names ultimately placed on the No-Fly List.

\*          \*          \*

Plaintiff Rahinah Ibrahim is a citizen of Malaysia. Ibrahim is a Muslim woman. She is 41 years old. As of 2005, Ibrahim was a doctoral student at Stanford University. She was scheduled to complete her degree in March 2005. Ibrahim has no criminal record or links to terrorist activity (First Amd. Compl. ¶¶ 4, 41).

Ibrahim had a student visa that was valid from 2001 to 2007. She and her fourteen-year-old daughter were scheduled to travel to Kuala Lumpur on January 2, 2005. The travel itinerary called for them to fly on United Airlines from San Francisco to Kuala Lumpur, with an intermediate stop in Hawaii.

3

On January 2, 2005, at 7:00 a.m., Ibrahim and her daughter arrived at San Francisco International Airport. Their flight was scheduled to depart at 9:00 a.m. They went to the United ticket counter, seeking to check-in. According to plaintiff, the United ticketing agent, defendant David Nevins, found Ibrahim's name on the No-Fly List (First Amd. Compl. ¶ 44). Nevins then allegedly called the San Francisco Police Department to report this information. SFPD Officers Richard Pate and J. Cunningham, also defendants in this action, arrived to investigate the report.

Officer Pate called defendant John Bondanella in Washington, D.C. At the time of the incident, Bondanella worked for defendant United States Investigations Services, Inc., which provided contract services to the United States government. USIS contracted out Bondanella's services to the TSA (Bondanella Decl. 4). Bondanella apparently confirmed that Ibrahim was on the No-Fly List and that the Officer Pate should detain Ibrahim (*ibid.*).

At 8:45 a.m., Ibrahim was handcuffed behind her back and escorted by officers to SFPD's police station near the airport. She was placed in a holding cell for over two hours. While in custody, Ibrahim was questioned and searched by several officers. (First Amd. Compl. ¶¶ 46–47). At 11:15 a.m., the Federal Bureau of Investigation purportedly requested Ibrahim's release (First Amd. Compl. ¶ 49).

\*         \*         \*

On January 27, 2006, Ibrahim filed a complaint against a long list of defendants. The defendants fell into four categories: The federal defendants, the United defendants, the San Francisco defendants, and John Bondanella.[1]

---

[1] The "federal defendants" include: TSA; DHS; Michael Chertoff in his official capacity as Secretary of DHS; Tom Ridge in his official capacity as the former Secretary of DHS; Edmund S. Hawley in his official capacity as Assistant Secretary of TSA; David M. Stone in his official capacity as former Administrator of TSA; the Terrorist Screening Center; Donna A. Bucella in her official capacity as Director of TSC; Norm Mineta in his official capacity as Secretary of Transportation; the Federal Aviation Administration; Marion C. Blakely in her official capacity as Administrator of FAA; FBI;Robert Mueller in his official capacity as Director of FBI; the Transportation Security Operations Center; and the Transportation Security Intelligence Service.

The "United defendants" include: United Airlines; UAL Corporation; and United customer-service agent David Nevins.

The "San Francisco defendants" include: The San Francisco International Airport; the City and

4

Ibrahim's complaint included claims under 42 U.S.C. 1983 and California Civil Code §§ 52.1 and 52.3 against all defendants for violations of numerous of her federal and state constitutional rights. Plaintiff also listed claims for certain common-law torts. Plaintiff also listed declaratory and injunctive relief as a separate claim. Plaintiff sought compensatory, exemplary and punitive damages. She also sought a declaration that "defendants' maintenance, management, and dissemination of the No-Fly List are unconstitutional;" for an injunction "requiring defendants to remedy immediately the Constitutional violations;" and for an injunction "to remove IBRAHIM's name from the No-Fly List."

On January 30, 2006, plaintiff also filed a petition based on related allegations directly with the Ninth Circuit. *Ibrahim v. Tran*, Case No. 06-70574. On June 13, the Ninth Circuit transferred the petition to the Court of Appeals for the District of Columbia.

Federal defendants, United defendants, and Bondanella moved to dismiss the initial complaint and plaintiff sought leave to amend. San Francisco defendants did not join the dismissal motions, and instead answered the complaint. Extensive oral argument on those motions was heard on July 20, 2006. An order issued that same day, granting plaintiff leave to amend and allowing defendants to renew their motions to dismiss, so as to address any potential changes in the jurisdictional landscape following the amendment.

The amended complaint was filed on August 4, 2006. The amended complaint left intact all of the allegations and legal claims from the initial complaint, but added three entities to the list of federal defendants: The Transportation Security Operations Center ("TSOC"); the Transportation Security Intelligence Service ("TSIS"); and the United States Investigations Services, Inc. ("USIS"). Because the jurisdictional questions pertaining to USIS as a private entity incorporated in Virginia and unaffiliated with the other defendants might have been unique, no findings were made with respect to USIS in the August 2006 order. The order also did not address the claims against the San Francisco Defendants. The holdings of that order relating to the Federal Defendants were, however, deemed to apply equally to TSOC and TSIS.

---

County of San Francisco; the San Francisco Police Department; and SFPD Officers Pate, Cunningham and Maron.

5

In conjunction with the August 2006 order, the Court entered a partial judgment as to the prevailing defendants so that plaintiff could immediately appeal this Court's rulings. That appeal is now pending in the Ninth Circuit (separately from plaintiff's direct petition to the courts of appeals pending in the Court of Appeals for District of Columbia).

**ANALYSIS**

Plaintiff now moves to stay further proceedings pending determination of her appeal before the Ninth Circuit. San Francisco defendants and USIS move to dismiss on the same grounds upon which the other defendants' earlier motions were granted. Finally, federal defendants request that two minor clarifications be made to the August 2006 order.

**1.    PLAINTIFF'S MOTION TO STAY.**

Plaintiff argues that this action, including any determination on the remaining defendants' motions to dismiss, should be stayed pending her appeal to the Ninth Circuit. According, to plaintiff a stay is appropriate because the motions involve the same issues pending before the Ninth Circuit, and thus involve issues over which this Court lacks jurisdiction. This order agrees.[2]

"As a general rule, '[o]nce a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed.'" *Nat'l Ass'n of Home Builders v. Norton*, 325 F.3d 1165, 1167 (9th Cir. 2003) (internal citation omitted). "One reason for this rule is to 'avoid the confusion that would ensue from having the same issues before two courts simultaneously.'" *Id.* at 1167–68 (internal citation omitted). In other words, "[t]he appellate court is 'entitled to review a fixed, rather than a mobile, record.'" *Fed. Trade Comm'n v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1216 n. 11 (9th Cir. 2004) (internal citation omitted). "Additional findings that 'move the target' are disfavored. Additional findings that merely 'set [the target] in place,' however, are acceptable." *Ibid.* (internal citation omitted).

Here, the motions to dismiss by USIS and San Francisco defendants raise two challenges. *First*, the motions argue that this Court is without subject-matter jurisdiction to

---

[2] Only USIS has opposed plaintiff's motion to stay. San Francisco defendants have not opposed plainitff's motion.

consider plaintiff's challenge to the constitutionality of the No-Fly List. *Second*, the motions challenge whether plaintiff's arrest was proper under state and federal law, and if these defendants can be deemed to have acted in concert with federal officials in depriving plaintiff's rights.

These two issues are precisely the issues on appeal before the Ninth Circuit. This Court entered the separate judgment so that plaintiff could seek review of this Court's determination that her arrest was not violative of her rights and that the courts of appeals, not the district courts have subject-matter jurisdiction over challenges to the No-Fly List. For this Court to rule again on these issues while they are pending before the Ninth Circuit would yield the type of inefficiency and confusion for the appellate court that the rule espoused in *Home Builders* above was intended to prevent. Furthermore, ruling on the remaining defendants' motions could yield inefficiency in this Court. For example, if this Court issued an order permitting plaintiff to go forward on her claims regarding the propriety of the arrest, but the Ninth Circuit ultimately decides that this Court *also* has jurisdiction over challenges to the No-Fly List, the action would be at different stages as to different defendants. This would be a waste of resources for the Court as well as the parties in terms of discovery, motion practice, and trial. Accordingly, plaintiff's motion to stay this action pending the Ninth Circuit's opinion is **GRANTED**. USIS and San Francisco defendants' motions to dismiss are **DENIED AS MOOT**, subject to renewal upon the Ninth Circuit's issuance of an order on plaintiff's appeal.

### 2. FEDERAL DEFENDANTS' MOTION TO AMEND THE AUGUST 2006 ORDER.

As plaintiff's concede, however, this Court does have jurisdiction to entertain federal defendants' motion to make two minor clarifications to the Court's August 2006 Order. As noted above, this Court still has jurisdiction to issue orders "that merely 'set [the target] in place,'" for the court of appeals. *Enforma*, 362 F.3d at 1216 n. 11. "[W]hen a district court attempts to correct a 'clerical error' under Federal Rule of Civil Procedure 60(a) after a notice of appeal has been filed, and the correction does not represent a change of position, but rather simply clarifies the court's intended action." *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 654 (9th Cir. 1991) (internal citation omitted).

7

Federal defendants' merely seek to clarify two points in the August 2006 Order. *First*, federal defendants seek to clarify that they did not "concede" at the hearing on the initial motions to dismiss that plaintiff Ibrahim was on the No-Fly List, but rather they "assumed *arguendo*" for purposes of their Rule 12(b)(1) motion that plaintiff was on the No-Fly List (Br. 2). This order agrees that federal defendants only assumed plaintiff's presence on the list for purposes of the motion, as is evidenced by the hearing transcript (July 20, 2006 Tr. 7):

> It is those directives that plaintiff truly complains of. Because if we assume *arguendo* that she was placed on the No-Fly List on January 2nd of last year — and I'm just assuming that argument. I'm not authorized to make a representation either way whether she was on that list or not. But if we assume that as true, then what she's really complaining of is the TSA security directives which prohibited her from boarding that aircraft.

To the extent the August 2006 order suggested that federal defendants admitted plaintiff was *actually* on the list, the order requires clarification. What the order intended to express was that, for purposes of plaintiff's Rule 12 motion, it would be *assumed* that plaintiff was on the list. The time for a finding of fact as to that issue would be later in this action, in the event the court of appeals were to find that this Court in fact had jurisdiction over plaintiff's challenge to the No-Fly List.

*Second*, federal defendants seek to clarify a detail about the TSA's Passenger Identification Verification process. As described in the August 2006 order, "[t]he Passenger Identification Verification process allows individuals to submit identification in advance of travel and thereby assure that they are not mistaken for being on the No-Fly List" (Order at 11). Federal defendants now seek to clarify that the Passenger Identification Verification process is no longer limited to "'mistaken-identity' individuals" (Br. 5). The process has been extended to allow persons who believe they *were* included on the No-Fly List to seek administrative review of that placement (Kennedy Decl. ¶¶ 3–6). Federal defendants' request to modify the August 2006 order so as to clarify this fact is **GRANTED**.

Even with this modification, the result of plaintiff's arguments regarding the Passenger Identification Verification process do not differ. The August 2006 order rejected plaintiff's argument that she could challenge the Passenger Verification Identification process as a

8

"collateral order" immune from the jurisdictional bar of Section 46110 (*ibid.*). The August 2006 order added, as a secondary matter, that the so-called collateral order was not the subject of plaintiff's amended complaint, primarily because she was not seeking to clear herself as *not on* the list (*i.e.*, the mistaken-identity scenario), but rather she was seeking to challenge her placement *on* the list (*i.e.*, the updated scenario) (*ibid*). As the August 2006 order explained, the Passenger Identification Verification process "is not genuinely implicated by plaintiff's amended complaint so as to confer subject-matter jurisdiction on this Court" (*id*. at 12). This conclusion remains true. No where in plaintiff's amended complaint did she challenge the Passenger Verification Identification process. Rather, all of her constitutional challenges were directed to the "administration, management, and implementation" of the No-Fly List itself (First Amd. Compl. ¶ 34). Accordingly, the conclusion in the August 2006 remains correct.

## CONCLUSION

For the foregoing reasons, federal defendants' motion to amend the August 2006 order is **GRANTED**. Plaintiff's motion to otherwise stay this action pending appeal by the Ninth Circuit is also **GRANTED**. Plaintiff's counsel is instructed to notify the Court of any such ruling by the Ninth Circuit within **24 HOURS**. Until then, the motions to dismiss by USIS and San Francisco defendants are **DENIED AS MOOT**. Following such ruling by the Ninth Circuit, however, USIS and San Francisco defendants may renew their motions. Finding no further argument necessary, hearing on these motions is hereby vacated.

**IT IS SO ORDERED.**

Dated: November 2, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE