**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAHINAH IBRAHIM, an individual,
*Plaintiff-Appellant,*

v.

DEPARTMENT OF HOMELAND
SECURITY; MICHAEL CHERTOFF, in
his official capacity as the
Secretary of the Department of
Homeland Security; TOM RIDGE, in
his official capacity as the former
Secretary of the Department of
Homeland Security
TRANSPORTATION SECURITY
ADMINISTRATION; KIP HAWLEY, in
his official capacity as
Administrator of the
Transportation Security
Administration; DAVID M. STONE,
in his official capacity as Acting
Administrator of the
Transportation Security
Administration; TERRORIST
SCREENING CENTER; DONNA
BUCELLA, in her official capacity
as Director of the Terrorist
Screening Center; NORM MINETA,
in his official capacity as
Secretary of Transportation;
FEDERAL AVIATION ADMINISTRATION;

No. 06-16727

D.C. No.
CV-06-00545-WHA

OPINION

Marion C. Blakey, in her official
capacity as Administrator of the
Federal Aviation Administration;
Federal Bureau of Investigation;
Robert Mueller, in his official
capacity as Director of the Federal
Bureau of Investigation,
                    *Defendants-Appellees,*

UAL Corporation; United
Airlines; David Nevins, an
individual,
                    *Defendants-Appellees,*

John Bondanella, an individual,
                    *Defendant-Appellee,*

Transportation Security
Operations Center;
Transportation Security
Intelligence Services,
                    *Defendants-Appellees,*

                    and

San Francisco Airport; City of
San Francisco; County of San
Francisco; City of San Francisco
Police Department,
                    *Defendants,*

Richard Pate, an individual,
                    *Defendant,*

JOHN CUNNINGHAM, an individual;
ELIZABETH MARON, an individual,
                              *Defendants,*

US INVESTIGATIONS SERVICES, INC.,
a Virginia corporation,
                              *Defendant.*

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted
April 18, 2008—San Francisco, California

Filed August 18, 2008

Before: Alex Kozinski, Chief Judge, N. Randy Smith,
Circuit Judge, and S. James Otero,* District Judge.

Opinion by Chief Judge Kozinski;
Dissent by Judge N.R. Smith

---

*The Honorable S. James Otero, United States District Judge for the
Central District of California, sitting by designation.

## COUNSEL

Marwa Elzankaly, James McManis and Kevin Hammon, McManis Faulkner & Morgan, San Jose, California, for the plaintiff-appellant.

Joshua Waldman, Appellate Staff Attorney, Peter D. Keisler, Assistant Attorney General, Scott N. Schools, U.S. Attorney, and Douglas N. Letter, Appellate Staff Attorney, U.S. Department of Justice, Washington, D.C., for the federal defendants-appellees.

Sharon Douglass Mayo, Arnold & Porter LLP, San Francisco, California, and E. Alex Beroukhim, Arnold & Porter LLP, Los Angeles, California, for defendant-appellee John Bondanella.

Richard G. Grotch, Redwood City, California, for defendants-appellees David Nevins, United Air Lines, Inc. and UAL Corporation.

## OPINION

KOZINSKI, Chief Judge:

We consider our jurisdiction over the claims of a passenger detained at a U.S. airport because her name is on the federal government's No-Fly List.

### Facts

Rahinah Ibrahim is a Malaysian Muslim who studied at Stanford University under a student visa. In January 2005, she tried to fly from San Francisco to Malaysia, but when presented her ticket at the United Air Lines counter, the airline discovered her name on the federal government's No-Fly List. The airline refused to let her board, and its employee, David Nevins, called the San Francisco police.

When the police arrived, they phoned the Transportation Security Intelligence Service, which is part of the Transportation Security Administration, which is in turn part of the Department of Homeland Security. An employee named John Bondanella answered the phone at the Transportation Security Intelligence Service's office in Washington, D.C.[1] He instructed the police to prevent Ibrahim from flying, to detain her for further questioning and to call the FBI. The police did as they were told: Without explaining their reasons, they handcuffed Ibrahim in front of her fourteen-year-old daughter and took her to the police station. Two hours later, the FBI told the police to release her, and the police complied.

The following day, Ibrahim again attempted to fly from San Francisco to Malaysia. This time she was permitted to do so,

---

[1]The complaint suggests that Bondanella took the call at the Transportation Security Intelligence Service, even though he was at the time serving as a watch officer of a different sub-agency of the Transportation Security Administration: the Transportation Security Operations Center.

but only after "enhanced" searches. She hasn't returned to the United States.

Ibrahim brought this lawsuit against United Air Lines, Bondanella, the police, the city and county of San Francisco and numerous federal officials and agencies.[2] She asks for an injunction directing the government to remove her name from the No-Fly List and to cease certain policies and procedures implementing the No-Fly List, and also asserts causes of action under 42 U.S.C. § 1983, California tort law and the Constitution, *see Bivens* v. *Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Ibrahim's case against some defendants is still pending below,[3] but the district court dismissed Ibrahim's claims against the federal government, the United Air Lines defendants and Bondanella, and entered final judgment as to them under Rule 54(b). Ibrahim appeals that dismissal.

## Analysis

**1.** Ibrahim challenges placement of her name on the No-Fly List and the government's policies and procedures implementing the No-Fly List.[4] We assume that section 702 of the

---

[2]Ibrahim also filed a petition directly with us pursuant to 49 U.S.C. § 46110(a), a statute that gives federal appellate courts jurisdiction to "review" the "order[s]" of the Transportation Security Administration. *See* pp.10949-52 *infra*. In June 2006, we held that, because Ibrahim is no longer a resident of California, her petition "must be filed" in the D.C. Circuit. *Ibrahim* v. *Dep't of Homeland Sec.*, No. 06-70574 (9th Cir. June 13, 2006) (unpublished). We transferred the petition to that court, which has stayed it pending the present lawsuit.

[3]Still before the district court are Ibrahim's claims against the San Francisco Airport; the City of San Francisco; the County of San Francisco; the City of San Francisco Police Department; the police officers who Ibrahim claims were involved in her arrest and detention; and U.S. Investigations Services, Inc., the Virginia corporation that employed Bondanella and "provided" him to the Transportation Security Operations Center as a watch officer, First Am. Compl. ¶ 32; *see* p.10947 n.1 *supra*.

[4]Ibrahim claims that the government violated her right to procedural due process; her right to equal protection; her Fourth Amendment right to be

Administrative Procedure Act waives sovereign immunity and provides Ibrahim with a cause of action.[5] 5 U.S.C. § 702; *Glacier Park Found.* v. *Watt*, 663 F.2d 882, 885 (9th Cir. 1981) (the APA gives individuals the right to challenge illegal agency action in court). We do not decide that issue, however, because the parties haven't briefed it and the district court hasn't had an opportunity to consider it.

**[1]** Instead, the district court ruled that 49 U.S.C. § 46110(a) stripped it of the jurisdiction it would otherwise have had over these claims pursuant to 28 U.S.C. § 1331. Section 46110 grants exclusive jurisdiction to the federal courts of appeals to "review" the "order[s]" of a number of agencies, including the Transportation Security Administration. *Clark* v. *Busey*, 959 F.2d 808, 811-12 (9th Cir. 1992). The district court ruled that it lacked jurisdiction to consider Ibrahim's claims against the federal government because "the No-Fly List is an 'order' [of the Transportation Security Administration] under the ambit of section 46110."

**[2] a.** *Placement of Ibrahim's name on the No-Fly List.* The

---

free from unreasonable searches and seizures; her right to freely exercise her religion; and her right to freely associate with other Muslims and Malaysians. *See generally* Justin Florence, Note, *Making the No Fly List Fly: A Due Process Model for Terrorist Watchlists*, 115 Yale L.J. 2148, 2159-65 (2006) (discussing constitutional rights that could be implicated by the No-Fly List). The parties haven't briefed whether the Constitution in fact confers any of these rights on Ibrahim, so we do not consider the question.

[5]Ibrahim's complaint doesn't cite the Administrative Procedure Act, but it does name the relevant agencies as defendants and it asks for an injunction "to remove [her] name from the No-Fly List" and to "remedy . . . the Constitutional violations in the maintenance, management, and dissemination of the No-Fly List." The APA claim is thus properly before us. *See Sagana* v. *Tenorio*, 384 F.3d 731, 737 (9th Cir. 2004) (plaintiff "need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case").

district court determined, based on undisputed facts,[6] that an agency called the Terrorist Screening Center, "actually compiles the list of names ultimately placed on the No-Fly List." And the Terrorist Screening Center isn't part of the Transportation Security Administration or any other agency named in section 46110; it is part of the Federal Bureau of Investigation, as the government concedes. Gov't's Br. at 24; *see* Homeland Security Presidential Directive 6 (Sept. 16, 2003) (ordering the Attorney General to "establish an organization to consolidate the Government's approach to terrorism screening"). Because putting Ibrahim's name on the No-Fly List was an "order" of an agency *not* named in section 46110, the district court retains jurisdiction to review that agency's order under the APA.

*Gilmore* v. *Gonzales*, 435 F.3d 1125, 1131-33 (9th Cir. 2006), is not to the contrary. Plaintiff in *Gilmore* wasn't on the No-Fly List; he nevertheless complained about the Transportation Security Administration's "Security Directive" that required airlines to check his name against the list. *See* 49 U.S.C. § 114(h)(3) (the Transportation Security Administra-

---

[6]The government submitted the declaration of Joseph Salvator, a Deputy Assistant Administrator of the Transportation Security Administration, who represents that the Terrorist Screening Center "maintain[s]" the No-Fly List. Salvator Decl. ¶ 9. Maintaining the list is part of the Terrorist Screening Center's mission of "consolidating the federal government's approach to terrorist screening and providing for the appropriate and lawful use of terrorist information in screening processes." *Id.* In addition to the No-Fly List, the center also maintains the Terrorist Screening Database, which is the government's "consolidated" database of "known and suspected terrorists." *Id.* From that master database, the center "exports data" to the No-Fly List. *Id.*

Consistent with Salvator's declaration, the government represented to the First Circuit that the Transportation Security Administration lacks authority to decide whose name goes on the No-Fly List. *See* Gov't's Memorandum in Opposition, *Gray* v. *TSA*, No. 05-2024 (1st Cir. Sept. 27, 2005) ("[I]t is not TSA but another agency within the government that makes the determination that an individual . . . should be placed on . . . the No-Fly List.").

tion must "establish policies and procedures" that "require[ ] air carriers" to prevent dangerous people from boarding). Gilmore claimed that the Constitution forbade the entire "[s]cheme" of checking his identification against a watchlist. *See id.* at 1131. He therefore challenged the Security Directive that required the airlines to check his identification, and we held that section 46110 gave us jurisdiction over that challenge.[7] Gilmore did not have standing to challenge the compilation of the No-Fly List and we therefore had no occasion to consider whether placement of a name on the list is an "order" of the Transportation Security Administration that can be reviewed under section 46110. When we wrote that "[t]he No-Fly and Selectee lists are Security Directives" that are "issued by [the Transportation Security Administration]," we referred, not to the lists themselves, but to the Security Directive compelling airlines to check passengers' identification against the lists. 435 F.3d at 1131 n.4.

The government also argues that, even if the decision to put Ibrahim's name on the No-Fly List wasn't an "order" of the Transportation Security Administration, it was "inescapably intertwined" with that agency's orders and is therefore still reviewable under section 46110. But the statute provides jurisdiction to review an "order"— it says nothing about "intertwining," escapable or otherwise. The government advances no good reason why the word "order" should be interpreted to mean "order or any action inescapably intertwined with it." Instead, the government cites two cases that use the phrase "inescapably intertwined" to refer to *claims* that are inescapably intertwined with our *review* of an order. *Gilmore*, 435 F.3d at 1133 n.9 (section 46110 gives the federal appellate courts jurisdiction to hear a claim that the Transportation Security Administration's Security Directives

---

[7]Plaintiff in *Gilmore* challenged the "constitutionality" of the No-Fly List, 435 F.3d at 1131, but we didn't describe the details of his constitutional challenge because we determined that he lacked standing to bring it, *id.* at 1134.

are unconstitutionally vague); *Foster* v. *Skinner*, 70 F.3d 1084
(9th Cir. 1995) (section 46110 gives the federal appellate
courts jurisdiction to hear a pilot's challenge to the Federal
Aviation Administration's decision to suspend his license). In
both cases, an agency named in section 46110 issued the
order complained of, so in neither case did we consider
whether an order issued by some other agency may be
reviewed under section 46110.

Our interpretation of section 46110 is consistent not merely
with the statutory language but with common sense as well.
Just how would an appellate court review the agency's deci-
sion to put a particular name on the list? There was no hearing
before an administrative law judge; there was no notice-and-
comment procedure.[8] For all we know, there is no administra-
tive record of any sort for us to review. *See* Florence, *supra*,
at 2155-59 (the process of maintaining the No-Fly List is
opaque). So if any court is going to review the government's
decision to put Ibrahim's name on the No-Fly List, it makes
sense that it be a court with the ability to take evidence.

**[3]** The No-Fly List is maintained by the Terrorist Screen-
ing Center, and section 46110 doesn't apply to that agency's
actions. The district court therefore retains original jurisdic-
tion over Ibrahim's APA claim regarding placement of her
name on the No-Fly List pursuant to 28 U.S.C. § 1331.[9]

---

[8]The lack of a notice and comment procedure cannot overcome a direct
statutory command, of course. For example, the Transportation Security
Administration may issue its Security Directives without first giving
notice and an opportunity to comment, yet the appellate courts review
those directives under section 46110 all the same. *See* 49 U.S.C.
§ 114(*l*)(2)(A); *Gilmore*, 435 F.3d at 1131-33. Here, there is no express
statutory command authorizing our review, and the absence of a record
lends support to the view that Congress didn't intend for us to do so.

[9]The government argued below, as it does here, that the No-Fly List
causes Ibrahim no concrete injury because she now lives in Malaysia and
doesn't have a U.S. visa. But Ibrahim points out that she may apply for
a visa in the future and that, even if she does not, the fact that her name

[4] **b.**  *Policies and procedures implementing the No-Fly List*. Ibrahim complains that the Transportation Security Administration instructs airline personnel to detain and interrogate any person whose name is on the No-Fly List, and that because her name was on the list, she was "stigmatized, humiliated, and subjected to interrogations, delays, enhanced searches, detentions, travel impediments, and . . . actual physical arrest." She further alleges that the agency didn't give her an "opportunity to contest" the placement of her name on the No-Fly List before subjecting her to this treatment. Ibrahim thus challenges the Transportation Security Administration's Security Directive implementing the No-Fly List, which requires airlines to check passengers' identification against the No-Fly List and establishes other "policies and procedures" to be followed if they find a passenger's name on the list.[10] 49 U.S.C. § 114(h)(3); *see* p.10950-51, *supra*. As we held in *Gilmore*, the Security Directive is an "order" of the Transportation Security Administration that is reviewable under section 46110. *Gilmore*, 435 F.3d at 1133. Therefore, section 46110 stripped the district court of the jurisdiction it would otherwise have had over Ibrahim's APA claim regarding the government's policies and procedures implementing the No-Fly List.

---

is on the list still prevents her from "board[ing] a United States airline" anywhere in the world. Whether Ibrahim has standing to bring a claim for removal of her name from the No-Fly List is highly fact-dependent, so the district court is in the best position to resolve it in the first instance. On remand, therefore, Ibrahim must show that she "is realistically threatened" with concrete injury in the future. *Armstrong* v. *Davis*, 275 F.3d 849, 861 (9th Cir. 2001) (quoting *City of Los Angeles* v. *Lyons*, 461 U.S. 95, 109 (1983)). The district court should resolve this question before addressing the merits of Ibrahim's APA claim regarding placement of her name on the No-Fly List.

[10] The precise policies and procedures mandated by the Security Directive are not known to Ibrahim or to us because the Security Directive is "sensitive security information" that the government maintains may not be disclosed to the public or in open court. Gov't Br. at 22 n.7.

**[5]** **2.** In addition to her claims for injunctive relief under the Administrative Procedure Act, Ibrahim is also suing federal officials and agencies under section 1983 and under *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). But no *Bivens*-like cause of action is available against federal agencies or federal agents sued in their official capacities. *FDIC* v. *Meyer*, 510 U.S. 471, 485-86 (1994); *Nurse* v. *United States*, 226 F.3d 996, 1004 (9th Cir. 2000). And section 1983 only provides a remedy against persons acting under color of state law. *See, e.g.*, *Cabrera* v. *Martin*, 973 F.2d 735, 742 (9th Cir. 1992). Here, the federal defendants acted pursuant to federal laws. *See, e.g.*, 49 U.S.C. § 114(h) (the Transportation Security Administration has authority to identify and prevent from boarding passengers who may threaten airline safety).

**[6]** Ibrahim reads our decision in *Cabrera* as making an exception to this rule where, as here, federal officials recruit local police to help enforce federal law. But we created no such exception in *Cabrera*; instead, we reaffirmed the longstanding principle that federal officials can only be liable under section 1983 where there is a "sufficiently close nexus between the State and the challenged action of the [federal actors] so that the action of the latter may be fairly treated as that of the State itself." *Cabrera*, 973 F.2d at 744 (internal quotation marks and citation omitted) (bracketed text in original). California had nothing to do with the federal government's decision to put Ibrahim on the No-Fly List, nothing to do with the Transportation Security Administration's Security Directives that told United Air Lines what to do when confronted with a passenger on the No-Fly List, and nothing to do with Bondanella's decision to order the San Francisco police to detain Ibrahim. The police will, of course, have to answer for their own actions with respect to Ibrahim, but *that* part of the case is still before the district court. *See* p.10948 n.3 *supra*.

**[7]** Nor does section 1983 give Ibrahim a cause of action against United Air Lines and its employee, David Nevins,

because she hasn't alleged that either party was acting under color of California or local law. Ibrahim's claims against United and Nevins are based entirely on Nevins's phone call to the local police. But Ibrahim points to no California or local law that required Nevins to place this call, so Ibrahim hasn't alleged that he was acting on behalf of the state or local government. *See Lugar* v. *Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (private persons are only state actors if their acts are "fairly attributable" to the state). Nor does Ibrahim suggest that state or local officials were somehow involved in Nevins's decision to place the call, so she hasn't alleged that he conspired with state or local officials or engaged in "joint action" with them. *See Dennis* v. *Sparks*, 449 U.S. 24, 27-28 (1980).

[8] In short, all of Ibrahim's section 1983 claims fail because none of the appellees now before us acted under color of state law.

[9] 3. Ibrahim also claims that defendants committed various torts. As for United Air Lines and David Nevins, her claims fail because these defendants' only supposedly tortious act was Nevins's phone call to the San Francisco police. That call is privileged under state law and thus cannot be the basis for tort liability. *See Hagberg* v. *Cal. Fed. Bank FSB*, 32 Cal. 4th 350, 364 (2004).

[10] Except for John Bondanella, whom we consider below, Ibrahim has sued the federal officials in their official capacities. These officials, like their employer, cannot be liable for state-law torts unless Congress has waived the United States' sovereign immunity. *Gibbons* v. *United States*, 75 U.S. (8 Wall.) 269, 274-76 (1868). Ibrahim claims that Congress did so in the Federal Tort Claims Act, but that statute only waives sovereign immunity if a plaintiff first exhausts his administrative remedies. *See* 28 U.S.C. § 2675(a); *McNeil* v. *United States*, 508 U.S. 106, 113 (1993). Ibrahim didn't do this before she filed her complaint, and she didn't ask the dis-

trict court to stay the litigation so she could attempt to do it while the litigation was pending. Dismissal with prejudice was therefore proper. *See McNeil*, 508 U.S. at 113.

**4.**   Unlike all the other federal defendants, John Bondanella was sued in his individual capacity. Ibrahim claims Bondanella injured her and violated her constitutional rights when he ordered the San Francisco police to detain her at the airport. The district court dismissed him from the lawsuit on the theory that it lacked personal jurisdiction over him. On appeal, Bondanella defends that ruling. He didn't argue below, and he doesn't argue here, that the Federal Tort Claims Act preempts state tort law because he was acting within the scope of his federal employment, *see* 28 U.S.C. § 2679(c)-(d), so we don't consider this or any other alternative defense.

**[11]** Bondanella lives in Virginia and has no ties to California, so the district court doesn't have general jurisdiction over him. But the court does have specific jurisdiction under our three-pronged test: (1) Bondanella purposefully directed his action (namely, his order to detain Ibrahim) at California; (2) Ibrahim's claim arises out of that action; and (3) jurisdiction is reasonable. *See Yahoo! Inc.* v. *La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006) (en banc) (describing the three-part test).

Bondanella attaches great significance to the fact that he didn't make the phone call, but only received it; therefore, he argues, he didn't purposefully direct his action at California as required under the test's first prong. We rejected this argument in *Brainerd* v. *Governors of the University of Alberta*, 873 F.2d 1257 (9th Cir. 1989), where we held that the Arizona district court had specific jurisdiction over Canadians who allegedly defamed an Arizonian over the telephone, even though the Canadians didn't initiate the phone calls. *Id.* at 1259-60. It was enough that the Canadians' statements were "performed for the very purpose of having their consequences felt in the forum state." *Id.* at 1260. There's no question that

Bondanella's alleged order was "performed with the purpose of having" its "consequences felt" by someone in the San Francisco airport.

As for the second prong of the specific jurisdiction test, Bondanella argues that Ibrahim's claims don't arise out of his order to the police because her injuries were actually caused by her name being on the No-Fly List. But most of Ibrahim's state-law claims are based on her detention, and there's no indication that the No-Fly List caused the police to detain her. Quite the contrary, the government's lawyer below represented that the Transportation Security Administration's Security Directives say nothing at all about detaining passengers. And the complaint implies that Bondanella's instructions were the proximate cause of the police's decision to detain Ibrahim. Bondanella may deny this, but we must accept the allegations of the complaint on their face at this stage.

Third, Bondanella argues that it isn't reasonable for a California district court to exercise jurisdiction over him. But because he purposefully directed his order toward California, we presume that jurisdiction is reasonable. *Ziegler* v. *Indian River County*, 64 F.3d 470, 476 (9th Cir. 1995). Bondanella can only overcome that presumption if he "present[s] a compelling case," *id.*, and he hasn't done so. Like the defendants in *Ziegler*, who also caused California police to arrest a California resident, Bondanella's "purposeful interjection into California was significant." *Id.* at 475. California has "a strong interest in providing an effective means of redress for its residents who are tortiously injured," *id.* (internal quotation marks omitted), and doing so won't infringe on the sovereignty of Bondanella's home state of Virginia, *see id.* It's not unreasonable to require Bondanella to come to California to answer for the harms he allegedly caused here.

**[12]** We therefore reverse the dismissal of Ibrahim's *Bivens* claims and state-law claims against Bondanella. We affirm the dismissal of Ibrahim's section 1983 claims against him

because, as explained above, Bondanella wasn't acting under color of state law.

**AFFIRMED in part, REVERSED in part and REMANDED. No costs.**

---

N. RANDY SMITH, Circuit Judge, dissenting:

Ibrahim's claims against the Terrorist Screening Center constitute a challenge to an order of the Transportation Security Administration and are therefore subject to 49 U.S.C. § 46110(a), depriving the district court of jurisdiction over Ibrahim's claims against that agency. At the very minimum, Ibrahim's claims against the Terrorist Screening Center are "inescapably intertwined" with an order of the Transportation Security Administration and are thus still subject to § 46110(a). *See Gilmore v. Gonzales*, 435 F.3d 1125, 1133 n.9 (9th Cir. 2006); *see also Crist v. Leippe*, 138 F.3d 801, 803 (9th Cir. 1998) (noting that district court retains jurisdiction to consider broad constitutional challenges but does not have jurisdiction to consider issues that are " 'inescapably intertwined with a review of the procedures and merits surrounding the FAA's order' ") (quoting *Mace v. Skinner*, 34 F.3d 854, 858 (9th Cir. 1994). Therefore, I dissent from Part 1.a of the majority opinion.

Congress squarely delegated the responsibility for promulgating regulations and directives relating to the No-Fly List to the Transportation Security Administration in 49 U.S.C. §§ 114(h)(3) and 44903(j). Specifically, § 44903(j)(2)(E)(iii) provides that "[t]he Secretary of Homeland Security, in consultation with the Terrorist Screening Center, shall design and review, as necessary, guidelines, policies, and operating procedures for the collection, removal, and updating of data maintained, or to be maintained, in the no fly and automatic selectee lists." *Id.* § 44903(j)(2)(E)(iii). Additionally, the

Transportation Security Administration is charged with using information developed by other government agencies to "identify individuals on passenger lists who may be a threat to civil aviation or national security" and "if such an individual is identified, notify appropriate law enforcement agencies, prevent the individual from boarding an aircraft, or take other appropriate action with respect to that individual." *Id.* § 114(h)(3).

Congress provided in § 46110(a) that "a person disclosing a substantial interest in an order issued by [Transportation Security Administration] . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business." An agency's decision is an order, and therefore subject to § 46110(a), if it "provides a 'definitive' statement of the agency's position, has a 'direct and immediate' effect on the day-to-day business of the party asserting wrongdoing, and envisions 'immediate compliance with its terms[.]' " *Crist*, 138 F.3d at 804 (quoting *Mace*, 34 F.3d at 857). Our precedent requires us to construe the term "order" broadly. *See Gilmore*, 435 F.3d at 1132. In light of the statutory language detailed above and our decisions construing the term "order," Ibrahim's claims against the Terrorist Screening Center for placement of her name on the No-Fly List constitute a challenge to an order of the Transportation Security Administration. The district court therefore has no jurisdiction over the claims.

Even if the statutory framework did not clearly establish that Ibrahim's claims against the Terrorist Screening Center constitute challenges to an order of the Transportation Security Administration and are therefore subject to § 461110(a), the district court would still lack jurisdiction because Ibrahim's claims against the Terrorist Screening Center are "inescapably intertwined" with the claims that are unquestionably subject to that statute. Our prior cases compel this result. In

*Mace*, we held that the district court erred by dismissing a plaintiff's broad constitutional challenge to the FAA's power to revoke his mechanic's certificate. 34 F.3d at 858-60. We further held that the district court erred by dismissing the claims because they were not "inescapably intertwined" with an order that was subject to exclusive appellate review under the precursor statute to § 46110(a). *Id.* at 858. In *Gilmore*, we held that the plaintiff's due process challenge to the Transportation Security Administration's identification policy fell within the jurisdictional reach of § 46110(a), because it was " 'inescapably intertwined' with a review of the order[.]" *Gilmore*, 435 F.3d at 1133 n.9. "[I]t squarely attack[ed] the orders issued by the TSA with respect to airport security." *Id.*

The majority distinguishes *Gilmore*, arguing that *Gilmore* (1) involved a claim against the Transportation Security Administration instead of the Terrorist Screening Center, as is the case here; and (2) did not decide whether the No-Fly List constitutes an order. But those are distinctions without difference. It is irrelevant whether we decided in *Gilmore* that the No-Fly List constitutes an order of the Transportation Security Administration. It is also of little significance to our instant inquiry that there may be a sparse or non-existent administrative record for an appellate court to review. What matters is that we follow the clear Congressional directive set forth in § 46110(a). As noted, the Transportation Security Administration is charged with developing — in consultation with the Terrorist Screening Center — the "necessary, guidelines, policies, and operating procedures for the collection, removal, and updating of data maintained, or to be maintained, in the no fly and automatic selectee lists." 49 U.S.C. § 44903(j)(2)(E)(iii). Given our holdings in *Gilmore* and *Mace*, that district courts lack jurisdiction to consider claims that are "inescapably intertwined" with orders of the Transportation Security Administration, Ibrahim's challenges against the Terrorist Screening Center for its role in placing Ibrahim's name on the No-Fly List are subject to § 46110(a).

Therefore the district court appropriately dismissed those claims for lack of jurisdiction.