JAMES McMANIS (40958)
MARWA ELZANKALY (206658)
CHRISTINE PEEK (234573)
McMANIS FAULKNER
A Professional Corporation
50 W. San Fernando, 10th Floor
San Jose, CA  95113
Telephone:    (408) 279-8700
Facsimile:     (408) 279-3244
melzankaly@mcmanisfaulkner.com
cpeek@mcmanisfaulkner.com

Attorneys for Plaintiff, Rahinah Ibrahim

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RAHINAH IBRAHIM, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY, et al.<br><br>        Defendants. | CASE NO.  C06-0545 WHA<br><br>**STIPULATION AND [PROPOSED] ORDER TO FILE SECOND AMENDED COMPLAINT** |

THE PARTIES TO THIS ACTION HEREBY STIPULATE AS FOLLOWS:

1. The parties agree that plaintiff, RAHINAH IBRAHIM, shall file her Second Amended Complaint by March 27, 2009. Attached hereto as Exhibit A is a true and correct copy of plaintiff's Second Amended Complaint. Defendants do not oppose plaintiff's request to file the attached Second Amended Complaint. In making this stipulation, defendants do not waive their respective rights to respond to Second Amended Complaint as the Federal Rules of Civil Procedure and the Local Rules for the Northern District permit.

2. The Second Amended Complaint names additional federal defendants. Pursuant to FRCP 12(a)(2), each of those federal defendants is entitled to sixty (60) days after service to answer or otherwise respond to plaintiff's Second Amended Complaint. To ensure uniformity across all defendants, the parties further agree that all defendants shall have sixty (60) days from the date the Second Amended Complaint is filed to respond to it.

IT IS SO STIPULATED.

Dated: March 27, 2009

McMANIS FAULKNER

MARWA ELZANKALY

Attorneys for Plaintiff, RAHINAH IBRAHIM

Dated: March 27, 2009

DENNIS J. HERRERA, City Attorney
JOANNE HOEPER, Chief Trial Deputy
RONALD P. FLYNN, Deputy City Attorney

RONALD P. FLYNN

Attorneys for Defendants, SAN FRANCISCO DEFENDANTS

THE PARTIES TO THIS ACTION HEREBY STIPULATE AS FOLLOWS:

1.  The parties agree that plaintiff, RAHINAH IBRAHIM, shall file her Second Amended Complaint by March 27, 2009. Attached hereto as Exhibit A is a true and correct copy of plaintiff's Second Amended Complaint. Defendants do not oppose plaintiff's request to file the attached Second Amended Complaint. In making this stipulation, defendants do not waive their respective rights to respond to Second Amended Complaint as the Federal Rules of Civil Procedure and the Local Rules for the Northern District permit.

2.  The Second Amended Complaint names additional federal defendants. Pursuant to FRCP 12(a)(2), each of those federal defendants is entitled to sixty (60) days after service to answer or otherwise respond to plaintiff's Second Amended Complaint. To ensure uniformity across all defendants, the parties further agree that all defendants shall have sixty (60) days from the date the Second Amended Complaint is filed to respond to it.

IT IS SO STIPULATED.

Dated: March __ 2009              McMANIS FAULKNER

                                  MARWA ELZANKALY

                                  Attorneys for Plaintiff, RAHINAH
                                  IBRAHIM

Dated: March __ 2009              DENNIS J. HERRERA, City Attorney
                                  JOANNE HOEPER, Chief Trial Deputy
                                  RONALD P. FLYNN, Deputy City
                                  Attorney

                                    RONALD P. FLYNN

                                  Attorneys for Defendants, SAN
                                  FRANCISCO DEFENDANTS

Stipulation And [Proposed] Order To File Second Amended Complaint        Case No. C06-0545 WHA

1  Dated: March 27 2009

2

3

4

5

6

7

8

9  Dated: March __ 2009

10

11

12

13

14

15

16  IT IS SO ORDERED.

17  Dated:_____

18

19

20

21

22

23

24

25

26

27

28

ARNOLD & PORTER LLP

SHARON DOUGLASS MAYO

Attorneys for Defendants, JOHN
BONDANELLA and U.S.
INVESTIGATIONS SERVICES, INC.

UNITED STATES DEPARTMENT OF
JUSTICE

PAUL FREEBORNE

Attorneys for Defendants, FEDERAL
DEFENDANTS

HONORABLE WILLIAM ALSUP
United States District Judge

1   Dated: March __ 2009                    ARNOLD & PORTER LLP

2

3

4                                          SHARON DOUGLASS MAYO

5                                          Attorneys for Defendants, JOHN
                                           BONDANELLA and U.S.
6                                          INVESTIGATIONS SERVICES, INC.

7

8

9   Dated: March 27 2009                   UNITED STATES DEPARTMENT OF
                                           JUSTICE
10

11

12                                         PAUL FREEBORNE

13                                         Attorneys for Defendants, FEDERAL
                                           DEFENDANTS
14

15

16  IT IS SO ORDERED.

17  Dated: ___April 1, 2009___

18                                         HONORA[BLE]
                                           United Sta[tes]
19

20

21

22

23

---

24

25

26

27

28

---

# EXHIBIT  A

JAMES McMANIS (40958)
MARWA ELZANKALY (206658)
CHRISTINE PEEK (234573)
McMANIS FAULKNER
A Professional Corporation
50 W. San Fernando, 10th Floor
San Jose, CA 95113
Telephone:  (408) 279-8700
Facsimile:  (408) 279-3244
melzankaly@mcmanisfaulkner.com
cpeek@mcmanisfaulkner.com

Attorneys for Plaintiff, Rahinah Ibrahim

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RAHINAH IBRAHIM, an individual,

     Plaintiff,

v.

DEPARTMENT OF HOMELAND
SECURITY; JANET NAPOLITANO, in her
official capacity as Secretary of the
Department of Homeland Security;
MICHAEL CHERTOFF, in his official
capacity as the former Secretary of the
Department of Homeland Security; TOM
RIDGE, in his official capacity as the former
Secretary of the Department of Homeland
Security; ERIC H. HOLDER, JR., in his
official capacity as Attorney General;
TERRORIST SCREENING CENTER;
LEONARD C. BOYLE, in his official
capacity as Director of the Terrorist
Screening Center; DONNA A. BUCELLA,
in her official capacity as former Director of
the Terrorist Screening Center; FEDERAL
BUREAU OF INVESTIGATION; ROBERT
MUELLER, in his official capacity as
Director of the Federal Bureau of
Investigation; ARTHUR M. CUMMINGS,
II, in his official capacity as Executive
Assistant Director of the FBI's National
Security Branch; NATIONAL
COUNTERTERRORISM CENTER;
MICHAEL E. LEITER, in his official
capacity as Director of the National

CASE NO. C06-0545 WHA

**SECOND AMENDED COMPLAINT
FOR:**

1) **42 U.S.C. § 1983 – Violation of
   Equal Protection**
2) *Bivens* **– Violation of Equal
   Protection**
3) **42 U.S.C. § 1983 – Violation of
   Fourth Amendment**
4) *Bivens* **– Violation of Fourth
   Amendment**
5) **42 U.S.C. § 1983 – Violation of
   First Amendment Right to
   Freedom of Religion**
6) *Bivens* **– Violation of First
   Amendment Right to Freedom of
   Religion**
7) **42 U.S.C. § 1983 – Violation of
   First Amendment Right to
   Freedom of Association**
8) *Bivens* **– Violation of First
   Amendment Right to Freedom of
   Association**
9) **CA Civ. Code § 52.1 – Interference
   With Exercise of Civil Rights**
10) **False Imprisonment**
11) **Intentional Infliction of Emotional
    Distress**
12) **Negligent Infliction of Emotional
    Distress**
13) **Violation Of The United States**

| | |
|---|---|
| 1 | Counterterrorism Center; DEPARTMENT OF STATE; HILARY CLINTON, in her |
| 2 | official capacity as Secretary of State; SAN FRANCISCO AIRPORT; CITY AND |
| 3 | COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE DEPARTMENT; |
| 4 | RICHARD PATE, an individual; JOHN BONDANELLA, an individual; JOHN |
| 5 | CUNNINGHAM, an individual; ELIZABETH MARON, an individual; US |
| 6 | INVESTIGATIONS SERVICES, INC., a Virginia Corporation; and DOES 13 through |
| 7 | 100, inclusive. |
| 8 |     Defendants. |

Constitution and the APA, Under The APA And The First, Fourth, Fifth And Fourteenth Amendments To The United States Constitution

**DEMAND FOR JURY TRIAL**

Plaintiff hereby alleges as follows:

## INTRODUCTORY STATEMENT

1.    The above-entitled action is brought under the United States Constitution, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), 5 U.S.C. § 701 et seq., 28 U.S.C. § 2201, 42 U.S.C. § 1983, the Constitution of the State of California, and California state law, on the grounds that defendants, among other things, violated the federal and state constitutional rights of plaintiff, granted to her under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and article I, sections 3, 4, 7, 13 and 15 of the California Constitution.

## JURISDICTION AND VENUE

2.    This case arises under the United States Constitution and the laws of the United States. This Court has jurisdiction over this action pursuant to Article III of the United States Constitution, 5 U.S.C § 552a, and 28 U.S.C. §§ 1331, 1343, 1361, and 1367(a), and pursuant to *Ibrahim v. Department of Homeland Security* (9th Cir. 2008) 538 F.3d 1250. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(e), because defendants include officers and employees of the United States and the acts and conduct complained of herein occurred in this judicial district.

Second Amended Complaint          Case No. C06-0545 WHA

**INTRADISTRICT ASSIGNMENT**

3.      Assignment of this action to the San Francisco Division is proper under Civil Local Rule 3-2(d), because a substantial part of the events giving rise to the claims alleged herein occurred in the County of San Mateo.

**PARTIES**

4.      Plaintiff, RAHINAH IBRAHIM, ("IBRAHIM"), is an individual, who obtained her Doctorate Degree at Stanford University, while in the United States on a student visa, and currently resides in the country of Malaysia.  IBRAHIM has no criminal record and no links to terrorist activity.

5.      On information and belief, defendant, ERIC H. HOLDER JR. ("HOLDER"), is the current Attorney General of the United States and the head of the United States Department of Justice.  He is sued here in his official capacity.  Under Homeland Presidential Security Directive-6 ("HPSD-6") and its implementing memorandum of understanding dated September 16, 2003 ("2003 MOU"), the Attorney General is responsible for establishing an organization to consolidate the United States Government's approach to terrorist screening and the use of information in the screening process, and for coordinating with the Secretary of State, the Secretary of the Department of Homeland Security, and the Director of Central Intelligence in this effort.  Pursuant to this directive, the TERRORIST SCREENING CENTER ("TSC"), was established.

6.      On information and belief, defendant, FEDERAL BUREAU OF INVESTIGATION ("FBI"), is a department of the United States Government and is included in the Department of Justice.  Through the TSC, the FBI maintains a government watchlist and transmits this list to the Transportation Security Administration ("TSA").  The airlines are required to check their passenger lists against the No-Fly List.

7.      On information and belief, defendant, ROBERT MUELLER ("MUELLER"), is the director of the FBI, and is being sued in his official capacity as such.

8.      On information and belief, defendant, TSC, is a department of the United States Government.  Its mission is to maintain a list of "Terrorist Identities Information" for agencies of

Second Amended Complaint                                                  Case No. C06-0545 WHA

1    the United States Government, including the TSA, a sub-agency of the Department of Homeland

2    Security ("DHS"), with authority to regulate airport security.  The TSC is responsible for

3    maintaining a consolidated terrorist screening database (the "TSDB") which includes the "No-

4    Fly List."  The TSC determines who is on the list that makes up the No-Fly list.

5          9.      On information and belief, defendant, ARTHUR M. CUMMINGS, II

6    ("CUMMINGS"), is the Executive Assistant Director of the FBI's National Security Branch, and

7    oversees the TSC.  He is sued here in his official capacity.

8          10.     On information and belief, defendant, LEONARD C. BOYLE ("BOYLE") is the

9    Director of the TSC.  He is sued here in his official capacity.  The Director of the TSC is

10    responsible for establishing procedures to address repeated misidentification of any person, and

11    review the list and delete or correct any erroneous or outdated information.

12          11.     On information and belief, defendant, DONNA A. BUCELLA ("BUCELLA"), is

13    the former Director of the TSC.  She is sued here in her official capacity.

14          12.     On information and belief, defendant, DHS, is a department of the United States

15    Government, created on October 8, 2001, to develop and coordinate the implementation of a

16    comprehensive national strategy to secure the United States from terrorist threats or attacks.

17    Under HPSD-6 and the 2003 MOU, the DHS is responsible for staffing the TSC, along with the

18    DEPARTMENT OF STATE ("DOS"), Department of Justice, and other federal departments and

19    agencies.

20          13.     On information and belief, defendant, JANET NAPOLITANO

21    ("NAPOLITANO"), is the current Secretary and head of the Department of Homeland Security.

22    She is sued here in her official capacity.  Under HPSD-6 and the 2003 MOU, the Secretary of the

23    DHS is responsible for, *inter alia*, (a) coordinating with the Attorney General, acting through the

24    Director of the FBI, to establish the TSC, (b) coordinating with the Attorney General, acting

25    through the Director of the TSC, to review alien nominations to the TSC's database; (c) in

26    consultation with the other parties to the 2003 MOU and the Director of the TSC, establishing

27    necessary guidelines and criteria to, *inter alia*, "initiate appropriate law enforcement or other

28    governmental action, if any, when a person submitted for query by a private sector entity is

4

1  identified as a person in the terrorist screening database"; (d) reviewing each nomination to the

2  TSC's database and determining whether to include that person in records that can be accessed

3  by State, local, territorial, and trial officials for homeland security purposes.

4       14.    On information and belief, defendant, MICHAEL CHERTOFF ("CHERTOFF"),

5  is a former Secretary and head of the Department of Homeland Security. He is sued here in his

6  official capacity.

7       15.    On information and belief, defendant, TOM RIDGE ("RIDGE"), is a former

8  Secretary and head of the Department of Homeland Security. He is sued here in his official

9  capacity.

10       16.    On information and belief, defendant, NATIONAL COUNTERTERRORISM

11  CENTER ("NCTC") serves as the primary organization in the United States government for

12  analyzing and integrating all intelligence regarding terrorism, and provides information to the

13  TSC.

14       17.    On information and belief, defendant, MICHAEL E. LEITER ("LEITER"), is the

15  Director of the NCTC. He is sued here in his official capacity.

16       18.    On information and belief, defendant, DOS, is a department of the United States

17  Government. Under HPSD-6 and the 2003 MOU, the DOS is responsible for staffing the TSC,

18  along with the DHS, Department of Justice, and other federal departments and agencies.

19       19.    On information and belief, defendant, HILARY CLINTON ("CLINTON") is the

20  current Secretary and head of the DOS. She is sued here in her official capacity. Under HPSD-6

21  and the 2003 MOU, the Secretary of the DOS is responsible for, *inter alia*, (a) coordinating with

22  the Attorney General, acting through the Director of the FBI, to establish the TSC, and (b)

23  reviewing each nomination to the TSC's database and determining whether to include the person

24  in records that may be accessed by foreign governments cooperating with the United States to

25  fight global terrorism.

26       20.    On information and belief, defendant, CITY AND COUNTY OF SAN

27  FRANCISCO ("CCSF") is a municipal entity, which also oversees the SAN FRANCISCO

28  POLICE DEPARTMENT. On information and belief, San Francisco International Airport

1   ("SFO"), is a part of the CCSF.

2        21.    On information and belief, defendant, SAN FRANCISCO POLICE

3   DEPARTMENT ("SFPD"), is a police department which has jurisdiction over events occurring

4   at SFO.

5        22.    On information and belief, defendant, RICHARD PATE ("PATE"), is a Police

6   Sergeant for SFPD.

7        23.    On information and belief, defendant, J. CUNNINGHAM ("CUNNINGHAM"),

8   badge number 236, is a police officer of the SFPD.

9        24.    On information and belief, defendant, ELIZABETH MARON ("MARON"), is a

10   police officer of the SFPD.

11        25.    On information and belief, defendant, JOHN BONDANELLA,

12   ("BONDANELLA"), from June, 2004, through May, 2005, was an employee of US

13   INVESTIGATIONS SERVICES, INC. ("USIS"), and was serving as a watch officer in the

14   TRANSPORTATION SECURITY OPERATIONS CENTER ("TSOC").

15        26.    On information and belief, USIS is a corporation, organized and existing under

16   the laws of the State of Virginia, but which does business and has offices all over the United

17   States, including all over California. USIS provides intelligence and staffing services to various

18   entities, including federal agencies. USIS was the employer of defendant, BONDANELLA, and

19   provided BONDANELLA as a watch officer for the TSOC from June, 2004 through May, 2005.

20   The TSA disburses "Federal Security Directors" ("FSDs") to all of the commercial airlines in the

21   US, to lead and coordinate security activities at the respective airlines. The TSOC serves as the

22   point of contact for security related operations, incidents, or crises in aviation and all surface

23   modes of transportation, and provides guidance to FSD's as to how to handle security related

24   issues.

25        27.    The true names or capacities, whether individual, corporate, associate or

26   otherwise of defendants, DOES 13 through 100, inclusive, are unknown to plaintiff, who

27   therefore sues said defendants by such fictitious names. Plaintiff prays leave to amend the

28   complaint to show the true names and capacities of defendants when the same have been

Second Amended Complaint                   Case No. C06-0545 WHA

1   ascertained.

2                                  **GENERAL ALLEGATIONS**

3         28.     Plaintiff brings this lawsuit to challenge defendants' administration, management

4   and implementation of the TSC's TSDB, including the "No-Fly List", a list circulated to

5   commercial airlines and security personnel with directions to detain and question any passenger

6   whose name matches or is similar to one on the No-Fly List.  Plaintiff further brings this lawsuit

7   to challenge the placement of her own name on any government list, including the No-Fly List.

8         29.     Defendants began implementing the No-Fly List in November, 2001.  Since then,

9   it has resulted in hundreds, if not thousands, of innocent passengers being routinely stopped,

10   questioned, searched, and sometimes physically arrested, as in this case.  Defendants do not

11   inform individuals that they have been placed on any government list or why they are on the list.

12   Moreover, individuals whom defendants determine are not security threats continue to be

13   identified on any government list, including the No-Fly List.  Passengers, therefore, have no

14   meaningful opportunity to challenge their identification.

15         30.     For several years before the terrorist attacks of September 11, 2001, the U.S.

16   Government issued directives identifying persons who were deemed to pose a threat to civil

17   aviation.  In November, 2001, the TSA was formed and assumed responsibility for compiling

18   and administering these directives, with the assistance of the TSC.  Today, defendants maintain

19   at least two watch lists of individuals perceived to be threats to aviation security.  The "no-fly"

20   list contains names of people which airlines are prohibited from transporting.  The "selectee" list

21   contains names of passengers who must go through additional security screening before boarding

22   an aircraft.  These two lists collectively are referred to as the "No-Fly List."  On information and

23   belief, the No-Fly List contains thousands of names, primarily names of individuals of Muslim or

24   Middle Eastern descent.

25         31.     Until November, 2002, defendants denied the existence of the No-Fly List.  Until

26   today, defendants have refused to disclose important information regarding the No-Fly List,

27   including the criteria for placing names on or removing names from the No-Fly List, procedures

28   for amending information on the List such as when it is determined that an individual is not a

1  security threat, or rules for maintaining or managing the List.  Because defendants have refused
2  to provide any of this information, defendants may be using race, religion, ethnicity, national
3  origin, or the exercise of protected First Amendment rights as factors in maintenance and
4  implementation of the No-Fly List.

5       32.    On information and belief, after the TSC became operational in 2003, it became
6  responsible for maintaining and updating a consolidated terrorist screening database, including
7  the No-Fly List, based on information received from the predecessor organization of the NCTC
8  (the Terrorist Threat Integration Center), the FBI, and other federal agencies.  Pursuant to the
9  2003 MOU, the TSC was to ensure that available information possessed by state, local,
10 territorial, and tribal governments was considered in determinations by the TSC.

11      33.    On information and belief, defendants make available continually updated
12 versions of the No-Fly List to commercial airlines in the United States.  The 15 domestic airlines
13 have almost half a million employees and, on information and belief, a substantial percentage of
14 these employees have access to the No-Fly List.  On information and belief, the No-Fly List is
15 also provided to customs and immigration agents, airport security, and law enforcement
16 agencies.  Moreover, information from the No-Fly List is inputted into other security databases,
17 including those maintained by the NCTC, the FBI, the DOS, the DHS, the TSA, or other federal
18 agencies.  On information and belief, defendants and the heads of their departments instruct
19 recipients of the No-Fly List to not allow on a flight those whose name is similar or identical to a
20 name on the No-Fly List.  Even if the passenger's actual identity is verified, a boarding pass is
21 issued which is stamped with a mark to indicate the passenger must be subjected to enhanced
22 screening, also referred to as "secondary screening."

23      34.    Innocent passengers subjected to this treatment are stigmatized, humiliated, and
24 subjected to interrogations, delays, enhanced searches, detentions, travel impediments, and
25 sometimes actual physical arrest without a warrant or any probable cause.  This treatment is
26 completely unexpected as they have no notice that they have been placed on the No-Fly List.

27      35.    Plaintiff, IBRAHIM, was subjected to this humiliating treatment on January 2,
28 2005, at the SFO, while traveling to Malaysia, through an initial stop in Hawaii.

8

1    36.    IBRAHIM is a citizen of Malaysia.  She is a Muslim woman who is clearly

2    identifiable as Muslim as she wears a head scarf, also known as a "hijab."  IBRAHIM has no

3    criminal record and no ties whatsoever to any terrorist activity.  At the time of the incident,

4    IBRAHIM was a student at Stanford University, studying to obtain her Doctorate Degree (PhD),

5    and lawfully in the United States on a student visa.  IBRAHIM's student visa was valid from

6    September 26, 2001 to January 11, 2007.  She was preparing her thesis on affordable housing

7    and on January 2, 2005, IBRAHIM was scheduled to fly to Kuala Lumpur, Malaysia, with a

8    changing flight in Hawaii, to present her research findings at a conference sponsored by Stanford

9    University.  She was scheduled to return to Stanford in March, 2005, to submit her dissertation

10    and complete her PhD.

11    37.    Prior to her trip, in October, 2004, IBRAHIM had a hysterectomy surgery at

12    Stanford University Medical Hospital, with an extremely invasive abdominal approach.

13    IBRAHIM suffered severe complications from her surgery which extended her recovery period

14    for months.  IBRAHIM also suffered back and abdominal pain from her surgery and was

15    regularly taking medication for these complications.

16    38.    On January 2, 2005, at approximately 7:00 a.m., IBRAHIM arrived at SFO with

17    her fourteen-year old daughter.  IBRAHIM and her daughter were scheduled to leave on a United

18    Airlines flight from SFO, at 9:00 a.m.  IBRAHIM and her daughter, escorted by IBRAHIM's

19    friend, went to the ticket counter to obtain their boarding passes and check in their bags.

20    IBRAHIM informed United Airlines of her medical complications and requested wheelchair

21    transportation to the airline gate.

22    39.    At that time, a United Airlines employee, David Nevins, approached IBRAHIM

23    and asked to see her tickets.  Nevins called SFPD and informed them that IBRAHIM was on the

24    No-Fly List.  At the request of Nevins, defendants, CUNNINGHAM and PATE, of SFPD,

25    arrived at the airport.  On information and belief, PATE checked the No-Fly List for

26    IBRAHIM's name.  He called defendant, BONDANELLA, of the TSIS in Washington, D.C.

27    Defendant, BONDANELLA, told defendant, PATE, to not allow IBRAHIM on the flight, to

28    contact the FBI, and to detain IBRAHIM for questioning.  A SFPD officer, whose name is not

9

1    known to plaintiff, also arrived at the scene.

2         40.    Meanwhile, IBRAHIM stood waiting for an hour and a half, with no wheelchair,

3    while she suffered from back and abdominal pain. IBRAHIM's friend informed the SFPD

4    officers several times of IBRAHIM's medical condition.

5         41.    At 8:45 a.m., fifteen minutes before IBRAHIM's flight was scheduled to leave,

6    defendant, CUNNINGHAM, told IBRAHIM that she was being arrested. IBRAHIM was

7    handcuffed by CUNNINGHAM, with her hands placed behind her back, in the middle of the

8    airport, in front of her fourteen-year old daughter, and everyone else at SFO. IBRAHIM was not

9    informed as to why she was being arrested. Instead, she was taken to the SFPD police station,

10   escorted by three male officers.

11        42.    Upon arriving at the police station, IBRAHIM was searched by defendant,

12   MARON. During this search, MARON attempted to remove IBRAHIM's hijab and searched

13   under her hijab in public view, before the other male officers. On information and belief, the

14   police officers also informed the FBI of IBRAHIM's detention.

15        43.    IBRAHIM was placed in a holding cell at the SFPD police station for

16   approximately two hours while she continued to suffer from severe back and abdominal pain.

17   IBRAHIM was not given her medication when she asked for it to relieve her pain. Eventually,

18   the paramedics were called as a result of IBRAHIM's medical condition. IBRAHIM was finally

19   given her medication after the paramedics left.

20        44.    On information and belief, the FBI finally requested SFPD to release IBRAHIM

21   at approximately 11:15 a.m., over two hours after her flight had left. IBRAHIM was given no

22   information as to why her name was on the No-Fly List.

23        45.    Defendants represented to plaintiff that her name had been removed from

24   the No-Fly List. The following day, on January 3, 2005, IBRAHIM discovered that she was still

25   on the No-Fly List when she attempted to fly again. After some effort, IBRAHIM was finally

26   allowed to fly to Kuala Lumpur, Malaysia. At SFO, however, and at every stop over, IBRAHIM

27   was publicly subjected to enhanced searches before boarding any flights.

28        46.    On March 24, 2005, plaintiff submitted a request for Passenger Identity

10

1 | Verification to the TSA, the only procedure then available, in an attempt to clear her name if the
2 | issue was simply a matter of misidentification. A response was not issued to IBRAHIM's
3 | request until approximately one year later, in March, 2006, after this action was filed. The
4 | response, however, did not even clarify IBRAHIM'S "No-Fly List" status and instead, simply
5 | stated that **if** "it has been determined that a correction to records is warranted, these records have
6 | been modified."

7 |         47.     Moreover, on April 14, 2005, IBRAHIM's visa was revoked by letter from the
8 | United States Embassy in Malaysia. The letter cites to Section 212(a)(3)(B) of the Immigration
9 | and Nationality Act as the basis for the revocation of her visa. That section provides, in part, that
10 | any "alien" who "a consular officer, the Attorney General, or the Secretary of Homeland
11 | Security knows, or has reasonable ground to believe, is engaged in or is likely to engage after
12 | entry in any terrorist activity" is "inadmissible." 8 U.S.C. § 1182(a)(3)(b).

13 |         48.     IBRAHIM is informed and believes, and thereon alleges, that defendants do not
14 | remove individuals from the No-Fly List and other related watch lists, even when it would be
15 | appropriate to do so because, among other reasons, the individual has been misidentified or
16 | incorrectly placed on the list.

17 |         49.     IBRAHIM is informed and believes, and thereon alleges, that defendants do not
18 | train their employees to determine when modification or removal of information on the No-Fly
19 | List is necessary, and have not implemented policies to ensure that modification or removal of
20 | names occurs when appropriate.

21 |         50.     On July 1, 2005, plaintiff filed a claim with the City and County of San Francisco
22 | for her damages suffered as a result of defendants' conduct. On September 8, 2005, the City and
23 | County of San Francisco issued a letter, also rejecting plaintiff's claim.

24 | **FIRST CAUSE OF ACTION**

25 | **(42 U.S.C. § 1983 – Equal Protection – Against Defendants SFO,
26 | CCSF, SFPD, PATE, CUNNINGHAM, and MARON)**

27 |         51.     Plaintiff re-alleges paragraphs 1 through 50 above and incorporates them herein
28 | by reference.

1      52.    In doing the acts complained of herein, defendants deprived plaintiff of her right

2  to Equal Protection under the United States Constitution as set forth under the Fourteenth

3  Amendment to the United States Constitution;

4      53.    IBRAHIM's name was placed on the No-Fly List.  Moreover, defendants arrested

5  IBRAHIM for several hours, although they lacked a warrant, probable cause, or any reasonable

6  belief that she had committed a crime.  IBRAHIM is informed and believes, and thereon alleges,

7  that defendants made the arrest despite these obvious deficiencies, because they perceived she

8  was Muslim and a citizen of Malaysia.  On information and belief, defendants acted in a

9  discriminatory manner, with the intent to discriminate on the basis of IBRAHIM's religious

10  beliefs and her national origin as a citizen of Malaysia.

11      54.    Defendants, in committing the acts herein alleged, were acting under color of state

12  law.

13      55.    Defendants were acting in accordance with a custom, policy and/or practice of the

14  SFO, the SFPD, and CCSF in violating plaintiff's constitutional rights as set forth above.

15      56.    As a direct and proximate result of defendants' wrongful acts alleged herein,

16  plaintiff suffered severe damages, including humiliation and damage to her reputation, physical

17  pain, emotional distress, and deprivation of her constitutional rights, according to proof at the

18  time of trial.

19      57.    Defendants committed the actions alleged herein maliciously, fraudulently,

20  oppressively and with the wrongful intention of injuring plaintiff.  Defendants acted with an

21  improper motive amounting to malice and with conscious disregard of plaintiff's rights.  As

22  such, plaintiff is entitled to recover punitive damages from defendants in an amount according to

23  proof at the time of trial.

24  **SECOND CAUSE OF ACTION**

25  **(*Bivens* – Equal Protection – Against Defendant BONDANELLA)**

26      58.    Plaintiff re-alleges paragraphs 1 through 57 above and incorporates them herein

27  by reference.

28      59.    In doing the acts complained of herein, defendant BONDANELLA deprived

12

Second Amended Complaint         Case No. C06-0545 WHA

1  plaintiff of her right to Equal Protection under the United States Constitution as set forth under

2  the Fourteenth Amendment to the United States Constitution;

3       60.     BONDANELLA directed the SFPD to arrest IBRAHIM although he knew they

4  lacked a warrant, probable cause, or any reasonable belief that she had committed a crime.

5  IBRAHIM is informed and believes, and thereon alleges, that BONDANELLA gave this

6  direction despite these obvious deficiencies, because he believed she was Muslim and a citizen

7  of Malaysia.  On information and belief, BONDANELLA acted in a discriminatory manner, with

8  the intent to discriminate on the basis of IBRAHIM's religious beliefs and her national origin as

9  a citizen of Malaysia.

10       61.     In committing the acts herein alleged, BONDANELLA was acting under color of

11  federal law.

12       62.     As a direct and proximate result of BONDANELLA's wrongful acts alleged

13  herein, plaintiff suffered severe damages, including humiliation and damage to her reputation,

14  physical pain, emotional distress, and deprivation of her constitutional rights, according to proof

15  at the time of trial.

16       63.     BONDANELLA committed the actions alleged herein maliciously, fraudulently,

17  oppressively and with the wrongful intention of injuring plaintiff.  BONDANELLA acted with

18  an improper motive amounting to malice and with conscious disregard of plaintiff's rights.  As

19  such, plaintiff is entitled to recover punitive damages from BONDANELLA in an amount

20  according to proof at the time of trial.

21  **THIRD CAUSE OF ACTION**

22  **(42 U.S.C. § 1983 – Fourth Amendment – Against Defendants SFO,<br/>CCSF, SFPD, PATE, CUNNINGHAM, and MARON)**

23  

24       64.     Plaintiff re-alleges paragraphs 1 through 63 above and incorporates them herein

25  by reference.

26       65.     In doing the acts complained of herein, defendants deprived plaintiff of her right

27  against unreasonable searches and seizures under the United States Constitution as set forth

28  under the Fourth Amendment to the United States Constitution;

1   66.   IBRAHIM's name was placed on the No-Fly List.  Moreover, defendants arrested

2   IBRAHIM for several hours and searched her, although they lacked a warrant, probable cause, or

3   any reasonable belief that she had committed a crime.

4   67.   In committing the acts herein alleged, defendants were acting under color of state

5   law.

6   68.   Defendants were acting in accordance with a custom, policy and/or practice of the

7   SFO, the SFPD, and CCSF in violating plaintiff's constitutional rights as set forth above.

8   Plaintiff is informed and believes, and thereon alleges, that defendants' actions alleged herein

9   were the direct and proximate result of the San Francisco Airport's, CCSF's and the SFPD's

10  failure adequately to train SFPD officers on what is required under the Fourth Amendment and

11  the case law interpreting it to arrest a suspect lawfully, and specifically on whether an arrest may

12  be made on the basis of an alleged placement on a government watch list.  Such failure amounts

13  to deliberate indifference to the rights of persons with whom the SFPD comes into contact.

14  69.   As a direct and proximate result of defendants' wrongful acts alleged herein,

15  plaintiff suffered severe damages, including humiliation and damage to her reputation, physical

16  pain, emotional distress, and deprivation of her constitutional rights, according to proof at the

17  time of trial.

18  70.   Defendants committed the actions alleged herein maliciously, fraudulently,

19  oppressively and with the wrongful intention of injuring plaintiff.  Defendants acted with an

20  improper motive amounting to malice and with conscious disregard of plaintiff's rights.  As

21  such, plaintiff is entitled to recover punitive damages from defendants in an amount according to

22  proof at the time of trial.

23  **FOURTH CAUSE OF ACTION**

24  (*Bivens* – **Fourth Amendment** – **Against Defendant BONDANELLA**)

25  71.   Plaintiff re-alleges paragraphs 1 through 70 above and incorporates them herein

26  by reference.

27  72.   In doing the acts complained of herein, BONDANELLA deprived plaintiff of her

28  right against unreasonable searches and seizures under the United States Constitution as set forth

14

1    under the Fourth Amendment to the United States Constitution;

2        73.    BONDANELLA directed defendants to arrest IBRAHIM, although he knew they

3    lacked a warrant, probable cause, or any reasonable belief that IBRAHIM had committed a

4    crime. BONDANELLA's direction proximately caused plaintiff's arrest.

5        74.    In committing the acts herein alleged, BONDANELLA was acting under color of

6    federal law.

7        75.    As a direct and proximate result of BONDANELLA's wrongful acts alleged

8    herein, plaintiff suffered severe damages, including humiliation and damage to her reputation,

9    physical pain, emotional distress, and deprivation of her constitutional rights, according to proof

10   at the time of trial.

11       76.    BONDANELLA committed the actions alleged herein maliciously, fraudulently,

12   oppressively and with the wrongful intention of injuring plaintiff. BONDANELLA acted with

13   an improper motive amounting to malice and with conscious disregard of plaintiff's rights. As

14   such, plaintiff is entitled to recover punitive damages from BONDANELLA in an amount

15   according to proof at the time of trial.

16                              **FIFTH CAUSE OF ACTION**

17         **(42 U.S.C. § 1983 – Freedom of Religion – Against Defendants SFO,**
           **CCSF, SFPD, PATE, CUNNINGHAM, and MARON)**
18
         77.    Plaintiff re-alleges paragraphs 1 through 76 above and incorporates them herein
19
     by reference.
20
         78.    In doing the acts complained of herein, defendants deprived plaintiff of her
21
     freedom of religion under the United States Constitution as set forth under the First Amendment
22
     to the United States Constitution;
23
         79.    Plaintiff's name was placed on the No-Fly List. Plaintiff is an identifiable
24
     Muslim woman who wears the hijab. Moreover, defendants arrested IBRAHIM for several
25
     hours, although they lacked a warrant, probable cause, or any reasonable belief that she had
26
     committed a crime. Plaintiff is informed and believes, and thereon alleges, that defendants
27
     arrested her because of her protected religious expression and because they perceived she was
28

                                        15

Second Amended Complaint                              Case No. C06-0545 WHA

1   Muslim

2       80.     Defendants, in committing the acts herein alleged, were acting under color of state

3   law.

4       81.     Defendants were acting in accordance with a custom, policy and/or practice of the

5   SFO, the SFPD, and CCSF in violating plaintiff's constitutional rights as set forth above.

6       82.     As a direct and proximate result of defendants' wrongful acts alleged herein,

7   plaintiff suffered severe damages, including humiliation and damage to her reputation, physical

8   pain, emotional distress, and deprivation of her constitutional rights, according to proof at the

9   time of trial.

10      83.     Defendants committed the actions alleged herein maliciously, fraudulently,

11  oppressively and with the wrongful intention of injuring plaintiff.  Defendants acted with an

12  improper motive amounting to malice and with conscious disregard of plaintiff's rights.  As

13  such, plaintiff is entitled to recover punitive damages from defendants in an amount according to

14  proof at the time of trial.

15                      **SIXTH CAUSE OF ACTION**

16  (*Bivens* – **First Amendment Freedom of Religion – Against Defendant BONDANELLA**)

17      84.     Plaintiff re-alleges paragraphs 1 through 83 above and incorporates them herein

18  by reference.

19      85.     In doing the acts complained of herein, BONDANELLA deprived plaintiff of her

20  freedom of religion under the United States Constitution as set forth under the First Amendment

21  to the United States Constitution;

22      86.     Plaintiff is informed and believes, and thereon alleges, that BONDANELLA

23  directed defendants to arrest her because he believed she was Muslim.

24      87.     In committing the acts herein alleged, BONDANELLA was acting under color of

25  federal law.

26      88.     As a direct and proximate result of BONDANELLA's wrongful acts alleged

27  herein, plaintiff suffered severe damages, including humiliation and damage to her reputation,

28  physical pain, emotional distress, and deprivation of her constitutional rights, according to proof

---

16

Second Amended Complaint                          Case No. C06-0545 WHA

1    at the time of trial.

2       89.    BONDANELLA committed the actions alleged herein maliciously, fraudulently,

3    oppressively and with the wrongful intention of injuring plaintiff.  BONDANELLA acted with

4    an improper motive amounting to malice and with conscious disregard for plaintiff's rights.  As

5    such, plaintiff is entitled to recover punitive damages from BONDANELLA in an amount

6    according to proof at the time of trial.

7                            **SEVENTH CAUSE OF ACTION**

8       **(42 U.S.C. § 1983 – First Amendment Right to Freedom of Association – Against
        Defendants SFO, CCSF, SFPD, PATE, CUNNINGHAM, and MARON)**

9
10      90.    Plaintiff re-alleges paragraphs 1 through 89 above and incorporates them herein

11   by reference.

12      91.    In doing the acts complained of herein, defendants deprived plaintiff of her

13   freedom of association under the United States Constitution, which is protected under the First

14   Amendment to the United States Constitution;

15      92.    Plaintiff's name was placed on the No-Fly List.  Plaintiff is an identifiable

16   Muslim woman who wears the hijab.  Moreover, defendants arrested IBRAHIM for several

17   hours, although they lacked a warrant, probable cause, or any reasonable belief that she had

18   committed a crime.  Defendants violated plaintiff's freedom of association in that, on

19   information and belief, defendants arrested plaintiff based on her association with the Muslim

20   community or the Islamic religion, and based on her national origin.

21      93.    Defendants, in committing the acts herein alleged, were acting under color of state

22   law.

23      94.    Defendants were acting in accordance with a custom, policy and/or practice of the

24   SFO, the SFPD, and CCSF in violating plaintiff's constitutional rights as set forth above.

25      95.    As a direct and proximate result of defendants' wrongful acts alleged herein,

26   plaintiff suffered severe damages, including humiliation and damage to her reputation, physical

27   pain, emotional distress, and deprivation of her constitutional rights, according to proof at the

28   time of trial.

---

Second Amended Complaint                                    Case No. C06-0545 WHA

1      96.     Defendants committed the actions alleged herein maliciously, fraudulently,

2 oppressively and with the wrongful intention of injuring plaintiff. Defendants acted with an

3 improper motive amounting to malice and with conscious disregard of plaintiff's rights. As

4 such, plaintiff is entitled to recover punitive damages from defendants in an amount according to

5 proof at the time of trial.

6 **EIGHTH CAUSE OF ACTION**

7 **(*Bivens* – First Amendment Freedom of Association – Against Defendant BONDANELLA)**

8      97.     Plaintiff re-alleges paragraphs 1 through 96 above and incorporates them herein

9 by reference.

10      98.     In doing the acts complained of herein, BONDANELLA deprived plaintiff of her

11 freedom of association under the United States Constitution as set forth under the First

12 Amendment to the United States Constitution;

13      99.     BONDANELLA violated plaintiff's freedom of association in that, on

14 information and belief, he directed defendants to arrest plaintiff based on her association with the

15 Muslim community or the Islamic religion, and based on her national origin.

16      100.    In committing the acts herein alleged, BONDANELLA was acting under color of

17 federal law.

18      101.    As a direct and proximate result of BONDANELLA's wrongful acts alleged

19 herein, plaintiff suffered severe damages, including humiliation and damage to her reputation,

20 physical pain, emotional distress, and deprivation of her constitutional rights, according to proof

21 at the time of trial.

22      102.    BONDANELLA committed the actions alleged herein maliciously, fraudulently,

23 oppressively and with the wrongful intention of injuring plaintiff. BONDANELLA acted with

24 an improper motive amounting to malice and with conscious disregard of plaintiff's rights. As

25 such, plaintiff is entitled to recover punitive damages from BONDANELLA in an amount

26 according to proof at the time of trial.

27

28

18

**NINTH CAUSE OF ACTION**

**(Interference With Exercise Of Civil Rights – California Civil Code Section 52.1 – Against Defendants CCSF, SFPD, PATE, CUNNINGHAM, MARON, BONDANELLA, and USIS)**

103.    Plaintiff re-alleges paragraphs 1 through 102 above and incorporates them herein by reference.

104.    Defendants' conduct alleged herein interfered with, or constituted an attempt to interfere with, plaintiffs' constitutional rights by threatening or committing violent acts, in that defendants caused plaintiff's arrest without a warrant or other legal process, without probable cause,and without any reasonable belief that plaintiff had committed a crime. Plaintiff is informed and believes, and thereon alleges, that defendants caused her to be arrested despite these obvious deficiencies because they perceived she was Muslim or affiliated with the Muslim community, and because of her national origin.

105.    The arrest interfered with plaintiff's constitutional rights granted to her under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and article I, sections 3, 4, 7, 13 and 15 of the California Constitution, through violence or the threat of violence.

106.    As a proximate result of the acts of defendants herein alleged, plaintiff incurred both economic and noneconomic damages.

107.    Plaintiff is informed and believes, and thereon alleges, that defendants committed the actions alleged herein maliciously, fraudulently, oppressively and with the wrongful intention of injuring plaintiff. Defendants acted with an improper, evil motive amounting to malice and with conscious disregard of plaintiff's rights. As such, plaintiff is entitled to recover punitive damages from defendants in an amount according to proof at the time of trial.

**TENTH CAUSE OF ACTION**

**(False Imprisonment – Against Defendants CCSF, SFPD, PATE, CUNNINGHAM, MARON, BONDANELLA, and USIS)**

108.    Plaintiff re-alleges paragraphs 1 through 107 above and incorporates them herein by reference.

109.    On January 2, 2005, at SFO, defendants caused plaintiff's arrest, without a warrant, or other legal process, without probable cause and without any reasonable belief that plaintiff had committed a crime.

110.    Plaintiff was imprisoned at the SFO police station for hours.

111.    As a proximate result of the acts of defendants herein alleged, plaintiff incurred both economic and noneconomic damages.

112.    Defendants committed the actions alleged herein maliciously, fraudulently, oppressively and with the wrongful intention of injuring plaintiff.  Defendants acted with an improper, evil motive amounting to malice and with conscious disregard of plaintiff's rights.  As such, plaintiff is entitled to recover punitive damages from defendants in an amount according to proof at the time of trial.

## ELEVENTH CAUSE OF ACTION

**(Intentional Infliction of Emotional Distress – Against Defendants CCSF, SFPD, PATE, CUNNINGHAM, MARON, BONDANELLA, and USIS)**

113.    Plaintiff re-alleges paragraphs 1 through 112 above and incorporates them herein by reference.

114.    On January 2, 2005, defendants caused plaintiff's arrest, knowing that they lacked a warrant or other legal process.  Defendants caused the arrest, knowing that they lacked probable cause or any reasonable belief that plaintiff had committed a crime.  Therefore, defendants caused the arrest with the intention of causing, or reckless disregard of the probability of causing, emotional distress for plaintiff.

115.    On information and belief, the acts of the defendants herein alleged were willful, despicable, malicious, and oppressive.

116.    As a proximate result of the acts of defendants herein alleged, plaintiff incurred severe emotional distress and mental suffering.  Plaintiff experienced extreme humiliation, shame, and anger when:

a)    Defendants, police officers, handcuffed plaintiff in front of her fourteen year old daughter at the San Francisco Airport, on the morning of January 2, 2005;

20

Second Amended Complaint                                    Case No. C06-0545 WHA

b)      A crowd of passengers gathered to watch defendants, police officers, detain and arrest plaintiff, without a warrant or probable cause, at the San Francisco Airport on the morning of January 2, 2005;

c)      Defendants, police officers, forced plaintiff to miss her flight by detaining and arresting her without a warrant or probable cause;

d)      Defendant, MARON, removed part of plaintiff's hijab and loosened plaintiff's hair;

e)      Defendants, police officers, caused plaintiff to experience abdominal pain and high blood pressure by incarcerating plaintiff in a detention area without access to her medications;

f)      Defendants, police officers, forced plaintiff to urinate in a public area while in the holding cell.

g)      Defendants represented to plaintiff that her name had been removed from the No-Fly List, but plaintiff later discovered that defendants had in fact made no effort to remove plaintiff from the No-Fly List.

## TWELFTH CAUSE OF ACTION

**(Negligent Infliction of Emotional Distress – Against Defendants CCSF, SFPD, PATE, CUNNINGHAM, MARON, BONDANELLA, and USIS)**

117.      Plaintiff re-alleges paragraphs 1 through 116 above and incorporates them herein by reference.

118.      On January 2, 2005, defendants knew or should have known that arresting and imprisoning plaintiff without a warrant or probable cause would cause plaintiff severe emotional distress.

119.      On January 2, 2005, defendants caused plaintiff's arrest, knowing that they lacked a warrant or other legal process. Defendants caused the arrest, knowing that they lacked probable cause or any reasonable belief that plaintiff had committed a crime.

120.      On information and belief, the acts of the defendants herein alleged were willful, despicable, malicious, and oppressive.

21

1    121.    As a proximate result of the acts of defendants herein alleged, plaintiff incurred

2  severe emotional distress and mental suffering.  Plaintiff experienced extreme humiliation,

3  shame, and anger when:

4         a)    Defendants, police officers, handcuffed plaintiff in front of her fourteen

5  year old daughter at the San Francisco Airport, on the morning of January 2, 2005;

6         b)    A crowd of passengers gathered to watch defendants, police officers,

7  detain and arrest plaintiff, without a warrant or probable cause, at the San Francisco Airport on

8  the morning of January 2, 2005;

9         c)    Defendants, police officers, forced plaintiff to miss her flight by detaining

10  and arresting her without a warrant or probable cause;

11         d)    Defendant, MARON, removed part of plaintiff's hijab and loosened

12  plaintiff's hair;

13         e)    Defendants, police officers, caused plaintiff to experience abdominal pain

14  and high blood pressure by incarcerating plaintiff in a detention area without access to her

15  medications;

16         f)    Defendants, police officers, forced plaintiff to urinate in a public area;

17         g)    Defendants represented to plaintiff that her name had been removed from

18  the No-Fly List, but plaintiff later discovered that defendants had in fact made no effort to

19  remove plaintiff from the No-Fly List.

20                    **THIRTEENTH CAUSE OF ACTION**

21  **(Violation Of The United States Constitution and the APA, Under The APA And The First,**

22  **Fourth, Fifth And Fourteenth Amendments To The United States Constitution – Against Defendants DHS, HOLDER, FBI, MUELLER, TSC, CUMMINGS, BOYLE, BUCELLA,**

23  **NAPOLITANO, CHERTOFF, RIDGE, NCTC, LEITER, DOS, and CLINTON)**

24    122.    Plaintiff re-alleges paragraphs 1 through 121 above and incorporates them herein

25  by reference.

26    123.    Defendants are responsible for implementing HPSD-6, coordinating the

27  operations of the TSC, and/or maintaining, administering, compiling, and correcting the TSC's

28  TSDB, including the No-Fly List.  Defendants erroneously placed IBRAHIM's name on a

1    government watch list on an improper and unconstitutional basis, disseminated this fact to

2    various government agencies, state actors, and private individuals in error, and subsequently

3    failed to remove her name from the list despite her request for redress, which resulted in her

4    unlawful arrest and, IBRAHIM is informed and believes, the unfounded revocation of her visa.

5    In doing the acts complained of herein, defendants were acting within their respective official

6    capacities and under color of authority.  In doing the acts complained of herein, defendants

7    deprived plaintiff of her right to procedural and substantive due process, equal protection,

8    freedom of religion, and freedom of association under the United States Constitution as set forth

9    under the First, Fifth and Fourteenth Amendments to the United States Constitution.

10          124.   The No-Fly List or any government screening list, and the placement of

11   IBRAHIM on such lists is unconstitutional in that it violates the due process protections

12   guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution.  On

13   information and belief, the placement of names on the No-Fly List is done in an arbitrary and

14   capricious manner and without any factual findings or rational basis.

15          125.   Defendants' actions in administering and maintaining the No-Fly List deprived

16   plaintiff of liberty and property interests protected by the Fifth Amendment.  Plaintiff has a right

17   to be free from being falsely stigmatized as an individual associated with terrorist activity,

18   where, as here, the stigma causes a change in legal status that affects her ability to travel and

19   work in academia, her chosen profession.  Defendants' actions alleged herein publicly made

20   clear that the United States government considered IBRAHIM a security risk, a charge which

21   IBRAHIM denies.  Defendants are grossly negligent, reckless, and/or deliberately indifferent to

22   the risk that the deprivations these actions cause.  The deprivations are without due process of

23   law because plaintiff was not informed of her placement on the No-Fly List or given any

24   opportunity to contest such placement.  Also, defendants have failed to provide constitutionally

25   adequate mechanisms for plaintiff to avoid being subjected to the stigma, interrogations, delays,

26   enhanced searches, detentions, and/or other travel impediments associated with having a name

27   identical or similar to a name on the No-Fly List.

28          126.   Plaintiff is an identifiable Muslim woman who wears the hijab.  On information

---

23

1   and belief, defendants acted in a discriminatory manner, with the intent to discriminate, in that

2   IBRAHIM was placed on the No-Fly List based on her religious beliefs and her national origin

3   as a citizen of Malaysia.  Plaintiff is informed and believes, and thereon alleges, that defendants

4   would not have engaged in the conduct alleged herein but for her religious affiliation and

5   national origin.  Plaintiff is informed and believes, and thereon alleges, that defendants habitually

6   place Muslims and Malaysian nationals on government watchlists, or fail to remove them from

7   such watchlists, on the basis of religion and national origin, without conducting an individualized

8   investigation, and regardless of whether defendants can articulate any facts in support of such

9   placement or non-removal.  Defendants' placement of IBRAHIM's name on the No-Fly list on

10  these impermissible bases, and subsequent failure to remove it, violated her First Amendment

11  rights of freedom of religion and freedom of association, and her Fifth and Fourteenth

12  Amendment right to equal protection.

13      127.    Defendants' actions alleged herein were arbitrary, capricious, an abuse of

14  discretion, and not in accordance with the law, in violation of the APA.  Defendants have failed

15  to adopt adequate procedures to prevent misidentification or to ensure that incorrect information

16  is modified or removed from the TSC's TSDB, as required by the 2003 MOU implementing

17  HPSD-6.

18      128.    An actual and immediate controversy has arisen and now exists between plaintiff

19  and defendants related to their respective rights and duties.  Defendants have acted arbitrarily

20  and capriciously, abused their discretion, and unlawfully failed to comply with constitutional

21  requirements by engaging in the acts and omissions described in this Complaint.  Plaintiff is,

22  therefore, entitled to a declaration of rights over this controversy.

23      129.    Plaintiff has no adequate remedy at law.  Defendants have acted, and continue to

24  act, to deprive plaintiff of her constitutional rights.  Plaintiff is suffering and will continue to

25  suffer irreparable injury as a result of the policies and practices described in this Complaint

26  unless those policies and practices are enjoined by this Court.  Plaintiff has no plain, adequate, or

27  speedy remedy at law and is entitled to injunctive relief against defendants.  Plaintiff has no

28  administrative remedy because defendants' policies and practices preclude any administrative

1  determinations from affording actual relief.

2  **PRAYER**

3  WHEREFORE, plaintiffs pray for the following relief:

4  a.  For compensatory damages according to proof;

5  b.  For civil penalties, to the extent provided by law;

6  c.  For exemplary and punitive damages according to proof;

7  d.  For costs of suit, including attorneys' fees;

8  e.  For a declaration, order, and judgment that defendants' placement of IBRAHIM'S

9  name on the No-Fly List and their subsequent failure to remove her name from

10  the No-Fly List were arbitrary and capricious, an abuse of discretion,

11  unauthorized by law, and contrary to IBRAHIM'S rights under the First, Fifth,

12  and Fourteenth Amendments to the United States Constitution.

13  f.  For an injunction requiring defendants to remove IBRAHIM's name from the No-

14  Fly List database maintained by the TSC, and from any other related database

15  maintained or accessed by other federal agencies, including but not limited to,

16  databases maintained or accessed by the NCTC, the FBI, the DOS, the DHS, the

17  TSA, the TSOC, USIS, or any other agency that maintains information regarding

18  individuals whose names have been placed on the No-Fly List or other watch list

19  due to alleged terrorist-related activities; and

20  g.  For an injunction requiring defendants to communicate the removal of

21  IBRAHIM'S name from the No-Fly List to the United States Visa Office, the

22  United States Embassy in Kuala Lumpur, Malaysia, and any other government

23  agency, foreign or domestic, that relies on information from the NCTC, the TSC,

24  the FBI, the DOS, the DHS, or the TSA, to identify visa applicants who may be

25  inadmissible pursuant to Section 212(a)(3)(B) of the Immigration and Nationality

26  Act; or

27  h.  Alternatively, for a declaration, order, and judgment that IBRAHIM is entitled to

28  a name-clearing hearing regarding the placement of her name on the TSC's

25

Second Amended Complaint                Case No. C06-0545 WHA

1    TSDB; and

2    i.    For an injunction requiring defendants to provide IBRAHIM with a name clearing

3          hearing regarding the placement of her name on the TSC's TSDB; and

4    j.    Such other and further relief as the Court may deem appropriate.

5

6    Dated:  March 27, 2009                                    McMANIS FAULKNER

7

8                                                              _Christine E. Peek_____
                                                              JAMES McMANIS
9                                                              MARWA ELZANKALY
                                                              CHRISTINE PEEK

10                                                             Attorneys for Plaintiff,
                                                              RAHINAH IBRAHIM
11

12                              **DEMAND FOR JURY TRIAL**

13        Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of

14   Civil Procedure.

15   Dated:  March 27, 2009                                    McMANIS FAULKNER

16

17                                                             _Christine E. Peek_____
                                                              JAMES McMANIS
18                                                             MARWA ELZANKALY
                                                              CHRISTINE PEEK
19
                                                              Attorneys for Plaintiff,
20                                                             RAHINAH IBRAHIM

21

22

23

24

25

26

27

28

                                         26
_____
Second Amended Complaint                              Case No. C06-0545 WHA