DENNIS J. HERRERA, State Bar #139669
City Attorney
JOANNE HOEPER, State Bar #114961
Chief Trial Deputy
RONALD P. FLYNN, State Bar #184186
PETER J. KEITH, State Bar #206482
Deputy City Attorney
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3901
Facsimile:     (415) 554-3985

Attorney for Defendants
CITY AND COUNTY OF SAN FRANCISCO,
SAN FRANCISCO AIRPORT,
SAN FRANCISCO POLICE DEPARTMENT,
JAMES CUNNINGHAM,
ELIZABETH MARON, AND
RICHARD PATE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RAHINAH IBRAHIM, an individual, | Case No. C06-0545 WHA |
| Plaintiff, | MOTION TO DISMISS PORTIONS OF THE SECOND AMENDED COMPLAINT (THE FIRST, FIFTH AND SEVENTH CAUSES OF ACTION STATED AGAINST THE SAN FRANCISCO DEFENDANTS) |
| vs. | |
| DEPARTMENT OF HOMELAND SECURITY; ET AL, | |
| Defendants. | Hearing Date:  July 16, 2009<br>Time:          8:00 a.m.<br>Place:         Ctrm 9, 19th Fl |
| | Date Action Filed:  January 27, 2006<br>Trial Date:         April 12, 2010 |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii
NOTICE OF MOTION ......................................................................................................................... 1
MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................... 1
PLAINTIFF'S FACTUAL ALLEGATIONS ........................................................................................ 1
   A. Allegations Related To Her No-Fly List Challenge ................................... 1
   B. Allegations Related to the San Francisco Defendants ................................ 3
   C. Causes of Action Against the San Francisco Defendants ........................... 4
ARGUMENT ......................................................................................................................................... 4
 I. PLAINTIFF'S DISCRIMINATION-BASED CAUSES OF ACTION AGAINST THE SAN FRANCISCO DEFENDANTS HAVE NO FACTUAL SUPPORT ........................................................................................................... 4
   A. Motion to Dismiss Standard......................................................................... 4
   B. First Cause of Action – Equal Protection .................................................... 5
   C. Fifth and Seventh Causes of Action – First Amendment Freedom of Religion and Freedom of Association........................................................... 8
   D. Plaintiff Should Not Be Provided Leave To Amend ................................. 10
CONCLUSION ................................................................................................................................... 11

# TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*
   2009 U.S. LEXIS 3472 (U.S. May 18, 2009) .......................................................... 1, 5, 6, 7, 8, 9

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) ................................................................................................................ 5

*Church of the Lukumi Babalu Ayes, Inc. v. City of Hialeah*
   508 U.S. 520 (1993) .............................................................................................................. 10

*Employment Division v. Smith*
   494 U.S. 872 (1990) .............................................................................................................. 10

*Papasan v. Allain*
   478 U.S. 265 (1986) ................................................................................................................ 5

*United States v. Kidder*
   869 F.2d 1328 (9th Cir. 1989) ................................................................................................. 5

**Federal Statutes**

42 U.S.C. § 1983 ............................................................................................................................ 4

**Rules**

Fed. R. Civ. Proc. 8(a)(2) .............................................................................................................. 4

Fed. R. Civ. Proc. 12(b)(6) ............................................................................................................ 4

**NOTICE OF MOTION**

Please take notice that on July 16, 2009 at 8:00 a.m., or as soon thereafter as this matter may be heard, defendants City and County of San Francisco (which includes San Francisco Airport and San Francisco Police Department), James Cunningham, Elizabeth Maron, and Richard Pate (collectively the "San Francisco Defendants") will move for an order dismissing portions of the second amended complaint. This motion will be heard before the Honorable William H. Alsup at the United States District Court, 450 Golden Gate Avenue, Courtroom 9, San Francisco, California.

The motion seeks to dismiss plaintiff's first, fifth, and seventh causes of action against the San Francisco Defendants based on alleged violations of plaintiff's Fourteenth and First Amendment rights of equal protection, freedom of religion, and freedom of association. Defendants do not seek to dismiss the Fourth Amendment claim. But the only facts plaintiff alleges related to her discrimination claims is that she is an identifiable Muslim and a Malaysian citizen. The issue to be decided is whether those allegations, combined with conclusory allegations of the elements of a discrimination claim, are sufficient to state a claim for invidious discrimination in violation of the United States Constitution under *Ashcroft v. Iqbal*, 2009 U.S. LEXIS 3472 (U.S. May 18, 2009). San Francisco Defendants submit that they are not.

This motion is based on this notice and the following memorandum of points and authorities, the pleadings, orders and records on file in this case, the decision of the Ninth Circuit Court of Appeals in this case, and on such oral argument as may be presented at the hearing of this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**PLAINTIFF'S FACTUAL ALLEGATIONS**

Plaintiff brought this action to challenge the administration and implementation of the No-Fly list, "a list circulated to commercial airlines and security personnel with directions to detain and question any passenger whose name matches or is similar to one on the No-Fly List," and to challenge the placement of her own name on the No-Fly List. [Second Amended Complaint ¶ 28.]

**A.  Allegations Related To Her No-Fly List Challenge**

Plaintiff alleges that the United States Attorney General established the Terrorist Screening Center for the purpose of consolidating the United States Government's approach to terrorist

1   screening and the use of information in the screening process.  [Second Amended Complaint ¶ 5.]
2   The Federal Bureau of Investigation, through the Terrorist Screening Center, "maintains a
3   government watchlist and transmits this list" to the Transportation and Security Administration; the
4   airlines in turn are required to check their passengers lists against the No-Fly List.  [*Id.* at ¶ 6.]  The
5   Terrorist Screening Center determines who is on the list that makes up the No-Fly list.  [*Id.* at ¶ 8.]

The Department of Homeland Security was created on October 8, 2001 to develop and coordinate the implementation of a comprehensive national strategy to secure the United States from terrorist threats or attacks.  [*Id.* at ¶ 12.]  The Secretary of the Department of Homeland Security is responsible "to review alien nominations" to the Terrorist Screening Center's database.  [*Id.* at ¶ 13.]  She is also responsible to establish necessary guidelines and criteria to initiate appropriate law enforcement action or other governmental action, if any, when a person submitted for query by a private sector entity is identified in the terrorist screening database.  [*Id.*]

The No-Fly List is circulated to commercial airlines and security personnel with directions to detain and question any passenger whose name matches or is similar to one on the No-Fly List.  [*Id.* at ¶ 28.]  Since the No-Fly List was implemented in November 2001, it has resulted in "hundreds, if not thousands, of innocent passengers being routinely stopped, questioned, searched, and sometimes physically arrested.'  [*Id.* at ¶ 29.]  The No-Fly List contains thousands of names, "primarily of names of individuals of Muslim or Middle Eastern descent."  [*Id.* at ¶ 30.]  The No-Fly List is distributed to airport security and law enforcement agencies.  [*Id.* at ¶ 33.]  Recipients of the No-Fly List are instructed to not allow on a flight those whose name is similar or identical to a name on the No-Fly List.  Even if the passenger's actual identify is verified, a boarding pass is issued which is stamped with a mark to indicate the passenger must be subject to enhanced screening."  [*Id.* at ¶ 33.]

"Innocent passengers subjected to this treatment are stigmatized, humiliated, and subjected to interrogations, delays, enhanced searches, detentions, and sometimes actual physical arrest without a warrant or any probable cause."  [*Id.* at ¶34.]

### B. Allegations Related to the San Francisco Defendants

Plaintiff alleges that she was subjected to "this humiliating treatment on January 2, 2005, at the SFO, while traveling to Malaysia, through an initial stop in Hawaii." [Second Amended Complaint ¶ 35.]

She is a Muslim woman who is clearly identifiable as a Muslim as she wears a hijab, and is a citizen of Malaysia. [*Id.* ¶ 36.] She was in the United States on a student visa on January 2, 2005 when she was scheduled to fly to Kuala Lumpur, Malaysia, with a changing fight in Hawaii. [*Id.*]

She arrived at the airport at 7:00 a.m., and a United Airlines employee approached and asked to see her tickets. The United Airlines employee called the San Francisco Police Department and informed them that plaintiff was on the No-Fly List. [*Id.* ¶¶ 38-39.] At the request of the United Airlines employee, defendants Officer Cunningham and Sergeant Pate, of the San Francisco Police Department, arrived at the airport. [*Id.* at ¶ 39.] Sergeant Pate checked the No-Fly List for plaintiff's name. [*Id.*] Sergeant Pate called defendant Bondanella in Washington D.C. and defendant Bondanella "told defendant Pate, to not allow [plaintiff] Ibrahim on the flight, to contact the FBI, and to detain Ibrahim for questioning." [*Id.*]

Plaintiff stood waiting for an hour and a half, with no wheelchair, while she suffered from back and abdominal pain. Plaintiff's friend informed the San Francisco Police Department officers several times of Ibrahim's medical condition [she had hysterectomy surgery in October 2004 and suffered back and abdominal pain from her surgery]. [*Id.* ¶¶ 40, 37.]

At 8:45 a.m., fifteen minutes before plaintiff's flight was scheduled to leave, defendant Officer Cunningham told her that she was being arrested. Officer Cunningham handcuffed plaintiff, with her hands behind her back, in front of her fourteen-year old daughter and everyone else at the airport. She was not told why she was being arrested; instead she was taken to the San Francisco Police Department station, escorted by three males. [*Id.* ¶ 41.]

Upon arriving at the police station, a female officer, defendant Officer Elizabeth Maron, searched plaintiff. During this search at the police station, Officer Maron attempted to remove Ibrahim's hijab and searched under her hijab in public view, before the other male officers. [*Id.* ¶ 42.] This involved removing part of plaintiff's hijab and loosening her hair. [*Id.* ¶ 116 (d).]

1    On information and belief, the officers informed the FBI of Ibrahim's detention. [*Id.* ¶ 42.]
2 Ibrahim was placed in a holding cell for two hours, where she continued to suffer back and
3 abdominal pain, and was not given medication to relieve the pain when she asked for it. [*Id.* ¶ 43.]
4 Paramedics were called and she was given medication when they left. [*Id.*]

5    On information and belief, the FBI requested San Francisco Police Department to release
6 Ibrahim at approximately 11:15 a.m., over two hours after her flight had left. [*Id.* ¶ 44.]

### C.  Causes of Action Against the San Francisco Defendants

Ibrahim brings eight causes of action against the San Francisco Defendants, only three of which are at issue here. She brings a claim for violation of her right to be free from unreasonable search and seizure under the Fourth Amendment. [Second Amended Complaint, Third Cause of Action, ¶¶ 64-70.] And she brings four state law cause of action. [*Id.*, Ninth to Twelfth Causes of Action, ¶¶103-121.] This motion does not address these causes of action.

This motion seeks to dismiss three causes of action, each brought under 42 U.S.C. § 1983:

The first cause of action that each of the San Francisco Defendants violated her right to equal protection as set out in the Fourteenth Amendment of the Constitution. [*Id.*, ¶¶ 51-57.]

The fifth cause of action that each of the San Francisco Defendants "deprived plaintiff of her freedom of religion under the United States Constitution as set forth under the First Amendment to the United States Constitution." [*Id.*, ¶¶ 77-83.]

The seventh cause of action that each of the San Francisco Defendants "deprived plaintiff of her freedom of association under the United States Constitution, which is protected under the First Amendment to the United States Constitution." [*Id.*, ¶¶ 77-83.]

## ARGUMENT

### I.  PLAINTIFF'S DISCRIMINATION-BASED CAUSES OF ACTION AGAINST THE SAN FRANCISCO DEFENDANTS HAVE NO FACTUAL SUPPORT

#### A.  Motion to Dismiss Standard

A motion to dismiss for failure to state a claim tests the legal sufficiency of the claims alleged. Fed. R. Civ. Proc. 12(b)(6).

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544,

> 127 S. Ct. 1955, 167 L. Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929.

*Ashcroft v. Iqbal*, 2009 U.S. LEXIS 3472, *28-29 (U.S. May 18, 2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 2009 U.S. LEXIS 3472 at *29. To survive a motion to dismiss, the factual allegations in the complaint must move beyond the mere possibility that unlawful actions have occurred, but instead must contain factual allegations that state a claim for relief that is plausible on its face. *Id.*

### B. First Cause of Action – Equal Protection

To prevail on an action of denial of equal protection based on alleged selective enforcement, plaintiff is required to prove that she was selected for the arrest or detention based on her religion or race. *United States v. Kidder*, 869 F.2d 1328, 1336 (9th Cir. 1989). To state a claim for such invidious discrimination, plaintiff must plead sufficient factual matter to show that the defendants took the actions "not for a neutral investigative reason, but for the purpose of discriminating on account of race, religion, or national origin." *Ashcroft v. Iqbal*, 2009 U.S. LEXIS 3472 at *27. The factual allegations must be that actions were taken "because of" the adverse effects upon the identifiable group, not merely "in spite" of such adverse effects. *Id.*

Here, plaintiff pleads no facts at all to support such a claim. Plaintiff incorporates the general factual allegations of her complaint. [Second Amended Complaint ¶ 51]. And she alleges that her "name was placed on the No-Fly List." [*Id.* ¶ 53.] But her complaint makes clear that the federal government makes the determination to place individual names on the list. [*Id.* ¶¶ 6, 8, 13.] And she alleges that the purpose of the lists, created and maintained by the Federal government, is to create a consolidated approach to screening for terrorists, and to coordinate a national strategy to secure the United States from terrorists attacks or threats. [*Id.* ¶¶ 5, 12.] She also alleges that the

No-Fly List consists primarily of Muslims and persons of Middle Eastern dissent. [*Id.* at ¶ 30.] So that fact that she, a Muslim and a Malaysian citizen, was allegedly on the No-Fly List cannot be evidence of invidious discrimination on behalf of the San Francisco defendants.

She then states the following as to the individual San Francisco defendant officers:

> [D]efendants arrested Ibrahim for several hours although they lacked a warrant, probable cause, or any reasonable belief that she committed a crime. Ibrahim is informed and believes, and thereon alleges, that defendants made the arrest despite these obvious deficiencies, because they perceived she was a Muslim and a citizen of Malaysia. On information and belief, defendants acted in a discriminatory manner, with the intent to discriminate on the basis of Ibrahim's religious beliefs and her national origin as a citizen of Malaysia.

[*Id.* at ¶ 53.] That is it. The alleged unlawful arrest, of course, is the subject of Ibrahim's third cause of action for violation of the Fourth Amendment. But here she alleges that the same action violated her right to equal protection based on nothing more than that she is identifiable as a Muslim and a citizen of Malaysia. She offers only a "formulaic recitation of the elements of the cause of action," for intentional discrimination, but nothing more.

Under *Ashcroft v. Iqbal*, that will not do. There Mr. Iqbal, a Muslim and a citizen of Pakistan, was arrested in the wake of the September 11, 2001, terrorist attacks. *Ashcroft v. Iqbal*, 2009 U.S. LEXIS 3472 at *8. He alleged that he was deprived of various constitutional protections in custody. *Id.* In addition, he sued John Ashcroft and Robert Mueller, the former Attorney General and the Director the Federal Bureau of Investigations. *Id.* at *9. As to these two, he alleged that "they adopted an un-constitutional policy that subjected [Mr. Iqbal] to harsh conditions of confinement on account of his race, religion, or national origin." *Id.* In September 2001, the FBI and other entities in the Department of Justice began an investigation related to identify the assailants and to prevent new attacks. *Id.* at *10. In the ensuing months, hundreds of people were arrested, and 184 of them, including Mr. Iqbal, were "deemed to be 'of high interest' to the investigation, and were held in restrictive conditions to prevent them from communicating from the outside world. *Id.* at *10-11.

Mr. Iqbal contended that Attorney General Ashcroft and Director Mueller designated him a person of high interest "on account of his race, religion, or national origin, in contravention of the First and Fifth Amendments of the Constitution." *Ashcroft v. Iqbal*, 2009 U.S. LEXIS 3472 at *13.

1  He alleged that under the direction of Director Mueller, the FBI arrested thousands of Arab Muslim
2  men and detained them in highly restrictive conditions until they were "cleared" by the FBI, a policy
3  approved of by both Mr. Ashcroft and Mueller. *Id.* at *13-14.  He pled that both condoned, and
4  willfully and maliciously agreed to subject him to harsh treatment as a matter of policy, solely on
5  account of his religion, race, and /or national origin, without a legitimate penological interest, and
6  that Mr. Ashcroft was the principal architect of the plan. *Id.*

7  The Supreme Court held that under Rule 8 of the Federal Rules of Civil Procedures, the
8  allegations that the two men knew of and maliciously agreed to subject him to harsh treatment solely
9  because of his race, religion and/or national origin, and that Mr. Ashcroft was the architect were
10 mere "formulaic recitations" of elements and, due to their conclusory nature alone, not entitled to the
11 presumption of truth. *Id.* at *33-34.  The Court then turned to the factual allegations that thousands
12 of Arab Muslim men were detained as part of the September 11, 2001 investigations, and held in
13 highly restrictive means, and took these allegations as true. *Id.* at *34-35.  The Court found that the
14 allegations were consistent with a purposeful designation of "high interest" on the basis of race,
15 religion, or national origin, but that "given the more likely explanations, they do not plausibly
16 establish this purpose." *Id.* at *35.  The Court noted that the September 11 attacks were perpetrated
17 by 19 Arab Muslim hijackers who counted themselves as members of Al Qaeda, which was
18 composed largely of Arab Muslims disciples of Osama bin Laden. *Id.* at 35.  The Court found that
19 an obvious nondiscriminatory intent would have been to detail illegal aliens who had any connection
20 with the individual acts. *Id.* at 36.  "As between the obvious alternatives, the Court found that
21 "purposeful, invidious discrimination is not a plausible conclusion." *Id.*

22 Plaintiff Ibrahim's allegations are mere recitations of the elements of the cause of action for
23 religion or national origin discrimination.  Those conclusory allegations, the Officers selected her for
24 different treatment based solely on the basis of her religion or national origin, which are not to be
25 taken as true, are belied by the other factual allegations in her complaint.  Rather than alleging that
26 Officer Cunningham and Sergeant Pate approached her out of the blue and made a comment
27 indicating animus, or that she was the only identifiable Muslim present and the officers singled her
28 out; instead she alleges the officers came to the scene *because* they were called by United Airlines

1  and at United Airlines' *request* because she was allegedly on the No-Fly list.  [Second Amended
2  Complaint ¶ 39.]  That is, her factual allegations make clear that the officers had a non-
3  discriminatory reason for approaching her in the first instance.

4        Plaintiff also alleges that the reason she was detained was due to conversations that Sergeant
5  Pate had with the federal government, and that she was released at the request of the Federal
6  government.  [Second Amended Complaint, ¶¶ 39, 42, 44.]  Even if she had not alleged that, she has
7  no allegations to support her notion that after being approached for a non-discriminatory reason (at
8  the request of an airline employee who informed the officers she was on the No-Fly list) she was
9  detained *because of* not *in spite of* the fact of her religion and national origin.  The officers kept her
10 informed of what was going on and released her upon requests.  She alleges that it is discrimination
11 simply because she is an identifiable Muslim and of Malaysian descent.  Under *Ashcroft v. Iqbal*,
12 that is simply not enough.

13       Against the San Francisco public entity defendants, she alleges only that "Defendants were
14 acting in accordance with a custom, policy and/or practice of the [San Francisco Airport], the [San
15 Francisco Police Department], and [the City and County of San Francisco] in violating plaintiff's
16 constitutional rights as set forth above."  [Second Amended Complaint, ¶ 55.]  While these are
17 conclusory allegations, even if taken as true (which they cannot be) they are insufficient; plaintiff
18 does not allege any facts to support that the purpose in enacting and implementing the alleged
19 policies was for the purpose of discrimination.  Plaintiff's cause of action for violation of her right to
20 equal protection under the Fourteenth Amendment should be granted as to the individual defendants
21 and the public entity defendants.

22     **C.**    **Fifth and Seventh Causes of Action – First Amendment Freedom of Religion and Freedom of Association**

23       Plaintiff's fifth and seventh causes of action both assert first amendment claims against all of
24 the San Francisco Defendants, based on freedom of religion and freedom of association respectively.
25 Once again, to state a claim for invidious discrimination in contravention of the First Amendment,
26 plaintiff must plead and prove that defendants acted with discriminatory purpose; that is they acted
27
28

"because of, not merely in spite of" the adverse effects on the identifiable class. *Ashcroft v. Iqbal*, 2009 U.S. LEXIS 3472 at *28.

Here, once again plaintiff pleads no facts at all to support such claims. She incorporates the general factual allegations of her complaint, and alleges here name was on the No-Fly List. [Second Amended Complaint ¶¶ 77, 79, 90, 92.] Again, the fact that she, a Muslim and a Malaysian citizen, was allegedly on the No-Fly List cannot be evidence of invidious discrimination on behalf of the San Francisco Defendants. She alleges that she wears a hijab. [*Id.* at ¶¶ 79, 92.] She then alleges that the individual officers arrested here without any probable cause or reasonable suspicion that she had committed a crime. [*Id.* at ¶ 79, 92.] As to the Fifth Cause of Action for deprivation of freedom of religion, she states the following:

> Plaintiff is informed and believes, and thereon alleges, that defendants arrested her because of her protected religious expression and because they perceived she was Muslim.

[*Id.* at ¶ 79.] As to the Seventh Cause of Action for deprivation of freedom of association, she states the following:

> Defendants violated plaintiff's freedom of association in that, on information and belief, defendants arrested plaintiff because of her association with the Muslim community or the Islamic religion, and based on her national origin. .

[*Id.* at ¶ 92.]

Plaintiff's conclusory allegations, which are not to be taken as true, are again belied by the other factual allegations in her complaint. She also alleges that the reason she was detained was through conversations that Sergeant Pate had with the federal government, and that she was released at the request of the Federal government. [Second Amended Complaint at ¶¶ 44, 47, 49.] Even if she had not alleged that, she has no allegations to support her notion that after being approached for a non-discriminatory reason she was detained *because of* not *in spite of* the fact of her religion and national origin, other than the she is an identifiable Muslim and a Malaysian descent. Again, under *Ashcroft v. Iqbal*, that is simply not enough.

As to Officer Maron, the only allegation against her is that in the police station, Officer Maron attempted to (but did not) remove plaintiff's hijab, ran her hand under the hijab and loosed plaintiff's hair during a search "in public view, before male officers." [Second Amended Complaint,

1   ¶¶ 42, 116(d).]  In other words, in a police station Officer Moran did a cursory search on a female
2   detainee.  Such a search is more plausibly explained by a facially neutral policy of searching
3   detained persons, rather than by some covert act to single out Muslims for searches not conducted on
4   others.  Plaintiff simply does not allege the well-known facially neutral policy of conducting pat
5   searches is in reality a covert effort to discourage or restrict the religious practice of wearing a hijab.
6   *See, Church of the Lukumi Babalu Ayes, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993) (Free
7   Exercise clause of first amendment violated where facially neutral law's true object is to infringe
8   upon or restrict practices because of their religious motivation); *In Employment Division v. Smith*,
9   494 U.S. 872, 879 (1990) (a rationally based, neutral law of general applicability does not violate the
10  right to free exercise of religion even though the law incidentally burdens a particular religious belief
11  or practice).  Under plaintiff's theory, every time a Muslim woman is subjected to a cursory search
12  in a police station, a discrimination claim exists.  Her claim must fail.
13         And once again, against the San Francisco public entity defendants, she alleges only that
14  "Defendants were acting in accordance with a custom, policy and/or practice of the [San Francisco
15  Airport], the [San Francisco Police Department], and [the City and County of San Francisco] in
16  violating plaintiff's constitutional rights as set forth above."  [Second Amended Complaint ¶¶ 81,
17  94.]  While these are conclusory allegations, even if taken as true they are insufficient, as she does
18  not allege any facts to support that the purpose in enacting and implementing the alleged policies
19  was for the purpose of discrimination.  Plaintiff's First Amended causes of action should be
20  dismissed.
21         **D.     Plaintiff Should Not Be Provided Leave To Amend**
22         Plaintiff has now filed three complaints.  In moving to dismiss the first amended complaint,
23  the San Francisco Defendants stated, among other things, that plaintiff's equal protection claim
24  contained mere conclusory allegations that were contradicted by the facts.  [Docket 106, Motion to
25  Dismiss at p. 4.]  Plaintiff opposed, stating that she alleged she was arrested because of her religion,
26  but identified no facts to support the allegations.  [Docket 127, Opposition to Motion to Dismiss, at
27  p. 11.]  The San Francisco Defendants specifically stated that if plaintiff had such facts (that she
28  could allege consistent with Rule 11) she should do so on amendment—as defendants would seek

1  attorneys' fees for frivolous and baseless allegations of discrimination against the individual officers
2  if she could not do so.  [Docket 130, Reply in Support of Motion to Dismiss, a p. 4-5.]  Similarly,
3  with the freedom of religion and association claims, the San Francisco Defendants moved to dismiss
4  because, among other reasons, the allegations were mere conclusions of law.  [Docket 106, Motion
5  to Dismiss, at p. 5-6.]  That motion was not heard, but when the case came back from the Ninth
6  Circuit, plaintiff amended, eliminating some of the claims addressed in San Francisco's motion to
7  dismiss, but maintaining the conclusory allegations related to equal protection, freedom of religion,
8  and freedom of association.

Given that plaintiff has been on notice that defendants would hold her to allege *fact*s to support her allegations, and that she has had multiple opportunities to come up with such facts but has been able to do so, the Court should grant the motion to dismiss without leave to amend.

## CONCLUSION

The San Francisco Defendants respectfully request that the Court grant its motion to dismiss the first cause of action against the individual and entity defendants for violation of equal protection, and the fifth and seventh causes of action against the individual and entity defendants for violation of the free exercise and freedom of association clauses of the First Amendment.

Dated:  June 1, 2009

                                DENNIS J. HERRERA
                                City Attorney
                                JOANNE HOEPER
                                Chief Trial Deputy
                                RONALD P. FLYNN
                                PETER J. KEITH
                                Deputy City Attorneys


                        By:     */s/ Ronald P. Flynn*
                                RONALD P. FLYNN
                                Attorney for Defendants
                                CITY AND COUNTY OF SAN FRANCISCO,
                                SAN FRANCISCO AIRPORT, SAN FRANCISCO
                                POLICE DEPARTMENT, JAMES CUNNINGHAM,
                                ELIZABETH MARON, AND RICHARD PATE