IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAHINAH IBRAHIM,

    Plaintiff,

v.

DEPARTMENT OF HOMELAND SECURITY, *et al.*,

    Defendants.

                                            /

No. C 06-00545 WHA

**ORDER RE DISCOVERY DISPUTE**

**INTRODUCTION**

This order tries to simplify a thicket of competing discovery motions so that the harder question can be resolved on the schedule previously set.

**STATEMENT**

This action challenges the placement of plaintiff's name on the "no-fly list," a list maintained by the United States government and circulated to carriers serving the United States. An order dated July 27, 2009, dismissed all federal government defendants from this action. Plaintiff now moves to compel *former* federal defendants to produce responses to various special interrogatories and requests for production that were propounded prior to the July 27 order. Former federal defendants move to quash subpoenas served on them by plaintiff. For the reasons stated below, plaintiff's motion to compel former federal defendants' responses is **DENIED IN PART**, specifically as to the request for responses to special interrogatories. Former federal

defendants' procedural objection to plaintiff's motion to compel and supporting their motion to quash is **OVERRULED**. Additional information is requested from former federal defendants.

The statutory scheme embodied in the Aviation and Transportation Security Act, enacted after the terrorist attacks of September 11, 2001, was explained in detail in the order dated July 27, 2009 (*see* Dkt. No. 197). The "no-fly list" is a part of this scheme — it is a list of individuals that have been deemed by the federal government "to pose, or [are] suspected of posing, a risk of air piracy or terrorism or a threat to airline or passenger safety." 49 U.S.C. 114(h)(2). This list is accessible to "the Administrator of the Federal Aviation Administration, appropriate State and local law enforcement officials, and airport or airline security officers." *Ibid.* 49 U.S.C. 114(h)(3)(B) instructs, "if such an individual is identified, notify appropriate law enforcement agencies, prevent the individual from boarding an aircraft, or take other appropriate action with respect to that individual." As the term is used in this order, the "no-fly list" refers to both the "no-fly" list, which allegedly contains names of people that airlines are prohibited from transporting, and the "selectee" list, which allegedly contains names of people who are subject to additional screening prior to boarding a plane (Second Amd. Compl. ¶ 30).

Plaintiff Rahinah Ibrahim is a Muslim woman and a citizen of Malaysia. In 2005, she was a doctoral student at Stanford University preparing a thesis on affordable housing. She was scheduled to complete her doctoral degree in March 2005. According to the pleading, she has no criminal record or links to terrorist activity.

The specific facts surrounding plaintiff's alleged harm were exhaustively set forth in the July 27 order. Briefly, on January 2, 2005, plaintiff and her fourteen-year-old daughter reported to the United Airlines ticket counter at the San Francisco International Airport, intending to board a flight to Kuala Lumpur. According to plaintiff, the United Airlines employee at the ticket counter called the San Francisco Police Department and told them that plaintiff was on the no-fly list. Two San Francisco Police Officers, both still defendants in this case, arrived at the airport. One officer telephoned defendant John Bondanella, a watch officer for the Transportation Security Operations Center employed by defendant United States Investigations Services, Inc., a private corporation that provided contract services to the TSOC. During this phone conversation,

plaintiff alleges that Bondanella "told [the officer] to not allow Ibrahim on the flight, to contact the FBI, and to detain Ibrahim for questioning" (*id.* at ¶ 39). Plaintiff was then detained by the second police officer, without explanation, taken to the San Francisco Police Station, searched, and placed in a holding cell. Two hours later, the FBI requested that plaintiff be released. Plaintiff was then told that her name had been removed from the no-fly list. The following day, January 3, 2005, plaintiff was allowed to fly to Kuala Lumpur from San Francisco. When plaintiff attempted to return to the United States in March 2005, the ticketing agent at Kuala Lumpur International Airport would not allow her to fly. A 2005 letter from the United States embassy in Malaysia informed plaintiff that her student visa had been revoked.

Ibrahim initiated this action against various individual, state, and federal defendants in 2006. On remand from an appeal, plaintiff filed a second amended complaint on April 2, 2009. On April 3, 2009, plaintiff issued requests for production of documents and special interrogatories to federal defendants (*see* Dkt. No. 232 Exh. A–B). On May 28, 2009, federal defendants responded with numerous privilege objections and refused to produce various documents without redactions (*see id.* at Exh. C–D). According to plaintiff, federal defendants produced no documents showing whether her name was placed on the no-fly list, and have refused to answer whether she was on the no-fly list (Plaintiff's Br. 4). After a meet-and-confer session, the federal defendants agreed to allow two of Ibrahim's counsel to undergo an extensive background check and enter into an appropriate protective order to review the allegedly privileged documents (*ibid.*).

Before this could be completed, an order dated July 27, 2009, dismissed all federal defendants from the action (Dkt. No. 197). "Federal defendants" are referred to hereinafter as "former federal defendants," as they are no longer parties to the present action. Former federal defendants include the Department of State, Department of Homeland Security, Federal Bureau of Investigation, and Transportation Security Administration.

On November 2, 2009, plaintiff electronically served federal subpoenas former federal defendant's counsel addressed to an FBI employee and a TSA employee, to appear and testify at depositions (*see* Dkt. No. 245 Exh. 3–4). On November 3, 2009, former federal defendants'

3

counsel received via mail two federal subpoenas addressed to Department of State and DHS seeking: (1) documents and information regarding plaintiff's September 29, 2009, visa interview in Kuala Lumpur; (2) all documents and information regarding plaintiff's visa application; and (3) all documents and information regarding any decisions on that visa application (*see id.* at Exhs. 1–2). On November 4, 2009, former federal defendants' counsel requested by letter that plaintiff withdraw the subpoenas and that any requests for testimony or documents be resubmitted in compliance with 5 U.S.C. 301, *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), and the *Touhy* regulations associated with each agency (*see* Dkt. No. 245 Exh. 5).

As of November 5, 2009, the two plaintiff's counsel had still not received the results of the background check agreed to in the prior meet-and-confer session, and former federal defendants had still not provided the requested protective order (Plaintiff's Br. 4–5). Plaintiff filed a motion to compel former federal defendants to produce the documents and information that they allegedly failed to accurately respond to, or simply failed to respond to, in May 2009 (Dkt. No. 231). Specifically, plaintiff seeks responses to various special interrogatories and documents responsive to certain requests for production which were propounded in April 2009 (*see* Plaintiff's Br. 1). The information requested by the special interrogatories is not relevant, as discussed below. The requests for production of documents seek the following materials (*id.* at 2–3):

1. FBI phone logs related to plaintiff identified in the former federal defendants' initial disclosures in this case;

2. TSA employee logs generated and kept at the San Francisco Airport related to plaintiff;

3. TSA employee logs and files from the Transportation Security Operations Center related to plaintiff;

4. The no-fly list and other documents identifying plaintiff as someone who should be selected for special screening;

5. Documents considered when placing plaintiff's name on the no-fly list;

4

   6. Documents considered when placing plaintiff's name in the terrorist screening database;

   7. Documents discussing the incident that is the subject of this lawsuit;

   8. Documents instructing law enforcement to arrest or detain plaintiff;

   9. Documents discussing instructions about the incident exchanged between federal defendants and other defendants;

   10. Documents discussing instructions about plaintiff exchanged between former federal defendants and other defendants; and

   11. Video recordings of conversations between federal defendants and plaintiff.

After filing this motion, on November 10, 2009, plaintiff served three more federal subpoenas on former federal defendants' counsel addressed to the FBI, Terrorist Screening Center, and DHS (Dkt. No. 253). These subpoenas seek the same documents that Ibrahim sought in her requests for production of documents prior to the dismissal of the parties.

Former federal defendants oppose the motion to compel largely on the ground that plaintiff's requests do not comply with 5 U.S.C. 301 and each agency's *Touhy* regulations (Dkt. No. 243). They have also filed a motion to quash the above-mentioned subpoenas based on the same grounds (Dkt. No. 256).

**ANALYSIS**

**1. PLAINTIFF CANNOT COMPEL RESPONSES TO INTERROGATORIES.**

Plaintiff is not entitled to enforce interrogatories and document requests that were made against the former federal defendants when they were *actual* parties to this case. Former federal defendants, however, have been dismissed and, therefore, are not subject to Federal Rules of Civil Procedure 33 and 34. The only avenue available for plaintiff to seek to discover information from federal agencies is through Rule 45 subpoenas for depositions and documents, and which must comply with the agencies' internal *Touhy* regulations, as explained below. There is no provision in the Federal Rules of Civil Procedure made for requests for interrogatories to non-parties. As a

1 result, plaintiff's motion to compel former federal defendants' responses to the special
2 interrogatories is **DENIED**.

3 This order now evaluates only the document requests set out in plaintiff's subpoenas to
4 former federal defendants and plaintiff's motion to compel.

### 2. FORMER FEDERAL DEFENDANTS' PROCEDURAL OBJECTION.

Former federal defendants seek to quash the subpoenas for documents issued against DHS, FBI, TSC, and the Department of State, and the subpoenas for deposition testimony issued against the employees of FBI and TSA (Dkt. No. 256). The alleged basis for the motion to quash is that 5 U.S.C. 301 and the regulations issued in accordance with *Touhy*, 340 U.S. 462, require the plaintiff to make requests for information in accordance with certain procedures which were not complied with. Former federal defendants oppose plaintiff's motion to compel largely on the same grounds.

#### A. 5 U.S.C. 301.

Section 301 states:

> The head of an executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

The Ninth Circuit has stated that, "in interpreting § 301, we will not distinguish between subpoenas seeking testimony and documentary evidence. There is no difference . . . between the power of an agency head to specify what records a subordinate may release and the power to specify what information a subordinate may release through testimony." *Exxon Shipping Co. v. United States Department of Interior*, 34 F.3d 774, 777 (9th Cir. 1994) (citations and quotation marks omitted).

Section 301 does not provide substantive rules regulating the disclosure of government information; rather, it is simply a "'housekeeping statute,' authorizing what the [Administrative Procedure Act] terms 'rules of agency organization, procedure or practice.'" *Id.* at 777 (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 310 (1978)). This means that "Section 301 does not, by

its own force, authorize federal agency heads to withhold evidence sought under a valid federal court subpoena." *Ibid.* Indeed, per its second sentence, the statute itself does not provide an independent privilege of non-disclosure. *See*, *e.g.*, *id.* at 777 n.5.

But Section 301 does authorize the head of an agency to prescribe regulations governing the disclosure of the agency's records.

### B.   THE *TOUHY* REGULATIONS.

Pursuant to Section 301, the Departments of State, Homeland Security, and Justice have promulgated internal regulations governing the disclosure of information in legal proceedings. Specifically, requests for documents and information from DOS are governed by regulations in 22 C.F.R. 172, *et seq.*; requests for documents and information from DHS and TSA are governed by the DHS regulations in 6 C.F.R. 5.41, *et seq.*; and requests for documents and information from FBI are governed by the DOJ regulations in 28 C.F.R. 16.22, *et seq.* These are also known as "*Touhy* regulations" because it was in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951), that the Supreme Court upheld the validity of such internal regulations. Indeed, the Ninth Circuit has stated that "[a]ny doubt as to the validity of the regulation's requirement of prior approval is foreclosed, in our view, by the Supreme Court's decision in [*Touhy*, 340 U.S. at 468], which upheld the validity of a predecessor to 28 C.F.R. § 16.22(a)." *In re Recalcitrant Witness Richard Boeh*, 25 F.3d 761, 763–64 (9th Cir. 1994).

Although there are several *Touhy* regulation matters addressed in the parties' motions and responses thereto, former federal defendants rely heavily on a procedural objection. For jurisdictional and clarification purposes, that is the focus of this order.

### C.   THE PROCEDURAL OBJECTION.

The applicable procedural regulations are as follows. The DOJ regulation, 28 C.F.R. 16.22(d), states (emphasis added): "When information other than oral testimony is sought by a demand, the responsible U.S. Attorney shall request a summary of the information sought and its *relevance* to the proceeding." Likewise, the DHS regulation, 6 C.F.R. 5.45(a), similarly states (emphasis added):

> If official information is sought, through testimony or otherwise, by
> a request or otherwise, by a request or demand, the party seeking

7

> such release or testimony must . . . set forth in writing, and with as much specificity as possible, the nature and *relevance* of the official information sought. Where documents or other materials are sought, the party should provide a description using the types of identifying information suggested in § 5.3(b). Subject to § 5.47, Department employees may only produce, disclose, release, comment upon, or testify concerning those matters which were specified in writing and properly approved by the appropriate Department official designated in § 5.44. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). The Office of the General Counsel may waive the requirement of this subsection in appropriate circumstances.

*See also* 22 C.F.R. 172.5 (the DOS regulation, requiring substantially the same procedures as 6 C.F.R. 5.45(a)). As stated above, these regulations are valid pursuant to 5 U.S.C. 301. Moreover, the Ninth Circuit has held that failure to comply with such regulations is grounds for granting a motion to quash. *See United States v. Henson*, 123 F.3d 1226, 1237 (9th Cir. 1997), *overruled on other grounds bu United States v. Foster*, 165 F.3d 689, 692 n.5 (9th Cir. 1999).

Former federal defendants state that plaintiff has failed to specify the *relevance* of the information that she seeks, as required by the above-regulations. As a result, former federal defendants state that they have not yet conclusively decided *not* to produce the information, therefore: (1) plaintiff's attempts to compel the production of such documents and information is inappropriate; and (2) this order lacks jurisdiction over this matter because judicial review of agency decision-making is only allowed when there has been a *final* agency action.

### (1) Plaintiff is in Substantial Compliance With the Touhy Regulations.

Former federal defendants mistakenly assume that the request or demand for the documents or information specified in the procedural regulations must be filed *separately* from a subpoena, a motion to compel, or other discovery requests. To the contrary, pursuant to the regulations at issue here, plaintiff's subpoenas and motion to compel have both sufficiently initiated the administrative process. *See*, *e.g.*, 28 C.F.R. 16.21 (a "subpoena, order, or other demand" for material or information is an administrative demand that initiates the administrative process); *Edwards v. United States*, 43 F.3d 312, 316 (7th Cir. 1994) (same). Indeed, 6 C.F.R. 5.41(a)(2) and 22 C.F.R. 172.1(a)(2) both state that the regulations apply to (emphasis added):

> The oral or written disclosure, in response to *subpoenas, order, or other requests or demands* of federal or state judicial or quasi-judicial or administrative authority as well as state legislative authority (collectively, 'demands'), whether civil or criminal in nature, or in response to *requests for depositions, affidavits, admissions, responses to interrogatories, document production, interviews, or other litigation-related matters*, including pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, or applicable state rules (collectively, 'requests'), of any material contained in the files of the Department, any information relating to material contained in the files of the Department, or any information acquired while the subject of the demand or request is or was employed by the Department, or served as Secretary of the Department, as part of the performance of that person's duties or by virtue of that person's official status.

Given how exhaustively plaintiff has laid out both the summary of the information requested and the relevance of those materials in her subpoenas, her motion to compel, and attachments thereto, this order finds that plaintiff has *substantially complied* with the requirements of the regulations detailed above.

Additionally, the Court has read the subpoenas, motion to compel, and the document requests attached thereto. As a general matter, without ruling on each specific document requests, this order finds that the requests are reasonable in scope, except that all requests must be and are limited to the specific year and events of the incident in question — namely, 2005 for the no-fly list matters and 2009 for the visa interview matters.

The government has asserted a law enforcement privilege, which may well apply — but that issue has not yet been determined, and all parties will brief it on the schedule set forth in the order dated November 18, 2009 (Dkt. No. 258). Possibly other privileges may apply, but the government must clearly assert them, and all supporting bases thereof, by **FRIDAY, NOVEMBER 20, 2009 AT NOON**, as previously explained. Responses thereto are due by **MONDAY, NOVEMBER 30, 2009 AT NOON**, per the schedule set forth in the November 18 order (Dkt. No. 258).

### (2) This Court has Jurisdiction to Determine This Discovery Dispute.

Former federal defendants have raised the question of whether this Court even has jurisdiction to evaluate their response to plaintiff's motion to compel. Of course it has jurisdiction. All circuit courts that have spoken on the issue conclude that a federal agency's

9

response to a subpoena or other administrative demand is properly subject to judicial review. *See*, *e.g.*, *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 61 (1st Cir. 2007) ("The fact that [the plaintiff] made its request for information in the form of a subpoena from the [DOJ] does not affect the nature of our review under the APA"); *In re SEC ex rel. Glotzer*, 374 F.3d 184, 190 (2d Cir. 2004) ("[A] motion to compel agency compliance with a subpoena qualifie[s] as agency 'action' seeking review of 'agency action' for purposes of APA § 702"); *Edwards*, 43 F.3d at 316 ("The subpoena is treated as an administrative demand. The Department's response to the subpoena[] is subject to judicial review [subject to three qualifications that only apply outside the Ninth Circuit and/or as to state court subpoenas]"); *Yousuf v. Samantar*, 451 F.3d 248, 251 (D.C. Cir. 2006) ("[A]n agency's refusal to comply with a subpoena constitutes 'final agency action . . . ripe for review under the APA.' *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 275 ([4th Cir.] 1999)").

Additionally, former federal defendants assert that plaintiff must file a separate action under the Administrative Procedure Act to challenge the agencies' decision to not comply with federal subpoenas. This order recognizes that there is a circuit split on the matter, however the Ninth Circuit has clearly stated that a separate APA action is *not* necessary. *See Exxon Shipping Co.*, 34 F.3d at 779, 780 n.11. Rather, district courts review discovery disputes involving non-party federal agencies as part of the underlying litigation and under the general rules of discovery, using a balancing test to balance the litigant's need for the information against governmental concerns regarding disclosure. *Id.* at 779. Therefore, there is no need for the filing of a separate APA action.

**CONCLUSION**

For the reasons stated above, plaintiff's motion to compel is **DENIED IN PART**. Specifically, the motion to compel former federal defendants to respond to special interrogatories is **DENIED**. Also, former federal defendants' procedural objection to the subpoenas and plaintiff's motion to compel is **OVERRULED**. The only issues left for the Court to resolve are any privilege

issues.* Any privilege concerns as to all pending motions must be asserted, along with all supporting bases thereof, by **FRIDAY, NOVEMBER 20, 2009 AT NOON**, and responses thereto are due by **MONDAY, NOVEMBER 30, 2009 AT NOON**, all as per the schedule set forth in the November 18 order (Dkt. No. 258).

**IT IS SO ORDERED.**

Dated: November 19, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

\* As to the two subpoenas directed at the agency employees, this order notes that federal agency employees may not be held in contempt for refusing to comply with subpoenas for deposition testimony when this is done in compliance with valid *Touhy* regulations. *See Touhy*, 340 U.S. at 467–69; *In re Boeh*, 25 F.3d at 763–64. But the Ninth Circuit has stated that when a document request is directed to the head of the agency or to the agency itself, "*Touhy* . . . [is] no longer relevant." *Id.* at 764 (citations omitted); *Exxon Shipping Co.*, 34 F.3d at 780. Therefore, as part of their response to plaintiff's document requests directed at the federal agencies themselves, former federal defendants cannot simply rely on the *Touhy* regulations as a reason not to comply.