Pages 1 - 21

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

RAHINAH IBRAHIM,                       )
                                       )
              Plaintiff,               )
                                       )
   vs.                                 ) NO. C 06-00545 WHA
                                       )
DEPARTMENT OF HOMELAND SECURITY,       )
et al.,                                )
                                       )  San Francisco, California
              Defendants.              )  Thursday
                                       )  November 8, 2012
_____)  11:29 a.m.


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff**          McManis Faulkner
                           50 West San Fernando Street
                           10th Floor
                           San Jose, CA  95113
                           (408) 279-8700
                           (408) 279-3244 (fax)
                      BY:  **ELIZABETH MARIE PIPKIN**
                           **CHRISTINE PEEK**


**For Defendants**         U.S. Department of Justice
                           Civil Division
                           20 Massachusetts Avenue N.W., Room 6108
                           Washington, D.C.  20001
                           (202) 353-0543
                           (202) 616-8460 (fax)
                      BY:  **PAUL GERALD FREEBORNE**


Reported by:      Lydia Zinn, CSR #9223, RPR, CRR
          Official Reporter - U. S. District Court

1          **THE COURT:**  Okay.  Now we go to *Ibrahim versus*

2  *Department of Homeland Security*.

3          **MR. FREEBORNE:**  Good morning, your Honor.

4  Paul Freeborne, for the Government defendants.

5          **THE COURT:**  Welcome.

6          **MS. PIPKIN:**  Good morning, your Honor.

7  Elizabeth Pipkin and Christine Peek, for Rahinah Ibrahim.

8          **THE COURT:**  Okay.  Welcome to you.

9      So we're really in this never-never land here.  This is not

10  your normal case-management conference.  I want to consider

11  anything you want to bring up today, but we didn't have an

12  agenda for today.  However, I have an agenda that's just come

13  up.  And that is:  Did you see the Order I sent out about the

14  communication that came to me from Homeland Security?

15          **MS. PIPKIN:**  Yes, your Honor.

16          **THE COURT:**  All right.  I think I've had this problem

17  twice in the past.  It's been a long time.  So you two need to

18  help me.  I want both sides to agree on a procedure.

19      I'll tell you my general principles.  I do not like to read

20  anything that is *ex parte* from one side, because it denies due

21  process to the other side; at least, in some circumstances.

22  It's like a secret, Star Chamber proceeding.  I don't like

23  that.

24      On the other hand, there are times when national security

25  requires that.

1      There ought to be some way that you two can work this out,

2   so that you agree on what I can and cannot see.  I haven't

3   looked at anything yet.  And I'm not going to look at anything

4   yet, until we go through this briefing process that I've

5   invited you to do.

6          **MS. PIPKIN:**  Well, your Honor, may I address that

7   point?

8          **THE COURT:**  Let me say something else.

9          **MS. PIPKIN:**  Okay.

10          **THE COURT:**  In some districts, the Justice Department

11   thinks that the U.S. District Judge is a wholly owned

12   subsidiary.  They send stuff all the time *ex parte*, and nobody

13   even knows about it.  We don't do that here.

14          **MR. FREEBORNE:**  Well, your Honor, with respect to the

15   authority consider --

16          **THE COURT:**  Somebody just calls out of the blue, and

17   say, "I'm coming to see you tomorrow to give you all of this *ex*

18   *parte* stuff."  Where would you get the idea I would do that?

19          **MR. FREEBORNE:**  Well, your Honor, that was an error on

20   the part of the Court Security Officer.  And we apologize.

21      We notified the Court Security Officer that we would be

22   filing a notice of lodging -- not filing -- *ex parte in camera*

23   materials that --

24          **THE COURT:**  You can't do that, without my permission.

25          **MR. FREEBORNE:**  Absolutely, your Honor, but we were

1   just --

2          THE COURT:  I need to let them know what you're up to.

3      And what if you were to give me just completely bogus

4   information?  They need to have an opportunity to rebut it; or

5   at least, I want to know what their objections are.  I want to

6   know what the statute, the regulations of law says I'm supposed

7   to do here.

8      I will then follow the law; but I am not just going to have

9   this:  Throw something over the transom.  "Judge, you take a

10  look at this.  It's all national security."  And then the guy

11  was saying he would take it back to Washington, D.C.  No one

12  would ever have a copy of what it was I looked at.

13         MR. FREEBORNE:  Well, your Honor, that actually is

14  standard protocol for the Court Security Officer.  They're

15  actually --

16         THE COURT:  Well, where did that protocol come from?

17         MR. FREEBORNE:  Well, your Honor, just to take it in

18  pieces --

19         THE COURT:  Did Congress pass that protocol?

20         MR. FREEBORNE:  Well, your Honor, to take it in

21  pieces, the Court has inherent authority to review materials *ex

22  parte in camera*.  The Ninth Circuit has recognized that.  I

23  could give you some cases now which -- maybe they'd better --

24         THE COURT:  Go ahead and give.  We'll start looking at

25  the cases.

1          **MR. FREEBORNE:**  Well, *Meridian International*.  And the

2    pinpoint is 939 F. 2d. 745, where a Court -- where the District

3    Court considered law-enforcement materials, as here, for

4    purposes of determining whether or not an FBI employee was

5    acting within the scope in an FTCA proceeding.  The district

6    Court considered those materials, and made a ruling.  And that

7    was affirmed by the Ninth Circuit.

8        Another case that's instructive is *In Re:  Grand Jury*

9    *Proceedings*.  Again, the pinpoint is 867 F. 2d. 540 through

10   541.  And in these types of cases, not outside the

11   Ninth Circuit, but there's a case -- *Scherfen* -- in which, as

12   here, which is what we're -- we're simply asking the Court to

13   consider *ex parte in camera* materials, because it relates to

14   the discovery that was propounded by Plaintiff, A.  And, B, it

15   goes to the question of standing and this Court's jurisdiction

16   in this case.  And that was what was done in the *Scherfen* case.

17   The cite there is 2010 Westlaw 456784-9.

18          **THE COURT:**  So you want to give me -- let's just

19   take -- does that relate somehow to your motion to dismiss?

20          **MR. FREEBORNE:**  Well, your Honor, part of our motion

21   to dismiss is a straight 12(b)(6), and, with regard to the

22   State Department, a 12(b)(1) type motion.

23       We have made a separate argument regarding standing.  And

24   the Court just -- step back.  The Court could resolve this case

25   based upon the nonprivileged information, which is how we've

1  attempted to proceed heretofore in this case, understanding

2  these concerns.

3     However, as you know, this Court has an independent

4  obligation to assure itself that it has jurisdiction.  And

5  that's the information that we would like to provide to the

6  Court.  We're hamstrung in our ability --

7          **THE COURT:**  Why can't you provide that information to

8  the plaintiff?

9          **MR. FREEBORNE:**  Well, Ms. Pipkin and Ms. Peek -- they

10 have an independent obligation to zealously defend their

11 client.  And --

12         **THE COURT:**  Yeah.

13         **MR. FREEBORNE:**  And the -- absolutely.  And so --

14         **THE COURT:**  So wee they to keep it to themselves and

15 just, say, evaluate it, and to help the Court evaluate the

16 information, what would be wrong with that?

17         **MR. FREEBORNE:**  Well, your Honor, again, they have

18 that dual obligation, which puts the information at risk.

19    If what your Honor is saying is you will not consider the

20 information but for that arrangement --

21         **THE COURT:**  I'm not saying that.  I might eventually

22 say that, but I need understand what the law on this is, and

23 what I am required to do; what I have discretion to do; and

24 what I cannot do.  I don't know any of that yet.  That's what

25 you're going to brief.

1      We're going to start looking at the decisions you've

2  already cited to us.  We'll get started on that right away, but

3  I have learned in this job that the advocacy system depends

4  upon both sides having a fair shot.  And when one side gets to

5  have *ex parte*, secret communications with the Judge, that is

6  wrong, unless there is a very good reason for it.  That's my

7  general view.

8      Now, maybe in this area where you're dealing with No-Fly

9  Lists, and there's some statute that says I've got to do it a

10  different way, I'm going to follow the law.  If the law says

11  that, okay, I will do what the law says; but just because the

12  Justice Department and Homeland Security prefer that they not

13  ever see it, that's not enough.

14          **MR. FREEBORNE:**  Your Honor, as the Cruse

15  Declaration -- we're somewhat hamstrung in our ability to

16  communicate --

17          **THE COURT:**  I'm not going to look at anything that's

18  *ex parte* until I get this general briefing.  So if you have

19  some secret declaration, I'm not looking at it yet.

20          **MR. FREEBORNE:**  Very well, your Honor.

21          **THE COURT:**  It has to be something both sides can look

22  at.

23      Now, we've got to have some briefing on how we're going to

24  proceed in this issue.  I've instructed my law clerk not to

25  look at anything.  I think some of the this information has

1   been sent here to the courthouse, but we're not looking at it

2   until we get down to this proceeding.

3        And the issues are:  How much can be shown to the lawyers,

4   and what kind of record we make for the court of appeals.

5             MS. PIPKIN:  Your Honor, may I comment briefly on

6   that?

7             THE COURT:  Yeah, sure.

8             MS. PIPKIN:  We object strenuously to secret evidence

9   being submitted to the Court.  It absolutely is a violation of

10  due process here.

11            THE COURT:  Well, that's why you're going to get a

12  chance to -- I understand you would say that, but that's just a

13  platitude at this point.

14            MS. PIPKIN:  I understand that, your Honor.

15            THE COURT:  I want some specific law.

16            MS. PIPKIN:  Yes.  And we will do that.

17       What I hear the Government saying here is that they have

18  some cases where this has been allowed.  I did not hear them

19  saying it's required for this type of proceeding.  We'll, of

20  course, look at these cases.  This is the first time we've

21  heard these cases cited.

22       And what we would like to do is have an opportunity to

23  fully brief this, because we really don't know what type of

24  information they're trying to submit to the Court.  We're

25  shooting in the dark here.  And so we want -- and this is -- as

1 │ with many other things in this case, it's probably

2 │ unprecedented.  And so we want an adequate opportunity.

3 │     We discussed with the Government beforehand a briefing

4 │ schedule.  And I believe the Government wanted to file their

5 │ initial brief -- I'm sorry.  Excuse me.

6 │         **MR. FREEBORNE:**  Not this upcoming Tuesday, but the

7 │ following Tuesday, your Honor.  And we would afford the

8 │ plaintiff two weeks to respond.

9 │         **THE COURT:**  Well, I thought you already had filed it.

10 │ I got a table of contents right here.

11 │         **MR. FREEBORNE:**  No, no, no.  That's the motion to

12 │ dismiss.

13 │     The briefing your Honor's referencing now -- we would ask

14 │ for an additional week to file that brief.

15 │         **THE COURT:**  All right.  You just tell me what time.

16 │ You two can have an additional week -- both sides -- because

17 │ I'm okay with that, but I'm not going to start -- I will only

18 │ look at material that both sides have seen, until we get that

19 │ resolved.

20 │     Now, can you at least describe in general terms to the

21 │ plaintiff the categories of information you want the Judge to

22 │ look at in chambers and *ex parte*?

23 │         **MR. FREEBORNE:**  Well, your Honor, it's described fully

24 │ in our notice of lodging.  First, the information regarding

25 │ plaintiff's status on the No-Fly, Selectee, and the Terrorist

1    Screening Database.

2           **THE COURT:**  Okay.

3           **MR. FREEBORNE:**  Secondly, Mr. Cruse's declaration.  So

4    that's -- we'll call that "status."

5       Secondly, we describe the harm.  Mr. Cruse describes the

6    harm that would result from disclosing status to the plaintiff

7    here.

8           **THE COURT:**  And have you disclosed the Cruse

9    declaration?

10          **MR. FREEBORNE:**  Part of it is public.  The nonpublic

11   part is what's the subject of the notice of lodging.

12          **THE COURT:**  Okay.

13          **MR. FREEBORNE:**  So our brief, your Honor -- and I know

14   it was just filed last evening, but we have redacted portions

15   of the brief that relate to what I just described on the

16   standing question.  So we have a -- the brief that was filed

17   last night has redactions.

18      Underneath that would be the information that we would

19   propose to provide to the Court *ex parte* and *in camera*.

20      The rest of it is public.  And then there's a part of the

21   Cruse declaration that is public.

22          **THE COURT:**  Well, I'm going to look at the public part

23   for now, but I'm not going to look at the blocked-out part,

24   until we get the briefing.  When I get the briefing on the

25   procedure we're going to follow, we might even have to have a

1  hearing; but possibly I can just decide, as informed by your

2  briefing.

3          **MR. FREEBORNE:**  Your Honor, if I could --

4          **THE COURT:**  There is a difference.  I mean, Counsel is

5  correct that merely because other judges have done it that way

6  does not mean that it's required to be done that way.  And it

7  could be that judges have done it other ways.

8     So there's what's required.  There's what's allowed.

9  There's where the Judge has discretion.  And I would like to be

10  fully informed on all of those things, so that we can be fair.

11     I want to ask you this question.  If I were to put out an

12  Order that said -- I'm not saying I'm going to do this yet, but

13  Counsel says you're a zealous advocate.  Probably, you are.

14  Seems like, to me, you are.  Good for you that you're a zealous

15  advocate; but if I ordered you not to disclose it your client,

16  I assume that you would obey that Order.

17          **MS. PIPKIN:**  Absolutely, your Honor.  And we've

18  already gone -- Ms. Peek and I already went through a

19  background check in 2009, so that we can review sensitive

20  security information in this case.  So we've already been

21  cleared.

22          **THE COURT:**  Have you been cleared?

23          **MS. PIPKIN:**  We were in 2009, to review sensitive

24  security information.

25          **THE COURT:**  All right.  Now, do we need to update that

1   in some way to --

2          MR. FREEBORNE:  Well, your Honor, this is

3   law-enforcement-protected information.  And Mr. Cruse, in his

4   declaration, explains why we can't disclose it to the other

5   side in this case.

6          THE COURT:  Even if they're clear?  Even if they're

7   clear to receive national security information?

8          MR. FREEBORNE:  They're clear to receive sensitive

9   security information; not law-enforcement-protected

10  information.

11         THE COURT:  What's the difference?

12         MR. FREEBORNE:  Well, your Honor, the originator of

13  the information here is the FBI.  They -- it's their privilege

14  to assert.  And so it's not sensitive security information that

15  is within TSA's and DHS' domain.  So they're two different

16  animals.  Your Honor, we'll flesh this out in the briefing.

17         THE COURT:  All right.  All right.  Now, the briefing

18  can't be *ex parte*.  The briefing has got to be fully

19  aboveboard.  Everyone gets to see it.

20     You don't have to give specifics.  You should describe, in

21  generality, the types of information that is at stake.  Okay?

22         MR. FREEBORNE:  Your Honor, the other thing I'd like

23  to raise is just the discovery.

24         THE COURT:  Of course.

25         MR. FREEBORNE:  We just -- we filed, pursuant to the

1    Court's proceedings -- and the Court invited us at the last

2    status -- a stay of discovery.  There's a great deal of overlap

3    between our motion to dismiss, and the issues that are at stake

4    in the discovery.

5        They've -- the plaintiffs have propounded, you know, four

6    30(b)(6) depositions that get into placement on the No-Fly List

7    and other watchlists, the underlying derogatory information,

8    procedures that pertain to the watchlisting process, all of

9    which is problematic and will run into privilege.  And so --

10            **THE COURT:**  Are you saying that everything that they

11    have requested runs into privilege, or that some of what

12    they've requested --

13            **MR. FREEBORNE:**  The vast majority, your Honor.  The

14    vast majority.  And I think we've already provided to the

15    plaintiff --

16            **THE COURT:**  Are you saying that there's nothing by way

17    of discovery that you can do?

18            **MR. FREEBORNE:**  No.

19            **THE COURT:**  Have you brought a formal motion on this?

20            **MR. FREEBORNE:**  We've -- we've --

21            **THE COURT:**  You'd better bring a formal motion,

22    because I don't like it when a lawyer says, merely because some

23    of it is privileged, you don't have to do a thing.

24            **MR. FREEBORNE:**  No, your Honor.

25            **THE COURT:**  Can't you do something by way of discovery

 1  to move this case along?

 2          MR. FREEBORNE:  Your Honor, we could, but really the

 3  crux of their discovery is they want to know her status on the

 4  No-Fly List.

 5          THE COURT:  "Crux" -- that's another buzzword.  Is

 6  there anything on that list on the discovery that you're

 7  willing to provide?

 8          MR. FREEBORNE:  Well, the public procedures that

 9  pertain to the watchlisting process is something that we could

10  provide to the plaintiff, although they could find that on the

11  Internet.

12          THE COURT:  Maybe it would be good if you were to say,

13  "We will provide this stuff that's nonsensitive," and

14  voluntarily do that.  Why don't you do that?  And then maybe

15  the rest of it can wait.

16          MS. PIPKIN:  And may I interject further here,

17  your Honor?  Perhaps the Government can make a privilege log of

18  the information that's being withheld on the basis of

19  privilege, so we'd have some idea of what it is.  I think that

20  the idea of just completely stopping all of the discovery is

21  going to only cause further delay.

22          THE COURT:  Well, what's wrong with a privilege log?

23          MR. FREEBORNE:  Well, your Honor, again, that would be

24  revealing of status; potentially, classified information.

25          THE COURT:  You could write it in a way that wouldn't.

1  You could write a privilege log that wouldn't reveal the

2  details.

3       **MR. FREEBORNE:**  Your Honor, whether or not plaintiff

4  is on a watchlist is, in and of itself, law-enforcement

5  protected, and potentially classified.  And so it is -- it is

6  impossible to do a privilege log that would be in any way

7  effective, yet not be revealing.

8       **THE COURT:**  Well, what if -- I don't know.  I'm not

9  going to rule on that.  This is too fundamentally important.

10  You want to have this gestapo-like procedure, where you can

11  take any ordinary citizen in this country.  You can take a

12  Judge on this Court, or a Judge on the Supreme Court of the

13  United States, or a member of Congress, put them on some

14  No-Fly List, and then say, "They don't get to litigate it in

15  Court, because the FBI says it's confidential."

16     I don't like that.  That's not the way this country works.

17       **MR. FREEBORNE:**  Your Honor, there's a balance to be

18  struck between national security, and open proceedings.  And we

19  contend -- and, as set forth in the Cruse declaration -- that

20  that balance should be struck in favor of law enforcement and

21  the protection of this nation.

22       **THE COURT:**  The Ninth Circuit has ruled against you,

23  and said that this plaintiff has as much right to bring this

24  lawsuit as a member of the Supreme Court has to be treated as a

25  citizen.  There is no distinction, in the view of the

1    Ninth Circuit.  You lost that.  You didn't take it to the

2    Supreme Court.  You could have, but chose not to.

3         I'm going to take the Ninth Circuit at their word.  This

4    plaintiff is going to be treated with every bit of respect that

5    any other citizen at the highest levels would get in this

6    country.

7         Now, if you can prove that somebody at the highest levels

8    of this country or the ordinary citizen would not be entitled

9    to due process -- not be entitled -- then you're going to win;

10   but I'm telling you that my instincts say that this would be

11   turning this into a despotic system, where the Government could

12   keep somebody from flying, without explaining why.  That is a

13   huge imposition upon the liberties that citizens have in this

14   country.

15             **MR. FREEBORNE:**  Well, your Honor --

16             **THE COURT:**  And you want to be able to do that, just

17   by -- and hide behind law-enforcement privilege?

18        I don't know.  Possibly, that's the law.  If it is, I'm

19   going to follow it; but it is contrary to everything that I

20   have learned in my life about the great liberties in this

21   country.  So we will have an interesting hearing when your

22   motion to dismiss comes up.

23             **MR. FREEBORNE:**  Well, your Honor, all we're suggesting

24   is that there is some overlap between the merits questions on

25   notice and placement; and that discovery should be held in

1  abeyance until those issues are resolved, so that we're not

2  thrust into full-blown discovery disputes, where, ultimately,

3  they may prove to be unnecessary.

4       **THE COURT:**  I'm going to require you to do a privilege

5  log.  If you want to assert privilege, do a privilege log.  In

6  the meantime, turn over everything that's not privileged.

7       The Ninth Circuit -- this case has been around a long time.

8  The Government has delayed it at every turn.  It's now time to

9  get it moving, to the extent we can.

10       You don't have to turn over anything that you say is

11  privileged, but you do have to put it on the log.  You have to

12  also turn over anything that's not privileged, unless there's

13  another objection, like if it's too burdensome, or you have

14  some other legitimate objection.  You can assert that; but what

15  you cannot assert is merely because you've got this motion to

16  dismiss pending, that you don't have do anything.

17       I think there is -- in light of the age of this case, is

18  too much delay.  And this poor plaintiff is over there in some

19  foreign country and can't get back to Stanford on account of

20  the long time it's taken to litigate this case.  So the balance

21  of equities is not in your favor.

22       That's my ruling.

23       **MS. PIPKIN:**  Your Honor, with respect to the motion to

24  dismiss filed by the Government, we received that.  That was

25  filed extremely late last night.  I saw it for the first time

1  this morning when I was cooking breakfast for my son, and

2  trying to get him out the door.  We haven't completely been

3  able to analyze everything that's said in there.

4     I will tell you it's the first time I've ever seen case law

5  redacted from a brief; but we think that, in light of these

6  issues, where the Government's trying to submit this additional

7  evidence, we need to move this motion to dismiss, pending some

8  resolution on this.

9         **THE COURT:**  I don't understand what you're even asking

10 me.

11        **MS. PIPKIN:**  Yeah.

12        **THE COURT:**  What do you want?

13        **MS. PIPKIN:**  We propose the Court not decide the

14 motion to dismiss, until the evidentiary issues with respect to

15 the secret evidence is resolved.

16        **MR. FREEBORNE:**  Your Honor, ironically, I think we

17 would agree with that. We need to have some --

18        **THE COURT:**  I want the procedures resolved first, but

19 you've got to continue with your briefing.  You've got do the

20 best you can.  If you've got to respond to a redacted brief,

21 respond to a redacted brief.  And do that, but I may wind up

22 giving you an extra opportunity to respond later.  I do not

23 want this held up, because we've got to keep pushing ahead.

24        **MS. PIPKIN:**  We understand that, your Honor.  We think

25 that the Government has raised issues here that have already

1  been decided against them.  We think that sanctions should be

2  considered in this situation.

3          **THE COURT:**  Maybe.  I don't know.  I haven't --

4  what -- you mean standing?

5          **MS. PIPKIN:**  The fact that there's a standing brief

6  filed which the Court has already ruled on; the Ninth Circuit's

7  already ruled on.

8          **THE COURT:**  I don't know.  I don't know.  I'm not

9  going to even get to -- you're talking about sanctions.  You're

10  thinking -- you're assuming you're going to win before you've

11  won.

12          **MS. PIPKIN:**  I understand that.

13          **THE COURT:**  We'll talk about things like that later.

14          **MS. PIPKIN:**  Okay.

15          **THE COURT:**  Now, we want your brief, to the extent you

16  can get it.  I want to get this procedural issue resolved.

17          **MS. PIPKIN:**  Okay.

18          **THE COURT:**  So let's go to work.  And you all help the

19  Court figure out how to -- what I'm required to do; what I'm

20  allowed to do; what I cannot do.

21          **MR. FREEBORNE:**  Your Honor, and on that --

22          **THE COURT:**  That's what I want to know.  Where's my

23  discretion?

24     And it doesn't help me too much to say the Government has

25  done this in other cases.  That just means maybe that Judge

1  didn't pay attention to what the law required, or -- you know,

2  I have seen judges do a lot of things that -- when no one

3  objects to it, they get away with it.  And they haven't done a

4  thing wrong, because no one cares in that particular case.

5  They're doing it in the convenient and proper way; but if it is

6  objected to, that's what -- I would like to follow the law.

7      You two disagree vehemently on what I should do, so I'm

8  going to do it by the book.  And I don't even know what the

9  book is.

10         **MS. PIPKIN:**  Your Honor, with respect to the briefing

11  schedule on the procedure --

12         **THE COURT:**  Yes.

13         **MS. PIPKIN:**  -- I believe -- so Government will file a

14  brief on?

15         **MR. FREEBORNE:**  A week from this coming Tuesday,

16  your Honor.

17         **THE COURT:**  Fine.

18         **MS. PIPKIN:**  And then we would like two weeks to

19  respond, your Honor.  That would put us at December 4th.

20  Your Honor, this is unprecedented.  This case is unprecedented

21  in so many ways.  We need an opportunity to fully address this

22  issue.

23         **THE COURT:**  All right.  Go ahead.  You can have two

24  weeks.

25         **MS. PIPKIN:**  Thank you, your Honor.

1          **THE COURT:**  But then the Government is going to want

2    time to respond; but I don't want to give two weeks for that.

3    I only want to give one week.  Your brief is due when?

4    December 4.  All right.  The Government can reply on

5    Pearl Harbor Day, December 7th.

6          **MR. FREEBORNE:**  I'm sorry.  December 7th?  Three days

7    after, your Honor?

8          **THE COURT:**  What's wrong with that?

9          **MR. FREEBORNE:**  Well, your Honor, I have a lot of

10   client agencies that I have to consult with.  If I could have a

11   week, which is normal briefing, to file the reply --

12         **THE COURT:**  You can have five-page brief one week

13   later.  Five pages.  So you should put in your opening

14   everything that counts.  Don't hold stuff back for reply.

15      All right.  Thank you.

16         **MS. PIPKIN:**  Thank you, your Honor.

17         **MR. FREEBORNE:**  Thank you.

18      (At 11:52 a.m. the proceedings were adjourned.)

19   I certify that the foregoing is a correct transcript from the

20   record of proceedings in the above-entitled matter.

21

22   _____          November 9, 2012
     Signature of Court Reporter/Transcriber   Date
23   Lydia Zinn

24

25

Lydia Zinn, CSR #9223
Official Reporter - U.S. District Court
(415) 531-6587