1   JAMES McMANIS (40958)
    CHRISTINE PEEK (234573)
2   McMANIS FAULKNER
    A Professional Corporation
3   50 W. San Fernando St., 10th Floor
    San Jose, CA 95113
4   Telephone:     (408) 279-8700
    Facsimile:     (408) 279-3244
5   cpeek@mcmanislaw.com
6
    Attorneys for Plaintiff,
7   Rahinah Ibrahim

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11

12   RAHINAH IBRAHIM, an individual,        CASE NO.  C 06 0545 WHA

13          Plaintiff,                      **PLAINTIFF'S RESPONSE TO THE
                                            COURT'S REQUEST FOR BRIEFING
14   v.                                     MEMORANDA REGARDING SECRET
                                            EVIDENCE AND LEGAL ARGUMENT**
15
     DEPARTMENT OF HOMELAND                 Date:    December 20, 2012
16   SECURITY, et al.,                      Time:    8:00 a.m.
                                            Ctrm:    8 – 19th Floor
17          Defendants.                     Judge:  The Hon. William Alsup

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

INTRODUCTION ....................................................................................................................1

3

STATEMENT OF FACTS AND PROCEDURAL HISTORY.....................................................1

4

    I.  THE GOVERNMENT'S PREVIOUS EX PARTE SUBMISSIONS ...........................1

5

    II.  THE GOVERNMENT'S CURRENT EX PARTE SUBMISSIONS..........................4

6

ARGUMENT .........................................................................................................................4

7

8

    I.  THE GOVERNMENT FAILS TO SUPPORT ITS ASSERTION OF THE
        LAW ENFORCEMENT PRIVILEGE ...........................................................5

9

10

    II.  THE GOVERNMENT FAILS TO EXPLAIN HOW THE EX PARTE
        DECLARATIONS COULD POSSIBLY CONTAIN SSI, AND OFFERS NO
        SUBSTANTIVE REASON FOR CONTINUING TO DENY ACCESS TO

11

        SSI, EVEN ASSUMING IT WERE PROPERLY DESIGNATED, WHICH IS
        UNLIKELY...........................................................................................10

12

13

    III.  USING SECRET EVIDENCE TO DECIDE THE STANDING ISSUE
        PREMATURELY, BEFORE IBRAHIM HAS HAD THE OPPORTUNITY
        TO TEST DEFENDANTS' PRIVILEGE OBJECTIONS AND CONDUCT

14

        FULL DISCOVERY, VIOLATES DUE PROCESS....................................12

15

16

        A.  Due Process Requires That Ibrahim Be Permitted To Discover And
           Rebut Whatever Evidence Defendants Claim Supports Their Speaking
           Motion..........................................................................................12

17

18

        B.  This Court Can Reject Defendants' Standing Argument Without
           Reviewing Any Privileged Information ...........................................13

19

20

    IV.  THE GOVERNMENT FAILS TO SUPPORT ITS IMPLIED ARGUMENT
        THAT IBRAHIM'S COUNSEL ARE DUTY-BOUND TO VIOLATE
        COURT ORDERS...................................................................................15

21

22

    V.  THIS COURT NEED NOT REVIEW ANY CLASSIFIED EVIDENCE TO
        DENY DEFENDANTS' MOTION TO DISMISS ...................................17

23

CONCLUSION ....................................................................................................................19

24

25

26

27

28

PLAINTIFF'S RESPONSE TO THE COURT'S REQUEST FOR BRIEFING MEMORANDA REGARDING
SECRET EVIDENCE AND LEGAL ARGUMENT; CASE NO. C06-0545 WHA

1

<u>TABLE OF AUTHORITIES</u>

2

**<u>CASES</u>**

3

*Al Odah v. United States*, 559 F.3d 539 (D.C. Cir. 2009) ........................................................... 19

*Al-Kidd v. Gonzales*, No. 05-093, 2007 U.S. Dist. LEXIS 90548
    (D. Idaho Dec. 10, 2007).......................................................................................................... 9

*American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045 (9th Cir. 1995) .............. 5, 12

*Arjmand v. Department of Homeland Security*, No. 12-71748
    (9th Cir. Nov. 7, 2012) ........................................................................................................... 13

*Black v. Sheraton Corp. of America*, 564 F.2d 531 (D.C. Cir. 1977) ......................................... 10

*Colby v. Halperin*, 656 F.2d 70 (4th Cir. 1981).......................................................................... 16

*CSX Transp., Inc. v. Williams*, 231 F.R.D. 42 (D.D.C. 2005) ................................................... 10

*Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280 n.2
    (9th Cir. 1977)........................................................................................................................... 5

*Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir. 1990)..................................................................... 18

*Dubbs v. CIA*, 866 F.2d 1114 n.8 (9th Cir. 1989) ........................................................................ 18

*Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973) .............................................................. 8

*Gilmore v. Gonzales*, 435 F.3d 1125 (9th Cir. 2006)................................................................... 13

*High Tech Gays v. DISCO*, 895 F.2d 563 (9th Cir. 1990) ........................................................... 18

*Horn v. Huddle*, 699 F. Supp. 2d 236 (D.D.C. 2010) ................................................................. 17

*Ibrahim v. Department of Homeland Security*, 538 F.3d 12507 (9th Cir. 2008)
    ("*Ibrahim I*") ........................................................................................................................... 2

*Ibrahim v. Department of Homeland Security*, 669 F.3d 983 (9th Cir. 2012)
    ("*Ibrahim II*")................................................................................................................... 4, 14

*In re City of New York*, 607 F.3d 923 (2d Cir. 2010)................................................................... 16

*In re Department of Homeland Security*, 2006 U.S. App. LEXIS 16976, at *10-15
    (5th Cir. 2006)......................................................................................................................... 16

*In re Department of Investigation of the City of New York*, 856 F.2d 481 (2d Cir.
    1988) ........................................................................................................................................ 10

*In re Grand Jury Proceedings*, 867 F.2d 539, 540-41 (9th Cir. 1989) ........................................ 13

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

*In re Nat'l Sec. Agency Telecomm. Records Litig.*, 595 F. Supp. 2d 1077
(N.D. Cal. 2009) ......................................................................................... 18

*In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988) ........................................... 5

*Kelly v. San Jose*, 114 F.R.D. 653 (1987) ................................................. 8, 16

*Latif v. Holder*, 2012 U.S. App. LEXIS 15429, *19 (9th Cir. 2012) ............... 17

*MacNamara v. City of New York*, 249 F.R.D. 70 (S.D.N.Y. 2008) ............... 5, 7

*Meridian International Logistics, Inc. v. United States*, 939 F.2d 740 (9th Cir.
1991) ........................................................................................................ 12

*Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992) ...................................... 5

*Parhat v. Gates*, 532 F.3d 834 n.1 (D.C. Cir. 2008) ...................................... 18

*Pollard v. FBI*, 705 F.2d 1151 (9th Cir. 1983) ................................................ 9

*Scherfen v. Department of Homeland Security*, No. 08-1554, 2010 U.S. Dist.
LEXIS 8336, at * (M.D. Pa. Feb. 2, 2010) ............................................... 13

*Securities and Exchange Commission v. Shanahan*, No. 4:07CV270 JCH, 2009
U.S. Dist. LEXIS 57107, at *7-8 (E.D. Mo. 2009) ................................. 5, 7

*Shearson v. Holder*, 865 F. Supp. 2d 850, 2011 U.S. Dist. LEXIS 101808, at *18
(N.D. Ohio 2011) ...................................................................................... 14

*Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995) ..................... 6, 7, 8

*Tooley v. Napolitano*, 556 F.3d 836 (D.C. Cir. 2009) ................................... 14

*Tooley v. Napolitano*, 586 F.3d 1006 (D.C. Cir. 2009) ................................. 14

*United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004) ............................. 17

*Webster v. Doe*, 486 U.S. 592, 603-04 & n.8 (1988) ..................................... 18

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ................................................. 12

**RULES**

Fed. R. Evid., Rules 401, 402, 602, 701, 702, 801, and 802 .............................. 7

**STATUTES**

49 U.S.C. § 46110 ..................................................................................... 11, 13

Classified Information Procedures Act, 18 U.S.C. app. 3 §§ 1-16 ................... 17

iii

PLAINTIFF'S RESPONSE TO THE COURT'S REQUEST FOR BRIEFING MEMORANDA REGARDING
SECRET EVIDENCE AND LEGAL ARGUMENT; CASE NO. C06-0545 WHA

Department of Homeland Security Appropriations Act of 2007, Pub. L. No. 109-
        295 § 525(d), 120 Stat. 1355, 1382 (Oct. 4. 2006) ................................................................. 11

**<u>OTHER AUTHORITIES</u>**

Natasha Singer, *Ex NASA Scientist's Data Fears Come True*, The New York
        Times, Nov. 28, 2012 (republished in the Pittsburgh Post-Gazette on Nov. 29,
        2012.............................................................................................................................................. 17

PLAINTIFF'S RESPONSE TO THE COURT'S REQUEST FOR BRIEFING MEMORANDA REGARDING
SECRET EVIDENCE AND LEGAL ARGUMENT; CASE NO. C06-0545 WHA

## INTRODUCTION

Defendants ask this Court to consider secret evidence, secret legal authorities, and secret legal argument to decide an issue defendants already lost before the Ninth Circuit, without providing plaintiff the supposed foundation for their claims of privilege.  Although the Ninth Circuit already held Ibrahim has adequately alleged standing, defendants filed a speaking motion on the same issue, based on secret evidence.  As discussed below, ruling on the merits of Ibrahim's civil constitutional claims based on ex parte evidence and argument violates due process and defeats the purpose of an adversary system, which is to facilitate discovery of the truth.  Defendants cite no authority showing that such secrecy is permitted, much less required, on these facts.  Ibrahim respectfully requests that this Court decline to consider defendants' ex parte submissions and return to defendants the unredacted memorandum of points and authorities in support of defendants' motion to dismiss, as well as both Cruse declarations.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### I.     THE GOVERNMENT'S PREVIOUS EX PARTE SUBMISSIONS.

The government repeatedly has demanded that this Court consider secret evidence, despite having no credible claim that any specific harm is likely to result from disclosing the truth to plaintiff or her counsel:

- **May 22, 2006**: The federal government filed a Motion to File Under Seal Sensitive Security Information In Support Of Their Motion To Dismiss Plaintiff's Claims For Lack Of Subject Matter Jurisdiction (Docket No. 62).  The government sought to have the Court consider the TSA's Security Directives relating to the No-Fly and Selectee Lists ex parte, without providing them to plaintiff or her counsel.  The government did not identify the documents it sought to seal with any particularity.

- **May 23, 2006**: The Court provisionally granted the government's motion to file under seal, but reserved its final determination on whether the material would remain under seal.  (*See* Order Re Federal Defendants' Motion To File Under Seal Sensitive Security Information In Support Of Their Motion To Dismiss For Lack Of Subject-Matter Jurisdiction (Docket No. 66).)  The Court further instructed the government to "file and serve to plaintiff a supplemental document, not under seal, describing with as much detail as practicable the contents of the purported security information being provided to the Court."

- **May 26, 2006**: The government filed a Supplemental Statement Of The Contents Of The Sensitive Security Information That Has Been Filed Under Seal (Docket No. 67).

- **June 8, 2006**: Plaintiff filed an Opposition To Federal Defendants' Motions To File "Sensitive Security Information" Under Seal; Motion To Strike (Docket No. 74).

- **June 19, 2006**: The government filed a reply in support of its motion to seal (Docket No. 79).

- **August 16, 2006**: Although the Court alluded to the sealed documents in footnote 1 of its August 16, 2006 Order Granting Motions to Dismiss, it does not appear that the Court formally ruled on the motion to seal, and it is not clear whether or not the Court considered the Security Directives ex parte. Although the Security Directives remain relevant for purposes of discovery, in accordance with the Ninth Circuit's opinion in *Ibrahim v. Department of Homeland Security*, 538 F.3d 1250, 1256-57 (9th Cir. 2008) ("*Ibrahim I*"), Ibrahim does not challenge them in this action. The Ninth Circuit did not consider the Security Directives in deciding *Ibrahim I. See id.* at 1257, n.10.

- **November 16, 2009**: The government filed an Administrative Motion To File Under Seal And In Camera Attachment A To Non-Parties Opposition To San Francisco Defendants' Motion To Authorize Disclosure (Docket No. 250). The government claimed Attachment A was a declaration asserting the law enforcement privilege over portions of the teletype that San Francisco police officers received in 2005 and subsequently sought to disclose in this action.

- **November 17, 2009**: Regarding the government's administrative motion, the Court stated it would be willing to review the document in camera and under seal, but if the Court deemed the materials should not remain under seal, the Court would release the document pursuant to a protective order. (*See* Docket No. 255, p. 2.) It further ordered the government to submit the document by noon on Wednesday, November 18, 2009, if the government agreed to those terms. (*Id.*)

- **November 17, 2009**: The government filed a Request for Clarification (Docket No. 257). The government objected that "order[ing] release of the declaration more broadly without allowing non-parties the opportunity to assert other privileges may be prejudicial."

- **November 18, 2009**: The Court issued an Order Re Federal Nonparties' Request for Clarification (Docket No. 258). The Court allowed the government to file the allegedly privileged document and a submission in support of the alleged privileges under seal, but provided that all privileges had to be asserted by noon on Friday, November 20, 2009. (*See* Docket No. 258, p. 2.) The Court ordered the government to provide all parties with a synopsis of facts and argument to allow them to respond to the claims of privilege. (*Id.*)

- **November 20, 2009**: The government filed submissions of privilege as to the information the San Francisco defendants sought to disclose (Docket No. 264), and the information plaintiff sought to compel (Docket No. 265). The government submitted the declaration of Arthur M. Cummings II under seal (Docket No. 267). The government also submitted the declaration of Tracy North (Docket No. 266).

- **November 23, 2009**: The government filed a Public Synopsis Of Declaration Of Federal Bureau Of Investigation Executive Assistant Director Arthur E. Cummings In Support Of Assertion Of Law Enforcement Privilege (Docket No. 268).

2

- **November 30, 2009**: Ibrahim filed her Opposition to (1) Federal Defendants' Administrative Motion To File Under Seal And In Camera Attachment A To Non-Parties' Opposition To San Francisco Defendants' Motion To Authorize Disclosure; (2) Submission Of Privilege Over Protected Material San Francisco Defendants Seek To Disclose; and (3) Non-Parties' Public Synopsis Of Declaration Of Federal Bureau Of Investigation Executive Assistant Director Arthur E. Cummings In Support Of Assertion Of Law Enforcement Privilege (Docket No. 271). Ibrahim also filed a Response To Statement Of Privilege Concerning Documents Subject To Plaintiff's Motion To Compel And Rule 45 Subpoenas Served Upon Non-Party Government Agencies (Docket No. 272). Finally, Ibrahim filed Objections to Evidence and Motion to Strike the Declaration of Tracy North (Docket No. 275).

- **December 2, 2009**: Defendants filed <u>yet another</u> Administrative Motion To File Under Seal An Ex Parte, In Camera A Classified Declaration In Support Of The Assertion Of Law Enforcement Privilege (Docket No. 277).

- **December 2, 2009**: The Court promptly issued an Order Denying Non-Parties' Second Administrative Motion To File Under Seal An Ex Parte, In Camera Classified Declaration In Support Of The Assertion Of Law Enforcement Privilege (Docket No. 278), on the ground that the government's submission was untimely.

After many rounds of briefing and a December 7, 2009 hearing, the Court issued its December 17, 2009 Order for Production of Items Despite the Assertion of Various Privileges (Docket No. 285). At that time, the Court focused its analysis on Ibrahim's arrest. The Court ordered defendants to produce various categories of documents relating to information the San Francisco defendants may have acted on in arresting Ibrahim, subject to an appropriate SSI protective order. (*See* Docket 285, pp. 17-18.) The Court specifically found that <u>revealing the information would not present a risk of harm to the nation</u>. (*See id.*, p. 18.) The Court entered an SSI protective order on January 13, 2010 (Docket No. 312), attached as Exhibit E to the Declaration Of Christine Peek In Opposition To Federal Defendants' Motion To Dismiss And In Opposition To Federal Defendants' Request That This Court Consider Secret Evidence And Legal Argument ("Peek Decl.").

In addition, notwithstanding defendants' law enforcement privilege objections, the Court ordered them to produce paragraph 18 of the declaration of Arthur M. Cummings (Docket No. 267) and an unredacted transcript of the teletype that SFPD officers received from law enforcement databases. (See Docket 285, pp. 21-22.) The case against the non-federal defendants settled and the rest was appealed before any documents were produced.

## II.     THE GOVERNMENT'S CURRENT EX PARTE SUBMISSIONS.

Defendants seek to have the Court consider ex parte and in camera two unredacted declarations of Scott L. Cruse, as well as an unredacted version of defendants' Motion to Dismiss.  Defendants' entire standing argument, including the legal authorities, are redacted from the publicly filed version of defendants' motion to dismiss, despite the fact that the law is a matter of public record.  The government asserts that one of the Cruse declarations discusses "[p]laintiff's placement, if any, in the Terrorist Screening Database ("TSDB") and on the No-Fly and Selectee Lists."  (Defendants' Response to the Court's Request for Briefing, p. 1:8-10.)  The government claims the second declaration "explains the sensitivity of watchlist status and why [d]efendants cannot disclose, in discovery or otherwise in these proceedings, whether [p]laintiff is on a watchlist."  (*Id.*, p. 1:10-12.)

## ARGUMENT

The government again attempts to assert the law enforcement and SSI privileges in an improper manner, but with a few key differences.  First, the government is now a party to the action, unlike in 2009.  Therefore, its interest in nondisclosure is diminished even further.  Second, having lost the standing issue at the pleading stage before the Ninth Circuit, *see Ibrahim v. Department of Homeland Security*, 669 F.3d 983, 992-94 (9th Cir. 2012) ("*Ibrahim II*"), the government now has filed a speaking motion on the same issue, which it seeks to have adjudicated based on secret evidence, secret legal authorities, and secret legal argument.  This procedural posture puts Ibrahim at even more of a disadvantage than the 2006 motion to dismiss or the 2009 discovery disputes.  What defendants truly seek is an adjudication of the merits, without affording plaintiff the opportunity to hear and rebut the purported evidence against her.  Defendants also seek an adjudication of the merits before the Court has had the benefit of full briefing on the privilege issues presented by defendants' ex parte submissions.

"Where jurisdictional facts are intertwined with the merits," . . . "it is preferable that [the jurisdictional] determination be made at trial, where a plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits."  *Data Disc,*

*Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 n.2 (9th Cir. 1977).  Courts may not dispose of the merits of a case on the basis of ex parte, in camera submissions.  *See American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1069 (9th Cir. 1995), *superseded in part by statute on other grounds as discussed in* 525 U.S. 471, 475-76 (1999).  This violates due process.  *See id.* at 1069-70.  As in the past, the government has not supported its claims of privilege so as to allow Ibrahim a fair opportunity to rebut them.  Both the allegedly privileged information and any alleged foundational support for the privilege have been redacted.  This adds to the procedural unfairness and further violates due process, as discussed below.

## I.      THE GOVERNMENT FAILS TO SUPPORT ITS ASSERTION OF THE LAW ENFORCEMENT PRIVILEGE.

The government argues that it cannot confirm or deny whether Ibrahim's name is in a terrorist screening database or discuss the circumstances that resulted in the placement of her name in the TSDB.  The government's submissions do not show that the law enforcement privilege applies to any information discussed in either of the Cruse declarations.  Moreover, the law enforcement privilege is qualified, not absolute.  *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988).  Courts are required to balance the interest in nondisclosure against the need of a particular litigant for access to the allegedly privileged information.  *See id.*; *see also MacNamara v. City of New York*, 249 F.R.D. 70, 78-80, 85-96 (S.D.N.Y. 2008).  Blanket assertions of privilege supported only by conclusory statements are inadequate.  *Securities and Exchange Commission v. Shanahan*, No. 4:07CV270 JCH, 2009 U.S. Dist. LEXIS 57107, at *7-8 (E.D. Mo. 2009).  Here, the government's declarations do not allow Ibrahim an adequate opportunity to test the assertion of the privilege, because the purported justification for the privilege also has been redacted.  *See Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992) (party asserting the privilege must sufficiently identify documents so as to afford the requesting party an opportunity to challenge the assertion of the privilege).

To make the threshold showing that the privilege even applies, the party asserting the law enforcement privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matter, which includes the following:

5

(1)     an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality;

(2)     a statement that the official has personally reviewed the material in question;

(3)     a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer;

(4)     a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests[;] and

(5)     a projection of how much harm would be done to the threatened interests if disclosure were made.

*Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995).  The government has not met its burden of establishing that the privilege applies.

The government cannot establish the first element, because it has not maintained the confidentiality of Ibrahim's TSDB status.  It is common knowledge that a copy of the government's No-Fly and Selectee Lists were leaked and that the contents of the lists were discussed on the television show *60 Minutes*.  (*See* Plaintiff's Request for Judicial Notice In Opposition To Federal Defendants' Motion To Dismiss And In Opposition To Federal Defendants' Request That This Court Consider Secret Evidence And Legal Argument ("RJN"), ¶ 2, Exhs. M-O.)  In addition, defendants already made representations that tend to confirm or deny Ibrahim's TSDB status to various individuals, including Ibrahim herself.  (Second Amended Complaint, ¶¶ 34-45, 123, 125; Declaration Of Rahinah Ibrahim In Opposition To The Federal Defendants' Motion To Dismiss And In Support Of Plaintiff's Response To This Court's Request For Briefing Memoranda ("Ibrahim Decl."), ¶ 21.)  In the D.C. Circuit case, the government represented in its public filings that Ibrahim "had notice" of the No-Fly and Selectee lists as they applied to her on January 2, 2005.  (*See* RJN, Exh. B, at pp. 4-5.)  Although Ibrahim argued this view is wrong because the government ultimately refused to confirm Ibrahim's status, the government's filings show that the supposed "secrecy" of Ibrahim's TSDB status appears to vary according to the government's needs.  For all these reasons, the government has waived any claim that the law enforcement privilege applies.

PLAINTIFF'S RESPONSE TO THE COURT'S REQUEST FOR BRIEFING MEMORANDA REGARDING SECRET EVIDENCE AND LEGAL ARGUMENT; CASE NO. C06-0545 WHA

1    The government also fails to establish the third and fifth elements.  The party asserting

2    the privilege must make a "substantial threshold showing" that specific harms are likely to

3    accrue from disclosure of specific materials.  *MacNamara*, 249 F.R.D. at 79; *see also Soto*, 162

4    F.R.D. at 614.  Here, as in *Shanahan*, the government's discussion of the harm consists solely of

5    boilerplate and conclusory statements.  *See Shanahan*, 2009 U.S. Dist. LEXIS 57107, at *7-8.

6    None of the hypothetical scenarios raised in the Cruse Declarations are connected to Ibrahim in

7    any way.  The government never has presented any evidence that Ibrahim has any nexus to

8    terrorism, and it does not do so now.  Ibrahim objects to paragraphs 5, 6, 7, 9, 13, 14, 15, 16, 17,

9    and 18 of Docket No. 373-3, other redacted paragraphs of Docket No. 373-3, and other redacted

10   paragraphs of Docket No. 373-2, on the grounds that they contain information that is irrelevant,

11   does not demonstrate the witness' personal knowledge, constitutes an improper opinion, and

12   appears to be based on inadmissible hearsay.  *See* Fed. R. Evid., Rules 401, 402, 602, 701, 702,

13   801, and 802.

14          The Cruse Declarations do not identify any enforcement proceeding – past, present, or

15   future – that could conceivably be interfered with by disclosure of the materials requested in this

16   case.  They identify no governmental or privacy interest that would be threatened by disclosure

17   to Ibrahim or her counsel <u>specifically</u>, nor do they describe any specific purported harm that

18   would result.  Ibrahim is already aware of the identities of FBI agents involved in this case.  To

19   the extent the federal government relies on disclosure of their identities as an alleged harm, this

20   argument lacks merit.  The government's claim that harm would result if the evidence were

21   disclosed to Ibrahim or her counsel simply is not credible.

22          In evaluating a claim of law enforcement privilege, courts must assess whether a

23   protective order will eliminate any harm caused by disclosure.  *Soto*, 162 F.R.D. at 614;

24   *MacNamara*, 249 F.R.D. at 80.  Here, it is evident that any hypothetical or purported harm would

25   be resolved by an appropriate protective order, since Ibrahim's counsel already successfully

26   underwent an extensive security background check and agreed to enter into a protective order for

27   purposes of overcoming the government's SSI objections.  (*See* Peek Decl., ¶ 8, Exh. C.)

28

PLAINTIFF'S RESPONSE TO THE COURT'S REQUEST FOR BRIEFING MEMORANDA REGARDING
SECRET EVIDENCE AND LEGAL ARGUMENT; CASE NO. C06-0545 WHA

1   Disclosure to plaintiff and her counsel pursuant to an appropriate protective order would reveal

2   nothing about the government's "techniques" regarding terrorist investigation to any actual

3   terrorists.  The government's argument also ignores the fact that the Muslim community, which

4   includes Ibrahim, is already familiar with many of its "techniques."  (*See* Peek Decl., ¶ 22, Exhs.

5   O-X; *see also* RJN, ¶ 3, Exhs. P-Y.)

6          Because the government has failed to make a threshold showing that the privilege even

7   applies, its request to have the Court consider the information ex parte must also fail.  Because

8   Ibrahim does not know what the redacted portions of the declaration state, this memorandum of

9   points and authorities goes on to analyze the balancing test factors, to the extent this is possible

10  without access to information the government is using to support its claim of privilege.

11         Once the party asserting the privilege meets the threshold burden, the court applies the

12  balancing test, which includes, but is not limited to, the following factors:

>    (1)    The extent to which disclosure will thwart the governmental process by
>           discouraging citizens from giving the government information;
>
>    (2)    The impact of having their identities disclosed upon persons who have
>           given information;
>
>    (3)    The degree to which government self-evaluation and consequent program
>           improvement will be chilled by disclosure;
>
>    (4)    Whether the information sought is factual data or evaluative summary;
>
>    (5)    Whether the party seeking discovery is an actual or potential defendant in
>           any criminal proceeding either pending or reasonably likely to follow from
>           the incident in question;
>
>    (6)    Whether the police investigation has been completed;
>
>    (7)    Whether any interdepartmental disciplinary proceedings have arisen or
>           may arise from the investigation;
>
>    (8)    Whether the plaintiff's suit is not frivolous and brought in good faith;
>
>    (9)    Whether the information sought is available from discovery or through
>           other sources; and,
>
>    (10)   The importance of the information sought to the plaintiff's case.

*See Kelly v. San Jose*, 114 F.R.D. 653, 663 (1987) (*citing Frankenhauser v. Rizzo*, 59 F.R.D.

339, 344 (E.D. Pa. 1973); *see also Soto*, 162 F.R.D. at 613, n.4).

PLAINTIFF'S RESPONSE TO THE COURT'S REQUEST FOR BRIEFING MEMORANDA REGARDING
SECRET EVIDENCE AND LEGAL ARGUMENT; CASE NO. C06-0545 WHA

Even assuming the privilege applied, Ibrahim and her counsel still would be entitled to full disclosure pursuant to an appropriate protective order.  Defendants' objection that the law enforcement privilege addresses different concerns than the SSI privilege is unpersuasive, because the balancing test balances in favor of disclosure.  Defendants obviously are relying on the secret information to make their standing argument.  Therefore, it is important to Ibrahim's case, which is not frivolous and is brought in good faith.  The information is not available from any other sources to which Ibrahim has access.  There is no reason to believe confidential informants are an issue, so factors one and two do not apply.  Ibrahim does not know how much of the information is factual data and how much evaluative summary, so it is impossible for her to evaluate factor four.  But, it is probably safe to assume that there is at least some factual data, since the government claims to discuss Ibrahim's TSDB placement.  Ibrahim has never been charged with a crime.  If there ever was an "investigation," it is over.  Ibrahim has no information that any interdepartmental disciplinary proceedings have arisen from the incident.  To the extent they apply, all of the factors balance in favor of disclosure.

Defendants cite no authorities to the contrary.  Their reliance on *Al-Kidd v. Gonzales*, No. 05-093, 2007 U.S. Dist. LEXIS 90548 (D. Idaho Dec. 10, 2007) is misplaced.  In this case, the government submitted a privilege log and notes identifying the basis of its privilege objections to certain documents and portions of documents.  *Id.* at *19-20.  Here, the government has redacted both the allegedly privileged information and as well as its purported basis for asserting the privilege.  In addition, certain files at issue in *Al-Kidd* were declared to be classified, *id.* at *23-25, but here the government concedes there is no classified information in either of the Cruse declarations.  Defendants' reliance on *Pollard v. FBI*, 705 F.2d 1151, 1153-54 (9th Cir. 1983) for the proposition that ex parte, in camera review is "standard practice" is similarly misplaced.  *Pollard* was a FOIA case.  This is not.  This is an adversarial proceeding where defendants seek to have this Court dismiss plaintiff's claims for relief.  Furthermore, defendants have failed to make even a threshold showing that the privilege applies; therefore in camera review is not warranted.

1    *In re Department of Investigation of the City of New York*, 856 F.2d 481, 485-86 (2d Cir.

2    1988) ("*In re DOI*"), cited by defendants, is also inapplicable.  Here, there is no ongoing criminal

3    investigation or evaluation of a public official's conduct while in office, as there was in *In re*

4    *DOI*.  Nor does *Black v. Sheraton Corp. of America*, 564 F.2d 531, 542 (D.C. Cir. 1977) support

5    application of the law enforcement privilege.  Unlike Black, Ibrahim has never been charged

6    with or convicted of any crime, and the government has not stated that the allegedly privileged

7    information contains information gathered by eavesdropping undertaken for intelligence

8    purposes.  *See id.* at 534-37, 542-43.

9    **II.    THE GOVERNMENT FAILS TO EXPLAIN HOW THE EX PARTE**
     **DECLARATIONS COULD POSSIBLY CONTAIN SSI, AND OFFERS NO**
10   **SUBSTANTIVE REASON FOR CONTINUING TO DENY ACCESS TO SSI,**
     **EVEN ASSUMING IT WERE PROPERLY DESIGNATED, WHICH IS**
11   **UNLIKELY.**

12        The government has not indentified to Ibrahim or her counsel specifically what

13   information it claims is protected as SSI.  To assert the SSI privilege, defendants must identify

14   the information they seek to withhold under any claim of the SSI privilege, including a

15   description sufficiently detailed to enable Ibrahim and the Court to assess the applicability of the

16   privilege.  *See CSX Transp., Inc. v. Williams*, 231 F.R.D. 42, 43 (D.D.C. 2005) (requiring the

17   United States to produce a privilege log detailing all information withheld as SSI).  Defendants

18   have not made this information available to Ibrahim's counsel, thereby precluding Ibrahim's

19   counsel from rebutting defendants' claim of privilege.  This prejudices Ibrahim both in the

20   current proceeding and on appeal, because it unfairly prevents Ibrahim from developing the

21   record to show the violation of her due process rights with respect to defendants' motion to

22   dismiss.

23        In fact, documents and information concerning Ibrahim's nomination to and placement in

24   the TSDB would not be protectable as SSI.  None of that information would have originated with

25   the TSA or DHS, as the TSC typically receives unclassified nomination information from the

26   FBI or NCTC.  (*See* Peek Decl., ¶ 15, Exh. H, pp. iv, 12-13, 79-80 (goal was to create an

27   unclassified terrorist watchlist), ¶ 17, Exh. J, pp. 4-11 (describing nomination procedures), ¶ 18,

28

10

Exh. K, pp. iv-v (summary of nomination procedures); *see also* RJN, Exh. I, pp. iv, 12-13, 79-80 (same), Exh. K, pp. 4-11 (same), Exh. L, pp. iv-v (same).)  Since documents and information concerning Ibrahim's nomination to and placement in the TSDB are not SSI, it is difficult to see how any explanation regarding the sensitivity of the TSDB could be SSI, either.[1]

Even assuming the information were protectable as SSI, the government has no basis for refusing to disclose it.  Ibrahim's counsel received letters from the federal government stating that the TSA had reviewed and preliminarily approved their applications for access to SSI pursuant to section 525(d) of the Department of Homeland Security Appropriations Act of 2007 ("section 525(d)").  (Peek Decl., ¶ 8, Exh. C.)

Section 525(d) provides:

> That in civil proceedings in the United States District Courts, where a party seeking access to SSI demonstrates that the party has substantial need of relevant SSI in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the information by other means, the party or party's counsel shall be designated as a covered person under 49 C.F.R. Part 1520.7 in order to have access to the SSI at issue in the case, provided that the overseeing judge enters an order that protects the SSI from unauthorized or unnecessary disclosure and specifies the terms and conditions of access, unless upon completion of a criminal history check and terrorist assessment like that done for aviation workers on the persons seeking access to SSI, or based on the sensitivity of the information, the Transportation Security Administration or DHS demonstrates that such access to the information for the proceeding presents a risk of harm to the nation.

*See* Department of Homeland Security Appropriations Act of 2007, Pub. L. No. 109-295 § 525(d), 120 Stat. 1355, 1382 (Oct. 4. 2006).  This Court entered an SSI protective order on January 13, 2010.  (*See* Peek Decl., ¶ 10, Exh. E.)  A similar order would be sufficient to address the government's security concerns in the future.  Ibrahim has substantial need of the information to defend the government's motion to dismiss, and is unable to obtain the substantial equivalent of the information by other means.  The government's claim that disclosure under these conditions risks harm to the nation is not persuasive.

---

[1] It appears that defendants nevertheless wrongfully assert that plaintiff's TSDB status is SSI.  In order to challenge this wrongful designation under 49 U.S.C. § 46110, plaintiff needs to know specifically what information has been wrongfully designated.  Defendants failure to provide basic information about what they are claiming is privileged frustrates plaintiff's right of appellate review.

PLAINTIFF'S RESPONSE TO THE COURT'S REQUEST FOR BRIEFING MEMORANDA REGARDING SECRET EVIDENCE AND LEGAL ARGUMENT; CASE NO. C06-0545 WHA

### III.   USING SECRET EVIDENCE TO DECIDE THE STANDING ISSUE PREMATURELY, BEFORE IBRAHIM HAS HAD THE OPPORTUNITY TO TEST DEFENDANTS' PRIVILEGE OBJECTIONS AND CONDUCT FULL DISCOVERY, VIOLATES DUE PROCESS.

#### A.   Due Process Requires That Ibrahim Be Permitted To Discover And Rebut Whatever Evidence Defendants Claim Supports Their Speaking Motion.

The government decisively lost the issue of whether Ibrahim had adequately alleged standing.  *See Ibrahim II*, 669 F.3d 983, 992-94; *see also* Order on Motions to Dismiss (Docket No. 197), pp. 7:2-10:2, filed in this action on July 27, 2009 (rejecting defendants' standing argument); RJN, Exhs. D-F (denying government's petition for rehearing on standing issue).) The government now pursues a factual attack on Ibrahim's standing, *see White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000), but seeks to deprive her of the ability to respond by relying on secret evidence, secret legal authorities, and secret legal argument.  If the secret Cruse declarations actually discuss Ibrahim's current TSDB status, these facts go to the heart of Ibrahim's claims. Ibrahim is prejudiced in her ability to respond to defendants' argument with evidence.  *Cf. Data Disc, Inc.*, 557 F.2d at 1285 & n.2.  She does not know what factual matters may be disputed and she does not have the benefit of discovery to test the truth of defendants' allegations.  This procedure violates due process, because it seeks to adjudicate facts going to the merits of plaintiff's claims without apprising her of what facts may be in dispute, or the legal arguments that may be available to her.  *See American-Arab Anti-Discrimination Comm.*, 70 F.3d at 1069.

Authorities cited by defendants are distinguishable, and do not require or permit this Court to accept the government's ex parte submissions.  *Meridian International Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir. 1991), does not control here.  In *Meridian*, the court observed that compelling disclosure of the ex parte declarations would require the agency to reveal secrets of an ongoing investigation.  *Id.*  The holding was limited to its specific fact pattern.  *Id.*  Here, the government does not assert publicly that there is any ongoing investigation of Ibrahim.  This is highly unlikely to be the case, given that this Court previously characterized certain allegedly privileged information as, "old," and "stale," and information that "can't possibly really affect this national security."  (*See* Peek Decl., Exh. Z, pp. 7:13-25, 11:12-21, 20:19-21:1, 22:12-23 (emphasis added).)  Defendants also cite *In re Grand Jury*

---

12

1   *Proceedings*, 867 F.2d 539, 540-41 (9th Cir. 1989), but this case is distinguishable for even more

2   obvious reasons.  There is no ongoing grand jury investigation that could be impeded by

3   disclosure here.

4      *Scherfen v. Department of Homeland Security*, No. 08-1554, 2010 U.S. Dist. LEXIS

5   8336, at * (M.D. Pa. Feb. 2, 2010), and *Gilmore v. Gonzales*, 435 F.3d 1125, 1131-32 (9th Cir.

6   2006) are also distinguishable.  In those cases, the issue of whether the plaintiff had adequately

7   alleged standing had not already been resolved against defendants by a court of appeal.  Ibrahim

8   suffered greater injuries than the enhanced screening and difficulty in traveling discussed in

9   *Scherfen*.  The *Scherfen* court also erred in failing to recognize that the government's refusal to

10   confirm one's deletion from the database or support continued inclusion with evidence is itself a

11   form of injury.  The *Scherfen* court dismissed on the alternate ground that subject matter

12   jurisdiction was lacking (in an opinion at odds with *Ibrahim I*), so arguably, its decision on

13   standing was unnecessary.  *See id.* at *29-38.  In addition, plaintiffs in *Scherfen* failed to object

14   to the ex parte, in camera review of evidence submitted by defendants.  *See Scherfen*, 2010 U.S.

15   Dist. LEXIS 8336 at *12.  Here, Ibrahim objects.

16      Finally, the order in *Arjmand v. Department of Homeland Security*, No. 12-71748 (9th

17   Cir. Nov. 7, 2012), has no bearing on this case.  *Arjmand* is a petition for review pursuant to 49

18   U.S.C. § 46110 of the government's response to a request for redress under DHS TRIP.  (*See*

19   Amended Opening Brief Of Petitioner, filed on November 30, 2012, attached as Exhibit 1, p. 1.)

20   Petitioner has challenged the government's submission of ex parte materials in his brief.  (*See*

21   *id.*, pp. 2, 6, 18-19.)  Thus, the order submitted by the government does not conclusively resolve

22   the issue, and even if it did, the issue of standing was not already resolved against the

23   government in *Arjmand*, either.

24      **B.** **This Court Can Reject Defendants' Standing Argument Without Reviewing Any**
          **Privileged Information.**

25      The Court does not need to know whether Ibrahim is on the No-Fly List or the Selectee

26   List in order to find she has standing.  Placement in the TSDB is sufficient injury to confer

27   Article III standing:

28

---

13

PLAINTIFF'S RESPONSE TO THE COURT'S REQUEST FOR BRIEFING MEMORANDA REGARDING
SECRET EVIDENCE AND LEGAL ARGUMENT; CASE NO. C06-0545 WHA

1
2

Defendants' argument that mere placement on a government watchlist does not constitute a legally cognizable injury also misses the mark. As an initial matter, <u>Plaintiff here contends that her name has been erroneously placed on government watchlists. That certainly is a wrong that confers Article III standing.</u>

3   *See Shearson v. Holder*, 865 F. Supp. 2d 850, 2011 U.S. Dist. LEXIS 101808, at *18 (N.D. Ohio

4   2011) (emphasis added) (*citing Tooley v. Napolitano*, 556 F.3d 836, 840 (D.C. Cir. 2009), *rev'd*

5   *Tooley v. Napolitano*, 586 F.3d 1006 (D.C. Cir. 2009) (affirming plaintiff established Article III

6   standing on claim that he was wrongfully placed on terrorist watch lists)); *see also Ibrahim II*,

7   669 F.3d at 993 (rejecting the government's redressibility argument and holding, "[e]ven if

8   Ibrahim's injury were limited to her inability to enter the United States, she would still have

9   standing.")

10       The Ninth Circuit's holding in *Ibrahim II* also necessarily rejects defendants' argument

11   that Ibrahim cannot show placement in the TSDB caused the consequences she experienced and

12   which remain a threat so long as she remain in the TSDB:

13
14
15

Though Ibrahim's future ability to obtain a visa is uncertain and we would be powerless to review a denial, 'plaintiffs need not demonstrate that there is a "guarantee" that their injuries will be redressed by a favorable decision . . . [P]laintiffs must show only that a favorable decision is likely to redress [their injuries], not that a favorable decision will inevitably redress [their injuries].'

16   *See Ibrahim II*, 669 F.3d at 993. This holding was not dictum, but rather, an important part of

17   the opinion which thoroughly rejected all of defendants' standing arguments. The Ninth

18   Circuit's statement that Ibrahim would still have standing even if her injury were limited to her

19   inability to enter the United States also was not dictum, and Ibrahim's opposition conceded no

20   such thing. None of the Ninth Circuit's grounds for finding that Ibrahim's injury was redressible

21   were dicta, as all were necessary for the thorough rejection of defendants' standing argument.

22   *See Ibrahim II*, 669 F.3d at 992-94.

23       As noted in Ibrahim's opposition to defendants' motion to dismiss, even if defendants

24   now removed Ibrahim from the TSDB, she would still have standing and this case would not be

25   moot. Even if defendants secretly had cleared Ibrahim from all of the watchlists identified in her

26   SAC, meaningful declaratory and injunctive relief could still be awarded. The government has

27   never confirmed that Ibrahim has been removed from all watchlists supported by the Terrorist

28

14

PLAINTIFF'S RESPONSE TO THE COURT'S REQUEST FOR BRIEFING MEMORANDA REGARDING
SECRET EVIDENCE AND LEGAL ARGUMENT; CASE NO. C06-0545 WHA

1  Screening Database.  (Peek Decl., ¶ 12.)  This Court could still declare the government's conduct

2  in placing Ibrahim in the TSDB was unlawful and violated her constitutional rights.  In addition,

3  the Court could order defendants to confirm in writing, under penalty of perjury, that Ibrahim has

4  in fact been cleared from each of the named watchlists.  For all these reasons, this Court can

5  reject defendants' standing argument without reviewing defendants' ex parte submissions.

6  **IV.    THE GOVERNMENT FAILS TO SUPPORT ITS IMPLIED ARGUMENT**
7  **THAT IBRAHIM'S COUNSEL ARE DUTY-BOUND TO VIOLATE COURT**
   **ORDERS.**

8          During the November 8, 2012 case management conference, the Court asked the

9  government why it could not provide the allegedly privileged information to plaintiff's attorneys.

10  (*See* Peek Decl., Exh. AA, p. 6:7-16.)  In response, the government contended that plaintiff's

11  attorneys had a "dual obligation" because they had a duty to zealously represent their client,

12  "which puts the information at risk."  (*See id.*, p. 6:9-18.)  The government further argues that an

13  attorneys' eyes only protective order would be inadequate to prevent inadvertent disclosures

14  given the allegedly privileged nature of the information.  (*See* Defendants' Response to the

15  Court's Request for Briefing (Docket No. 380), p. 5:7-6:10.)  The government utterly discounts

16  the fact that it already cleared plaintiff's counsel to view SSI, and thereby impliedly found that

17  disclosure of SSI – an unclassified designation like the law enforcement privilege – would not

18  threaten national security.  (*See id.*, p. 6:11-22.)

19          Defendants' disparaging insinuations about plaintiff's counsel lack any basis in fact.

20  Defendants present no evidence that either Ms. Pipkin or Ms. Peek ever disclosed information in

21  violation of any court order.  Defendants have had ample opportunity to gather such information,

22  having subjected plaintiff's counsel to an extensive background investigation.  Even though the

23  government has not presented compelling evidence that any of the information it seeks to protect

24  is actually worthy of protection, if the Court entered a protective order, Ibrahim and her counsel

25  would abide by it.  (Peek Decl., ¶ 25, Exh. AA, 11:11-24.)

26          Defendants' authorities do not support their suggestion that disclosure in violation of a

27  court order is an undue risk here.  Defendants cite *Colby v. Halperin*, 656 F.2d 70, 72 (4th Cir.

28

                                                      15

1    1981) for the tautological proposition that "[p]roviding counsel access to privileged information

2    discloses the very information that the Government is attempting to protect."  Although it is true

3    that providing counsel access to the information would require disclosure to them, the purpose of

4    the law enforcement balancing test is to determine whether disclosure is nevertheless necessary

5    to litigate the case and if so, under what conditions.  That test adequately addresses defendants'

6    concerns, even if it does not resolve the disclosure issue in their favor.  *Colby*, a case concerning

7    a motion for relief from a protective order regarding classified information, does not suggest

8    otherwise and its assessment of the need for disclosure was limited to the facts before it.

9            Defendants also cite *In re City of New York*, 607 F.3d 923, 936 (2d Cir. 2010), but this

10   case does not apply because trial courts in the Ninth Circuit do not apply a presumption against

11   disclosure in civil cases.  *See, e.g.*, *Soto*, 162 F.R.D. at 613 ("In the context of civil rights suits

12   against police departments, this balancing approach should be 'moderately pre-weighted in favor

13   of disclosure.'")[2] (*quoting Kelly*, 114 F.R.D. at 661).  *In re City of New York* also did not involve

14   lawyers who had already obtained security clearances, and did involve an undercover

15   investigation, unlike here.  *Id.* at 936 & n.12.  Since Ibrahim already knows the identity of the

16   FBI agent-witnesses in this case (*see, e.g.*, Ibrahim Decl., ¶ 21), there is no danger that the

17   identity of an undercover agent will be compromised.

18           As discussed above, defendants have not supported their claims of privilege and therefore

19   cannot plausibly claim harm would result from disclosure to Ibrahim and her counsel pursuant to

20   an appropriate protective order.  If there are hypothetical problems with enforcement of such

21   protective orders due to difficulty in determining the source of a leak, that is the fault of the

22   government for overcollecting data and failing to employ basic security measures for data that

23

24

25

26

27   [2] Some circuits are even less disposed to apply the privilege in civil cases.  *See In re Department of Homeland Security*, 2006 U.S. App. LEXIS 16976, at *10-15 (5th Cir. 2006) (stating the
28   privilege is recognized only in the context of ongoing criminal investigations).

PLAINTIFF'S RESPONSE TO THE COURT'S REQUEST FOR BRIEFING MEMORANDA REGARDING
SECRET EVIDENCE AND LEGAL ARGUMENT; CASE NO. C06-0545 WHA

1  actually does deserve protection.[3]  Ibrahim and her counsel should not bear the burden of the

2  government's inability to properly manage its error-ridden databases.

3  **V.      THIS COURT NEED NOT REVIEW ANY CLASSIFIED EVIDENCE TO
          DENY DEFENDANTS' MOTION TO DISMISS.**

4

5          Defendants have alluded to "potentially" classified evidence that may be the subject of a

6  discovery dispute later in the case.  (*See* Defendants' Response to the Court's Request for

7  Briefing (Docket No. 380), p. 7:4-12; *see also* Defendants' November 7, 2012 Letter Brief, p. 2.)

8  Since defendants do not seek to introduce any classified evidence in support of their motion to

9  dismiss, the Court can decide the motion without resolving how to handle "potentially" classified

10  evidence.

11          Defendants nevertheless proceed to discuss future access to the "potentially" classified

12  information.  For the reasons discussed above and other reasons, it is difficult to believe any

13  evidence in this case truly merits a "classified" designation.  (*See* Peek Decl., ¶ 22, Exhs. O-X

14  (formerly "classified" documents containing such information as the fact that Muslims served

15  "date fruits" after religious services); *see also* RJN, ¶ 3, Exhs. P-Y (same); *see also id.* at ¶ 4,

16  Exhs. P-S, U-Y.)[4]  Even if there were relevant classified evidence in this case, the Ninth Circuit

17  has instructed the district courts to use their own discretion in deciding "how to handle discovery

18  of what may be sensitive intelligence information."  *See Latif v. Holder*, 2012 U.S. App. LEXIS

19  15429, *19 (9th Cir. 2012) (*citing* Classified Information Procedures Act, 18 U.S.C. app. 3 §§ 1-

20  16).

21          The Classified Information Procedures Act ("CIPA") contemplates alternatives to

22  supplying classified information, including summaries or substitute submissions.  *See* 18 U.S.C.

23  app. 3, § 4; *see also United States v. Abuhamra*, 389 F.3d 309, 331 (2d Cir. 2004) (alternate

24  _____

[3] *See*, *e.g.*, Natasha Singer, *Ex NASA Scientist's Data Fears Come True*, The New York Times,
Nov. 28, 2012 (republished in the Pittsburgh Post-Gazette on Nov. 29, 2012), available at
http://www.post-gazette.com/stories/business/technology/ex-nasa-scientists-data-fears-come-
true-664006/ and attached as Exhibit 1.

25

26  [4] *See also Horn v. Huddle*, 699 F. Supp. 2d 236, 238-38 (D.D.C. 2010) (noting that government
had made misrepresentations to the Court that were material and intentional concerning its

27  claims of privilege, but approving settlement and vacating orders for further proceedings
allowing plaintiff to pursue other possible sanctions).  Paul Freeborne, counsel for the

28  government in this case, was designated as a "lead attorney" for the government in *Horn*.

17

PLAINTIFF'S RESPONSE TO THE COURT'S REQUEST FOR BRIEFING MEMORANDA REGARDING
SECRET EVIDENCE AND LEGAL ARGUMENT; CASE NO. C06-0545 WHA

1   summary disclosure procedure).  These alternatives may or may not be adequate depending upon

2   the specific situation before the Court, however.  It would be preferable if cleared counsel could

3   simply receive clearance to review any "potentially" classified information.  Further briefing is

4   needed on this subject to determine what procedures should apply going forward, if any are

5   necessary.

6          Defendants cite *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990) for the

7   proposition that the Executive Branch has sole responsibility over decisions to grant or deny

8   access to classified material.  *Dorfmont* held that plaintiff had not shown a liberty or property

9   interest in her security clearance, and therefore could not allege a due process violation.  *Id.* at

10  1402-04.  The *Dorfmont* court also acknowledged that the government may not deny a clearance

11  in violation of the right to equal protection.  *Id.* at 1403 (*citing Dubbs v. CIA*, 866 F.2d 1114,

12  1119, n.8 (9th Cir. 1989); *High Tech Gays v. DISCO*, 895 F.2d 563, 570 (9th Cir. 1990).)

13  Contrary to the government's argument, the United States Constitution does limit the

14  government's discretion to deny or revoke security clearances.  *See id.* at 1404, *see also Webster*

15  *v. Doe*, 486 U.S. 592, 603-04 & n.8 (1988).  In addition, *Dorfmont* did not foreclose lawyers

16  from applying for a security clearance, or the court from ordering the government to process

17  applications, should it be necessary in a given case.  *See In re Nat'l Sec. Agency Telecomm.*

18  *Records Litig.*, 595 F. Supp. 2d 1077, 1089 (N.D. Cal. 2009) (ordering government to process

19  plaintiffs' counsel for "security clearances necessary to be able to litigate the case"); *see also*

20  *Parhat v. Gates*, 532 F.3d 834, 837, n.1 (D.C. Cir. 2008) (counsel given access to classified part

21  of court's opinion).

22         The *Dorfmont* court also did not analyze whether other liberty or property interests could

23  support a claim that due process is violated when the Court allows the use of secret evidence to

24  defend a constitutional claim.  Here, the government must choose between sharing the

25  "potentially" classified information with Ibrahim's counsel, or defending its conduct without this

26  information.  *See American-Arab Anti-Discrimination Comm.*, 70 F.3d at 1069; *see also Al Odah*

27

28

PLAINTIFF'S RESPONSE TO THE COURT'S REQUEST FOR BRIEFING MEMORANDA REGARDING
SECRET EVIDENCE AND LEGAL ARGUMENT; CASE NO. C06-0545 WHA

1  *v. United States*, 559 F.3d 539, 544-45 (D.C. Cir. 2009) (acknowledging courts' authority to

2  compel disclosure of classified information necessary to facilitate habeas review).

3  <u>**CONCLUSION**</u>

4       For the reasons discussed above, Ibrahim respectfully requests that this Court decline to

5  consider defendants' ex parte submissions and return to defendants the unredacted memorandum

6  of points and authorities in support of defendants' motion to dismiss, as well as both Cruse

7  declarations.  If the Court does consider any part of the material underlying defendants'

8  redactions, Ibrahim requests that she and her counsel be given equal access to the information

9  and an adequate amount of time to file a surreply on all issues before the Court rules on

10 defendants' motion.  The government's national security interests – to the extent they are

11 implicated at all here – are adequately addressed by an appropriate protective order.

12

13 Dated: December 4, 2012                McMANIS FAULKNER

14

15                            /s/  Christine Peek

16                            CHRISTINE PEEK

17                            Attorneys for Plaintiff,

18                            RAHINAH IBRAHIM

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSE TO THE COURT'S REQUEST FOR BRIEFING MEMORANDA REGARDING
SECRET EVIDENCE AND LEGAL ARGUMENT; CASE NO. C06-0545 WHA