IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAHINAH IBRAHIM,

Plaintiff,

v.

DEPARTMENT OF HOMELAND SECURITY, et al.,

Defendants.

No. C 06-00545 WHA

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL**

### INTRODUCTION

In this No-Fly List action, plaintiff moves to compel documents, responses to discovery requests, and Rule 30(b)(6) depositions. The government has refused to cooperate with this discovery on the basis of various privileges. To the extent below, plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**. This order only considers plaintiff's motion to compel *non-classified* and privileged material; plaintiff's motion to compel classified and privileged material is addressed in a separate order.

### STATEMENT

The underlying facts remain as they were when a previous order denied defendants' third motion to dismiss and motion to stay discovery (Dkt No. 399). This order will summarize the record of this nearly seven-year civil action before proceeding to the latest procedural developments.

1. **ALLEGED FACTS**.

Plaintiff Rahinah Ibrahim was studying under a student visa at Stanford from 2001 to 2005. In January 2005, she attempted to fly from San Francisco to Malaysia but was detained at the airport, allegedly because she was on the No-Fly list. She was eventually released and allowed to fly to Malaysia the next day. She has since been refused a visa to return to the United States.

An American consul in Malyasia sent plaintiff a letter in April 2005, stating that the Department of State had revoked her student visa one month after she departed San Francisco due to "possible ineligibility" under Section 212(a)(3)(B) of the Immigration and Nationality Act, 8 U.S.C. 1182, which allows for aliens to be denied entry into the country based on actual or likely terrorist affiliation. In January 2006, plaintiff filed suit against federal, state, and local defendants, asserting Section 1983, state-law tort, and constitutional claims (Dkt. No. 1).

2. **PROCEDURAL HISTORY OF DEFENDANTS' THREE MOTIONS TO DISMISS.**

In August 2006, plaintiff's claims against the federal defendants were dismissed based on lack of subject-matter jurisdiction under 49 U.S.C. 46110(a), which vests jurisdiction in the courts of appeals (Dkt No. 101). In August 2008, our court of appeals reversed and remanded, ruling that district courts did have subject-matter jurisdiction, at least to certain federal defendants. *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250 (9th Cir. 2008) ("*Ibrahim I*").

Plaintiff subsequently filed her second amended complaint in April 2009 against remaining federal defendants and certain local defendants, adding First Amendment freedom of association, Fifth Amendment due process, equal protection, and Administrative Procedure Act (APA) claims to those in her original complaint (Dkt. No. 161). The relief plaintiff sought included removal from the No-Fly List. The federal defendants moved to dismiss again, this time on standing grounds. A July 2009 order held that while plaintiff had standing to pursue past violations, she lacked standing to pursue claims for prospective APA and constitutional relief because she had voluntarily left the United States and thus, as an alien abroad, had no standing to assert prospective rights under our nation's Constitution (Dkt. No. 197).

2

1    Plaintiff settled with non-federal defendants, then appealed some adverse discovery
2    rulings and the dismissal of her APA and constitutional claims. Our court of appeals, while
3    affirming in part, reversed as to prospective standing and held that an alien voluntarily abroad
4    could litigate federal constitutional claims in district court provided the alien had a substantial
5    connection to the United States, such as having attended Stanford. *Ibrahim v. Dep't of
6    Homeland Sec.*, 669 F.3d 983 (9th Cir. 2012) ("*Ibrahim II*").

7    Defendants moved to dismiss for a third time, again asserting that plaintiff lacked
8    standing and alternatively, that her claims must be dismissed as a matter of law. In support of
9    their motion, defendants sought to rely on declarations submitted for *in camera*, *ex parte* review.
10   A December 2012 order refused to undertake such review, and, based on documents available to
11   *both* parties, denied the third motion to dismiss and defendants' parallel motion to stay discovery
12   (Dkt. No. 399).

13   **3.    PROCEDURAL HISTORY REGARDING DEFENDANTS' PRIVILEGE LOGS.**

14   After denial of defendants' third motion to dismiss, an order dated February 7, 2013,
15   required defendants to produce "a privilege log that lists, at a minimum, each responsive
16   document for which privilege is claimed by bates number (or another unique identification
17   number), date, author(s), recipient(s), and subject . . . . [and] the specific privilege(s) [defendant]
18   asserts[]" (Dkt. No. 407). Defendants objected to identifying classified information in that
19   privilege log. After a round of supplemental briefing, a February 15 order allowed defendants to
20   submit a classified privilege log listing documents that were "actually classified and so stamped"
21   *ex parte* and *in camera* (Dkt. No. 414). Defendants also were to provide the classified
22   documents for the Court's *ex parte* and *in camera* review, along with declarations attesting to
23   when the documents were classified. The order also stated that "[t]he extent to which the
24   privilege log for classified documents and the classified documents themselves will be provided
25   to the plaintiff's counsel will be decided after the review but if government counsel disagrees it
26   will be given a chance to appeal." All other non-classified material were to be identified in a
27   privilege log provided to plaintiff's counsel under appropriate protective orders.
28

3

On February 19 (Dkt No. 416), this Court found defendants in violation of the February 7 order. Defendants failed to produce a privilege log because they claimed that the log would in and of itself allegedly reveal sensitive security information (SSI)[*] and law enforcement sensitive information (LES). Defendants also requested that some information be covered by two independent protective orders, despite the prior SSI protective order (Dkt. No. 312). An order on February 19 reminded defendants that "[t]he purpose of [Rule 26(b)(5)] would be defeated if a party could stand on a blanket assertion that its privilege log is itself privileged [and that] [t]he use of a privilege log is a standard, commonplace method of satisfying Rule 26(b)(5) without revealing privileged or protected information." It also ordered the production of the privilege log under an interim "attorney's eyes only" (only plaintiff's counsel was to review it and could not reveal its contents to others without a court order); overruled defendants' objection to disclosing plaintiff's watchlist status on the grounds such disclosure required two protective orders; and denied defendants' request to reconsider a prior ruling allowing plaintiff to hear privileged evidence at trial.

A February 25 order denied plaintiff's request for unclassified summaries of any withheld classified material (Dkt. No. 420). The same day, another order granted the parties' newly stipulated protective order regarding SSI (Dkt. No. 421). On February 28, plaintiff filed a motion to compel certain documents she alleges to be responsive to various previous requests (Dkt. No. 425) and a March 13 order allowed defendants to separate their responsive brief into two sections: the first (filed under seal) addressing non-classified information and privileges; and the second (filed *ex parte*, *in camera*) addressing classified information and privileges (Dkt. No. 437). The order also denied defendants' requests for stays and extensions because the government has been on notice of the materials plaintiff seeks in discovery "for years." *Ibid*.

Tht Court then issued an order under seal, *ex parte*, asking defendants to show cause as to why two apparently unclassified letters included amongst the classified materials being reviewed *in camera* could not be produced to plaintiff's counsel and why nine documents that were largely

---

[*] "Sensitive Security Information" refers to information obtained or developed in the conduct of security activities the disclosure of which the Transportation Security Administration has determined would be detrimental to the security of transportation.

4

1 unclassified could not be produced to plaintiff's counsel with the few classified portions redacted
2 (Dkt No. 452). Defendants responded *ex parte*, *in camera*.

Separately, a March 28 order requested that defendants lodge certain non-classified documents withheld on the basis of various privileges for *in camera* review. This order now turns to analyze defendants' arguments for withholding these unclassified documents, as well as defendants' refusal to respond to other discovery requests and produce Rule 30(b)(6) witnesses (a separate order deals with the classified documents). This order has been drafted so as to permit public filing.

## ANALYSIS

### 1. PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS.

This order concludes that 62 documents that the government has withheld on the basis of various asserted privileges should be produced. Given the substantial number of documents that should be turned over, it is impractical to analyze each document individually. This order begins by addressing the various privileges asserted by defendants. Next, this order analyzes specific issues relating to several specific categories of documents. Based on this analysis, the order concludes that production of the following documents will be **COMPELLED**:

- NCTC002–4, 6–7, 9–10, and 12–13 from the NCTC Privilege Log
- Documents 1–2, 4–14, 16–33, and 35–36 from the Amended Department of State Privilege Log
- Documents 2–3, 14, and 18–19 from the FBI/TSC 2009 Privilege Log
- Document 10 from the FBI/TSC First Amended Privilege Log
- Documents 55–68 from the FBI/TSC LES Privilege Log

### A. Sensitive Security Information

Sensitive security information is

> information obtained or developed in the conduct of security activities the disclosure of which the [Transportation Security Administration] has determined would be detrimental to the security of transportation. Such information is shared only with "covered persons" who have a "need to know" the information to carry out transportation security activities. . . . Congress has authorized the disclosure of Sensitive Security Information during discovery to civil litigants who show substantial need for the

5

> information, provided that the district court enters [a protective] order, . . . unless upon completion of a terrorist assessment . . . the [TSA] or [Department of Homeland Security] demonstrates that such access to the information for the proceeding presents a risk of harm to the nation.

*Ibrahim II*, 669 F.3d at 998.

An order dated December 20, 2012, overruled the government's "persistent and stubborn" assertion of SSI as a basis for withholding documents from plaintiff's counsel who have been cleared to view SSI (Dkt. No. 399 at 12). The government's opposition brief does not address SSI. Yet, according to the government's privilege logs, it has asserted this privilege as to a large number of documents. It is not clear from the parties' briefing whether any documents are still being withheld solely on this basis. If so, the government should heed the December 20 order and produce them immediately.

Plaintiff's reply brief raises a separate issue regarding SSI. In addition to an application for SSI clearance submitted in December 2009 that was never processed, from January to March 2013 plaintiff submitted SSI clearance applications for six more members of her legal team. Plaintiff complains that the government has been dilatory and non-communicative regarding these applications. In light of the July 31, 2013, discovery cut-off date, plaintiff requests that the Court order DHS and the TSA to complete processing of the applications in an expedited manner, or in the alternative, that the discovery cut-off and trial date be extended to allow the TSA additional time to process the applications. The government has not had the opportunity to respond to this request. It may do so in a publicly-filed submission no longer than five pages submitted by **APRIL 22 AT NOON**.

### B. The Law Enforcement Privilege

Our court of appeals has not yet outlined a test for evaluating assertions of the law enforcement privilege (or "law enforcement sensitive" (LES) information in the government's nomenclature). At least one other judge in this district, however, has looked to other courts of appeals for guidance. "The purpose of the law enforcement privilege is 'to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an

6

1  investigation, and otherwise to prevent interference with an investigation.'" *S.E.C. v. Gowrish*,
2  No. 09-5883, 2010 WL 1929498, at *1 (N.D. Cal. May 12, 2010) (Judge Susan Illston) (quoting
3  *In re Dep't of Inv. of City of N.Y.*, 856 F.2d 481, 484 (2d Cir.1988)). But "before the government
4  may assert the privilege, 'the information for which the privilege is claimed must be specified,
5  with an explanation why it properly falls within the scope of the privilege.'" *Ibid.* (quoting *In re*
6  *Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1978)). Factors a court "must consider" in weighing
7  the competing interests include:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*In re Sealed Case*, 856 F.2d at 318 (citations omitted).

The government asserts the LES privilege as to nearly all of the documents sought by plaintiff's motion to compel. The importance of the information plaintiff seeks (factors 8–10) will be addressed below in the context of the specific subject-matter at issue. The other factors can be addressed at the outset.

It is important to note that this suit does not present a typical LES privilege fact pattern. The government is not seeking to protect information relating to an ongoing investigation or that would tend to reveal the identity of a confidential informant. Factors 1–2 and 5–6 are thus irrelevant. Nor is there any indication that factors 3 and 7 play any role here.

Instead, the government argues that the withheld documents to varying degrees reveal law enforcement techniques and procedures. This is technically true of the withheld documents, but only in the attenuated sense that general law enforcement procedures can be inferred from

7

other factual information. A few of the withheld documents refer more directly to screening procedures and requirements for being placed on the No-Fly and other watch lists. This information, however, is stale, ranging from seven to ten years old. Moreover, the government has not established that any of the information implicated by this order pertains to specific, current law enforcement techniques.

Even if the government's argument that disclosure of these documents would provide terrorists and would-be terrorists insight into how to avoid the procedures described in the documents, this argument fails. Pursuant to the protective orders in this action, all of these documents can be produced to plaintiff's *counsel* — and not plaintiff herself — for the purposes of discovery and made privy to attorney's eyes only. Plaintiff's lead counsel have already been cleared for SSI and undergone a background investigation. The protective orders will guard against counsel divulging any of the details of these documents without a court order.

### C. The Deliberative Process Privilege

The government asserts the DPP as to twelve documents covered by this order.

> [T]he deliberative process privilege permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and polices are formulated. Documents must be both "predecisional" and "deliberative" to qualify for this privilege; a document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, and deliberative if its release would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.

*Hongsermeier v. Comm'r of Internal Revenue*, 621 F.3d 890, 904 (9th Cir. 2010) (citations omitted). Like the other privileges addressed in this order, the DPP is not absolute.

> The deliberative-process privilege is a qualified one. A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding over-ride the government's interest in non-disclosure. The Ninth Circuit has considered the following factors when balancing the need for disclosure against the need for confidentiality: (i) relevance of the evidence; (ii) the availability of other evidence; (iii) the government's role in the litigation; and (iv) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. Other factors that may be considered include: (v) the interest of the litigant, and ultimately society, in accurate judicial fact-finding; (vi) the

8

> seriousness of the litigation and the issues involved; (vii) the presence of issues concerning alleged government misconduct; and (viii) the federal interest in the enforcement of federal law. Furthermore, the deliberative-process privilege should be strictly confined within the narrowest possible limits consistent with the logic of its principles.

*Cal. State Foster Parent Ass'n v. Wagner*, No. 07-05086 WHA, 2008 WL 2872775, at *4 (N.D. Cal. July 23, 2008) (citations omitted).

In many instances, the government's assertion of the DPP here is dubious. To justify the DPP, the government "must identify a specific decision to which the document is predecisional." *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1094 (9th Cir. 1997). The government has not done so for the majority of the documents implicated by this order, and the assertion of the DPP fails as to these documents for this reason alone.

The remaining five documents pertain to the revocation of plaintiff's visa in 2005 and her subsequent attempt to acquire a visa in 2009. The factors that compel disclosure of these documents will be addressed below.

### D. The Privacy Act.

The government's privilege logs assert the Privacy Act, 5 U.S.C. 552a, as a basis for withholding documents. The statute prohibits the government from disclosing "any record . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." There are twelve enumerated exceptions to the statute, one of which is disclosure "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. 552a(b)(11).

In its opposition brief, the government agrees to produce documents subject to the Privacy Act "pursuant to an appropriate protective order . . . [and] [t]o the extent such documents contain sensitive law enforcement information relating to third parties, information that is irrelevant to Plaintiff's claims, Defendants will redact those individuals' names" (Opp. 11 n.7). The existing protective orders in this action are sufficient to protect this information. The government may redact documents only to remove information relating to third parties who are private individuals and who are unrelated to plaintiff and her claims.

### E. Visa Information Withheld Under 8 U.S.C. 1202(f)

9

The government asserts a statutory privilege from disclosing visa-related information under 8 U.S.C. 1202(f). The statute provides:

> The records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States, except that–
>
> (1) in the discretion of the Secretary of State certified copies of such records may be made available to a court which certifies that the information contained in such records is needed by the court in the interest of the ends of justice in a case pending before the court.

As the text makes clear, this privilege is not absolute. Our court of appeals has not yet weighed in on the meaning of the phrase "needed by the court in the interest of the ends of justice." It stands to reason, however, that such an analysis should be congruent with the tests necessary to overcome the LES and DPP privileges. As explained further below, those tests are met here. This order accordingly **CERTIFIES** that the documents and information the government has withheld under Section 1202(f) and which the government is compelled to produce per this order are needed by the Court in the interest of the ends of justice (NCTC012–13; documents 1–2, 4–14, 16–33, and 35–36 from the Amended Department of State Privilege Log).

### F. Specific Categories of Documents

#### *(1) Documents Relating to Plaintiff's Watchlist Status and Plaintiff's Detention on January 2, 2005*

The government argues that this action should be limited to plaintiff's current watchlist status, if any. The government argues in turn that documents relating to any prior watchlist status, the reasons for which her name was placed on a government watchlist, and her request for redress are all irrelevant. Similarly, the government argues that plaintiff should not get this discovery because if her name has been removed from the No-Fly (and Selectee) lists, she lacks standing.

These contentions are rejected. Plaintiff brought this suit expressly to challenge "the placement of her own name on any government watch list, including the No-Fly List" (SAC ¶

28). The facts resulting in plaintiff's name being placed on the No-Fly List — and her resulting detention at the airport in 2005 — are at the heart of this case. Plaintiff's requests for prospective injunctive relief lack meaning without this factual predicate.

Regarding the government's challenge that plaintiff would not have standing were her name removed from the No-Fly (and Selectee) lists, the government has already lost this argument — twice. Our court of appeals held:

> [e]ven if Ibrahim's injury were limited to her inability to enter the United States, she would still have standing. . . . If Ibrahim's name were removed from the *TSDB, and thereby removed from the Consular Lookout and Support System*, the State Department would be more likely to grant her a visa, given that it has relied on her alleged connection to terrorism as the basis for revoking her visa and denying her application for a new one. Though Ibrahim's future ability to obtain a visa is uncertain and we would be powerless to review a denial, plaintiffs need not demonstrate that there is a guarantee that their injuries will be redressed by a favorable decision. Plaintiffs must show only that a favorable decision is likely to redress their injuries, not that a favorable decision will inevitably redress their injuries.

*Ibrahim II*, 669 F.3d at 993 (emphasis added, citations and quotations omitted). A prior order in this action likewise held: "Even if it turns out that she is not on the list anymore, she is nonetheless entitled to maintain this action to root out the residual effects and echoes in the various agencies resulting from the original erroneous listing, assuming she was listed and assuming it was erroneous" (Dkt. No. 399 at 11).

Plaintiff is entitled to discovery related to these issues and the government is the sole source of this information. To the extent that the documents she seeks reveal law enforcement procedures, the risks of disclosure are outweighed by the relevance of the information to plaintiff's claims. And, in any event, documents relating to plaintiff's watchlist status and request for redress are stale. To the extent that such documents figured in deliberations whether to revoke or grant her a visa, these concerns are likewise outweighed. The countervailing factors of allegations of government misconduct, the enforcement of constitutional protections, and the interest of accurate fact-finding weigh heavily here. Discovery on these issues is now **COMPELLED**.

*(2) Documents Relating to Terrorism Screening Procedures and Agencies*

11

A handful of documents withheld by the government and covered by this order do not pertain directly to plaintiff. Rather, they describe general counter-terrorism screening procedures relevant to aviation and the agencies implementing them. The factors supporting the LES privilege apply with greater force to these documents. Nevertheless, none of the documents at issue directly reveals any *specific* screening procedures. The visa privilege is inapplicable to these documents, and the government has not established that any of these documents are pre-decisional and deliberative with respect to any particular agency decision. The documents are uniformly stale as well.

This order holds that production documents listed in this order and withheld by the government involving general screening procedures and agencies implementing them shall be **COMPELLED** (NCTC002–04, NCTC006–07; FBI/TSC 2009 2–3, 18–19; FBI/TSC First Amended Privilege Log 10, 14).

### *(3) Documents Relating to Plaintiff's 2005 Visa Revocation and 2009 Visa Denial*

The government argues that because plaintiff cannot challenge her 2005 visa revocation and 2009 visa denial *per se*, documents on these topics are irrelevant. Not so. These documents are relevant to harms that may have (or may not have) resulted from the inclusion of plaintiff's name on any government watchlists. They are therefore part of the factual predicate for plaintiff's claims for prospective injunctive relief and may show the extent to which plaintiff's alleged harms could be redressed by the relief she seeks.

Citing *Ibrahim II*, the government also argues that because a challenge to the revocation and/or denial of plaintiff's visa would be non-justiciable under the doctrine of consular non-reviewability, there is no basis to permit discovery into these areas. Our court of appeals' decision in *Ibrahim II* stands for no such proposition. To the contrary, *Ibrahim II* makes clear that even an injury limited to plaintiff's inability to enter the United States would be relevant in this action. *Ibrahim II*, 669 F.3d at 993. The government cites no other authority for the proposition that consular non-reviewability prevents discovery. Indeed, such a proposition is contradicted by the fact that the visa privilege can be overcome when a court certifies that visa-related documents are needed.

The government's assertion of the DPP is strongest as to a handful of documents related to the grounds for plaintiff's visa revocation in 2005, and her visa denial in 2009. In particular, there is some risk that disclosure of these documents would hinder frank and ongoing discussion regarding contemplated visa decisions. Nevertheless, these documents are highly relevant to plaintiff's claims and are not available from any other source. The other factors that outweigh the government's assertion of the DPP likewise play a substantial role here. Plaintiff has properly pled constitutional claims challenging alleged government misconduct. This creates a strong interest in accurate fact-finding for plaintiff and for society, and a strong interest in the enforcement of the constitutional protections asserted in plaintiff's complaint.

For the same reasons, the government's assertion of the visa privilege under Section 1202(f) is also overcome as to the documents listed in this order. Consequently, it is unnecessary to reach plaintiff's alternative argument that the visa privilege is inapplicable to information regarding visa *revocations*, as opposed to visa grants and denials.

The government has also asserted the LES privilege as to the majority of the documents relating to the 2005 and 2009 visa decisions. Most of the factors in the balancing test for releasing LES privileged information do not apply to these documents. Although there is some information about law enforcement techniques that can be inferred from these documents, the government's interest in this regard is not strong and it will be protected by the protective orders in this action and by limiting disclosure to plaintiff's counsel. For all of the documents listed in this order, plaintiff's interest in disclosure outweighs the government's assertion of the privilege. Production of these documents will be **COMPELLED** (NCTC012–13; Amended Department of State Privilege Log 1–2, 4–14, 16–33, and 35–36).

### *(4) The Government's Document Retention Policies and Efforts to Locate Documents*

Plaintiff moves to compel documents related to the government's document retention policies and efforts to locate documents. The government subsequently filed several declarations with its opposition attesting to its document location efforts. Plaintiff did not address these submissions in her reply. It is not clear from the present record whether this

13

remains a live issue. Plaintiff's motion to compel on this issue is **DENIED WITHOUT PREJUDICE**.

### *(5) Recent Documents Related to Terrorist Screening and Watchlist Procedures and Facial Recognition Matches*

A small subset of the documents withheld by the government describe updated terrorist screening procedures and related database issues. These documents appear to date from 2009 onward. Although they remain relevant to plaintiff's claims, the calculus is different here. These documents do not mention plaintiff individually, and they do not specifically identify procedures that were in place around the time that plaintiff filed suit. Thus, their relevance to plaintiff's claims is diminished. Because of their more recent vintage, they present a greater risk of harmful disclosure, and the government's interests are magnified. For those documents in this category over which the government has specifically asserted the LES privilege, plaintiff's motion to compel is **DENIED** (FBI/TSC First Amended Privilege Log 33–34; NCTC005, NCTC008) .

There are also a few documents and/or pages within documents that demonstrate the results of facial recognition software. These pages show matches between the plaintiff's photograph and other photographs in government databases. These pages are not relevant to plaintiff's claims and they tend to reveal the efficacy of government screening procedures. The government may redact any such pages from its productions (*e.g.*, DOS UNCLASS PRIV 000081).

**2    PLAINTIFF'S CHALLENGES TO THE GOVERNMENT'S INTERROGATORY RESPONSES AND REQUEST FOR ADMISSION.**

Plaintiff moves to compel defendants to provide further responses to thirteen interrogatories and one request for admission. Plaintiff has objected to each interrogatory and request for admission in a separate submission to which the government has not had an opportunity to respond. For its part, the government's objections regarding these discovery requests run the entire gamut of objections addressed herein as well as in the Court's discovery order regarding classified documents.

The government is **ORDERED** to produce updated interrogatory and request for admission responses in light of the Court's recent discovery orders by **MAY 2 AT NOON**. Vague, dilatory, and otherwise uncooperative responses that lead to a successful motion to compel may result in an award of attorney's fees, preclusion, and/or other appropriate sanction. This order notes that to the extent that the government previously refused to respond to these requests in the absence of a protective order, the extant protective orders in this action will suffice to protect non-classified information.

### 3   **PLAINTIFF'S MOTION TO COMPEL RULE 30(b)(6) DEPOSITIONS**.

Plaintiff moves to compel the government to produce a Rule 30(b)(6) deposition witness from each of the Department of State, the FBI, the National Counterterrorism Center, and the Terrorist Screening Center. Having reviewed the documents, the Court is of the view that depositions will be of less value than the documents themselves and that depositions are likely to degenerate into attempts into inquire into privileged and classified matter. Nonetheless, a total of three Rule 30(b)(6) depositions will be allowed and counsel for plaintiff are admonished to avoid privileged and classified material. Government counsel are likewise admonished to cooperate to the fullest extent in finding ways to testify to unprivileged and unclassified subjects.

### 4.   **THE PARTIES' MISCELLANEOUS OBJECTIONS**

The government has withheld one document on the basis of attorney-client privilege (NCTC001). Following *in camera* review, this order holds that the document was properly withheld as an attorney-client communication regarding this litigation.

Plaintiff contends that the government has waived any privileges not asserted in its 2009 discovery responses, 2009 privilege log, and response to plaintiff's 2009 motion to compel. For nearly all of the documents and discovery reuqests, it is not necessary to address this issue because this order concludes that the government's assertion of privileges have been overcome by plaintiff's need for discovery. As to the remainder, Plaintiff has moved to compel documents and information that post-date her 2009 discovery requests. This issue is also complicated because our court of appeals vacated part of the 2009 discovery order. Given the particular circumstances of this action, plaintiff's waiver objection is **OVERRULED**.

15

**CONCLUSION**

Plaintiff's motion to compel is **GRANTED IN PART AND DENIED IN PART**. The government shall produce the following documents withheld on the basis of various privileges:

- NCTC002–4, 6–7, 9–10, and 12–13 from the NCTC Privilege Log
- Documents 1–2, 4–14, 16–33, and 35–36 from the Amended Department of State Privilege Log
- Documents 2–3, 14, and 18–19 from the FBI/TSC 2009 Privilege Log
- Document 10 from the FBI/TSC First Amended Privilege Log
- Documents 55–68 from the FBI/TSC LES Privilege Log

In addition to the briefing called for by the February 7 order (Dkt. 407), plaintiff submitted a three-part "Separate Statement Of Items In Dispute In Support Of Plaintiff's Motion To Compel" (Dkt. Nos. 426–28). This three-part submission, totaling more than 500 pages and submitted without leave, applies the arguments in plaintiff's motion to compel to every one of plaintiff's discovery requests thwarted by the government's assertions of privilege. Addressing every contention in plaintiffs three-part submission would be impractical. For the avoidance of doubt, as to documents requested by the court for *in camera* review in the March 28 order (Dkt. No. 450) and related document requests that were not specifically addressed herein, plaintiff's motion to compel is **DENIED WITHOUT PREJUDICE**. The parties shall meet-and-confer regarding further productions in light of the instant order, as well as the December 17, 2009, discovery order (to the extent not vacated by our court of appeals).

At the close of oral argument, the government lodged a large volume of documents with the Court. These documents were listed on the government's privilege logs, but not specifically requested in plaintiff's motion to compel. This order declines to review or rule on the lodged materials at this time. The parties should include the issue of whether any additional documents from this set should be produced in their meet-and-confer session.

The government shall produce updated interrogatory and request for admission responses by **MAY 2 AT NOON**.

A further submission from the government on the topic of SSI applications for plaintiff's legal team shall be due by **APRIL 22 AT NOON**.

If defendants so choose, they must file for appellate relief by **NOON (PDT), MAY 2, 2013**. If by that time defendants elect to do so, all aforementioned documents will remain as they are now — none will be compelled for production to plaintiff's counsel pending appellate review. If defendants choose not to or fail to file for appellate review, all aforementioned documents must be turned over. For the avoidance of doubt, documents and information addressed herein that are designated SSI and/or LES shall be disclosed only to plaintiff's SSI-cleared counsel and subject to the SSI protective order. Other documents and information whose production has been compelled may be disclosed to plaintiff herself, subject to the non-SSI protective order.

**IT IS SO ORDERED.**

Dated: April 19, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE