Pages 1 – 49

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

RAHINAH IBRAHIM,                      )
                                      )
              Plaintiff,              )
                                      )
   vs.                                )  NO. C 06-00545 WHA
                                      )
DEPARTMENT OF HOMELAND SECURITY,      )
*et al.*,                             )
                                      )  San Francisco, California
              Defendants.            )  Thursday
                                      )  April 18, 2013
_____)  8:43 a.m.


**TRANSCRIPT OF PROCEEDINGS**


**APPEARANCES**:

For Plaintiff          McManis Faulkner
Rahinah Ibrahim        50 West San Fernando Street
                       10th Floor
                       San Jose, CA  95113
                       (408) 279-8700
                       (408) 279-3244 (fax)
                 BY:   CHRISTINE PEEK
                       ELIZABETH MARIE PIPKIN


For Defendants         U.S. Department of Justice
Department of          Civil Division, Federal Programs Branch
Homeland Security,     20 Massachusetts Avenue, NW, Room 6107
*et al.*               Washington, D.C.  20001
                       (202) 305-7632
                       (202) 616-8460 (fax)
                 BY:   JOHN KENNETH THEIS
                       LILY SARA FAREL
                       PAUL GERALD FREEBORNE

1          **THE COURT:**  Now we go to *Ibrahim versus Department of*

2  *Homeland Security*, 06-0545.

3          **THE COURT:**  Good morning.

4          **THE CLERK:**  Counsel, state your appearances.

5          **MS. PIPKIN:**  Good morning, Your Honor.

6  Christine Peek, from McManis Faulkner, on behalf of plaintiff

7  Rahinah Ibrahim.

8          **THE COURT:**  Welcome to you.

9          **MR. THEIS:**  Good morning, Your Honor.  John Theis, on

10  behalf of the defendants.  With me, as well, are Lily Farel and

11  Paul Freeborne.

12          **THE COURT:**  Okay.  Welcome to you.  And?

13          **MS. PIPKIN:**  Good morning, Your Honor.

14  Elizabeth Pipkin, McManis Faulkner, on behalf of plaintiff

15  Rahinah Ibrahim.

16          **THE COURT:**  Say your name slowly.

17          **MS. PIPKIN:**  Elizabeth Pipkin.  P, as in "Peter," i-p,

18  as in "Peter," k-i-n.

19          **THE COURT:**  All right.  Welcome to you, too.

20     And your name?

21          **MS. FAREL:**  Lily Farel, Your Honor.  L-i-l-y.  Farel.

22  F-a-r-e-l.

23          **THE COURT:**  All right.  Okay.  So this is various

24  motions to compel.  So it's your motion.  Go right ahead.

25          **MR. THEIS:**  Your Honor, as a preliminary matter, if I

**Lydia Zinn, CSR #9223,  Official Reporter USDC  (415) 531-6587**

1  could raise one issue that we may need to address before

2  entering into the motion to compel.  There's a potential that

3  information that will come up with in this hearing will be

4  sensitive security information that's subject to the SSI

5  Protective Order.  Under that Order, the information can only

6  be disclosed to clear counsel, to the Court's personnel.

7      I believe there's additional attorneys in the courtroom.  I

8  don't know the extent to which you want to address that before

9  getting into it, or if we want to hold the information before

10 proceeding.

11         **THE COURT:**  Well, if we have to get into it, we will

12 clear the courtroom.  Okay, but let's do our best to keep it a

13 public proceeding.  And if we get there, we will clear the

14 courtroom.  Maybe we won't need do that.  And we'll just have

15 to wait and see.

16     I want to say that there was an administrative motion about

17 the April 2nd Order.  And I do plan to make that available to

18 counsel probably today, I guess, but that will be done --

19         **MS. PEEK:**  Thank you, Your Honor.

20         **THE COURT:**  -- but it will be under the Protective

21 Order.  All right?

22     So let's hear what else, Ms. Peek, that you would like to

23 say on the pending motion to compel.

24         **MS. PEEK:**  Your Honor, Ms. Ibrahim is just asking for

25 information that has to do with the basic facts -- the who,

1  what, when, where, and why –– of her placement on government

2  watchlists.  She wants to know about her actual status over

3  time.  She wants to know the reasons why the government has

4  given her this label.

5      She wants to know what procedures they used; what

6  procedures they were supposed to follow, and what procedures

7  they actually used; what procedures they currently use; did

8  they change; and what happened, if anything, as a result of her

9  redress request.

10      All of this information is relevant to her claims –– her

11  constitutional claims.

12      The government has asserted various privileges.

13      However, to the extent that any of their qualified

14  privileges apply, we have two Protective Orders in this case.

15  And we think that, to the extent that the Court finds that the

16  privilege applies –– and in many cases, they don't –– but if

17  the Court finds that it does apply, the Protective Order should

18  resolve those privilege objections; the qualified privileged

19  objections.

20      The defendants have also raised the State Secrets

21  Privilege.  To the extent that the Court finds that that

22  applies, which, from where we sit, from the information that's

23  available to us, it doesn't actually seem to be the case for

24  quite a number of defendants' *ex parte* submissions; at least,

25  from what we're able to determine from the public filings.

1        But to the extent that the Court determines that it does

2    apply, we think that the Court should exercise its discretion

3    to examine whether that information can be released in any

4    form, whether it could be declassified, or whether it could be

5    released in a summary form; and if not, that the information --

6    to consider whether the information is -- is truly necessary

7    for the case.

8        There are many entries on defendants' privilege logs where

9    the description appears to be that the document relates to some

10   kind of procedure; some kind of training manual.  And the

11   description is sufficiently vague, so that I personally can't

12   tell what it's responsive to; but I assume that defendants have

13   included those because they believe that they're responsive.

14   And so to the extent that they're planning on relying on that

15   information, it needs to be disclosed in some form of or

16   another.

17            **THE COURT:**  Are you -- or is there anyone on your team

18   clear to receive classified information?

19            **MS. PEEK:**  Presently, not that I'm aware, Your Honor.

20            **THE COURT:**  I know you're clear to receive the SSI.

21   Right?

22            **MS. PEEK:**  That's correct.  Two --

23            **THE COURT:**  Okay.  That, I appreciate.

24        If you were clear to receive the classified information,

25   then maybe that would solve the problem.

1          **MS. PEEK:**  Nothing's off the table, Your Honor.  We're

2    willing to consider that.

3        However, having had the opportunity to view the

4    designations -- at least, the high-level designations that the

5    government has applied to its various documents -- the

6    clearance involved in that is a significant invasion of privacy

7    not just for the applicant, but also for that person's family.

8        To make that decision, we would need to confer with our

9    colleagues back at the office; but as I said, nothing's off the

10   table.  It's possible that we could apply.

11         **THE COURT:**  Well, I don't know.  We have a case

12   schedule.  So --

13         **MS. PEEK:**  Well, that presents a practical problem,

14   Your Honor, because typically --

15         **THE COURT:**  So, I mean, July 31 discovery is going to

16   be over in this case, unless there's a good reason to extend

17   it.

18         **MS. PEEK:**  Correct.  And I think that, given the

19   length of time, from what I understand, that it takes to

20   process these clearances, the current schedule would not work.

21   If counsel were to --

22         **THE COURT:**  Well, it might have worked if somebody had

23   applied months ago.  I don't think it would work at this point;

24   but if you had applied months ago to be cleared to receive

25   classified information, probably by now you would be clear, and

1  could be looking at all of these documents.

2      **MS. PEEK:**  Well, I think there are some other problems

3  with the schedule, notwithstanding that.  We have also

4  propounded two more deposition subpoenas in the meantime.  And

5  we've received similar objections to the objections that we're

6  now litigating.  If discovery continues to move this slowly --

7      **THE COURT:**  Well, I'm going to let you take two

8  depositions.

9      And there will be some objections, I guess, made to some

10  questions; but if it turns out that the government stonewalls

11  you, then I'm going to extend the dates.  So if the government

12  stonewalls beyond what the -- you know, in other words, if I

13  say something is privileged, okay, then you don't have to

14  answer those questions.

15      But if you do what you have basically done in this case --

16      That's an overstatement.  I'm going to take that back.

17      If you stonewall beyond what I allow you to withhold, then

18  I'm not going to let you get away with that trick.  We will

19  extend all of the dates.  We'll have evidentiary hearings.

20  We'll do whatever's necessary to make sure the government comes

21  clean on what it's supposed to come clean on.

22      Now, that's not to say that I'm going to grant all of this

23  relief.  I think that a large part of what the government wants

24  to withhold should be withheld, under the State Secrets

25  Privilege.  That's why this has been reviewed.

1    Do you know how much work is involved in this?  Do you know

2  how many hours we've spent on this?

3         **MS. PEEK:**  I appreciate that, Your Honor.

4         **THE COURT:**  It has been an enormous undertaking; but

5  because the Court of Appeals said we had to do it, we have done

6  it.

7    And if the government stonewalls on something it shouldn't,

8  we're going to give you an extension on that July 31 date.  So

9  the government shouldn't be saying, "Oh, we'll run the clock

10 out."  I know how lawyers think sometimes:  Oh, let's run the

11 clock out.

12   What else do you want to say on the --

13   I don't even know how much there is to really say here,

14 because I'm so up to speed on this; but if you've got something

15 burning that you've got to say, go ahead and say it, so that I

16 can -- you know, I don't want to be -- I want to hear if you

17 have something new that needs to be added to the mix.

18        **MS. PEEK:**  Well, Your Honor just mentioned that a

19 large part of what the government wants to be withheld should

20 be withheld.  If the Court can provide any rationale for that,

21 I would like to respond to it.

22        **THE COURT:**  I'm going to do my best.  You know, I'm

23 talking about the classified information.

24        **MS. PEEK:**  Right.  The state secrets -- the

25 information for which they are claiming state secrets.

1        **THE COURT:**  I think the -- I'm not going to say why,

2    because the law doesn't allow me to say why; but I looked at

3    it.  I think the invocation in most cases -- not all cases --

4    the invocation of the State Secrets Privilege was proper by the

5    United States and these defendants on the classified material;

6    not a hundred percent, but most of it.

7        And I can't say more than that.  It will have to be

8    reviewed on appeal, I guess, by the Judges on the Ninth Circuit

9    to see if they agree with that.

10       If you had been cleared to receive classified information,

11   you could look at it for yourself, and see if you think I'm

12   right or not; but unfortunately, the way it works, I can't -- I

13   just can't reveal to you what's in there.  That would be a

14   violation of the classification scheme.

15       And I want you all to know I feel very strongly that both

16   sides should have equal access to all of the evidence.  I've

17   said this before.  I don't like *ex parte*.  I hate *ex parte*.  I

18   think it's unfair; but the law on -- where we come to state

19   secrets and classified information -- I can't just make the law

20   up the way I want to do it.  I have to follow the statutes and

21   the regulations, and to protect the national security.  So

22   that's what I'm bound to do.  I have to do that.

23       And I think on that aspect of it, the only remedy is for

24   you to take those rulings to the Court of Appeals, which would

25   be fine.  I don't have a problem with you doing that.  I think

**Lydia Zinn, CSR #9223,   Official Reporter USDC   (415) 531-6587**

1  somebody might want to make sure I've done it the right way;

2  but if I made a mistake, it's not for want of time.  We have

3  spent the time to do this right on several sort of

4  high-security visits.  And it is not an easy process to go

5  through.  So that's the part on the classified.

6      Let me ask you this.  Is your view -- I do want to make

7  sure I have the basic test down.  Is your view -- let's say

8  that a document is properly classified as secret.  Is that the

9  end of the inquiry, or do I have the discretion to say, "Okay.

10  It is properly classified.  It does involve national security,

11  but I'm going to let the plaintiff see it -- let plaintiff's

12  counsel see it, anyway -- because it has sufficient relevance

13  to the claims in the case"?  What is your view on that subject?

14  And what is your authority on that subject?

15      I'm going to ask the same thing to the government.

16          **MS. PEEK:**  Your Honor, our view is that if the

17  defendants are planning on relying on the classified evidence

18  to defend the constitutional claims, that --

19          **THE COURT:**  What if they're not?  What if they're

20  saying it's your burden?  You're the plaintiff.  You've got to

21  show the constitutional violation.  So what are you going to

22  do?  I mean, I've been wondering how you're going to prosecute

23  this case, if everything that's turned over does not amount to

24  a constitutional violation.  Is it your plan to sort of somehow

25  shift the burden to the government?

1              **MS. PEEK:**  No, Your Honor.

2      I think that the cases that we cited in our response to the

3  classified section of defendants' brief, which is the *Kaur*

4  case, K-a-u-r, and *KindHearts*.  The *KindHearts* case was a

5  seizure; a case involving seizure of funds by the government.

6              **THE COURT:**  I'm sorry.  Which case?  You mentioned

7  two.

8              **MS. PEEK:**  K-a-u-r, *Kaur*.  And *KindHearts*,

9  K-i-n-d-h-a-r-t-s.

10             **THE COURT:**  All right.  So what is -- tell me what

11  those -- well, pick one of them.  And just tell me one at a

12  time.  Was that a Court of Appeals decision in the

13  Ninth Circuit?

14             **MS. PEEK:**  I believe *Kind* -- no.  *KindHearts* is a

15  District Court case.

16             **THE COURT:**  What District Court?

17             **MS. PEEK:**  I don't have that in front of me, but it's

18  in our papers.

19             **THE COURT:**  All right.  So what happened in that

20  decision?

21             **MS. PEEK:**  So that case had to do with a lack of

22  notice, and the reasons for the government's actions in making

23  the seizure.

24      The Court determined that the lack of notice wasn't

25  harmless beyond a reasonable doubt.  And the Court cited

**Lydia Zinn, CSR #9223,  Official Reporter USDC  (415) 531-6587**

1 | authority that Courts have found that the duty to protect

2 | individuals rights extends to requiring disclosure of

3 | classified information.  And then the Court proceeded to set

4 | forth some proposals as to how the classified information could

5 | be handled, including a request to the government to consider

6 | declassifying.

7 |     We would also request that the Court consider those

8 | alternate procedures, to consider whether something could be

9 | declassified, or to consider whether it could be released in

10 | summary --

11 |          **THE COURT:**  But I don't have the authority to

12 | declassify.

13 |          **MS. PEEK:**  Correct, but the Court has the authority to

14 | make the request.

15 |     And the Court has the authority to consider other

16 | procedures, such as release in a summary format; even the CIPA

17 | procedures provide for that.

18 |     The main point is that plaintiff is entitled to some notice

19 | of the reasons for the government's action.  And ending with

20 | the case supports that idea that the Court has discretion to

21 | fashion procedures to provide that notice.

22 |     The *Kaur* case was a Board of Immigrations Appeals case.

23 | And the Court held that the Board had erred in using secret

24 | evidence.  It did state that classified evidence may be used

25 | according to the applicable regulations, but the party has to

**Lydia Zinn, CSR #9223,  Official Reporter USDC  (415) 531-6587**

1  be given a fair chance to meet it.  And that's what we're

2  asking for.  We just want a fair chance to meet their evidence

3  in some form or another.

4       **THE COURT:**  I'll ask the government.  If it's true

5  that at the trial you plan to use classified information, then

6  isn't it absolutely right that at that point, if you're going

7  to affirmatively use it, you are waiving any privilege, and

8  they get to look at it?

9       **MS. FAREL:**  Your Honor, the effect of the assertion of

10  the State Secrets Privilege is to exclude the information

11  entirely from the case.

12       **THE COURT:**  All right.  So you're not going to look at

13  it, at all.  You are not going to raise it, at all.

14       **MS. FAREL:**  Your Honor, we are not going to --

15       **THE COURT:**  That's what I thought would be your

16  answer.  So thank you for the brief answer.  All right.  You're

17  going to have the chance to talk in a minute, but --

18     So, Ms. Peek, they're not going to bring it up.  They're

19  not going to raise it.  They're not going to rely on it.

20  They're going to sit back, and wait for you to make out a

21  *prima facie* case.

22     So we know you can't challenge the denial of the visa.  The

23  Supreme Court said that.  Right?

24       **MS. PEEK:**  Correct.

25  (Portion of the record redacted by Order of the Court.)

**Lydia Zinn, CSR #9223,  Official Reporter USDC  (415) 531-6587**

1              **MR. THEIS:**  Your Honor, I believe Your Honor was about

2  to discuss her status, which -- that is information that's

3  subject to the Protective Order.  I apologize for --

4              **THE COURT:**  But it's SSI, at most.  Right?

5              **MR. THEIS:**  That's correct, but that's only for

6  cleared counsel and for the Court's personnel.

7              **THE COURT:**  Well, all right.  Well, all right.  I'll

8  try to get at it a different way.

9      What is your proof going to be at trial that there's been a

10  constitutional violation?

11             **MS. PEEK:**  Well, we have a lot of different claims,

12  Your Honor.  So, I mean, we can go through the elements of the

13  claims; but the evidence that we're going to be working with --

14  some evidence is actually publicly available.  So the

15  government is correct; it has produced about 1,600 pages of

16  publicly available information that does describe the

17  procedures that they would have used.

18      There are certain information that isn't -- that isn't

19  available that we would like to have access to.  Specifically

20  what comes to mind is the criteria for placement on one or more

21  of these watchlists.  I don't think that they've produced

22  anything that shows that.

23      And I don't think that they've produced anything that shows

24  specifically what -- what was applied to our client.

25      So there's definitely publicly available information that

1  we can use to establish a *prima facie* case.  There's

2  information that's within our client's knowledge that we can

3  use to establish the *prima facie* case.

4      So I don't think we're encountering a problem here where,

5  if, hypothetically, you were to exclude certain evidence that

6  we couldn't proceed -- I don't think that's a problem; but

7  we're just going to have to wait and see what the Court orders.

8          THE COURT:  Well, what --

9      All right.  Let's hear from the government.  What do you

10  have to say to all of this?

11          MS. FAREL:  Well, Your Honor, I'm going to address

12  specifically the assertion of the State Secrets Privilege.  And

13  then my colleague, Jack Theis, will discuss everything else.

14          THE COURT:  Go ahead.

15          MS. FAREL:  So, to reiterate, Your Honor, the effect

16  of the assertion of the privilege is to exclude the information

17  entirely.  So neither --

18          THE COURT:  If it's properly invoked.

19          MS. FAREL:  Yes, Your Honor.  If it's properly --

20          THE COURT:  I have to decide if it's properly invoked.

21          MS. FAREL:  Certainly, Your Honor.

22      To the extent that Your Honor decides the privilege is

23  properly invoked, the effect would be to exclude the

24  information, so that neither party to rely on that information

25  for the merits of case.  And that distinction is what makes the

1  cases cited by plaintiff's counsel very different from this

2  case.  In those cases, the information was being used for the

3  merits of the case.  So there were other questions raised, in

4  terms of access.

5     In this case, we're seeking to exclude the information

6  entirely.  The government would not rely on it to assert its

7  defenses, and plaintiff could not rely on it to prove the

8  elements of her case.

9          THE COURT:  All right.  What is the decision or the

10 statute that says that it excludes it entirely from the case?

11         MS. FAREL:  Your Honor, there are many cases that

12 discuss this assertion of the privilege, under *Reynolds* -- this

13 would be a *Reynolds* assertion -- including *Jeppesen* in this

14 Circuit.

15         THE COURT:  *Jeppesen*?

16         MS. FAREL:  *Jeppesen*.

17         THE COURT:  How do you spell that?

18         MS. FAREL:  J-e-p-p-e-s-e-n.

19    And the plaintiff's name in that case -- well, the lead

20 plaintiff is Mohamed.  Mohamed --

21         THE COURT:  Is that a Ninth Circuit Court of Appeals

22 decision?

23         MS. FAREL:  It is, sir.

24         THE COURT:  All right.  What's the cite to that?

25         MS. FAREL:  614 F. 3d. 1070.  And it's a 2010

1  decision.

2       THE COURT:  All right.  So, to the extent properly

3  invoked, total exclusion is your view.  Right?  And you're

4  telling me that if I were to look at *Jeppesen*, I'm going to

5  find that the Ninth Circuit has so held?

6       MS. FAREL:  Indeed, Your Honor.  Your Honor could also

7  look at *Kasza versus Browner*.  And I can give you that cite.

8  These are all cited in our papers.

9       THE COURT:  I only need one cite.

10       MS. FAREL:  Okay.

11       THE COURT:  I'm not going to look at two cites.  I'm

12  going to look at one, if you're being accurate.

13     All right.  What else would you like to say?

14       MS. FAREL:  I believe that plaintiff's counsel and

15  defendants are in agreement that we both believe that this case

16  can proceed without this classified information.  So if the

17  information is excluded, the government's position is that the

18  case can proceed on unprivileged information.

19     Now, as plaintiff's counsel noted, certainly, the Court's

20  ruling on these pending discovery motions would help frame the

21  case for the parties.  And at that point, the parties could

22  reëvaluate the effect of the privilege.

23     Under *Reynolds*, the privilege excludes the information, as

24  I said; but there are three instances where such exclusion can

25  actually lead to dismissal of the case.

1    The first is if the plaintiff cannot prove the *prima facie*

2  elements of her case.  Based on what Ms. Peek said, it sounds

3  as if plaintiff now believes plaintiff can go forward with the

4  *prima facie* elements of her case, with the exclusion of this

5  information.

6    The second possibility is if the defendants cannot present

7  a valid defense with the exclusion of the information.  And, as

8  I said, Your Honor, at this point, defendants believe that they

9  can present a defense to plaintiff's claims without any use of

10  the information covered by the State Secrets Privilege.

11    The third possibility when dismissal would be needed under

12  assertion of the *Reynolds* privilege is if the chance of

13  disclosure of the privileged information simply becomes too

14  high.  And that would be an instance where the government would

15  need to reëvaluate that risk of disclosure after this Court's

16  rulings.

17         THE COURT:  What was the first instance?

18         MS. FAREL:  The first instance is if plaintiff can't

19  prove the *prima facie* elements of her case.

20    The second instance is if defendants --

21         THE COURT:  All right.  I'm not saying that's true;

22  but in that scenario, what would be the result?

23         MS. FAREL:  The result would be dismissal of

24  plaintiff's claims.

25         THE COURT:  So is it correct or not correct --

1        If the State Secrets Privilege is properly invoked, is

2   there any scenario under which the Judge could say, "I don't

3   like that.  I'm going to turn it over, anyway"?

4            MS. FAREL:  Well, Your Honor, there are three steps,

5   as Your Honor noted, to analyzing the invocation of the

6   privilege.

7        The first is the procedural requirements to ensure that all

8   of the procedure requirements have been met.

9        The second step is to confirm and to make an independent

10   determination that the information, itself, is privileged.  Now

11   in this case, the information that is covered by the State

12   Secrets Privilege is classified.  And that is certainly a

13   determination that the Executive Branch makes; that this

14   information is classified.  And -- I believe as Ms. Peek said

15   -- that is not a determination that's reviewable.

16        Now, we encourage Your Honor -- and certainly the case law

17   supports this notion -- that the Court needs to sceptically and

18   carefully review all of the declarations that the government

19   has submitted in support of the privilege.  And in those

20   declarations which we submitted *in camera, ex parte* for the

21   most part, although we would, Your Honor, be certainly -- and

22   we would like to make public the declarations of James Clapper

23   and Eric Holder; but in those declarations, Your Honor --

24            THE COURT:  Wait, wait.  You want to make public which

25   ones?

1           **MS. FAREL:**   The declarations of the Attorney General,

2   and James Clapper, the Director of National Intelligence.

3           **THE COURT:**   Do those have document numbers yet?

4           **MR. THEIS:**   I don't think they do.

5           **MS. FAREL:**   They were submitted *ex parte*, so I'm

6   not --

7           **THE COURT:**   You want me to go ahead and file those on

8   the public record?

9           **MS. FAREL:**   Yes, Your Honor.

10           **THE COURT:**   All right.  We will do that; but finish

11   your point.

12           **MS. FAREL:**   So in those declarations, as well as in

13   the classified declarations that support those two

14   declarations, the government laid out with specificity and

15   particularity the harms that it believes would result from the

16   disclosure of this classified information, and the basis for

17   the assertion of privilege.

18       Case law from this Circuit certainly urges the Court to

19   give deference to the Executive Branch's assessment of what

20   would harm national security, because the Executive Branch is

21   in a unique position to make that assessment.

22       Now, the third element of this analysis of the privilege is

23   to discuss how the case should proceed, in light of this

24   successful invocation of the privilege.

25           **THE COURT:**   Wait, wait.  Is there any step in there

1  where the Judge can say, "Yes, you did it procedurally correct.

2  Yes, you have a legitimate basis for wanting to keep this

3  secret for national security reasons; but nonetheless, the

4  Judge is going to make you turn it over to plaintiff's counsel,

5  because it would be important.  It's an important document for

6  the prosecution of the case"?

7          MS. FAREL:  No, Your Honor.  There is no case where

8  Your Honor could do that.  With a successful invocation of the

9  privilege, the privilege cannot be overcome by any showing of

10  need.  And the *Jeppesen* case, Your Honor, speaks to this

11  directly.

12          THE COURT:  All right.  I want to go back.  We will

13  make available, without further ado, those two.  Clapper is

14  C-l-a-p-p-e-r?

15          MS. FAREL:  Yes.  James R. Clapper is the Director of

16  National Intelligence.

17          THE COURT:  And was there only one such declaration

18  given to me, so I won't get confused?

19          MS. FAREL:  Yes, Your Honor.

20          THE COURT:  And how about Holder?

21          MS. FAREL:  There was only one Holder declaration.

22          THE COURT:  All right.  Now, some of those other

23  declarations had paragraphs started with "U."

24          MS. FAREL:  Yes, Your Honor.

25          THE COURT:  Do you know what I mean by that?

**Lydia Zinn, CSR #9223,  Official Reporter USDC  (415) 531-6587**

1          **MS. FAREL:**  Yes, Your Honor.  Yes, I do.

2          **THE COURT:**  All right.  Is that something that can be

3     made public?

4          **MS. FAREL:**  No, Your Honor.  Those -- some of the

5     paragraphs in the declarations were both unclassified, but also

6     covered by another privilege, which, under the Protective

7     Orders entered in this case, could only be filed under seal;

8     but moreover, Your Honor, we also could not turn those

9     paragraphs, which are technically unclassified, over to

10    plaintiff's counsel now, because to do so would be to undermine

11    the assertion of our LES privilege.

12    (Reporter requests clarification.)

13          **MS. FAREL:**  LES.  Law enforcement.  The

14    law-enforcement privilege.

15          **THE COURT:**  Okay, but let me back up.  I'm just

16    talking about from a classified, national-security point of

17    view.  From the point of view of the State Secrets Privilege,

18    if it says "U" at the outset of that paragraph, there's no

19    basis to withhold that from the public?

20          **MS. FAREL:**  No, Your Honor.  The State Secrets

21    assertion in this case only covers classified information.

22          **THE COURT:**  All right.  So those "U" paragraphs, as

23    I'm calling them, have to be analyzed in terms of whether or

24    not that would be covered by a different privilege?

25          **MS. FAREL:**  Yes, Your Honor.  And those paragraphs

1   should be marked with the privilege that the government

2   believes that they are covered under.

3       **THE COURT:**  All right.

4       **MS. FAREL:**  Your Honor, if I could just address one

5   final point, plaintiff's counsel has discussed an idea of

6   getting access to the classified information or receiving

7   unclassified summaries of the information.  And she's pointed

8   to the Court's discussion in *KindHearts*, as well as some

9   discussion of CIPA.  CIPA, as Your Honor knows, applies to

10  criminal cases.  And this is very clearly a civil case.

11       Now, there are two steps in order to access classified

12  information.  The first is whether or not the person has a

13  security clearance.  And, as Counsel noted, no one of

14  plaintiff's counsel has a security clearance.

15       But the second step, Your Honor, is whether or not the

16  government will grant a need to know the information.

17       And in *Department of Navy versus Egan*, the Court is very

18  clear -- I can give you that cite if you'd like, Your Honor.

19  The Court is very clear that those two determinations -- the

20  clearance, and the need to know -- are within the prerogative

21  of the Executive Branch.

22       Furthermore, Your Honor, the idea of giving counsel access

23  to classified information or unclassified summaries would not

24  be in keeping with the doctrine of state secrets, which

25  excludes the information from the case entirely.  So providing

**Lydia Zinn, CSR #9223,  Official Reporter USDC  (415) 531-6587**

1  unclassified summaries, for example, has not been done in a

2  state-secrets case, where the privilege is to take the

3  information off the table and out of any merits determination.

4          **THE COURT:**  Is that it?

5          **MS. FAREL:**  Unless you'd like more.

6      My colleague, Jack Theis, can address plaintiff's counsel's

7  discussion of the law-enforcement-sensitive privileges, and

8  everything else, Your Honor.

9          **THE COURT:**  Let's go back to plaintiffs.  What would

10  you like to say just on that classified-information part, in

11  response?

12          **MS. PEEK:**  Just in response to some of Ms. Farel's

13  points, plaintiffs do agree that we can establish a *prima facie*

14  case, for the reasons I stated, and also because we have

15  evidence of statements that other people have made to her about

16  various subjects at issue in the case.

17      I can't speak as to their defenses.

18      Regarding the chance of disclosure, I'm not sure that I

19  would agree with the *Jeppesen* case characterizing it quite in

20  that way; but I don't think that we have a case where the

21  evidence is such that we can proceed.

22      With regard to the State Secrets Privilege, the Court can

23  reject the privilege.  There does have to be an independent

24  determination.  And *Reynolds* even, itself, requires a showing

25  of -- there has to be some kind of showing of injurious harm if

1  this information were released.

2      I don't think that I said that the classified information

3  was not reviewable.  And I think that some of those cases that

4  I cited call that into question.

5      With regard to the paragraphs designated "U," we've

6  objected that they haven't been released to plaintiff's

7  counsel.

8      With regard to the law enforcement and SSIs, as I mentioned

9  before, the Protective Orders currently in place should take

10  care of that.  So there shouldn't be any reason why, as to the

11  paragraphs designated "U," we shouldn't have access to all of

12  those paragraphs.

13      CIPA does apply in criminal cases; but in *Latif versus*

14  *Holder*, the Ninth Circuit at least hinted that District Courts

15  could consider using similar procedures for cases that

16  implicated classified information.

17      As I said before, with regard to the security clearance,

18  nothing is off the table.  We didn't actually -- we didn't get

19  the state-secrets designation until we were halfway through

20  this motion, and so we didn't have notice that the government

21  was asserting a State Secrets Privilege until we had already

22  started the briefing; but we can certainly determine whether

23  somebody could be cleared to view that information.

24      Unless Your Honor has more questions, we'll submit.

25          THE COURT:  All right.  Let's turn to the other

1  privileges.  Why don't we start with the government, since

2  they're the one asserting the privilege?

3          **MR. THEIS:**  Thank you, Your Honor.

4          **THE COURT:**  Now, these are all qualified privileges.

5  These are --

6          **MR. THEIS:**  Well --

7          **THE COURT:**  -- if, on a particularized showing of

8  need, the law-enforcement privilege can be can be overcome.

9  Isn't that true?

10         **MR. THEIS:**  I would say with the exception of 1202(f),

11 Your Honor, which relates to the State Department documents; so

12 the visa.  I'll start, maybe, with that.

13     We'll look at three different categories of documents.  The

14 first is the visa records.  The second is the government's

15 terrorist watchlisting policies and procedures.  And the third

16 category are the plaintiff's specific documents.

17     I would note at the outset it would be a little bit

18 difficult to discuss the harms that are related to releasing

19 that information in the open courtroom, but I will do my best

20 to do that in a presentation here.

21     First, for the visa records, as the Court pointed out,

22 they're of limited value to plaintiff's counsel in this case,

23 because she can't challenge her visa revocation --

24 (Reporter requests clarification.)

25         **MR. THEIS:**  -- or her denial of her visa.

1        To the extent -- and in any event, Section 1202(f) of the

2   INA precludes the disclosure; keeps confidential records that

3   are subject to -- that -- these specific records that they've

4   sought; the visa records.

5            **THE COURT:**  You talk so fast.

6            **MR. THEIS:**  I'll slow down, Your Honor.

7            **MS. FAREL:**  He's from Chicago.

8            **MR. THEIS:**  That's -- so the visa records are subject

9   to 1202(f).

10       The second category of documents, Your Honor, are the core

11  documents that the United States Government has regarding its

12  terrorist watchlisting policies and procedures.  Your Honor is

13  correct that these are law-enforcement sensitive.  And there

14  has to be some sort of balancing test in this case to weigh the

15  public interest against nondisclosure -- or in favor of

16  nondisclosure, against the private interests of this individual

17  plaintiff in this case.

18       And, as we've laid out in the declaration --

19           **THE COURT:**  But it's going to be under a Protective

20  Order, so it's not like it's being published to the world, at

21  large.

22           **MR. THEIS:**  We recognize that, Your Honor.  And --

23           **THE COURT:**  And you two times you've lost this case in

24  the Court of Appeals.  Two times this Judge has been reversed

25  because you lost the appeal.

1   And now, you want me to say, "Oh, they don't really need

2   it."

3   The Court of Appeals wants this case to go forward.  That's

4   what I'm getting out of the story.  And you want me, now, to go

5   out on this limb again?

6   **MR. THEIS:**  I would point your Honor, on this question

7   of the Protective Order, to the Holley declaration, which

8   states within it that there's a substantial risk, even under an

9   attorneys'-eyes-only Protective Order.

10   **THE COURT:**  Oh, come on.  These are reputable lawyers.

11   **MR. THEIS:**  I'm not in any way --

12   **THE COURT:**  I believe that they would honor the

13   Protective Order.  Yes, there is some risk, but -- all right.

14   **MR. THEIS:**  And just the last point on this; that the

15   specific risk this involves is:  These documents would give a

16   roadmap to terrorist organizations for how individuals are

17   analyzed, and how the intelligence community shares

18   information.  I mean, this is the core of the United States

19   Government's terrorist-screening policy.  So I will leave it

20   with that.

21   **THE COURT:**  My goodness.  When the government wants

22   to, it goes on TV, on Anderson Cooper.  And then they explain

23   exactly what they're doing on TV, even.  They talk about it.

24   Here's the procedure.

25   And then whenever they are in litigation, suddenly, it's --

1  they don't want -- they don't want anyone to know what they do.

2  I believe that some of this -- you can hear it on TV.  So --

3  what these procedures are.

4        **MR. THEIS:**  The specific facts related to the

5  individual criteria -- that has not been publicly released,

6  that I'm aware of.  The way that in information is shared among

7  the various intelligence community -- that's not public

8  information.

9     We would respectfully -- and I know the Court has had to do

10 a great deal of work in this case -- but to take a close look

11 *in camera* at the individual documents that we've asserted this

12 privilege over.

13       **THE COURT:**  Yes.  Every single page.

14       **MR. THEIS:**  Right.  Okay.

15    So that's our -- for the general global watchlisting

16 policies and procedures, this information, we believe, is --

17 the risk is too great of a harm if this information is

18 inadvertently disclosed.

19    The last category of information is the plaintiff-specific

20 information.  And that's her past status, and the information

21 related to the January 2, 2005, incident.

22    First of all, these individual -- and this is where it will

23 be difficult to talk about this in open court; but it's --

24 these individual pieces of information are not relevant to her

25 current claim, which is a claim for prospective relief.

 1          **THE COURT:**  No, it's not.  In that release, she

 2    reserved all of the claims against the federal defendants,

 3    including for damages.  Am I right about that?

 4          **MS. PEEK:**  I don't have the words of the release in

 5    front of me, but --

 6          **THE COURT:**  Are you still -- let's just find out.  Are

 7    you still seeking damages against any federal defendants?

 8          **MS. PEEK:**  We are not presently seeking damages

 9    against any federal defendant.  However, it is possible that

10    discovery in this case could reveal the existence of an action

11    that we hadn't known about previously; for example, a *Bevans*

12    action.

13          **THE COURT:**  That's pretty speculative.  Maybe the

14    government's right on that, then.  Why would you need to know

15    information about what happened in 2005?

16          **MS. PEEK:**  Your Honor, our position is that this

17    entire course of conduct is interrelated.  And our challenges

18    to the procedural due process and substantive due process date

19    back to the original incident.

20        That incident also illustrates a couple of the factors in

21    the due-process analysis; specifically, the risk of an

22    erroneous deprivation, and the value -- the probable value of

23    additional safeguards of practice.

24        And so we think that the course of conduct over time is

25    relevant.  We think that the government's various actions, and

1  the listing on various watchlists over time -- all of it is

2  relevant to those procedural claims.

3     Certainly, the information at the beginning, from

4  2004/2005, would also be relevant to the equal-protection

5  claim, which states that the government's motive in placing her

6  on the watchlist was improper, based on religion and

7  nationality; and so facts relating to that set of events would

8  remain relevant to that.

9         THE COURT:  Well, my inclination is that she should

10  get the documents under Protective Order that relate to what

11  happened to her in 2005, in addition to some others, maybe; but

12  even if she's not seeking damages anymore for that, it is part

13  of the story.  So --

14         MR. THEIS:  Well, in addition to its -- we believe

15  it's limited if not nonexistent relevance, if they're also

16  subject to law-enforcement privilege, because this was

17  information that --

18         THE COURT:  Well, you know, the law-enforcement

19  privilege -- you know where it comes from.  There's the *Rovario*

20  case.  I get this all the time in the criminal cases.  It's a

21  current coöperator/informant, who is of great law-enforcement

22  value, whose life would be at risk if the other side knew about

23  it.  So usually it comes up that the defendant's lawyer wants

24  to know:  Who the is informant?  And the government

25  legitimately is worried that if that information comes out,

1  that person will be killed.  That's the *Roviaro* case.  You

2  don't have anything that is remotely close to that.

3      **MR. THEIS:**  Your Honor, respectfully, this is a point

4  where we would need to discuss the specifics of the declaration

5  that we've submitted, because the information that is related

6  to both her past status and to the 2005 incident -- there are

7  harms that would be associated with revealing that information.

8      **THE COURT:**  Yes, but it's not life or death to a

9  witness.

10     **MR. THEIS:**  Respectfully, Your Honor, this goes to --

11 I would put on the record --

12     **THE COURT:**  It is some -- all right.  Yeah.  All

13 right.  First, it's going to -- it's not state secrets.  We're

14 not dealing with state secrets.  This is stuff that can't even

15 qualify as state secrets.

16    And the question is whether or not defense [sic] counsel

17 gets to see that.  I mean -- sorry -- plaintiff's counsel gets

18 to see that.

19    I don't know.  You --

20     **MR. THEIS:**  I would refer the Court to paragraphs 40,

21 43, 31, and 43 of the Holley declaration.  And in there, we

22 discuss the specific harms that are associated with --

23     **THE COURT:**  All right.  Give me those paragraphs of

24 that declaration again.

25     **MR. THEIS:**  Paragraph 31 --

1          **THE COURT:**  All right.

2          **MR. THEIS:**  –– 40 ––

3          **THE COURT:**  Uh-huh.

4          **MR. THEIS:**  –– and 43.  And that's for the

5    unclassified portion of that declaration.

6        There are further paragraphs within that same declaration

7    that further detail information specific to plaintiff that

8    would be –– that would also go to the harms that are associated

9    with the law-enforcement privilege.

10          **THE COURT:**  All right.  I'll give you a reply to what

11   I just heard.

12          **MS. PEEK:**  Thank you, Your Honor.

13        I don't think that we've had access to any paragraphs in

14   the Holley declaration.  Actually, there are two Holley

15   declarations, but I don't think ––

16          **THE COURT:**  Let's find out.  Are you now relying on

17   something that you haven't even served on them?

18          **MR. THEIS:**  No, Your Honor.  These are specific

19   paragraphs within the public [sic] version of this that we

20   submitted under the Court's Order –– not public.  *Ex parte*.

21   Sorry –– under seal that we submitted in response to the

22   Court's Order of –– I forget the date, Your Honor; but the

23   Court asked that ––

24          **THE COURT:**  Do you disagree that those –– you know,

25   we've had to be very careful on what is under seal, and not;

**Lydia Zinn, CSR #9223,  Official Reporter USDC  (415) 531-6587**

1  but Counsel is saying you got this part.

2       MS. PEEK:  I'm -- I did get a copy of the declaration.

3   What I'm not clear about is whether these are paragraphs --

4  whether these are the paragraphs marked "U" that were still

5  redacted when we received it.  Are these --

6       MR. THEIS:  My understanding is that plaintiff's

7  counsel has received the un -- the unclassified paragraphs of

8  the declaration that we submitted in support of our motion to

9  compel.

10      THE COURT:  Do you have it handy right now?

11      MR. THEIS:  I do.

12      THE COURT:  Could you show it to counsel?  Maybe it

13  will refresh her memory.

14      MS. PEEK:  Okay.

15  (Discussion off the record.)

16      MS. PEEK:  Okay.  Without getting into the content of

17  the paragraph --

18      THE COURT:  Did you receive it, or not?

19      MS. PEEK:  Yeah.  I believe that we did receive that.

20   Without getting into the content of the paragraphs, I would

21  comment that I think that defendants' privilege logs, which I

22  also won't get into the content of -- the under-seal privilege

23  logs -- but those privilege logs do provide some of the

24  information I think that they're saying is -- would be harmful

25  if it were released.  I had to -- I had to think about that.

1      With regard to Your Honor's comment about the *Roviaro* case,

2  if I could just reemphasize that point, Your Honor is correct.

3  I apologize if we didn't cite this in our papers, there's a

4  case called *In Re:  United States Department of Homeland*

5  *Security*, which is reported at 459 F. 3d. 565 at page 751.

6  That's a Fifth Circuit case from 2006; but that Court noted

7  that there's several types of information that would not be

8  protected under the law-enforcement privilege, including

9  documents that pertain to people who have been investigated in

10  the past, but are no longer under investigation; to people who

11  are merely suspected of a violation, without being part of an

12  ongoing criminal investigation; and, three, people who may have

13  violated only civil provisions.  And furthermore, the Court

14  noted that the privilege lapses after a reasonable period of

15  time.

16      And so plaintiff's position is that this is 2013.  This

17  Court -- this incident happen in 2005.

18          **THE COURT:**  I have a question.  And I used to be in

19  the Justice Department years ago, back in the '70s, in the SG's

20  Office.  And I have a vague memory of what was afoot then.  And

21  there are two branches of law-enforcement privilege.  One comes

22  from the FOIA.  So there's a whole body of cases under the

23  FOIA, and the exemption that applies to ongoing investigations.

24      And another -- but the real fountain of -- is *Roviaro*,

25  which is a United States Supreme Court decision that dealt

1  with -- I think it was in the '60s -- dealt with the ability of

2  the prosecutor not to turn over the name of an informant -- an

3  active informant.

4      So sometimes those get mixed together, and the government

5  will parade out FOIA cases, and claim that they are *Roviaro*

6  cases.  I don't know.  Have you done that here?

7          **MR. THEIS:**  Your Honor, I would have to confirm this,

8  but I -- so as I understand Your Honor's question, there's a

9  statutory basis for the law-enforcement privilege which is

10 within the FOIA, and that there's a more --

11         **THE COURT:**  No, no, no.  I'm not saying that there is.

12     I'm saying that for purposes of the FOIA, there is an

13 exemption; but that is limited, as far as I'm concerned, to the

14 FOIA, and it does not become a free-roving -- the government

15 can withhold in civil litigation whatever it wants to, based

16 on -- no.  That's limited to *Roviaro*, is what I'm trying to

17 tell you.

18     And sometimes, the government uses those FOIA cases

19 interchangeably to -- because it's much broader.  And the FOIA

20 thing is a broad exemption.

21         **MR. THEIS:**  Right.  Well, we would --

22         **THE COURT:**  Well, we're not in an FOIA case.  This is

23 not FOIA.

24         **MR. THEIS:**  Right.

25         **THE COURT:**  This is the -- *Rovario* doesn't apply.  As

1  far as I'm concerned, it doesn't apply, unless you give me some

2  decision that says that in civil litigation like this, the FOIA

3  decisions are binding authority.

4      I don't know.  Maybe you're not prepared on that question,

5  but --

6          **MR. THEIS:**  Well, I would submit generally,

7  Your Honor, that the principles are the same; but what we do

8  cite in our --

9          **THE COURT:**  No, they're not the same.  Congress has an

10  exemption that's meant to apply to -- anybody in the public can

11  submit a request for FOIA, and you get this exemption.  Okay.

12  That's good, but that is broad.

13      But when we're in litigation with other considerations, the

14  plaintiff has a need to know.  And you want to withhold that,

15  on the same ground that you would under the FOIA.  That doesn't

16  apply, at all.

17          **MR. THEIS:**  Your Honor, I would refer the Court to

18  *In Re:  Department of Investigation of the City of New York*

19  *versus the United States*.

20          **THE COURT:**  All right.  What's that cite?

21          **MR. THEIS:**  856 F. 2d. 481.

22          **THE COURT:**  856 F. 2d. --

23          **MR. THEIS:**  481.

24          **THE COURT:**  -- 481.  Okay.

25          **MR. THEIS:**  And this is from the Second Circuit, but

1   several Circuits have relied upon this for the understanding of

2   the common-law interpretation of the law-enforcement privilege.

3   And I would quote directly from this, which says that, "The

4   law-enforcement privilege has been recognized, in the absence

5   of a statutory foundation, and which is largely incorporated

6   into the various federal and state Freedom of Information

7   Acts."  And that's at pages 483 and 484.

8        That case continues.  And it says, "The purpose of this

9   privilege" -- and it's talking about this in the common-law

10  privilege; not the statutory privilege -- "is to prevent

11  disclosure of law-enforcement techniques and procedures, to

12  preserve the confidentiality of sources, to protect witnesses

13  and law-enforcement personnel, and to safeguard the privacy of

14  individuals involved in an investigation or otherwise prevent

15  interference with an investigation."

16      So that last portion there is what Your Honor is talking

17  about -- about an ongoing investigation -- but that's not the

18  full extent of the scope of the privilege.  It also includes

19  law-enforcement techniques and procedures.  And again, I would

20  point to the declarations that we've submitted *ex parte* and *in*

21  *camera*.  It also protects information about confidentiality of

22  sources.

23          THE COURT:  Here's what bothers me about your

24  position.

25      And on the criminal side of our docket, I have, all the

1  time, criminal cases in which law-enforcement procedures are

2  disclosed to the defense.  And, in fact, they get litigated

3  right in front of the jury, because the defense lawyer wants to

4  show that there was a violation of a procedure.

5       Normally, you're supposed -- you know, I'm making this part

6  up.  Normally, you're supposed to have a tape-recording device

7  that the informant cannot manipulate, and one that they can't

8  turn on and off.  That is, you know, one of the FBI rules.

9       But let's say that they violated that in a given case.  Is

10  it conceivably possible that in a criminal case, the government

11  could say the defense lawyer doesn't get to know that

12  information, on account of law-enforcement privilege?

13       No way.  No way that would work.

14       So I am pretty sure that if we went through all of the

15  practices and procedures that you're talking about, we would

16  find that someplace in the United States, they've all been

17  disclosed already to somebody.

18       And you -- now, unless you're prepared to tell me -- and

19  I'll put you under oath if you're going to say this.  Are you

20  prepared to tell me that never before have any of these been

21  disclosed, even in a criminal case?

22       I would be shocked.

23            MR. THEIS:  Your Honor, because I've been put under

24  oath, if I can confer with my co-counsel on this point --

25            THE COURT:  No.  Just tell me.  Did the things that

**Lydia Zinn, CSR #9223,  Official Reporter USDC  (415) 531-6587**

1   you're trying to keep secret here on this privilege -- have

2   they ever been disclosed anywhere in the United States on TV in

3   a criminal case or somewhere else?  Have they ever been

4   testified to by FBI agents, or Homeland Security agents?

5       I'm pretty sure that, to some extent, they have been.  And

6   I'd be amazed if you'd be willing to tell me, "No, they haven't

7   been," whether it's under oath, or not.

8           **MR. THEIS:**  I mean, I think I would answer it this

9   way, Your Honor.  We cannot say -- I can't say definitively, as

10  I stand here, that there have been elements of the government's

11  terrorist watchlisting policies and procedures that haven't

12  been testified to before Congress, or that haven't been in

13  information that we've already disclosed to opposing counsel.

14  That's absolutely the case.

15      I would be comfortable with this.  And if I -- I would --

16  with saying the following, though; that there are certain other

17  elements of the government's terrorist watchlisting program

18  which are included within the documents that we've submitted

19  which haven't been submitted, which are not public.  If they

20  have been -- that's to the best of my knowledge about that

21  question.

22          **THE COURT:**  Well, have you zeroed in on those in your

23  materials?

24      In other words, have you isolated what those are?

25      Seems to me that your objections are -- you have -- you

1  know, "This entire manual should not be made available," as

2  opposed to, "This particular paragraph -- no one in the world

3  knows this except 42 FBI agents."

4          **MR. THEIS:**  Right.

5          **THE COURT:**  Your submission's not that detailed.

6          **MR. THEIS:**  It's not, Your Honor.  That's correct.

7      And if it would be helpful to the Court on that particular

8  point, again, because of the sensitivity of this information,

9  we would be happy to submit --

10         **THE COURT:**  I'm not going to receive more information.

11         **MR. THEIS:**  All right.

12         **THE COURT:**  I've been bombarded.  I mean, we have

13 probably 30 or 40 submissions on -- that have been reviewed.  I

14 can just cannot.  It's collapsing under its own weight.

15 There's so much for me to keep straight.  I'm just going to

16 rule on the record that I've got.

17     All right.  It's time to bring this to a close.

18     What would the plaintiff like to say?

19         **MS. PEEK:**  Plaintiff's position is that defendants do

20 have the burden to designate which of those portions of the

21 documents they think haven't been disclosed.  If they haven't

22 done that, they haven't done that.

23     With regard to the distinction between FOIA cases and other

24 cases, it's correct to distinguish between those cases.  FOIA

25 litigates the public's interest in receiving something, which

1  is an important interest.  The public has a First Amendment

2  right to receive information.  We aim to protect that; but it's

3  not the same interest as the interest that we're litigating

4  here.

5      The one occasion when FOIA cases might be helpful is if the

6  Court in a FOIA case has ruled over a privilege objection that

7  the --

8          **THE COURT:**  Well, that would be -- *a fortiari*, it

9  wouldn't apply, then, in our context.  If the public has the

10 right to get it, then certainly you have the right to get it;

11 but I don't think that applies here.

12         **MS. PEEK:**  Correct.

13         **THE COURT:**  The government is not making frivolous

14 claims.  I think the government has thoughtful claims and

15 objections; but maybe my concern is that it's overbroad.  And I

16 that's the basic point.  I think some of what they would like

17 to keep privileged, you should have.  Not all of it.  Some of

18 it.

19     So it's not that clear-cut a case, where it's obvious that

20 it should be made.  You know, it's more nuanced.

21         **MS. PEEK:**  Your Honor, if I could just direct the

22 Court's attention to a FOIA case, which is *El Badrawi* --

23     It's E-l, space, capital B-a-d-r-a-w-i.

24     -- *versus Department of Homeland Security*.  It's

25 583 F. Supp. 2d. at page 311 to -12.  It's a District Court

**Lydia Zinn, CSR #9223,  Official Reporter USDC  (415) 531-6587**

1  case from Connecticut in 2008.  That actually is a FOIA case

2  that holds that the INA privilege the defendants are asserting

3  doesn't apply to visa-revocation records.  And so, as to the --

4       **THE COURT:**  Is that in your brief?

5       **MS. PEEK:**  It is.

6  So, as to the bulk of those documents for which they're

7  asserting privilege, that privilege does not apply.

8       **THE COURT:**  Now I want to change subjects.

9  First, I was going to ask you about case management, but is

10  there anything more on any pending motion that anyone wants to

11  bring up?

12       **MR. THEIS:**  Your Honor, the only final thing I would

13  bring up is Your Honor requested certain number of the

14  documents from the FBI TSE log for *ex parte* and *in camera*

15  review, but you did not request all of them.  And we have all

16  of them today here in the courtroom.  And those documents,

17  again, go to the law-enforcement-sensitive nature of the

18  policies and procedures that have not been submitted to the

19  Court.  A previous Order of this Court requested that we bring

20  all materials to today's hearing.

21  If it would be appropriate, we would submit that

22  information for the Court's *ex parte* review, to see -- for the

23  Court to further review, to see the law-enforcement nature of

24  those documents.

25       **THE COURT:**  Where is the box?  How big a box is it?

1          MR. THEIS:  It's one binder with just about five

2    inches.  I'm sorry, Your Honor.

3          MS. FAREL:  They're very interesting.

4          MR. THEIS:  There are three to four binders.  I think

5    it's four.

6          THE COURT:  Can I see how big it is?

7          MR. THEIS:  Yeah.

8          THE COURT:  And you're saying this is material I've

9    never seen before -- none of it -- or have I seen some of it?

10          MS. FAREL:  I believe it's only printed on one side,

11    Your Honor.

12          THE COURT:  What is the document?

13          MR. THEIS:  So these are -- so the FBI TSA privilege

14    log has 72 documents on it.

15      The Court, in an Order from, I believe, a month ago, asked

16    for approximately half of those documents to be submitted

17    *ex parte, in camera*.  We submitted those electronically, I

18    think, about shortly thereafter; but the remaining half have

19    not been submitted to the Court; but there are other documents

20    that are also policies and procedures.  And we believe that if

21    the Court is going to overrule the LES nature of those

22    documents, we would submit those to the Court for review, to

23    confirm that the LES nature of them could be overruled.

24          THE COURT:  Well, do this.  Give them to the clerk.

25      This is not classified?

```
 1          MR. THEIS:  That's correct.

 2          THE COURT:  This is SSI -- or LES, is what you say?

 3          MR. THEIS:  That's correct.

 4          THE COURT:  It's LES.  All right.  Give those

 5   documents to my clerk.  And I will have to consult with my law

 6   clerk before I can tell you what I'm going to do with these.  I

 7   don't know the answer to that, but you can leave them behind.

 8          MR. THEIS:  Okay.

 9          THE COURT:  And then if I don't need them, I'm just

10   going to give them back to you.

11          MR. THEIS:  Okay.

12          THE COURT:  You're not here; are you?  You're in

13   Washington?

14          MR. THEIS:  We're in Washington, but we can coördinate

15   with the U.S. Attorney's Office here.

16          THE COURT:  Who in the U.S. Attorney's Office is

17   helping you?

18          MR. THEIS:  Alex Tse.

19          THE COURT:  He's not here today?

20          MR. THEIS:  I don't believe so.

21          THE COURT:  All right.  Case management.  Now, we have

22   a case-management Order.  I've got it right here.

23       But, Ms. Peek, you said you didn't like it.  Something was

24   wrong with my case-management Order.

25          MS. PEEK:  I have concerns, Your Honor.
```

1          **THE COURT:**  What's your concern?

2          **MS. PEEK:**  My concern is that discovery is moving more

3   slowly -- even more slowly than expected, and that if there

4   continue to be delays, that the discovery cutoff will be too

5   early.

6          **THE COURT:**  Yes, that could happen, but I'm not going

7   to change it yet.  It's still July 31.  This is April.  Then

8   there's May.  Then there's June.  And then there's July.

9   That's still a lot of time for you to get a lot done.

10         Now, if you come to me in, let's say, early part of July,

11  and say, "The government has stonewalled.  The government has

12  done this.  The government has frustrated us," and so forth,

13  and probably -- and if I accept that, then I will give you more

14  time, but you have to be diligent.

15         You know, the Court of Appeals complained a bit about how

16  old this case was.

17         And, you know, I think it's the oldest case on my docket.

18  It's an '06 case.  And I don't like having an old case on my

19  docket, either.  So I do want to try my best to move it along,

20  and get this brought to a close well before the end of this

21  year.  So I don't want to panic, and give up on my

22  case-management schedule.

23         But the government must -- once you see the rulings that I

24  have made, I suppose -- I don't know.  Is it even appealable at

25  this stage?  Can the government take an appeal?  That would

1  definitely throw things off, but can –– and I might –– if you

2  want to take an appeal, you know, God bless you.  Go ahead and

3  do it, but is this an appeal –– if I order you to produce some

4  materials, and you think, let's say, the law–enforcement

5  privilege applies, and you want to have the Court of Appeals

6  review that, can you –– what is it?  A writ of mandate?  What

7  would be the procedure?

8         MR. FREEBORNE:  Mandamus would be one option,

9  Your Honor.  Yes.

10    It also could be a collateral order, but obviously today, I

11 can't speak to that.

12        THE COURT:  All right.  Well, anyway, I'm going to

13 look on the bright side, and hope that we can coöperate in

14 getting this case done this year.  So let's –– I'm asking the

15 government to coöperate once you see my rulings.

16    Now I'm going to give you two depositions.  After you take

17 those depositions, if there's enough time, and you do those

18 pronto, and I think you deserve more depositions, possibly, I

19 will give you more; but I think two ought to be enough.  You

20 asked for, like, four or five; but it seems like two ought to

21 be enough.

22        MS. PEEK:  Your Honor, could I ask the reasons for

23 giving us only two, instead of the four?

24        THE COURT:  I can't see much need.  I think the

25 documents tell the story.

1        Now, if the government is going to say you need a witness

2   to get these documents in evidence, I'll give you 20

3   depositions.

4        Are you going to say that?

5            MR. FREEBORNE:  Your Honor, we'll do our best to

6   stipulate to the admissibility, if we can.

7            THE COURT:  All right.  I think these ought to all

8   sail into evidence, but you shouldn't be taking depositions

9   just to authenticate records; but if you want to get testimony

10  that goes along -- substantive testimony -- possibly, that

11  would be okay.

12       All right.  I'll give you three.  I'll give you three, but

13  honestly, I don't see how you could possibly need more than

14  three depositions.

15           MR. THEIS:  Your Honor, we've notified plaintiff's

16  counsel, as well, that we intend to take the deposition of

17  plaintiff on that --

18           THE COURT:  How are you going do that?

19           MR. THEIS:  Well, we've asked plaintiff's counsel to

20  coördinate how to do that.  We would travel abroad, if that

21  seemed to be the appropriate way to do this; to go to Malaysia

22  or go to a mutual location.

23           THE COURT:  Make sure it's a country where it's legal

24  to do a deposition.

25           MR. THEIS:  We will.

1      **THE COURT:**  You might have to do it in the embassy.

2    Even where it's illegal to do a deposition, if there's an

3    American Embassy, it's usually lawful to do it there.  I'll

4    leave that problem up to you, but you ought to get going on it.

5    If July 31 comes, and you haven't done it, too bad for you.

6       Are you going to coöperate on that?

7      **MS. PEEK:**  We will, Your Honor.

8      **THE COURT:**  Now, if she can't get back into the

9    country for a trial, which is the way it looks -- I don't

10   know -- maybe they -- that's a separate problem; but that

11   doesn't mean the trial can't go forward.  It just means she

12   won't be able to be here as a witness.

13      So maybe you ought to ask at that deposition.  The

14   plaintiff ought to ask the questions you have, so that her

15   testimony can be read in at trial.

16      **MS. PEEK:**  We'll make appropriate plans, Your Honor.

17      **THE COURT:**  Anything more?

18      **MR. THEIS:**  Nothing further, Your Honor.

19      **MS. PEEK:**  Nothing further.

20      **THE COURT:**  All right.  Stand by for more orders to

21   come flowing out within the next few days.

22      **MS. FAREL:**  Thank you.

23      **MS. PEEK:**  Thank you, Your Honor.

24   (At 9:47 a.m. the proceedings were adjourned.)

25

1   I certify that the foregoing is a correct transcript from the

2   record of proceedings in the above-entitled matter.

3

4   _____   April 22, 2013
    Signature of Court Reporter/Transcriber    Date
5   Lydia Zinn

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25