IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAHINAH IBRAHIM,

    Plaintiff,

  v.

DEPARTMENT OF HOMELAND SECURITY, et al.,

    Defendants.

No. C 06-00545 WHA

**OMNIBUS ORDER ON PENDING MOTIONS**

## INTRODUCTION

In this no-fly list challenge, a pair of April 19 orders granted in part and denied in part plaintiff's motion to compel discovery of government information withheld under the state secrets privilege and various other privileges (Dkt. Nos. 462, 464 (under seal)). The larger objective of the orders was to provide discovery guidance to the parties to the fullest extent possible given the voluminous nature of the parties' disputes and the privileges asserted. Much of the discovery requested by plaintiff was ordered to be produced. Nevertheless, some of the government's assertions of privilege were upheld. The factual bases for upholding the privileges could not be disclosed on the public docket in all instances. For some documents involving classified information, the complete reasoning for upholding the assertions of the state secrets privilege could not be disclosed to plaintiff's counsel.

In the last two months, plaintiff has filed an excessive number of motions (including discovery motions) requesting reconsideration, compulsion of additional discovery, and other

forms of relief. The total comes out to fourteen motions. This omnibus order addresses seven of the ten motions that remain pending. Because the orders herein resolve all issues that have been noticed for a hearing, the September 12 hearing is **VACATED**.

The government has not yet been afforded the opportunity to respond to plaintiff's three most recent discovery motions (Dkt. Nos. 517–18, 521). The parties shall meet and confer regarding these motions in light of the holdings in this order. After the parties have met and conferred, the government may then respond to plaintiff's motions by **AUGUST 28 AT NOON**. No replies, please.

**STATEMENT**

The underlying facts remain as they were when a previous order denied defendants' third motion to dismiss and motion to stay discovery (Dkt. No. 399). This order will briefly summarize the background of this action as well as the latest procedural developments.

Plaintiff Rahinah Ibrahim is a citizen of Malaysia. She studied under a student visa at Stanford University for four years starting in 2001. In early 2005, she attempted to fly from the San Francisco airport to Malaysia, but was detained for two hours because airport authorities believed she was on the no-fly list. She was later informed by an unidentified person that she was no longer on the no-fly list, and so she returned to the airport the next day to board a new flight. Plaintiff was again told that she was on the no-fly list, but she was inexplicably allowed to board her flight anyway. She then traveled to Malaysia. Her United States visa was subsequently revoked under a provision of the Immigration and Nationality Act pertaining to terrorist activity and suspected terrorist activities. The specific factual predicate for the revocation, however, was not disclosed to plaintiff. She has never been permitted to return to the United States.

In early 2005, plaintiff had requested that the TSA clear her name. A year later (after plaintiff filed suit), the TSA responded with a letter that did not state whether her name had been removed from the no-fly list.

In January 2006, plaintiff filed suit against multiple state and federal agencies, alleging Section 1983 claims, state law tort claims, and several constitutional claims based on the

inclusion of her name on government terrorist watch lists. The suit alleged that her inability to return to the United States limited her professional, academic, and personal activities. If she were permitted to do so, she wished to travel to Stanford on an annual basis. Plaintiff also collaborated with Stanford professors to publish papers, but since 2005 has done so via video conferencing. She also had personal friends and professional contacts at Stanford.

This action has gone through three separate motions to dismiss and two appeals. On the first appeal, our court of appeals reversed in part a 2006 district court order that had dismissed the federal defendants. *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1254–56 (9th Cir. 2008). Then, a district court order in July 2009 held that while plaintiff had standing to pursue *past* violations, the fact that she left the United States voluntarily extinguished her standing to pursue claims for *prospective* APA and constitutional relief (Dkt. No. 197). Our court of appeals, while affirming in part, reversed (over a dissent) as to prospective standing by holding that an alien voluntarily abroad could litigate federal constitutional claims in district court as long as the alien had a substantial connection to the United States. *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983 (9th Cir. 2012). Plaintiff has such a connection, our court of appeals held, because of her time at Stanford, her continuing collaboration with professors in the United States, her membership in several professional organizations located in the United States, the multiple invitations to return she has received, and her network of close friends in the United States. *Id.* at 993–94.

On remand, the government moved to dismiss again. It was denied. Then the parties became embroiled in discovery disputes involving the state secrets privilege and other privileges. Defendants invoked these privileges as a basis for withholding certain classified and otherwise sensitive government information from plaintiff and her counsel. A pair of orders dated April 19 granted in part and denied in part plaintiff's motion to compel production (Dkt. Nos. 462, 464 (under seal)). Resolving these disputes required individual review by the Court of all of the documents sought by plaintiff. Most of this review was conducted *ex parte* and *in camera* due to the privileged and classified nature of the documents. The state secrets privilege was upheld as to nearly all the classified documents in question. The government's assertion of other

3

privileges regarding non-classified documents was overruled as to the majority of the remaining documents. Unfortunately, the nature of the privileges asserted by the government, once upheld, prevented the undersigned judge from disclosing the complete factual underpinnings for these orders with plaintiff's counsel (since they do not have a security clearance). (The *ex parte* and under seal order is of record for review by the court of appeals).

Plaintiff next sought to depose Attorney General Eric H. Holder, Jr. and Director of National Intelligence James R. Clapper because both individuals invoked the state secrets privilege in this action. An order dated May 23 granted defendants' motion to quash the depositions because plaintiff failed to demonstrate that this action involved the extraordinary circumstances necessary to justify deposing the heads of United States government agencies (Dkt. No. 481).

Plaintiff has filed two motions for reconsideration of the May 23 order based on recently-publicized information regarding the alleged mass gathering of phone, email, and other communications records by the government in the PRISM program. In addition to these motions for reconsideration, plaintiff has also filed *twelve* other motions since the May 23 order seeking various forms of relief. This order addresses seven of these ten motions that remain pending. These seven pending motions primarily concern requests to compel further discovery, a request for leave to file a third amended complaint, and a request to continue trial.

To the extent stated below, the motions are **GRANTED IN PART**, **DENIED IN PART**, and **HELD IN ABEYANCE**. The September 12 hearing is **VACATED**.

This order has been drafted so as to permit public filing and access.

## ANALYSIS

**1. PLAINTIFF'S MOTIONS FOR RECONSIDERATION REGARDING ALLEGED GOVERNMENT COLLECTION OF COMMUNICATIONS RECORDS (DKT. NOS. 485–86).**

Plaintiff has filed two motions for leave to file motions for reconsideration. Although styled as separate endeavors, they have a common object: to escape the Court's April 19 ruling upholding the government's assertion of the state secrets privilege. Both motions are **DENIED**.

A motion for reconsideration is "an extraordinary remedy, to be used sparingly." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). A motion for reconsideration will not be granted "unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Ibid*. Under Civil Local Rule 7-9, the moving party must specifically show:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

The first motion is based upon the recent revelations regarding the NSA's PRISM program. Plaintiff asserts that the government's assertion of state secrets privilege previously invoked *may* have been based upon (now) declassified activities and documents relating to PRISM. Thus, plaintiff argues, the April 19 order must be reconsidered (Dkt. No. 485 at 1). Similarly, the second motion raises Director Clapper's allegedly untruthful testimony to Congress regarding the NSA's collection of data on American citizens. The motion states that Director Clapper's testimony raises "serious doubt regarding his credibility that the Court must consider" (Dkt. No. 486 at 1). Because Director Clapper submitted sworn statements in support of the government's privilege invocations, plaintiff asserts that Director Clapper's alleged misrepresentations to Congress require reconsideration of the May 23 order quashing his deposition.

The logic behind both of plaintiff's motions for reconsideration is faulty. It is not necessary to discuss whether or not the government's investigation of Ms. Ibrahim in any way involved the PRISM program. The public revelation that a classified program exists would not render operations within the scope of that program unclassified (if any such operations existed).

1  Plaintiff's complaint about Director Clapper's public statements regarding the PRISM
2  program is also unavailing. Plaintiff is reminded that the Court has reviewed the classified
3  documents withheld by the government. Regardless of whether Director Clapper's public
4  statements regarding the PRISM program have any bearing on the declarations he submitted in
5  support of the state secrets privilege, the Court upheld the privilege on the basis of its
6  independent review. There is thus no basis to permit plaintiff's counsel to "cross-examine
7  Director Clapper to probe the veracity of his statements" regarding classified materials.
8  Moreover, plaintiff's counsel could not "probe" Director Clapper's statements regarding the
9  classified nature of the documents without invading the state secrets privilege.

10  This order recognizes the inconsistent ways in which the Executive Branch treats
11  classified information. On the one hand, it draws a shroud of secrecy around most items while,
12  on the other, publicizing highly-classified information when it suits it. For example, on the
13  second of this month executive officials disclosed to the media that our surveillance had
14  intercepted specific electronic communications among senior Al Qaeda leaders regarding
15  potential imminent terrorist attacks. Media reports over the following days revealed that the
16  intercepted communication was a wire-tapped conference call and further revealed the names of
17  the Al Qaeda leaders participating in the call. Specific phrases used in the call were publicized.
18  In other words, the Executive Branch publicly disclosed highly-sensitive information regarding
19  (i) the method of interception, (ii) the participants, and (iii) the contents of the communication.
20  Surely this had all been classified. Nonetheless, it was publicized. Of course, our government
21  was right to close embassies and to restrict travel and to warn America and her allies that a threat
22  seemed imminent, but was it necessary to reveal the specifics of the wire-tapped call and thus let
23  our enemies know our capabilities? No doubt, this revelation was thought to be in the public
24  interest but a cynic might ask if it was done to tamp down criticism over other revelations about
25  extensive government surveillance.

26  In its declarations in this action in support of the state secrets privilege, the government
27  has asserted the privilege over information pertaining to "subject identification," "reasons for

6

investigation and results," and sources and methods" used in counterterrorism operations (Dkt. No. 472 ¶ 6). Director of National Intelligence James R. Clapper declared (Dkt. No. 471 ¶ 14):

> If the United States confirms that it is conducting a particular intelligence activity, that it is gathering intelligence from a particular source, or that it has gathered information on a particular person, such activities would be compromised and foreign adversaries and terrorist organizations could use that information to avoid detection. Even confirming that a certain intelligence activity or relationship does not exist, either in general or with respect to specific targets or channels, would harm national security because alerting our adversaries to channels or individuals that are not under surveillance could likewise help them avoid detection.

Nothing in the classified information over which the government has asserted the state secrets privilege in this action approaches, in this judge's view, the sensitivity of the information recently released by the Executive Branch to the mass media regarding the Al Qaeda communications. Put differently, it is hard to understand why Al Qaeda should be allowed to learn details of our surveillance of Al Qaeda, as released by the White House, but plaintiff should not be allowed to learn the more pedestrian information withheld from her under the classification stamp. Overuse of secrecy by the government is a longstanding and serious problem. This order recognizes the problem.

The fact remains, however, that a district judge is obligated to follow the law. As it comes down to the district court, the law insists that classified documents remain secret so long as there is a "reasonable danger that [disclosure] . . . will expose . . . matters which, in the interest of national security, should not be disclosed" — even if the Executive Branch has itself unveiled other classified information of equal or greater severity. *See Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1081 (9th Cir. 2010) (quoting *United States v. Reynolds*, 345 U.S. 1, 10 (1953)). That is, the Executive Branch must have the flexibility to select which, if any information, it will unmask. It may seem unfair to plaintiffs like Ms. Ibrahim but it is, for better or worse, our law and we must trust that our Executive Branch acts in the best interest of national security. The undersigned judge has done everything under his power reasonably to release to Ms. Ibrahim all materials to which the law entitles her.

The motions for reconsideration are **DENIED**.

7

**2. PLAINTIFF'S MOTIONS REGARDING THE GOVERNMENT'S RULE 30(B)(6) DEPONENTS (DKT. NOS. 491–92).**

Plaintiff has filed two motions regarding plaintiff's depositions of the government's FBI and Department of State Rule 30(b)(6) deponents. In both, plaintiff objects that the government improperly instructed its witnesses not to respond to numerous deposition questions on the basis of various privileges, including the state secrets privilege. Plaintiff argues that the government failed to lay a proper foundation for these privileges on the record and that the assertions of privilege "disregarded or misinterpreted the Court's prior rulings regarding these privileges" (Dkt. Nos. 491 at 1, 492 at 1).

Plaintiff's objections here are largely without merit. The April 19 order granting plaintiff's motion to compel these depositions stated (Dkt. No. 461 at 15):

> Having reviewed the documents, the Court is of the view that depositions will be of less value than the documents themselves and that depositions are likely to degenerate into attempts into inquire into privileged and classified matter. Nonetheless, a total of three Rule 30(b)(6) depositions will be allowed and counsel for plaintiff are admonished to avoid privileged and classified material.

Despite the Court's admonition, plaintiff's counsel plainly attempted during these depositions to elicit information that is covered by the government's assertions of privilege. For example, the government's assertion of the state secrets privilege included the issues of whether or not plaintiff has ever been the subject of a FBI or other domestic or international counterterrorism investigation (Dkt. No. 471 at ¶¶ 16–17). Nevertheless, plaintiff's counsel asked the Department of State Rule 30(b)(6) deponent whether plaintiff has ever "been associated with terrorist activity" or been "suspected" of engaging in terrorist activity (Dkt. No. 491-1 at 4 (under seal)). Although counsel's questions were not *per se* improper, here they could not be answered meaningfully without disclosing whether or not plaintiff has ever been the subject of a counterterrorism investigation.

Plaintiff also objects to government instructions to its deponents that were clearly proper in light of the April 19 orders. For example, plaintiff's motion to compel disclosure of post-2009 documents describing updated terrorist watchlist procedures was denied based on the law enforcement privilege (Dkt. No. 461 at 14). In response to questions from plaintiff's counsel

8

regarding counterterrorism and TSDB procedures, the government repeatedly instructed its FBI Rule 30(b)(6) deponent not to discuss post-2009 procedures (Dkt. No. 492 at 1 (under seal)). The basis of plaintiff's objections to this instruction is a mystery to the Court.

Because plaintiff has objected to 161 responses and instructions by counsel from the two Rule 30(b)(6) depositions, it is not practical to address all of the objections individually. It suffices to state that the *vast majority* of the questions to which plaintiff's counsel did not receive satisfactory answers indeed called for privileged information. The difficulty experienced by plaintiff's counsel in eliciting useful answers from the government's Rule 30(b)(6) deponents is unfortunate but expected given the nature of the privileges asserted.

There were a handful of questions in these depositions implicating the law enforcement privilege for which the assertion of that privilege is less certain. Some or all of these questions may implicate pre-2009 information of the type compelled by the August 19 orders. In many instances, however, the government objected both on the basis of the law enforcement privilege and the state secrets privilege. Plaintiff nevertheless will be permitted another shot at getting answers to the following questions: docket number 491-1 (under seal) question numbers 50, 60–61, 65–68, 74; and docket number 492-1 (under seal) question numbers 39–45. Given the small number of topics at issue, plaintiff's counsel may convert these questions (and only these questions) into interrogatories. Plaintiff may serve the interrogatories on the government by **SEPTEMBER 3 AT NOON**. The government shall serve more complete responses under oath by **SEPTEMBER 9 AT NOON**. To this limited extent only, plaintiff's motions to compel additional deposition testimony are **GRANTED IN PART**.

For the avoidance of doubt, this order in no way disturbs the April 19 rulings regarding the government's assertions of privilege.

**3. PLAINTIFF'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT (DKT. NO. 499).**

Plaintiff moves for leave to file a third amended complaint in order to make the following amendments: (1) to add FBI Special Agent Kelley as an individual defendant; (2) to challenge the alleged collection of information regarding plaintiff in the course of the recently-publicized PRISM program; and (3) to modify the prayer for relief to include a declaration that "it would

9

not harm national security" for plaintiff to be informed of her watchlist status, with a corresponding injunction directing the government to inform plaintiff of her watchlist status.

Plaintiff filed her motion for leave to amend prior to the July 31 deadline to so move. Thus, the motion is governed by Rule 15. Under Rule 15(a), "leave to amend shall be freely given." Discretion may be exercised to deny leave to amend, however, due to "undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party and futility of amendment." *Carvalho v. Equifax Info. Servs. LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (citations and alterations omitted).

This order will now address each proposed amendment in turn.

### A. Agent Kelley.

Plaintiff requests leave to add a *Bivens* claim naming Agent Kelley as an individual defendant. This request is **DENIED**.

Some of the factual allegations regarding Agent Kelley — though known to plaintiff's counsel — are covered by the government's assertions of privilege and thus cannot be revealed on the public docket. It suffices to explain that from December 2004 to May 2013, plaintiff believed that Agent Kelley was one of the FBI agents who interrogated her eight days prior to her scheduled departure from the United States on January 2, 2005. She believed that his role in this affair was limited to relaying what he learned from the interrogation to the government. Based on information produced by the government starting in May 2013, plaintiff now believes that Agent Kelley's role was far more substantial. In general terms, plaintiff contends that Agent Kelley shares responsibility for her inability to return to the United States because of specific acts that go well beyond relaying information from the interrogation. Plaintiff further alleges that Agent Kelley intentionally targeted her for "specific adverse action" on the basis of her identity as a Muslim and a Malaysian.

The government responds that plaintiff has known sufficient facts relating to her proposed claim against Agent Kelley for years to have pleaded this claim at the outset. Although plaintiff did not know that Agent Kelley was allegedly involved in the "specific adverse action,"

10

1   she could have asserted the claim against a John Doe defendant. This order agrees with the
2   government.
3   　　　　Plaintiff contends that at the time she filed her complaint, "it was unknown to plaintiff
4   whether she was nominated to any watchlist and if so whether she was nominated by one or
5   more persons, an automated computer system, or by some other process. Plaintiff therefore did
6   not have adequate information to identify Kelley or any other individual as a fictitious
7   defendant" (Dkt. No. 522 at 9 (public version)). Based on her experience at the San Francisco
8   Airport in 2005, however, plaintiff believed that a "specific adverse action" relating to
9   government watchlists had been taken against her. She could have pleaded at the time on
10  information and belief that such action was taken and that it was taken by a John Doe defendant.
11  The sufficiency of the *Bivens* claim could have subsequently been challenged and evaluated in
12  2006. Seven years later, it is too late to amend with this claim.
13  　　　　The government objects that it would be prejudiced by the addition of a *Bivens* claim
14  against Agent Kelley. This is because plaintiff's motion for leave to amend, although timely
15  under the case management schedule, nevertheless was filed just prior to the July 31 close of fact
16  discovery. The government also asserts that it would be prejudiced because the *Bivens* claim
17  would allow the government to assert new defenses not available to the federal defendants sued
18  in their official capacity. Allowing the amendment would necessarily delay resolution of this
19  now seven-year-old action.
20  　　　　This order agrees. The proposed amendment would cause substantial delay and seven
21  years is far too long for an action to remain pending. Plaintiff argues that the delay is due in
22  large part to the government's maneuvering. This is not accurate — the bulk of the delay is the
23  result of the time necessary to resolve plaintiff's appeals.
24  　　　　Plaintiff's motion for leave to amend is **DENIED**.
25  　　　　　　　　**B.**　　**Government Surveillance.**
26  　　　　Plaintiff, apparently as a result of reading the Washington Post and other mass media
27  sources, believes that she may have been a target of formerly-secret government surveillance
28  programs such as PRISM. Plaintiff "seeks leave to challenge the unconstitutional collection of

11

1 her information as it relates to this case" under the First and Fourth Amendments. This request
2 is **DENIED**.

3      *First*, the amendment would be futile because plaintiff's proposed claims are entirely
4 speculative. Plaintiff alleges on information and belief that the defendants "employ
5 unconstitutional surveillance programs that were specifically used in this case to intercept
6 Ibrahim's communications" (Proposed Third Amd. Compl. ¶ 77). Plaintiff alleges no facts,
7 however, that permit a reasonable inference that her communications were actually intercepted.
8 Instead, plaintiff argues (in her reply brief) that she requested in discovery all communications
9 regarding plaintiff collected by any government agency (Dkt. No. 522 at 5 (under seal)). The
10 government properly objected to these requests on several grounds, including that responding to
11 the request would tend to reveal classified information, and that all responsive documents
12 relating to plaintiff had already been logged or produced. Plaintiff contends that the
13 government's failure to specifically deny that plaintiff's communications were intercepted as
14 part of secret surveillance program "confirm[s] that such communications have been collected in
15 violation of plaintiff's constitutional rights." No so. The inference is at best *highly* speculative.
16 It does not constitute an adequate factual basis for the proposed constitutional claims.

17      *Second*, assuming without deciding that plaintiff — a non-citizen residing abroad —
18 could challenge the government's collection of information about her, that challenge would not
19 belong in this action. There is no nexus between the hypothetical collection of information about
20 plaintiff and her constitutional claims arising out of the events in the San Francisco airport in
21 2005. Even the basic factual predicates are highly attenuated. Allowing plaintiff to make the
22 proposed amendment would only result in a side show that would further delay this action. In
23 this regard, the motion for leave to amend is **DENIED**.

24            **C.**     **Prayer for Relief.**

25      Plaintiff seeks to amend her prayer for relief to include (1) a declaration that informing
26 plaintiff of her government watchlist status would not pose a threat to national security, and (2)
27 an injunction ordering the government to actually inform her of her watchlist status. This
28 request is **DENIED** as unnecessary.

If the claims for relief are eventually proven, the scope of relief will be fashioned by the Court based on the record and circumstances at the time. Possibly, in that event, some version of these two items would be indicated relief. Possibly not. The Court will leave the door open to the possibility if plaintiff prevails but even if plaintiff prevails, she should remember that these two items of relief may possibly be denied. The scope of relief is for a future day.

### 4. MOTION TO CONTINUE (DKT. NOS. 506, 509).

On the basis of discovery information produced by the government in May, plaintiff's proposed amendments discussed above, and the government's refusal to provide certain information on the basis of privilege, plaintiff requests that all case deadlines be vacated and a new case management order be issued. Despite the styling of the motion, it is clear that plaintiff's primary objective is to reopen discovery. This request is **GRANTED IN PART**.

Because plaintiff seeks a modification of the scheduling order, the motion is governed under Rule 16. Rule 16(b)(4) stipulates that after the amendment deadline passes, a scheduling order may be modified only for good cause. Our court of appeals has held:

> The pretrial schedule may be modified if it cannot reasonably be met despite the diligence of the party seeking the extension. If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted.

*Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (internal citations omitted).

As explained above, plaintiff's motion for leave to amend is denied. And, most of her current objections to the government's performance during discovery are unavailing. This order accordingly finds that good cause to reopen discovery has not been shown.

Nevertheless, plaintiff's motion also includes specific requests for leave to take the deposition of Agent Kelley and several other individuals. The April 19 order on plaintiff's motion to compel depositions stated "the Court is of the view that depositions will be of less value than the documents themselves and that depositions are likely to degenerate into attempts into inquire into privileged and classified matter" (Dkt. No. 461 at 15). For this reason, the order limited plaintiff to a total of three depositions. The order also admonished plaintiffs to avoid intruding on the government privileges upheld in the order (and admonished the government to

13

cooperate in disclosing non-privileged information). A June 4 order reiterated the "view that depositions will be of extremely limited value in this action" and confirmed the three-deposition limit (Dkt. No. 484 at 1).

As noted above, plaintiff's counsel did not heed the admonition to avoid privileged subject matter in the three allowed depositions, with predictable results. Yet, plaintiff has established that Ageny Kelley may have played a significant role in this affair, and that she did not fully appreciate his individual significance until May 2013. Plaintiff's request for leave to depose Agent Kelley is **GRANTED**. It will be a one-day deposition and plaintiff may not serve document subpoenas. The deposition must be completed by **SEPTEMBER 20**. All of plaintiff's other deposition requests are **DENIED**. Plaintiff's counsel is once again admonished to avoid privileged and classified material.

Plaintiff further requests leave to conduct discovery into alleged secret government surveillance of plaintiff. As explained above, plaintiff's motion to amend on this ground is denied. For the same reasons, plaintiff's request for discovery into the same subject is **DENIED**.

Plaintiff also requests leave to conduct further discovery into facts regarding plaintiff's watchlist status that the government has allegedly withheld as privileged. For the reasons discussed at length in the April 19 orders, this request is also **DENIED**.

To foregoing extent, plaintiff's motion to continue is **GRANTED IN PART**.

### 5. PLAINTIFF'S AUGUST 2 DISCOVERY MOTION (DKT. NO. 515).

Plaintiff's August 2 letter contains numerous distinct requests for relief. Four categories of these requests merit discussion herein. Each will be addressed in turn. For the avoidance of doubt, any request in the August 2 letter not expressly addressed below is **DENIED**.

#### A. Motion to Reconsider The April 19 Order Denying Access to Post-2009 Information.

The April 19 orders compelled the government to produce the majority of the non-classified documents sought by plaintiff's February 2013 motion to compel (the state secrets privilege was upheld as to nearly all of the classified documents at issue). In most instances, the orders found that plaintiff's need for the non-classified information outweighed the government's assertions of privilege. For certain documents subject to the law enforcement

14

privilege, however, the balance of interests tipped in the government's favor (Dkt. No. 461 at 14):

> A small subset of the documents withheld by the government describe updated terrorist screening procedures and related database issues. These documents appear to date from 2009 onward. Although they remain relevant to plaintiff's claims, the calculus is different here. These documents do not mention plaintiff individually, and they do not specifically identify procedures that were in place around the time that plaintiff filed suit. Thus, their relevance to plaintiff's claims is diminished. Because of their more recent vintage, they present a greater risk of harmful disclosure, and the government's interests are magnified. For those documents in this category over which the government has specifically asserted the LES privilege, plaintiff's motion to compel is **DENIED**.

Plaintiff requests leave to file a motion for reconsideration of this holding based on information and documents produced by the government since May 2013. This motion is **DENIED**. The potential relevance of post-2009 documents is not new. To paint with a broad brush (and avoid privileged information that would remove this order from public view), plaintiff's interest in post-2009 documents stems from the fact that plaintiff has been unsuccessful in securing a visa permitting her to return to the United States. This fact was not lost on the Court at the time of plaintiff's February 2013 motion to compel and there is thus no basis for reconsideration.

It is not clear from the parties' submissions whether the government is withholding *unclassified*, post-2009 documents evincing terrorist screening procedures that pertain *expressly* to plaintiff. *If the government is withholding such documents they must be produced to plaintiff's counsel*. The government may, however, redact portions of the documents that are entirely unrelated to plaintiff and that show recent terrorist screening procedures — so long as the portions pertaining to plaintiff and the surrounding context are preserved. The deadline for production and service of these documents and any accompanying privilege log explaining redactions is **SEPTEMBER 6**.

### B.     Documents Pre-Dating 2005.

The government has refused to produce responsive documents dated prior to the 2005 San Francisco airport incident. The government argues that such documents are of "negligible

1  relevance" to plaintiff's claims and that plaintiff has unduly delayed in seeking to compel this
2  discovery. These contentions are without merit. The April 19 orders addressed this issue: "[t]he
3  facts resulting in plaintiff's name being placed on the No-Fly List — and her resulting detention
4  at the airport in 2005 — are at the heart of this case. Plaintiff's requests for prospective
5  injunctive relief lack meaning without this factual predicate" (Dkt. No. 461 at 11).

6  This remains true today. The government should have produced responsive, unclassified,
7  pre-2005 documents after the April 19 orders issued. Plaintiff's motion to compel disclosure of
8  these documents is accordingly **GRANTED**.

9  To address the government's complaint that producing pre-2005 documents would be
10 burdensome, the government may observe the following time frames: (1) for documents
11 pertaining expressly to plaintiff, the starting date shall be January 1, 2000; (2) for all other
12 responsive pre-2005 documents, the starting date shall be January 1, 2004.
13 Any responsive documents not produced (whether or not classified) must be logged. The
14 deadline for production and service of these documents and any accompanying privilege log is
15 **SEPTEMBER 6**.

### C. The Government's O1 and O2 Redactions

17 The government has redacted certain previously-produced documents on the basis of
18 privacy act information ("O1" redactions), and to remove unclassified material that, in context or
19 in the aggregate, could reveal classified information ("O2" redactions). Regarding the former,
20 the April 19 orders permitted the government to redact information relating to private individuals
21 who are unrelated to plaintiff and her claims (Dkt. No. 461 at 9). This order was based on the
22 Court's own review of the documents and the substantial quantity of information pertaining to
23 third parties. The government admits, however, that it has also redacted information relating to
24 plaintiff's spouse and family members. These redactions are outside the bounds of the April 19
25 rulings. The government offers in its opposition to produce the family-member documents in
26 unredacted form and shall do so by **SEPTEMBER 6**.

27 Regarding the O2 redactions, the April 19 orders permitted the government to produce
28 certain classified documents with the classified portions redacted (Dkt. No. 464 at 9–10 (under

16

seal)). The government asserts that these additional O2 redactions are justified in light of the April 19 orders. Plaintiff objects that the O2 redactions "appear" overbroad, but Plaintiff's motion does not set out any substantial basis for questioning the redactions. The motion is accordingly **DENIED**.

### D. Motion to Compel Documents in Exhibit A.

#### *(1) Documents Subject to the February Motion to Compel But Not Ordered Produced.*

Plaintiff moves to compel production documents listed in a ten-page chart attached to her motion (Dkt. No. 515 Ex. A (under seal)). A handful of these documents were previously the subject of plaintiff's February motion to compel: FBI-TSC documents 13, 36, and 54; and DOS documents 15 and 34. These documents were reviewed *ex parte* and *in camera* by the Court in connection with the February motion and April 19 orders. Although they were not individually addressed in the April 19 orders, they were among the few documents the government was not ordered to produce. Plaintiff's motion to compel these documents was denied without prejudice (Dkt. No. 461 at 16).

Other than arguing (again) that the documents are relevant, plaintiff provides no basis for reconsidering the April 19 privilege rulings as they apply to these documents. The motion to compel their production is accordingly **DENIED**.

#### *(2) Documents Not Subject to the February Motion to Compel.*

Aside from the documents subject to the April 19 orders, a review of the government's response shows that many of the documents in plaintiff's chart have now been produced by defendants or are potentially subject to one or more of the rulings herein. The remainder have been withheld as classified or on the basis of novel privilege arguments.

Resolving the rest of the parties' disputes over these documents will require further *ex parte*, *in camera* review. The Court is cognizant, however, that plaintiff has recently filed three letter motions seeking further discovery relief, and to which the government has not yet responded. In the interests of judicial efficiency and avoiding piecemeal resolution of related discovery problems, resolution of the instant motion to compel the remaining Exhibit A documents will be **HELD IN ABEYANCE**. Following review of the government's responses to the

17

three recent motions, a further order will set a briefing schedule for additional submissions on all remaining discovery disputes.

**CONCLUSION**

To the extent stated above, plaintiff's motions are **GRANTED IN PART**, **DENIED IN PART**, and **HELD IN ABEYANCE**.

Plaintiff's motions for reconsideration (Dkt. Nos. 485–86) are **DENIED**. Plaintiff's motion for leave to amend her complaint is **DENIED**. Plaintiff's request for leave to depose Agent Kelley is **GRANTED**. The deadline for the deposition of Agent Kelley is **SEPTEMBER 20**. To the limited extent stated herein, plaintiff may serve supplemental interrogatories by **SEPTEMBER 3 AT NOON**. The government shall serve responses to the interrogatories by **SEPTEMBER 9 AT NOON**.

The deadline to comply with the orders herein compelling production of documents is **SEPTEMBER 6**. Updated privilege logs (if any) shall be served with the document productions. To the extent not resolved herein, plaintiff's motion to compel production of further documents is **HELD IN ABEYANCE**. The government shall file responses to the three pending discovery motions (Dkt. Nos. 517–18, 521) by **AUGUST 28 AT NOON**. A further order will then set a briefing schedule on the government's assertion of privileges over recently-produced documents (along with any other issues requiring supplemental submissions). The government will also be given a deadline to submit documents for *ex parte* and *in camera* review, as well as any declarations supporting its privilege assertions. The parties are advised that this briefing will occur on an expedited schedule.

In the meantime, the parties are **ORDERED** to meet and confer no later than **AUGUST 27** in order to further narrow the pending issues in light of the orders herein.

Due to the excessive number of motions filed by plaintiff's counsel, plaintiff may not file any further motions for discovery relief absent prior leave of the Court. The parties are also advised that given the limited time remaining before trial, only one round of dispositive motions will be permitted. Standard page limits will apply.

Any requests in the instant motions not expressly addressed herein are **DENIED**. The September 12 hearing is **VACATED**.

**IT IS SO ORDERED.**

Dated: August 23, 2013.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE