**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAHINAH IBRAHIM,

    Plaintiff,

  v.

DEPARTMENT OF HOMELAND
SECURITY, et al.,

    Defendants.

No. C 06-00545 WHA

**ORDER RE HEARSAY AND
LEADING OBJECTIONS
RE TX 30 AND ASSOCIATED
QUESTIONS**

In this challenge to plaintiff's alleged placement on federal terrorist watchlists, an interesting evidentiary problem has arisen at a bench trial. This order memorializes and implements the ruling made on the reporter's record.

In 2005, plaintiff wrote a long letter to her government in Malaysia stating her view of the SFO no-fly events in question (TX 30). In 2013, her deposition was taken in London to be used as her trial testimony (because she was denied a visa to enter the United States for trial). At the deposition, her counsel led her through virtually every sentence of the letter, reading it out loud and then following up with a question rephrasing the contents of the sentence, like "Was it true that . . . ," to which the witness invariably said yes or otherwise re-affirmed the contents of the sentence. Here are some examples:

    Q:    Will you please read that paragraph . . .

    A:    "I look forward to return to Kuala Lumpar after being separated from some of my family members for more than four years . . . . UPM in affiliation with my sponsor, the Ministry of Science,

|   |   |   |
|---|---|---|
| 1 |   | Technology and Innovation of Malaysia arranged the purchase of my daughter's and my returning flight tickets. I had requested wheelchair and assistance at all the transit airports on our flight home. I checked with Lynn Kroner, Stanford's Foreign Student Advisor, on all my immigration requirements so that I could return to Malaysia without incident." |
| 5 | Q: | Is everything that you just read in this paragraph true and accurate? |
| 6 | A: | Yes. |
| 7 | Q: | Now -- so the university had arranged for your flight back to Malaysia, is that correct? |
| 9 | A: | Yes. |
| 10 | Q: | And you had requested wheelchair assistance ---- |
| 11 | A: | Yes. |
| 12 | Q: | ---- at all the transfer airports on your flight home, correct? |
| 13 | A: | Yes. |
| 14 | Q: | And you had checked with Lynn Kroner, Stanford's Foreign Student Advisor, on all of your immigration requirements so that you could return to Malaysia without incident, is that correct? |
| 17 | A. | Yes. |

(Ibrahim Dep. 39:16–41:2). No objections were made to the above. Hearsay objections, however, were made to other passages, as now illustrated:

         *    *    *

| | | |
|---|---|---|
| 21 | Q: | Will you read the next sentence, please? |
| 22 | A: | "When they turned up at my door . . ." ---- |
| 23 | MR. THESIS: | I'm sorry. Objection, hearsay. |
| 24 | Q: | Go ahead. |
| 25 | A: | " . . . they identified themselves as 'from the FBI, and would like to talk to you.'" |
| 26 | Q: | When the FBI agents turned up at your door, did they identify themselves as "from the FBI and would like to talk to you?" |
| 28 | MR. THESIS: | Objection, hearsay. |

2

|   |   |   |
|---|---|---|
| 1 | A: | Yes. |
| 2 | Q: | Will you read the next sentence, please? |
| 3 | A: | "They showed me their badges . . ." ---- |
| 4 | MR. THESIS: | Objection, hearsay. I'm sorry. |
| 5 | Q: | Oh, that's okay . . . . So you said the FBI agents showed you their badges, correct? |
| 6 | MR. THESIS: | Objection, hearsay. |
| 7 | A: | Yes. |
| 8 | Q: | Will you read the next sentence, please? |
| 9 | MR. THESIS: | Objection, hearsay. |
| 10 | A: | "I asked them, 'may I know regarding what?'" |
| 11 | Q: | Did you ask the FBI agents, "May I know regarding what?" |
| 12 | MR. THESIS: | Objection, hearsay. |
| 13 | A: | Yes. |
| 14 | Q: | Will you read the next sentence, please? |
| 15 | MR. THESIS: | Objection, hearsay. |
| 16 | A: | "The male agent, Kevin Kelley, did most of the questioning and note-taking, while the female agent was basically observing and adding some comments once in a while." |
| 17 | Q: | Did the male agent, Kevin Kelley, do most of the questioning when the FBI agents visited you? |
| 18 | A: | Yes. |

(*id*. 42:10–44:15).

\*          \*          \*

| Q: | Will you read the next sentence, please? |
|---|---|
| MR. THESIS: | Objection, hearsay. |
| A: | "We then went on to talk about my husband." |
| Q: | Did you talk with the FBI agents about your husband? |

**United States District Court**
For the Northern District of California

3

1  MR. THESIS: Objection, hearsay.

2  A: Yes.

3 (*id*. 62:7–15).

4 At the deposition, as shown, government counsel objected on hearsay grounds, but rarely objected on grounds of leading. We are now at trial and the video deposition of plaintiff is being played. The letter itself is hearsay, of course, and may not be received in (or read in as) evidence. Contrary to plaintiff's counsel, the content of the letter is not admissible as past recollection recorded. This is because (i) there has been no showing that the witness is unable to recall the events and (ii) indeed, to the contrary, her reaffirming testimony set forth alone in every instance was cast as genuine present memory of the events covered by the letter, thereby negating the possibility that she no longer recalls.

Nonetheless, the hearsay objection has no merit, for the witness' fresh present-day recollection of the events in question is admissible to "prove up the transaction," that is, to prove the conversations surrounding her transactions with the government. To the extent any of the statements are party admissions, they would be further admissible to prove the truth of the statements. To this extent, the government's hearsay objection lacks merit and is overruled.

At the deposition, government counsel should have objected (but rarely did) to this entire line of questions as leading. Walking the witness through her own one-sided letter in this manner and asking her whether it was true was a severe form of leading. But the leading objection was not made and was, under Rule 32, thus waived—except as to six instances. The following passages were leading, the leading objection was made, and this evidence will be deemed stricken from the trial record:

Q: It says here: "[Police officer] No. 1 came to tell me that 'you have overstayed in the US' and showed me the I-94 card in my passport which was stamped with a December 31, 2003 date and a 'd/s' notation underneath." Do you see that?

MR. THESIS: Objection, hearsay and leading.

A: Yes.

4

| | | |
|---|---|---|
| Q: | | Okay. Did the police office show you the I-94 card in your passport which was stamped with the December 31, 2003 date and a d/s notation beneath? |
| MR. THESIS: | | Same objections. |
| A: | | Yes. |

(*id*. 98:9–21).

\* \* \*

| | | |
|---|---|---|
| Q: | | Did the officer explain to you that you were being released because you fit the criteria for (b)(1)? |
| MR. THESIS: | | Objection, hearsay, and leading. |
| A: | | Yes, he did. |
| Q: | | Did you understand that the police were satisfied that there were insufficient grounds for making a criminal complaint against you? |
| MR. THESIS: | | Objection |
| A: | | Yes. |
| MR. THESIS: | | I'm sorry. Objection, leading and calls for speculation. |

(*id*. 137:1–12).

\* \* \*

| | | |
|---|---|---|
| Q: | | Did you understand that the list did not have "Rahinah Ibrahim" on it anymore as of January 3rd, 2005? |
| MR. THESIS: | | Objection, hearsay and leading. |
| A: | | He told me that. |

(*id*. 142:16–20).

\* \* \*

| | | |
|---|---|---|
| Q: | | Were you concerned at this point because your academic career would take you on journeys to American colleagues at Stanford? |
| MR. THESIS: | | Objection, leading. |
| A: | | I am very concerned, yes. |

(*id*. 145:16–20).

\* \* \*

5

Finally, contrary to plaintiff's counsel, the residual exception is not available to bail counsel out of such egregious leading. The residual exception deals with hearsay, not improper form of questions.

**IT IS SO ORDERED.**

Dated: December 5, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE