STUART F. DELERY
Assistant Attorney General

MELINDA L. HAAG
United States Attorney

DIANE KELLEHER
Assistant Branch Director

PAUL G. FREEBORNE
Senior Trial Counsel
KAREN S. BLOOM
LILY S. FAREL
JOHN K. THEIS
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 353-0543
Facsimile: (202) 616-8460
E-mail: paul.freeborne@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RAHINAH IBRAHIM,<br><br>Plaintiff,<br>v.<br>DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | No. 3:06-cv-0545 (WHA)<br><br>**DEFENDANTS' RESPONSE TO THE COURT'S INQUIRY REGARDING THE DIFFERENCE BETWEEN SENSITIVE SECURITY INFORMATION AND INFORMATION SUBJECT TO THE STATE SECRETS PRIVILEGE** |

On December 7, 2013, the Court asked the parties to "address the legal issue of the difference in standards for [Sensitive Security Information] versus secret." Dkt. 657. Specifically, the Court inquired as to:

> what more is required to qualify for state secrets treatment than is already required for SSI?  If the government's interest could be adequately protected via SSI treatment, which can be disclosed for litigation without public access, why should the government be allowed to classify evidence as state secrets and thereby deny the opponent an opportunity to meet the evidence?

*Id*.  Last, the Court asked whether "the court of appeals consider[ed] this distinction in *Mohamed v. Jeppesen Dataplan, Inc*., 614 F.3d 1070, 1080 (9th Cir. 2010) (en banc)?" *Id*.

As explained below, the law governing the protection of information subject to the state secrets privilege is fundamentally different from the law regarding Sensitive Security Information (SSI).  As a result of this difference, the procedures used to protect SSI, including in litigation, are inapplicable to information that is protected by the state secrets privilege – a privilege that includes classified information.  Accordingly, and as set forth in more detail below, while certain procedures (such as closed courtroom proceedings and detailed protective orders) may be employed to protect SSI, the same procedures do not apply and cannot legally be applied by courts considering information subject to the state secrets privilege in civil litigation.  Allowing for conditional disclosure of state secrets information by analogy to SSI-related procedures would be clearly contrary to longstanding Supreme Court and circuit precedent as to how state secrets must be protected in litigation.

The state secrets privilege is a well-established, judicially-recognized doctrine that governs the protection of national security information in litigation.  *See United States v. Reynolds*, 345 U.S. 1, 7-8 (1953); *General Dynamics v. United States*, 131 S. Ct. 1900, 1905 (2011).  It is this controlling authority, not statutory procedures like those applicable to SSI, which governs how state secrets must be protected in litigation. Specifically, when the state secrets privilege is successfully invoked, and the government

DEFENDANTS' RESPONSE TO THE COURT'S INQUIRY REGARDING THE DIFFERENCE BETWEEN SSI & INFORMATION SUBJECT TO SSP
*Ibrahim v. DHS*, *et al*., 3:06-cv-00545 (WHA)

1

demonstrates that disclosure of the information identified by the Executive as subject to the privilege reasonably could be expected to harm national security, the evidence subject to the privilege is excluded from the case and is unavailable to the parties in presenting claims or defenses on the merits. *See Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998); *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1082 (9th Cir. 2010) (en banc) (assertion of privilege excludes the evidence); *Al-Haramain Islamic Found. v. Bush,* 507 F.3d 1190, 1205 (9th Cir. 2007) (same).

This precedent means that evidence covered by a successful invocation of the state secrets privilege cannot later be injected back into the case through the use of protective orders or other procedures. *See, e.g.*, *Jeppesen*, 614 F.3d at 1089 (district courts cannot attempt to "wall off" secrets from disclosure using protective orders or restrictions on testimony "where the relevant secrets are difficult or impossible to isolate and even efforts to define a boundary between privileged and unprivileged evidence would risk disclosure by implication"); *El-Masri v. United States*, 479 F.3d 296, 311 (4th Cir. 2007) (rejecting plaintiff's request to use state secrets evidence in an *in camera* trial, explaining that once the court has decided that the privilege is applicable "the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers."); *Sterling v. Tenet*, 416 F.3d 338, 344, 348 (4th Cir. 2005) (rejecting plaintiff's request to devise "special procedures" to allow his suit involving state secrets to proceed, explaining "[c]ourts are not required to play with fire and chance further disclosure – inadvertent, mistaken, or even intentional – that would defeat the very purpose for which the privilege exists"). Indeed, in some circumstances, the entire case is dismissed, either because it clear at the outset that the case cannot proceed (*Totten v. United States*, 92 U.S. 105, 107 (1876)) or because "it will become apparent during the *Reynolds* analysis that the case cannot proceed without privileged evidence, or that litigating the case to a judgment on the merits would present an unacceptable risk of disclosing state secrets." *Jeppesen*, 614 F.3d at 10789.

DEFENDANTS' RESPONSE TO THE COURT'S INQUIRY REGARDING THE DIFFERENCE BETWEEN SSI & INFORMATION SUBJECT TO SSP
*Ibrahim v. DHS*, *et al*., 3:06-cv-00545 (WHA)

The state secrets privilege is rooted in the President's Article II constitutional authority to protect national security.  Accordingly, the legal authority to protect information subject to the state secrets privilege exists independently and completely apart from any procedures Congress might establish for the handling of SSI.  *See El-Masri*, 479 F.3d at 303 ("the state secrets doctrine allowed the Court to avoid the constitutional conflict that might have arisen had the judiciary demanded that the Executive disclose highly sensitive military secrets"); *United States v. Nixon*, 418 U.S. 683, 711 n. 19 (1984).  As a result, when the state secrets privilege is successfully invoked, the privilege is absolute, and there is no balancing of any kind (including based on need or the perceived risk of disclosure), in contrast to other privileges and evidentiary protections.  *See Jeppesen*, 614 F.3d at 1081 ("If this [the state secrets privilege] standard is met, the evidence is absolutely privileged, irrespective of the plaintiffs' countervailing need for it.").

Because the state secrets privilege is absolute, and the consequence of its invocation so serious, established procedural safeguards control its invocation.  First, the privilege must be invoked by a "formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Reynolds*, 345 U.S. 1, 7-8 (1953).  In addition, as noted in the opposition to the motion to compel filed on March 15, 2013, the Attorney General has provided for additional requirements through a Department of Justice policy that requires the Attorney General to review and approve any claim of state secrets privilege; this policy was followed in this case.  Dkt. 471.  The Ninth Circuit in *Jeppesen* noted that although *Reynolds* did "not require [this kind of involvement] by the Attorney General . . . such additional review by the executive branch's chief lawyer is appropriate and to be encouraged."  614 F.3d at 1080.  Finally, the assertion of the state secrets privilege must be independently reviewed by a federal judge, as it was in this case.  *Id.* at 1082; April 19, 2013 Order on Classified Information (upholding assertion of state secrets).

In many cases, as in this one, the information covered by the state secrets privilege has also been designated as "classified" national security information by the Executive Branch.  *See,*

DEFENDANTS' RESPONSE TO THE COURT'S INQUIRY REGARDING THE DIFFERENCE BETWEEN SSI & INFORMATION SUBJECT TO SSP
*Ibrahim v. DHS*, *et al*., 3:06-cv-00545 (WHA)

3

1  *e.g.*, *Kasza*, 133 F.3d 1159; *Jeppesen*, 614 F.3d 1070. The Executive Branch's system for
2  designating certain information as classified is also based on the President's Article II
3  constitutional powers to protect national security, *see Dep't of Navy v. Egan*, 484 U.S. 518, 527
4  (1988), as operationalized in Executive Orders issued by the President establishing a system for
5  designating, marking, and controlling certain information because its disclosure reasonably could
6  be expected to cause harm to national security. *See* Exec. Order No. 13,526, 2009 WL 6066991,
7  75 FR 707 (Dec. 29, 2009).

8  As a result, when civil litigation implicates information that has been designated as
9  classified national security information, that information typically is subject to the state secrets
10 privilege, which is the doctrine by which national security information is protected from
11 disclosure in such litigation. Importantly, however, an assertion of the state secrets privilege in
12 litigation does not reflect a mere classification decision; it is in fact a separate and additional
13 policy judgment by the head of the agency whose information is being sought in litigation that
14 disclosure of the information reasonably would be expected to harm national security. *See supra*
15 at 1-2. Thus, while classified information is typically subject to the state secrets privilege
16 (because by definition its disclosure reasonably could be expected to harm national security), for
17 purposes of civil litigation, the governing law is that establishing the contours of the state secrets
18 privilege – not the Executive's rules regarding classification. *See Jeppesen*, 614 F.3d at 1070.[1]
19 In short, what allows the government to protect and exclude state secrets from litigation is a

---

[1] As indicated by this discussion, there is not a process to "classify evidence as state secrets," Dkt. 657, as such a concept would conflate the classification system under Executive Order 13,526 with the invocation of the state secrets privilege. The invocation of the privilege by the head of the agency and in a manner consistent with the requirements of applicable caselaw is a separate determination made at the highest level of government applicable to the protection of the information at issue in litigation. As reflected in the *ex parte* and *in camera* submissions, Defendants have supplied declarations which demonstrate that the disclosure of the information subject to the privilege assertion reasonably could be expected to cause significant harm to national security. In addition, the declarations supplied during this case, will establish that the privileged information is, in fact, properly classified pursuant to established procedures and standards and not simply "stamped classified" (Dkt. 652) and is properly excluded from this case.

DEFENDANTS' RESPONSE TO THE COURT'S INQUIRY REGARDING THE DIFFERENCE BETWEEN SSI & INFORMATION SUBJECT TO SSP
*Ibrahim v. DHS, et al*., 3:06-cv-00545 (WHA)

4

doctrine firmly established by judicial precedent and not a bare assertion of Executive prerogative.  *See* supra at 1-2.

Sensitive Security Information fundamentally differs from information that is subject to the state secrets privilege, including classified information.  SSI is a particular type of information protected from public disclosure by statute; it encompasses "information obtained or developed in the conduct of security activities . . . the disclosure of which TSA [the Transportation Security Administration] has determined would be *detrimental to the security of transportation.*" 49 C.F.R. § 1520.5(a)(3) (emphasis added); *see* 49 U.S.C. § 114(r) ("Nondisclosure of Security Activities.").  The universe of SSI information therefore is more limited than information that may be protected by the state secrets privilege: only information relating to the security of transportation is protected as SSI, while the state secrets privilege may apply to any information that, if disclosed, would result in significant harm to the national security.  Moreover, and even more significantly, the designation of information as SSI pursuant to statute does not entail an exercise of the Executive's authority to protect national security information based on the President's Article II powers.  Rather, SSI designation is an application of a nondisclosure rule established by Congress.

In addition, unlike classified information, which may not be disseminated publicly and may be excluded from litigation pursuant to the state secrets privilege, as discussed above, SSI is protected under statutory rules and codified regulations that ensure that the information is available to individuals involved in transportation security, and when appropriate, civil litigants.  Individuals may seek access to SSI in civil proceedings.   *See* Section 525(d) of the Homeland Security Appropriations Act, 2007, Pub. L. No. 109-295, § 525(d), 120 Stat. 1355, 1382 (Oct. 4, 2006).  Those individuals who may access SSI may or may not hold a government security clearance allowing them access to classified information. *See* Exec. Order 13,526 (establishing security clearance and need to know requirements).  The government and private sector stakeholders in the transportation system, such as airport operators and air carriers, share SSI under strict protective protocols in order to effectively protect transportation security. SSI is meant to be shared with covered parties who have a need to know, and the SSI regulations are

DEFENDANTS' RESPONSE TO THE COURT'S INQUIRY REGARDING THE DIFFERENCE BETWEEN SSI & INFORMATION SUBJECT TO SSP
*Ibrahim v. DHS*, *et al*., 3:06-cv-00545 (WHA)

5

intended to facilitate this sharing more easily and efficiently than would be possible under the rules governing classified information.[2] Quick and efficient sharing ensures that covered parties, both within and without the government, can respond appropriately to rapidly changing situations, such as transportation emergencies and evolving threats.

Most importantly here, nothing in the SSI statute or regulations suggests that any other type of sensitive information - such as information over which the Executive has asserted the state secrets privilege, including classified information - may be treated in the same manner as SSI. And there is no legal authority permitting a court to decide that procedures prescribed to protect SSI may be "adequate" to protect other information that is not SSI, such as classified national security information. There is, therefore, no basis on which to conclude that litigation procedures used to safeguard SSI are appropriate or sufficient for protecting information covered by the government's assertion of the state secrets privilege. To the contrary, attempting to use such procedures would transgress the precedent establishing the procedures governing state secrets material. The treatment of information covered by the state secrets privilege is governed by clear, controlling caselaw, and the treatment of classified information is specifically governed by Executive Order. Those sources – not the SSI statute and regulations – provide for how to appropriately handle the state secrets and classified information at issue in this case. Indeed, applying procedures intended for SSI to information covered by the state secrets privilege would be clear error.

In response to the Court's final question, *Jeppesen* did not involve any SSI. Thus, the Ninth Circuit did not address the distinction between SSI and other types of information or the differences in the appropriate protective procedures that should be used for SSI, classified information, and state secrets information. *See Jeppesen*, 614 F.3d at 1073 (dismissing a challenge to the defendants' participation in the CIA's "extraordinary rendition program").

---

[2] *See, e.g.*, 69 Fed. Reg. 28066-01, 28076 (2004) (explaining that protecting information as SSI is necessary for "disseminating threat information to those in maritime transportation who need to act on it"); 70 Fed. Reg. 1379-01, 1380 (2005) (stating that an "original intent" of the SSI regulations was "to share vulnerability assessments and threat information with entities in all transportation modes that need the information to help forestall future attacks").

DEFENDANTS' RESPONSE TO THE COURT'S INQUIRY REGARDING THE DIFFERENCE BETWEEN SSI & INFORMATION SUBJECT TO SSP
*Ibrahim v. DHS*, *et al.*, 3:06-cv-00545 (WHA)

6

Although *Jeppesen* did not address these differences, it remains fundamental to the legal analysis applicable to this case, and the state secrets privilege invocation at issue here: *Jeppesen* is the prevailing law of the Ninth Circuit regarding the state secrets privilege and is based on the Supreme Court's teachings regarding the protection of national security information in litigation under the privilege. *See Reynolds*, 345 U.S. at 9-10; *General Dynamics*, 131 S. Ct. at 1905. Under that precedent, information that is covered by a successful invocation of the state secrets privilege cannot be relied upon by either party, no matter how many safeguards are in place to protect the information. *See Jeppesen*, 614 F.3d at 1082. Any disclosure of information properly protected under the state secrets privilege, including conditional disclosures made pursuant to SSI-type protective order protocols, would therefore conflict fundamentally with binding precedent. In short, the requirements set forth in *Reynolds* and *Jeppesen* govern the protection of state secrets information, including classified information, in litigation, while statutes and regulations govern SSI, which is not classified. These distinct sources of authority governing these different categories of information do not intersect and cannot be comingled.

Dated: December 13, 2013        Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director

*/s/ Paul G. Freeborne*

PAUL G. FREEBORNE
Senior Trial Counsel
KAREN S. BLOOM
LILY S. FAREL
JOHN K. THEIS

*Attorneys for the Defendants*

DEFENDANTS' RESPONSE TO THE COURT'S INQUIRY REGARDING THE DIFFERENCE BETWEEN SSI & INFORMATION SUBJECT TO SSP
*Ibrahim v. DHS, et al.*, 3:06-cv-00545 (WHA)