JAMES McMANIS (40958)
ELIZABETH PIPKIN (243611)
McMANIS FAULKNER
A Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:   (408) 279-8700
Facsimile:   (408) 279-3244
Email:   cpeek@mcmanislaw.com
         epipkin@mcmanislaw.com

Attorneys for Plaintiff,
Rahinah Ibrahim

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RAHINAH IBRAHIM, an individual,<br><br>            Plaintiff,<br><br>      vs.<br><br>DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>            Defendants. | Case No. C 06-0545 WHA<br><br>**PLAINTIFF'S RESPONSE TO THE COURT'S ORDER RE CLEARANCE (DOCKET NO. 666)**<br><br>Trial Date:   December 2, 2013<br>Complaint Filed: January 27, 2006 |

## **INTRODUCTION**

Plaintiff hereby responds to the Court's request for briefing on the following two questions: (1) whether and how one or more of plaintiff's counsel could obtain a clearance to review the classified submissions, including how long it would take; and (2) whether plaintiff's counsel is willing to undertake the process.  This response also explains why such clearances are not necessary to resolve this case.

///

///

# ARGUMENT

## I. THE EXECUTIVE HAS ASSERTED ITS ABSOLUTE DISCRETION TO GRANT OR DENY PLAINTIFF'S COUNSEL CLEARANCE.

The executive branch generally has discretion to grant or deny a security clearance, absent a colorable constitutional challenge to the denial. *Dep't of the Navy v. Egan*, 484 U.S. 518, 526-30 (1988); *Dorfmont v. Brown*, 913 F.2d 1399, 1401-04 (9th Cir. 1990). Plaintiff's counsel are informed and believe that obtaining a top secret clearance can take 6 to 9 months or longer. *See* U.S. Dept. of Justice, Federal Bureau of Investigation, Security Clearance Process for State and Local Law Enforcement, *available at* http://www.fbi.gov/stats-services/law-enforcement/clearance/security-clearance-process-for-law-enforcement-pdf. Defendants in this case previously objected to any procedure that would enable plaintiff's counsel to receive classified information, whether or not the court upholds the state secrets privilege with respect to the information. *See* Defendants' Response To The Court's Request For Briefing Regarding The Identification Of Classified Information On Defendants' Privilege Log (Docket No. 412), 5:13-6:20 ("In addition, **Defendants oppose any procedure that would provide classified information to Plaintiff's counsel**, if that is what the Court contemplates.") (emphasis added). Plaintiff's counsel understand this to mean that the executive will not exercise its discretion in favor of granting a security clearance to plaintiff's counsel.

Even if plaintiff's counsel misunderstood the government's position, the government historically has contended that classified information can be withheld **even from cleared counsel** on the ground that they have "no need to know." *See Horn v. Huddle*, 647 F. Supp. 2d 55, 59-60 & 63, n.11 (D.D.C. 2009), *vacated by* 699 F. Supp. 2d 236, 238. Although at first blush it may seem like a feasible alternative to just get counsel "cleared," in reality, any order to that effect will only provide defendants the ability (1) to arbitrarily deny plaintiff and her counsel access to classified information; (2) to conduct unfettered investigations into the personal lives of plaintiff's counsel and their friends and family members; and (3) to hold up the case for months if not years while defendants conduct the investigation. It would cede authority over the

progress in this case to an interested party, the defendants.  The Executive already has enough of an advantage.

**II. THE COURT SHOULD NOT REVIEW ANY ALLEGEDLY PRIVILEGED INFORMATION TO DECIDE PLAINTIFF'S CONSTITUTIONAL CHALLENGES, BUT IF IT DOES, THE COURT HAS THE POWER TO REVIEW THE ALLEGED STATE SECRETS INFORMATION AND MAKE APPROPRIATE ORDERS TO PROVIDE ACCESS TO COUNSEL OR A PARTY.**

The Court may determine whether plaintiff was allowed adequate due process without resort to any secret information.  Defendants fully presented their procedures to the Court, and plaintiff has testified regarding the lack of process accorded her.  The Court can assess the strengths of the parties' respective interests and the risk of an erroneous deprivation of rights without regard to the specific content of any allegations against Dr. Ibrahim.  The Court need not resolve what alternate procedures could be provided in order to decide Ibrahim's procedural due process challenge in her favor and against the government.  *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1201 (9th Cir. 2009) ("Beyond declaring that California's procedural protections are constitutionally inadequate, we do not propose to spell out here precisely what kind of procedure California must create."), *rev'd on other grounds*, 131 S.Ct. 447 (2010).  Plaintiff must only show that the current procedures are constitutionally deficient, which she has done. *See Humphries*, 554 F.3d at 1201.  The government's attempts now to use secret evidence to deprive plaintiff of a remedy serve as further evidence they have deprived plaintiff of due process.

If the Court decides to review the allegedly privileged material, Ibrahim has argued throughout this case that the supreme law of the land, the United States Constitution, and specifically the due process protection found in the Bill of Rights, requires that defendants provide adequate notice of the purported bases for their decision wrongfully to label her a terrorist and diminish her rights, including any classified information that is required to enable Ibrahim to respond to the accusations against her. *See Kaur v. Holder*, 561 F.3d 957, 961-62 (9th Cir. 2009) (use of secret evidence violated applicable regulations as well as due process); *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 710 F. Supp. 2d 637, 657–60 (N.D. Ohio 2010); *see also American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045,

1069-70 (9th Cir. 1995), *superseded in part by statute on other grounds as discussed in* 525 U.S. 471, 475-76 (1999); *Al Odah v. United States*, 559 F.3d 539, 544–45 (D.C. Cir. 2009) (discussing the standard under which courts may compel disclosure of classified information); *Rafeedie v. INS*, 880 F.2d 506, 523-24 (D.C. Cir. 1989); *United States v. Abuhamra*, 389 F.3d 309, 329, 331 (2d Cir. 2004) (alternate summary disclosure procedure).

The Bill of Rights trumps defendants' executive orders and evidentiary privileges. Moreover, given that plaintiff's counsel have already cleared background checks for sensitive security information, national security is not threatened by their review of any alleged state secret information. The Court may overrule the state secrets privilege asserted by defendants and allow plaintiff and her counsel access to the information under appropriate protective orders. *See Horn*, 647 F. Supp. 2d at 60-63 ("When the privilege is denied, the Court has the ability to order the information disclosed in litigation."); *see also id.* at 65-66 ("The deference generally granted the Executive Branch in matters of classification and national security must yield when the Executive attempts to exert control over the courtroom.").

Another court recently confronted with claims of secrecy in the national security context held as follows: "Where, as here, core individual constitutional rights are implicated by Government action, Congress should not be able to cut off a citizen's right to judicial review of that Government action simply because it intended for the conduct to remain secret by operation of the design of its statutory scheme. While Congress has great latitude to create statutory schemes like FISA, it may not hang a cloak of secrecy over the Constitution." *Klayman v. Obama*, 2013 WL 6598728, Section II.A., at p. 9 on counsel's Westlaw copy (D.D.C. 2013). Here, the scheme at issue was not even enacted by Congress. Defendants' watchlisting scheme is purely a creation of executive orders and "understandings" that the government erroneously argues are completely shielded from review by the courts and the American people. The Executive branch may not hang a cloak of secrecy over the Constitution.

///

///

///

### III. ANY PROCEDURE ALLOWING THE USE OF CLASSIFIED INFORMATION IN THIS CASE MUST COMPORT WITH FAIRNESS AND DUE PROCESS.

Despite the government's almost certain refusal to allow a clearance to plaintiff's counsel, one or more of plaintiff's counsel is willing to go through the process, assuming plaintiff's counsel is allowed adequate access and opportunity to be heard regarding the information upon which defendants rely. That includes the following:

1. Plaintiff's counsel have full access to the information at any time, without restrictions on their use of the information for the case.
2. Plaintiff's counsel may discuss the information with their client so that she and they may rebut any allegations contained in the secret information.
3. Plaintiff's counsel may fully investigate the information provided to them through the normal means any attorney would employ, including but not limited to interviewing witnesses, searching publicly available materials, and consulting experts.
4. Plaintiff's counsel are allowed to conduct discovery on the information, including written discovery and depositions.
5. After plaintiff's counsel have adequate opportunity to investigate and conduct discovery, the information is presented to the court through the normal trial process.
6. Plaintiff's counsel may call witnesses and move for admission of documents to rebut the information.
7. Clearances are provided in ninety (90) days or less so that plaintiff is not subjected to further delay in this matter.

### IV. PLAINTIFF OBJECTS TO THE GOVERNMENT'S INTRODUCTION OF SECRET EVIDENCE IN THESE PROCEEDINGS.

As noted above, the Court need not review or rely on secret evidence to resolve this case. Plaintiff objects to any further consideration of the material. The government has sandbagged plaintiff, who has no knowledge of the nature or extent of the surreptitiously submitted "evidence." At a minimum, plaintiff objects on the following grounds:

1. Secret evidence violates plaintiff's Fifth Amendment right to due process, her right to a trial, and her right to confront her accuser.
2. Just because something is classified does not make it true. Before the Iraq war in 2003, a number of classified reports said that Saddam Hussein had weapons of mass destruction. We all know how that turned out. *See, e.g.*, http://www.foreignpolicy.com/articles/2012/09/05/a_classified_CIA_mea_culpa_on_iraq%20#sthash.UyoTPxlR.dpbs.
3. To the extent the government's secret submissions rely on documents, reports, or declarations of witnesses to prove the truth of matters asserted, they are inadmissible hearsay.
4. The government waived its right to use the secret evidence because it repeatedly represented to the Court that the effect of its privilege assertion was to "exclude the evidence from the case," waiting until after trial to offer the alleged evidence that allegedly requires dismissal. For the same reason, the government is estopped from arguing for dismissal on these grounds.
5. The secret evidence is also late because the government submitted it only after witnesses were excused and after the matter was submitted.

## **CONCLUSION**

Article III courts are the bulwark against abuses by the Executive that deprive individuals of their constitutional freedoms without explanation. The government today contends it still has the same unfettered authority that resulted in the wrongful withholding of a security clearance from Robert Oppenheimer. Plaintiff respectfully submits that the Court's suggestion is not a solution to the constitutional problems raised by her lawsuit.

DATED: December 23, 2013         McMANIS FAULKNER

                                                       /s/ Elizabeth Pipkin
                                                 ELIZABETH PIPKIN

                                                 Attorneys for Plaintiff,
                                                 Rahinah Ibrahim