SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM v. DHS ET AL., 3:06-CV-00545-WHA (N D CAL)
WARNING THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A 'NEED TO KNOW, AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS SSI DESIGNATIONS IN THIS ACTION.

JAMES McMANIS (40958)
ELIZABETH PIPKIN (243611)
CHRISTINE PEEK (234573)
McMANIS FAULKNER
A Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:     (408) 279-8700
Facsimile:      (408) 279-3244
Email:          cpeek@mcmanislaw.com
               epipkin@mcmanislaw.com

Attorneys for Plaintiff,
Rahinah Ibrahim

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RAHINAH IBRAHIM, an individual,<br><br>        Plaintiff,<br><br>   vs.<br><br>DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>        Defendants. | Case No. C 06-0545 WHA<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' POST-TRIAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br>( REDACTED )<br><br>Trial date: December 2, 2013<br>Complaint Filed: January 27, 2006 |

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM v. DHS ET AL, 3:06-CV-00545-WHA (N D CAL)
WARNING THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW, AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

Plaintiff, Rahinah Ibrahim ("plaintiff"), hereby responds to defendants' Post-Trial

Proposed Findings of Fact and Conclusions of Law.

## **PROPOSED FINDINGS OF FACT**

1.      Multiple components of the federal government work together to secure the

nation's borders and its airways and protect them from terrorist threats.

Lubman at 556:12-557:1, 559-560; TX 250 at TSC001043; TX 251 at TSC000890-891;
TX 538; TX 541.

**Response to No. 1:** Plaintiff agrees with this proposed finding.

2.      The Federal Bureau of Investigation ("FBI") investigates and analyzes

intelligence relating to both domestic and international terrorist activities and administers the

Terrorist Screening Center ("TSC").  TX 508 at TSC000006; Lubman at 566:7-13, 585:9-12.

**Response to No. 2:** Plaintiff agrees with this proposed finding.

3.      The National Counterterrorism Center ("NCTC") serves as the primary

organization for analyzing and integrating intelligence relating to international terrorism and

counterterrorism.  TX 251 at TSC000889; Lubman at 560:10-18.

**Response to No. 3:** Plaintiff agrees with this proposed finding.

4.      The Department of State ("State") adjudicates visa applications in accordance

with the Immigration and Nationality Act ("INA") and, with respect to its visa function, works

with other agencies to reduce the United States' vulnerability to terrorism.  Cooper at 625:24-

626:1, 629:22-630:4; TX 251 at TSC000891.

**Response to No. 4:** Plaintiff agrees in part with this proposed finding, but notes that State

relies on information contained in the TSDB, as exported to the CLASS databases.  Cooper at

428:18-21; Dep. of D. Lubman (FBI) at 176:24-177:20, 179:7-10, 220:25-221:5; Exh. 6, p.

TSC001665; Lubman at 327:7-20.

5.      The purpose of the Government's terrorist watchlisting and screening processes is

to support the U.S. government's efforts to combat terrorism by consolidating the terrorist

watchlist and providing screening and law enforcement agencies with information to help them

respond appropriately during encounters with known or suspected terrorists.

PLAINTIFF'S RESPONSE TO DEFENDANTS' POST-TRIAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW;
Case No. C 06-0545 WHA     **HIGHLY CONFIDENTIAL – SUBJECT TO ATTORNEY'S EYES ONLY PROTECTIVE ORDER**

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM v. DHS ET AL., 3:06-CV-00545-WHA (N.D. CAL.)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

Lubman at 556:5-557:11, 559:2-560:6; TX 251 at TSC000889.

**Response to No. 5:** Plaintiff agrees that this is one purpose of the TSDB but notes that the effects of watchlisting go beyond mere use by law enforcement agencies.  Plaintiff disagrees that this is the only or even the primary purpose of the TSDB and its associated databases.  Kahn at 400:9-401:14; 411:8-25.

6.     In 2003, the President ordered the establishment of a governmental organization to consolidate the Government's approach to terrorism screening and provide for the appropriate and lawful use of terrorist information in screening processes.

Lubman at 557:3-11, 566:16-21; TX 538; TX 541; TX 1034 at 3.

**Response to No. 6:** Plaintiff agrees with this proposed finding.

7.     The creation of this new entity, TSC, was driven in part by the 9/11 Commission's conclusion that the lack of intelligence-sharing across federal agencies had created vulnerabilities in the nation's security.  Lubman at 556:12-18.

**Response to No. 7:** Plaintiff disagrees because the cited testimony does not reference the 9/11 Commission's findings.  Also, the Commission published its final report in 2004 (http://www.9-11commission.gov/), but the TSC was established in 2003 (*see* Exh. 541).

8.     Before the creation of TSC, multiple terrorist watchlists were maintained separately in different agencies.  Lubman at 556:15-16.

**Response to No. 8:** Plaintiff agrees with this proposed finding.

9.     TSC consolidated and centralized the watchlists, as the 9/11 Commission recommended.  Lubman at 557:3-11; TX 250 at TSC001043.

**Response to No. 9:** Plaintiff agrees that TSC consolidated the watchlists but the cited testimony and exhibit page do not show this was done "as the 9/11 Commission recommended."

10.     TSC was created through a Memorandum of Understanding entered into by the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Director of Central Intelligence in order to fulfill the requirements of Homeland Security Presidential Directive (HSPD) 6.  TX 541; TX 201; Lubman at 556:11-557: 11.

**Response to No. 10:** Plaintiff agrees with this proposed finding.

2

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM v. DHS ET AL., 3:06-CV-00545-WHA (N D  CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

11.     TSC is administered by the FBI.  Lubman at 566:8-9.

**Response to No. 11:** Plaintiff agrees with this proposed finding.

12.     TSC is staffed by officials from a variety of agencies, including the Department of Homeland Security and the Department of State.  Lubman at 566:9-10; TX 1034 at 4; TX 1041.

**Response to No. 12:** Plaintiff agrees with this proposed finding.

13.     TSC, in turn, maintains the Terrorist Screening Database ("TSDB"), which generally contains identifying information about persons known or reasonably suspected of being engaged in terrorist activity.

Lubman at 559:2-8, 22-25, 560:1-6, 566:7-13, 619:14-16; TX 250 at TSC001043; TX 251 at TSC000889; TX 541.

**Response to No. 13:** Plaintiff agrees that the TSDB is supposed to contain information on persons known or reasonably suspected of being engaged in terrorist activity, but defendants' authorities do not show that so many individuals fall into this category that the proposed finding is "generally" true.  As this case illustrates, the TSDB also contains identifying information about persons who are not known or reasonably suspected terrorists.  Lubman at 312:5-313:13.

14.     To fulfill its mission of providing appropriate terrorist-related information in screening processes, TSC shares TSDB information with front-line screening agencies, including the Department of State, U.S. Customs and Border Protection ("CBP"), and the Transportation Security Administration ("TSA").  Lubman at 559:22-25; TX 251 at TSC000891-891.

**Response to No. 14:** Plaintiff agrees that the TSC shares TSDB information with the named agencies, but the phrase "to fulfill its mission of providing appropriate terrorist-related information in the screening process" is argumentative and not found in the cited authorities.

15.     TSC exports TSDB information to other government agencies for upload to their databases, such as State's Consular Lookout and Support System database ("CLASS") and CBP's TECS database.

Lubman at 573:6-19; 575:4-6, 13-15, 620:6-8; Cooper at 635:11-19; TX 251; TX 1034.

**Response to No. 15:** Plaintiff agrees with this proposed finding.

16.     The substantive derogatory information supporting a TSDB nomination related to

3

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM v. DHS ET AL., 3:06-CV-00545-WHA (N.D. CAL.)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,' AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

international terrorism is contained in a separate database known as the Terrorist Identities Datamart Environment ("TIDE"), maintained by the National Counterterrorism Center.

Lubman at 559:12-16.

**Response to No. 16:** Plaintiff disagrees with the characterization of any information about her as "substantive derogatory information."  Lubman at 312:5-313:18; Exh. 16.

17.     The contents of a TIDE record, including the basis for an individual's watchlisting, are classified.  Lubman at 559:16; 563:10-12.

**Response to No. 17:** Plaintiff agrees that TIDE is generally represented as a "classified" database, but disagrees to the extent that specific information in or about TIDE has been released to the public or is not classified.  *See, e.g.*, Exh. 638, pp. P001117-1118 & n.156; *see also* Exh. 1033, p. NCTC000061, ¶ 12 (classified or FOUO).

18.     The biographic information contained in the classified TIDE database is deemed "Unclassified For Official Use Only" so that the data can be provided to the unclassified TSDB database and exported from the TSDB to government agencies for screening purposes; the information remains classified for all other purposes.

Lubman at 568:17-21; 569:22-570:5; 570:17-23; TX 541; TX 544; TX 1033 at NCTC000060.

**Response to No. 18:** Plaintiff agrees to the extent this proposed finding provides background information, but the cited authorities do not explain how this proposed finding applies to plaintiff's case.  Plaintiff also disagrees that the information remains classified "for all other purposes," because defendants turned over unclassified REDACTED information in this litigation.  *See* Exhs. 9, 57, 61, 64, 77, 78, and 209-215.

19.     In general, TSC accepts nominations into the TSDB of individuals who meet the "reasonable suspicion" standard of having been engaged in conduct constituting, in preparation for, in aid of or related to terrorism and terrorist activities.  TX 250 at TSC001047.

**Response to No. 19:** Plaintiff agrees that as of 2009, TSC was supposed to apply the "reasonable suspicion" standard, but the cited exhibit page does not say whether so many individuals fall into this category that the proposed finding is true "in general."  As this case

4

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM v. DHS ET AL., 3:06-CV-00545-WHA (N.D. CAL.)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

illustrates, the TSDB also contains identifying information REDACTED

20.    REDACTED

**Response to No. 20:** Plaintiff agrees with this proposed finding.

21.    REDACTED

**Response to No. 21:** Plaintiff agrees with this proposed finding.

22.    REDACTED

REDACTED

**Response to No. 22:** Plaintiff disagrees REDACTED

& 8 U.S.C. § 1105.  HSPD-6 may only be implemented in a manner consistent with the Constitution (Exh. 201, p. TSC000818), to which secret law is inimical.

23.    Each nomination to the TSDB undergoes a multi-agency review process to ensure accuracy and sufficiency.  Lubman at 560:23-561:6; TX 250 at TSC001047.

**Response to No. 23:** Plaintiff disagrees because in practice, not each nomination to the TSDB is reviewed when it should be, even records that were reviewed were found to contain errors, and auditors identified numerous errors and inconsistences in TSDB records since 2003.

Exh. 101, pp. TSC000409-410, TSC000469-475; Exh. 102, pp. TSC000096-112, TSC000157-158, TSC000170-171 & n.64; Exh. 508, pp. TSC000003-5, TSC000008-13.

24.    First, a nominating agency, like the FBI, nominates an individual after reviewing

5

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM v. DHS ET AL, 3:06-CV-00545-WHA (N D  CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

1  the nomination and confirming that the individual to be nominated meets the relevant

2  watchlisting criteria.

3      Lubman Dep. at 41:20-24; TX 92 at TSC000682-690, 000756-764; TX 251 at
       TSC000890, 920-922; TX 508 at TSC000007; Lubman at 560:21-25; 561:1, 563:10-19,
4      Lubman at 578:2-9.

5      **Response to No. 24:** Plaintiff disagrees with this proposed finding because it is vague as

6  to time, and because in practice, nominations REDACTED

7      REDACTED                                                                      ; Exh.

8  508, pp. TSC000003-5, TSC000008-13.  REDACTED

9              Exhibit 92 was not received in evidence.

10     25.    Next, the nomination is reviewed by NCTC to ensure that it is supported by

11 sufficient "derogatory information that meet[s] the watchlisting standard" and includes

12 "sufficient biographical or biometric identifiers."

13     TX 250 at TSC001047; TX 251 at TSC000921; Lubman at 560:21-561:1, 563:10-19;
       Lubman Dep. at 44:18-45:14.
14
       **Response to No. 25:** Plaintiff agrees to the extent this proposed finding merely provides
15
   background information, but objects that it is vague as to time, and the cited testimony does not
16
   explain how this proposed finding applies to plaintiff's case.  Plaintiff disagrees that any review
17
   by NCTC satisfies the demands of due process, because defendants' witness could not say REDACTED
18

19

20     26.    After NCTC reviews the nomination and supporting derogatory information, the

21 nomination is sent to TSC, and TSC reviews the nomination.  TSC accepts nominations if they

22 meet the minimum substantive derogatory criteria for placement in the TSDB and, if applicable,

23 the minimum criteria for placement on two derivative subsets of the TSDB, the No Fly and

24 Selectee Lists.  Lubman at 560:21–561:12; TX 250 at TSC001043, 1047.

25     **Response to No. 26:** Plaintiff disagrees to the extent this is meant to imply that any TSC

26 review satisfies due process, because TSC's redress unit only looks at existing records, and does

27 not do additional fieldwork to determine whether the facts are of good quality or still accurate.

28

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM v. DHS ET AL., 3:06-CV-00545-WHA (N.D. CAL.)
WARNING: THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,' AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

Even records reviewed by TSC have been found to contain errors and inconsistencies.  Dep. of D. Lubman (FBI) at 88:14-22, 89:25-90:2, 229:2-6; *see* Evidence Cited in Response to No. 23.

27.     When a government agency encounters an individual in the TSDB, for example, at the border or at an airport, the TSDB record of that individual is reviewed by TSC to confirm the individual is properly watchlisted.  Lubman at 560:21-561:6; TX 238 at P006549-6552.

**Response to No. 27:** Plaintiff agrees to the extent this proposed finding merely provides background information, but objects that it is vague as to time, and that in plaintiff's case,

REDACTED

28.     Also, whenever a TSDB record is modified (for example, if a CIA operator sends information about a new passport for a known or suspected terrorist in the database), TSC will review the TSDB record to ensure that it continues to be appropriate to have the individual in the TSDB, and if applicable, on the No Fly or Selectee List.  Lubman at 561:8-12.

**Response to No. 28:** Plaintiff agrees to the extent this proposed finding merely provides background information, but objects that it is vague as to time, and that in plaintiff's case,

REDACTED

.  Plaintiff disagrees that any review by TSC satisfies the demands of due process for the reasons stated in Response to No. 26. *See* Evidence Cited in Response to Nos. 23 and 26.

29.     Nominations to the TSDB or its derivative subsets may not be based solely on an individual's religion or nationality.  Lubman at 564:17-19; Kelley at 380:16-22.

**Response to No. 29:** Plaintiff disagrees because the reasonable suspicion standard for the TSDB is so low that it can facilitate the use of criteria such as religion or national origin in watchlisting decisions, and because it is impossible to confirm or deny this statement since

7

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM v. DHS ET AL, NO. C 06-CV-00545-WHA (N.D. CAL.)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,' AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

defendants admit REDACTED

, and defendants also admit they apply their stated standards and criteria "generally" and "where appropriate."  Kahn at 392:12-393:16, 394:7-395:16; Sinnar at 523:8-525:17; Lubman at 303:9-25, 316:14-317:13.

30.   The TSDB does not contain a field to indicate an individual's religion.

Lubman at 339:19-22; TX 1033.

**Response to No. 30:** Plaintiff agrees with this proposed finding to the extent it means that there is no specific TSDB field labeled "religion."

31.   FBI policy prohibits the nomination of an individual to the TSDB or its derivative subsets on the basis of religion or nationality.  Lubman at 565:4-6; 611:19-23.

**Response to No. 31:** Plaintiff disagrees because the reasonable suspicion standard for the TSDB is so low that it can facilitate the use of criteria such as religion or national origin in watchlisting decisions, and because it is impossible to confirm or deny this statement since defendants admit REDACTED

and defendants also admit they apply their stated standards and criteria "generally" and "where appropriate."  Also, the failure to keep records of watchlisted individuals' religion precludes enforcement of any such policy even assuming it existed.  Kahn at 392:12-393:16, 394:7-395:16; Sinnar at 523:8-525:17; Lubman at 303:9-25, 316:14-317:13,320:1-321:6, 339:19-340:5.

32.   Individuals are not notified when they are placed in the TSDB because doing so could compromise a counterterrorism intelligence effort or investigation by revealing sources and methods, and alerting the individual that they may be the subject of an investigation, which could compromise the investigation.  Lubman at 563:20-564:7.

**Response to No. 32:** Plaintiff agrees that individuals do not receive notice of their status in the TSDB at any time, but disagrees that (1) the fact of TSDB placement may properly remain a secret once an individual with knowledge of how the watchlisting enterprise works is denied boarding on an aircraft, (2) providing notice would reveal sources or methods of investigation, and (3) revealing status after a denial of boarding would compromise an investigation, because at

8

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN BRAHIMY DHS ET AL C 06-CV-00545-WHA (N D  CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

that point the individual already knows he or she probably was watchlisted.

> Exh. 102, pp. TSC000119-124 (TSDB exports information to the No Fly List and other databases); Exh. 506, pp. P001863, P001892 (mandatory nomination for subjects of FBI full and preliminary counterterrorism investigations); Exh. 508, p. TSC000007.

33.     Individuals are not given an opportunity to present evidence rebutting the inclusion of their identity in the TSDB because to do so would require the government to release classified information which would compromise investigations, compromise terrorist combative efforts, and could compromise lives and undercover sources.  Lubman at 564:8-16.

**Response to No. 33:** Plaintiff agrees that individuals placed in the TSDB are not given an opportunity to present evidence to rebut their inclusion, but disagrees that doing so would compromise terrorism investigations, efforts to combat terrorism, lives, or undercover sources. The cited testimony provides no explanation or factual support for the belief that these consequences could occur, and no examples of any terrorist threats that were thwarted due to the TSDB and its associated watchlists.  *See* Evidence Cited in Response to No. 32.

34.     Pursuant to a Memorandum of Understanding, the government sought to "establish and implement a coordinated redress process to respond to individual complaints about adverse experiences during terrorism screening that relate to the use of information contained in the [TSDB]."  TX 537 at NCTC000002; Lubman at 560:21-563:6.

**Response to No. 34:** Plaintiff agrees that this is what the MOU purports to do, but disagrees that a proper redress process to respond to inclusion in the TSDB has been established.

> Dep. of D. Lubman (FBI) at 83:4-10, 98:1-6, 101:7-17; Kahn at 402:21-405:4, 415:7-25; Lubman at 609:18-611:18; Exhs. 40 & 48.

35.     As part of the legislation implementing the recommendations of the 9/11 Commission, Congress enacted 49 U.S.C. § 44926, which requires DHS to establish a timely and fair process for individuals who believe they have been delayed or prohibited from boarding a commercial aircraft because they were wrongly identified as a threat in the screening systems and programs utilized by TSA, CBP, or any other office or component of DHS.

> Implementing Recommendations of the 9/11 Commission Act of 2007, Pub. L. No. 110-53, 121 Stat. 266, 482-83 (Aug. 3, 2007); 49 U.S.C. § 44926.

**Response to No. 35:** Plaintiff agrees that this legislation was implemented, but disagrees

9

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN BRAHIM V. DHS ET AL. CASE NO. C 06-CV-00545-WHA (N.D. CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

that the process actually established is "timely and fair."  Exhs. 39, 40, 48, 517 & 519.

36.     DHS TRIP—and prior to 2007, the Traveler Identity Verification Program—is the central administrative redress process for individuals who claim they, for example, have been denied or delayed airline boarding or have been repeatedly referred for additional screening prior to being permitted to board.

49 U.S.C. § 44926; 73 Fed. Reg. 64018-01 (Oct. 28, 2008); 49 C.F.R. 1560.201-1560.207; Lubman at 348:12-23; 561:16-562:9, 563:3-6; 603:17-19; TX 39.

**Response to No. 36:** Plaintiff agrees this program exists, but disagrees that it constitutes an adequate "redress process" because it does not permit discovery of information necessary to rebut the allegations of association with terrorism.  The process is flawed because a redacted one-sided record that does not include the factual basis for the watchlisting does not afford a meaningful opportunity for the complainant to challenge his or her placement on the TSDB and its associated databases.  Exhs. 39, 40, 48, 517 & 519.

37.     Travelers who experience travel difficulties at transportation hubs, including denied or delayed boarding, or who believe that they have been improperly placed in the TSDB, may submit a redress inquiry to DHS TRIP.

49 C.F.R. § 1560.205(a); Lubman Dep. 0098:5-9; Lubman at 561:13-17.

**Response to No. 37:** Plaintiff agrees but notes that the government's failure to provide notice to individuals that they have been placed in the TSDB renders it less likely that the individual will understand the need to file a redress request specifically for the TSDB.  Kahn at 402:21-403:2.  Although much information about the government's watchlisting enterprise is publicly available, even assuming an aggrieved party suspected some wrongdoing based on an encounter at an airport, the border, or with state or local police, that party would have to wade through hundreds of pages of material to gain an understanding of the system in order to determine that he or she is probably in the TSDB and might be able to apply for redress through DHS TRIP, which is actually intended to apply to persons who have trouble boarding an aircraft. *See*, *e.g.*, Exhs. 101, 102, 506, 508; Dep. of D. Lubman (FBI) at 98:5-9.

38.     If the applicable DHS component determines that the complainant is an exact or

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V DHS ET AL, 3:06-CV-00545-WHA (N D CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

near match to an identity in the TSDB, the matter is referred to the TSC Redress Unit.

Lubman at 348:14-19, 561:23 – 562: 1.

**Response to No. 38:** Plaintiff agrees with this proposed finding.

39.     The TSC Redress Unit reviews the available information to determine (1) whether the individual's status is an exact match to an identity in the TSDB; if an exact match, (2) whether the traveler should continue to be in the TSDB; and (3) if the traveler should continue to be in the TSDB, whether the traveler meets the additional criteria for placement on either the No Fly or Selectee List.

Lubman Dep. 85:5-23; 87:22-24; Lubman at 562: 4-5; TX 537 at NCTC00008-9.

**Response to No. 39:** Plaintiff agrees to the extent this proposed finding provides background information, but the cited testimony and exhibit do not explain how this proposed finding applies to plaintiff's case.

40.     As part of this process, TSC conducts a "de novo review" of the TSDB record.

Lubman at 562:2-5.

**Response to No. 40:** Plaintiff disagrees to the extent this proposed finding suggests that TSC's review is a meaningful opportunity for watchlisted individuals to correct factual errors, since the TSC redress unit does not do REDACTED

41.     TSC's review includes contacting the agency that originally nominated the individual for placement in the TSDB, and analyzing any derogatory information that supports the nomination as well as any information from other sources.

Lubman at 562:3 – 5; TX 537 at NCTC00008-9; TX 250.

**Response to No. 41:** Plaintiff disagrees to the extent this finding implies the TSC looks beyond existing records or conducts additional fieldwork to test the accuracy of the information before it.  Moreover, even records that have gone through review by the TSC have been found to contain errors, and auditors have identified numerous errors and inconsistencies in TSDB records since the TSC was created in 2003.  *See* Evidence Cited in Response to Nos. 26 and 40.

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL., 3:06-CV-00545-WHA (N.D. CAL)
WARNING: THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW', AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

42.     The TSC Redress Unit then notifies DHS TRIP of any modification or removal of the individual's record.  Lubman at 562:7-9.

**Response to No. 42:** Plaintiff agrees to the extent this proposed finding provides background information, but the cited testimony does not explain how this proposed finding applies to plaintiff's case.  Plaintiff also notes that DHS does not communicate this information with the individual whose record was modified or removed.  Exhs. 40, 48, 517 & 519.

43.     In response to a request for redress, a determination letter is sent to the complainant.

49 C.F.R. § 1560.205(d); TX 102 at TSC000162-165; TX 40; Lubman at 609:22-610:4.

**Response to No. 43:** Plaintiff agrees that individuals may receive a determination letter. Kahn at 403:16-404:14; Dep. of R. Ibrahim at 173:9-21; Exh. 40.

44.     Plaintiff submitted a Passenger Identity Verification Form (PIVF) to DHS's Traveler Identity Verification Program on March 24, 2005.

Lubman at 342:1-9, 348:5-19; TX 39; TX 76.

**Response to No. 44:** Plaintiff agrees with this proposed finding.

45.     Plaintiff's PIVF was provided to TSC for review.  Lubman at 349:17-22; TX 76.

**Response to No. 45:** Plaintiff agrees with this proposed finding.

46.     After TSC conducted the requisite review, DHS's Traveler Identity Verification Program sent Plaintiff a letter informing her that it had conducted a review of any applicable records in consultation with other federal agencies, as appropriate, and made any necessary changes to her records.  TX 40; Plaintiff Dep. at 172:17-20; 173:9-14.

**Response to No. 46:** Plaintiff agrees that a letter was sent from the Office of Transportation Security Redress, but disagrees that the letter satisfied due process.  The letter did not clarify her status and instead simply stated: "[w]here it has been determined that a correction to records is warranted, these records have been modified to address any delay or denial of boarding that you may experience as a result of the watch list screening process."  Plaintiff further notes that no response was received until April 2006, months after she filed this lawsuit.

Dep. of R. Ibrahim at 172:11-173:2, 173:9-21; Exh. 40.

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL., 3:06-CV-00545-WHA (N.D. CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

47.     As a result of the review triggered by Plaintiff's PIVF application, Plaintiff was

REDACTED

REDACTED

**Response to No. 47:** Plaintiff agrees that this was Ms. Lubman's testimony at trial, but notes that this conflicted with her previous deposition testimony.  Lubman at 342:10-344:13, 345:17-346:10, 350:6-352:19; Exh. 228.

48.     In general, to approach the border of the United States and apply for admission to the United States at the port of entry, an alien must obtain a visa.

Cooper at 625:16-626:1; 690:7-9; 8 U.S.C. § 1182(a)(7).

**Response to No. 48:** Plaintiff agrees to the extent this proposed finding provides background information, but the cited authorities do not explain how this proposed finding applies to plaintiff's case.

49.     An alien who wishes to apply for a nonimmigrant visa must submit an application and, as a general matter, must appear before a U.S. consular officer at a U.S. Embassy or Consulate.

Cooper at 627:3-9; 628:1-4; 8 U.S.C. § 1202(c), (e), and (h); 22 C.F.R. § 41.102-103.

**Response to No. 49:** Plaintiff agrees to the extent this proposed finding provides background information, but the cited authorities do not explain how this proposed finding applies to plaintiff's case.  For example, it is unclear whether any of these grounds for waiver of the personal appearance found in 22 C.F.R. § 41.102(d)(2) were considered for Dr. Ibrahim.

50.     Once a visa application is submitted, the consular officer adjudicates the visa application under the provisions of the INA.

Cooper at 629:4-6; Cooper at 629:12-13; Cooper at 629:20-21; 8 U.S.C. § 1182(a); 8 U.S.C. § 1201(a).

**Response to No. 50:** Plaintiff agrees to the extent this proposed finding provides background information, but the cited authorities do not explain how this proposed finding applies to plaintiff's case.

PLAINTIFF'S RESPONSE TO DEFENDANTS' POST-TRIAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW;
Case No. C 06-0545 WHA        **HIGHLY CONFIDENTIAL – SUBJECT TO ATTORNEY'S EYES ONLY PROTECTIVE ORDER**

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL., 3:06-CV-00545-WHA (N.D. CAL.)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW', AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

51.     Once a visa application is submitted, the consular officer must either issue or refuse the visa.  22 C.F.R. § 41.121.

**Response to No. 51:** Plaintiff agrees to the extent this proposed finding provides background information, but the cited authorities do not explain how this proposed finding applies to plaintiff's case.  Plaintiff notes that defendants delayed adjudication of her 2009 and 2013 visa applications such that decisions were not issued before the time for the 2009 deposition and 2013 trial had already passed.

Exhs. 22, 27, 46, 47 & 68; Cooper at 689:13-690:6, 718:3-720:2.

52.     As a general matter, consular officers cannot issue a visa where it appears that the applying alien may be ineligible to receive a visa.

Cooper at 629:14-19; 629:22-630:4; 8 U.S.C. § 1201(g); 22 C.F.R. § 40.6; 22 C.F.R. § 41.121.

**Response to No. 52:** Plaintiff agrees that 8 U.S.C. § 1201(g)(3) (emphasis added) states: "No visa or other documentation shall be issued to an alien if . . . the consular officer knows or has reason to believe that such alien **is** ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law."  Plaintiff agrees that 22 C.F.R. § 14.121(b) and 22 C.F.R. § 40.6 contain the same language – "is ineligible."  Plaintiff disagrees to the extent this proposed finding contradicts statutory and regulatory language.

53.     One tool available to consular officers to inform visa adjudication is the Consular Lookout and Support System database ("CLASS"), which consular officers use to review for information that might inform the visa application and adjudication process.

Cooper at 634:10-24.

**Response to No. 53:** Plaintiff disagrees to the extent this finding implies that consular officers have discretion to decide whether or not to use the CLASS database in visa adjudications.  Cooper at 634:18-24.

54.     Information is entered into CLASS REDACTED


REDACTED

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V DHS ET AL , 3:06-CV-00545-WHA (N D  CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

**Response to No. 54:** Plaintiff agrees to the extent this proposed finding provides background information, but the cited authority does not explain how this proposed finding applies to plaintiff's case.  The cited testimony also states that REDACTED

55.   REDACTED

**Response to No. 55:** Plaintiff agrees to the extent this proposed finding provides background information, but the cited authority does not explain how this proposed finding applies to plaintiff's case.

56.   REDACTED

**Response to No. 56:** Plaintiff disagrees with this proposed finding to the extent that it implies that the visa refusal decision is based solely on the INA, when in fact the refusal may be triggered by REDACTED

REDACTED

57.   REDACTED

REDACTED

**Response to No. 57:** Plaintiff agrees with this proposed finding.

58.   REDACTED

**Response to No. 58:** Plaintiff disagrees to the extent that this finding implies that the

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL.; 3:06-CV-00545-WHA (N.D. CAL.)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

SAO is based solely on the INA, when in fact the refusal may be triggered REDACTED

59.     A request for an SAO initiates REDACTED

**Response to No. 59:** Plaintiff agrees that an SAO request initiates REDACTED

REDACTED

.

60.     Once an SAO has been requested, REDACTED

**Response to No. 60:** Plaintiff disagrees because REDACTED

The cited page of Exhibit 238 does not support the proposed finding.

Lubman at 329:22-331:6; Evidence Cited in Response to No. 59.

61.     REDACTED

**Response to No. 61:** Plaintiff disagrees because the cited testimony consists of

conclusory general statements, with no specific factual support.  For example, the cited

testimony does not say how often individuals who have had SAO reviews REDACTED

actually receive a visa.

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL., 2006-CV-00545-WHA (N.D. CAL.)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,' AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

62.     Under the INA, a visa that has been issued may be revoked at any time by the Secretary of State or a U.S. consular officer, including when information arises subsequent to nonimmigrant visa issuance that calls into question the visa bearer's eligibility for the visa.

Cooper at 630:9-22; 8 U.S.C. § 1201(i); 22 C.F.R. § 41.122(a).

**Response to No. 62:** Plaintiff agrees with this proposed finding.

63.     Once a visa is revoked, it is no longer usable for applying for admission to the United States.  Cooper 630:23-631:1.

**Response to No. 63:** Plaintiff agrees with this proposed finding.

64.     A visa revocation does not constitute a finding that the alien is ineligible for a visa; it only indicates that the alien *may* be ineligible based on information that has come to the attention of the Department of State.  Cooper at 446:10-447:1; 631:19-632:2.

**Response to No. 64:** Plaintiff disagrees with this proposed finding because the U.S. Department of State Foreign Affairs Manual states, "A consular revocation must be based on an actual finding that the alien is ineligible for the visa."  *See* 9 FAM 41.122 PN1.3, at ¶ (a) (12-22-2004), *available at* http://www.state.gov/documents/organization/87515.pdf; 22 C.F.R. § 41.122.

65.     Consular officers only adjudicate eligibility for a visa when a visa application is received.  A finding of ineligibility for a visa may only be made within the context of a visa application.  Cooper at 632:3-14; 645:17-18.

**Response to No. 65:** Plaintiff disagrees.  See Response to No. 64.

66.     If an alien wishes to travel to the United States and apply for admission after the alien's visa has been revoked, the alien may appeal the revocation by applying for a new visa and appearing before a consular officer to establish his or her eligibility for a new visa.

Cooper at 631:2-5.

**Response to No. 66:** Plaintiff agrees with this proposed finding.

67.     In general, when an alien's visa is revoked, the alien is informed of their right to establish their qualification for a visa through a new visa application.

Cooper at 631:2-8; TX 224.

**Response to No. 67:** Plaintiff agrees with this proposed finding.

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN KHRAPUNOV DHS ET AL. V. 3:06-CV-00545-WHA (N.D. CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

68.     A prior visa revocation is not grounds for denying a future visa application.

Cooper at 631:9-18; 8 U.S.C. § 1182(a)

**Response to No. 68:** Plaintiff disagrees because this proposed finding ignores the fact that visa applications trigger an inquiry about prior visa revocations and that the basis for a prior revocation may serve as the basis for a future denial, REDACTED        .  Exh. 27 at p. 2; Cooper at 701:19-702:19.  Plaintiff also disagrees because 8 U.S.C. § 1182(a) does not state that a prior visa revocation is not grounds for denying a future visa application.

69.     The fact that an individual is in the TSDB is, by itself, not a basis for denying his visa application or deeming him inadmissible to the United States.

Cooper 688:17-689:1; 8 U.S.C. §§ 1182, 1225.

**Response to No. 69:** Plaintiff disagrees because individuals in the TSDB are usually exported to the CLASS database and a search of CLASS is a standard part of the visa application process.  Neither 8 U.S.C. § 1182 nor 8 U.S.C. § 1225 states that inclusion in the TSDB alone is insufficient for denying a visa application or a finding of inadmissibility.  In fact, 8 U.S.C. § 1182(a)(3)(B)(II) provides that it is sufficient that a consular officer, the Attorney General, or the Secretary of Homeland Security "know[]" or "[have] reasonable ground to believe" that the alien is "engaged in or is likely to engage after entry in any terrorist activity."

Dep. of D. Lubman (FBI) at 177:15-20, 179:7-10, 220:25-221:5; Cooper at 428:18-21, 431:2-432:23.

70.     If a person is in the TSDB, that person may obtain a visa.  Cooper 688:17-19.

**Response to No. 70:** Plaintiff disagrees because the cited authority is conclusory and does not explain whether any alien in the TSDB has ever successfully obtained a visa.

71.     In 2000, as a Malaysian citizen seeking to study at Stanford University, Plaintiff was required to have a valid student visa in order to travel to the United States and apply for admission at the port of entry.

Plaintiff Dep. at 100:13-15; 8 U.S.C. § 1101(a)(15)(F); 8 U.S.C. § 1182(a)(7); 22 C.F.R. § 41.61; 22 C.F.R. § 41.112(a); Cooper at 625:16-23, 626:17-18, 636:9-13.

**Response to No. 71:** Plaintiff agrees with this proposed finding.

72.     Plaintiff was issued an F-1 student visa in September 2000 that was valid until

18

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL., C 06-CV-00545-WHA (N.D. CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

September 18, 2005.  Cooper at 626:17-18; 635:20-636:13; TX 207 at DOS000043.

**Response to No. 72:** Plaintiff agrees that her visa was issued in September 2000, but believes it was valid until January 11, 2007.  Dep. of R. Ibrahim at 213:1-214:3, 214:19-215:4.

73.     State prudentially revoked Plaintiff's F-1 visa on January 31, 2005.

Cooper at 637:5-22; TX 15.

**Response to No. 73:** Plaintiff agrees with this proposed finding.

74.     REDACTED


**Response to No. 74:**  Plaintiff disagrees that the "decision to revoke" included a review of classified information.  The cited testimony states that "there were classified documents reviewed **in association** with the revocation in 2005."  Cooper at 708:15-17.  The testimony fails to link the documents and their effect, if any, on the revocation decision.  *See also* Exh. 16 ("we will accept that the opening of an investigation itself is a prima facie indicator of potential ineligibility under 3(B).")

75.     As noted in the Certificate of Revocation, "subsequent to visa issuance, information [came] to light indicating that [Plaintiff] may be inadmissible to the United States and ineligible to receive a visa under section 212(a)(3)(B) [of the INA, 8 U.S.C. § 1182(a)(3)(B)], such that [she] should be required to re-appear before a U.S. Consular Officer to establish [her] eligibility for a visa before being permitted to apply for entry to the United States."  TX 15; Cooper at 637:23-638:8.

**Response to No. 75:** Plaintiff agrees that is what the Certificate of Revocation said.  Plaintiff disagrees that information came to light supporting that finding because there was "virtually no derogatory information" associated with her revocation.  Exh. 16; Cooper at 436:10-13.

76.     State revoked Plaintiff's visa because information came to light subsequent to the issuance of her visa in 2000 that indicated that Plaintiff may be ineligible for a visa.

Cooper at 637:23-638:8; 640:10-21; 641:14-19; 643:20-644:10; 645:2-3; 645:8-18;  TX 15; TX 16; TX 17.

19

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL., C 06-CV-00545-WHA (N.D. CAL)
WARNING: THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,' AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

**Response to No. 76:** Plaintiff disagrees for the reasons stated in her Response to No. 75. Exh. 16; Cooper 436:10-13.

77.     As with all visa revocations, the revocation of Plaintiff's visa did not constitute a finding that Plaintiff was inadmissible as of January 31, 2005, or a finding that Plaintiff was permanently ineligible for a visa in the future.

TX 224; Cooper at 631:19-632:2; 638:13-16; 638:21-639:4; 644:15-20; 649:4-6.

**Response to No. 77:** Plaintiff disagrees because this finding ignores the fact that visa applications trigger an inquiry about prior visa revocations and that the same factors that caused a revocation may serve as the basis for a future denial.  Exh. 27 at p. 2; Cooper at 701:19-702:19.

78.     State had in its possession derogatory information supporting the revocation of Plaintiff's visa.  Cooper at 439:19-22.

**Response to No. 78:** Plaintiff disagrees because she has no affiliations with terrorist organizations, has never supported terrorist activities, and is not a known or reasonably suspected terrorist.  Dep. of R. Ibrahim at 52:20-25, 201:23-202:3; REDACTED

. The phrase "had in its possession" is vague and not in the cited testimony.

79.     On April 14, 2005, State informed Plaintiff by letter that her visa had been revoked.  TX 224; Cooper at 647:12-14.

**Response to No. 79:** Plaintiff agrees that DOS issued a letter regarding plaintiff's visa revocation that was dated April 14, 2005.

80.     State further indicated that the revocation of Plaintiff's visa "does not necessarily indicate that [she is] ineligible to receive a [visa] in [the] future" and invited her to apply for a visa.  TX 224; Cooper at 648:20-649:3.

**Response to No. 80:** Plaintiff agrees that the letter indicated that the revocation, "does not necessarily indicate that you are ineligible to receive a U.S. visa in the future."  Plaintiff disagrees that the letter "invited" plaintiff to apply for a visa.  Exh. 224.

81.     After Plaintiff's visa was revoked, State entered a record into CLASS that would notify any consular officer adjudicating a future visa application submitted by Plaintiff that Plaintiff may be inadmissible under 8 U.S.C. § 1182(a)(3)(B).

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL., C-06-0545-WHA (N.D. CAL.)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

Cooper at 465:4-9; Cooper at 634:18-24, 678:21-679:9; TX 60at DOS000005; TX 60; TX 68 at DOS00083-84; 22 C.F.R. § 41.122(c).

**Response to No. 81:** Plaintiff agrees with this proposed finding.

82.      The fact that Plaintiff's visa has been revoked is not grounds for denying a future visa application, because revocation of a visa is not a finding of inadmissibility or ineligibility for a visa.  Cooper at 645:19-24; 649:4-6; TX 224.

**Response to No. 82:** Plaintiff disagrees.  See Response to No. 64 and No. 77.

83.      Plaintiff did not apply for a new visa until September 28, 2009, when she submitted an application for a B-1/B-2 tourist/business visitor visa in order to return to the United States to testify at her deposition.  TX 27; Cooper at 654:5-25; 655:1-7.

**Response to No. 83:**  Plaintiff agrees with this proposed finding, but adds that she testified that she did not apply for a visa between 2005 and 2009 due to her fear of going to the U.S. Embassy in Kuala Lumpur.  Ibrahim at 245:5-25.

84.      On September 29, 2009, Plaintiff was interviewed by Steven So, a consular officer at the U.S. Embassy in Kuala Lumpur.

Cooper at 420:22-423:14; 665:1-11; 669:22-670:4; TX 261.

**Response to No. 84:** Plaintiff agrees with this proposed finding.

85.      On September 29, 2009, Mr. So refused Plaintiff's visa application under Section 221(g) of the Immigration and Nationality Act (8 U.S.C. § 1201(g)), which requires the refusal of a visa application when the applicant fails to demonstrate entitlement to a visa based on available information at the time of the interview.  TX 261; Cooper at 423:15-19; 670:5-671:4.

**Response to No. 85:** Plaintiff agrees that Mr. So refused the visa application under Section 221(g).  Plaintiff disagrees that section 221(g) requires refusal because an "applicant fails to demonstrate entitlement."  Section 221(g) (8 U.S.C. § 1201(g)) includes three different reasons that documentation may not be issued, none of which are "failing to demonstrate entitlement."  8 U.S.C. § 1201(g).

86.      Because of Mr. So's concern that Plaintiff was potentially inadmissible under 8 U.S.C. § 1182(a)(3)(B) based on information reflected in CLASS with a "P(3)(B)" hit, a request was transmitted from the Consular Section for an SAO to State's Coordination Division of the

21

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM v. DHS ET AL., 3:06-CV-00545-WHA (N.D. CAL.)
WARNING: THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW, AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

Visa Office.

Cooper at 424:18-23; 426:8-21; 426:22-427:14; 429:15-21; 675:4-20; 677:10-25; 678:9-21; 679:10-20; 681:8-20; TX 68 at DOS000083-84.

**Response to No. 86:** Plaintiff agrees with this proposed finding.

87.  REDACTED

.

Cooper at 677:20-22; 678:14-21; 679:21-24.

**Response to No. 87:** Plaintiff agrees with this proposed finding.

88.  REDACTED

.

Cooper at 465:4-9; 678:21-679:9; TX 60 at DOS000005; TX 68 at DOS00083-84.

**Response to No. 88:** Plaintiff agrees with this proposed finding.

89.  REDACTED

Cooper at 431:17-19; 465:4-9; 678:22-679:9; 695:9-20; 709:14-710:15; TX 68 at DOS000084.

**Response to No. 89:** REDACTED

90.  REDACTED

**Response to No. 90:** REDACTED

91.  REDACTED

REDACTED

22

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL., 3:06-CV-00545-WHA (N.D. CAL.)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

**Response to No. 91:** Plaintiff agrees with this proposed finding.

92.    REDACTED

**Response to No. 92:** Plaintiff agrees with this proposed finding.

93.    The SAO response to the consular section stated that:

Information on this applicant surfaced during the SAO review that would support a 212(a)(3)(B) inadmissibility finding.  Posts should refuse the case accordingly. Since the Department reports all visa refusals under INA Section 212(a)(3)(B) to Congress, post should notify CA/VO/L/C when the refusal is affected.  There has been no request for an INA section 212(d)(3)(A) waiver at this time.

Cooper at 682:20-683:12; TX 68 at DOS000085.

**Response to No. 93:** Plaintiff agrees with this proposed finding.

94.    The consular officer followed the Department of State's instructions and denied Plaintiff's visa application in accordance with the instructions from the Coordination Office of State.  Cooper at 693:4-18; TX 22, 261 at DOS000061-62.

**Response to No. 94:** Plaintiff disagrees to the extent this finding implies the Department of State is the only agency involved in the visa application process, when in fact REDACTED
Lubman at 329:22-331:6, 617:15-619:2.
REDACTED                                     is the source of the alleged "derogatory information."
Lubman at 327:7-20, 559:1-560:19; Exh. 8; Exh. 506, pp. P001851-1853.

95.    On December 14, 2009, a consular officer denied Plaintiff's visa application on the basis of a finding of inadmissibility under 8 U.S.C. § 1182(a)(3)(B).

Cooper at 692:18-694:8; 687:2-7; TX 261 at DOS000061-62; TX 47 at P001033.

**Response to No. 95:** Plaintiff agrees this was the stated basis of the denial.  Plaintiff disagrees that the finding was correct, because defendants have admitted that REDACTED

96.    Removal REDACTED                                     will not affect the eligibility determination of a consular officer reviewing a future visa application.  Cooper at 688:20-689:1.

**Response to No. 96:** Plaintiff disagrees with this proposed finding.  REDACTED

PLAINTIFF'S RESPONSE TO DEFENDANTS' POST-TRIAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW;
Case No. C 06-0545 WHA    **HIGHLY CONFIDENTIAL – SUBJECT TO ATTORNEY'S EYES ONLY PROTECTIVE ORDER**

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN BRAHMI V. DHS ET AL, C06-CV-00545-WHA (N.D. CAL.)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

REDACTED is one factor affecting eligibility for a visa, and elimination of that factor, and information related to it, may affect plaintiff's ability to obtain a visa.

Dep. of D. Lubman (FBI) at 176:24, 177:15-20, 179:7-10, 220:25-221:1, 221:4-5; Cooper at 428:18-21.

97.    The visa refusal letter dated December 13, 2009, did not have a check mark next to the box stating the following: "You are eligible to apply for a waiver of the ground(s) of ineligibility."  TX 47 at P001033.

**Response to No. 97:** Plaintiff agrees with this proposed finding.

98.    The INA provides that nonimmigrant visa applicants may apply for a waiver of many of the grounds of visa ineligibility at 8 U.S.C. § 1182(a).

Cooper at 698:15-699:18; 8 U.S.C. § 1182(d)(3)(A).

**Response to No. 98:** Plaintiff agrees with this proposed finding.

99.    A consular officer may, upon his or her own initiative, and shall, at the request of the Secretary of State, or upon the request of the alien, submit a report to the Department for possible transmission of a request that the DHS waive a nonimmigrant visa applicant's ground of ineligibility under 8 U.S.C. § 1182(a), with certain exceptions.

8 U.S.C. § 1182(d)(3)(A); 22 C.F.R. § 40.301(a).

**Response to No. 99:** Plaintiff disagrees to the extent that 8 U.S.C. § 1182(d)(3)(A) states that the Attorney General approves such waivers, not DHS.  Plaintiff also disagrees to the extent that 22 C.F.R. § 40.301 does not specify that the "report" submitted to the Department of State "for possible transmission to the Secretary of Homeland Security" contain a request for waiver.

100.    The decision of the consular officer or the Secretary of State to recommend a waiver to the DHS is entirely discretionary.  8 U.S.C. § 1182(a); 22 C.F.R. § 40.301.

**Response to No. 100:** Plaintiff agrees that under 22 C.F.R. § 40.301, consular officers have discretion to "submit a report" to the Department of State, and the Secretary of State has discretion to request that the consular officers "submit a report" to the Department of State. However, plaintiff disagrees to the extent that 22 C.F.R. § 40.301 does not specify what this "report" contains; it does not state that the "report" is a request to DHS for waiver.  In addition, 8

24

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL., 3:06-CV-00545-WHA (N.D. CAL.)
WARNING: THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW', AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

U.S.C. § 1182(d)(3)(A) states that the Attorney General approves such waivers, not DHS.

101.    The statute and regulations do not require notice to nonimmigrant visa applicants that the statute provides a possible waiver for their ineligibility.

8 U.S.C. § 1182(a); 22 C.F.R. § 40.301.

**Response to No. 101:** Plaintiff disagrees because defendants fail to cite regulations that require notice of any statutory provision or regulation under which a refused applicant may overcome the refusal.  The applicable regulation for visa refusal provides that:

> When a consular officer knows or has reason to believe a visa applicant is ineligible and refuses the issuance of a visa, he or she must inform the alien of the ground(s) of ineligibility (unless disclosure is barred under INA 212(b)(2) or (3)) and **whether there is, in law or regulations, a mechanism (such as a waiver) to overcome the refusal**.

22 C.F.R. § 41.121(b)(1) (emphasis added).  Thus, consular officers are required to give notice to individual nonimmigrant visa applicants if they are eligible for any waiver.

102.    Plaintiff recently applied for a visa.  Cooper at 689:13-15.

**Response to No. 102:** Plaintiff agrees with this proposed finding.

103.    FBI Special Agent Kevin Kelley met with Plaintiff at her home in December 2004.  Kelley at 369:7-8.

**Response to No. 103:** Plaintiff disagrees with the characterization of Special Agent Kelley's unannounced interview of her at her home on December 23, 2004, as a "meeting," to the extent that term implies it was not coercive.  Dep. of R. Ibrahim at 41:25-42:23; Kelley at 369:7-11; Exhs. 4, 71 & 116.

104.    Special Agent Kevin Kelley and Plaintiff discussed many topics during that interview.  TX 4; TX 71.

**Response to No. 104:** Plaintiff disagrees with the characterization of Special Agent Kelley's interview as a "discussion" because it was an interview, and further disagrees that "many topics" were covered.  The interview consisted primarily of questions pertaining to plaintiff's affiliations with Islamic groups, her travel plans to Muslim countries, and her husband.

Kelley at 369:7-11, 372:6-375:7; Exhs. 4, 13, 71 & 116.  Dep. of R. Ibrahim at 49:8-77:9.

105.    Special Agent Kelley did not state that Malaysians are "blacklisted" from the

25

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL., CASE NO. C 06-CV-00545-WHA (N.D. CAL.)
WARNING: THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW', AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

United States or make any similar statement.  Kelley at 378:21-379:10.

**Response to No. 105:** Plaintiff disagrees.  Dep. of R. Ibrahim at 51:16-25.

106.     On the morning of January 2, 2005, Plaintiff was REDACTED

Interrogatory Response at 298:1-6; Lubman Dep. at 177:3-5; 178:9-16.

**Response to No. 106:** Plaintiff agrees with this proposed finding.

107.     On January 2, 2005, Plaintiff was denied boarding on a flight from San Francisco to Kona, Hawaii.  TX 229.

**Response to No. 107:** Plaintiff agrees but adds she was not only denied boarding, but also arrested, handcuffed, and detained in a holding cell for approximately two hours, with no consideration for either her religious or medical needs.  Dep. of R. Ibrahim at 109:3-128:1.

108.     Within hours of her denial of boarding, TSC researched Plaintiff's status and determined that Plaintiff's identity REDACTED                               .

Interrogatory Response at 298:1-6; TX 62.

**Response to No. 108:** Plaintiff agrees with this proposed finding.

109.     On January 2, 2005, TSC REDACTED

                                                                              .

Interrogatory Response at 298:1-8; Kelley at 367:17-21.

**Response to No. 109:** Plaintiff disagrees to the extent this proposed finding omits that REDACTED



110.     On that same day, Plaintiff arranged to fly on a United Airlines flight to Kona, Hawaii scheduled to depart the following day, on January 3, 2005.  Plaintiff Dep. 132: 7-10.

**Response to No. 110:** Plaintiff agrees with this proposed finding.

111.     From January 3-7, 2005, Plaintiff attended a conference in Kona, Hawaii, and she spoke on the last day of the conference.  Ibrahim at 239:12-21; TX 32.

**Response to No. 111:** Plaintiff agrees with this proposed finding.

112.     On January 7, 2005, Plaintiff flew on a United Airlines flight to Los Angeles and

26

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V DHS ET AL , 3:06-CV-00545-WHA (N D  CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

then flew on a Malaysian Airlines flight to Kuala Lumpur.

Ibrahim at 236:22 – 237:2; 6-7, 16-17.

**Response to No. 112:** Plaintiff agrees with this proposed finding.

113.    Plaintiff was not detained or arrested before or during her flights on January 3,

2005 and January 7, 2005.  Ibrahim 236:16 - 237:5.

**Response to No. 113:** Plaintiff disagrees to the extent that this proposed finding suggests

that she was not subjected to increased scrutiny.  When she traveled on January 3, 2005, Dr.

Ibrahim was issued a bright red colored boarding pass.  Dep. of R. Ibrahim at 141:13, 141:15,

149:1-17.  Dr. Ibrahim also saw David Nevins of United making more phone calls before he

issued her a boarding pass.  Dep. of R. Ibrahim at 140:19-23, 141:1-13, 141:15, 212:13-18.

114.    The handling code REDACTED


**Response to No. 114:** Plaintiff disagrees REDACTED

she would not have been arrested and detained for two hours.  Dep.

of R. Ibrahim at 105:4-107:10.  In addition,REDACTED

cannot be achieved without a lengthy detention, during which a reasonable person

would not feel free to leave.  *See* Exh. 8, p. NCTC000071.

115.    Plaintiff REDACTED



**Response to No. 115:** Plaintiff agrees with this proposed finding, but notes that

REDACTED

REDACTED

116.    During the entire pendency of this litigation, from its filing in January of 2006

through today, REDACTED

Interrogatory Response at 298:8-13.

**Response to No. 116:** Plaintiff disagrees that the cited interrogatory response supports

this finding or that this finding is relevant.

PLAINTIFF'S RESPONSE TO DEFENDANTS' POST-TRIAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW;
Case No. C 06-0545 WHA      **HIGHLY CONFIDENTIAL – SUBJECT TO ATTORNEY'S EYES ONLY PROTECTIVE ORDER**

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V DHS ET AL , 3:06-CV-00545-WHA (N D  CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

117.    On October 20, 2009, REDACTED

**Response to No. 117:** Plaintiff agrees with this proposed finding.

118.    REDACTED

REDACTED

**Response to No. 118:** REDACTED

The inclusion has restricted her travel, affected her professionally, limited her involvement in this lawsuit, and kept her from entering a country that she considers to be her second home.

Exh. 47; Dep. of Ibrahim at 207:16-23, 221:10-222:18, 222:23-223:6, 223:17-224:11, 224:14-226:21, 227:15-228:1; Ibrahim at 208:7-211:25.

119.    Plaintiff's current status REDACTED

.

**Response to No. 119:** Plaintiff agrees but notes that REDACTED

REDACTED

120.    There is no evidence that Defendants publicly revealed Plaintiff's watchlist status or the basis for Plaintiff's visa revocation and denial (outside of the context of this litigation).

Ibrahim at 238:15-18; Lubman at 563:20-564:7.

**Response to No. 120:** Plaintiff disagrees because she was publicly arrested in an airport and led away in handcuffs while wearing hijab in front everyone at the United Airlines ticket counter, and because watchlisting status is shared with numerous different downstream entities for the purpose of triggering specific consequences.

Exh. 6 at p. TSC001665; Dep. of R. Ibrahim at 104:22-106:8, 109:18-110:9, 110:13-111:12, 114:16-23.

121.    Since 2005, Plaintiff has flown to the United Kingdom, Germany, Italy, the

28

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL., 3:06-CV-00545-WHA (N.D. CAL.)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

Netherlands, Morocco, China, and Thailand, and at no point during any of these flights was Plaintiff arrested, detained, delayed, or otherwise harmed.

Ibrahim at 226:12-236:6; Ibrahim 242:13-20.

**Response to No. 121:** Plaintiff agrees that she traveled to these countries without being arrested or detained, but disagrees that she was not harmed.  The fact that she had to fly to the United Kingdom instead of the United States to give her deposition in this case constitutes harm.

Dep. of R. Ibrahim at 177:6-16; Exh. 27; Exh. 46; Exh. 47; Cooper at 423:15-424:2, 424:6-427:17, 687:12-21; Exh. 68.

122.    Plaintiff flew from San Francisco to Hawaii on January 3, 2005 and from Hawaii to Los Angeles on January 7, 2005, and at no point during those flights was she arrested or detained.  Ibrahim at 236:13-237:5.

**Response to No. 122:** Plaintiff disagrees for the reasons stated in response to No. 113.

123.    Plaintiff flew on a U.S. carrier on January 3, 2005 and January 7, 2005.

Ibrahim at 237:6-22.

**Response to No. 123:** Plaintiff agrees with this proposed finding.

124.    Plaintiff has not been arrested in Malaysia or in any other country since 2005.

Ibrahim 241:6-10.

**Response to No. 124:** Plaintiff agrees with this proposed finding.

125.    As a Malaysian foreign national, Plaintiff requires a visa to approach the borders of the United States to seek permission to enter.

Cooper at 625:16-626:1; 8 U.S.C. § 1182(a)(7).

**Response to No. 125:** Plaintiff agrees with this proposed finding.

126.    It is unlawful for air carriers to transport to the United States aliens who lack proper documentation, including a valid visa.  8 U.S.C. § 1323.

**Response to No. 126:** Plaintiff agrees with this proposed finding.

127.    Plaintiff's inability to fly to the United States is the result of her lack of a valid visa.  Lubman at 577:7-23.

**Response to No. 127:** Plaintiff disagrees to the extent this finding is meant to imply that

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM v. DHS ET AL, CASE NO. C-06-CV-00545-WHA (N.D. CAL)
WARNING: THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW', AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

her inability to obtain a visa is unrelated to REDACTED

. The cited testimony does not support such a conclusion.  Plaintiff further disagrees because even if she were able to obtain a visa, she would still be screened through the TECS system by CBP before entry [Lubman at 620:3-14], and because placement REDACTED alone may inhibit travel, regardless of an individual's ability to obtain a visa.  Kahn at 398:15-399:6; Exh. 522; *see also* Declaration of Raihan Mustafa Kamal (Docket No. 651), ¶¶ 11-19 (effect of CBP "no board" recommendations).

128.     Plaintiff's inability to fly to the United States is not the result of REDACTED

**Response to No. 128:** Plaintiff disagrees.  See immediately preceding Response to No. 127.  Defendants admit plaintiff is REDACTED
and defendants identify plaintiff's inability to get a visa as the reason she cannot travel to the United States.  Lubman at 312:5-313:18; 577:7-23.

129.     The fact that Plaintiff REDACTED          does not require that she be arrested or detained.  TX 9; Lubman 620:15-17; Ibrahim 241:6-10.

**Response to No. 129:** Plaintiff agrees only to the extent defendants concede the possibility that she could be arrested REDACTED          in the future.  Plaintiff's prior watchlisting led to her arrest and detention in the past, so there is no guarantee that the same would not occur again.  Dep. of R. Ibrahim at 129:18-23.

130.     Over the past eight years, Plaintiff has continued her successful career in academia at the University Putra Malaysia ("UPM"), where Plaintiff has been employed since her return to Malaysia.  Ibrahim at 218:22-226:1; TX 28 at 2-3.

**Response to No. 130:** Plaintiff agrees that she has experienced professional success, but disagrees with the implication that she has not faced obstacles in her career, when in fact her professional growth is limited by her inability to travel to the United States and the restrictions on her ability to travel cause her embarrassment among her colleagues.

Ibrahim at 208:7-210:3, 210:4-211:25.  Dep. of R. Ibrahim at 221:10-222:18, 222:23-223:6, 223:17-224:11, 224:14-226:21, 227:15-228:1.

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS, ET AL., CASE CV-06-0545-WHA (N.D. CAL.)
WARNING: THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW', AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

131. Since 2005, she has been promoted from Lecturer to Senior Lecturer, to Associate Professor, and finally to Professor. 218:22-219:20; 220:11-16; TX 28 at 2-3.

**Response to No. 131:** Plaintiff agrees with this proposed finding.

132. The research grant funding that Plaintiff alone received at one time accounted for 75% of the grant funding received for the entire faculty. Ibrahim at 224:5-224:11; 224:21-225:5.

**Response to No. 132:** Plaintiff agrees with this proposed finding.

133. She has also been selected for administrative promotions, starting as Deputy Dean in 2006 and achieving the title of Dean for the Faculty of Design and Architecture in 2011.

Ibrahim at 219:13-16; 221:12-222:21.

**Response to No. 133:** Plaintiff agrees with this proposed finding.

134. Plaintiff admitted that she has been "incredibly successful" at UPM.

Ibrahim at 223:8-12.

**Response to No. 134:** Plaintiff agrees that she is accomplished, but disagrees with the implication that her career has not suffered as a result of her watchlisting. See Evidence Cited in Response to No. 130.

135. Plaintiff has extensively coordinated and exchanged information with her U.S. colleagues via email and telephone conversations. Ibrahim at 242:21-243:12.

**Response to No. 135:** Plaintiff agrees with this proposed finding in part, but disagrees with the implication that her professional communications have not been negatively affected by her watchlisting. See Evidence Cited in Response to No. 130 and 134.

136. On January 2, 2005, Plaintiff planned to return to Malaysia because she expected to be penalized if she did not report back to her work in Malaysia when she completed her studies in the U.S, and would only need to return to the United States to discuss the comments of one professor to her paper.

Plaintiff Dep. at 30:18-21, 31:10-13; 34:2-10; Ibrahim at 238:2-238:8.

**Response to No. 136:** Plaintiff agrees with this proposed finding except for the statement that her "only" reason to return to the United States was to discuss her paper with one professor. Plaintiff testified that she decided to return to the United States in March 2005 to work with

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM v. DHS ET AL, CASE C-06-00545-WHA (N.D. CAL.)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

Professor Mark Nissen, and also to see Professor Paulson who was dying of cancer.  She testified

she was later unable to accept an invitation to a conference in the United States.  She also

explained that she needs to travel to the United States to work with other colleagues, interact

with venture capitalists, and commercialize her inventions.  She also has social connections.

Plaintiff told Agent Kelley that she hoped to return to the Bay Area on an annual basis.

> Ibrahim at 208:7-210:3; Dep. of R. Ibrahim at 61:18-23, 158:20-159:6, 207:16-23, 208:2-5; 221:10-228:1, Exh. 4, P000777; Exh. 116.

137.    Though Plaintiff claims that there have been conferences in the United States

which she wanted to attend between 2005 and 2009, she did not apply for a visa until September

2009, when she applied for a visa so that she could testify in this case.

> Ibrahim at 241:21-242:6; Cooper at 654:5-25; 655:1-7; TX 27.

**Response to No. 137:** Plaintiff agrees to the extent stated in her Response to No. 83.

## PROPOSED CONCLUSIONS OF LAW

1.    **Standing:** Plaintiff does not have standing to bring her claims because REDACTED

and (3) she did not establish the "significant

voluntary connection" to the United States such that she, as a non-resident alien, has the right to

assert constitutional claims.

> Proposed Findings of Fact ¶¶ 69, 72,  112-113, 116-119, 121-124, 129-136; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (Plaintiff cannot rely on allegations from the complaint but rather "must 'set forth' by affidavit or other evidence 'specific facts'" establishing each element of standing); *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (must show that [she] is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 170 (2000) (distinguishing the doctrine of standing from the doctrine of mootness); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *Ibrahim v. DHS*, 669 F.3d 983, 994-97 (9th Cir. 2012) (finding standing based on conclusion "that removal of [Plaintiff's] name from government watch lists would make a grant of a visa more likely.").

**Response to No. 1:** Plaintiff disagrees on the basis that the facts proven at trial

demonstrate that she has standing under the Ninth's Circuit decision in *Ibrahim v. Department of*

*Homeland Security* ("*Ibrahim II*"), 669 F.3d 983 (9th Cir. 2012).  First, the Ninth Circuit held

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL.; 3:06-CV-00545-WHA (N.D. CAL.)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW', AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

1   that Dr. Ibrahim had standing because she is on one or more government watchlists.  *Ibrahim II*,

2   669 F.3d at 992-93; *see also Shearson v. Holder*, 865 F. Supp. 2d 850, 859-60 (N.D. Ohio 2011)

3   (allegation of erroneous placement on watchlist is "certainly is a wrong that confers Article III

4   standing").  The evidence at trial showed that Dr. Ibrahim is currently REDACTED

5

6                                                                                                              .

7          Second, the Ninth Circuit held that Dr. Ibrahim has standing because she suffers travel

8   restrictions, including the diminished likelihood she would be granted a visa to the United States,

9   due to her placement on government watchlists.  *Ibrahim II*, 669 F.3d at 993.  Plaintiff showed at

10  trial that REDACTED

11

12

13

14

15

16

17

18

19         Third, the Ninth Circuit held that Dr. Ibrahim has standing because her intentions to

20  travel to the United States and elsewhere are not hypothetical "some day" intentions, and

21  because she has "substantial voluntary connection with the United States through her Ph.D.

22  studies." *Ibrahim II*, 669 F.3d at 993-94, 996.  At trial, Dr. Ibrahim established her deep

23  connection with the United States, and her continuing need and desire to travel to the United

24  States for professional reasons.  *See*, *e.g.*, Dep. of R. Ibrahim at 207:16-23, 208:2-5, 221:10-

25  222:18, 222:23-223:6, 223:17-224:11, 224:14-226:21, 227:15-228:1.

26         2.     Plaintiff is a non-resident alien living in Malaysia, with no evidence indicating

27  that she has either presence or property in the United States.  She left the United States in 2005,

28  intending to return permanently to Malaysia after completing her graduate work; as a result, she

33

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS, ET AL, CASE NO. C 06-0545-WHA (N.D. CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

has no constitutional rights under applicable Circuit precedent.

> Proposed Findings of Fact ¶¶ 71, 112, 136-37; *Ibrahim v. DHS*, 669 F.3d 983, 997 (9th Cir. 2012) (finding plaintiff had right to assert constitutional claims only where she alleged that "purpose of her [January 2005] trip was to further, not to sever, her connection to the United States, and she intended her stay abroad to be brief")

**Response to No. 2:** Plaintiff agrees that she resides in Malaysia and does not own property in the United States.  Plaintiff disagrees with the remainder of this proposed conclusion because the Ninth Circuit's holding in *Ibrahim II* did not impose a presence or property requirement, and did not impose any requirement that plaintiff plan to spend a certain amount of time in the United States.  Rather, the Ninth Circuit found that plaintiff has standing in relevant part because of her "significant voluntary connection" with the United States developed during her education in the United States, and because of her intentions to return to the United States if permitted to do so.  *See Ibrahim II*, 669 F.3d at 993-994, 997.  At trial, Dr. Ibrahim established her deep connection with the United States, and her continuing need to travel to the United States for professional reasons.  *See*, *e.g.*, Dep. of R. Ibrahim at 207:16-23, 208:2-5, 221:10-222:18, 222:23-223:6, 223:17-224:11, 224:14-226:21, 227:15-228:1.

     3.    **Procedural Due Process:** Even if she had standing, Plaintiff failed to establish that she has been deprived of a liberty interest that would trigger a due process analysis.

> Proposed Findings of Fact ¶¶ 69, 120, 121-124, 129; *Wedges/Ledges of Cal. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994).

**Response to No. 3:** Plaintiff disagrees because she has established that she has been deprived of liberty and property interests protected by the Constitution, including the right to travel internationally, the right to be free from incarceration, the right to free association with other Muslims and her family members, the right to pursue the occupation of her choice, the right to possession of money, the right to be free from false stigmatization, and the right to equal protection.  *See* Plaintiff's Proposed Conclusions of Law, No. 3.

     4.    Plaintiff's limited REDACTED           does not interfere with any liberty or property interest that would trigger substantive or procedural due process.

> Proposed Findings of Fact ¶¶ 69, 129-135.

**Response to No. 4:** Plaintiff disagrees because she demonstrated that REDACTED

34

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V DHS ET AL , 3:06-CV-00545-WHA (N D  CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

REDACTED interferes with her constitutionally protected liberty and property interests.  Plaintiff showed at trial that REDACTED

5.     The decisions of Department of State consular officials with regard to admissibility of aliens are not reviewable.

> *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) ("[U]nadmitted and nonresident alien[s] . . . [have] no constitutional right of entry to this country as a nonimmigrant or otherwise."); *U.S. ex rel Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("[w]hatever the procedure authorized by Congress is [to challenge an alien's denial of admission], it is due process as far as an alien denied entry is concerned.");  *Ibrahim II*, 669 F.3d at 993 ("Ibrahim's future ability to obtain a visa is uncertain and we would be powerless to review a denial").

**Response to No. 5:** Plaintiff agrees that courts have held decisions of consular officers to deny a visa are immune from judicial review.  Plaintiff disagrees that this legal conclusion is relevant, because the facts of this case show that the 2009 visa denial was not the decision of a consular officer REDACTED

35

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V DHS ET AL , 3:06-CV-00545-WHA (N D  CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

REDACTED

The refusal instructions do not contain language that acknowledges any discretion to decline to follow them: "Post is to notify CA/VO/L/C when visa refusal is effected."  Exh. 22; *see also* Exh. 68, p. DOS UNCLASS PRIV 000085.  Since the decision to deny plaintiff's 2009 visa application was not discretionary with DOS or a consular official, plaintiff may challenge it.  *See also Din v. Kerry*, 2013 U.S. App. LEXIS 10408, *3, 12-34 (9th Cir. May 23, 2013) (United States citizen able to exercise constitutional rights could challenge government's failure to put forth a facially legitimate reason for denying her husband's visa application pursuant to 8 U.S.C. § 1182(a)(3)(B)).

6.     Plaintiff's inability to travel to the United States stems from her lack of a visa, and that inability cannot be the basis of a due process claim, because it amounts to a challenge to the visa decision.

> Proposed Findings of Fact ¶¶ 48, 127; *Kleindienst*, 408 U.S. at 762; *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."); *see also* Nov. 1, 2013 Order on Summ. J. at 10 ("Our court of appeals has ruled that plaintiff's substantial connection to the United States gives her standing to assert constitutional claims but this ruling cannot undo the clear cut rule in *Kleindienst*.").

**Response to No. 6:** Plaintiff disagrees because her due process claims are rooted in her REDACTED                                                                 .

The Ninth Circuit recognized that Ibrahim had standing to bring her due process claims notwithstanding the reviewability of visa decisions:

> [I]t is a reasonable inference that removal of her name from government watchlists would make a grant of a visa more likely. If Ibrahim's name were removed from the TSDB, and thereby removed from the Consular Lookout and Support System, the State Department

36

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM v. DHS ET AL., C 06-0545-WHA (N.D. CAL.)
WARNING: THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW', AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

would be more likely to grant her a visa, given that it has relied on her alleged connection to terrorism as the basis for revoking her visa and denying her application for a new one. Though Ibrahim's future ability to obtain a visa is uncertain and we would be powerless to review a denial, "plaintiffs need not demonstrate that there is a 'guarantee' that their injuries will be redressed by a favorable decision . . . [P]laintiffs must show only that a favorable decision is *likely* to redress [their injuries], not that a favorable decision *will inevitably* redress [their injuries].

*Ibrahim II*, 669 F.3d at 993 (internal citations omitted). The evidence at trial demonstrated that one of the consequences of inclusion REDACTED is a diminished likelihood that one would be granted a visa. In addition, the facts of this case show that the 2009 visa denial was not a consular decision but a collective decision made by all members of defendants' watchlisting enterprise, REDACTED . *See* Response to Proposed Conclusion of Law No. 5.

7. Because Plaintiff's alleged inability to work in the United States stems from her lack of a visa, that alleged inability cannot be the basis of a due process claim, because it amounts to a challenge to the visa decision.

Proposed Findings of Fact ¶¶ 48, 52, 59, 60, 127; *Kleindienst*, 408 U.S. at 762; *Landon*, 459 U.S. at 32; *see also* Nov. 1, 2013 Order on Summ. J. at 10.

**Response to No. 7:** Plaintiff disagrees. *See* Plaintiff's Response to Defendants' Proposed Conclusions of Law Nos. 5 and 6, above.

8. Alternatively, Plaintiff failed to establish that she has suffered a complete prohibition of the right to engage in a calling.

Proposed Findings of Fact ¶¶ 130-135, 137; *Conn v. Gabbert*, 526 U.S. 286, 292 (1999) (right to pursue one's chosen profession is only implicated where there is a "complete prohibition of the right to engage in a calling."); *Dittman v. California*, 191 F.3d 1020, 1029 (9th Cir. 1999) (a violation of one's liberty interest in employment right requires a showing of a "complete barrier" to a profession).

**Response to No. 8:** Plaintiff disagrees because it is sufficient that the stigma imposed by defendants **alters or** extinguishes her ability to pursue her occupation. *Cf. Humphries v. County of Los Angeles*, 554 F.3d 1170, 1187-88 (9th Cir. 2009), *rev'd on other grounds*, 131 S.Ct. 447 (2010) (stigma-plus applies when a right or status is "altered or extinguished"). The fact that further promotion at UPM is less likely given plaintiff's travel restrictions is sufficient to allege a tangible burden on Dr. Ibrahim's right to pursue her chosen profession. *Cf. id.* Not only would

37

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL., CASE NO. C 06-00545-WHA (N.D. CAL.)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

any potential employer attempting to sponsor plaintiff for a work visa discover her inability to travel, she was forced to disclose her situation to her current employer, who would otherwise naturally tend to wonder why one of its star academics continually refused specific invitations to travel to the United States, the leading country in her field.  In any event, plaintiff has been totally precluded from working in the U.S.

9.    Plaintiff failed to establish "the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested," plus (2) "the denial of 'some more tangible interest[] such as employment' or the alteration of a right or status recognized by state law."

> Proposed Findings of Fact ¶¶ 120, 130-135; *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 982 (9th Cir. 2002) (*citing Paul v. Davis*, 424 U.S. 693, 701 (1976)).

**Response to No. 9:** Plaintiff disagrees because a liberty interest is implicated when dissemination of the stigmatizing information triggers the deprivation of the tangible interest. *See Dupuy v. Samuels*, 397 F.3d 493, 509-12 (7th Cir. 2005) (dissemination of stigmatizing information to prospective employers "is the conduct that triggers the career entrants' liberty interest"); *see also Humphries*, 554 F.3d 1170, 1175-76, 1186, 1188-91 (child abuse reports accessible to a "broad array of government agencies, employers, and law enforcement entities," as well as "some public and private groups."); *Valmonte v. Bane*, 18 F.3d 992, 999-1002 (2d Cir. 1994) (inclusion in child abuse database that would be disclosed to employers required to check it and to justify hiring persons in the database was sufficient disclosure).

As of 2005, the No-Fly List was routinely disseminated to commercial airlines operating within the United States, airport security personnel, customs and immigration agents, and other federal law enforcement entities (*see Green v. TSA*, 351 F. Supp. 2d 1119, 1121-22 (W.D. Wash. 2005)), among other recipients.  It is undisputed that plaintiff's status was also disseminated to local law enforcement officers in January 2005.  Defendants' dissemination of plaintiff's watchlist status to commercial airlines, local law enforcement, and others directly caused her to be denied boarding and physically incarcerated on January 2, 2005 – thereby extinguishing her right to travel and to remain free from incarceration on that day.

Defendants' ongoing publication of Dr. Ibrahim's status continues to prevent her from

38

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN BRAHIMY v. HOLDER, ET AL., 2:09-CV-00545-WHA (N.D. CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

1   traveling to or entering the United States (*see Latif v. Holder* (*Latif II*), 2013 U.S. Dist. LEXIS

2   122533, at *28-29) (D. Or. 2013) burden her prospects for employment in the U.S. or job

3   promotion in Malaysia, and subject her to an ongoing risk of false arrest should she be stopped at

4   a United States port of entry.  Defendants' so-called "standards" for nomination to these lists are

5   so vague, arbitrary, and secretive that they vest unlimited discretion in the executive branch.

6   Kahn at 402:5-411:3; *City of Chicago v. Morales*, 527 U.S. 41, 56-60 (1999).

7       10.     Even if Plaintiff had shown that she had been deprived of a liberty interest, the

8   watchlisting and redress procedures that were provided in her case—including the TSC's review

9   of the nomination, the TSC and nominating agencies' review at the point of encounter, the DHS

10  referral of TSDB travel related complaints to TSC for review, and the availability of § 46110

11  review in the Court of Appeals—provide sufficient protection against the risk of erroneous

12  deprivations.

13          Proposed Findings of Fact ¶¶ 19-28, 34-47, 69, 70; 49 U.S.C. §46110; *Jifry v. FAA*, 370
            F.3d 1174, 1183 (D.C. Cir. 2004) (rejecting due process challenge to determination that
14          plaintiffs posed threats to civil aviation because "substitute procedural safeguards may be
            impracticable, [in those cases], and in any event, are unnecessary" because of "the
15          governmental interests at stake and the sensitive security information" involved; as a
            result, due process did not require that plaintiffs be given the "specific evidence" upon
16          which the determinations are based); *Al Haramain Islamic Found., Inc. v. U.S. Dep't of
            Treasury*, 686 F.3d 965, 980  (9th Cir. 2012) (explaining that the due process inquiry
17          "cannot be done in the abstract," but instead requires that a court "carefully assess the
            precise 'procedures used' by the government, 'the value of additional safeguards,' and
18          'the burdens of additional procedural requirements'") (quoting *Foss v. Nat'l Marine
            Fisheries Serv.*, 161 F.3d 584, 589 (9th Cir. 1998)); *In re Nat'l Sec. Agency Telecomms.
19          Records Litig.*, 671 F.3d 881, 902 (9th Cir. 2011) (internal quotation marks omitted) (due
            process balancing test is "flexible and calls for such procedural protections as the
20          situation demands").

21  **Response to No. 10:** Plaintiff disagrees that defendants provide sufficient protection

22  against the risk of erroneous deprivations.  As set forth in plaintiff's Proposed Conclusion of

23  Law No. 4, among other deficiencies, defendants fail to adequately train individuals responsible

24  for making nominations to the TSDB and associated databases; the "reasonable suspicion"

25  standard for inclusion in the TSDB is very low; defendants apply REDACTED

26                                for whom evidence is insufficient to meet even the very low

27  reasonable suspicion standard; and defendants do not verify the accuracy of facts in existing

28  records during the redress process.  It took approximately a year for defendants to provide a

                                                39

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS, ET AL., 3:06-CV-00545-WHA (N.D. CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

response to Dr. Ibrahim's Passenger Identity Verification Form (PIVF).  The PIV/DHS TRIP

determination letter also informs the complainant that the TSA's letter is a "final agency

decision" under 49 U.S.C. § 46110, but the TSC is the entity with final authority on redress

requests.  *See* Exh. 40.  Even assuming Dr. Ibrahim successfully appealed the TSA's ambiguous

order, the circuit court could not order the relief she seeks because TSA lacks authority to

remove an individual from TSDB.  *See Latif v. Holder* ("*Latif I*"), 686 F.3d 1122, 1129 (9th Cir.

2012).  Finally, nowhere during or after the watchlisting or redress process is a complainant

informed of the reasons that he or she has been watchlisted, which greatly increases the risk of

erroneous deprivation.

> 11.      Protecting national security, including screening individuals to prevent terrorist

activity, is a compelling government interest.

> Proposed Findings of Fact ¶¶ 1-15; *Holder v. Humanitarian Law Project*, 561 U.S. 1, 130
> S. Ct. 2705, 2727 (2010) (("[N]ational security and foreign policy concerns arise in
> connection with efforts to confront evolving threats in an area where information can be
> difficult to obtain and the impact of certain conduct difficult to assess.").

**Response to No. 11:** Plaintiff does not dispute the general proposition that the

government has a compelling interest in national security.  However, plaintiff disagrees that

defendants have demonstrated that their conduct furthers this compelling interest.  The

government concedes REDACTED                                                                    ;

therefore its "national security" interest is nonexistent in this case.  Moreover, watchlisting often

serves only a speculative investigative interest.  *See* Plaintiff's Proposed Finding of Fact No. 57.

> 12.      Plaintiff has failed to identify alternative or substitute procedures that would not

infringe upon the government's interests in protecting national security.

> Proposed Findings of Fact ¶¶ 32-33, 1-15; *Mathews v. Eldridge*, 424 U.S. 319, 335
> (1976) (courts must consider "the risk of an erroneous deprivation of such interest
> through the procedures used, *and the probable value, if any, of additional or substitute
> procedural safeguards*," as well as "the Government's interest, including the function
> involved and the fiscal and administrative burdens *that the additional or substitute
> procedural requirement would entail*") (emphasis added); *Al Haramain Islamic Found.,
> Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 980 (9th Cir. 2012); *NCRI v. Clinton*, 251
> F.3d 208-9 (D.C. Cir. 2001) (government need not disclose the classified information to
> plaintiff because this information "is within the privilege and prerogative of the
> executive, and we do not intend to compel a breach in the security which that branch is
> charged to protect"); *Jifry*, 370 F.3d at 1183-84; *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th
> Cir. 1992) ("To confirm or deny the existence of [CIA] records on [a particular

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN BRAHIMY DHS E.PL.9(e)(8)(b)(2)(c) 2010 CV-00545-WHA (N D CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

individual] could . . . reveal intelligence sources or targets"); *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1149 n.4 (2013) (government's disclosure in certain circumstances would still have the effect of revealing to an individual "whether his name was on the list of surveillance targets").

**Response to No. 12:** Plaintiff disagrees because her own Proposed Conclusion of Law No. 7 contains examples of additional procedures, such as post-deprivation notice and a fair opportunity to rebut the government's allegations, in the national security context.  *See Hamdi v. Rumsfeld*, 542 U.S. 507, 536-38 (2004) (plurality), *superseded by statute on other grounds as noted in Gherebi v. Obama*, 609 F. Supp. 2d 43, 50 (D.D.C. 2009) (alleged enemy combatant was entitled to receive notice of the factual basis for his classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker); *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 647 F. Supp. 2d 857, 904-08 (N.D. Ohio 2009) (U.S. charity provisionally designated as terrorist organization should have been "promptly given…the unclassified administrative record on which [the Government] relied" in blocking its assets, and should have been given a "prompt" and "meaningful" post-deprivation hearing).

Even in the face of national security concerns, due process requires "notice of the factual basis for [the aggrieved party's] classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker." *Hamdi*, 542 U.S. at 509, 533.  Moreover, the government is already required to disclose, or at least provide detailed summaries of, classified or otherwise sensitive information in contexts where it seeks to deprive individuals of their liberty and property interests.  *See*, *e.g.*, *United States v. Sedaghaty*, 728 F.3d 885, 892, 903-08 (9th Cir. 2013) (prosecution's substitution for classified material failed to satisfy the requirement in the Classified Information Procedures Act, 18 U.S.C. app. 3 § 6(c)(1), that the summary "provide the defendant with substantially the same ability to make his defense as would disclosure of the specified classified information"); *Al Haramain Islamic Found. Inc. v. Dep't of Treasury*, 686 F.3d 965, 983-84 (9th Cir. 2012) (finding "undeniable" value in procedures such as providing unclassified summaries of classified information, or providing classified information to cleared counsel, in terrorist organization designation cases); *Kaur v. Holder*, 561 F.3d 957, 961-62 (9th Cir. 2009) (in asylum context, finding that the "conclusory and opaque"

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM v. DHS ET AL., C 06-CV-00545-WHA (N.D. CAL)
WARNING THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

summary of classified evidence provided by Board of Immigration Appeals failed to comply

with applicable regulations and due process); *Kiareldeen v. Ashcroft*, 273 F.3d 542, 551-55, 552

n. 2 (3d Cir. 2001) (in removal context, finding that government's unclassified summary

including detailed information, such as date and location of subject's meeting with terrorist

associates, identities of associates, and specific statements made by the subject regarding terrorist

acts he wanted to carry out, was sufficient to mount a defense to the allegations); *Cf.* 8 U.S.C. §

1534(e)(3) (contemplating an Alien Terrorist Removal Court that provides a pre-removal hearing

and requires the government to submit an unclassified summary of the "specific evidence"

against the alien).

13. **Substantive Due Process:** Plaintiff failed to identify a deprivation of a

fundamental right that would implicate substantive due process protections.

> Proposed Findings of Fact ¶¶ 69, 112-113, 116-119, 120, 121-124, 129-136; *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008) (threshold" requirement of any substantive due process claim is the showing of the deprivation of a protected interest); *Brittain v. Hansen*, 451 F.3d 982, 990 (9th Cir. 2006) ("("Substantive due process is ordinarily reserved for those rights that are 'fundamental.'"") (citing *Washington v. Glucksberg*, 521 U.S. 702, 721–22 (1997)).

**Response to No. 13:** Plaintiff disagrees because she has identified numerous fundamental

rights of which she has been deprived due to defendants' conduct. *See* Plaintiff's Proposed

Conclusions of Law, Nos. 17-21 (identifying plaintiff's liberty interests in travel and to work in

her chosen field without unreasonable restrictions, and property interest in money spent on

international travel).

14. **Equal Protection:** Plaintiff failed to establish that Defendants intentionally, and

without rational basis, treated her differently from others similarly situated.

> Proposed Findings of Fact ¶¶ 29, 31; *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (plaintiff alleging equal protection claim must demonstrate that defendant "intentionally, and without rational basis, treated the plaintiff differently from others similarly situated")

**Response to No. 14:** Plaintiff disagrees on the basis the applicable standard is whether

defendants acted in a discriminatory manner and the discrimination was intentional. *See*

*Washington v. Davis*, 426 U.S. 229, 238-47 (1976). Dr. Ibrahim belongs to several protected

classes as she is a Muslim, ethnically Malay, and a citizen of Malaysia. Plf.'s Proposed Findings

42

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS, ET AL, CASE 3:06-CV-00545-WHA (N D  CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

1  of Fact, No. 35.  *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) is

2  inapposite as it involved a "class of one" claim.  *See also Village of Willowbrook v. Olech*, 528

3  U.S. 562, 564 (2000) (describing equal protection claim of a plaintiff who does not allege

4  membership in a class or group as one brought on behalf of a "class of one").

5       Defendants' Proposed Conclusion of Law No. 29, even if true, does not support the

6  proposition that defendants did not consider Dr. Ibrahim's religion and nationality when

7  nominating her REDACTED                         ; it only suggests that this is a stated policy, and

8  that Dr. Ibrahim's nomination may not have been based "solely" on those factors.  Similarly,

9  defendants' Proposed Conclusion of Law No. 31 only pertains to a supposed policy of the FBI,

10  and not the actual conduct of defendants in this case.

11       Discriminatory intent may be proved through direct or indirect evidence.  *See Village of*

12  *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977).  Moreover,

13  discriminatory acts toward third parties may be relevant to show discriminatory intent towards

14  the plaintiff.  *Metoyer v. Chassman*, 504 F.3d 919, 937 (9th Cir. 2007).  Dr. Ibrahim put forth

15  credible evidence at trial that defendants targeted her due to her religion, ethnicity, and

16  nationality.  She was told by Agent Kelley that she was possibly being interviewed because she

17  was from Malaysia, and Malaysia is blacklisted by the government.  Plf.'s Proposed Findings of

18  Fact, No. 49.  Agent Kelley questioned Dr. Ibrahim about a terrorist organization known to

19  operate in Malaysia of which she has never been a member, her husband's "ideology," her own

20  involvement in the local Muslim community, and her religious travel to Saudi Arabia.  Plf.'s

21  Proposed Findings of Fact, No. 51.  Agent Kelley also participated in the FBI's "Mosque

22  Outreach Program" in 2004, the same year that Dr. Ibrahim's husband visited her at Stanford and

23  Agent Kelley REDACTED                         .  Plf.'s Proposed Findings of Fact,

24  Nos. 21-27.  The FBI did not target any other religious groups for these "outreach programs,"

25  except for Sikhs.  Plf.'s Proposed Findings of Fact, No. 23.  Furthermore, plaintiff demonstrated

26  at trial that the FBI used training materials containing stereotypical reflections and statements

27  about Islam and Muslims.  Plf.'s Proposed Findings of Fact, No. 51.

28       15.  **First Amendment (Association):** Plaintiff failed to establish a burden on a First

43

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM v. DHS ET AL. CASE C 06-00545-WHA (N D  CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

1   Amendment right to associate with her husband or with other Muslims.

2       *Navajo Nation v. U.S. Forest Serv*., 535 F.3d 1058, 1069 (9th Cir. 2008) (en banc) (courts
        scrutinize government action under RFRA "only if there is a substantial burden on the
3       free exercise of religion").

4   **Response to No. 15:** Plaintiff disagrees because defendants have burdened her First

5   Amendment right to associate with her husband and other Muslims.  Defendants have burdened

6   Dr. Ibrahim's associational rights with religious groups and her religious expression by making

7   that religious expression the subject of a federal investigation, and ultimately the basis for

8   REDACTED                    .  In 2001-2004, there are numerous examples of surveillance and

9   investigations targeted at Muslim individuals and communities.  Plf.'s Proposed Findings of

10  Fact, No. 24.  In 2004, Agent Kelley's Joint Terrorism Task Force squad conducted a "Mosque

11  Outreach Program" that included the MCA in Santa Clara, California, where Dr. Ibrahim

12  worshipped.  Plf.'s Proposed Findings of Fact, Nos. 8, 21.  That same year, Dr. Ibrahim's

13  husband visited her at Stanford and Agent Kelley REDACTED                              .

14  Plf.'s Proposed Findings of Fact, Nos. 21-27.  During Agent Kelley's interview of Dr. Ibrahim in

15  late 2004, he questioned her about a terrorist organization known to operate in Malaysia of which

16  she has never been a member, her husband's "ideology," her own involvement in the local

17  Muslim community, and her religious travel to Saudi Arabia.  Plf.'s Proposed Findings of Fact,

18  No. 51.  The FBI's targeting of Muslims through "mosque outreach" efforts, questioning of Dr.

19  Ibrahim, and subsequent nomination of Dr. Ibrahim to watchlists, show that the practical effect

20  of defendants' practices and databases is to burden Dr. Ibrahim's and other Muslims' religious

21  expression.  A reasonable person would conclude that reducing or abandoning one's association

22  with other Muslims would substantially reduce the risk of being investigated by the FBI, which

23  is tantamount to being targeted for watchlisting.  *See* Exh. 506, p. P001863.

24      With respect to Dr. Ibrahim's husband, Agent Kelley questioned Dr. Ibrahim extensively

25  about him.  [Plf.'s Proposed Findings of Fact, No. 51].  The Department of State reviewed

26  documents REDACTED

27                          Punishing Dr. Ibrahim for merely being married or related to

28  another violates Dr. Ibrahim's rights of association with her husband.

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL., 3:06-CV-00545-WHA (N.D. CAL.)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A "NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

16.    **First Amendment (Retaliation):** Plaintiff failed to establish that the exercise of constitutionally protected rights was a "substantial" or "motivating" factor in placing her on a watchlist.

> *Mt. Healthy City Sch. Dist. of Educ. V. Doyle*, 429 U.S. 274, 287 (1977) (prima facie case of First Amendment retaliation, Plaintiff has the burden of showing that the exercise of constitutionally protected rights was a "substantial" or "motivating" factor in the decision to place her identity in the TSDB); *CarePartners v. Lashway*, 545 F.3d 867, 877 (9th Cir. 2008).

**<u>Response to No. 16:</u>** Plaintiff disagrees because her Muslim religion was a "substantial" or "motivating" factor in defendants' decision to place her on watchlists.  Plaintiff put on credible evidence from which it can be reasonably inferred that defendants were motivated by a discriminatory purpose.  *See* Plf.'s Response to Defendants' Proposed Conclusion of Law, No. 15.  By doing so, the burden shifted to defendants to establish that the same decisions would have resulted had the impermissible purpose not been considered; defendants did not do so.  *See Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 270-71, n. 21 (1977), *cited by Mt. Healthy City Sch. Dist. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  Additionally, plaintiff showed that defendants' denial of plaintiff's visa in 2009 and in 2013 was substantially motivated by plaintiff's exercise of her constitutionally protected right to petition the court for redress of grievances.  Plf.'s Proposed Conclusions of Law, No. 30.  REDACTED

which coincided with the timing of her 2009 visa application and visa interview during which she was asked about this lawsuit.  *See* Plf.'s Response to Defendants' Proposed Conclusion of Law, Nos. 83, 93, 104-110, 127; *CarePartners v. Lashway*, 545 F.3d 867, 878 (9th Cir. 2008) (considering "suspicious timing" in determining whether First Amendment activity was a "substantial factor" in adverse decision).  Defendants also did not establish that the same visa decisions would have been made had they not considered Dr. Ibrahim's intended purpose of travel to participate in this lawsuit.

17.    The Court's review of government actions related perceived security threats posed by non-resident aliens, must give substantial deference to the government's determinations.

Proposed Findings of Fact ¶¶ 1-20, 23-34; *IARA v. Gonzales*, 477 F.3d 728, 735 (D.C.

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL., 3:06-CV-00545-WHA (N.D. CAL)
WARNING: THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW', AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS SSI DESIGNATIONS IN THIS ACTION.

Cir. 2007) (in adjudicating challenge of U.S. organization to its designation as a specially designated global terrorist pursuant to Executive Order 13224 and International Emergency Economic Powers Act, "our review-in an area at the intersection of national security, foreign policy, and administrative law – is extremely deferential."); *Al-Haramain Islamic Foundation, Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 979 (9th Cir. 2012) (same and quoting language from *IARA*).

**Response to No. 17:** Plaintiff disagrees because the cases cited by defendants are irrelevant.  Defendants concede that Dr. Ibrahim is not a security threat.  Plf.'s Proposed Findings of Fact, Nos. 106-109.  Therefore, there is no action "related [to] perceived security threats" by defendants that is subject to substantial deference.

18.     Failing to check a box on a visa refusal form ("You are eligible to apply for a waiver of the ground(s) of ineligibility") did not constitute a "final agency action" subject to review under the Administrative Procedure Act ("APA").

Proposed Findings of Fact ¶¶ 97-102.  5 U.S.C. §704 (limiting judicial review to "final agency action"); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) ("When . . . review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'").

**Response to No. 18:**  Defendants' failure to check a box stating that Dr. Ibrahim was eligible to apply for a waiver constituted a decision to take no further action on her visa application and to preclude consideration of any waiver application, which constituted final agency action.  It was a decision with legal effect or consequence that qualifies as a final agency action.  *See Smirnov v. Clinton*, 806 F. Supp. 2d 1, 11 (D.D.C. 2011).

19.     Even if that were an agency action subject to review under the APA,  the ultimate decision of the consular officer or the Secretary of State  to recommend a waiver or a possible transmission of a waiver request to the Department of Homeland Security is entirely discretionary and is thus not subject to review by this court.

Proposed Findings of Fact: ¶¶ 97-102.  8 U.S.C. § 1182(a); 22 C.F.R. § 40.301; *Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972) (finding that, in action to compel Attorney General to grant a visa waiver, "the power to exclude aliens is inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers-a power to be exercised exclusively by the political branches of government")

**Response to No. 19:**  Unlike the plaintiffs in *Kleindienst*, who contested denial of a waiver, here the issue is not a denial of a waiver, but the government's failure to allow Dr.

46

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL., 3:06-CV-00545-WHA (N.D. CAL.)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

Ibrahim to even apply for a waiver.  Exh. 47.  Dr. Ibrahim should have been allowed to apply for a waiver, yet she was not provided that opportunity, even though the government admits she is not a threat.

20.     Even if review of the consular officer's decision were available, any failure to inform Plaintiff of her ability to apply for a waiver was not an abuse of discretion, because the statute does not require that notice be given to nonimmigrant visa applicants that the statute provides a possible waiver.

Proposed Findings of Fact: ¶¶ 97, 99, 101.  8 U.S.C. § 1182(a); 22 C.F.R. § 40.301.

**Response to No. 20**:  The State Department's regulations require that visa applicants who have been refused be given notice of any statutory provision or regulation under which they may overcome the refusal:

> When a consular officer knows or has reason to believe a visa applicant is ineligible and refuses the issuance of a visa, he or she must inform the alien of the ground(s) of ineligibility (unless disclosure is barred under INA 212(b)(2) or (3)) and **whether there is, in law or regulations, a mechanism (such as a waiver) to overcome the refusal**.

22 C.F.R. § 41.121(b)(1) (emphasis added).  Consular officers do not have discretion to disregard the applicable regulations.  *See Patel v. Reno*, 134 F.3d 929, 932-33 (9th Cir. 1998) (ordering consulate to comply with Code of Federal Regulations).

21.     Finally, by applying for a new visa and submitting the question of her eligibility for a visa anew to the Department of State, the issue of a waiver with respect to plaintiff's 2009 visa application is now moot, because the final adjudication of that application will determine Plaintiff's eligibility for a visa at this time.

Proposed Findings of Fact: ¶ 102; *Spencer v. Kemna*, 523 U.S. 1 (1998) (prisoner's challenge to a parole revocation became moot once his term of imprisonment ended).

**Response to No. 21**:  Plaintiff disagrees.  There is no evidence that the State Department has granted or denied plaintiff's most recent visa application and no guarantee that it will rule on that application.  A lawyer's representations are not evidence; defendants introduced no evidence regarding the recent purported visa refusal.  Any alleged refusal of that application therefore cannot form a basis for a mootness ruling.  Furthermore, given that the application was "refused" according to defendants' counsel, they cannot argue that plaintiff has no need for adjudication of

47

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN BRAHIMY, DHS ET AL. C 06-0545 WHA (N.D. CAL.)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

1  the waiver issue.  If defendants' counsel is correct, plaintiff is still in the same situation as 2009.

2        22.     **The Effect of the Order on the State Secrets Privilege**: The Court's ruling

3  upholding the state secrets privilege excluded classified information related to REDACTED

4                                       , whether Plaintiff or any other individual is or was the subject

5  of an investigation or intelligence operation, any sources and methods used during investigations

6  or intelligence operations, and the classified information underlying the State Department's

7  decision to revoke and deny her visa.

8        *See* Apr. 19, 2013 Order Regarding Classified Information.

9        **Response to No. 22:**  Plaintiff disagrees that the ruling excluded the broad categories of

10  information described above.  The order overruled and sustained privileges as to certain

11  documents that had been submitted to the Court.  *See* Order Regarding Plaintiff's Motion to

12  Compel Classified Documents, Apr. 19, 2003.

13       23.     Defendants cannot present a full explanation of the reasons for Plaintiff's

14  REDACTED                               , or the information available to the Department of

15  State when her visa was revoked in 2005 and or when it was denied in 2009, because to do so

16  would require the presentation and consideration of classified information excluded by the Court

17  as a result of its ruling on the state secrets privilege.

18       Proposed Findings of Fact 74, 76; Defendants' Classified Ex Parte Brief (setting forth
         excluded information and its relevance to Plaintiff's claims); April 19, 2013 Order
19       (excluding classified information related to the basis for Plaintiff's watchlist nominations,
         visa revocation, and visa denial); Tr. at 481:18-22 (classified information not part of the
20       case); *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998) ("[o]nce the privilege is
         properly invoked, and the court satisfied as to the danger of divulging state secrets, the
21       privilege is absolute."); *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1079 (9th
         Cir. 2010) (noting that even when evidence is excluded via an invocation of state secrets,
22       the case may still need to be dismissed because "it will become apparent during the
         Reynolds analysis that the case cannot proceed without privileged evidence, or that
23       litigating the case to a judgment on the merits would present an unacceptable risk of
         disclosing state secrets.").
24
         **Response to No. 23**:  Plaintiff objects that defendants have waived their argument that
25  the case must be dismissed on these grounds, and are estopped by their previous representations,

26  because they repeatedly assured the Court that they would not rely on the allegedly classified

27  information in their case.  Plaintiff also objects that if the Court allows defendants to rely on such

28

                                                48

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM V. DHS ET AL., 2:06-CV-00545-WHA (N.D. CAL)
WARNING  THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A 'NEED TO KNOW,  AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS  SSI DESIGNATIONS IN THIS ACTION.

1  information, it should have been presented during the trial so that the Court and plaintiff could

2  have responded appropriately during the trial and plaintiff would not be sandbagged with secret

3  information after the close of trial.

4      Furthermore, defendants' alleged inability to present a "full explanation" is immaterial

5  because dismissal is only required where "the district court determines from appropriately

6  tailored *in camera* review of the privileged record [citation], that the truthful state of affairs

7  would deny defendant a valid defense that would likely cause the trier of fact to reach an

8  erroneous result." *In re: Sealed Case*, 494 F.3d 139, 151 (D.C. Cir. 2007); *see also Molerio v.*

9  *FBI*, 749 F.2d 815, 825 (D.C. Cir. 1984).  A "valid defense" "as contemplated by [the D.C.

10  Circuit's] precedents is meritorious and not merely plausible and would <u>require</u> judgment for

11  defendants." *In re: Sealed Case*, 494 F.3d at 149.  In other words, the defense must be both

12  meritorious AND dispositive.  *See id.*  The cases cited by defendants do not support their

13  argument that they were denied a valid defense.

14      The valid defense exception does not apply here because the evidence produced so far

15  strongly suggests that defendants have no defense that would be either meritorious or dispositive.

16  They concede that REDACTED

17

18              .  Defendants also lack a valid national security interest in targeting

19  people for investigation and automatic watchlisting and visa revocation on the basis of protected

20  characteristics such as religion and nationality, or in burdening the religious expression of those

21  who have no nexus to terrorism.  More importantly, defendants insisted at the April 2013

22  discovery hearing that they did not need the privileged information and were not moving to

23  dismiss the case but merely to exclude that information from discovery and the trial.

24      Plaintiff further objects for the reasons articulated in Plaintiff's Brief Re: SSI Versus

25  Secret Standards [Doc. # 665].

26      24.    The excluded information is central to the claims at issue in this trial because they

27  involve claims for improper watchlisting and improper visa decisions, and the excluded

28  information would provide the Court with a full explanation of the challenged agency actions.

PLAINTIFF'S RESPONSE TO DEFENDANTS' POST-TRIAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW;
Case No. C 06-0545 WHA    **HIGHLY CONFIDENTIAL – SUBJECT TO ATTORNEY'S EYES ONLY PROTECTIVE ORDER**

SUBJECT TO SENSITIVE SECURITY INFORMATION PROTECTIVE ORDER IN IBRAHIM v. DHS, ET AL., No. C 06-CV-00545-WHA (N.D. CAL.)
WARNING: THIS RECORD MAY CONTAIN SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PART 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS
WITHOUT A "NEED TO KNOW," AS DEFINED IN 49 CFR PART 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. PLAINTIFF IS NOT THE DESIGNATING PARTY AND OBJECTS TO DEFENDANTS' SSI DESIGNATIONS IN THIS ACTION.

Proposed Findings of Fact ¶¶ 74, 76; Tr. at 327-328; 491:15-17; 492-493; 578: 13-15.

**Response to No. 24**: Plaintiff disagrees. See immediately preceding Response to No. 23.

25. The Court is not permitted to second-guess the executive's determination of what is and is not classified.

Proposed Findings of Fact ¶¶ 74, 76; *NCRI v. Clinton*, 251 F.3d 192, 108-09 (D.C. Cir. 2001) ("We recognize, as we have recognized before, that items of classified information which do not appear dangerous or perhaps even important to judges might "make all too much sense to a foreign counterintelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods") (quoting *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989)).

**Response to No. 25**: Plaintiff disagrees to the extent this statement implies that classification is an evidentiary privilege. An executive decision to classify information is insufficient to establish that the information is privileged. *Mohamed v. Jeppesen Dataplan, Inc*., 614 F.3d 1070, 1082 (2010). A court may order access to classified information in litigation. *See* Plaintiff's Brief Re: SSI Versus Secret Standards [Doc. # 665].

26. Because Defendants cannot present a defense to Plaintiff's claims without recourse to the classified information protected by the state secrets privilege, judgment must be entered for Defendants. *Kasza v*, 133 F.3d at 1166; *v. Jeppesen*, 614 F.3d at 1083.

**Response to No. 26:** Plaintiff disagrees. See Response to Proposed Conclusion of Law No. 23.

DATED: December 20, 2013

McMANIS FAULKNER

/s/ Christine Peek

CHRISTINE PEEK

Attorneys for Plaintiff,
Rahinah Ibrahim