STUART F. DELERY
Assistant Attorney General

MELINDA L. HAAG
United States Attorney

DIANE KELLEHER
Assistant Branch Director

PAUL G. FREEBORNE
Senior Trial Counsel
KAREN S. BLOOM
LILY S. FAREL
JOHN K. THEIS
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 353-0543
Facsimile: (202) 616-8460
E-mail: paul.freeborne@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RAHINAH IBRAHIM, | No.  3:06-cv-0545 (WHA) |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS** |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY, *et al.*, | **[REDACTED]** |
| Defendants. | |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 2

    I.     PLAINTIFF'S FAILURE TO COMPLY WITH THE MEET AND CONFER REQUIREMENTS OF LOCAL RULE 54-5 REGARDING ATTORNEY'S FEE PETITIONS REQUIRES DENIAL OF THE MOTION .............................. 2

    II.    PLAINTIFF'S APPLICATION FOR FEES IS PREMATURE ........................... 2

    III.   PLAINTIFF'S ALLEGATIONS OF BAD FAITH ARE WITHOUT MERIT ..... 3

         A.    Defendants Never Misrepresented Facts Regarding Plaintiff .................... 4

         B.    Defendants Appropriately Raised Jurisdictional Defenses At Each Stage of the Litigation ................................................................................ 5

         C.    Defendants Pursued the State Secrets Assertion, and the Consequences of Upholding the Assertion, in Appropriate Stages ................................... 6

         D.    Defendants' Conduct in the Course of Discovery Did Not Demonstrate Bad Faith, in Contrast to Plaintiff Frivolous Attempts to Reconsider Discovery Rulings and Postpone the Trial............................. 8

         E.    Defendants Properly Made Privilege Objections and Followed TSA Regulations Regarding the Protection of SSI ........................................... 10

         F.    Defendants Did Not Unlawfully Inhibit Plaintiff's Ability to Testify ....................................................................................................... 11

         G.    Defendants Appropriately Informed the Court that they Did Not Deny Plaintiff's Daughter Boarding ..................................................................... 11

         H.    Defendants Also Properly Informed the Court When Plaintiff's Counsel Attempted to Reveal to the Public SSI at Trial........................... 12

         I.    SSA Lubman's Clarifications of Her Prior Testimony Do Not Demonstrate Bad Faith ............................................................................. 13

    IV.   NEITHER RULE 16 NOR RULE 37 PROVIDE FOR THE SANCTIONS SOUGHT BY PLAINTIFF............................................................................... 13

    V.    NO FEES SHOULD BE AWARDED BECAUSE THE GOVERNMENT'S POSITION WAS SUBSTANTIALLY JUSTIFIED ........................................... 14

    VI.   PLAINTIFF SEEKS COMPENSATION FOR AN UNREASONABLE NUMBER OF HOURS AND ANY AWARD SHOULD BE REDUCED ACCORDINGLY ............................................................................................. 17

         A.    The Fee Award Should Be Reduced to Account For Plaintiff's Failure to Maintain Billing Records That Identify the Distinct Claims......................................................................................... 17

         B.    Attorney Time for Claims Against Other Defendants Should Be Excluded. ........................................................................................... 18

i

C.    Attorney Time Should Be Reduced To Exclude Hours That Were
      Spent on Unsuccessful or Unnecessary Arguments.................................. 19

D.    Attorney Time That Is Excessive, Redundant or Unnecessary
      Should Also Be Excluded ........................................................................ 19

      1.   *Excessive Conferences* ..................................................... 19

      2.   *Overstaffing* ...................................................................... 20

VII.   PLAINTIFF IS NOT ENTITLED TO A FEE ENHANCEMENT...................... 21

VIII.  PLAINTIFF IS NOT ENTITLED TO THE EXPENSES SHE SEEKS............... 25

CONCLUSION ........................................................................................................ 25

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Armstrong v. Davis,*
        275 F.3d 849 (9th Cir. 2001) ......................................................................... 6

*Brown v. Sullivan,*
        916 F.2d 492 (9th Cir. 1990) ......................................................................... 4

*Cal. State Forest Parents Ass'n  v. Wagner,*
        No. 07-5086, 2009 WL 4823193  (N.D. Cal. Dec. 10, 2009)......................... 24

*Chalmers v. City of Los Angeles,*
        796 F.2d 1205 (9th Cir. 1986) ....................................................................... 18

*Chambers v. NASCO, Inc.,*
        501 U.S. 32 (1991) .......................................................................................... 4

*Chen v. Slattery,*
        842 F. Supp. 597 (D.D.C. 1994) ................................................................... 25

*Citizens for Better Forestry v. Dep't of Agric.,*
        No. 01-0728, 2006 WL 5692819 (N.D. Cal. Nov. 3, 2006) ........................... 25

*Clinton v. Jones,*
        520 U.S. 681 (1997).......................................................................................... 3

*Cruz v. Alhambra Sch. Dist.,*
        601 F. Supp. 2d 1183 (C.D. Cal. 2009) ......................................................... 20

*Commodities Future Trading Comm'n v. Frankwell Bullion Ltd.,*
        99 F.3d 299 (9th Cir. 1996) ........................................................................... 16

*Cruz v. Alhambra Sch. Dist.,*
        601 F. Supp. 2d 1183 (C.D. Cal. 2009) ......................................................... 21

*Democratic Party of Wash. State v. Reed,*
        388 F.3d 1281 (9th Cir. 2004) ....................................................................... 20

*Edwards v. McMahon,*
        834 F.2d 796 (9th Cir. 1987) ......................................................................... 16

*Fair Hous. of Marin v. Combs,*
        285 F.3d 899 (9th Cir. 2002) ......................................................................... 14

iii

*Future Trading Comm'n v. Frankwell Bullion Ltd.*,
    99 F.3d 299 (9th Cir. 1996) ................................................................. 17

*Gay Officers Action League v. Puerto Rico*,
    247 F.3d 288 (1st Cir. 2001) ............................................................... 19

*Gonzales v. Free Speech Coal.*,
    408 F.3d 613 (9th Cir. 2005) ............................................................... 15

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ...................................................................... *passim*

*Ibrahim v. DHS,*
    669 F.3d 983 (9th Cir. 2012) ........................................................... 5, 16

*In re Sealed Case*,
    890 F.2d 451 (D.C. Cir. 1989) ............................................................. 18

*Johannson v. Wachovia Mortg.*,
    No. 11-2822, 2012 WL 2793204 (N.D. Cal. July 9, 2012) ..................... 2

*Johnson v. California*,
    543 U.S. 499 (2005) ............................................................................ 6

*Karuk Tribe of Cal. v. U.S. Forest Serv.*,
    No. 04-4275, 2006 WL 228943  (N.D. Cal. Jan. 30, 2006) .................... 3

*Keith v. Volpe*,
    644 F. Supp. 1317 (C.D. Cal. 1986) .............................................. 19, 20

*Kennecott Corp. v. EPA*,
    804 F.2d 763 (D.C. Cir. 1986) ............................................................. 18

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972) ............................................................................ 11

*League of Women Voters of Cal. v. FCC*,
    798 F.2d 1255 (9th Cir. 1986) ......................................................... 15, 16

*Library of Congress v. Shaw*,
    478 U.S. 310 (1986) ............................................................................ 24

*Love v. Reilly*,
    924 F.2d 1492 (9th Cir. 1991) ......................................................... 18, 22

iv

*Lucas v. White*,
    63 F. Supp. 2d 1046 (N.D. Cal. 1999) ........................................................... 24

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................ 6

*Massachusetts Fair Share v. Law Enforcement Assistance Administration*,
    776 F.2d 1066 (D.C. Cir. 1985) ..................................................................... 25

*In re Media Vision Tech. Sec. Litig.*,
    913 F. Supp. 1362 (N.D. Cal. 1996) .............................................................. 25

*Mendez v. Cnty. of San Bernadino*,
    540 F.3d 1109 (9th Cir. 2008) ....................................................................... 21

*Minor v. United States*,
    797 F.2d 738 (9th Cir. 1986) ......................................................................... 16

*Mohamed v. Jeppesen*,
    614 F.3d 1070 (9th Cir. 2010) ....................................................................... 7

*Morris v. Barnhart*,
    No Civ 04-00617, 2006 WL 839292 (D. Haw. Mar. 28, 2006) ...................... 24

*Nadarajah v. Holder*,
    569 F.3d 906 (9th Cir. 2009) ......................................................................... 24

*Navellier v. Sletten*,
    262 F.3d 923 (9th Cir. 2001) ......................................................................... 14

*Or. Natural Desert Ass'n v. McDaniel*,
    No. 06-242, 2011 WL 4625715  (D. Or. Sept. 30, 2011) ......................... 21, 24

*Painter v. Atwood*,
    No. 12-01215, 2013 WL 4774762 (D. Nev. Sept. 3, 2013) ............................ 14

*Pierce v. Underwood*,
    487 U.S. 552 (1988) ....................................................................... 15, 22, 23

*Primus Auto. Fin. Servs. v. Batarse*,
    115 F.3d 644 (9th Cir. 1997) ........................................................................... 4

*Rodriguez v. United States*,
    542 F.3d 704 (9th Cir. 2008) ........................................................................... 4

v

*Role Models of Am. v. Brownlee*,
    353 F.3d 962 (D.C. Cir. 2004) .......................................................................... 18, 20

*Schwarz v. Sec'y of Health & Human Servs.*,
    73 F.3d 895,   (9th Cir. 1995) ................................................................................ 17

*Shephard v. Dosa*,
    No. 95-8748, 1998 WL 1799018 (C.D. Cal. Jul 2, 1998)...................................... 25

*Sorenson v. Mink*,
    239 F.3d  1140 (9th Cir. 2001) .............................................................................. 24

*Stewart v. Gates*,
    987 F.2d 1450 (9th Cir. 1993) ............................................................................... 18

*Stratton v. Glacier Ins. Adm'rs, Inc.*,
    No. 1:02-CV-06216, 2007 WL 1989097 (E.D. Cal. July 3, 2007)......................... 24

*Sutherland v. Yates*,
    No. 09–02152, 2012 WL 4208936 (E.D. Cal. Sept. 18, 2012)............................... 14

*Tahara v. Matson Terminals*,
    511 F.3d 950 (9th Cir. 2007) ................................................................................. 19

*Thangaraja v. Gonzales*,
    428 F.3d 870 (9th Cir. 2005) ................................................................................. 23

*Trustees of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise*,
    234 F.3d 415 (9th Cir. 2000) ........................................................................... 18, 19

*United States v. Manchester Farming P'ship*,
    315 F.3d 1176 (9th Cir. 2003) ................................................................................. 5

*United States v. Samaniego*,
    345 F.3d 1280 (11th Cir. 2003) ............................................................................. 14

*Varney v. Cal. Highway Patrol*,
    No. C11-4193, 2013 WL 2299544 (N.D. Cal. May 24, 2013) ............................... 14

*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) ........................................................................... 19, 21

*Zhang v. GC Servs., LP*,
    537 F. Supp. 2d 805 (E.D. Va. 2008) ................................................................ 19, 20

vi

1

**STATUTES**

8 U.S.C. § 1182(a)(3)(B) .................................................................................................. 5

8 U.S.C. § 1182(d) ........................................................................................................... 11

28 U.S.C. § 2412(b) ........................................................................................................ 1, 4

28 U.S.C. § 2412(d)(1)(A) .............................................................................................. 15

28 U.S.C. § 2412(d)(2)(A)(ii) ....................................................................................... 22, 25

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 16 ...................................................................................... 1, 4, 13

Fed. R. Civ. P. 37 ...................................................................................... 1, 4, 13

**REGULATIONS**

22 C.F.R. 41.121(b)(1) ..................................................................................... 11

49 C.F.R. 1520.5(b)(9)(ii) ................................................................................ 11

vii

# INTRODUCTION

The Court should deny Plaintiff's request for an award of attorney's fees and expenses. As a threshold matter, Plaintiff's counsel failed to meet and confer in accordance with the clear terms of Local Rule 54-5, which require Plaintiff to meet and confer before filing any petition seeking fees. Counsel's failure to comply with the Local Rule is grounds in and of itself to deny Plaintiff's petition and the petition should accordingly be denied.

To the extent the Court nonetheless considers the petition, however, Plaintiff's petition is premature, and should be held in abeyance until Defendants' April 15 certifications or all appeals have been exhausted, whichever is later. Any fee amount award under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(b), must be based upon the "degree of success" achieved. At this juncture it is not clear whether Plaintiff will be a "prevailing party" entitled to a fee award, or the extent to which she will have achieved any success at the conclusion of this litigation. The petition should be held in abeyance until April 15 or until the conclusion of any appeal.

To the extent it reaches the merits, the Court should reject Plaintiff's claim for fees and expenses under section 2412(b) of EAJA that is based on bad faith or for sanctions under Federal Rules of Civil Procedure 16 and 37. Throughout these proceedings Defendants have not acted in bad faith, but in reasonable defense. Indeed, Defendants' positions, both on the merits and in the litigation as a whole, were "substantially justified." Plaintiff's alternative request for an award under section 2412(d) of the EAJA should thus be denied for that reason, and because this case was a matter of first impression.

At a minimum, the fee award should be reduced given the limited success obtained by Plaintiff, and to account for the deficiencies and excessive billing in the petition. Any award, moreover, must be based upon the statutory rate set forth in the EAJA adjusted for an appropriate cost-of-living ("COL"), not the fee enhancement sought by Plaintiff in her petition. Plaintiff's request for expenses should be similarly denied. She has failed to provide any explanation for the excessive expenses sought, much less supporting documentation. Because the Court has no basis for assessing the reasonableness of the expenses claimed, the expenses should be denied.

1

## ARGUMENT

**I. PLAINTIFF'S FAILURE TO COMPLY WITH THE MEET AND CONFER REQUIREMENTS OF LOCAL RULE 54-5 REGARDING ATTORNEY'S FEE PETITIONS REQUIRES DENIAL OF THE MOTION**

Plaintiff failed to comply with the meet and confer requirements of Local Rule 54-5, which, as this Court has held, is a ground for denial of a motion. *Johannson v. Wachovia Mortg.*, No. 11-2822, 2012 WL 2793204, at *1-2 (N.D. Cal. July 9, 2012). Local Rule 54-5(a) requires that "counsel for the respective parties must meet and confer for the purpose of resolving all disputed issues relating to attorney's fees before making a motion for award of attorney's fees." Local Rule 54-5(b)(1) also requires a declaration or affidavit must be filed with the motion for attorney's fees stating that "counsel have met and conferred for the purpose of attempting to resolve any disputes with respect to the motion or a statement that no conference was held, setting forth the reason the conference was not held."

Plaintiff filed multiple declarations in support of her motion, and none contained the requisite certification under Local Rule 54-5(b)(1). That is because Plaintiff's counsel made no effort to meet and confer with undersigned counsel prior to the filing of the motion. *See* accompanying Declaration of Paul G. Freeborne, ¶ 2. In *Johannson*, this Court found that, though the applying attorney made at least a putative effort to meet and confer before filing the motion, the failure to actually meet and confer mandated a denial of the motion for fees. 2012 WL 2793204, at *1-2. Here, counsel made no attempt whatsoever to comply, and Plaintiff's motion should be accordingly denied.[1]

**II. PLAINTIFF'S APPLICATION FOR FEES IS PREMATURE**

Even if the Court is inclined to consider the application despite the Local Rules violation, it should hold the application in abeyance until April 15 (when Defendants' certifications are

---

[1] Plaintiff's counsel has previously failed to comply with the meet and confer requirements of the Local Rules in this litigation. *See, e.g.*, Dkt. 519 at n.1. In addition, the Court previously admonished Plaintiff's counsel, after they failed to follow the Local Rules, to "please comply with the Civil Local Rules and the Court's supplemental order for all future filings." Dkt. 505. Plaintiff's failure to not only follow the Local Rules, but also the Court's specific order requesting them to do so, warrants denial of the present motion.

due) or until any and all appeals are exhausted, whichever is later.  The "most critical factor" in determining a reasonable fee is the results obtained in the litigation.  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  If, after all appeals are exhausted, Plaintiff is a prevailing party, that determination merely brings her across the "threshold" of eligibility, and it remains for the district court to determine what fee is "reasonable."  *Id*. at 433.  The determination of the lodestar—reasonable hours multiplied by a reasonable hourly rate—"does not end the inquiry;" rather, the "crucial" and "most critical" factor in deciding a reasonable fee is the results obtained. *Id*. at 434, 436.  Even a finding that Plaintiff has obtained "significant" relief "does not answer the question of what is 'reasonable' in light of that level of success."  *Id*. at 439.  "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."  *Id*. at 440.

Based upon the foregoing principles, the fee application is premature.  At this point, it is unclear what, if any, relief Plaintiff will have been determined to have prevailed upon. Defendants may appeal, and may prevail on an appeal.  Additionally, it may be that Defendants may have already undertaken all of the corrective actions sought by the Court.  *See* Jan. 14, 2014 Order at 28:9, 18 (recognizing that "[i]t is perhaps true that the error has already been corrected" and that the Government may have already cleansed its records).  Any fee award must be commensurate with such results, which are presently unknown.  Because the most basic information needed to evaluate the reasonableness of any fee award is presently unknown, Plaintiff's application should be held in abeyance until all appeals are exhausted in this action and a final, unreviewable decision is rendered, whichever is later.  The Court "has broad discretion to stay proceedings as an incident to its power to control its own docket," *Clinton v. Jones*, 520 U.S. 681, 706 (1997), and this broad discretion extends to the timing of consideration of petitions for attorney's fees pending  appeal.  *Karuk Tribe of Cal. v. U.S. Forest Serv*., No. 04-4275, 2006 WL 228943 at *2 (N.D. Cal. Jan. 30, 2006) (internal citations omitted).  A stay is appropriate here to promote judicial economy and the threat of overcompensation.  *Id*.

## III.   PLAINTIFF'S ALLEGATIONS OF BAD FAITH ARE WITHOUT MERIT

To the extent the Court considers Plaintiff's motion for fees on the merits, it should reject

3

Plaintiff's attempt to seek fees and costs as sanctions for alleged bad faith under section 2412(b) of the EAJA (or Rules 16 and 37). The bad faith exception to the American rule, under which each side bears its own legal costs, is a narrow one and requires Plaintiff to demonstrate conduct that is "vexatious[], wanton[], or oppressive[]." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal quotations and citations omitted) (common law standard); *Brown v. Sullivan*, 916 F.2d 492, 495 (9th Cir. 1990) (internal quotations and citations omitted); *Rodriguez v. United States*, 542 F.3d 704, 711 (9th Cir. 2008) (applying standard under Section 2412(b) of EAJA). Defendants have not acted in bad faith at any time in defending this action. To the contrary, they have put forward a reasonable defense, and in many instances, their defenses were accepted by the Court. Plaintiff has failed to make the weighty showing required for an award of fees based on "bad faith," and her request for fees on this basis must be denied.

### A.     Defendants Never Misrepresented Facts Regarding Plaintiff

Plaintiff first contends that Defendants misrepresented Plaintiff's status on a watchlist and/or the reasons for her inability to travel to the United States. Pl's Mem. in Supp. of Pl's Mot. for Award of Attorneys' Fees and Costs ("Pl's Mem.") at 1:13-23. This contention has no basis in fact. As the Court found, Plaintiff was removed from the No-Fly List on January 2, 2005, shortly after she was denied boarding and after the Terrorist Screening Center determined that she should not have been included on the No Fly List. *See* Jan. 14, 2014 Order at 16:21-24 (Finding of Fact 38). Plaintiff has been ████████████████████████. *Id*. at 16:16-19:28 (Findings of Fact 36-56). She remains ██████████ *Id*. at 19:23-28 (Findings of Fact 55 and 56). Defendants never represented anything to the contrary—and more importantly, nothing in the Court's January 14, 2014 opinion reflects any misrepresentation by Defendants of these facts. A fee award based on bad faith in litigation must reflect specific findings and be accompanied by a clear explanation justifying its imposition. *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). Plaintiff has failed to point to any finding of the Court (or even record evidence) that would support her assertion.

Plaintiff's further contention that Defendants "falsely brand[ed] [her] a terrorist" (Pl's Mem. 1:24-25) similarly is based on rhetoric, not fact. Defendants never publicly revealed

Plaintiff's watchlist status or the reasons for her 2009 visa denial or 2005 visa revocation outside of the course of this litigation, and even within the course of this litigation, Defendants have consistently attempted to protect that information within limitations of the protective orders. It is Plaintiff (through counsel) who persists in attempting to publicly reveal Plaintiff's watchlist status. Moreover, although the 2009 visa refusal is not part of the Second Amended Complaint, the Court nonetheless recognized that Plaintiff's visa was appropriately denied under 8 U.S.C. § 1182(a)(3)(B), which covers terrorist activities.[2]

### B.     Defendants Appropriately Raised Jurisdictional Defenses At Each Stage of the Litigation

Plaintiff next argues that Defendants' pursuit of jurisdictional arguments after the second remand was improper. Pl's Mem. at 2:12-4:5.[3] To the contrary, the Ninth Circuit based its standing decision on the facts alleged in the Second Amended Complaint. *Ibrahim v. DHS*, 669 F.3d 983, 992-994 (9th Cir. 2012) (analyzing Plaintiff's standing under Rule 12 motion to dismiss standard). The ruling did not foreclose Defendants' ability to argue standing at the summary judgment stage and at trial, based on the record developed post-remand. Because Defendants' arguments were not "so obviously wrong" or so lacking in support to be "groundless," they do not support Plaintiff's allegation of bad faith. *See United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1183 (9th Cir. 2003) (stating that a "frivolous [argument] is one that is groundless," and an argument is groundless if it is "foreclosed by binding precedent or . . . obviously wrong") (internal quotations and citations omitted).

 At the pleadings stage, general factual allegations may suffice. At the summary judgment phase, however, a plaintiff "can no longer rest on such 'mere allegation' but must 'set forth' by affidavit or other evidence 'specific facts'" to establish standing. *Lujan v. Defenders of Wildlife*,

---

[2] As noted above, Plaintiff's claim that Defendants have failed to correct completely Plaintiff's mistaken placement on the No Fly List does not directly follow from the Court's order, which held that, *if* such correction is necessary, Defendants must endeavor to make the correction. Jan. 14, 2014 Order at 28:9-16.

[3] Plaintiff implies that Defendants' "succe[ss] in halting the case for two appeals," Pl's Mem. 2:15, somehow demonstrates bad faith. Such a suggestion should be rejected; many of the Government's positions were initially adopted by this Court. Appeals are a normal part of the litigation process.

5

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS

504 U.S. 555, 561 (1992).  "[T]he court may reconsider whether the plaintiffs have standing . . . at the trial stage of the litigation."  *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005).

On remand from the second Ninth Circuit decision in this matter, Defendants put forward certain facts that contradicted allegations in the Second Amended Complaint and demonstrated that the basis for the Ninth Circuit's standing ruling was in error.  Defendants' development of jurisdictional defenses through the development of a factual record was entirely proper under Rule 12(b)(1), *Lujan*, and Ninth Circuit precedent.

Moreover, Defendants' subsequent inclusion of a standing argument in their motion for summary judgment properly attempted to correct inaccurate statements made by Plaintiff's counsel to the Ninth Circuit regarding Plaintiff's ability to fly outside the United States.  In 2012, Plaintiff's counsel represented to the Ninth Circuit that "[t]he last time Ibrahim attempted to fly, she was informed at an airport in Malaysia that there was a note next to her name, calling for her arrest."  *See* Appellant's Response to Petition for Rehearing and Rehearing En Banc at 13 (Exhibit 1 to Freeborne Decl.).  Plaintiff also suggested that Plaintiff "cannot fly . . . on a foreign carrier."  *Id.* at 12.  Neither of these statements to the Ninth Circuit was correct:  Plaintiff admitted at her deposition that she flew on foreign carriers at least a dozen times between 2005 and 2012, and the incident at the airport in Malaysia occurred in March 2005, not "the last time [she] attempted to fly."  Defendants did not learn about the extensive nature of Plaintiff's international travel until discovery, and appropriately raised this argument again once Plaintiff's statements to the Court of Appeals had been disproven.

### C.  Defendants Pursued the State Secrets Assertion, and the Consequences of Upholding the Assertion, in Appropriate Stages

Defendants did not, as Plaintiff claims, raise the argument of dismissal based on the state secrets privilege for the first time during summary judgment.  Pl's Mem. 4:6-26.  Rather, from the time that they invoked the state secrets privilege in response to Plaintiff's discovery requests, Defendants explained that they might be required to seek dismissal as a consequence of the invocation at some time in the future, but dismissal was not required at the time of invocation.

6

*See* Defs' Opp. to Pl's Mot. to Compel (filed under seal on March 15, 2013) at 21 n.4 ("In some cases, 'application of the privilege may require dismissal of the action,' [quoting *Mohamed v. Jeppesen*, 614 F.3d 1070, 1083 (9th Cir. 2010)]". Defendants are not seeking dismissal at this time, *although it may become necessary to move for dismissal at a later stage*.") (emphasis added) (filed under seal on April 4, 2013); Defs' Reply in Support of their Opp. to Pl's Mot. to Compel Classified Info. (filed under seal on April 4, 2013) at 3 n.3 ("Defendants have sought to resolve this case without resorting to classified information. If necessary, however, Defendants *reserve the right to seek dismissal if further litigation of the Plaintiff's claims would risk or require the disclosure of information subject to the state secrets privilege*.") (emphasis added).

In their motion for summary judgment following discovery, Defendants urged the Court to enter judgment for Defendants based on the unclassified record: specifically, Plaintiff's failure to establish an injury sufficient to confer standing or to prove the merits of her claims. *See* Defs' Mot. for Summ. J. at 9-22 (filed under seal on September 5, 2013). Defendants made these arguments first because, to the extent possible, they sought to litigate and resolve the case based on the unclassified record. However, as an alternative argument in Section III of their motion, Defendants argued that, if the Court did not enter judgment for Defendants based on the previous two arguments, dismissal was warranted based on the Court's ruling upholding the state secrets privilege, because the evidence excluded by the privilege assertion would have been necessary to litigate the remaining arguments in the case. *Id.* at 23 ("Should the Court decide not to enter judgment on the grounds set forth above, summary judgment should nonetheless be entered for Defendants. This case could not proceed further because the privileged evidence excluded by the state secrets privilege would inherently be at issue in further proceedings or at risk of disclosure."). Moreover, consistent with *Jeppesen* and other binding Ninth Circuit authority, Defendants never requested that the Court rely upon the information excluded by the state secrets privilege in the adjudication of the merits of any claim or defense. *See* Dkt. 541 at 1:6-7 (Defendants, responding to the Court's September 13, 2013 Order, affirming that "they will not rely on any information they have withheld on grounds of privilege from Plaintiff in response to a discovery request in this case" and that they will not "affirmatively seek to prevail

in this action based upon information that has been withheld on grounds of privilege").

Defendants sought dismissal, in the alternative, based on their invocation of the state secrets

privilege precisely because they could *not* rely upon the excluded information consistent with

that privilege assertion.  Defendants' representations in this regard were thus consistent

throughout the course of the litigation, and also were consistent with controlling law regarding

the state secrets privilege.

### D.    Defendants' Conduct in the Course of Discovery Did Not Demonstrate Bad Faith, in Contrast to Plaintiff's Frivolous Attempts to Reconsider Discovery Rulings and Postpone the Trial

Plaintiff raises several objections to Defendants' actions during discovery, none of which

has merit.  This summary of the discovery process in this case (Pl's Mem. at 5:1-6:28) omits her

numerous unsuccessful discovery motions in July and August of 2013, which consumed

unnecessary resources and wasted the parties' and the Court's time.  Plaintiff filed motions to

reconsider the Court's state secrets decision, amend her complaint for a third time, reopen

discovery, and continue the trial date.  *See* Dkt. 485, 486, 501, and 507.  At the same time,

Plaintiff attempted, without substantiation, to depose the Attorney General of the United States

and the Director of the Office of National Intelligence.  Dkt. 477.  Each of these meritless

discovery efforts required unnecessary expenditure of resources by the parties and the Court, and

each was ultimately rejected.  After months of Plaintiff's ill-conceived discovery tactics, the

Court ultimately ordered that "plaintiff may not file any further motions for discovery relief

absent prior leave of the Court."  Dkt. 532 at 18:24-25.[4]

Regarding Plaintiff's specific objections, Plaintiff argues that Defendants improperly

asserted privileges over documents during the course of discovery, forcing Plaintiff to "incur the

expense of extensive motions to compel that dealt with [D]efendants' numerous unmeritorious

privilege objections."  Pl's Mem. at 5:1-6:24-26.  Defendants' privilege assertions were not

---

[4] Nor did Defendants unnecessarily delay discovery "for years," as Plaintiff suggests.  Pl's Mem. at 5:1-2.  As the Court previously recognized in addressing Plaintiff's previous complaint of delay, "the bulk of the delay [in this action] is the result of the time necessary to resolve plaintiff's appeals."  Dkt. 532 at 11:22-23.

8

improper, and, in fact, were largely upheld by the Court.  Specifically, in their response to Plaintiff's motion to compel, Defendants asserted several privileges over responsive documents, including the law enforcement privilege and the state secrets privilege.  Though the Court ordered that a limited set of documents could be produced to Plaintiff, the Court upheld the assertion of the state secrets privilege for the overwhelming majority of the documents submitted to the Court *ex parte*, denied Plaintiff's motion to compel law enforcement sensitive terrorist watchlisting materials dated after 2009, and found that the remaining law enforcement sensitive materials could be protected through an attorney's eyes only protective order largely agreed-upon by the parties.  *See* Dkt. 464.  Defendants' privilege assertions were therefore necessary to protect the sensitivity of these materials, and were neither "unmeritorious" nor made in bad faith.

Plaintiff further argues bad faith based on Defendants' alleged failure to comply with a scheduling order in February 2013.  *See* February 19, 2013 Order (Dkt. 416).  As noted by Defendants after the entry of the February 19, 2013 Order, Defendants' counsel had a good faith misunderstanding of the timing for submission of the privilege logs under the protective orders in the case.  *See* Dkt. 417.  Defendants promptly complied with the order once the appropriate protections for the Sensitive Security Information ("SSI") and law enforcement sensitive ("LES") information contained in the privilege logs were put in place by the Court.

Finally, Plaintiff argues that Defendants' proposal at the outset of discovery to proceed with discovery in stages somehow evidenced bad faith.  Pl's Mem. at 6:16-22.  Defendants argued at the time that they sought to further the Court's request to move forward with a resolution of the case in a manner that does "justice to both sides without any harm to national security."  *See* Dkt. 406 at 1 (quoting Dec. 20, 2012 Tr. of Proceedings).  Defendants' proposal was to produce non-classified information related to Plaintiff's status in various watchlists, and then proceed to summary judgment based on that status, which would have avoided the assertion of the state secrets privilege.  *See* Dkt. 417.  This attempt to stage proceedings in this manner did not demonstrate bad faith; to the contrary, it represented Defendants' good faith attempt to limit the nature of the litigation and bring the case to resolution, in keeping with the Court's request to undersigned counsel at the December 20, 2012 hearing.

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E.      Defendants Properly Made Privilege Objections and Followed TSA Regulations Regarding the Protection of SSI**

Plaintiff claims, erroneously, that the Defendants acted in bad faith by raising privilege objections at depositions. Pl's Mem. at 7:3-14. She fails to note that the Court upheld almost all of these objections after numerous unsuccessful motions by Plaintiff, *see* Dkt. 532 at 8:1-9:23, and after the Court admonished her counsel for repeatedly asking questions at depositions that they knew to implicate privileged information. *See id.* 8:15-24. Plaintiff specifically challenges the process by which Defendants protected SSI at depositions and in redacting documents. Pl's Mem. at 7:15-8:3. Again, Plaintiff's allegations are without merit. At all times during this litigation Defendants acted to protect SSI from disclosure to non-covered persons in good-faith reliance on a statute, TSA regulations, and a TSA final order.

Plaintiff's contention that during discovery "defendants were improperly using the qualified 'sensitive security information' privilege to withhold information from plaintiff and her counsel and delay the proceedings," Pl's Mem. at 7:12-14, is incorrect. To be clear, Defendants *did not withhold any information from Plaintiff's counsel on the ground that the information is SSI.* TSA authorized Plaintiff's counsel to access all SSI at issue in this case pursuant to section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Pub. L. No. 109-295, § 525(d), 120 Stat. 1355, 1382 (Oct. 4, 2006). The terms and conditions of Plaintiff's counsel's access to SSI were set out in a Protective Order Regarding SSI, Dkt. 421, entered on February 25, 2013. As the Court has recognized, Plaintiff's counsel who have been cleared have been free to access and use SSI to prepare and prosecute her case. *See, e.g.*, Dkt. 591 at 25:17-18 (THE COURT: "The lawyers here get access [to SSI]. That's not an issue.").

Plaintiff's real complaint thus seems to be that Defendants withheld SSI *from Plaintiff* during discovery. But as the Court recognized, "Plaintiff herself was never cleared to receive . . . SSI" under section 525(d). Dkt. 682 at 4:3-4. Plaintiff therefore cannot claim bad faith based on Defendants' withholding of SSI from her during discovery. Plaintiff also contends that Defendants should not have required a document produced by a local police department to be marked as SSI because it was not created by the federal government. *Id.* at 7:16-17. As an

10

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS

initial matter, that the document was not created by the federal government is of no consequence. State and local officials are covered persons under federal regulation and are authorized to possess and required to protect SSI.[5]  But in any event, designating a document as SSI did not prevent Plaintiff's counsel from using that document in a deposition; it simply meant that the document had to be marked as SSI and protected accordingly.

### F.   Defendants Did Not Unlawfully Inhibit Plaintiff's Ability to Testify

Contrary to Plaintiff's claims, the Court did not find that Defendants obstructed Plaintiff's ability to travel to the United States to testify in this case.  Pl's Mem. at 8:4-12.  No evidence at trial as much as suggests that decisions concerning Plaintiff's request for a visa were based on Defendants' desire to prohibit Plaintiff from testifying at trial.  Instead, the Court, recognized that "denial of visas may *not* be reviewed by district courts," Jan. 14, 2014 Order at 32:1-2 (citing *Kleindienst v. Mandel*, 408 U.S. 753, 769–70 (1972)), and declined to require any relief related to Plaintiff's visa, *id.* at 31:22-24.  Though the Court found that Plaintiff was entitled to be informed that she is eligible to apply for a discretionary waiver under 8 U.S.C. § 1182(d) and 22 C.F.R. 41.121(b)(1), the Court did not find that Plaintiff was entitled to the waiver and acknowledged that the decision whether or not to grant a waiver "would presumably be unreviewable." *Id.* at 34:26-28.  To find that Defendants "obstructed" Plaintiff's travel plans in 2013 by failing to inform her of her right to a waiver in 2009 presumes that Plaintiff would still, in fact, apply for and obtain a waiver, which are determinations that have not yet been made.

### G.   Defendants Appropriately Informed the Court that They Did Not Deny Plaintiff's Daughter Boarding

Plaintiff also alleges that in informing the Court that "defendants did nothing to deny

---

[5] The fact that a local airport law enforcement agency, which is a "covered person," possessed or created a document containing SSI simply means that the document must be marked and protected. Any document, regardless of provenance, must be marked as SSI if it contains information that has been designated as SSI.  *See* Dkt. 648 at 5-6.  The police department document in this case revealed Plaintiff's status with respect to the No-Fly and Selectee Lists on certain dates, which are expressly designated as SSI in TSA's regulations.  *See* 49 C.F.R. 1520.5(b)(9)(ii).  It was therefore reasonable for Defendants to require the document to be marked as SSI and handled accordingly.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS

plaintiff's daughter boarding," Defendants "misrepresented the reason Plaintiffs daughter was unable to board her flight to the United States." Pl's Mem. at 8:18-19.  The record developed at trial and through the Declaration of Maureen Dugan (Dkt. 692), however, confirms that Defendants did not deny Plaintiff's daughter boarding.  Consistent with this record, the Court declined to find that Defendants denied Plaintiff's daughter boarding *or* that Defendants made any misrepresentations with respect to Plaintiff's daughter.

### H.   Defendants Also Properly Informed the Court When Plaintiff's Counsel Attempted to Reveal to the Public SSI at Trial

Nor is there any merit to Plaintiff's contention that Defendants made contradictory representations at trial regarding whether particular information is SSI.  *See* Pl's Mem. at 9:12-10:25.  Plaintiff alleges that Defendants represented on the first day of the trial that the fact that she was ███████████████████████, is not SSI.  *Id.* at 10; Dkt. 671 at 69:2-4.  But Plaintiff fails to mention that on the same day, Defendants represented to the Court that statements about Plaintiff's status vis-à-vis the TSDB during the period from October 20, 2009, through the present *might* reveal SSI, depending on how they are articulated.  Dkt. 671 at 122:16-22; 123:23-25 (MS. FAREL: "Plaintiff's current status in the TSDB or not in the TSDB is protected by the Law Enforcement Privilege, as well as potentially SSI, depending on how you articulate this.").  Plaintiff argues that Defendants contradicted themselves on the fourth day of the trial.  Pl's Mem. at 10:15-25.  On that day, Plaintiff's counsel asked a witness whether Plaintiff was in the TSDB on October 20, 2009.  Dkt. 675 at 695:22-23.  Defense counsel objected, stating that Plaintiff's status vis-à-vis the TSDB was "a fact that I believe we've only let come out in a closed courtroom."  *Id.* at 696:1-3.  The Court was then unable to definitively determine whether the fact had previously been disclosed to the public and whether it was appropriate to reveal it at that time.  The Court therefore ruled as follows:

> I'm just saying for the moment, I'm going to put that part of the transcript under seal until we can get to the bottom of what privilege . . . actually does cover that, if any[.]  And maybe there is no privilege.

*Id.* at 697:15-19.

*After* making this ruling, the Court asked Defendants if the fact that Plaintiff was ████

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS

████████████████, is SSI, and defense counsel responded that "it may be." *Id.* at 697:21.  In context, it is clear that Defense counsel's response was not a deliberate misrepresentation, but an articulation of concern with Plaintiff's counsel's line of questioning, which appeared to be headed in the direction of Plaintiff's current status with respect to the TSDB.  This concern was entirely consistent with Defendants' representation on the first day of the trial that current status information might be SSI depending on how it is articulated.  It is also clear that Defense counsel's statement that a fact "may be" SSI did not affect how the Court ruled; the Court had already decided to seal the transcript of the witness's testimony before asking Defendants whether the fact was SSI.

> **I.**   **SSA Lubman's Clarifications of Her Prior Testimony Do Not Demonstrate Bad Faith**

Finally, no finding of bad faith can stem from two minor modifications SSA Lubman made to her deposition testimony at trial.  Pl's Mem. 11:1-18.  Neither change reflected an attempt to mislead the Court or otherwise act in bad faith in the defense of the case, and the Court made no adverse finding about SSA Lubman's credibility because of these corrections.

*          *          *

In sum, Plaintiff has failed to establish any instance of the Defendants acting in bad faith in defense of this matter.  At all times, Defendants have acted in good faith and reasonable defense of this action by seeking to protect classified or otherwise sensitive/statutorily protected information as appropriate.  Plaintiff's request for fees based on bad faith should be denied.

## IV.   NEITHER RULE 16 NOR RULE 37 PROVIDE FOR THE SANCTIONS SOUGHT BY PLAINTIFF

Nor are sanctions appropriate under either Rule 16(f) or 37(b), which involve the same standards, including the requirement that a judge shall not award sanctions without a finding that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.  *See* Fed. R. Civ. P. 16 Advisory Committee Notes, 1983 Amendment ("Rule 16(f) incorporates portions of Rule 37(b)(2), which prescribes sanctions for failing to make discovery.").  Plaintiff generally contends that Defendants' assertions of privilege and request for limitations on discovery are a basis for the award of sanctions.  Pl's Mem. at 16:11-17:2.  This is

not the case.  Defendants were substantially justified in raising arguments in their opposition to Plaintiff's motion to compel, as set forth in more detail above.  There was no unlawful or inappropriate "pushing out" of the schedule in this matter.  The deposition of Kevin Kelley later in discovery was the direct result of Plaintiff's choices about whom to depose after the Court limited the number of depositions she could take.  Moreover, cases where sanctions are awarded involve very different circumstances than those present here.[6]  The Court should reject Plaintiff's effort to transform the differences in the opposing parties' positions into a basis for sanctions.

## V.  NO FEES SHOULD BE AWARDED BECAUSE THE GOVERNMENT'S POSITION WAS SUBSTANTIALLY JUSTIFIED

Plaintiff's alternative request that she be granted fees under Section 2412(d)(1)(A), Pl's Mem. at 13:23-15:6, should also be denied.  Plaintiff does not clearly identify which specific "positions" of Defendants she is challenging as lacking substantial justification.  She appears to challenge (1) the defense of Plaintiff's ███████████████; (2) the arguments raised by Defendants on appeal and in the district court at the motion to dismiss stage; and (3) Defendants' position on questions of privilege, including the state secrets privilege.  Each of these positions was substantially justified.

---

[6] *Compare Sutherland v. Yates*, No. 09–02152, 2012 WL 4208936, at *3 (E.D. Cal. Sept. 18, 2012) (declining to award Rule 37(b) sanctions where Defendants' discovery responses were served after a Court-ordered deadline had expired as a result of "a clerical mistake" and holding "the Court finds no willfulness, bad faith, or fault on the part of Defendants to justify the imposition of sanctions.  Moreover, Plaintiff has not shown that he was prejudiced by Defendants' delay or misstatements."); *Painter v. Atwood*, No. 12-01215, 2013 WL 4774762, at *3 (D. Nev. Sept. 3, 2013) (declining to award Rule 37(b) sanctions where "there is no indication that Plaintiff's delay in producing discovery responses was the result of bad faith.  Rather, it appears that Plaintiff fully intended to cooperate in discovery but required additional counseling from her attorney to understand the importance of timeliness.  This appears to be an isolated incident and, additionally, Plaintiff's counsel has represented that timeliness will not be an issue moving forward."); *United States v. Samaniego*, 345 F.3d 1280, 1284 (11th Cir. 2003) (upholding lower court's decision not to award Rule 16(f) sanctions where plaintiff filed his pretrial statement three days after it was due, the three day delay not being an unreasonable and not interfering with the expeditious resolution of the case); *with Fair Housing of Marin v. Combs*, 285 F.3d 899, 905-06 (9th Cir. 2002) (upholding award of Rule 37(b) sanctions where defendant "continued to violate court orders despite multiple warnings and a finding that monetary sanctions should be imposed" and "misrepresented to both counsel and to the district court that [certain] documents did not exist"); *Navellier v. Sletten*, 262 F.3d 923, 947-48 (9th Cir. 2001) (upholding award of Rule 37(b) sanctions where party's counsel "willfully refused to answer questions at his deposition concerning the circumstances under which insurance was procured for the Fund—even after the special master ordered [him] to answer the questions").

14

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS

1    The test for "substantially justified" is one of "reasonableness." *League of Women Voters*

2    *of Cal. v. FCC*, 798 F.2d 1255, 1257 (9th Cir. 1986).  A position is "substantially justified" if it

3    "ha[s] a reasonable basis both in law and fact."  *Id.*  This does not mean "'justified to a high

4    degree,' but rather 'justified in substance or in the main'— that is, justified to a degree that could

5    satisfy a reasonable person."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  Essentially,

6    substantially justified means there is a dispute over which "reasonable minds could differ."

7    *League of Women Voters*, 798 F.2d at 1260.

8        Plaintiff first appears to contend that there is "no factual justification for" ███████ of

9    Plaintiff ███████████, presumably because she does not satisfy the ███████████████████████ "

10   ███████, Pl's Mem. 14:22-26.  This ignores that Plaintiff has been ███████████████████████

11   ███████████████████████████ the nature of which is protected under the

12   Government's assertion of the state secrets privilege.  *See* Jan. 14, 2014 Order at 19:22-26

13   (Court's Finding of Fact No. 55).  The Court recognized that "since the reasonable suspicion

14   standard is an internal guideline used within the Executive Branch for watchlisting and not

15   imposed by statute (or by specific judicial holding), the Executive Branch is free to modify its

16   own standard as need by exception, even if the exception is [protected] in state secrets."  *Id.* at

17   30: 2-5.  The Court did not order Plaintiff ███████████████ .  Defendants' defense of

18   Plaintiff's ███████████ thus "ha[s] a reasonable basis both in law and fact," *FCC*, 798 F.2d

19   at 1257, and is substantially justified.

20       Defendants' legal positions in this Court and on appeal were equally substantially

21   justified.  As noted in the Court's January 14 Order (2:4-3:18), the Court twice adopted

22   Defendants' jurisdictional arguments, evidencing the reasonableness of the Government's

23   position.  *See Gonzales v. Free Speech Coal.*, 408 F.3d 613, 620 (9th Cir. 2005) ("Given the

24   government's appropriate arguments in defense of the [statute], the 'string of successes' in four

25   circuit courts and the district court below, a split panel decision, and numerous other objective

26   indicia of reasonableness, the district court's conclusion that the government's position was not

27   substantially justified was not supported by the record").  With regard to Defendants' standing

28   argument pursued on appeal, which Plaintiff attacks (Pl's Mem. at 14:28-15:1), Defendants'

15

1    position was supported by one member of the split Panel, Judge Duffy.  In addition to concluding

2    that Plaintiff had no substantial connection to this country that would permit her to avail herself

3    of the Constitution, Judge Duffy also concluded that Plaintiff lacked Article III standing because

4    her inability to return to this country "is ultimately non-redressable" because it stems from her

5    inability to obtain a visa, a decision which is ultimately not reviewable under established Ninth

6    Circuit precedent.  *See Ibrahim v. DHS*, 669 F.3d 983, 1005 (9th Cir. 2012) ("*Ibrahim II*").

7         Defendants were similarly justified in disputing Plaintiff's standing upon remand.  The

8    *Ibrahim II* decision came at the motion to dismiss stage and thus the Ninth Circuit accepted the

9    allegations of Plaintiff's complaint as true.  It was reasonable for Defendants to raise the standing

10   argument at summary judgment, once Plaintiff's ███████████—a fact that was not before

11   the Ninth Circuit panel—had been revealed in discovery.  In addition, as noted above,

12   Defendants reasonably made standing arguments on remand once discovery made clear that

13   Plaintiff's counsel had made erroneous representations to the Ninth Circuit regarding Plaintiff's

14   ability to travel.  With respect to assertions and arguments about privilege, as discussed above,

15   Defendants' positions were substantially justified and supported by Circuit precedent.  Regarding

16   the state secrets privilege in particular, Defendants timely presented their defense at summary

17   judgment, after alternative means of resolving the case based on the unclassified record had been

18   exhausted.

19         Fees should accordingly be denied under Section 2412(d)(1)(A) of EAJA, particularly in

20   a case such as this that involved many difficult issues and was a case of first impression.  *See*

21   *Commodities Future Trading Comm'n v. Frankwell Bullion Ltd.*, 99 F.3d 299, 306 (9th Cir.

22   1996) (denying fees in case of first impression); *Edwards v. McMahon*, 834 F.2d 796, 802-03

23   (9th Cir. 1987) (same); *Minor v. United States*, 797 F.2d 738, 739 (9th Cir. 1986) (same).

24   Indeed, the special circumstances of this case warrant a denial of a fee award under the "special

25   circumstances" provision of section 2412(d)(1)(A).  Apart from denying fees where the

26   government's defense was substantially justified, 28 U.S.C. § 2412(d)(1)(A) also permits the

27   Court to deny fees in cases of first impression where "special circumstances made an award

28   unjust."  The legislative history explains that "[t]his 'safety valve' helps to insure that the

16

Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts.  It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made." H.R. Rep. No. 96-1418, at 11 (1980), *reprinted in* U.S.C.C.A.N. 4984, 4990; S. Rep. No. 96-253, at 7 (1979).  The novel issues presented in this case of first impression provides an additional ground to deny an award under § 2412(d)(1)(A).

## VI.   PLAINTIFF SEEKS COMPENSATION FOR AN UNREASONABLE NUMBER OF HOURS AND ANY AWARD SHOULD BE REDUCED ACCORDINGLY

In no event should Plaintiff be awarded the full amount of fees she seeks, which is patently unreasonable; any award should be substantially discounted.  Plaintiff's demand for attorney and non-attorney (*e.g.*, law clerk and paralegal) time dating back to the first day of the case is excessive and unreasonable — even assuming Plaintiff obtains some "significant" relief after the certifications required in the Court's January 14 Order and all appeals are exhausted.

### A.   The Fee Award Should Be Reduced to Account For Plaintiff's Failure to Maintain Billing Records That Identify the Distinct Claims.

Plaintiff has failed to properly document the hours supporting her claim for fees, which requires her to segregate out work performed in connection with the one claim she partially prevailed upon (*i.e.*, the procedural due process claim).  If the "documentation submitted" in support of a fee request is "inadequate, the district court must reduce the award accordingly." *Hensley*, 461 U.S. at 433.  *Hensley* makes clear that the prevailing party "should maintain billing time records in a manner that will enable a reviewing court to identity distinct claims." *Id.* at 437; *see id.* at n.12 (counsel's records must provide a proper basis for determining how much time was spent on particular claims); *see also Schwarz v. Sec'y of Health and Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995)  ("[A]n attorney should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.") (internal quotation marks and citation omitted).  And "[r]eviewing courts will not 'view with sympathy' claims that a district court abused its discretion in awarding unreasonably low attorney's fees where the record does not provide a proper basis for determining time spent on specific claims. *Hensley*, 461 U.S. at

17

437 n.12.  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Id*. at 433; *accord Trustees of Directors Guild of America-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 433 (9th Cir. 2000).

The vast majority of the entries fail to include this required level of specificity regarding the claims to which attorney time was devoted.  Indeed, many of the entries commingle time spent on all of Plaintiff's claims not only against the Government but the City, County, and private defendants (prior to 2010, when they were dismissed).  Time records that are "submitted in [this] form [are] not reasonably capable of evaluation do not satisfy the 'burden if submitting detailed time records justifying the hours claimed.'"  *Stewart v. Gates*, 987 F.2d 1450, 1453 (9th Cir. 1993) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)).[7]

**B.     Attorney Time for Claims Against Other Defendants Should Be Excluded.**

It is also inappropriate to assess fees against the United States for phases of the litigation in which Plaintiff was opposed by other defendants.  *See Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991) ("[an] award against the government for fees incurred by [plaintiff] in opposing the stay is unjust because the government did not join in the intervenors' motion to stay, and [plaintiff] has not shown that the attorney's fees attributable to fighting the stay were incurred in opposing government resistance.").  Defendants have accordingly excluded from the petition hours that were devoted solely to the prosecution of claims against the non-Federal defendants.

**C.     Attorney Time Should Be Reduced To Exclude Hours That Were Spent on Unsuccessful or Unnecessary Arguments**

"Where [a party] has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley*, 461 U.S. at 440; *accord Trustees of Dirs. Guild of Am.*

---

[7]   In doing so, the Court should exclude outright entries that are vague.  Vague entries make it "impossible for the court to verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given legal task."  *In re Sealed Case*, 890 F.2d 451, 455 (D.C. Cir. 1989) (per curiam).  Because those types of time entries "are inadequate to meet a fee applicant's 'heavy obligation to present well-documented claims,'" *Role Models*, 353 F.3d at 971 (quoting *Kennecott Corp. v. EPA*, 804 F.2d 763, 767 (D.C. Cir. 1986) (per curiam)), the hours claimed should be excluded from any hours that are credited.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS

*Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 427 (9th Cir. 2000); *see also Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295-96 (1st Cir. 2001) ("In fashioning fee awards, the attorneys' contemporaneous billing records constitute the usual starting point, but the court's discretion is by no means shackled by those records. For example, it is the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like."). The hours claimed for unsuccessful and/or unnecessary challenges should be excluded from any fee award.

### D. Attorney Time That Is Excessive, Redundant or Unnecessary Should Also Be Excluded

Plaintiff's counsel "should [also] make a good faith effort to exclude from a fee request [hours] that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. Any award should be specifically reduced to account for overstaffing and duplicative work by multiple counsel on the same task. *Tahara v. Matson Terminals*, 511 F.3d 950, 955 (9th Cir. 2007) (in calculating number of hours reasonably expended, a district court is to exclude hours that are redundant). Two aspects of overstaffing are reflected in the billing records submitted by Plaintiff: (i) excessive conferences between co-counsel; and (ii) multiple attorneys working on the same project or attending the same hearing.

#### 1. *Excessive Conferences*

Courts have specifically cut back hours for excessive conferencing. *See Welch v. Metro. Life Ins. Co*., 480 F.3d 942, 949 (9th Cir. 2007) (absent persuasive justification reducing intra-office conference by experienced attorneys); *Keith v. Volpe*, 644 F. Supp. 1317, 1324 (C.D. Cal. 1986) (reduction for excessive non-serial conference time). "Although . . . co-counsel and staff must communicate with each other to insure effective representation, billing at a full rate for each attorney or staff member for such essentially duplicative or instructional effort requires adjustment." *Zhang v. GC Servs*., LP, 537 F. Supp. 2d 805, 813 (E.D. Va. 2008) (66% reduction where two experienced co-counsel conferred repeatedly on case). A reduction for excessive conferencing would likewise be warranted here, especially considering that multiple lawyers

19

(three at partner rates) each attempt to bill the Government for their individual consultation. Moreover, these partners are senior level, experienced attorneys, so it is unclear why the multiple conferences were needed.  Plaintiff should only be permitted to credit the work of one attorney on internal conferences.

### 2.   *Overstaffing*

Aside from excessive conferencing, Plaintiff's documentation also reveals that multiple lawyers worked on the same activity and attended the same hearings, and, thus, would have billed their client for the same work.  Plaintiff made no effort to eliminate this redundancy. "[C]ourts ought to examine with skepticism claims that several lawyers were needed to perform a task, and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do."  *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004).  While some degree of duplication might be reasonable in some circumstances, the billing records accompanying the petition indicate that multiple lawyers have billed time for nearly all major activities in this case.  This is unreasonable.

It also appears that all four counsel seek compensation for their attendance at trial.  At most, a reasonable fee award would compensate two attorneys.  *See Democratic Party*,  388 F.3d at 1287 (court should deny compensation for such needless duplication as where three lawyers appear for a hearing when one would do); *Role Models of Am. v. Brownlee*, 353 F.3d 962, 972 (D.C. Cir. 2004) (no basis presented to support three senior attorneys billing at least $400 for participating in the case); *Keith*, 644 F. Supp. at 1323 (reduction of time where more than two attorneys attended hearing); *Cruz v. Alhambra Sch. Dist*., 601 F. Supp. 2d 1183, 1191-92 (C.D. Cal. 2009) (reductions where four or more attorneys worked on activities and attended events).

The two associates who attended the trial did not examine any witnesses or otherwise appear before the Court at any point in the proceeding and performed what appeared to be paralegal or technical duties (*e.g.*, piloting trial director) that did not require attorney expertise. Yet Plaintiff attempts to bill the Government at attorney rates for their attendance at trial.  The hours billed for the associates' attendance at trial should be excluded on this additional, related ground.  *See, e.g.*, *Or. Natural Desert Ass'n v. McDaniel*, No. 06-242, 2011 WL 4625715 at *4

(D. Or. Sept. 30, 2011) ("charging experienced attorney rates for mailing documents and the like is not reasonable . . . .").[8]  At most Plaintiff can be credited for the attendance of two attorneys at trial or other hearings.[9]

*          *          *

Consistent with the above, Defendants have reviewed the time records submitted by Plaintiff.  *See* Exhibit 2 to Freeborne Decl.  Where an entry could be read to include activity that related to Plaintiff's procedural due process claim, that entry was included in the total amount of *potential* attorney hours for an award.  These include entries that encompassed work on all of Plaintiff's claims, as well as work conducted in litigation against both the Federal and former non-Federal Defendants.  That pool of potentially allocable hours does not include entries that are vague or utilized block billing, work conducted solely in connection with Plaintiff's claims against the non-Federal defendants, or work associated with arguments that were unsuccessful at the trial level or on appeal.  Potential hours also do not include the performance of non-legal work for attorneys.  Entries evidencing excessive billing, such as excess conferences among attorneys and overstaffing at hearings or trial, were reduced in accordance with the case law set forth above; the reduced amount was then included in the potentially allocable hours for an award.  Based on this analysis, Defendants credited a total of 6,781.95 potential hours under the first part of the lodestar analysis.  *See* Exhibit 2 to Freeborne Decl., at 142.

## VII.   PLAINTIFF IS NOT ENTITLED TO A FEE ENHANCEMENT

The hourly rate for attorney's fees under EAJA is presumptively capped:  "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in

---

[8]  The entries for the associates' time, moreover, is one example of fee requests that are based upon serial—or blocked billed—entries in which multiple tasks are accounted for in a single entry.  This practice is disfavored because it does not permit a determination of whether time spent on any specific task was reasonable.  *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *Mendez v. Cnty. of San Bernadino*, 540 F.3d 1109, 1129 (9th Cir. 2008) ("As for the blocked-billed time entries, it was fully appropriate for the court to reduce those claimed hours.").

[9]  The lack of billing judgment reflected in the petition was not limited to attorneys; it also extended to paralegals.  For example, Plaintiff attempts to bill the Government for the attendance of three attorneys and one paralegal at the October 31, 2013 summary judgment hearing.  This and other instances of overstaffing should be excluded from the petition, for the reasons above.

21

the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A)(ii).  That $125 hourly rate was established by a March 1996 amendment to EAJA, *see* Contract with America Advancement Act of 1996, Pub. L. No. 104-121, § 232.  Although it is unclear, Plaintiff appears to argue that she is entitled to a fee enhancement.  The Court should reject that contention.

A fee enhancement must be based upon EAJA's "limited availability of qualified attorneys," and is only permissible where three separate requirements are met:  (i) "the attorney must possess distinctive knowledge and skills developed through a practice specialty"; (ii) "those distinctive skills must be needed in the litigation"; and (iii) "those skills must not be available elsewhere at the statutory rate."  *Love*, 924 F.2d at 1496.  Plaintiff's contention that "[t]here was an extremely limited number of attorneys who were available with the skill and expertise to prosecute a case of this nature," Pl's Mem. 15:21-23, fails to establish the "limited availability of qualified attorneys" for the litigation involved required by the statute.  The plain language of the statute refers to the "limited availability of *qualified* attorneys" who are "expert" in the pertinent legal area or who "specialize" in the subject of the litigation.  28 U.S.C. § 2412(d)(2)(A)(ii) (emphasis added).  Counsel do not need to specialize in a particular area of the law to "qualify" to be counsel for the particular proceeding involved.

As the Supreme Court explained in *Pierce v. Underwood*, 487 U.S. 552 (1988):

> If "the limited availability of qualified attorneys for the proceedings involved" meant merely that lawyers skilled and experienced enough to try the case are in short supply, it would effectively eliminate the [statutory] cap—since the "prevailing market rates for the kind and quality of the services furnished" are obviously *determined* by the relative supply of that kind and quality of services. . . . [T]he exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence.

*Id*. at 571-72 (footnote omitted).  The Supreme Court recognized that Congress could not have intended the "special factor" formulation in the statute to mean "that if the rates for all lawyers in the relevant city—or even in the entire country—come to exceed [the statutory rate] (adjusted for inflation), then that market-minimum rate will govern instead of the statutory cap."  *Id*. at 572.  Rather, the Court found, "the 'special factor' formulation suggests Congress thought that [the

22

statutory cap] was generally quite enough public reimbursement for lawyers' fees, whatever the

local or national market might be." *Id.*  In addition, there are in fact a number of other attorneys

handling similar cases in the federal courts right now, so there is actual, real-world information

indicating that there are in fact other counsel available.[10]

Counsel's purported specialization in constitutional law, Pl's Mem. 16:3-10, does not

constitute the type of specialty contemplated by the statute.  The Ninth Circuit recognizes no

such specialty.  The Court in *Underwood* narrowly defined the exception for "limited availability

of qualified attorneys" to "identifiable practice specialty such as patent law, or knowledge of

foreign law or language." 487 U.S. at 572.  Each of these practice specialties requires skills or

expertise above and beyond an attorney's knowledge of a particular area of the law.  *See*

*Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005) ("We decline to adopt counsel's

proposed per se rule that 'the practice of immigration law should be classified as a specialty

similar to practicing patent law.'").  None of those specialty areas were implicated here, and

Plaintiff provides no precedent establishing that constitutional law is a practice area that qualifies

for a fee enhancement under the statute.  The statutory rate thus applies to the petition.

\*                  \*                  \*

The potentially allocable attorney time should thus be multiplied by the statutory rate,

adjusted for historic (*i.e.*, yearly) cost of living increases for when the potentially allocable fee

activity occurred.[11]  The hours of allocable paralegal and law clerk time should be multiplied by

---

[10]  *See Latif et al. v. Holder et al.,* No. 10-cv-00750 (D. Or.); *Tarhuni v. Holder et al.,* 13-cv-
00001 (D. Or.); *Fikre v. FBI et al.,* 13-cv-00899 (D. Or.); *Mohamed v. Holder et al.,* 11-cv-
00050 (E.D.V.A.); *Mokdad v. Holder, et al.,* 13-cv-12038 (E.D. Mich.); *Tanvir v. Comey et al.,*
13-cv-3961 (S.D.N.Y.).

[11]  In undertaking this calculation, the statutory rate of $125 may be increased for the cost of
living (based upon the Consumer Price Index), pursuant to 28 U.S.C. § 2412(d)(2)(A)(ii).  In
calculating such an adjustment, however, EAJA requires that the calculation be based upon
historic cost of living adjustments, not current rates.  Using the current rates would award pre-
judgment interest in violation of *Library of Congress v. Shaw*, 478 U.S. 310, 321-23 (1986).
Calculation at the proper rate is jurisdictional, because, as the Supreme Court observed in *Shaw*,
waivers of sovereign immunity are to be strictly construed in favor of the sovereign and are not
be enlarged beyond what the language of the statute permits.  *See Sorenson v. Mink*, 239 F.3d
1140, 1148-49 (9th Cir. 2001) (recognizing that EAJA fails to provide for the award of
prejudgment interest and requires calculation of cost of living adjustment based upon year in
which fee was earned).  Accordingly, Plaintiff should be required to recalculate the total hours

23

$100, the accepted market rate.  *See Nadarajah v. Holder*, 569 F.3d 906, 918 (9th Cir. 2009) ("requested paralegal … rate [of $100 per hour] is 'in line with those [rates] prevailing in the community for similar services by [paralegals] of reasonably comparable, skill, experience, and reputation.'"); *Stratton v. Glacier Ins. Adm'rs, Inc.*, No. 1:02-CV-06216, 2007 WL 1989097, at *4 (E.D. Cal. July 3, 2007) (awarding law clerks fees at rate of $100 per hour); *Lucas v. White*, 63 F. Supp. 2d 1046, 1060 nn. 16-17 (N.D. Cal. 1999) (awarding fees at rate of $100 per hour for law clerks); *Morris v. Barnhart*, No. Civ. 04-00617, 2006 WL 839292, at 1 (D. Haw. Mar. 28, 2006) (awarding law clerk and paralegal hours at the same rate).  That amount should be reduced by 75 percent to account for Plaintiff's limited success in accordance with the *Hensley* analysis.

Where, as here, only a single claim is litigated to success, a party is not entitled to 100% of their fees.  *See Cal. State Forest Parents Ass'n v. Wagner*, No. 07-5086, 2009 WL 4823193 at *9 (N.D. Cal. Dec. 10, 2009) (applying *Hensley*, 461 U.S. at 426 (1983), although not in the context of EAJA); *Or. Natural Desert Ass'n*, 2011 WL 4625715, at *3 (declining to award full amount of fees sought because "Plaintiff prevailed on only one of eight [related] claims and obtained modest relief when compared with the relief sought in its complaint.").  As the Court recognized in *Wagner*, "[i]f the test is plaintiffs' 'degree of success,' then the question is not whether a complaint is styled to include one or many causes-of-action.  Rather, the question is how the relief *sought* compares to the overall result obtained."  *Or. Natural Desert Ass'n*, 2011 WL 4625715, at *3.  And here, Plaintiff obtained no relief on the equal protection, substantive due process, First Amendment, and Administrative Act claims presented in the Second Amended Complaint.  Nor did she receive injunctive relief that she sought in the Second Amended Complaint, including the removal of her name from various government databases or a name-clearing hearing.  *See* Dkt. 161 at 25:13-26:3.  A 75 percent reduction is thus an appropriate adjustment to make in this case, particularly considering that many of the potentially allocable hours also include work undertaken in Plaintiff's litigation against the non-Federal defendants.

with reference to the historic cost of living increase for each year in which the fee activity occurred.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS

1  Plaintiff is thus entitled to a maximum fee award of $ 286,586.97, should any award be

2  considered.  *See* Exhibit 3 to Freeborne Decl.

3  **VIII.   PLAINTIFF IS NOT ENTITLED TO THE EXPENSES SHE SEEKS**

4          Plaintiff also seeks a combined total of $293,860.18 in expenses.  *See* Exhibit B to Peek

5  Decl. (Dkt. 695).  EAJA allows for recovery only of those expenses that are "reasonable."

6  28 U.S.C. § 2412(d)(2)(A)(ii).  To the extent the Court considers the claimed expenses, they

7  must be carefully examined and excluded where, as here, they are not reasonable.  *See*, *e.g*., *In re*

8  *Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1368 (N.D. Cal. 1996) (reducing

9  photocopying fees as unreasonable); *Chen v. Slattery*, 842 F. Supp. 597, 600 (D.D.C. 1994) (cost

10  of service not compensable under EAJA); *Massachusetts Fair Share v. Law Enforcement*

11  *Assistance Administration*, 776 F.2d 1066, 1069-70 (D.C. Cir. 1985) (disallowing messenger

12  services, taxi fares, telephone bills, postage, and travel expenses).   Plaintiff has made no effort

13  to explain, much less document, the excessive expenses she seeks.  The expenses should thus be

14  denied on that basis.  *See, e.g.*, *Shephard v. Dosa*, No. 95-8748, 1998 WL 1799018, *4 (C.D.

15  Cal. July 2, 1998) (plaintiffs' failure "to adequately explain the nature of these expenses,"

16  precludes court from "intelligently determin[ing] whether these expenses were either reasonable

17  or necessary," and are thus not reimbursable).  At a minimum, the costs should be reduced.  *See*

18  *Citizens for Better Forestry v. Dep't of Agriculture*, No. 01-0728, 2006 WL 5692819, at *15

19  (N.D. Cal. Nov. 3, 2006) (reducing expenses by 25 percent where no explanation is given to

20  justify reasonableness of expenses).

21                                              **CONCLUSION**

22          Accordingly, Plaintiff's motion for fees and expenses should be denied, or in the

23  alternative, reduced by the amount set forth herein.

24  Dated: February 11, 2014                    Respectfully submitted,

25                                              STUART F.  DELERY
                                                Assistant Attorney General

26                                              DIANE KELLEHER
27                                              Assistant Branch Director

28                                              */s/ Paul G.  Freeborne*

                                                25

PAUL G.  FREEBORNE
Senior Trial Counsel
KAREN S. BLOOM
LILY S.  FAREL
JOHN K.  THEIS
Trial Attorneys
United States Department of Justice

*Attorneys for the Defendants*

26