JAMES McMANIS (40958)
ELIZABETH PIPKIN (243611)
CHRISTINE PEEK (234573)
McMANIS FAULKNER
A Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:    (408) 279-8700
Facsimile:    (408) 279-3244
Email:    cpeek@mcmanislaw.com
          epipkin@mcmanislaw.com

Attorneys for Plaintiff,
Rahinah Ibrahim

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RAHINAH IBRAHIM, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>Defendants. | Case No. C 06-0545 WHA<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS (REDACTED)**<br>Date:   March 20, 2014<br>Time:   8:00 a.m.<br>Ctrm:   8 – 19th Floor<br>Judge:  The Hon. William Alsup |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

LEGAL ARGUMENT ...................................................................................................... 2

I.     PUTTING AN INNOCENT WOMAN ON A TERRORIST
WATCHLIST, CAUSING HER WRONGFUL ARREST AND
HUMILIATION, AND COVERING IT UP FOR NINE YEARS,
ARE THE EPITOME OF BAD FAITH ............................................................. 2

II.    DEFENDANTS' CORE LEGAL POSITION—THAT THE
COURT SHOULD THROW OUT THE CASE—LACKED
JUSTIFICATION ............................................................................................. 3

III.   DEFENDANTS ATTEMPTED IN BAD FAITH TO BLOCK
DISCOVERY AT EVERY TURN FOR THE IMPROPER
PURPOSE OF COVERING UP GOVERNMENT ERROR,
NOT TO PROTECT NATIONAL SECURITY ................................................. 6

IV.   PLAINTIFF'S ATTORNEYS' FEES ARE REASONABLE
FOR THE RESULTS OBTAINED AFTER NINE YEARS OF
DIFFICULT WORK AGAINST A FORMIDABLE
ADVERSARY ................................................................................................... 8

     A.    Plaintiff's Counsel Properly Billed For Work On Related
Claims ................................................................................................. 8

     B.    Claims Against The Non-Federal Defendants Were
Related And Therefore Compensable ................................................. 9

     C.    Plaintiff's Bills Are Reasonable Because Of The Nature
Of This Litigation ............................................................................. 10

          (1)    Conferences Billed Were Reasonable And
Necessary ............................................................................. 10

          (2)    Plaintiff Staffed This Case Appropriately,
Especially In Light Of The Number Of Defense
Counsel Working On This Case ........................................... 10

     D.    Plaintiff Incurred Additional Fees In Preparing This Reply .............. 11

V.    FEE ENHANCEMENT IS APPROPRIATE BECAUSE NO
OTHER QUALIFIED ATTORNEYS WERE AVAILABLE,
MUCH LESS THOSE WITH THE EXPERTISE OF
PLAINTIFF'S COUNSEL ............................................................................. 12

i

VI.   PLAINTIFF'S COSTS ARE RECOVERABLE AND
      REASONABLE...........................................................................13

VII.  NOW IS THE TIME TO HEAR THIS MOTION ......................................14

VIII. PLAINTIFF MET AND CONFERRED WITH DEFENDANTS
      ON THE FEES ...........................................................................15

CONCLUSION .................................................................................................15

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS
(REDACTED); Case No. C 06-0545 WHA

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aston v. Sec'y of Health & Human Servs.,*
  808 F.2d 9 (2d Cir. 1986) .................................................................. 14

*Auke Bay Concerned Citizen's Advisory Council v. Marsh,*
  779 F.2d 1391 (9th Cir. 1986) ........................................................... 15

*Avoyelles Sportsmen's League v. Marsh,*
  786 F.2d 631 (5th Cir. 1986) ............................................................... 9

*Bouman v. Block,*
  940 F.2d 1211 (9th Cir. 1991) ........................................................... 10

*Brown v. Sullivan,*
  916 F.2d 492 (9th Cir. 1990) .................................................... 2, 7, 12

*Carter v. Caleb Brett LLC,*
  2014 WL 350087 (9th Cir. Feb. 3, 2014) ........................................... 11

*Cazares v. Barber,*
  959 F.2d 753 (9th Cir. 1992) ............................................................... 2

*Commissioner, INS v. Jean,*
  496 U.S. 154 (1990).............................................................................. 3

*Commodities Future Trading Comm'n v. Frankwell Bullion Ltd.,*
  99 F.3d 299 (9th Cir. 1996) ................................................................. 5

*Contreras v. City of Los Angeles,*
  2013 WL 1296763 (C.D. Cal. 2013)................................................... 10

*Democratic Party of Wash. State v. Reed,*
  388 F.3d 1281 (9th Cir. 2004) ........................................................... 11

*Edwards v. McMahon,*
  834 F.2d 796 (9th Cir. 1987) ........................................................... 3, 5

*Gonzales v. Free Speech Coalition,*
  408 F.3d 613 (9th Cir. 2005) ............................................................... 4

*Green v. TSA,*
  351 F. Supp. 2d 1119 (W.D. Wash. 2005)............................................ 5

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983)........................................................................ 8, 11

*Herrington v. County of Sonoma,*
  883 F.2d 739 (9th Cir. 1989) ............................................................... 9

*Ibrahim v. DHS,*
  538 F.3d 1250 (9th Cir. 2008) ......................................................... 4, 5

*Ibrahim v. DHS*,
  669 F.3d 983 (9th Cir. 2012) ............................................................................... 4, 5

*In re Application of Mgndichian*,
  312 F.Supp.2d 1250 (C.D. Cal. 2003) ......................................................................... 14

*Int'l Woodworkers, Local 3-98 v. Donovan*,
  792 F.2d 762 (9th Cir. 1985) ......................................................................................... 14

*Jean v. Nelson*,
  863 F.2d 759 (11th Cir. 1988) ....................................................................................... 14

*Johnson v. University College*,
  706 F.2d 1205 (11th Cir. 1983) ..................................................................................... 10

*Keith v. Volpe*,
  644 F.Supp. 1317 (C.D. Cal. 1986) ............................................................................... 10

*Latif v. Holder*,
  686 F.3d 1122 (9th Cir. 2012) ..................................................................................... 4, 5

*Latif v. Holder*,
  No. 3:10-CV-00750, 2013 WL 4592515, at *7-8 (D. Or. Aug. 28, 2013) ............................... 5

*League for Coastal Protection v. Kempthorne*,
  No. C 05-0991-CW, 2006 WL 3797911, *3-5 (N.D. Cal. Dec. 22, 2006) .............................. 15

*Love v. Reilly*,
  924 F.2d 1492 (9th Cir. 1991) ..................................................................................... 9, 13

*McGrath v. County of Nevada*,
  67 F.3d 248 (9th Cir. 1995) ........................................................................................... 11

*Minor v. United States*,
  797 F.2d 738 (9th Cir. 1986) ........................................................................................... 5

*Mohamed v. Holder*,
  No. 1:11-CV-50 (AJT/TRJ), 2014 U.S. Dist. LEXIS 7833, at *1-2, 56-57 (E.D. Va. Jan. 22,
  2014) ................................................................................................................................. 5

*Nadarajah v. Holder*,
  569 F.3d 906 (9th Cir. 2009) ..................................................................................... 12, 13

*Natural Resources Defense Council v. Locke*,
  771 F.Supp.2d 1203 (N.D. Cal. 2011) ........................................................................... 14

*Pate v. Alameda-Contra Costa Transit Dist.*,
  697 F.2d 870 (9th Cir. 1983) ........................................................................................... 9

*Prof'l Programs Grp. v. Dep't of Commerce*,
  29 F.3d 1349 (9th Cir. 1994) ......................................................................................... 15

*Rawlings v. Heckler*,
  725 F.2d 1192 (9th Cir. 1984) ......................................................................................... 2

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS
(REDACTED); Case No. C 06-0545 WHA

*Rodriguez v. United States,*
    542 F.3d 704 (9th Cir. 2008) ........................................................................ 2

*Schwarz v. Sec'y of Health and Human Servs.,*
    73 F.3d 895 (9th Cir. 1995) ........................................................................ 8

*Stewart v. Gates*, 987 F.2d 1450 (9th Cir. 1993) ........................................................................ 9

*Tahara v. Matson Terminals,*
    511 F.3d 950 (9th Cir. 2007) ........................................................................ 10

*United States v. Real Prop. Known as 22249 Dolorosa St.,*
    190 F.3d 977 (9th Cir. 1999) ........................................................................ 14

*United Steelworkers v. Phelps Dodge Corp.,*
    896 F.2d 403 (9th Cir. 1990) ........................................................................ 11

*Welch v. Metro. Life Ins. Co.,*
    480 F.3d 942 (9th Cir. 2007) ........................................................................ 10

*Zhang v. GC Servs., LP,*
    537 F.Supp.2d 805 (E.D. Va. 2008) ........................................................................ 10

**Statutes**

22 C.F.R. § 41.122(c) ........................................................................ 1

28 U.S.C. § 2412(d)(2)(A) ........................................................................ 14

42 U.S.C. § 602 ........................................................................ 5

49 U.S.C. § 46110 ........................................................................ 4

Fed. R. Civ. Proc. § 37(a)(5) ........................................................................ 6

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS
(REDACTED); Case No. C 06-0545 WHA

## INTRODUCTION

The government's bad-faith acts in this case include the following:

- Wrongly branding as a terrorist a law-abiding, mild-mannered scholar, resulting in her jailing, physical pain, humiliation, and banishment from the land she considers a second home. Defendants revealed Dr. Ibrahim's status to airline personnel in the United States and Malaysia, the San Francisco police, and the dozens of people who saw Dr. Ibrahim get arrested. Eventually, Dr. Ibrahim had no choice but to reveal to her colleagues why she could not travel here because it affected her duties as a leader at her university.

- Revoking Dr. Ibrahim's valid student visa without notice and without giving her the opportunity to show why the visa should not be revoked, because it was too difficult to get the FBI on the phone to learn the true facts. [TX 16 ("These revocations contain virtually no derogatory information….case agents don't call you back promptly, if at all"); 22 C.F.R. § 41.122(c)]. Dr. Ibrahim was mortified when she learned for the first time at the airport in Malaysia she could not return to Stanford to finish her dissertation.

- Refusing to provide Dr. Ibrahim any facts concerning the government's action or lack of action after she petitioned for redress. [TX 40].

- Attempting to dismiss Dr. Ibrahim's case at least four times because she allegedly suffered no harm even though the government knew it incorrectly watchlisted her. [Dkts. 63, 167, 373 (federal defendants' motions to dismiss), 534 (federal defendants' motion for summary judgment)].

- Claiming that it would harm national security to tell an innocent person that she is innocent. [Dkts. 534 (federal defendants' motion for summary judgment at p. 23 ("This case could not proceed further because the privileged evidence excluded by the state secrets privilege would inherently be at issue in further proceedings or at risk of disclosure."); 602 (federal defendants' trial brief at p. 1 ("[A] trial in this case will necessarily require information protected by the state secrets privilege."))].

- Intentionally blocking Dr. Ibrahim from traveling to testify twice (2009 and 2013) and mysteriously sending a "POSSIBLE NO-BOARD" request for her daughter as well. Defendants not only denied Dr. Ibrahim's visa in 2009 and scrawled "terrorist" on the denial letter, they also used the application as an opportunity to REDACTED ▉▉▉▉▉▉▉▉▉▉▉. [TX 47 (visa denial); TX 9, 57].

- Secreting the truth from the public and plaintiff at every opportunity. The government even claimed that publicly available information was protected by the state secrets privilege and other privileges. For example, high government officials swore under penalty of perjury that whether or not plaintiff was the subject of an international terrorism investigation was a state secret. To the contrary, publicly available documents revealed that fact. [Dkt. 472 (Holder Decl.); Dkt. 471 (Clapper Decl.); TX 506 at p. P001863 (FOIA document noting the "315" classification for international terrorism investigations; TX 516 at p. 4 (FBI website describing the same)].

- Forcing the press and public to leave proceedings in a United States courtroom in violation of the public's First Amendment right of access.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS (FILED UNDER SEAL); Case No. C 06-0545 WHA

1    There is no excuse for the government's behavior.  Congress enacted the Equal Access to

2    Justice Act (EAJA) to enable under-funded private litigants to challenge unjustified actions like

3    those undertaken by the government in this case.  Plaintiff's counsel and plaintiff persevered in

4    the face of overwhelming odds and showed unusual dedication to combatting the government

5    abuses in this matter.  The substantial fees and costs incurred were reasonable and necessary in

6    light of the government's tactics.  Therefore, plaintiff respectfully requests compensation for fees

7    and expenses.

8                           **LEGAL ARGUMENT**

9    **I.    PUTTING AN INNOCENT WOMAN ON A TERRORIST WATCHLIST,
          CAUSING HER WRONGFUL ARREST AND HUMILIATION, AND COVERING**
10        **IT UP FOR NINE YEARS, ARE THE EPITOME OF BAD FAITH.**

11           The government knowingly and recklessly committed and concealed its errors for the

12   improper purpose of protecting itself from embarrassment and denying plaintiff redress for

13   erroneous denial of the right to travel and other protected constitutional rights.  No matter what

14   the government says to explain that decision after the fact, the shocking conduct that started this

15   case and the intentional refusal to accept responsibility for it sorely harmed an innocent person.

16   Defendants do not dispute that the Court must consider both the governmental action that

17   precipitated the litigation as well as the defendants' litigation posture in determining bad faith.

18   *See Rawlings v. Heckler*, 725 F.2d 1192, 1195-96 (9th Cir. 1984).

19           As summarized above, the bad faith is egregious in this instance.  The Ninth Circuit has

20   found that the government acted in bad faith under Section 2412(b) and awarded market-rate

21   attorneys' fees in analogous circumstances involving the government's violation of statute,

22   inexcusable delay in producing documents, calloused indifference towards plaintiff, and

23   invocation of meritless defenses.  *See Brown v. Sullivan*, 916 F.2d 492, 496-97 (9th Cir. 1990)

24   (violation of statute requiring record examination and inexcusably delayed production of

25   documents); *Cazares v. Barber*, 959 F.2d 753, 755 (9th Cir. 1992) ("arrogant and calloused

26   attitude" against pregnant, unmarried high school student); *Rodriguez v. United States*, 542 F.3d

27   704, 711-12 (9th Cir. 2008) (no reasonable suspicion to support privilege defense).

28           The government's bad faith is demonstrated not only by the FBI agent's recklessness

                                          2

1   (although it remains suspicious that Agent Kelley watchlisted Dr. Ibrahim *before* even meeting

2   her), but also the government's calloused indifference toward discovering, acknowledging, and

3   rectifying this error and its widespread consequences.  Furthermore, the government's defense

4   proceeded for the improper purpose of concealing this reckless error, not to protect national

5   security.  Defendants harassed plaintiff at every opportunity, in violation of federal law and the

6   Constitution.  By law, the government's bad faith conduct requires that the Court award plaintiff

7   full fees at market rates to deter the government from such behavior in the future.

8   **II.    DEFENDANTS' CORE LEGAL POSITION—THAT THE COURT SHOULD**
        **THROW OUT THE CASE—LACKED JUSTIFICATION.**

9

10          Defendants have the burden of showing their actions were "substantially justified" within

11  the meaning of the EAJA.  *See Edwards v. McMahon*, 834 F.2d 796, 802 (9th Cir. 1987).  They

12  fail to carry their burden.  "While the parties' postures on individual matters may be more or less

13  justified, the EAJA – like other fee-shifting statutes – favors treating a case as an inclusive

14  whole, rather than as atomized line-items." *Commissioner, INS v. Jean,* 496 U.S. 154, 161-62

15  (1990).  Defendants' arguments that (a) their post hoc REDACTED

16  REDACTED was permissible under their own flexible

17  standards; (b) their serial unsuccessful motions to dismiss on procedural grounds were justified;

18  and (c) this was a case of "first impression" <u>do not</u> show that their position was justified under

19  the totality of the circumstances.  None of these arguments is sufficient – either alone or in

20  combination – to show that watchlisting an innocent woman, revoking her visa without

21  examining the underlying facts, providing misleading information in response to her subsequent

22  visa application, and repeatedly denying her a process through which she could contest these

23  actions, was justified.

24          Defendants' REDACTED provides no justification for

25  their actions, because it provides no reasonable basis for believing Dr. Ibrahim herself presented

26  a terrorist threat, or that allowing an innocent person who already has been denied boarding to

27  clear his or her name would pose any threat to national security that would trump that person's

28  right to due process.  Defendants refused to admit or publicly acknowledge Dr. Ibrahim's

3

1  innocence until the Court forced them to. Defendants' response to plaintiff's request for redress

2  in the form of her PIVF was inadequate to meet the requirements of due process. (Under Seal

3  Findings, p. 29:1-16.) No reasonable person could conclude that defendants' opaque system

4  allowed Dr. Ibrahim adequate due process protections. Defendants' REDACTED does

5  not change that.

6       The government's jurisdictional arguments were unreasonable. Unlike *Gonzales v. Free*

7  *Speech Coalition*, 408 F.3d 613, 619-20 (9th Cir. 2005), cited by defendants, in which the

8  government could point to a string of successes in four circuit courts, defendants here suffered a

9  string of losses on their standing argument. (*See* Dkt. 197, pp. 7:2-10:2; *Ibrahim v. DHS*, 669

10  F.3d 983, 992-94 (9th Cir. 2012) (*Ibrahim II*); Ninth Circuit Case No. 10-15873, Dkt. 76

11  (denying defendants' petition for rehearing); Dkt. 399; Under Seal Order Granting In Part And

12  Denying In Part Motion For Summary Judgment, pp. 6:8-7:17.) Defendants never once

13  prevailed on this argument at any stage of the proceedings.[1]

14       Likewise, defendants' jurisdictional argument based on the mistaken premise that the

15  challenged actions are orders of the TSA, reviewable only in the circuit courts, has been

16  thoroughly rejected by the Ninth Circuit Court of Appeals. *Ibrahim v. DHS*, 538 F.3d 1250,

17  1254-56 (9th Cir. 2008) (*Ibrahim I*); *Latif v. Holder*, 686 F.3d 1122, 1127 (9th Cir. 2012) (*Latif*

18  *I*) (*citing Ibrahim I*); *see also Latif I*, 686 F.3d at 1127-30 (holding 49 U.S.C. § 46110 posed no

19  barrier to adding TSA as a party). Nor was defendants' state secrets argument substantially

20  justified. Rather, it was properly rejected by this Court as a basis to dismiss the case, after

21  defendants did an about-face on their intent to rely on secret information. On the whole,

22  defendants' most recent loss in this Court represents one in a series of incremental losses over

23  time, in defendants' effort to protect their highly secretive program from judicial review, even if

24

25  ---

26  [1] Defendants quote one of plaintiff's briefs out of context in support of their misstatement that
   they had to correct erroneous representations made to the Ninth Circuit. Plaintiff's statement in
   an appellate brief that Dr. Ibrahim was told there was a note next to her name calling for her

27  arrest when she last tried to fly is accurate in the context in which it appears, which concerned
   Dr. Ibrahim's efforts to travel to the United States. (Dkt. 709-1, Freeborne Decl., Exh. 1, at pp.

28  3, 13.)

it means that innocent people remain blacklisted as terrorists.  *See Ibrahim I*, 538 F.3d at 1254-56; *Ibrahim II*, 669 F.3d at 992-97; *Latif I*, 686 F.3d at 1127-30; *Latif v. Holder*, No. 3:10-CV-00750, 2013 WL 4592515, at *7-8 (D. Or. Aug. 28, 2013) (*Latif II*); *Mohamed v. Holder*, No. 1:11-CV-50 (AJT/TRJ), 2014 U.S. Dist. LEXIS 7833, at *1-2, 56-57 (E.D. Va. Jan. 22, 2014) (denying defendants' motion to dismiss).[2]

Even more importantly, the analysis of substantial justification requires the Court to consider the underlying factual basis for defendants' acts.  Although this was the first watchlist placement challenge to go to trial and the issues were complicated, there was no factual support for the assertion that Dr. Ibrahim herself posed or poses any kind of terrorist threat.  (*See* Under Seal Findings, Findings of Fact Nos. 5, 7, 37, 45, 49-50, & 64.)  In spite of this, defendants persisted in misidentifying Dr. Ibrahim as such on her 2009 visa rejection notice, and in allowing their previous misidentification to go uncorrected as far as she and the public were concerned. They used procedural arguments and executive privileges to try to hide their mistake, even after those procedural arguments and privilege objections had been rejected or overruled.

The groundbreaking nature of the relief does not render defendants' position justified. From *Green v. TSA*, 351 F. Supp. 2d 1119 (W.D. Wash. 2005), to *Latif*, the No-Fly List plaintiffs have been arguing for meaningful review of the executive's power to strip individuals of the right to travel based on secret "derogatory information," possibly obtained through data mining

_____

[2] In arguing that their conduct was substantially justified because this is a case of first impression, defendants rely on three cases: *Edwards*, 834 F.2d at 802-03; *Commodities Future Trading Comm'n v. Frankwell Bullion Ltd.*, 99 F.3d 299, 306 (9th Cir. 1996); and *Minor v. United States*, 797 F.2d 738, 739 (9th Cir. 1986).  *Edwards* and *Commodities Future Trading Comm'n* are distinguishable, because the matters of first impression in these cases concerned the interpretation of federal statutes – legal issues which receive *de novo* review.  *See Edwards*, 834 F.2d at 798-99, 802-03 (interpretation of Omnibus Budget Reconciliation Act amendments to 42 U.S.C. § 602); *Commodities Future Trading Comm'n*, 99 F.3d at 301-04 (interpretation of the term "board of trade" as used in Commodity Exchange Act and exemptions found in 1974 Treasury Amendment).  In contrast, there is no Congressional authorization for the TSC, which compiles the TSDB and its associated lists (RT at 389:17-390:2), which are implemented according to guidelines that the Executive Branch so far has been able to alter at will, with no meaningful oversight by the other two branches of government.  Similarly, in *Minor*, 797 F.2d at 739, underlying opinion at 772 F.2d 1472, the court held the government was justified in seeking resolution of a doubtful issue of tax law.  Here, the government unquestionably lacked a factual basis to believe Dr. Ibrahim herself was a terrorist threat.

5

1   of questionable reliability, and with no indictment or conviction.  This is hardly the first case in

2   this nation's history where government has attempted to cover up an error.  Furthermore, it is

3   black-letter law that the right to travel and right to freedom from incarceration, as well as the

4   right to freedom from the stigma related to substantive deprivations, are all subject to due

5   process protections.  For all these reasons, defendants failed to carry their burden to show their

6   actions were substantially justified.

7   **III.   DEFENDANTS ATTEMPTED IN BAD FAITH TO BLOCK DISCOVERY AT
        EVERY TURN FOR THE IMPROPER PURPOSE OF COVERING UP**

8   **GOVERNMENT ERROR, NOT TO PROTECT NATIONAL SECURITY.**

9         Defendants' discovery abuses entitle plaintiff to attorneys' fees, both as bad faith conduct

10  under the EAJA and sanctionable conduct under the Federal Rules of Civil Procedure.

11  Defendants unconvincingly characterize their obstructive tactics as part of their earnest effort to

12  "proceed with discovery in stages."  (*See* Opposition, at 9).  In reality, defendants attempted to

13  force plaintiff to the summary judgment phase without providing her relevant discovery, which

14  this Court subsequently ordered produced and relied upon in entering judgment in her favor.  If

15  not for plaintiff's persistent pursuit of discovery and the Court's determination to allow relevant

16  discovery, the federal defendants would have succeeded in their efforts to hide the truth.

17        Following the second Ninth Circuit remand, defendants were faced with the fact that they

18  would have to respond to plaintiff's outstanding discovery requests like any other litigant.

19  Defendants then unreasonably proposed to disclose only plaintiff's "current watchlist status, if

20  any" to her counsel, and then proceed to summary judgment.  (*See* Dkts. 406 and 417.)

21  Defendants made this proposal with full knowledge of Dr. Ibrahim's factual innocence, Agent

22  Kelley's egregious errors, Dr. Ibrahim's visa revocation "based on virtually no derogatory

23  information," Dr. Ibrahim's suspicious REDACTED treatment, and other unclassified, non-

24  sensitive facts that would bolster Dr. Ibrahim's procedural due process claims.  The Court

25  ordered defendants to produce the information.  (*See*, *e.g.*, Dkt. 461.)  Plaintiff would have

26  obtained no information about her specific case from the federal defendants absent a motion to

27  compel.  *See* Fed. R. Civ. Proc. 37(a)(5) (sanctions warranted where a motion is required to

28  compel discovery).

6

1    Similarly, plaintiff was only permitted to depose Agent Kelley following her motion for

2    continuance, which defendants opposed.  (*See* Dkt. 532 (granting the deposition of Kevin

3    Kelley).)  In opposing the motion for continuance, defendants stated that Agent Kelley's

4    deposition and the depositions of others would be "inappropriate" and "wholly improper"

5    because his testimony would reveal classified information.  (*See* Dkt. 520 at p. 2).  Defendants

6    continued their unjustified fear-mongering in their trial brief, stating that trial could not proceed

7    because the testimony of Agent Kelley would implicate classified information.  (*See* Dkt. 602 at

8    p. 9).  Over defendants' objections, plaintiff took Agent Kelley's deposition and he testified at

9    trial, providing important evidence upon which the Court ultimately relied.

10    Defendants also put the entire might of the United States into stymying discovery in this

11    matter, enlisting the Director of National Intelligence, James Clapper, and the Attorney General

12    of the United States, Eric Holder, to claim the state secrets privilege over unclassified

13    information, such as the fact that Dr. Ibrahim was once the subject of an international terrorism

14    investigation.  (*See* Dkts. 471, 472.)  This conduct casts doubt on all of defendants' invocations

15    of the state secrets privilege, which is not to be invoked to "conceal violations of the law,

16    inefficiency, or administrative error."  State Secrets Policy, § 1(C), *available at*

17    http://www.justice.gov/opa/documents/state-secret-privileges.pdf.

18    The Ninth Circuit has held that less egregious discovery abuses were bad faith.  *See*, *e.g.*,

19    *Brown*, 916 F.2d at 496-97 (government's inexcusable delay in providing documents to plaintiff

20    combined with a statutory violation warranted finding of bad faith).[3]  Defendants' treatment of

---

[3] Furthermore, defendants' self-serving, conclusory statement that they had a "good faith
misunderstanding of the Court's Orders regarding the timing of submission of the privilege logs
and the entry of the protective orders" is not an adequate explanation for their violations of this
Court's orders and is not due any credit.  (*See* Dkt. 417; Fed. R. Civ. Proc. 16(f)(2) (sanctions for
violations of pretrial orders).)  The discovery cases cited by defendants concerning "a clerical
mistake" and "an isolated incident" of delay are distinguishable.  (Opposition, at 14, n. 6).  As
described above, defendants delayed production of meaningful discovery as part of their
overarching strategy to dismiss this case without reaching its true merits.  In addition,
defendants' intentional stall tactics with respect to privilege logs and renegotiation of the Court's
carefully crafted protective orders are not analogous to a party filing a pretrial statement three
days late, or other situations in which minor scheduling errors have no detrimental effect.  (*See
id.*; Dkt. 416 ("The government and the government's senior trial counsel in this matter…are in
violation of the Court's February 7 order…. The government's proposed protective
orders…attempt to re-open the door on disputes decided long ago…. [T]he Court recalls that it

7

this litigation as a top-secret operation in which the enemies were an innocent woman, the Court, and the public, was bad faith.

## IV.   PLAINTIFF'S ATTORNEYS' FEES ARE REASONABLE FOR THE RESULTS OBTAINED AFTER NINE YEARS OF DIFFICULT WORK AGAINST A FORMIDABLE ADVERSARY.

### A.   Plaintiff's Counsel Properly Billed For Work On Related Claims.

Plaintiff properly billed for work spent on causes of action linked by common facts or related theories. *Hensley v. Eckerhart*, 461 U.S. 424 (1983) holds that where, as here, "a lawsuit consists of related claims, a plaintiff who has won substantial relief <u>should not</u> have [her] attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* at 440 (emphasis added). "[T]here is no certain method of determining when claims are 'related' or 'unrelated.' Plaintiff's counsel … is not required to record in great detail how each minute of his time was expended." *Id.* at 437, n.12. In determining whether claims are related, the court may ask (1) whether the claims were premised on the same set of circumstances; (2) whether the claims "required virtually the same evidence;" (3) whether discovery conducted on unsuccessful claims also helped develop the successful claims; and (4) whether the same or different people were the prime perpetrators. *See Schwarz v. Sec'y of Health and Human Servs.*, 73 F.3d 895, 903-04 (9th Cir. 1995).

When plaintiff's claims revolve around a common set of facts or related legal theories, it is not unusual for counsel to spend time on the case in its entirety, making it difficult to break down time spent on a claim-by-claim basis. "Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435; *see also Schwarz*, 73 F.3d at 903 (*citing Herrington v. County of Sonoma*, 883

---

worked hard in 2009 and 2010 for the entry of the prior protective order. It is disappointing that despite this hard work the government wishes to restart this process.") Here, although plaintiff prevailed in this matter, she and her counsel were nevertheless harmed by the delayed production of documents which could not be fully investigated and discussed, including a ▮▮▮REDACTED▮ ▮▮▮ produced at the last minute. (Under Seal Order Granting in Part and Denying in Part Motion to Compel Production of Unclassified Documents (Dkt. 515), pp. 3-4.)

8

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS (FILED UNDER SEAL); Case No. C 06-0545 WHA

1 | F.2d 739, 747 (9th Cir. 1989); *Pate v. Alameda-Contra Costa Transit Dist.*, 697 F.2d 870, 872

2 | (9th Cir. 1983) (A prevailing plaintiff is entitled to be compensated "for all work performed on

3 | any related issue which was advanced in pursuit of the ultimate goal of the action.").

4 |     Here, all of the constitutional claims involved a common core of related facts concerning

5 | the operation of defendants' watchlisting scheme and redress procedures.  The other

6 | constitutional violations asserted – such as violation of equal protection and the First

7 | Amendment right to associate – were related to the procedural due process claim because

8 | improper motivation increases the risk of error and the chilling effect on religious and

9 | associational rights implicates the private interests at stake.  (*See also* Under Seal Findings, p.

10 | 35:2-3 ("Although plaintiff's counsel raise other constitutional challenges, those arguments, even

11 | if successful, would not lead to any greater relief than already ordered.").)  Plaintiff's

12 | constitutional claims rested on the same set of circumstances, required virtually the same

13 | evidence, involved the same discovery, and prosecuted misconduct by the same defendants.

14 | Counsel's work on those claims is therefore compensable because plaintiff would have had to do

15 | the same work for her due process claim as for her other claims.[4]

16 |

17 |     **B.**    **Claims Against The Non-Federal Defendants Were Related And Therefore Compensable.**

18 |     To the extent possible, time related to claims solely against the non-federal defendants

19 | was deleted from plaintiff's total request.  Defendants' argument as to the remaining time lacks

20 | merit.  "[A]ttorney's fees are only appropriate for portions of the litigation <u>made necessary by</u>

21 | <u>government opposition to legitimate claims</u> of the party seeking the award."  *Love v. Reilly*, 924

22 | F.2d 1492, 1495 (9th Cir. 1991) (emphasis added); *see also Avoyelles Sportsmen's League v.*

23 | *Marsh*, 786 F.2d 631, 632 (5th Cir. 1986).  Here, entries for issues involving the non-federal

24 | defendants were either directly related to or part of a common core of facts and issues associated

25 |

26 | [4] Defendants' reliance on *Stewart v. Gates*, 987 F.2d 1450 (9th Cir. 1993) is misplaced.

27 | *Stewart's* reference to improperly submitted time records did not involve an alleged lack of specificity as to particular claims or comingling of time.  (*See* Opposition, at 18:4-10.)  Rather, the *Stewart* opinion addressed illegible and abbreviated time records (*id.* at 1453), neither of

28 | which is at issue here.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS
(FILED UNDER SEAL); Case No. C 06-0545 WHA

with the federal defendants, or, such as with the 2009 discovery disputes, arose only because of

federal intervention in matters between plaintiff and the non-federal defendants.  It strains reason

for defendants to block plaintiff's discovery to the non-federal defendants, but then argue

plaintiff cannot recover the fees generated as a result of defendants' obstruction.

### C. Plaintiff's Bills Are Reasonable Because Of The Nature Of This Litigation.

#### (1) Conferences Billed Were Reasonable And Necessary.

"[C]onferences between attorneys to discuss strategy and prepare for oral argument are

an essential part of effective litigation."  *Contreras v. City of Los Angeles*, 2013 WL 1296763

(C.D. Cal. 2013).  Matters discussed in attorney conferences were vital and necessary to the

successful prosecution of the matter.  The billing statements submitted provide sufficient detail

for the Court to identify the time spent, and its purpose.  Defendants' argument to the contrary

lacks merit.  No case cited by defendants requires any reductions in the fees sought.[5]  The

conferences in this matter contributed to the results obtained by allowing plaintiff to benefit from

the insights of her entire legal team for an effective overall strategy.

#### (2) Plaintiff Staffed This Case Appropriately, Especially In Light Of The Number Of Defense Counsel Working On This Case.

Where multiple attorneys work on a complex matter, fees should not be denied unless the

attorneys are unreasonably doing the same work.  *See Johnson v. University College,* 706 F.2d

1205, 1208 (11th Cir. 1983); *Bouman v. Block,* 940 F.2d 1211, 1236 (9th Cir. 1991).  Here, the

attorneys and staff performed necessary non-duplicative work that advanced the case as a whole.

The constitutional issues involved in this case required extensive factual and legal preparation.

---

[5] *Tahara v. Matson Terminals*, 511 F.3d 950, 956 (9th Cir. 2007) simply says that an award should be reduced for "duplicative work."  *Id.* at 956.  It does not say that conferences *per se* fall under the duplicative category.  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) specifically noted that the attorney's fee request said lead counsel previously had sole responsibility for several hundred matters similar to that one (*id.* at 949), while in *Zhang v. GC Servs., LP*, 537 F.Supp.2d 805, 813 (E.D. Va. 2008), the court pointed out that the case "was a relatively simple, straight-forward [one], free of any complex or novel issues."  Neither of those observations applies here.  Finally, while the court in *Keith v. Volpe*, 644 F.Supp. 1317, 1324 (C.D. Cal. 1986) did reduce time, it acknowledged that its decision to delete all time "reflected in nonserial entries involving conferences of three or more people[]" was a "rough-and-ready approach."  It does not stand for the proposition that all non-serial conference time must automatically be struck from the fee request.

1   Multiple depositions were taken by both sides, including experts, many of which took place

2   across the country or overseas.  Numerous dispositive motions and discovery motions had to be

3   litigated.  Trial of this matter involved transporting approximately a dozen Bankers boxes of

4   materials to and from Court every day.

5          Plaintiff's case needed four attorneys at trial.  Two attorneys spoke in court presenting

6   plaintiff's case, while the other two attorneys simultaneously prepared witnesses to testify,

7   prepared motions and other papers, and assisted in presentation of the case.  It was necessary for

8   these attorneys to attend the proceedings, and they often stepped out as needed to attend to trial

9   preparation tasks.  Defendants had at least twice as many attorneys as plaintiff in the courtroom

10   on each day of trial.[6]

11          Only where the evidence supporting the bill is "inadequate" should the fees be reduced.

12   *Hensley*, 461 U.S. at 433.  Hours actually expended are not to be disallowed without a supporting

13   rationale.  *United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Carter*

14   *v. Caleb Brett LLC*, 2014 WL 350087 (9th Cir. Feb. 3, 2014), *1-2.  Defendants "bear[] the

15   burden of providing specific evidence to challenge the accuracy and reasonableness of the hours

16   charged." *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995).  Here, plaintiff's

17   counsel submitted detailed descriptions of the hours spent on this case, just as counsel would

18   submit to a fee-paying client.  Defendants cite no authority in support of their position that the

19   descriptions provided are inappropriate or inadequate.

20          **D.     Plaintiff Incurred Additional Fees In Preparing This Reply.**

21          Plaintiff incurred additional fees to reply the instant brief and has included the supporting

22   documentation for those amounts with this brief.  (Declaration of Elizabeth Pipkin in Support of

---

24   [6] While defendants cite multiple cases to buttress their claim that plaintiff's fee request should be
   reduced due to trial overstaffing, none of these cases involved staffing issues for trial.  One of

25   defendants' cases actually supports plaintiff's position. *See Democratic Party of Wash. State v.*
   *Reed*, 388 F.3d 1281, 1286-87 (9th Cir. 2004).  Considering all of the circumstances, the *Reed*

26   court found it permissible to bill for attorneys who assist the attorney arguing the case, or who
   need to observe argument to understand how to proceed. *Id.* at 1287. That is exactly what

27   happened in this case.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS
(FILED UNDER SEAL); Case No. C 06-0545 WHA

1    Plaintiff's Motion for Attorneys' Fees and Costs (Pipkin Reply Decl), ¶ 16, Exh. M.)

2    **V.    FEE ENHANCEMENT IS APPROPRIATE BECAUSE NO OTHER QUALIFIED**
       **ATTORNEYS WERE AVAILABLE, MUCH LESS THOSE WITH THE**
3      **EXPERTISE OF PLAINTIFF'S COUNSEL.**

4            A finding of bad faith under the EAJA entitles the prevailing plaintiff to attorneys' fees at

5    normal market rates.  *See Brown v. Sullivan*, 916 F.2d 492, 495 (9th Cir. 1990).  Plaintiff has

6    provided ample evidence that defendants acted in bad faith and that her attorneys' market-rate

7    fees are reasonable.  Alternatively, where the court declines to find bad faith but finds the

8    government's position was not substantially justified, the EAJA permits a fee enhancement

9    based upon special factors, "such as the limited availability of qualified attorneys for the

10   proceedings involved."  28 U.S.C. 2412(d)(2)(A).  This inquiry considers whether counsel

11   possessed "distinctive knowledge" and "specialized skill" that was "needful to the litigation in

12   question" and "not available elsewhere at the statutory rate."  *See Nadarajah v. Holder*, 569 F.3d

13   906, 912 (9th Cir. 2009).  Plaintiff has established the elements for rate enhancement.

14           Plaintiff's counsel's distinctive knowledge and specialized skill in applying constitutional

15   law principles to the complex federal terrorist watchlisting system were required for plaintiff to

16   prevail.  Rate enhancement is proper where plaintiff's counsel's skillful application of law to

17   complex issues results in a favorable judgment.  *See Nadarajah*, 569 F.3d at 914.  The

18   *Nadarajah* court awarded enhanced fees to immigration attorneys even though specialization in

19   immigration law by itself is not sufficient for enhancement, because "[plaintiff's] case involved

20   more than established principles of law with which the majority of attorneys are familiar."  *Id*.

21   Aside from the complexity of the case, the court considered the plaintiff's voluminous appellate

22   brief, the resulting published decision by the Ninth Circuit, the many authorities that later cited

23   the decision, the "fairly unusual" relief that the plaintiff obtained (immediate release from

24   immigration detention), the amicus curiae brief submitted in support of the plaintiff by Yale Law

25   School, and the oral argument shown on C-SPAN.  *See id*.

26           The instant case satisfies the fee enhancement requirements met in *Nadarajah*, and more.

27   It is uncontroverted that the defenses raised in this matter involved difficult issues of

28   constitutional law in the national security context, and required sophisticated advocacy at the

trial and appellate levels.  The law generated by this case has been cited by dozens of cases and

secondary sources.  Multiple organizations joined in writing two amicus briefs for plaintiff in

connection with her second Ninth Circuit Appeal, including Muslim Advocates, Asian Law

Caucus, Center for Constitutional Rights, Bill of Rights Defense Committee, Asian American

Justice Center, South Asian Americans Leading Together, Sikh American Legal Defense Fund,

South Asian Network, Asian American Institute, Asian Pacific American Legal Center, and Sikh

Coalition.  As in *Nadarajah*, plaintiff's first oral argument to the Ninth Circuit was shown on C-

SPAN and remains posted on that station's website today.  The relief obtained in this case was

not only "fairly unusual," but the first of its kind.  *See Nadarajah*, 569 F.3d at 914.  The Court's

findings of fact and conclusions of law have been covered by many international news outlets,

including the *New York Times*, which wrote about this case three times in the past three months.

As Dr. Ibrahim stated in her declaration, McManis Faulkner was the <u>only</u> law firm

willing to take her case after unsuccessful consultations with "numerous attorneys, non-profit

legal organizations, and private law firms in the Bay Area."  Declaration of Rahinah Ibrahim, ¶ 3

(Dkt. 698); *see Nadarajah*, 569 F.3d at 915.  Dr. Ibrahim's situation is therefore distinguishable

from that of the plaintiff in *Love*, cited by defendants, who failed to establish that there were no

"attorneys in the area with similar skills who would take the case at the statutory rate."  *Love*,

924 F.2d at 1496-97.[7]  Plaintiff obtained most if not all of the relief she sought, including

corrections to defendants' lists and a name-clearing hearing through the trial of this matter, and

defendants should pay fees accordingly.  (*See* Dkt. 161, pp. 25-26; Dkt. 683; Under Seal

Findings, p. 38.)

## VI.   PLAINTIFF'S COSTS ARE RECOVERABLE AND REASONABLE.

Prevailing plaintiffs under the EAJA are entitled to recover "costs that are ordinarily

---

[7] Defendants' statement that there are currently similar cases in federal courts is misleading because none of them is based in California.  (*See* Opposition, at 23, n. 10 (listing cases from Oregon, Virginia, Michigan, and New York)).  Plaintiff's great difficulty in procuring counsel is consistent with the observation of plaintiff's declarant, renowned Bay Area trial attorney Allen Ruby, who stated, "the vast majority of private law firms would not undertake pro bono litigation requiring the commitment that this case entailed."  *See* Declaration of Allen Ruby, ¶ 7 (Doc. 697).

13

1   billed to a client" including "telephone calls, postage, air courier and attorney travel expenses."

2   *See Int'l Woodworkers, Local 3-98 v. Donovan,* 792 F.2d 762, 767 (9th Cir. 1985).  The

3   expenses enumerated in Section 2412(d)(2)(A) are "set forth as examples, not as an exclusive

4   list."  *Id.*  Here, plaintiff properly requested reimbursement for 10 categories of expenses (Exh. B

5   to the Peek Declaration), for which plaintiff has now provided detailed itemizations.  (Pipkin

6   Reply Decl., Exhs. A-J.)  All of these categories of expenses are compensable under the EAJA.

7   *See* 28 U.S.C. § 2412(d)(2)(A) (expert witness fees recoverable); *Int'l Woodworkers, Local 3-98*,

8   792 F.2d at 767 (award of telephone, postage, courier, and attorney travel expenses); *United*

9   *States v. Real Prop. Known as 22249 Dolorosa St.*, 190 F.3d 977, 985 (9th Cir.1999) (awarding

10  printing expenses).[8]  Four of the most significant expenses incurred were for photocopies

11  ($40,265.30), online legal research ($98,717.67), attorney travel ($40,335.68), and expert fees

12  ($88,446.01).  These costs are justified given the length of this litigation, the several hundred

13  briefs written at the trial and appellate court levels, and the factual investigation and legal

14  research necessitated by this case.  Moreover, because defendants steadfastly refused to allow

15  Dr. Ibrahim into the United States, despite the fact that she poses no threat to national security,

16  her deposition had to be taken overseas, at great expense to her counsel. In addition, defendants

17  have not paid expert Jeffrey Kahn for his deposition time as required by law.  It is therefore

18  appropriate to award plaintiff the expense to compensate Professor Kahn.  (*See* Pipkin Reply

19  Decl., ¶¶ 12-15.)

20  **VII.   NOW IS THE TIME TO HEAR THIS MOTION.**

21      The Court has discretion to hear plaintiff's fee motion at this time.  *See Auke Bay*

22

---

23  [8] *See also Natural Resources Defense Council v. Locke*, 771 F.Supp.2d 1203, 1218 (N.D. Cal.
24  2011) (awarding outside document production and mailing expenses); *In re Application of
    Mgndichian*, 312 F.Supp.2d 1250, 1266 (C.D. Cal. 2003) (awarding filing fees, Westlaw online
25  legal research charges, and transcript, photocopy, facsimile, messenger service and postage
    expenses under EAJA); *Aston v. Sec'y of Health & Human Servs.*, 808 F.2d 9, 12 (2d Cir. 1986)
26  (award of telephone, postage, travel, and photocopying expenses under EAJA); *Jean v. Nelson*,
    863 F.2d 759, 778 (11th Cir. 1988) (telephone, travel, postage, and computerized research
27  expenses compensable).

28

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS
(FILED UNDER SEAL); Case No. C 06-0545 WHA

1   *Concerned Citizen's Advisory Council v. Marsh*, 779 F.2d 1391, 1393 (9th Cir. 1986); *see also*

2   *League for Coastal Protection v. Kempthorne*, No. C 05-0991-CW, 2006 WL 3797911, *3-5

3   (N.D. Cal. Dec. 22, 2006).  Congress enacted the EAJA to reduce the deterrents to those who

4   would challenge unreasonable government action and to mitigate the disparity of resources

5   between the government and private litigants.  The long delay in this case compels awarding

6   plaintiff fees at this stage because plaintiff has obtained substantial results at multiple stages.  If

7   fees are not awarded at this stage in light of the history of this case, defendants will have

8   succeeded in making it so difficult to obtain relief and reasonable fees as to undermine the

9   purposes of the EAJA.  By delaying a fee award, the government deters good lawyers from

10  taking meritorious cases involving defendants' error-ridden watchlists.

11  **VIII.   PLAINTIFF MET AND CONFERRED WITH DEFENDANTS ON THE FEES.**

12          The parties have met and conferred on the telephone regarding the instant motion.

13  (Pipkin Reply Decl., ¶ 15.)  Defendants continued to assert (1) that the fee motion should be held

14  in abeyance pending exhaustion of appeals, (2) that they did not act in bad faith, and (3) that

15  plaintiff would only be entitled to *de minimis* fees, if any.  Although plaintiff did not confer with

16  defendants directly before filing her motion, plaintiff understood defendants' position on fees

17  due to conversations with Judge Corley before the trial, and it was clear that a motion was

18  necessary to resolve the dispute.  Defendants' opposition demonstrates the futility of meet and

19  confer to resolve the instant motion; defendants have suffered no prejudice.  *See Prof'l Programs*

20  *Grp. v. Dep't of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994).

21                                              **CONCLUSION**

22          This case is the first to give the American people a way to challenge improper watchlist

23  placement.  *See Latif I*, 686 F.3d at 1130 ("At oral argument, the government was stymied by

24  what we considered a relatively straightforward question: what should United States citizens and

25  legal permanent residents do if they believe they have been wrongly included on the No-Fly

26  List?").  Plaintiff's work in this case benefitted every American and deserves compensation.

27  Plaintiff respectfully requests $3,673,215.00 in fees, $ 293,860.18 in expenses, and $ 6,124.97 to

28  compensate Professor Kahn for his deposition time.

DATED:  February 18, 2014

McMANIS FAULKNER

/s/  Elizabeth Pipkin
ELIZABETH PIPKIN

Attorneys for Plaintiff,
Rahinah Ibrahim

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS
(FILED UNDER SEAL); Case No. C 06-0545 WHA