**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7                   IN THE UNITED STATES DISTRICT COURT

8                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

11   RAHINAH IBRAHIM,                          No. C 06-00545 WHA

12              Plaintiff,

13     v.

14   DEPARTMENT OF HOMELAND                    **ORDER GRANTING IN PART**
     SECURITY, et al.,                         **AND DENYING IN PART**
15                                             **PLAINTIFF'S MOTION FOR**
                                               **ATTORNEY'S FEES AND**
16              Defendants.                    **EXPENSES**
     _____/

17

18                            **INTRODUCTION**

19          All of us who practice or serve in this district should be proud that we still have counsel

20   willing and able to undertake pro bono representation of someone like our plaintiff here,

21   especially when it requires standing up to our national government and its large litigation

22   resources.  Not so long ago, this spirit flourished within our district.  More recently, however,

23   pro bono representation seems to have taken second seat to money bono.  But these lawyers from

24   plaintiff — Marwa Elzankaly, Kevin Hammon, Ruby Kazi, James McManis, Jennifer Murakami,

25   Christine Peek, Elizabeth Pipkin, and the firm of McManis Faulkner — deserve recognition for

26   the work they have contributed to this long-fought case.  The Court hereby extends its

27   compliments.

28

United States District Court

For the Northern District of California

1   This, however, does not translate to approving the massive award they seek under the

2   Equal Access to Justice Act.  The EAJA is restricted in important ways that we must recognize

3   and honor.  And, plaintiff's counsel may not collect twice for work already compensated in prior

4   partial settlements, for inefficient or duplicative work, or for work on issues for which the

5   government has shown its position to be substantially justified and unrelated to the claim Dr.

6   Ibrahim obtained relief under.

7   Regrettably, this will be a long order, given the broad scope of the fee petition, and must

8   lead to the very type of satellite litigation our Supreme Court cautioned against.  *Hensley v.*

9   *Eckerhart*, 461 U.S. 424, 437 (1983).  The essence of this order is that counsel are entitled to

10  recover for their work and expenses on procedural due process, substantive due process,

11  Administrative Procedure Act claims and post-2012 remand standing issues, and no more.

12  This cut back is not intended as a criticism of counsel and their work herein but simply reflects

13  the limits of the law itself.  This order resolves the *entitlement* issue.  A companion order sets

14  forth a special-master procedure to determine the *amount*.

**STATEMENT**

16  This action arises out of a wrongful listing of plaintiff on the no-fly list.  The facts are all

17  laid out in findings of fact and conclusions of law after a bench trial (Dkt. Nos. 682, 701-1).

18  In January 2006, plaintiff commenced this civil action against multiple state and federal

19  agencies alleging Section 1983 claims, state law tort claims, and several constitutional claims.

20  An August 2006 order dismissed her claims against the federal defendants based on lack of

21  subject-matter jurisdiction and dismissed her claims against a TSA employee, the airline, and the

22  federal agency defendants (Dkt. No. 101).  Our court of appeals affirmed in part, reversed in

23  part, and remanded, holding that the district court had original subject-matter jurisdiction over

24  her claim for injunctive relief regarding placement of her name on the no-fly list.  The court of

25  appeals agreed that the district court, however, lacked subject-matter jurisdiction over her claim

26  for injunctive relief regarding the government's policies and procedures implementing the no-fly

27  list, that the federal agency and airline actions were not state actions under Section 1983, and

28  that the tort claims against the federal officials in their official capacities and airline defendants

United States District Court

For the Northern District of California

were precluded.  Our court of appeals further held that specific jurisdiction was available for the claims against the TSA employee, who was sued in his individual capacity.  *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1254–56 n.9 (9th Cir. 2008) ("*Ibrahim I*").

On remand, plaintiff filed the operative second amended complaint.  Cash settlements were subsequently entered with the non-federal defendants (Dkt. No. 328).  Plaintiff's counsel were paid $195,431.35 for attorney's fees and costs pursuant to the settlement (McManis Decl. ¶ 3).

A motion to dismiss for lack of standing was then made and granted based on the distinction between damages claims for past injury while plaintiff had been in the United States versus prospective relief sought *after* plaintiff had voluntarily left the United States (Dkt. No. 197).  Our court of appeals, while affirming in part, reversed (over a dissent) as to standing for prospective relief by holding that even a nonimmigrant alien who had voluntarily left the United States nonetheless had standing to litigate federal constitutional claims in district court in the United States as long as the alien had a "substantial voluntary connection" to the United States. *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 993–94 (9th Cir. 2012) ("*Ibrahim II*"). The decision was entered on February 8, 2012.  The government did not seek review by the United States Supreme Court.

A July 2012 mandate taxed $437.60 in costs against defendants pursuant to the appeal (Dkt. Nos. 355, 356).  On remand, the government then again moved to dismiss and the motion was denied.  The parties next became embroiled in discovery disputes involving the state secrets privilege, the law enforcement privilege, and so-called "sensitive security information" ("SSI"), 49 U.S.C. 114(r) and 49 C.F.R. 1520.5.  A pair of orders dated April 19, 2013, granted in part and denied in part plaintiff's motion to compel (Dkt. Nos. 462, 464).  Subsequent rounds of contentious discovery motions required further resolution.  The government's assertions of the state secrets privilege were upheld, while its assertions of other privileges were upheld in part and overruled in part (Dkt. Nos. 539, 548).

A number of expert disclosure and discovery disputes were then raised.  Notably, plaintiff's expert report failed to identify what materials were considered in forming the opinions

United States District Court

For the Northern District of California

1  therein and plaintiff refused to produce interview notes.  A pair of orders permitted plaintiff to

2  revise her expert report, allowed the government to take a second one-day deposition of the

3  expert, and ordered the expert to produce interview notes he considered in forming his opinions

4  at least 24 hours prior to his second deposition, once a proper subpoena was served (Dkt. Nos.

5  580, 585).

6         After oral argument in October 2013, the government's motion for summary judgment

7  was granted in limited part but mostly denied (Dkt. No. 592).  The "exchange of information"

8  claim based on the First Amendment was dismissed.  Plaintiff's claims based on procedural and

9  substantive due process, equal protection, and First Amendment rights of expressive association

10  and retaliation proceeded to trial.  Lack of standing was raised again by the government and

11  denied.

12         A final pre-trial conference was held in November 2013.  A number of motions *in limine*

13  were heard and resolved, including the government's motion to exclude plaintiff from calling the

14  Attorney General (Eric Holder) and the Director of National Intelligence (James Clapper).

15         The bench trial began in December 2013.  On the first day of trial, before opening

16  statements, plaintiff's counsel reported that plaintiff's daughter — a United States citizen and a

17  witness disclosed on plaintiff's witness list — was not permitted to board her flight from Kuala

18  Lumpur to attend trial.  Immediately after trial, an evidentiary hearing regarding plaintiff's

19  daughter's travel difficulties was held.  Upon request, limited findings of fact were made.

20         On January 14, 2014, findings of fact, conclusions of law, and order for relief was

21  entered (Dkt. Nos. 682, 701-1).  Judgment was entered in favor of plaintiff to the extent stated in

22  the January 14 order, but against plaintiff on all other claims (Dkt. No. 684).  Notably, the order

23  found that Dr. Rahinah Ibrahim was entitled to certain post-deprivation remedies and because the

24  government's administrative remedies fell short of that relief, she was deprived due process of

25  law.  In addition, limited relief was granted to provide Dr. Ibrahim the specific subsection of

26  Section 212(a)(3)(B) of the Immigration and Nationality Act, 8 U.S.C. 1182(a)(3)(B), that

27  rendered her ineligible for a visa in 2009 and 2013, and to inform her she was eligible to at least

28  apply for a discretionary waiver.  This limited relief was *not* specifically raised by plaintiff, but

instead provided by the Court based on a decision by our court of appeals and statutory

interpretation. *Din v. Kerry*, 718 F.3d 856, 863 (9th Cir. 2013).  The government was required to

provide the relief ordered by April 15, 2014.

The order also stated (Dkt. No. 682 at 35):

OTHER CHALLENGES

> Although plaintiff's counsel raise other constitutional challenges,
> those arguments, even if successful, would not lead to any greater
> relief than already ordered.  It must be emphasized that the original
> cause of the adverse action was human error.  That error was not
> motivated by race, religion, or ethnicity.  While it is plausible that
> Dr. Ibrahim was interviewed in the first place on account of her
> roots and religion, this order does not so find, for it is unnecessary
> to reach the point, given that the only concrete adverse action to
> Dr. Ibrahim came as a result of a mistake by Agent Kelley in
> filling out a form and from later, classified information that
> separately led to the unreviewable visa denials.

The order thus did not reach plaintiff's equal protection clause, Administrative Procedure Act,

substantive due process, and First Amendment claims.  To be clear, she did not outright lose on

these claims, she just did not prevail.

On January 28, plaintiff's counsel filed a motion for an award of attorney's fees and

expenses, seeking a whopping $3.67 million in fees and $294,000 in expenses (Dkt. No. 694).

Four supporting declarations were filed.  Specifically, the declaration of Attorney Christine Peek

appended, *inter alia*, a 172-page spreadsheet (listing chronologically tasks completed and fees

sought) and a one-page "summary of additional expenses" (Peek Decl. Exhs. A, B).  Invoices

and a spreadsheet specifically itemizing the expenses sought were not submitted.

The declaration of Attorney James McManis set forth attorney hourly rates and the experience of

each attorney.  The declaration of Attorney Allen J. Ruby of Skadden, Arps, Slate, Meagher &

Flom LLP, attested to the reputation, rates, and experience of plaintiff's counsel.  The

declaration of Dr. Rahinah Ibrahim stated that she retained McManis Faulkner in June 2005 and

they were the only firm willing to take her case on a pro bono basis (Ibrahim Decl. ¶¶ 2, 3).

*None of the declarations contained a statement that counsel met and conferred pursuant to Local*

*Rule 54-5 before filing the motion.*  The same day, plaintiff's counsel filed a bill of costs seeking

approximately $58,000 (Dkt. No. 693).  They then submitted supplements to their bill more than

a week later (Dkt. Nos. 704–707).  On February 21, the Clerk taxed $53,699.13 against

defendants (Dkt. No. 713).

After the government filed its opposition, including a statement that plaintiff's counsel

should — at most — be entitled to approximately $286,000 in fees (not $3.67 million),

plaintiff's counsel submitted a reply declaration, appending 228-pages of exhibits supporting

their requested expenses (Dkt. No. 712).  Upon request, a February 26 order struck counsel's

reply declaration due to the unfairness of counsel submitting voluminous spreadsheets they could

have and should have submitted with their opening motion (Dkt. No. 715).

On February 28, the government filed a motion for review of the Clerk's taxation of

costs.  That motion will be addressed in a separate order.  This order covers fees and *expenses*

other than the Clerk's taxation of costs.

On March 6, the Court noted a number of line items of questionable merit in counsel's

application and allowed supplemental briefing (Dkt. No. 718).  On March 13, counsel submitted

a spreadsheet showing $462,470 in "unclaimed fees," meaning fees excluded from their fee

application.  Counsel also indicated that 385 hours were excluded because several attorneys had

minor roles in the case (Pipkin Decl. ¶¶ 2–4, Exh. A).  This order follows full briefing and oral

argument held on March 25, and review, as requested, of the declarations filed pursuant to the

injunction as of April 15 (Dkt. No. 737).

**ANALYSIS**

**1.      VIOLATION OF OUR DISTRICT'S RULES.**

In connection with the motion, plaintiff's counsel violated our district's rules.  Plaintiff's

counsel failed to meet-and-confer with the opponent prior to filing this motion

(Freeborne Decl. ¶ 2, Reply 15).  This was a violation of our district's Local Rule 54-5(a) and

(b)(1) which state:

> Counsel for the respective parties must meet and confer for the
> purpose of resolving all disputed issues relating to attorney's fees
> before making a motion for award of attorney's fees.

*               *               *

United States District Court
For the Northern District of California

> Unless otherwise ordered, the motion for attorney fees must be supported by declarations or affidavits containing the following information:
>
> (1) A statement that counsel have met and conferred for the purpose of attempting to resolve any disputes with respect to the motion or a statement that no conference was held, with certification that the applying attorney made a good faith effort to arrange such a conference, setting forth the reason the conference was not held; and . . . .

In counsel's reply brief, counsel offered no acceptable reason for their failure to comply with the local rules before filing the motion. The reply stated:

> Although plaintiff did not confer with defendants directly before filing her motion, plaintiff understood defendants' position on fees due to conversations with Judge Corley before the trial, and it was clear that a motion was necessary to resolve the dispute. Defendants' opposition demonstrates the futility of [a] meet and confer to resolve the instant motion; defendants have suffered no prejudice.

(Reply 15). This was another violation. It was wrong for counsel to refer to "anything that happened or was said" or "any position taken" during a confidential settlement conference. *See* ADR Local Rule 7-5(a). In any event, so much has occurred since that settlement conference that it was wrong to think the government, having lost part of the trial, would still have the same view.[*]

Failing to comply with the local rules is a permissible ground for the denial of a motion for attorney's fees. *Johannson v. Wachovia Mortgage, FSB*, No. C 11-02822 WHA, 2012 WL 2793204, at *1 (N.D. Cal. July 9, 2012) (Judge William Alsup); *Herson v. City of Richmond*, No. C 09-02516 PJH LB, 2012 WL 1189613, at *5 (N.D. Cal. Mar. 9, 2012) (Magistrate Judge Laurel Beeler), report and recommendation adopted, 2012 WL 1188898, at *1 (N.D. Cal. Apr. 6, 2012) (Judge Phyllis J. Hamilton).

It is a close call whether or not to deny counsel an award for this failure to follow our rules. Our rule requirement is meant to head off the very "satellite litigation" problem that

---

[*] At oral argument, counsel's only explanation was that these particular defense attorneys did not have the authority to agree to a number. Defense counsel explained that pursuant to regulation, an amount of fees this high must be authorized by the Deputy Attorney General (March 25 Hr'g. Tr. 39:7–15). Plaintiff's counsel cannot unilaterally ignore our local rules requiring a meet-and-confer just because specific defense attorneys lack the authority to authorize payment beyond a threshold sum.

United States District Court

For the Northern District of California

1  worried the United States Supreme Court in *Hensley*, 461 U.S. at 437.  The problem is

2  exacerbated by a fee petition that is grossly overbroad, even to the point of seeking double

3  recovery for items previously settled and on which fees were already recovered.  A judge would

4  be justified in denying the petition on these grounds.

5  　　　　Taking into account the purpose of the Equal Access to Justice Act, however, this order

6  will allow the application to go forward provided that plaintiff's counsel shall pay 75% of the

7  special-master's fees (rather than 50%) in connection with the fees-and-expenses procedure set

8  forth in a companion order.  The government shall pay the remainder.  This allocation is the

9  starting point and may be adjusted to reflect factors set forth in FRCP 53(g)(3).

10  　　　　**2.**　　　　**EQUAL ACCESS TO JUSTICE ACT.**

11  　　　　Plaintiff's counsel argue that they are entitled to recover attorney's fees and expenses

12  because (1) the federal defendants' position was not substantially justified and (2) the federal

13  defendants' acted in bad faith.  Section 2412 of the Equal Access to Justice Act, 28 U.S.C. 2412,

14  states in relevant part (emphasis added):

15  　　　　(a)(1) Except as otherwise specifically provided by statute, *a judgment for costs*, as enumerated in section 1920 of this title, but

16  　　　　not including the fees and expenses of attorneys, *may be awarded to the prevailing party in any civil action brought* by or *against the*

17  　　　　*United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction*

18  　　　　*of such action.*  A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or

19  　　　　order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

20  　　　　　　　　　　　　*　　　　　*　　　　　*

21

22  　　　　(b) Unless expressly prohibited by statute, *a court may award reasonable fees and expenses of attorneys*, in addition to the costs

23  　　　　which may be awarded pursuant to subsection (a), *to the prevailing party in any civil action brought* by or *against the United States or*

24  　　　　*any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action.*

25  　　　　*The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common*

26  　　　　*law or under the terms of any statute which specifically provides for such an award.*

27  　　　　　　　　　　　　*　　　　　*　　　　　*

28

United States District Court

For the Northern District of California

> (d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.*

This order will first address the arguments under Section 2412(d)(1)(A) for substantial justification and then address the arguments under Section 2412(a)(1) for common law bad faith. This order will then address counsel's enhancement request, discovery sanctions argument, and expenses sought.

Section 2412(d) sets forth a number of definitions. Party includes, *inter alia*, "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. 2412(d)(2)(B). Dr. Rahinah Ibrahim qualifies (Ibrahim Decl. ¶ 5). This order notes that the government has *not* contested her standing to move for attorney's fees and has *not* argued that she does not qualify as a "party." Our court of appeals previously found that Dr. Ibrahim had established a "substantial voluntary connection" with the United States to assert claims under the First and Fifth Amendments and the Clerk taxed her appeal costs in 2012. *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 997 (9th Cir. 2012); *Ibrahim v. Dep't of Homeland Sec.*, No. 3:06-cv-00545-WHA (9th Cir. 2012) (Dkt. No. 356). Moreover, asylum applicants have been found to be entitled to fees. *Nadarajah v. Holder*, 569 F.3d 906, 909, 923, 926 (9th Cir. 2009).

"Fees and other expenses" includes:

> reasonable attorney fees . . . except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. 2412(d)(2)(A), meaning attorney's fees shall not exceed $125 per hour, unless a cost-of-living or special-factor increase is justified.

"Position of the United States" means:

> *in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based*; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the

9

United States District Court

For the Northern District of California

1  party has unreasonably protracted the proceedings.

2  28 U.S.C. 2412(d)(2)(D) (emphasis added), meaning the position of the United States extends, to

3  the extent reviewable, to Agent Kelley's error, the denials of Dr. Ibrahim's visa applications in

4  2009 and 2013, and the government's Traveler Redress Inquiry Program ("TRIP") response.

5      In sum, the Supreme Court has stated:

6          Thus, eligibility for a fee award in any civil action requires:  (1) that
           the claimant be a "prevailing party"; (2) that the Government's
7          position was not "substantially justified"; (3) that no "special
           circumstances make an award unjust"; and, (4) pursuant to 28
8          U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the
           court within 30 days of final judgment in the action and be
9          supported by an itemized statement.

10  *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 158, 162 (1990).  "The government bears the burden of

11  demonstrating substantial justification."  *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir.

12  2005).

13          **A.      "Prevailing Party" and Timeliness.**

14      Our court of appeals has held that "a 'prevailing party' under the EAJA must be one who

15  has gained by judgment or consent decree a 'material alteration of the legal relationship of the

16  parties.'"  *Perez-Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002) (citing *Buckhannon Bd. &*

17  *Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)).

18  Based on the findings of fact, conclusions of law, and order for relief, and judgment entered on

19  January 14, 2014, following a bench trial, this order finds that plaintiff qualifies as a prevailing

20  party under the Equal Access to Justice Act.  *Li v. Keisler*, 505 F.3d 913, 917 (9th Cir. 2007).

21  She obtained some relief pursuant to the January 2014 order and the government's declarations

22  submitted in April 2014 (Dkt. No. 737).

23      Plaintiff's counsel filed their fee application on January 28, within thirty days of the final

24  judgment.  The EAJA extends the time to file a fee application from fourteen days to thirty days.

25  29 U.S.C. 2412(d)(1)(A), FRCP 54(d)(2)(B).  Counsel's application included a spreadsheet listing

26  chronologically the tasks upon which fees were sought.  Their spreadsheet, however, did not

27  group tasks by project and identify the claim(s) or issue(s) for which the tasks pertained.

28

10

United States District Court

For the Northern District of California

1    This makes it difficult to examine some of the fees sought in relation to the degree of success

2    obtained.  *Hensley*, 461 U.S. at 439.

3                    **B.    "Substantially Justified" and "Special Circumstances."**

4            The next inquiry is whether the government has satisfied its burden of showing that its

5    position was substantially justified.  On the one hand, "the EAJA-like other fee-shifting statutes

6    favors treating a case as an inclusive whole, rather than as atomized line-items."  *Comm'r*, 496

7    U.S. at 161.  On the other hand, our court of appeals has stated:

8            Substantial justification under the [Equal Access to Justice Act]
             means that the government's position must have a reasonable basis
9            in law and fact.  The government's position must be substantially
             justified at each stage of the proceedings.

10   *Shafer v. Astrue*, 518 F.3d 1067, 1071 (9th Cir. 2008).  The government must show that its

11   position was substantially justified at each stage of the proceedings in order to avoid an award of

12   EAJA fees.  *Li*, 505 F.3d at 918.

13           The Supreme Court has stated that substantial justification "is not 'justified to a high

14   degree,' but rather '*justified in substance or in the main' — that is, justified to a degree that could

15   satisfy a reasonable person*."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (emphasis added).

16   "Put another way, substantially justified means there is a dispute over which 'reasonable minds

17   could differ.'"  *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005).

18   That the government lost (on some issues) does not raise a presumption that its position was not

19   substantially justified.  *Edwards v. McMahon*, 834 F.2d 796, 802–03 (9th Cir. 1987).

20   Fees may be denied when the litigation involves questions of first impression, but "whether an

21   issue is one of first impression is but one factor to be considered."  *United States v. Marolf*, 277

22   F.3d 1156, 1163 (9th Cir. 2002).  Our court of appeals has stated:

23           The inquiry into the existence of substantial justification therefore
             must focus on two questions:  first, whether the government was
24           substantially justified in taking its original action; and, second,
             whether the government was substantially justified in defending the
25           validity of the action in court.

26   *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988).

27           When determining a proper fee award, the Supreme Court has set forth a two-step

28   framework:  (1) did the plaintiff fail to prevail on claims that were unrelated to the claims on

                                                   11

which she succeeded, and (2) did the plaintiff achieve a level of success that makes the hours

reasonably expended a satisfactory basis for making a fee award? *Hensley*, 461 U.S. at 440.

> [Related claims will involve a common core of facts or will be based on related legal theories . . . . Thus, the test is whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury upon which the relief granted is premised.

*Edema v. Weston Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995) (quoting *Thorns v. City of El*

*Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986)).  Courts consider "whether the unsuccessful

claims were presented separately, whether testimony on the successful and unsuccessful claims

overlapped, and whether the evidence concerning one issue was material and relevant to the other

issues." *Thorns*, 802 F.2d at 1141.  In *Schwarz v. Secy. of Health & Human Serve.*, 73 F.3d 895,

903–04 (9th Cir. 1995), our court of appeals found no abuse of discretion in finding the

alternative legal theories not related for "the unsuccessful claims did not involve the same course

of conduct as her successful claim and the efforts expended on the unsuccessful claims did not

contribute to her prevailing on the successful claim."

Turning to the facts of our case, plaintiff's counsel recite a long list of alleged wrongs by

the government.  For example, they argue that Dr. Ibrahim was told she was removed from the

no-fly list in 2005 but she has never been permitted to return to the United States.  Even though

our court of appeals held that Dr. Ibrahim had standing, the government repeatedly argued

thereafter that Dr. Ibrahim lacked standing via three motions to dismiss, a motion for summary

judgment, opening and closing statements at trial, and post-trial briefing.  The government's

privilege assertions, in counsel's view, also unnecessarily hampered Dr. Ibrahim's investigative

efforts.

The government states a number of responses, including that it was appropriate to renew

their standing position post-remand because Dr. Ibrahim's status in the Terrorist Screening

Database was only revealed during discovery and Dr. Ibrahim could not rely on mere allegations

of standing at summary judgment and trial.  The government also argues that plaintiff's counsel

failed on numerous discovery motions and the government never withheld information from

counsel based on SSI (only plaintiff herself who was never cleared to receive SSI or classified

United States District Court

For the Northern District of California

1   information).  Finally, the government argues that fees should be denied because this action

2   involved difficult issues of first impression.

3        This order finds that plaintiff's counsel are entitled to at least some fees and expenses

4   under the EAJA, but substantially less than requested, meaning not the whopping $3.67 million of

5   fees and $294,000 in expenses sought.  Plaintiff did not prevail on all of her claims and the

6   government's arguments at certain stages, even on those it lost, were not so unreasonable that

7   complete fee-shifting is warranted.  In actions involving different unrelated claims for relief and

8   theories, counsel's work on unsuccessful unrelated claims should not be entirely recovered.

9   *Hensley*, 461 U.S. at 434–35.  District courts have discretion in determining the amount of a fee

10  award.  *Id*. at 437.  This order also recognizes the novelty of the issues involved, the importance

11  of protecting classified information when national security and counterterrorism efforts are

12  implicated, and that reasonable minds could have differed over some (but not all) of the

13  government's specific strategies.  This order will now walk through the details.

14       In terms of pre-litigation conduct, the government's position was not substantially

15  justified.  The original sin — Agent Kelley's mistake and that he did not learn about his error

16  until his deposition eight years later — was not reasonable.  It was this error that led to this train

17  of events whereby Dr. Ibrahim was prevented from boarding her flight, suffered a humiliating

18  arrest and detention, received nothing more than an opaque TRIP response, and reasonably

19  suspected, even if not true, that her troubles returning to the United States were caused by an error

20  propagating through the government's web of interlocking databases.  This order finds that the

21  government's conduct, in this aspect, under the EAJA was not reasonable.

22       In terms of litigation conduct, the government's attempt to defend its no-fly error for years

23  was not reasonable.  The government's litigation position, that Dr. Ibrahim who was prevented

24  from boarding her flight, detained and arrested, and unknowing of the cause for her troubles,

25  persistently denied plaintiff the due process to which she was entitled.  The government's defense

26  of such inadequate due process in Dr. Ibrahim's circumstance — when she was concededly not a

27  threat to national security — was not substantially justified.

28       Furthermore, after our court of appeals held that Dr. Ibrahim had standing and the

United States District Court
For the Northern District of California

1   government did not seek review from the United States Supreme Court, the government's

2   stubborn persistence in arguing that Dr. Ibrahim lacked standing was unreasonable. *Ibrahim II*,

3   669 F.3d at 997.  Although the government's position on standing prior to the appeal was

4   substantially justified, for the government to continue to seek dismissal based on lack of standing

5   in the face of our court of appeal's decision on this very point was unreasonable.

6        The government's conduct with regards to Dr. Ibrahim's visa applications, however, in the

7   context of the EAJA meets the substantial justification test.  Even though her applications were

8   denied without mention of the specific subsection(s) of Section 212(a)(3)(B) rendering her

9   ineligible, as required by *later* law from our court of appeals,  and she was never informed that

10  she was eligible to apply for a discretionary waiver, that conduct was not wholly unreasonable at

11  the time.  *Din*, 718 F.3d at 863.  Indeed, plaintiff's counsel never even raised these issues.

12  The Court itself, after raising the issue, ordered limited relief provided by the law.  Even though

13  plaintiff's counsel argue that the government branded Dr. Ibrahim as a "terrorist" for years, the

14  consular officer wrote the word "(Terrorist)" on the visa form beside Section 212(a)(3)(B),

15  entitled "Terrorist activities," to explain why she was deemed inadmissible.

16       It would be unfair to saddle the government with $3.67 million in fees — or anything

17  close to it — when a number of counsel's fee requests appear to be associated with claims Dr.

18  Ibrahim did not prevail on (*e.g.*, First Amendment), other proceedings (*e.g.*, United States Court

19  of Appeals District of Columbia Circuit), overstaffing (*e.g.*, fees for four plaintiff's attorneys

20  conferencing with each other), and non-attorney tasks (*e.g.*, file organization or managing data in

21  CaseMap).

22       When a proceeding is complex, our court of appeals has stated:

23           In such circumstances, an award of fees properly apportioned to
             pursuing the stages of the case in which in the government lacked
24           substantial justification — in this instance, the original appeal of the
             ALJ's decision, the district court's consideration of the procedural
25           errors and fee request on remand, and this appeal — are
             appropriate.
26

*Corbin v. Apfel*, 149 F.3d 1051, 1053 (9th Cir. 1998).  *Hensley* also requires evaluating the extent
27
    of success and work completed on various claims when determining a fee award.
28

                                              14

United States District Court

For the Northern District of California

Here, the spread between the parties' proposals is stark.  Plaintiff's counsel seek $3,673,215.00 in attorney's fees and $293,860.18 in expenses.  Defendants counter that, at most, $286,586.97 in attorney's fees should be awarded and counsel's request for expenses should be reduced (or denied).

### *(1)     Procedural Due Process.*

As stated, this order finds that plaintiff's counsel are entitled to recover reasonable fees and expenses incurred for work completed on Dr. Ibrahim's procedural due process claim. Dr. Ibrahim succeeded in showing that the government's post-deprivation administrative remedies under the TRIP program were inadequate due process.  This is the type of action intended to be encouraged by the EAJA.

Unfortunately, counsel's request fails to consistently identify the issues or claims worked upon.  For example, counsel seek the following:

> "Prepare for trial," 15.8 hours (Nov. 29, 2013) (Dkt. No. 699-1 at 163),
>
> "Prepare for trial (prepare expert documents for production, deposition video clips)," 11.6 hours (Nov. 30, 2013) (*ibid.*),
>
> "Prepare for trial and attend trial," 18.5 hours (Dec. 2, 2013) (*id.* at 164),
>
> "Appear for/attend trial; prepare for trial," 20.5 hours (Dec. 4, 2013) (*id.* at 165),
>
> "Review trial transcripts and exhibits and prepare proposed findings of fact and conclusions of law," 14.1 hours (Dec. 12, 2013) (*id.* at 166),
>
> "Prepare post-trial briefing," 14.3 hours (Dec. 12, 2013) (*id.* at 167), and
>
> "Prepare response to proposed findings of fact and conclusions of law," 14.7 hours (Dec. 18, 2013) (*id.* at 168).

These entries, as well as many others, lack adequate details regarding the claims worked on and whether billing judgment was applied for inefficiencies and overstaffing.  Even though plaintiff's counsel argue that they eliminated unnecessary or duplicative hours and imposed "a general reduction of approximately five percent on all hours calculated," they nevertheless seek fees for four attorneys attending trial, three attorneys attending the summary judgment hearing, and four

United States District Court
For the Northern District of California

attorneys attending the final pretrial conference (Dkt. No. 699-1 at 154, 159, 164, 165).

Plaintiff's counsel also seek fees for their paralegal attending these hearings.

The Supreme Court has stated:

> A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee. Where settlement is not possible, *the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates*. The applicant should exercise "billing judgment" with respect to hours worked . . . and *should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims*.

*Hensley*, 461 U.S. at 437 (emphasis added). Plaintiff's counsel must revise their submissions

(for the special master) to account for the rules discussed in this order, including to account for

good billing judgment.

On the other hand, counsel may recover reasonable fees and expenses for work done that

was inextricably intertwined with the due process issue (subject again to billing judgment

reduction). For example, the 7.5 hours sought for the "Deposition of [W]itness Kelley" (Sept. 12,

2013) may have covered a number of successful and unsuccessful topics (Dkt. No. 699-1 at 143).

*Hensley*, 461 U.S. at 448. Such work is likely to be inextricably intertwined with the due process

issue and, if reasonable, is recoverable. The burden must be on plaintiff's counsel to establish

such a nexus.

### *(2)     Other Issues and Claims.*

This order finds that plaintiff's counsel are entitled to recover for reasonable fees incurred

for work done on the substantive due process and Administrative Procedure Act claims.

Plaintiff's counsel, however, cannot recover for work done on the equal protection clause and

First Amendment claims. Those claims were not related to the procedural due process claim

(for which she received relief) because they involved different evidence, different theories, and

arose from a different alleged course of conduct. Her equal protection and First Amendment

claims were based on allegations that she was watchlisted because she was Muslim and that

defendants intentionally discriminated against her by placing her in the TSDB in violation of her

right to equal protection. Her second expert, Professor Sinner, provided an expert report on these

issues and plaintiff's counsel seek fees for working with Professor Sinner (*e.g.*, $2,160.00 for 4.5

16

United States District Court

For the Northern District of California

1   hours spent "Meeting with expert Sinner" (Aug. 26, 2013) and $4,950 for "Deposition of expert

2   Sinner" (Aug. 28, 2013) (Dkt. No. 699-1 at 33, 140)).  This evidence did not contribute to her

3   prevailing procedural due process claim.

4        Plaintiff also alleged that her placement in the TSDB infringed on her right to associate

5   with Muslims and her family members and the denial of her visa application in 2009 (and 2013)

6   was in retaliation.  She further alleged that her placement in the TSDB in 2009 interfered with her

7   First Amendment right to free speech.  She did not prevail on these grounds.

8        It is important to remember that in *Hensley*, the Supreme Court stated:  "Litigants in good

9   faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or

10  failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what

11  matters."  461 U.S. 441.  The January 2014 order did not reach the substantive due process and

12  Administrative Procedure Act claims — but it is not as if Dr. Ibrahim outright lost on these

13  claims.  It is simply that she would not receive additional relief and therefore those issues did not

14  need to be reached.  The bottom of it is that her substantive due process allegation that her

15  placement in the TSDB infringed on her liberty interest in travel and property interest in her flight

16  ticket were related to and deeply intertwined with her prevailing procedural due process claim.

17  The government's position on the substantive due process claim was in this way not substantially

18  justified.  Similarly, the Administrative Procedure Act claim that her placement in the TSDB,

19  which included an error, was arbitrary and capricious, is related to the same facts and conduct

20  underlying her procedural due process claims.

21       Nevertheless, to the extent not inextricably intertwined, plaintiff's counsel cannot recover

22  the entirety of the time spent on tasks involving prevailing and non-prevailing claims.

23  For example, plaintiff's counsel seek 16.5 hours for "Prepar[ing] proposed findings of fact and

24  conclusions of law," 14.3 hours for "Prepar[ing] post-trial briefing," 8.9 hours for "Prepar[ing]

25  post-trial briefing," and 8.5 hours for "Prepar[ing] post-trial briefing" (*id*. at 167).  If only a

26  portion of this time was spent on the procedural due process, substantive due process, and

27  administrative procedure act issues and other portions were spent on non-prevailing unrelated

28  issues, counsel should separate out the time.

United States District Court

For the Northern District of California

The government proposes a 75% reduction of counsel's recoverable fees.  If the parties agree to use this adjustment, this order does not preclude them from doing so.  Otherwise, the special master will rule on the parties' disputes regarding specific line items.  This order does not mandate the 75% reduction.

### (3)   *Visa Issues.*

This order finds that plaintiff's counsel cannot recover fees for work done regarding Dr. Ibrahim's visa issues.  For example:

> "Review visa application," 0.8 hours (Sept. 26, 2009) (Dkt. No. 699-1 at 49),
>
> "Letter to counsel for U.S. government (plaintiff's visa)," 0.6 hours (Sept. 29, 2009) (*id*. at 50),
>
> "Review applicable authorities (challenging denial of visa application)," 1.2 hours (Jan. 6, 2010) (*id*. at 65), and
>
> "Confer with EP (visa issues)," 0.3 hours (Jan. 11, 2010) (*id*. at 66).

No fees for the visa issues are recoverable.  *First*, the government's position in denying Dr. Ibrahim's visa applications was not unreasonable (and is largely unreviewable).  *Second*, Dr. Ibrahim did not prevail on the visa issues *plaintiff's counsel* raised even though the Court on its own awarded limited relief.

Moreover, the Court has reviewed the classified information and finds that, in the main, it mitigates what otherwise might seem to be unjustified conduct as to the visa applications.  *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972).  But to be clear, the government's position was not substantially justified as to the no-fly, TRIP, due process, and standing issues.

### (4)   *Settlements, Non-Federal Defendants, and Unsuccessful Discovery Efforts.*

Counsel's fee petition seeks fees from the settlement with the non-federal defendants, even though plaintiff's counsel received $195,431.35 for fees and costs pursuant to those settlements (Dkt. Nos. 696, 718).  For example, plaintiff's counsel seek:  "Telephone conference call with attorneys Flynn and Keith (offer to compromise)," 0.4 hours (Mar. 3, 2010) and "Prepare stipulation for entry of judgment and proposed judgment," 0.8 hours (Mar. 12, 2010) (Dkt. No. 699-1 at 69–72).  *Counsel cannot double dip and recover fees associated with past*

United States District Court

For the Northern District of California

*settlements*.  It is hard to accept that counsel have been so brazen.

Counsel respond that the fees requested for the settled-out defendants were for "work that was necessary for plaintiff's case against the federal defendants."  Such work was needed because "plaintiff's counsel had to analyze the offer carefully to ensure that it would not negatively impact plaintiff's claims against the federal defendants" (Pipkin Decl. Exh. B).  This order disagrees. That work was not inextricably intertwined with the due process issue Dr. Ibrahim prevailed on and is not recoverable.  *Velez v. Roche*, 335 F. Supp. 2d 1022, 1041 (N.D. Cal. 2004) (Magistrate Judge Edward Chen), an isolated district-court decision wherein a request to offset a jury award was denied in a Title VII action, does not change this analysis.

It also would not be right to saddle the government with amounts spent by plaintiff's counsel on largely unsuccessful discovery efforts.  For example, plaintiff's counsel seek fees for:

> "Prepare for depositions and prepare letter brief to court regarding Holder and Clapper depositions," 10.2 hours (May 20, 2013) (*id*. at 119),
>
> "Prepare brief on Holder and Clapper depositions," 3 hours (May 21, 2013) (*ibid*.), and
>
> "Prepare letter to court (Clapper deposition)," 2.9 hours (June 12, 2013) (*id*. at 123).

A May 2013 order quashed the depositions of Attorney General Eric Holder and the Director of National Intelligence James Clapper (Dkt. No. 481).  The government should not have to pay for counsel's unsuccessful discovery efforts.

### *(5)     Standing.*

As stated above, plaintiff's counsel cannot recover fees for work done regarding standing prior to *Ibrahim II*.  This is because Dr. Ibrahim did not prevail on the standing issue prior to the appeal and the government's position was substantially justified at the time.  We cannot allow hindsight bias to infiltrate the reasonableness of the government's position at the time.

But for time after *Ibrahim II* (2012), plaintiff's counsel can recover reasonable fees and expenses incurred for defending against the government's standing arguments.  For example, plaintiff's counsel seek fees for 1.4 hours spent "Review[ing] applicable authorities (standing)" (Oct. 7, 2013) (Dkt. No. 699-1 at 148).  This line item is recoverable.

*United States District Court*
For the Northern District of California

1

      **(6)**  ***Privileges.***

2     Plaintiff's counsel argue that the government improperly asserted a number of privileges,

3 including state secrets, "sensitive security information," and the law enforcement privilege,

4 thereby delaying discovery, preventing plaintiff herself from learning what happened, and

5 withholding from the public access to this proceeding.  In the context of the EAJA, this order

6 finds that it was reasonable for the government to take measures necessary to protect classified

7 information from individuals without proper clearance.  *United States v. Reynolds*,

8 345 U.S. 1, 10 (1953).  Plaintiff's counsel and plaintiff herself never obtained clearance to view

9 classified information.  *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988).  Dr. Ibrahim also never

10 obtained clearance to view SSI.  This order thus finds that plaintiff's counsel cannot recover fees

11 for work done litigating access to classified and state-secrets privileged information.

12 For example, plaintiff's counsel cannot recover fees for "Prepar[ing] response to defendants' brief

13 on classified documents," 8.9 hours (Mar. 25, 2013) (Dkt. No. 699-1 at 114).

14     Although the undersigned judge has not upheld every privilege assertion by the

15 government, in the main, the government's behavior was not so unreasonable as to warrant fee

16 shifting for the privilege disputes.  The government has a duty to follow its regulations and

17 statutes, including the authority granted to the Transportation Security Administration and the

18 United States Courts of Appeals.  *See* Homeland Security Appropriations Act, 2007, Pub. L. No.

19 109-295, 120 Stat. 1355, 1382, Section 525(d) (Oct. 4, 2006).  Accordingly, plaintiff's counsel

20 cannot recover fees for work done on privilege issues.  For example,

21    "Review applicable authorities (state secrets privilege and law
22    enforcement privilege)," 5 hours (June 12, 2009) (Dkt. No. 699-1 at
     42),

23    "Prepare protective order (SSI)," 1.4 hours (Dec. 7, 2009) (*id*. at
     59),

24

25    "Review applicable authorities (appealability of order overruling
     privilege)," 1.2 hours (Dec. 10, 2009) (*id*. at 60),

26    "Prepare documents (acknowledgments of duty and background
     applications); multiple telephone calls and emails with internal team
27    regarding plan on SSI," 2.5 hours (Dec. 23, 2009) (*id*. at 61),

28    "Letter to attorney Houlihan (right to appeal SSI designations), 0.3
     hours (July 26, 2013) (*id*. at 134),

United States District Court
For the Northern District of California

> "Prepare to challenge TSA's SSI designations; review applicable
> authorities (same)," 5.8 hours (Aug. 19, 2013) (*id*. at 139), and

> "Prepare response to defendants' brief regarding public access," 5.8
> hours (Nov. 17, 2013) (*id*. at 159).

Some privileges were naturally implicated by the types of discovery documents requested in this litigation and it would be unfair to wholesale shift onto defendants the fees incurred because of assertions made by the Executive Branch.  To the extent distinguishable, plaintiff's counsel should segregate out the privilege-task portions of the 12 hours by Attorney Jennifer Murakami and 15 hours by Attorney Elizabeth Pipkin spent on "Appear[ing] for/attend[ing] trial and prepar[ing the] SSI brief" (Dec. 6, 2013) (*id*. at 165).

Plaintiff's counsel also request fees for work done in 2014 regarding a "Ninth Circuit petition for review of TSA's final orders re SSI," even though the bench trial in this action concluded in December 2013.  Plaintiff's counsel cannot recover fees for at least the following requests:

> "Confer with team (challenges to SSI designations)," 0.8 hours
> (Jan. 6, 2014) (Dkt. No. 699-1 at 170),

> "Review documents (TSA order regarding SSI designations)," 1.4
> hours (Jan. 6, 2014) (*ibid*.), and

> "Prepare Ninth Circuit petition for review of TSA's final orders re
> SSI," 6.5 hours (Jan. 6, 2014) (*ibid*.).

### *(7)*     *Miscellaneous.*

A prior order noted a number of questionable line items in counsel's request, including the following:

> "Prepare opposition to motion to dismiss D.C. Circuit petition,"
> 11.6 hours (Aug. 1, 2006) (Dkt. No. 699-1 at 21),

> "Review 60-minutes video re No-Fly List," 0.6 hours (Oct. 10,
> 2006) (*id*. at 23),

> "Review and respond to multiple calls and emails re opinion," 2.8
> hours (Aug. 19, 2008) (*id*. at 31),

> "Meeting with amicus counsel," 5.2 hours (Apr. 23, 2010) (*id*. at
> 74),

> "Review Asian Law Caucus Amicus; Memorandum to/from amicus
> counsel," 1.8 hours (Oct. 1, 2010) (*id*. at 92),

21

"Telephone conference with Judge Corley and opposing counsel (settlement conference)," 0.4 hours (Nov. 6, 2012) (*id.* at 105),

"Manage data in CaseMap," 1.9 hours (Mar. 25, 2013) (*id.* at 114), and

"Prepare documents," 3.6 hours (June 11, 2013) (*id.* at 123).

If the parties are unable to resolve their disputes, they will have to review these line items and others in accordance with this order and the special-master procedure set forth in the companion order.

Moreover, this order will not categorically bar counsel from recovering reasonable attorney's fees incurred before filing this action. The request for $39,000 in fees allegedly incurred in 2005, however, seems excessive. Indeed, counsel apparently only reduced $7,700 in fees from 2005 in their fee request (Pipkin Decl. Exh. A). To the extent the requested fees are not related to the issues Dr. Ibrahim prevailed on (*e.g.*, due process and post-2012 standing), they are not recoverable.

Counsel's fee petition also raises a question about overstaffing, inefficiency, and redundancy. The government argues that a reduction in fees is appropriate when there are repeated intra-office conferences. Plaintiff's counsel should review at least the following line items to see whether a reduction or withdrawal is appropriate:

Attorney Marwa Elzankaly: "Confer with team (status, plan)," 0.8 hours (Aug. 9, 2005) (Dkt. No. 699-1 at 5),

Attorney James McManis: "Confer with team (status, plan)," 0.8 hours (Aug. 9, 2005) (*ibid.*),

Law Clerk Sheila Bari: "Confer with team (status, plan)," 0.8 hours (Aug. 9, 2005) (*ibid.*),

*              *              *

Attorney Kevin Hammon: "Confer with consultant (jurisdictional issues)," 2.9 hours (June 21, 2006) (*id.* at 18),

Attorney Marwa Elzankaly: "Confer with consultant (jurisdictional issues)," 2.9 hours (June 21, 2006) (*ibid.*),

*              *              *

Attorney Kevin Hammon: "Confer with ME (preparation for hearing on motions to dismiss)," 3.3 hours (July 7, 2006) (*id.* at 19),

United States District Court

For the Northern District of California

Attorney Marwa Elzankaly: "Confer with KH (preparation for hearing on motions to dismiss)," 3.3 hours (July 7, 2006) (*ibid.*),

\*           \*           \*

Attorney Christine Peek: "Confer with team (status and plan)," 1.1 hours (Jan. 27, 2010) (*id.* at 67),

Attorney Marwa Elzankaly: "Meeting with JM, EP and CP (case status and plan)," 1.1 hours (Jan. 27, 2010) (*ibid.*),

Attorney Elizabeth Pipkin: "Confer with attorney JM, ME and CP (status and plan)," 1.1 hours (Jan. 27, 2010) (*ibid.*),

Attorney James McManis: "Confer with ME, EP, CP (status and plan)," 1.1 hours (Jan. 27, 2010) (*ibid.*),

\*           \*           \*

Attorney Elizabeth Pipkin: "Confer with team (status and plan)," 2.1 hours (Jan. 15, 2014 [sic]) (*id.* at 171),

Attorney Christine Peek: "Confer with team (case status and plan)," 2.1 hours (Jan. 16, 2014) (*ibid.*),

Attorney Jennifer Murakami: Confer with EP, CP, and RK (status and plan)," 2.1 hours (Jan. 16, 2014) (*ibid.*), and

Attorney Ruby Kazi: "Confer with team (status and plan)," 2.1 hours (Jan. 16, 2014) (*ibid.*).

This action was filed in January 2006 and the bench trial was completed in December 2013.

The parties also dispute whether fees for four counsel to appear at trial is reasonable. The government argues that "a reasonable fee award would compensate two attorneys" (Opp. 20). Plaintiff's counsel argue that two attorneys presented while two attorneys simultaneously prepared witnesses to testify, drafted motions, and assisted. Plaintiff's counsel also note that defendants had at least twice as many attorneys as plaintiff in the courtroom each day. This order will not outright limit recoverable fees based on an arbitrary number of attorneys. For some hearings, perhaps two (or even one) rather than three attorneys would have sufficed. For some trial days, perhaps four attorneys were appropriate based on the tasks involved that day, especially given the size of the defense team. Our court of appeals in at least one decision was unpersuaded by arguments of needless duplication because assistance by non-arguing attorneys and observing proceedings can be important for certain hearings in actions of tremendous importance. *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004).

23

United States District Court

For the Northern District of California

1    Moving forward, plaintiff's counsel should review their time-sheets and reduce or remove any

2    entries involving non-prevailing claims in accordance with this order, inefficiencies, and

3    overstaffing.

4                        **C.    Bad Faith.**

5           Contrary to plaintiff's counsel, this order does not find bad faith supporting counsel's

6    requested award of attorney's fees.  Section 2412(b) states (emphasis added):

7                   The United States shall be liable for such fees and expenses to the
                    same extent that any other party would be liable *under the common*
8                   *law* or under the terms of any statute which specifically provides for
                    such an award.

9    "The common law allows a court to assess attorney's fees against a losing party that has 'acted in

10   bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Rodriguez v. United States*, 542

11   F.3d 704, 709 (9th Cir. 2008) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).

12   The bad-faith exception is a narrow one.  Our court of appeals has stated:

13
                    Under the common law, [a] finding of bad faith is warranted where
14                  an attorney knowingly or recklessly raises a frivolous argument, or
                    argues a meritorious claim for the purpose of harassing an
15                  opponent.  Mere recklessness does not alone constitute bad faith;
                    rather, an award of attorney's fees is justified when reckless
16                  conduct is combined with an additional factor such as frivolousness,
                    harassment, or an improper purpose.
17
     *Id.* at 709 (internal citations and quotation marks omitted).  Each of counsel's proffered "bad-
18
     faith" allegations fails to qualify.  *First*, plaintiff's counsel allege bad faith arising from the
19
     government's conduct in relation to Dr. Ibrahim.  This order disagrees.  Agent Kelley's error was
20
     unintentional and made unknowingly.  The January 14 order did not find that her placement in the
21
     TSDB or visa denials were made in bad faith.  *Second*, this order declines to find the
22
     government's requests for dismissal based on lack of standing rising to the level of bad faith.  It is
23
     probably true that the government should have sought review by the United States Supreme
24
     Court, but the government's verbal requests for dismissal and the few paragraphs in its briefs
25
     were not made in bad faith.  *Third*, the government was wrong to assure all that it would not rely
26
     on state-secrets evidence and then reverse course and seek dismissal at summary judgment.
27
     This was a mistake by the government but there is no indication that this error was knowingly or
28
     recklessly made for harassment or improper purpose.  *Fourth*, the government's privilege

United States District Court

For the Northern District of California

1    assertions — some were upheld, some were overruled — were not made in bad faith.

2    Additionally, that plaintiff herself, who was never cleared to receive SSI or classified information,

3    could not view certain documents is not "bad faith." *Fifth*, there is no evidence that the

4    government obstructed plaintiff or her daughter from appearing at trial. *Sixth*, Witness Lubman's

5    two corrections at trial to her deposition testimony do not evidence bad faith.

6         Plaintiff's reliance on *Brown v. Sullivan*, 916 F.2d 492, 495–96 (9th Cir. 1990), at oral

7    argument is unavailing. The facts in *Brown* were extreme. In the disability benefits proceeding,

8    the Appeals Council made a determination without even examining the transcript for the ALJ

9    hearing — a statutory violation, and the Secretary relied on an unconstitutional review program in

10   violation of the claimant's due process rights. The claimant was also forced to endure repeated

11   delays and additional motion practice because of errors. Here, we are not compelled to find the

12   conduct herein falling within the narrow bad faith exception, invoked in cases of vexatious,

13   wanton, or oppressive conduct. Agent Kelley's mistake in checking the wrong box and the long

14   history of this action (largely due to plaintiff's appeals) do not warrant the extreme finding of bad

15   faith. Accordingly, this order does not find bad faith supporting an entitlement to fees and

16   expenses by plaintiff's counsel.

17                    **D.    Rate Enhancement.**

18        By plaintiff's counsel's calculation, under the EAJA rates, counsel are entitled to

19   $2,632,438.35. Counsel, however, ask for $3,630,057.50 because they argue that a rate

20   enhancement beyond the $125 per hour fee stated in Section 2412(d)(2)(A)(ii), is appropriate due

21   to the limited availability of attorneys qualified for these proceedings and the specialized

22   constitutional and civil rights knowledge of plaintiff's counsel, specifically Attorneys James

23   McManis, Christine Peek, and Marwa Elzankaly. Our court of appeals has established the

24   following requirements:

25            First, the attorney must possess distinctive knowledge and skills
             developed through a practice specialty. Secondly, those distinctive
26            skills must be needed in the litigation. Lastly, those skills must not
             be available elsewhere at the statutory rate.

27

28   *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991). The statute states that:

             attorney fees shall not be awarded in excess of $125 per hour unless

25

> the court determines that an increase in the cost of living or a
> special factor, such as *the limited availability of qualified attorneys
> for the proceedings involved, justifies a higher fee*.

28 U.S.C. 2412(d)(2)(A) (emphasis added).  This enhancement is used sparingly for "some distinctive knowledge or specialized skill needful for the litigation in question."  *Pierce*, 487 U.S. at 572.  Here, counsel's dedication to litigating this terrorist-watchlist challenge for more than seven years is admirable.  But they are not alone.  *See, e.g.*, *Green, et al. v. TSA, et al*., No. 2:04-cv-00763-TSZ (W.D. Wash. filed Apr. 6, 2004) (Judge Thomas S. Zilly) (complaint dismissed in January 2005); *Scherfen, et al. v. DHS, et al.*, No. 3:08-cv-01554-TIV (M.D. Penn. Aug. 19, 2008) (Judge Thomas I. Vanaskie) (complaint dismissed in February 2010); *Latif, et al. v. Holder, et al*., No. 3:10-cv-00750-BR (D. Or. filed June 30, 2010) (Judge Anna J. Brown) (pending cross-motion for partial summary judgment); *Mohamed v. Holder, et al.*, No. 1:11-cv-00050-AJT-TRJ (E.D. Va. filed Jan. 18, 2011) (Judge Anthony J. Trenga) (granted motion for leave to file fourth amended complaint); *Tarhuni v. Holder, et al*., No.  3:13-cv-00001-BR (D. Or. filed Jan. 2, 2013) (Judge Anna J. Brown) (third amended complaint due May 2014); *Mokdad v. Holder, et al*., No. 2:13-cv-12038-VAR-RSW (E.D. Mich. filed May 8, 2013) (Judge Victoria A. Roberts) (pending appeal of an order granting a motion to dismiss); *Fikre v. FBI, et al.*, No. 3:13-cv-00899-BR (D. Or. filed May 30, 2013) (Judge Anna J. Brown) (pending motion to dismiss); *Tanvir v. Comey, et al.*, No. 1:13-cv-06951-RA (S.D.N.Y. filed Oct. 1, 2013) (Judge Ronnie Abrams) (amended complaint due April 2014).

Nevertheless, this order finds that Attorney James McManis is entitled to a rate enhancement.  Attorney McManis possesses distinctive knowledge and skills developed over his 46-years of trial experience.  He has litigated constitutional-law issues, is a founding member of the McManis Faulkner firm, has served as a special master in our district, and is a member of the American College of Trial Lawyers, International Academy of Trial Lawyers, and American Bar Foundation.  During the relevant time period, his hourly rate was $700 to $900 per hour (McManis Decl. ¶¶ 4, 7–10, 23).  Under McManis Faulkner's fee arrangement with Dr. Ibrahim, the firm advanced all fees and expenses related to the action and never billed Dr. Ibrahim. Attorney McManis' distinctive expertise and skills were needed to take this litigation to our court

United States District Court<br/>For the Northern District of California

of appeals twice and to a bench trial.  The undersigned judge would be hard pressed to find anyone of his caliber with an hourly rate of $125 per hour.  Accordingly, Attorney McManis is entitled to a **RATE ENHANCEMENT, RAISING THE $125 TO $250 PER HOUR**.

Attorneys Peek and Elzankaly, much less experienced, are also esteemed members of our district.  A rate enhancement, however, will not be applied to their work in this case because it has not been shown that they possess distinctive skills necessary for this litigation.

### 3. DISCOVERY.

Plaintiff's counsel argue that they are entitled to fees as discovery sanctions pursuant to FRCP 37 and 16 because of defendants' delays in discovery matters.  FRCP 16(f), 37(a)(5), and 37(b) require an award of reasonable attorney's fees and expenses incurred for noncompliance with the rules unless the noncompliance was substantially justified or other circumstances make the award unjust.  Here, plaintiff's counsel obliquely reference the discovery motions they "prevailed on" and never identify which fees are allegedly recoverable as a discovery sanction (Br. 15–16, Reply 6–7).  In their motion, counsel merely state that "plaintiff had to bring multiple motions to compel resulting in orders that defendants comply with the most basic discovery requirements" (Br. 16).  In their reply, counsel identify the April 2013 order which granted in part and denied in part their motion to compel and the August 2013 order which granted in part and denied in part a number of counsel's motions (notably, their request to depose Agent Kelley was granted but their hundreds of objections to the government's privilege instructions during two FRCP 30(b)(6) depositions were found to be largely unwarranted) (Dkt. Nos. 461, 532). Importantly, the August 2013 order stated:

> In the last two months, plaintiff has filed an excessive number of motions (including discovery motions) requesting reconsideration, compulsion of additional discovery, and other forms of relief.  The total comes out to fourteen motions.

(Dkt. No. 532).  This order will not sanction the government by making it pay for counsel's abundant discovery motions, some of which were denied.  Moreover, these requests for discovery expenses should have been raised when the discovery motions were pending so the circumstances would be fresh in the mind of the judge and counsel.  Now, some of these requests are almost a year late.  This is further exacerbated by counsel's failure to even identify for the Court which

United States District Court

For the Northern District of California

1   fees could be recoverable and the associated tasks.  Plaintiff's counsel dumped on the Court a

2   172-page fee spreadsheet which includes fees for tasks they never prevailed on.  To take one

3   example, plaintiff's counsel seek fees for 3.2 hours spent "Prepar[ing her] request for leave to file

4   motion for reconsideration" (June 7, 2013), which appears to be for time spent preparing a two-

5   page letter filed on and dated June 7, 2013, seeking leave to file a motion for reconsideration of

6   the rulings on state secrets and classified information (Dkt. No. 485, 699-1 at 122).  That motion

7   was denied (Dkt. No. 532).

8           In sum, fee-shifting as a discovery sanction is not warranted here.

9           **4.      EXPENSES.**

10          Even though plaintiff's counsel seek hundreds of thousands of dollars in expenses, they

11  never provided with their motion any invoices or itemized spreadsheets supporting their alleged

12  expenses.  They also provided no case law supporting an entitlement to specific expenses in their

13  motion other than to baldly pronounce that "plaintiff has incurred expenses in this case in the

14  amount $293,860.18 (Peek Decl., Exh. B.)" (Br. 17).  Exhibit B identifies the following lump-

15  sums with no indication as to whether any expenses were reduced for inefficiency or non-

16  prevailing claims:

17                  Photocopy Expense:  $40,265.30

18                  Messenger/Delivery Services:  $11,597.69

19                  Court Transcripts:  $9,125.49

20                  On-line Research:  $98,717.67

21                  Facsimile Expense:  $232.00

22                  Outside Copy Service:  $5,068.86

23                  Investigative Services:  $50.00

24                  Long-distance Telephone Services:  $21.48

25                  Travel Expenses:  $40,335.68

26                  Expert Fees:  $88,446.01

27  Counsel's utter failure to explain why these expenses are reasonable or recoverable and append

28  itemized spreadsheets is unexplained.  Instead, they waited until their reply brief to file 228-pages

United States District Court

For the Northern District of California

1    of exhibits.  Upon objection, the late reply declaration and exhibits were stricken due to the

2    unfairness of sandbagging the government with such voluminous tardy documents for which there

3    was no opportunity to respond.  This order also notes that counsel's spreadsheets were largely

4    insufficiently detailed.

5         Although plaintiff's counsel are entitled to reasonable expenses in accordance with the

6    issues identified in this order, they should timely serve detailed documents supporting those

7    requests.  If disputed, the parties with the special master will have to figure out the specific

8    amounts recoverable, but this order will set forth some guiding principles.

9         Our court of appeals has affirmed an award of reasonable expenses, including "telephone

10   calls, postage, air courier and attorney travel expenses."  *Int'l Woodworkers of Am., AFL-CIO,*

11   *Local 3-98 v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1985) (less than $2,000 in expenses).

12   The undersigned judge, however, is hard pressed to find an EAJA award of the magnitude

13   requested by plaintiff's counsel.

14                                      **CONCLUSION**

15        As stated above, plaintiff's counsel may recover reasonable fees and expenses incurred for

16   the procedural and substantive due process and Administrative Procedure Act claims, and fees

17   and expenses for work inextricably intertwined with those claims.  Plaintiff's counsel may also

18   recover reasonable fees and expenses incurred from defendant's lack-of-standing arguments made

19   after *Ibrahim II* in 2012.  Attorney McManis is entitled to an enhanced rate of $250 per hour.  No

20   other fees and expenses (beyond statutory costs) may be recovered.  A companion order sets forth

21   the special-master procedure.

22

23        **IT IS SO ORDERED.**

24

25   Dated:   April 15, 2014.

26                                              WILLIAM ALSUP
                                                UNITED STATES DISTRICT JUDGE
27

28