IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAHINAH IBRAHIM,<br><br>    Plaintiff,<br><br>  v.<br><br>DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>    Defendants.<br>                                     / | No. C 06-00545 WHA<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION** |

### INTRODUCTION

This terrorist-watchlist challenge has been a long and hard-fought case with many orders and trips to the Court of Appeals. It terminated with a final judgment granting relief on January 14, 2014. Neither side appealed that final judgment. The only remaining litigation is the amount of attorney's fees and expenses to be awarded to plaintiff's counsel. Now, however, plaintiff seeks to set aside the final judgment, reargue a discovery dispute, and relitigate the merits. This request is based on a document recently found online. For the reasons stated below, counsel for plaintiff's motion is **DENIED**.

### STATEMENT

Lengthy findings of fact, conclusions of law, and an order for relief was entered after a full trial so it is unnecessary to recount again the entire long history of this action (Dkt. No. 682). Although this action dates all the way back to 2006, this order needs only focus on post-2009 events. In September 2009, Dr. Ibrahim, then in Malaysia, applied for a visa to attend proceedings in this action (TX 27; Ibrahim Dep. 177).

In October 2009, Dr. Ibrahim was nominated to the Terrorist Screening Database ("TSDB") pursuant to a "secret exception" to the reasonable suspicion standard. The nature of the exception and the reasons for her nomination were state secrets, the government asserted. Dr. Ibrahim remained in the TSDB from then until at least trial — but she has not been on the no-fly list since 2005. (Being in the TSDB does not automatically put someone on the no-fly list; those are separate decisions.) In December 2009, her visa application was denied.

In October 2012, plaintiff's counsel served discovery requests on defendants. The government's privilege log, dated January 2013, identified a 72-page "memo," dated February 2009, for which the government invoked the law enforcement privilege and "sensitive security information" (Dkt. No. 515, Exh. A). Plaintiff's counsel now contend that this "memo" is a prior version of the "March 2013 Watchlisting Guidance" they recently found online. (This contention has not been confirmed or denied by defendants but this order assumes it is true.)

Back then, plaintiff's counsel filed a motion to compel. The government was compelled to produce the majority of the non-classified documents sought, but the order denied plaintiff's motion to compel post-2009 terrorist screening and watchlisting procedures. The April 2013 order stated (Dkt. No. 461 at 14):

> A small subset of the documents withheld by the government describe updated terrorist screening procedures and related database issues. These documents appear to date from 2009 onward. Although they remain relevant to plaintiff's claims, the calculus is different here. These documents do not mention plaintiff individually, and they do not specifically identify procedures that were in place around the time that plaintiff filed suit. Thus, their relevance to plaintiff's claims is diminished. Because of their more recent vintage, they present a greater risk of harmful disclosure, and the government's interests are magnified. For those documents in this category over which the government has specifically asserted the LES privilege, plaintiff's motion to compel is denied.

The government's supplemental privilege log, dated July 2013, also identified a 167-page document titled "March 2013 Watchlisting Guidance" to which the government invoked the law enforcement privilege and "sensitive security information" (Pipkin Exh. C).

In August 2013, plaintiff's counsel filed a motion for leave to file a motion for reconsideration of the April 2013 decision denying the post-2009 information sought, specifically seeking production of, *inter alia*, the 2009 "memo." *Counsel never specifically moved to compel*

2

*the "March 2013 Watchlisting Guidance" that appeared on the government's supplemental privilege log*. The motion counsel did bring was denied. (However, unclassified, post-2009 documents evincing terrorist procedures that pertained expressly to Dr. Ibrahim had to be produced to counsel, with redactions where appropriate (Dkt. No. 532 at 15).) Fact discovery closed and a full trial was held.

On January 14, 2014, final judgment was entered following findings of fact, conclusions of law, and an order for relief (Dkt. Nos. 682, 684). Plaintiff obtained relief (but not all of the relief sought). *Neither side appealed the final judgment or order for relief.* Neither side filed a Rule 59 motion. Relief on that judgment and order was delivered and plaintiff's counsel never raised any grievance with the government's compliance.

By July 2014 — six months after final judgment was entered — a website identified as "The Intercept" apparently posted a government document titled "March 2013 Watchlisting Guidance" bearing an unclassified, "sensitive security information" stamp.

Based thereon, plaintiff's counsel now move for leave to file a "motion for reconsideration" of four orders: (i) the final judgment entered in January 2014; (ii) the findings of fact, conclusions of law, and order for relief, and (iii–iv) the April 2014 orders regarding attorney's fees, expenses, and costs (Dkt. Nos. 682, 684, 739, 740). The government responds that no authorized government official has acknowledged the authenticity of the document leaked on The Intercept.

**ANALYSIS**

A judgment is a powerful and important event in federal litigation. It brings all claims and defenses to a final conclusion and closes the door on the entirety of the litigation, discovery disputes and all, including latent ones, subject only to an appeal. The need for repose and the need for the parties to be able to rely on finality counsel in favor of respect for a judgment and letting it be. To set aside a judgment, a movant must meet the stringent standards of Rule 60.

Counsel for plaintiff rely on Rule 60(b)(2), (3), and (6), which state:

> On motion and just terms, the court may relieve a party or its legal representation from a final judgment, order, or proceeding for the following reasons . . . .

3

    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

    (3) fraud (whether previously intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party . . .

    (6) any other reason that justifies relief.

Here, Rule 60(b)(2) does not apply. The purpose of Rule 60(b)(2) is to allow a late motion for a new trial when "newly discovered evidence" emerges that could not have been discovered with reasonable diligence and would have, if known, warranted a new trial under Rule 59. In this case, plaintiff's counsel have not met their burden of proof as to reasonable diligence because the "March 2013 Watchlisting Guidance" appeared on the government's privilege log and plaintiff's counsel never specifically moved to compel that document. This is not a case in which the government concealed that it was withholding under claim of privilege a document sought rather, it did claim the privilege, identified it on a privilege log, and plaintiff's counsel failed to move to compel that particular document.

  Here, plaintiff's counsel contend that government agent testimony at trial was "misleading" as to a First Amendment point. The Court has gone back and tried to imagine how the tendered document might have affected the course of trial. Two government witnesses testified concerning the watchlist nominating procedures. In pertinent part, they testified that individuals should not and would not be nominated based solely upon activities protected by the First Amendment (Trial Tr. 380–81, 564–65). The examination by plaintiff's counsel was abbreviated on this point (Trial Tr. 611–12). The new document in question stated close to the same point made by the government witnesses but included a footnote which will be discussed below. In pertinent part, the "March 2013 Watchlisting Guidance" stated that activity protected by the First Amendment should not be the sole basis for nominating an individual to the TSDB. Specifically, it stated (Dkt. No. 783-8) (emphasis added):

> First Amendment protected activity alone shall not be the basis for nominating an individual for inclusion on the Terrorist Watchlist.[15]

The text then provided five types of protected activity including free speech, exercise of religion, freedom of the press, freedom of peaceful assembly, and petitions to the government for redress

4

of grievances. Specific examples were enumerated but it is unnecessary to repeat them here. This was similar to the testimony.

Immediately following the First Amendment point was a footnote. Footnote fifteen stated:

> The First Amendment does not apply to NON-U.S. PERSONS outside the United States. Before submitting nominations, NOMINATORS may consult with their Department or Agency counsel to determine whether a specific person is a U.S. PERSON and whether the questioned activity is entitled to First Amendment protection.

This order recognizes that in *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 997 (9th Cir. 2012), our court of appeals stated that some aliens who have established a "significant voluntary connection" with the United States but residing outside of the border may have standing to be able to bring constitutional challenges in federal court, so the first sentence of the footnote, while correct as a general rule, failed to recognize the exception for aliens with "significant voluntary connections" to the United States. That testimony was generalized, however, and as it came in, the judge understood it to be generally directed to the contention that Dr. Ibrahim had been listed because of her Muslim activity while she was a student at Stanford, which, of course, *was in the United States*. In that context, the footnote would have been irrelevant. Moreover, the footnote would not have contradicted the trial testimony provided by the government witnesses. The footnote itself specifically stated that "[b]efore submitting nominations, nominators may consult" with agency counsel. That admonition permitted agency counsel to advise regarding First Amendment protections. This consideration militates against the application under Rule 60(b)(2) and (3).

Rule 60(b)(6) does not apply either. It is saved for "extraordinary circumstances" providing a rare safety valve for "any other reason that justifies relief." Plaintiff's counsel have not proffered cause to set aside our final judgment and resume litigation. Their two proffered reasons are as follows.

*First*, plaintiff's counsel argue that under the 2013 document, "heads of state and other government officials" are entitled to the benefit of a nomination standard more generous to the individual. That is, heads of state and other government officials "should be" nominated only if they meet the reasonable suspicion standard. Plaintiff says there is no room for secret exceptions.

5

Even assuming all this is true, the problem is that this entirely new argument depends on characterizing Dr. Ibrahim as a "Government official" within the meaning of the "March 2013 Watchlisting Guidance."

Plaintiff's counsel now resurrect a declaration filed in 2006 in a separate proceeding before the Court of Appeals for the District of Columbia, where Dr. Ibrahim stated: "I am currently a lecturer at the Faculty of Design and Architecture, Universiti of Putra Malaysia, and am an officer of the Malaysian Government" (Pipkin Exh. F, Ibrahim Decl. ¶ 2).  In counsel's view, this put the government on notice that she was an "officer of the Malaysian Government." During Dr. Ibrahim's deposition in this action in 2013, two background questions were asked (Ibrahim Dep. 11, 253):

> Q. Are you an officer of the Malaysian Government?
>
> A. Yes.
>
> \*          \*          \*
>
> Q. In what capacity are you an officer of the Malaysian Government?
>
> A. All employee [sic] of the ministries in the Malaysian Government are Government officers.  So if I'm attached to the university, we are under the Ministry of Higher Education.

In other words, Dr. Ibrahim's testimony was that all employees of the Malaysian Ministries were "Government officers." At trial, neither side made a point of bringing up that she was an "officer of the Malaysian government," except for the following tangential reference during plaintiff's closing argument (Trial Tr. 731) (emphasis added):

> Plaintiff's Counsel: This case has not been easy for her, your Honor.  She's not someone who started out as wanting to take on any type of federal system. *She's an officer of the Malaysian government.*  And I think were she able to testify, she would tell you that she understands national security concerns very much.  But she has persevered through these many long years to stand up for her rights and for the rights of all Americans.

Neither side then proposed a finding of fact that Dr. Ibrahim was an "officer of the Malaysian Government" and the January 2014 order made no such finding on this point.

6

1  Now, plaintiff contends that final judgment should be reopened to reconsider all of the
2  relief requested in the second amended complaint because of the following sentence in the
3  "March 2013 Watchlisting Guidance" (Dkt. No. 783-9) (emphasis added):

> *Heads of State or other Government officials should be nominated when there is PARTICULARIZED DEROGATORY INFORMATION to support a REASONABLE SUSPICION to believe the individual is engaging or has engaged in conduct constituting, in preparation for, in aid of, or related to TERRORISM and/or TERRORIST ACTIVITIES.* Waivers or other appropriate action can be requested from U.S. Customs and Border Protection (CBP) in coordination with DOS to facilitate the travel of a properly watchlisted Head of State or other government officials to the extent necessary.

There was no evidence at trial that when Dr. Ibrahim was nominated to the TSDB in 2009 pursuant to a "secret exception" to the reasonable suspicion standard, she was seeking to enter the United States as a "head of state or government official." Her 2009 visa application stated only that she sought to attend proceedings in this case. How was the United States consular officer in Malaysia supposed to have known that she considered herself to be seeking entry into the United States as a "head of state or other government official" merely because, undisclosed to the officer, she thought all teachers in Malaysia were officers in the Ministry of Education? The consular officer was under no duty to seek out a declaration elsewhere given and to construct an argument for her that she was seeking entry on behalf of the Malaysian government. (The 2013 deposition, moreover, had not yet occurred when she applied for and was denied a visa in 2009 and was nominated to the TSDB.) This new argument goes nowhere.

*Second*, plaintiff's counsel seek to reopen Dr. Ibrahim's final judgment based on nothing more than speculation that it is "unclear" whether the procedures in the "March 2013 Watchlisting Guidance" were applied to non-party Mustafa Kamal, the plaintiff's daughter, a U.S. citizen. Counsel point to a section of the "March 2013 Watchlisting Guidance" titled "Special Considerations" for "Nominations of U.S. Persons." To be clear, plaintiff's counsel do not contend that plaintiff herself was (and is) a "U.S. person" but instead argue that the non-party daughter was entitled to the "U.S. person" procedures in the "March 2013 Watchlisting Guidance." Ms. Kamal's grievance, if any, has nothing to do with plaintiff's order for relief and cannot possibly fall within Rule 60(b)(6).

7

Accordingly, Rule 60(b)(2), (3), and (6) do not apply. It is far too late for a Rule 59 motion and Civil Local Rule 7-9(b)(2) does not apply because plaintiff's counsel have not shown the emergence of "new material facts" warranting the proposed Rule 60 motion.

*       *       *

Counsel for plaintiff's final argument is that the attorney's fees, expenses, and costs orders should be reconsidered because the defendants refused to produce the Watchlisting Guidance and the testimony of the government agents evidenced bad faith. Not so. None of this rises to the level of "bad faith" warranting "a full fee based on counsel's actual rates" (Br. 14), especially since plaintiff's counsel never specifically moved to compel the "March 2013 Watchlisting Guidance" on the government's privilege log during discovery. This order, for the third time, denies leave to seek reconsideration of the fees-and-expenses orders.

## CONCLUSION

For the reasons stated herein, counsel for plaintiff's motion is **DENIED**. This order shall be public.

**IT IS SO ORDERED.**

Dated: August 23, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8