GINA MOON (SBN 257721)
Clarence Dyer & Cohen LLP
899 Ellis Street
San Francisco, CA 94109
Tel: (415) 749-1800
Fax: (415) 749-1694
gmoon@clarencedyer.com

*Special Master*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAHINAH IBRAHIM,

      Plaintiff,

   v.

DEPARTMENT OF HOMELAND
SECURITY, et al.,

      Defendants.

Case No. C-06-00545 WHA

**REPORT AND RECOMMENDATION OF
SPECIAL MASTER ON EXPENSES**

1    The undersigned special master hereby submits the instant Report and Recommendation on

2  the amount of expenses Plaintiff Rahinah Ibrahim ("Plaintiff") should be awarded pursuant to the

3  Equal Access to Justice Act, 28 U.S.C. § 2412, and the Court's prior rulings regarding entitlement.

4  This report and recommendation on expenses is a follow-on to the report and recommendation on

5  attorney's fees previously submitted and relies on much of the analysis articulated in that prior

6  report and recommendation (Dkt. No. 787).  As explained further below, it is recommended that

7  $34,768.71 in expenses be awarded by the Court.

8                                    **BACKGROUND**

9    Plaintiff's initial fee application sought $293,860.18 in expenses (Dkt. Nos. 694-699).

10  Defendants objected to any expenses being awarded, arguing Plaintiff's counsel had not submitted

11  itemized records to support entitlement to those expenses (Dkt. No. 709 at 25).  Plaintiff's counsel

12  thereafter filed a reply declaration, appending itemized lists that purported to support the expenses

13  (Dkt. No. 712).  The Court struck the reply declaration and exhibits, ruling that it should have

14  been submitted with the initial fee application (Dkt. No. 715).

15    In its entitlement order on fees and expenses (Dkt. No. 739, hereinafter "Entitlement

16  Order"), the Court found that the initial application for expenses did not indicate whether expenses

17  were "reduced for inefficiency or non-prevailing claims" and failed to explain why the expenses

18  were reasonable or recoverable (*id*. at 28).  The Entitlement Order further noted that the stricken

19  spreadsheets appended to the reply declaration were "largely insufficiently detailed" (*id*. at 29).

20  Nonetheless, the Court ultimately found Plaintiff's counsel to be entitled to reasonable expenses

21  "in accordance with the issues identified in [the Entitlement Order]" but specified that Plaintiff's

22  counsel was to "timely serve detailed documents" supporting the expenses (*id*. at 29).

23    Concurrent to the initial fee application, Plaintiff's counsel filed a bill of costs seeking

24  $58,615.31 in costs (Dkt. No. 693).  In support of the bill of costs, Plaintiff's counsel submitted

25  invoices for each of the categories of costs sought (Dkt. Nos. 693-1, 693-2, 693-3, 693-4, 693-5,

26  693-6).  Plaintiff's counsel also later submitted "supplements" to the fee application (itemized lists

27  of costs by category), but these were stricken by the Court as untimely (Dkt. Nos. 704-707, 741 at

28

2).  After a review of the costs claimed by Plaintiff's counsel and objected to by Defendants, the Court reduced the Clerk's taxation of costs from $53,699.13 to $20,311.25, with the provision that an additional sum for service fee expenses would be awarded pursuant to the parties' stipulation (Dkt. Nos. 713, 717, 741).  The Court's order on taxation of costs also specified that "[t]imely unrecovered costs may be submitted to the special master as 'expenses'" (Dkt. No. 741 at 8).  Later, the parties stipulated to an additional sum of $329.42 for service fee expenses, bringing the total taxed costs to $20,640.67 (Dkt. Nos. 754, 755).

Plaintiff's revised fee application re-submitted all unrecovered costs as expenses, in addition to those expenses initially sought in the initial fee application (Dkt. No. 756).  In support of these expenses, Plaintiff's counsel submitted itemized spreadsheets that were almost identical to those spreadsheets previously submitted to the Court as exhibits to the stricken reply declaration in support of the initial fee application and the stricken "supplements" to the bill of costs (*compare* Dkt. No. 756-10 *with* Dkt. Nos. 704-707, 712).  No invoices, receipts, or credit card statements substantiating any of the expenses were submitted with the revised application.  Nor was any additional explanation regarding the expenses provided.  The only explanation offered for the expenses was Plaintiff's counsel's declaration that the submitted spreadsheets listing the expenses were "true and correct spreadsheets summarizing the costs and expenses for which plaintiff's counsel seeks reimbursement" and "were created by consulting the bookkeeping records of plaintiff's counsel, created in the ordinary course of business at the time the costs were incurred" (Dkt. No. 756 at ¶ 39).  Plaintiff's counsel also listed the hourly rates at which its experts billed their time and appended a list of authorities that Plaintiff's counsel contended support the recovery of expenses (*id*. at ¶ 40; Dkt. No. 756).

Defendants objected to the claimed expenses and to any consideration of the itemized spreadsheets contained in Dkt. No. 756-10 by the special master; however, the special master obtained clarification from the Court that the spreadsheets may be considered in coming to a recommendation on expenses (Dkt. Nos. 757, 788).

**LEGAL STANDARD**

Under the Equal Access to Justice Statute ("EAJA"), 28 U.S.C. § 2412, out-of-pocket expenses incurred by an attorney that would normally be charged to a paying client are recoverable. *See International Woodworkers of America v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1985). The expenses must both be reasonable and necessary to the preparation of the party's case. 28 U.S.C. § 2412(b), (d)(2)(A). Expenses that are not "incurred or expended solely or exclusively in connection with the case before the court" or that the Court determines to be unreasonable or unnecessary to the case, are not awardable under the EAJA. *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (*quoting Oliveira v. United States*, 827 F.2d 735, 744 (Fed. Cir. 1987).

**FINDINGS AND RECOMMENDATIONS**

After review of the jointly submitted materials, disputed material Dkt. No. 756-10, and publicly available filings, the undersigned recommends $31,824.13 in expenses. This recommendation is arrived at by first deducting expenses that: (1) have already been ruled to be non-recoverable by the Court or solely relate to work identified as non-recoverable in the Entitlement Order; (2) are not of the type ordinarily billed to a client; and/or (3) are insufficiently itemized/supported by the record. Depending on the nature of the expenses being requested, the remaining expenses are then recommended to be awarded at the same recovery rate that the associated attorney's fees were recommended to be awarded (*see* Dkt. No. 787), the applicable defendant ratio at the time (*id*. at 23), the applicable default recovery rate at the time (*id*. at 19), or the overall merits recovery rate for attorney's fees (25%) (*id*. at 113).

**A. EXPENSES PREVIOUSLY SUBMITTED AS COSTS.**

Plaintiff seeks to be reimbursed for *all* costs that were not taxed by the Court with the exception of a "$3,975.00 payment by defendant and $33.35 expert write-off." (*Compare* Dkt. No. 741 *with* Dkt. No. 756-10 at 1). Notably, the application does not include any invoices, receipts, or other documentation to support the claimed expenses. Even so, the undersigned was able to locate at least some of the  invoices relevant to the expenses at issue in Plaintiff's original bill of costs submission (*see* Dkt. Nos. 693-1, 693-2, 693-3, 693-4, 693-5, 693-6). Each category

of claimed expenses is discussed below.

### 1.  Remaining Fees of the Clerk

Plaintiff's counsel seeks $1,365.00 in "remaining fees of the clerk" (Dkt. No. 756-10 at 2). As described in Plaintiff's counsel's spreadsheet, this sum includes $455 for notice of appeal docketing fees to the district court clerk incurred on September 10, 2006, October 1, 2009, and February 17, 2010.

The undersigned recommends that only the September 10, 2006 notice of appeal docketing fee should be awarded as that is the only docketing appeal associated with an appeal for which the undersigned recommended attorney's fees (*see* Dkt. No. 787).  The undersigned further recommends that the "defendant ratio" at the time of the appeal (5 out of 11) be applied to the $455 docketing fee so that Defendants are only charged for their "proportion" of that expense (*see id*. 787 at 23).

The undersigned accordingly recommends $206.82 in expenses for this category.

### 2.  Remaining Fees for Service of Summons and Subpoena

Plaintiff seeks recovery of $3,196.32 in expenses for service of summonses and subpoenas (Dkt. No. 756-10 at 3-5).  These expenses include fees for service of summonses, subpoenas to produce documents, deposition subpoenas, and trial subpoenas.  Each is discussed in turn below.

*Summonses:*  The undersigned recommends that no expenses for service of summonses be awarded.  Defendants have already been taxed for all summonses served on them (Dkt. Nos. 754, 755).  All summons expenses included in the instant request are for summonses served on defendants who did not proceed to trial or who settled with Plaintiff.

*Document Subpoenas:*  The undersigned recommends that no expenses associated with subpoenas to produce documents be awarded.  All document subpoenas were issued during a time when Defendants were dismissed from the action and for the same reasons the undersigned recommended that attorney's fees associated with such work not be awarded, the undersigned recommends no expenses be awarded (*see* Dkt. No. 787 at 63).

*Deposition Subpoenas:*  With respect to deposition subpoenas, the undersigned

1   recommends that the expenses for the 2013 Woods and 2013 Kelley deposition subpoenas

2   ($512.84 total) be awarded.  This comports with the undersigned's finding that work relating to

3   the 2013 Woods and Kelley depositions should be awarded (Dkt. No. 787 at 91, 107).  Although

4   the attorney's fees for this work were found to be only partly recoverable (because there was no

5   showing made to warrant full recovery), the undersigned recommends that the subpoena expenses

6   be awarded in full, as they were fixed expenses.

7          The undersigned recommends no other deposition subpoena expenses be awarded.

8   Expenses associated with the Clapper and Holder deposition subpoenas, which were quashed,

9   should not be recovered per the Entitlement Order (Dkt. Nos. 489, 739 at 19).  Likewise,

10  deposition subpoenas directed at Defendants during a time Defendants were dismissed from the

11  case should also not be recovered.

12         *Trial Subpoenas:*  The undersigned does not recommend recovery for the claimed trial

13  subpoena expenses.  These claimed expenses relate to subpoenas for individuals who were never

14  called at trial and to a subpoena served after trial ended (December 21, 2013 Hardy subpoena).

15  The Court explicitly declined to tax costs relating to the individuals who were subpoenaed but did

16  not testify at trial, noting it was unreasonable for Plaintiff to list 48 witnesses for trial in light of

17  the time allotted for trial (Dkt. No. 741 at 5).  It is also unreasonable to charge Defendants for a

18  failed subpoena attempt made after trial ended.  Accordingly, the undersigned does not

19  recommend any of these trial subpoena expenses be awarded.

20         In total, the undersigned recommends $512.84 total for this category.

21             **3.   Remaining Fees for Recorded Transcripts**

22         Plaintiff seeks $12,416.02 in expenses for recorded deposition transcripts (Dkt. No. 756-10

23  at 6).  These expenses include the cost for the transcripts themselves, video, exhibits, rough

24  transcripts, shipping fees, real-time service fees, conference room rentals, reporter's certificates,

25  wait fees, and other administrative charges.  Although the charges were found not to be *taxable*,

26  this is because the Court found that Local Rule 54-3(c) does not provide for taxation of these

27  expenses.  The Court did not find that the charges were unrecoverable under the Entitlement

28

Order.  Moreover, the undersigned finds these expenses, while not taxable, are expenses that would reasonably be charged to a client.

The undersigned recommends that all expenses claimed be awarded in the amount that corresponds to the percentage of fees that were recommended for the work related to the relevant deposition.  This means the undersigned recommends that 100% of the expenses associated with Plaintiff's deposition ($8,412.62) be awarded in full, 0% of the charges associated with Professor Sinnar's deposition ($442.90) be awarded, and 50% of the 30(b)(6), Kelley, and Kahn depositions ($3,560.50) be awarded (*see* Dkt. No. 787 at 82, 87-88, 89-90, 97, 107).

In total, the undersigned recommends that $10,192.87 in expenses for this category.

### 4.  Remaining Fees for Witnesses

Plaintiff's counsel seek to recover $204.06 in mileage fees paid to witnesses Paul C. Woods, Kevin Kelley, David Nevins, John Pearson, Kenneth J. Cottura, and Richard E. Pate (Dkt. No. 756-10).

The undersigned finds that mileage fees paid to witnesses are of the type reasonably charged to a client.  The undersigned recommends only the mileage fees for Kevin Kelley ($78.40) and Paul C. Woods ($39.20) be awarded, for the same reasons that the undersigned recommends all deposition transcript expenses associated with these witnesses be awarded in full. However, the undersigned does not recommend the mileage for David Nevins, John Pearson, Kenneth J. Cottura, or Richard Pate (witnesses subpoenaed by Plaintiff but who were not called by Plaintiff at trial), for the same reasons that the undersigned does not recommend that the trial subpoena fees associated with these witnesses be awarded.

In total, the undersigned finds that $117.60 should be awarded for this category.

### 5.  Remaining Fees for Copy Costs

Plaintiff's counsel seek $7,096.87 in "copy costs" (Dkt. No. 756-10 at 8).

Of the claimed expenses, $600.28 are costs incurred in preparing Professor Kahn's documents for production at trial (Dkt. No. 741 at 6-7).  Specifically, the expenses include service fees for "convert to PDF," "Blowbacks," and "DVD Duplicate."  Although these costs were found

1   not to be taxable, the undersigned finds these are expenses that are typically charged to a client.

2   Accordingly, the undersigned recommends these expenses be awarded at the same rate at which

3   work related to Professor Kahn was awarded --- 50%.  At 50%, these expenses total $300.14.

4        The remainder of the expenses claimed ($6,496.59) are for the creation of trial binders with

5   exhibits for use by Plaintiff's counsel.  The undersigned finds these expenses are of the type

6   typically charged to a client.  At first blush the total expense seems high, but an examination of the

7   itemized receipt shows that the expense was reasonable.  The bulk of the cost came from copying

8   charges and those charges are actually less than Plaintiff's claimed in-house per-page copying

9   charges (see *infra*, Section B(1)).  The undersigned recommends a 50% recovery of these trial

10   expenses, in line with the recovery rate the undersigned found for attorney trial work.  This totals

11   $3,248.30.

12        In total, the undersigned recommends $3,548.44 for this category.

13        **6.  Remaining Other Costs**

14        Plaintiff's counsel seek $9,688.02 in expenses relating to "other costs" (Dkt. No. 756-10 at

15   9).  The Court did not permit taxing of any of these expenses, when they were presented as costs

16   (Dkt. No. 741 at 7).  Each of these expenses is discussed in turn.

17        *First*, Plaintiff's counsel seek $162.25 for obtaining TSA SSI clearance for counsel and

18   staff.  The undersigned finds this relates to privilege/SSI, which the Court found to be non-

19   compensable work in the Entitlement Order.  The undersigned therefore does not recommend

20   awarding these expenses.

21        *Second*, Plaintiff's counsel seek $5 for obtaining a sheriff's report from the San Mateo

22   County Sheriff in 2005.  This relates to a dismissed defendant and the undersigned recommends

23   no recovery of this expense.

24        *Third*, Plaintiff's counsel seek $662.79 for translation of a police report from Malay to

25   English in 2013.  The undersigned finds that this is an expense that would reasonably be charged

26   to a client and recommends that 50% of the expense (equivalent to the relevant default recovery

27   rate at the time) be awarded.  This totals $331.40.

28

*Fourth*, Plaintiff's counsel seek $727.32 for eight copies of Professor Kahn's book, *Mrs. Shipley's Ghost: The Right to Travel and Terrorist Watchlists*.  The undersigned does not find that a client would reasonably be charged for eight copies of the same book, unless the book is so foundational that numerous attorneys would need to use the book at once.  No such showing has been made here.  Accordingly, the undersigned recommends that only one copy of the book be reimbursed at a recovery rate of 50% (recovery rate that has been applied to work related to Professor Kahn).  This totals $45.46.

*Fifth*, Plaintiff's counsel seek $1,158.29 in expert witness deposition fees pursuant to Rule 26(b)(4)(E).  It appears that these are the remaining fees from the deposition of Professor Kahn on September 11, 2013 ($3,016.67) and November 8, 2013 ($2,149.97) that Plaintiff's counsel contend have not yet been paid by Defendants (*see* Dkt. No. 693-6 at 18).  Defendants, however, have asserted in their supplemental filing to the special master that they have already paid the expert fees required (*see* August 29, 2014 Submission to Special Master by Defendants at p. 4 n.4).  Since Plaintiff's counsel have not submitted the itemized expert invoice for the September 11, 2013 deposition (only the itemized invoice for the November 8, 2013 deposition), the undersigned does not have a basis to recommend any further payment for these expert fees.

Finally, Plaintiff's counsel seek $6,972.37 for the preparation of video clips from Plaintiff's deposition.  Since Plaintiff could not be present at the trial in person, these video clips constituted Plaintiff's testimony at trial.  Under this circumstance, the undersigned finds that the expenditure was of the type reasonably charged to a client.  The undersigned recommends that 100% of the expense be awarded (the same recovery rate for attorney's fees related to Plaintiff's deposition testimony).

In total, the undersigned recommends $7,349.23 be awarded in this category.

**B.  ALL OTHER EXPENSES.**

As discussed earlier, Plaintiff's counsel have resubmitted for consideration those expenses that were claimed in the original fee application.  Unlike the expenses based on the untaxed costs, however, there are no materials in the record that substantiate any of these claimed expenses and

1  counsel have not submitted any further detail regarding these expenses.  As discussed below,

2  while the undersigned does not find this lack of supporting documentation and detail fatal for *all*

3  of these claimed expenses, the undersigned cannot recommend a number of expenses or whole

4  categories of expenses because there is insufficient detail for the undersigned to evaluate whether

5  those expenses were necessary and reasonable.

### 1.  Photocopy Expenses

7  Plaintiff's counsel seek to recover $40,625.30 in photocopy expenses at a rate of 20 cents

8  per page (non-color copies), 25 cents per page (non-color copies), or 75 cents per page (color

9  copies) and 15 cents for each scanned page (Dkt. No. 756-10 at 1-217).  Defendants object to these

10  expenses and argue that the submission does not offer any explanation that would allow the Court

11  to determine that the *number* of pages copied was reasonable (Dkt. No. 757 at 20).

12  Although Plaintiff's counsel did not submit any further documentation of these expenses,

13  the spreadsheets provided contain sufficient detail (including the number of copies made for each

14  "copy job" and the date on which each copy was made), especially given that all expenses in this

15  category appear to be in-house expenses.  Moreover, Plaintiff's counsel's sworn declaration

16  specifies the submitted spreadsheets "were created by consulting the bookkeeping records of

17  plaintiff's counsel, created in the ordinary course of business at the time the costs were incurred,"

18  so the undersigned believes there is sufficient basis to find that the listed copy expenses were

19  tracked contemporaneously and accurately recorded.

20  With one exception, the undersigned finds that the number of copies made seems

21  reasonable.  On September, 24, 2010, in addition to the numerous other print/copy jobs recorded,

22  one copy job totaling 4,560 pages was charged (totaling $912).  While occasional copying jobs of

23  hundreds of pages, or even over a thousand pages, might be standard practice at a law firm, this

24  seems to be in error.  The undersigned checked the court docket to see if there were any paper-

25  heavy briefings occurring at the time this expense occurred but found nothing that would explain

26  this volume of copying (between July 23, 2010 and November 17, 2010 there were no filings).

27  Accordingly, the undersigned recommends the $912 associated with the entry not be charged.

28

As for the rate at which copies were made, Defendants contend that the charges are not reasonable.  The authority cited by Defendants, however, does not set an absolute ceiling for recovery at ten cents a page.  While the undersigned recognizes that 20 cents or 25 cents per page for non-color-copies, 75 cents a page for color-copies, and 15 cents a page for scanning are on the upper limits of what a law firm might charge a client (and indeed higher than what Plaintiff's counsel's outside vendor charges), the undersigned does not find these rates to be out of the realm of what might ordinarily be billed to a client and, as mentioned above, counsel has stated in her declaration that these expenses are based on records created when the costs are actually incurred.  Accordingly, the undersigned finds the rates reasonable.

However, based on the Entitlement Order, the undersigned recommends cutting the expenses in this category so that only 25% of the expenses may be recovered.  Copies/scans by attorneys and paralegals by their very nature correlate in substance to the work billed by those attorneys and paralegals.  As such, it would not be appropriate under the Entitlement Order to charge 100% of the copies to Defendants, as many of the copies likely were made for non-recoverable issues or for parts of the case that only related to the settled/dismissed defendants.  The undersigned accordingly recommends the application of a recovery rate to bring the claimed expenses in line with what should be charged to Defendants.  The 25% merits recovery rate (Dkt. No. 787 at 113) is recommended over the "default" recovery rates (*id*. at 19) because that rate also takes into account "good billing judgment" adjustments, which the undersigned believes should be applied to these voluminous photocopy entries.

After the removal of the excluded $912 charge discussed above and application of the recovery percentage, the expenses for this category are $9,838.33.

### 2. Messenger/Delivery Services

Plaintiff's counsel seek $11,597.69 in messenger/delivery service expenses (Dkt. No. 756-10 at 219).  Plaintiff's counsel have not submitted any documentation (invoices, receipts, or even credit card statements) or explanation for the claimed expenses in this category, although all of the expenses were charged to counsel by outside vendors.

Almost half of the total expenses sought in this category are encompassed by one, large non-itemized line-item: "Delivery Services – Copeis [sic] of Sealed Court Filings to Defendants" ($5,180) by Federal Express between "1/27/2006 – 1/28/2014" (Dkt. No. 756-10 at 222).  Without the supporting invoices or further itemization, the undersigned cannot evaluate the expenses encompassed by this huge line-item to determine whether those expenses were reasonable or necessary.

The vast majority of the remaining expenses do not specify what documents were delivered or what specific type of delivery service was employed and without that further information, the undersigned cannot assess, for example, whether a $245 for a single delivery of documents is excessive.  Of additional ambiguity is the large number of charges to "file" documents that appear on the public docket (meaning that they were filed via ECF, rather than in hard copy).  Finally, the amounts charged for items with identical descriptions vary significantly. For example, "Deliver Chambers Copies to Judge Alsup" is charged in amounts ranging from $55 to $245.  These differences are not explained by different vendors or changes in time, as the same vendor will charge two different prices for that listed service in the same week.  Without the supporting invoices or further detail, the undersigned cannot evaluate these expenses to determine whether they are reasonable or necessary.

Expenses in this category are unlike the in-house copying expenses for which it makes sense that no independent documentation might be available to further substantiate expenses.  The Entitlement Order specified that "detailed documents" supporting counsel's expense requests must be served with the revised application and also noted that the previously-submitted spreadsheets (identical to the instant spreadsheets) were "largely insufficiently detailed"  (Dkt. No. 739 at 29). Even after this admonition, Plaintiff's counsel failed to submit any substantiating materials or sufficiently detailed descriptions of the expenses.  The undersigned therefore must recommend no recovery for this category

### 3.  Court Transcript Expenses

Plaintiff's counsel seek $9,125.49 for Court Transcript Expenses (Dkt. No. 756-10 at 219).

Plaintiff's counsel have not submitted any documentation (invoices, receipts, or even credit card statements) or explanation for the claimed expenses, although all of the expenses were charged to counsel through invoice by outside vendors (generally court reporters).  The dates provided in the spreadsheet appear to correspond to the date of the proceeding for which the transcript was prepared, not the date of the invoice or the date of the transcript order.  With a few exceptions, the undersigned therefore cannot determine whether transcripts were ordered for use in the above-captioned matter or were ordered *after* the conclusion of the above-captioned matter, as appears to be the case for the transcript of the May 18, 2006 proceedings for which a transcript was not ordered until July 14, 2014 (Dkt. No. 777).

The undersigned was able, however, to locate "transcript orders" by conducting independent research on the public docket.  The undersigned located the following transcripts that were ordered during the life-span of the case: transcript of April 18, 2013 Hearing re: Plaintiff's Motion to Compel Further Written Discovery Responses & Compel Rule 30(b)(6) Depositions (line item 11) (Dkt. No. 469); transcript of July 23, 2013 Hearing re: Defendants' Motion for Summary Judgment (line item 14) (Dkt. No. 587); transcript of November 15, 2013 Final Pre-Trial Conference (line item 15) (Dkt. No. 587); and December 2, 2013 to December 6, 2013 Daily Trial Transcripts (line item 16) (Dkt. No. 622).  The undersigned recommends that these transcripts be awarded at the same recovery rate at which the underlying attorney work was awarded:  25% for line item 11 (*see* Dkt. No. 787 at 84) and 50% for line items 14, 15, and 16 (*id.* at 105, 107, 109).  This totals $2,944.58 in recommended expenses.  The order dates of these transcripts demonstrate to the undersigned that they were used in the trial proceedings and that they were reasonable and necessary expenses that a client would be expected to pay.  Beyond these expenses, the undersigned cannot recommend any further recovery of expenses.

### 4.  <u>On-Line Research Expenses</u>

Plaintiff's counsel seek $98,717.67 for Westlaw, LexisNexis, and Pacer on-line research services (Dkt. No. 756-10 at 225).  Plaintiff's counsel have not submitted any documentation (invoices, receipts, or even credit card statements) or explanation for the claimed expenses,

1    although all of the expenses were charged to counsel through invoice by outside vendors.

2            From the billing dates, it appears each line item does not represent an independent research

3    event, but a sum total of the bimonthly or monthly bill received by the outside vendor.  There is no

4    breakdown of what services are encompassed in these bi-monthly or monthly bills.  The

5    undersigned accordingly cannot assess whether each expense was reasonable and necessary and

6    the undersigned therefore cannot recommend any recovery for expenses in this category.

7            **5.   Facsimile Expenses**

8            Plaintiff's counsel seek $232 in facsimile expenses (Dkt. No. 756-10 at 227).  The

9    undersigned finds that these expenses are more like in-house photocopy expenses than they are

10   service charges by an outside vendor and thus no further itemization or documentation is needed.

11   However, for the same reasons as articulated above, the undersigned believes that the 25% merits

12   recovery rate should be applied to these expenses.  Application of this recovery percentage results

13   in $58 in recommended expenses.

14           **6.   Outside Copy Service Expenses**

15           Plaintiff's counsel seek $5,068.86 for "Court Reporter Prepared Binders for Washington

16   D.C. Depositions" for two days of deposition (Dkt. No. 756-10 at 228).  Plaintiff's counsel have

17   not submitted any documentation (invoice, receipt, or even credit card statement) or explanation

18   for this large claimed expense although it was charged to counsel through an invoice by an outside

19   vendor.  The undersigned accordingly cannot assess whether the total expense was reasonable and

20   necessary and the undersigned therefore cannot recommend any recovery this category.

21           **7.   Privileged Investigation Services**

22           Plaintiff's counsel seek $50 for "Privileged Investigation Services" (Dkt. No. 756-10 at

23   229).  Plaintiff's counsel have not submitted any documentation (invoice, receipt, or even credit

24   card statement) or explanation for this expense although it was charged to counsel through an

25   invoice by an outside vendor.  The undersigned accordingly cannot assess whether the total

26   expense was reasonable and necessary and the undersigned therefore cannot recommend any

27   recovery this category.

28

Case No. C-06-00545 WHA

REPORT AND RECOMMENDATION OF SPECIAL MASTER ON EXPENSES

### 8.  **Long-Distance Telephone Service Expenses**

Plaintiff's counsel seek $21.48 for long distance telephone service (Dkt. No. 756-10 at 230).  Plaintiff's counsel have not submitted any documentation (invoice, receipt, or even credit card statement) or explanation for these expenses although they were charged to counsel through an invoice by an outside vendor.  The undersigned accordingly cannot assess whether the total expense was reasonable and necessary and the undersigned therefore cannot recommend any recovery this category.

### 9.  **Travel Expenses**

Plaintiff seeks $40,335.68 in travel expenses (Dkt. No. 756-10 at 231).  Plaintiff's counsel have not submitted any documentation (invoices, receipts, or even credit card statements) or explanation for the claimed expenses, although all of the expenses were charged to counsel by outside vendors.  Without any invoices or receipts, or even simply more detailed records, the undersigned cannot determine the reasonableness of the travel expenses as there is no information on individual room rates, dates of occupancy, quality of the rooms, whether the invoices include room service or other charges, etc.  *See Baldi Bros. Constructors v. United States*, 52 Fed. Cl. 78, 87 (Fed. Cl. 2002).  Similarly, without invoices for the parking charges or meal charges, the undersigned cannot determine whether the charges were necessary or reasonable.

Moreover, many of the expenses do not appear reasonable on their face and are insufficiently itemized.  As but one example, Plaintiff's counsel seek $21,072.79 "flight, lodging and meals for two attorneys, Plaintiff and her daughter" (Dkt. No. 756-10 at 232).  This claimed expense is not only vague and unsupported (it only specifies the airline carrier names), but it exceeds the bounds of what a reasonable client would pay and includes expenses that are not recoverable.  *Baldi Bros*. 52 Fed. Cl. at 86 (explaining travel expenses of the plaintiff or the plaintiff's agents are not recoverable).  Similarly, there are a number of expenses for lodging in San Francisco for routine hearings, when counsel's office is only approximately one hour away and it is unclear why overnight lodging was necessary.

The undersigned accordingly does not recommend recovery for any expenses in this

category.

### 10. Expert Fees

Plaintiff's counsel seek $88,446.01 in expert fees (Dkt. No. 756-10 at 233).  Notably, a portion of the fees are sought for work relating to Professor Sinnar's assistant, which does not appear to relate to recoverable work under the Entitlement Order.

Each expense in the category is simply described as "Expert Fees" and is not divided beyond overall monthly charges.  With the exception of Plaintiff's counsel's declaration specifying that Professor Kahn charged at a rate of $500 per hour and expert Shirin Sinnar's research assistant charged at a rate of $40 an hour, there is no supporting documentation for the claimed "expert fees."  There is no indication if all of the claimed expenses are for the expert's billed time, or if some of the amounts include the expert's expenses.  Expert fees, however, "must be both reasonable and adequately supported by documentation."  *See Baldi Bros.* 52 Fed. Cl. at 86.  The undersigned recommends none of the expenses in this category.

**CONCLUSION**

For the reasons stated herein, the undersigned recommends $34,768.71 in expenses be awarded to Plaintiff.

**IT IS SO RECOMMENDED.**

Dated:  September 23, 2014                    ____/s/_____
                                                               GINA MOON
                                                               Special Master