JAMES McMANIS (40958)
ELIZABETH PIPKIN (243611)
CHRISTINE PEEK (234573)
MARWA ELZANKALY (206658)
McMANIS FAULKNER
a Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:     (408) 279-8700
Facsimile:     (408) 279-3244
Email:         epipkin@mcmanislaw.com
               melzankaly@mcmanislaw.com

Attorneys for Plaintiff,
Rahinah Ibrahim

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RAHINAH IBRAHIM, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>Defendants. | Case No. C 06-0545 WHA<br><br>**PLAINTIFF'S RENEWED MOTION FOR ATTORNEY'S FEES AND COSTS IN ACCORDANCE WITH NINTH CIRCUIT EN BANC OPINION**<br><br>**Date:     October 8, 2020**<br>**Time:     8:00 a.m.**<br>**Ctrm:   12 – 19th Floor**<br>**Judge:  The Hon. William Alsup** |

1
2

## NOTICE OF RENEWED MOTION FOR ATTORNEY'S FEES AND COSTS IN ACCORDANCE WITH NINTH CIRCUIT EN BANC OPINION

3
TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

4
        PLEASE TAKE NOTICE that on October 8, 2020, at 8:00 a.m., or as soon thereafter as

5
the matter may be heard in the above-entitled Court, located at 450 Golden Gate Avenue, San

6
Francisco, California, Courtroom 12, 19th Floor, plaintiff Rahinah Ibrahim ("Dr. Ibrahim") will

7
move the Court for an Order granting her Renewed Motion for Attorney's Fees and Costs in

8
accordance with the en banc opinion of the Ninth Circuit Court of Appeals.  *See Ibrahim v.*

9
*Department of Homeland Security*, 912 F.3d 1147, 1186 (9th Cir. 2019) ("*Ibrahim III*") (en

10
banc).

11
        This motion is based on this notice, the Ninth Circuit en banc opinion, the attached

12
memorandum of points and authorities, the declaration of James McManis filed herewith, the

13
papers and records on file in this action, and on such oral and documentary evidence as may be

14
presented at the hearing on the motion.

15

16
Dated:  August 20, 2020                    McMANIS FAULKNER

17
                                           /s/ James McManis_____
18
                                           JAMES McMANIS

19
                                           Attorneys for Plaintiff, RAHINAH IBRAHIM

20
21
22
23
24
25
26
27
28

PLAINTIFF'S RENEWED MOTION FOR ATTORNEY'S FEES AND COSTS IN ACCORDANCE WITH EN BANC OPINION; Case No. C 06-0545 WHA

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 7

STATEMENT OF FACTS ..................................................................................................... 8

LEGAL ARGUMENT ......................................................................................................... 13

    I.      NEITHER THE AGENCIES' CONDUCT, NOR THE
           GOVERNMENT'S LITIGATION POSITION, WERE
           SUBSTANTIALLY JUSTIFIED ............................................................ 14

    II.     THE NINTH CIRCUIT HELD THAT A FULL AWARD OF
           FEES TO DR. IBRAHIM IS REASONABLE ...................................... 16

    III.    THE NINTH CIRCUIT NOTED THE EXTENSIVE EVIDENCE
           OF DEFENDANTS' BAD FAITH, ENTITLING DR. IBRAHIM
           TO HER COUNSEL'S MARKET RATES, AND DIRECTED
           THIS COURT TO RE-DETERMINE BAD FAITH BASED ON
           THE "TOTALITY OF CIRCUMSTANCES." ..................................... 19

         1.     The Government Engaged in Years of "Scorched Earth"
               Litigation, Even Though it Knew "From the Get-Go" of
               Agent Kelley's "Mistake." ................................................... 19

         2.     The Government Prevented Dr. Ibrahim's U.S. Citizen
               Daughter from Traveling to the United States to Testify at
               Her Mother's Trial. ............................................................. 21

         3.     The Government Repeatedly Sought Dismissal of Dr.
               Ibrahim's Action on Standing Grounds Post *Ibrahim II* ................... 22

         4.     The Government Tried to Use State Secrets as a Basis for
               Dismissal after Representing that It Would Not Do So .................... 22

         5.     The Government's Meritless Privilege Assertions and its
               Refusal to Produce Discovery Were Not Made in Good
               Faith ................................................................................. 23

         6.     The Government's Refusal to Produce Dr. Ibrahim's
               Watchlist Status Supports a Finding of Bad Faith ........................... 23

         7.     The Ninth Circuit Directed the Court to Consider Other
               Relevant Bad Faith Conduct ............................................... 24

    IV.    THE NINTH CIRCUIT DIRECTED THE COURT TO
           REDETERMINE COMMENSURATE COSTS ................................. 25

PLAINTIFF'S RENEWED MOTION FOR ATTORNEY'S FEES AND COSTS IN ACCORDANCE WITH EN BANC OPINION; Case No. C 06-0545 WHA

V.      THIS COURT SHOULD AWARD DR. IBRAHIM HER
        ATTORNEY'S FEES INCURRED ADJUDICATING HER
        MOTION FOR FEES ....................................................................................... 29

CONCLUSION................................................................................................................ 31

PLAINTIFF'S RENEWED MOTION FOR ATTORNEY'S FEES AND COSTS IN ACCORDANCE WITH EN
BANC OPINION; Case No. C 06-0545 WHA

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

*Brown v. Sullivan*, 916 F.2d 492  (9th Cir. 1990)........................................................ 29

4

*Commissioner, I.N.S. v. Jean*, 496 U.S. 154 (1990) ............................................... 14, 15

5

*Copeland v. Martinez*, 603 F.2d 981 (D.C. Cir. 1979) ................................................ 23

6

*Corbin v. Apfel,* 149 F.3d 1051 (9th Cir. 1998) ......................................................... 15

7

*Crittenden v. Chappell*, 804 F.3d 998 (9th Cir. 2015) ................................................ 21

8

*General Federation of Women's Clubs v. Iron Gate Inn, Inc.,*
    537 A.2d 1123 (D.C. App. 1988) ....................................................................... 29, 30

9

10

*Gutierrez v. Barnhart*, 274 F.3d 1255 (9th Cir. 2001) ............................................... 15

11

*Hensley v. Eckerhart* 461 U.S. 424 (1983) .............................................. 14, 16, 17, 30

12

*Ibrahim v. Department of Homeland Security*, 538 F.3d 1250
    (9th Cir. 2008) ("*Ibrahim I*") ............................................................................... 8

13

14

*Ibrahim v. Department of Homeland Security*, 669 F.3d 983
    (9th Cir. 2012) ("*Ibrahim II*") ..................................................................... 8, 9, 22

15

16

*Ibrahim v. Department of Homeland Security*, 912 F.3d 1147
    (9th Cir. 2019) ("*Ibrahim III*") ................................................................... *passim*

17

*In re Sanford Fork & Tool Co.*, 160 U.S. 247 (1895) ................................................... 7

18

*International Woodworkers of America v. Donovan,*
    792 F.2d 762 (9th Cir. 1986) ............................................................................... 27

19

20

*Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438 (9th Cir. 1982)....................................... 7

21

*Lozano v. Astrue*, 2008 WL 5875573, *3 (9th Cir. 2008) .................................... 27, 28

22

*Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) .................................................. 28

23

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014).................. 23

24

*Pierce v. Underwood*, 487 U.S. 552 (1988)................................................................ 30

25

*Rodriguez v. U. S.,* 542 F.3d 704 (9th Cir. 2008) ................................................. 13, 19

26

*Thangaraja v. Gonzales*, 428 F.3d 870 (9th Cir. 2005) .............................................. 19

27

*U.S. v. Garcia-Beltran*, 443 F.3d 1126 (9th Cir. 2006) ................................................ 7

28

PLAINTIFF'S RENEWED MOTION FOR ATTORNEY'S FEES AND COSTS IN ACCORDANCE WITH EN
BANC OPINION; Case No. C 06-0545 WHA

**STATUTES**

28 U.S.C. § 2412.................................................................................................... 17

28 U.S.C. § 2412(b).............................................................................................. 19

28 U.S.C. § 2412(d)(1)(B)................................................................................... 14

28 U.S.C. § 2412(d)(2)(A)(ii).............................................................................. 19

PLAINTIFF'S RENEWED MOTION FOR ATTORNEY'S FEES AND COSTS IN ACCORDANCE WITH EN BANC OPINION; Case No. C 06-0545 WHA

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

On January 2, 2019, the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit"), sitting en banc, issued its opinion vacating this Court's award of attorneys' fees to plaintiff, Dr. Rahinah Ibrahim, ("Dr. Ibrahim"), and remanding the case "to re-determine the fee award in accordance with" the Ninth Circuit's opinion ("the en banc opinion"). *Ibrahim v. Department of Homeland Security*, 912 F.3d 1147, 1186 (9th Cir. 2019) ("*Ibrahim III*") (en banc). The Ninth Circuit directed that there be a "substantial redetermination" of both the fee award "as well as commensurate costs." *Id.* at 1186, n.40. The Ninth Circuit further directed that Dr. Ibrahim and her counsel "are entitled to the fees they've earned and **the vast majority of fees they requested**." *Id.* at 1185-1186 (emphasis added).

Under the law of the case doctrine, "on remand a lower court is bound to follow the appellate court's decision as to issues 'decided explicitly or by necessary implication.'" *U.S. v. Garcia-Beltran*, 443 F.3d 1126, 1129 (9th Cir. 2006) (quoting *Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982)). In addition, the rule of mandate "requires a lower court to act on the mandate of an appellate court, without variance or examination, only execution." *Id.* at 1130 (citing *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)).

Dr. Ibrahim now files a renewed motion for fees and costs, to be awarded pursuant to the en banc opinion. After over fourteen years of litigation, necessitated by defendants' refusal to acknowledge and resolve the government's own watch-listing error, Dr. Ibrahim should be awarded the requested $4,030,981.69 in fees and costs. This amount includes fees and costs incurred through October, 2014, plus an additional $69,270.00, for fees incurred since this matter was remanded. This amount does not include fees and costs that defendants already paid, or compensation for time removed from Dr. Ibrahim's requests in the exercise of billing judgment. *See* Declaration of James McManis in Support of Plaintiff's Motion for Attorney's Fees and Costs in Accordance with En Banc Opinion ("McManis Decl."), ¶ 6; *see also* Doc. 721-1; Doc. 756-3; Doc. 792-23, p. 2, ¶ 2.

///

**STATEMENT OF FACTS**

Dr. Ibrahim filed this action on January 27, 2006, challenging the placement of her name on government watchlists, including the No Fly List, which led to her false arrest and detention at San Francisco International Airport, in January, 2005, and ultimately, the revocation of her student visa.  *See* Doc. 1.  After successful motions to dismiss by the government, the Ninth Circuit twice ruled that Dr. Ibrahim had the right and the standing to pursue her claims.  *See Ibrahim v. Department of Homeland Security*, 538 F.3d 1250, 1254-56 (9th Cir. 2008) ("*Ibrahim I*"); *Ibrahim v. Department of Homeland Security*, 669 F.3d 983, 992-997 (9th Cir. 2012) ("*Ibrahim II*").  This Court tried the case on December 2-6, 2013.

The Court issued its Findings of Fact, Conclusions of Law, and Order for Relief on January 14, 2014.  Doc. 682.  The Court found, and defendants were forced to concede, that Dr. Ibrahim "is not a threat to our national security[,]" and that she "does not pose (and has not posed) a threat of committing an act of international or domestic terrorism with respect to an aircraft, a threat to airline passenger or civil aviation security, or a threat of domestic terrorism."  Doc. 682, p. 8:21-25; *see also id.*, pp. 18:12-15, 26:3-4, 27:14-15, 29:11-14, 30:16-19, 32:12-13, 32:16-18, 33:14-16.  The Court ordered injunctive relief, including that defendants "search and trace all of its terrorist watchlists and records…for entries identifying Dr. Ibrahim[,]" and remove all references to her 2004 designation by Agent Kevin Kelley.  Doc. 682, p. 38:3-22.

As the prevailing party, on January 28, 2014, Dr. Ibrahim filed her motion for attorney's fees and costs under the Equal Access to Justice Act ("EAJA").  *See* Docs. 694, 696-699.  Dr. Ibrahim's motion included detailed summaries of all attorney's fees and costs incurred until that time.  Doc. 699, Exs. A & B.  At that time, Dr. Ibrahim's total fees incurred were $3,630,057.50.  Dr. Ibrahim also filed a Bill of Costs totaling $58,615.31.  Doc. 693.  Additionally, Dr. Ibrahim had incurred additional expenses in the total amount of $293,860.18.  Doc. 699, Exh. B; *see also* Doc. 712, Exs. A-K.  Dr. Ibrahim had deducted from her fee request $462,470.00 in fees incurred and an additional 385 hours of time for attorneys who had worked on this matter, but had spent fewer hours than the main attorneys on the case.  Doc. 721, ¶¶ 2-4; Doc. 721-1.  Defendants vigorously opposed Dr. Ibrahim's motion, arguing she was entitled to no more than

$286,586.97.  *See* Docs. 708, 709-3.  Defendants proposed that plaintiff recover less than the cost to litigate the case through trial, even though defendants had up to 26 lawyers and spent approximately 16,450 hours defending Dr. Ibrahim's action, far more than the 9,619 hours of time requested by Dr. Ibrahim.  Docs. 760-2, 756-4.[1]

Dr. Ibrahim's motion was adjudicated from January 28, 2014, until this Court issued its Order on all remaining issues on November 7, 2014.  *See* Docs. 694-811.  With respect to Dr. Ibrahim's Bill of Costs, the Court taxed costs at $20,311.25.  Doc. 741, p. 8.  The parties agreed that an additional $329.42 might be taxed for service of the federal defendants.  Doc. 754.  The Court stated Dr. Ibrahim could seek unrecovered costs as "expenses."  Doc. 741, p. 8:21.

The Court issued its Order Granting in Part and Denying in Part Plaintiff's Motion for Attorney's Fees and Expenses on April 16, 2014.  Doc. 739.  The Court extended its compliments to Dr. Ibrahim's lawyers and to McManis Faulkner for "the work they contributed to this long-fought case."  Doc. 739, p. 1:23-27.  The Court found that with respect to the government's pre-litigation conduct, "the government's position was not substantially justified."  Doc. 739, p. 13:14-16.  The Court also found that with respect to the government's litigation conduct, "the government's attempt to defend its no-fly error for years was not reasonable[,]" and also not substantially justified.  Doc. 739, p. 13:22-27.

The Court found the government's position at certain stages of the litigation was "substantially justified," such as its position on standing before the appeal in *Ibrahim II*.  Doc. 739, p. 14:3-5.  The Court further found Dr. Ibrahim was entitled to recover reasonable fees and expenses for work on her procedural and substantive due process claims, and her Administrative Procedure Act ("APA") claim.  Doc. 739, pp. 15:5-16:20.  The Court declined to award Dr. Ibrahim "fees for work performed on Dr. Ibrahim's visa issues, the settlement with the Non-Federal Defendants, litigation of standing prior to *Ibrahim II* ... litigation of privilege issues, and other miscellaneous work."  *Ibrahim III*, 912 F.3d at 1165.  The Court declined to find that

---

[1] Even including the approximately 1,785 hours of attorney time cut from the fee application, (*see* Doc. 756, ¶ 16; Doc. 756-3), that amounts to approximately 11,400 hours for Dr. Ibrahim's counsel, 5,000 hours less than defense counsel.  *See* Doc. 756, ¶ 16; Doc. 756-3; Doc. 760-2.

1  defendants' conduct in this action amounted to bad faith, separately analyzing each item of bad

2  faith conduct.  Doc. 739, pp. 24:4-25:16.  The Court declined to grant any rate enhancements

3  under the EAJA, except for James McManis, whose rate was fixed at $250 per hour.  Doc. 739,

4  pp. 25:17-27:6.

5         At the Court's direction, Dr. Ibrahim submitted revised detailed spreadsheets of time

6  records and fees, organized by "discrete projects," including time spent adjudicating her motion

7  for attorney's fees through May 12, 2014.  Docs. 756-1, 756-2.  By that time, Dr. Ibrahim's fees

8  were $3,880,245.25.  Doc. 756-1, p. 177.  Dr. Ibrahim also submitted a spreadsheet of her

9  unrecovered costs to add to her request for expenses.  Doc. 756-10, p. 1.  Her revised request for

10  expenses totaled $327,826.47.  *Id.*

11         The Court appointed a special master to determine the amount of fees to be awarded in

12  accordance with the Court's earlier rulings.  Doc. 775.  Dr. Ibrahim also submitted a request for

13  additional fees incurred adjudicating her motion before the special master from May 13 through

14  September 1, 2014, in the amount of $100,362.50.  Doc. 792-23, p. 14.  By that time, Dr.

15  Ibrahim's fees totaled approximately $3,980,607.  Doc. 756-1, p. 177; Doc. 792-23, p. 14.  On

16  September 18, 2014, the Special Master issued her Report and Recommendation on fees.  Doc.

17  787.  Her Report and Recommendation on expenses followed on September 23, 2014.  Doc. 789.

18         Both sides objected to the special master's reports and recommendations.  *See* Docs. 791-

19  800.  The Court issued its Order resolving the parties' objections and adopting the special

20  master's reports and recommendations on October 9, 2014.  Doc. 803.  Of the $3,980,607 in fees

21  and $293,860.18 in expenses requested, the Court awarded Dr. Ibrahim $419,987.36 in fees and

22  $34,768.71 in expenses, and fixed the special master's compensation at $27,481.50.  *Id.,* p. 7:11-

23  12.  The Court also required Dr. Ibrahim to pay 75% of the special master's fees and 100% of

24  her time incurred on fees incurred adjudicating the attorney's fees issues.  *Id.,* p. 7:1-6.  The

25  Court directed defendants to pay the special master's compensation in its entirety and deduct Dr.

26  Ibrahim's share of this cost from her award of attorney's fees.  *Id.,* p. 7:13-16.

27         In its November 7, 2014, Order, the Court denied Dr. Ibrahim's request to supplement her

28  attorney's fees to include time spent objecting to the special master's reports and

1   recommendations, and responding to defendants' objections, in the total amount of $85,467.50.

2   Docs. 805, 811; McManis Decl., ¶ 3a, Exh. C.

3           Defendants have paid Dr. Ibrahim's counsel a total of $433,949.95.  McManis Decl., ¶ 4.

4           Dr. Ibrahim appealed this Court's final decisions on her motion for attorney's fees and

5   costs.  On January 2, 2019, the Ninth Circuit issued its en banc opinion reversing this Court,

6   vacating the award of attorney's fees and expenses, and remanding the matter "to allow the

7   district court to make a bad faith determination under the correct legal standard in the first

8   instance, and to re-determine the fee award in accordance with" the en banc opinion.  *Ibrahim*

9   *III*, 912 F.3d at 1186; *see also* Doc. 824.

10          Dr. Ibrahim filed her Bill of Costs on January 11, 2019, seeking $505.  Doc. 826.

11  Mandate issued on April 8, 2019.  *See* Doc. 835.  On May 31, 2019, defendants filed a petition

12  for writ of certiorari with the Supreme Court.  *See* Doc. 847.  The Supreme Court denied the

13  petition on October 15, 2019.  *See* Doc. 852.  On July 22, 2020, defendants filed a non-objection

14  to Dr. Ibrahim's Bill of Costs pertaining to her appeal.  Doc. 863.

15          On February 25, 2019, Dr. Ibrahim filed a motion with the Ninth Circuit for her

16  attorney's fees and costs incurred on appeal.  McManis Decl., ¶ 2, Exh. B.  Dr. Ibrahim sought

17  her full market rates on the ground that defendants' conduct in defending this action was in bad

18  faith.  *Id.*  On March 29, 2019, the Ninth Circuit granted Dr. Ibrahim's motion and referred the

19  matter to the Appellate Commissioner for a determination of the proper amount of fees and costs.

20  Doc. 833.  The Appellate Commissioner referred the matter to the Circuit Mediator.  McManis

21  Decl., ¶ 2.  Dr. Ibrahim expects that the matter will return to the Appellate Commissioner shortly

22  for final adjudication of Dr. Ibrahim's award of fees and costs on appeal.  *Id.*  At that time, Dr.

23  Ibrahim will update her request to include fees incurred opposing defendants' motion for

24  reconsideration of the Ninth Circuit's en banc opinion and their petition for writ of certiorari.  *Id.*

25  At the present time, the instant motion does not include fees incurred on appeal as the amount of

26  those fees will be adjudicated by the Ninth Circuit.  However, Dr. Ibrahim reserves the right to

27  adjudicate her fees on appeal before this Court should those fees ever be remanded for

28  consideration by this Court.

PLAINTIFF'S RENEWED MOTION FOR ATTORNEY'S FEES AND COSTS IN ACCORDANCE WITH EN BANC OPINION; Case No. C 06-0545 WHA

On August 6, 2020, counsel for the parties appeared before this Court for a Case Management Conference.  Doc. 866.  In their joint Case Management Statement, Dr. Ibrahim requested that the recalculation of her fees and expenses in accordance with the en banc opinion be done "through a single motion to be filed and heard before this Court[,]" relying on the previously submitted extensive details regarding Dr. Ibrahim's fees and costs incurred.  Doc. 864, pp. 5-7, ¶¶ 4, 14.  Dr. Ibrahim further noted she will only provide additional spreadsheets of fees incurred from September 1, 2014 to the Court's Order of November 7, 2014, and from the date of the Ninth Circuit's mandate until the date of this filed motion.  *Id.*, p. 5, ¶ 4.  Defendants did not oppose Dr. Ibrahim's requested process.  *See id.,* p. 7, ¶ 1.

Dr. Ibrahim now submits this renewed motion for an award of attorney's fees and expenses in the total amount of $4,030,981.69.  Dr. Ibrahim also requests that the Court find Dr. Ibrahim responsible for no more than 50% of the special master's fees.  Dr. Ibrahim's request is calculated as follows:

| ITEM REQUESTED | AMOUNT | CITATION |
|---|---|---|
| January 28, 2014 fees requested | $3,630,057.50 | Doc. 699, Exs. A & B |
| January 28, 2014 Bill of Costs | $     58,615.31<br>$       (4,008.35)[2] | Doc. 693 |
| January 28, 2014 Expenses | $   293,860.18 | Docs. 699, Exh. B & 712, Exs. A-K |
| Fees incurred adjudicating fees through May 12, 2014[3] | $   250,187.75 | Docs. 756-1 and 756-2 |
| Fees incurred in the Special Master proceedings from May 13 through September 1, 2014 | $   100,362.50 | Doc. 792-23, p. 14 |
| Fees incurred objecting to, and responding to defendants' objections to, the special master's reports and | $     85,467.50<br>$       (5,645.00)[4] | Docs. 805 & 811, McManis Decl., ¶ 3a, Exh. C |

[2] *See* Doc. 756-10, p. 1 (withdrawing $3,975 already paid and a $33.35 expert write-off from the amount claimed in the Bill of Costs).

[3] The total fees submitted on May 13, 2014, were $3,880,245.25.  The $250,187.75 amount, representing fees incurred adjudicating attorney's fees until that point in time, was calculated by taking the difference between the $3,880,245.25 submitted on May 13, and the $3,630,057.50 incurred as of the date of the filing of the original motion for fees on January 28, 2014.

[4] When calculating this total in 2014, plaintiff's counsel inadvertently included two entries from September 1, 2014, which had already been accounted for in Doc. 792-23.

| ITEM REQUESTED | AMOUNT | CITATION |
|---|---|---|
| recommendations from September 2, 2014, through October 13, 2014 | | |
| January 11, 2019 Bill of Costs | $ 505.00 | Docs. 826 & 863 |
| Fees incurred from February 14 to August 17, 2020, for renewed motion for fees | $ 69,270.00 | McManis Decl., Exh. D |
| Dr. Ibrahim's 50% share of fees incurred by Special Master Gina Moon | $ (13,740.75) | Doc. 803, p. 7:11-12 |
| Amount paid by defendants | $ (433,949.95) | McManis Decl., ¶ 4 |
| **Total Fees and Expenses Requested** | **$ 4,030,981.69** | |

## LEGAL ARGUMENT

The Ninth Circuit vacated this Court's previous awards of fees to Dr. Ibrahim, and remanded this action "to re-determine the fee award in accordance with" the en banc opinion. *Ibrahim III*, 912 F.3d at 1186. The Ninth Circuit held:

a) That "neither the agencies' conduct nor the government's litigation position was substantially justified[,]" and therefore "[t]he EAJA mandates that attorneys' fees be awarded to Dr. Ibrahim's attorneys, subject only to reasonableness review." *Id.* at 1172.

b) The Court "erroneously determined that Dr. Ibrahim was entitled to reasonable fees and expenses with respect to only her procedural due process claim, which provided her with substantial relief, and her related substantive due process and APA claims." *Id.* Rather, fees for all of Dr. Ibrahim's claims are recoverable. *Id.* at 1177.

c) Dr. Ibrahim "achieved excellent results and is therefore entitled to reasonable fees consistent with that outcome." *Id.* at 1180.

d) The Court's "ruling that the government did not act in bad faith was in error" as it did not consider the "'totality' of the government's conduct," including pre-litigation conduct and conduct during trial. *Id.* at 1184-1185 (quoting *Rodriguez v. U. S.,* 542 F.3d 704, 712 (9th Cir. 2008)).

Based on its analysis, the Ninth Circuit concluded that "[a] full award of attorneys' fees here is consistent with the EAJA's goal of creating a level playing field in cases in which there is

1   an imbalance of power and resources." *Ibrahim III,* 912 F.3d at 1179.  The Ninth Circuit

2   directed that "[w]hen the district court recalculates these fees, the calculation should

3   acknowledge that Dr. Ibrahim and her lawyers, facing overwhelming odds, won a

4   groundbreaking victory, and that they are entitled to the fees they've earned and **the vast**

5   **majority of fees they requested."** *Id.* at 1185 (emphasis added).  The Ninth Circuit further

6   directed that there be a "substantial redetermination" of the fee award "as well as commensurate

7   costs." *Id.* at 1186, n.40.

8        Finally, the Ninth Circuit acknowledged the tremendous amount of work Dr. Ibrahim's

9   counsel had to do to defend the right to an award of their reasonable fees and costs.  "The district

10  court's piecemeal award of attorneys' fees in this case runs afoul of the Supreme Court's

11  admonition that "'[a] request for attorney's fees should not result in a second major litigation.'"

12  *Id.* at 1185 (quoting *Hensley v. Eckerhart* 461 U.S. 424, 437 (1983) ("*Hensley*")) (alteration in

13  original).

14       For those reasons, and as set forth in further detail below, Dr. Ibrahim now requests that

15  this Court award her: a) her requested fees incurred during the course of this litigation, at market

16  rates, which have already been substantially reduced in the exercise of billing judgment; b) her

17  requested costs and expenses incurred over the course of the eight-year period before this action

18  was tried to judgment; and c) her requested fees incurred before this Court since January 28,

19  2014, litigating her various requests for fees and costs.

20  **I.    NEITHER THE AGENCIES' CONDUCT, NOR THE GOVERNMENT'S**
    **LITIGATION POSITION, WERE SUBSTANTIALLY JUSTIFIED.**

21       In its en banc opinion, the Ninth Circuit laid out the following requirements for a fee

22  award under the EAJA:

23       (1) that the claimant be 'a prevailing party'; (2) that the Government's position
         was not 'substantially justified'; (3) that no 'special circumstances make an award

24       unjust'; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application
         be submitted to the court within 30 days of final judgment in the action and be

25       supported by an itemized statement.

26  *Ibrahim III*, 912 F.3d at 1167 (quoting *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 158 (1990)).

27  The Ninth Circuit noted that this Court correctly found that Dr. Ibrahim was the "prevailing

28

14

1    party" in this action.  *Ibrahim III*, 912 F.3d at 1167.  The Ninth Circuit further noted that the

2    third and fourth factors were not at issue.  *Id*.  "The only remaining issue as to Dr. Ibrahim's

3    entitlement to fees is whether the government's position was substantially justified."  *Id*.

4           With respect to substantial justification, the Ninth Circuit noted that "[t]he test is an

5    inclusive one; we consider whether the government's position 'as a whole' has 'a reasonable

6    basis in both law and fact.'"  *Id*. at 1168 (quoting *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258,

7    1261 (9th Cir. 2001)).  Relying on *Corbin v. Apfel*, 149 F.3d 1051 (9th Cir. 1998), this Court

8    declined to award fees for certain positions taken by defendants at different stages of the

9    litigation because those individual positions were, in the Court's view, substantially justified.

10   *Ibrahim III*, 912 F.3d at 1168.  "This approach was error, as it is contrary to the Supreme Court's

11   instructions in *Jean*."  *Id*.

12          In *Jean*, "the Supreme Court rejected the government's argument that it could assert a

13   substantial justification defense at multiple stages of an action."  *Id*. (quoting *Jean,* 496 U.S. at

14   158-159) (internal quotation marks omitted).  *Jean* found that "'[t]he single finding that the

15   Government's position lacks substantial justification, like the determination that a claimant is a

16   "prevailing party," thus operates as a one-time threshold for fee eligibility.'"  *Ibrahim III,* 912

17   F.3d at 1168-1169 (quoting *Jean*, 496 U.S. at 160).  The Ninth Circuit observed, "'[a]ny given

18   civil action can have numerous phases,' as evidenced by the case at hand."  *Ibrahim III,* 912 F.3d

19   at 1169 (quoting *Jean*, 496 U.S. at 161).  "But the Supreme Court clearly instructed, and almost

20   all courts have clearly understood, that 'the EAJA – like other fee-shifting statutes – favors

21   treating a case as an inclusive whole, rather than as atomized line-items.'"  *Ibrahim III,* 912 F.3d

22   at 1169 (quoting *Jean,* 496 U.S. at 161-162).

23          The Court's "piecemeal approach to substantial justification" was therefore error.

24   *Ibrahim III*, 912 F.3d at 1170.  "Most fundamentally, the agency position upon which these

25   going-on-thirteen years of litigation was based was not justified at all, much less substantially."

26   *Id*.  The Ninth Circuit agreed with this Court that "'the government's defense of such inadequate

27   due process in Dr. Ibrahim's circumstance – when she was concededly not a threat to national

28   security – was not substantially justified.'"  *Ibrahim III*, 912 F.3d at 1171 (quoting this Court).

"Those conclusions should have been the end of the district court's EAJA eligibility analysis." *Id.* Based on these conclusions alone, "[t]he EAJA mandates that attorneys' fees be awarded to Dr. Ibrahim's attorneys, subject only to reasonableness review." *Id.* at 1172.

## II. THE NINTH CIRCUIT HELD THAT A FULL AWARD OF FEES TO DR. IBRAHIM IS REASONABLE.

In determining a reasonable award of fees, the Ninth Circuit notes that in *Hensley*, "the Supreme Court set out a two-pronged approach for determining the amount of fees to be awarded when a plaintiff prevails on only some of his claims for relief or achieves 'limited success.'" *Ibrahim III*, 912 F.3d at 1172. Based upon this approach, the Ninth Circuit held that "[t]he district court erroneously determined that Dr. Ibrahim was entitled to reasonable fees and expenses with respect to only her procedural due process claim, which provided her with substantial relief, and her related substantive due process and APA claims." *Id.*

Reiterating that "a district court's 'failure to reach' certain grounds does not make those grounds 'unsuccessful,'" the Ninth Circuit concluded this Court "clearly erred" in holding Dr. Ibrahim's unreached claims were unsuccessful. *Id.* at 1173. The Ninth Circuit found that "[a]ll of Dr. Ibrahim's claims arose from a 'common course of conduct' and are therefore related under *Hensley*." *Ibrahim III*, 912 F.3d at 1175.

The Ninth Circuit explained that it is common for lawyers to plead alternative legal theories based on a common course of conduct, and fees should not be denied because the district court did not reach certain claims:

> Dr. Ibrahim's lawyers may have violated their ethical duties and risked malpractice if they had failed to bring all claims that their client could present in good faith. [Citation.] **Dr. Ibrahim and her lawyers faced an uphill battle. The government vigorously defended this case, and Dr. Ibrahim did not have access to meaningful discovery until a few months before trial, after years of litigation and two appeals—she was fighting blind against the Many-Faced Bureaucratic God. And as demonstrated by the complex and longstanding procedural history, it was not even clear that Dr. Ibrahim could advance the case beyond the dismissal stage**.

*Id.* at 1177 (emphasis added, citation and footnote 27 omitted). Therefore, the appellate court concluded, "[a]ll of Dr. Ibrahim's claims arose from her wrongful placement on the No Fly list, and are therefore related. Fees for each of these claims are thus recoverable." *Id.*

16

The Ninth Circuit also concluded that Dr. Ibrahim satisfied *Hensley*'s second prong. *Id.* at 1178. "The achievement of Dr. Ibrahim and her attorneys in successfully challenging her No Fly list placement and forcing the government to fix its error was not just 'excellent,' but extraordinary." *Id.* The Ninth Circuit noted that "[a]fter almost a decade of vigorous and fiercely contested litigation against our state and federal governments and their officials, including two appeals to our court and a weeklong trial, Dr. Ibrahim won a **complete victory**." *Ibrahim III*, 912 F.3d at 1153 (emphasis added).

The Ninth Circuit describes Dr. Ibrahim's "outstanding victory" (*id. at* 1165), as follows:

> In 2014, the federal government at last conceded that she poses no threat to our safety or national security, has never posed a threat to national security, and should never have been placed on the No Fly list. Through Dr. Ibrahim's **persistent discovery efforts**, which were met with **stubborn opposition** at every turn, she learned that she had been nominated to the No Fly list and the Interagency Border Inspection System (IBIS), which are stored within the national Terrorist Screening Database (TSDB) – the federal government's centralized watchlist of known and suspected terrorists – and which serve as a basis for selection for other counterterrorism sub-lists.
>
> …
>
> Throughout this **hard-fought litigation**, the civil rights law firm McManis Faulkner has represented her interests without pay, but with the understanding that if it prevailed on her behalf, it could recover reasonable attorneys' fees and expenses, in addition to costs, pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.

*Id.* at 1153 (emphasis added).

The Ninth Circuit further describes Dr. Ibrahim's lawsuit as "pathbreaking," for the following reasons:

> Dr. Ibrahim was the first person ever to **force the government to admit a terrorist watchlisting mistake**; to **obtain significant discovery** regarding how the federal watchlisting system works; to **proceed to trial** regarding a watchlisting mistake; to **force the government to trace and correct all erroneous records** in its customer watchlists and databases; to **require the government to inform a watchlisted individual of her TSDB status**; and to **admit that it has secret exceptions** to the watchlisting reasonable suspicion standard. Dr. Ibrahim, in her first appeal to our court, **established that district courts have jurisdiction** over challenges to placement on terrorist watchlists, including the No Fly list. [Citation.] In her second appeal, she **established that even aliens who voluntarily depart from the U.S. have standing** to bring constitutional claims when they have had a significant voluntary connection with the U.S. [Citation.] Moreover, on her journey, Dr. Ibrahim **established important principles of law**, benefiting future

17

individuals wrongfully placed on government watchlists.  Previously, most such challenges failed at the pleading stage.  [Citations].

**Dr. Ibrahim's victory affected more than just her case** – it affected the way all individuals can contest their placement on these watchlists.

…

Dr. Ibrahim refined federal watchlisting policy by **creating a roadmap** for other similarly situated plaintiffs to seek judicial redress for alleged wrongful placement on government watchlists.

**The significance of Dr. Ibrahim's roadmap cannot be overstated**.

*Id*. at 1178-1179 (emphasis added, citations and footnotes omitted).

The Ninth Circuit further noted that "**[a] full award of attorneys' fees** here is consistent with the EAJA's goal of creating a level playing field in cases in which there is an imbalance of power and resources." *Id.* at 1179 (emphasis added).  The Ninth Circuit pointed out that Dr. Ibrahim lacked the resources to hire counsel for such a large case and that "the small seventeen-lawyer law firm that represented her, McManis Faulkner, had similarly limited resources, but, when others refused, they agreed to take on her case, uncertain whether they would ever be compensated." *Id.* at 1180.  On the other hand, "[t]he government had a team of twenty-six lawyers – more lawyers than McManis Faulkner employed – and spent at least 13,400 hours – in other words, 558 days of one person working 24 hours a day – vigorously defending this litigation." *Id.*

Finally, the Ninth Circuit found that a full award of attorneys' fees[5] and costs was justified because it was the government's conduct that drove up fees **and costs**.

From the suit's inception, the government agencies' actions, including their on-again, off-again placement of Dr. Ibrahim on various government watchlists; refusal to allow her to reenter the United States at all, even to attend her own trial; and delay of her U.S.-born, U.S.-citizen daughter's attendance at trial, were unreasonable and served only to drive up attorneys' fees. Indeed, as a consequence of the government's conduct, Dr. Ibrahim was deposed in London, England, as opposed to the Northern District of California—which also drove up the costs and fees.

*Id.* at 1171-1172.

---

[5] Dr. Ibrahim previously submitted declarations attesting to the reasonableness of her counsel's hourly rates, given their experience and skill, and incorporates those declarations herein by reference.  *See* Doc. 696; Doc. 697; Doc. 756, ¶¶ 21-38, Exs. 6A-6D.

1

2

3

**III.   THE NINTH CIRCUIT NOTED THE EXTENSIVE EVIDENCE OF DEFENDANTS' BAD FAITH, ENTITLING DR. IBRAHIM TO HER COUNSEL'S MARKET RATES, AND DIRECTED THIS COURT TO RE-DETERMINE BAD FAITH BASED ON THE "TOTALITY OF CIRCUMSTANCES."**

4

5

6

7

8

9

10

11

12

13

Generally, attorneys' fees under the EAJA are limited to $125 per hour, adjusted for cost of living.  28 U.S.C. § 2412(d)(2)(A)(ii); *Thangaraja v. Gonzales*, 428 F.3d 870, 876-77 (9th Cir. 2005).  The EAJA provides, however, that the United States "shall be liable" for "reasonable fees and expenses of attorneys" "to the same extent that any other party would be liable under the common law[.]"  28 U.S.C. § 2412(b).  Under common law, a court may award counsel's full market rates where the government "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Ibrahim III*, 912 F.3d at 1180 (quoting *Rodriguez*, 542 F.3d at 709) (internal quotation marks omitted).  "[I]n evaluating whether the government acted in bad faith," the Ninth Circuit noted, courts "may examine the government's actions that precipitated the litigation, as well as the litigation itself.  *Ibrahim III*, 912 F.3d at 1180.

14

15

16

17

18

19

20

Here, the Ninth Circuit concluded that "[t]he district court clearly erred by failing to consider the totality of the government's conduct, particularly its comportment after discovering Agent Kelley's error."  *Ibrahim III*, 912 F.3d at 1181.  The Ninth Circuit found this Court's ruling was incomplete, because it "focused primarily upon Agent Kelley's 'unknowing' placement of Dr. Ibrahim's name on the No Fly list, which it deemed 'the original sin,' rather than considering the 'totality' of the government's conduct," both before and after the litigation commenced.  *Id.* at 1184-1185.

21

22

Elaborating on the proper "totality" standard, the Ninth Circuit noted there was significant evidence of bad faith, as follows:

23

24

**1.   The Government Engaged in Years of "Scorched Earth" Litigation, Even Though it Knew "From the Get-Go" of Agent Kelley's "Mistake."**

25

26

27

28

The Ninth Circuit held that, "the district court erred in failing to consider whether the government's position as a whole was in good faith."  *Ibrahim III*, 912 F.3d at 1184.  The Ninth Circuit repeatedly criticized the government's vigorous defense of Dr. Ibrahim's action, and its continued placement of Dr. Ibrahim on and off its watchlists, despite its clear knowledge of Dr.

19

1    Ibrahim's innocence.  *See*, *e.g.*, *id.* at 1155, 1163, 1158-1160, 1171, 1182-1183, 1185.

2         For example, on January 3, 2005, an official sitting on a stack of visa revocations, which

3    included Dr. Ibrahim's student visa, noted that "[t]hese revocations contain virtually no

4    derogatory information," but that he would still revoke them.  *Id.* at 1158-1159 (alteration in

5    original).  On February 10, 2006, less than two weeks after Dr. Ibrahim filed this action, "an

6    unidentified government agent requested that Dr. Ibrahim be 'Remove[d] from ALL

7    Watchlisting Supported Systems (For terrorist subjects: due to closure of case AND no nexus to

8    terrorism).'"  *Id.* at 1159 (alteration in original).  Later that year, on September 18, 2006, "the

9    government removed Dr. Ibrahim from the TSDB because she did not meet the 'reasonable

10   suspicion standard' for placement on it[.]"  *Id.*  There is no record that she was removed from its

11   customer lists.  *Id.*  On March 2, 2007, she was placed back in the TSDB without any

12   explanation as to why she was relisted.  *Id.*  She was removed again on May 30, 2007, but

13   without any record of the extent of, or reason for, that removal.  *Id.* at 1159-1160.

14        The Ninth Circuit found as follows:

15        While Dr. Ibrahim stood in limbo, unaware of her status on any list and unable to
16        return to the United States, even to attend the trial of her own case, **the
          government was well aware that her placement on the No Fly list was a**
17        **mistake from the get-go**.

18   *Id.* at 1155 (emphasis added, footnote 3 removed).

19        Dr. Ibrahim should not have had to endure over a decade of contentious litigation,
          two trips to the court of appeals, extensive discovery, over 800 docket entries
20        amounting to many thousands of pages of record, and a weeklong trial the
          government precluded her (and her U.S.-citizen daughter) from attending, **only to**
21        **come full circle to the government's concession that she never belonged on
          the No Fly list at all – that she is not and never was a terrorist or threat to**
22        **airline passenger or civil aviation security**.  It should not have taken a court
          order to require the government to 'cleans[e] and/or correct[] ... the mistaken
23        2004 derogatory designation' of Dr. Ibrahim, which had spread like an insidious
          virus through numerous government watchlists.

24   *Id.* at 1185 (emphasis added, alterations in original).

25        After the government engaged in **years of scorched earth litigation**, it finally
          conceded during trial in December 2013 that Dr. Ibrahim is 'not a threat to our
26        country.  She does not pose (and has not posed) a threat of committing an act of
          international or domestic terrorism with respect to an aircraft, a threat to airline
27        passenger or civil aviation security, or a threat of domestic terrorism.'  But the
          government knew this in November 2004, when Agent Kelley completed the
28        form; it knew it in January 2005, when the DHS agent told Dr. Ibrahim she was

20

1    not on the No Fly list; and it was well aware of it two weeks after Dr. Ibrahim
     filed the underlying action, when a government agent ordered her 'Remove[d]
2    from *ALL* watchlisting supported systems (For terrorist subjects: due to closure of
     case AND no nexus to terrorism)' and further stated that Dr. Ibrahim was not
3    qualified for placement on either the No Fly or TSA Selectee lists.  **Yet knowing
     this, the government essentially doubled-down** over the course of the litigation
4    with a **no-holds-barred defense**.

5    *Id.* at 1171 (emphasis added, italics in original).

6          In sum, the government failed to reveal that Dr. Ibrahim's placement on the No
          Fly list was a mistake until two months before trial, and eight years after Dr.
7          Ibrahim filed suit.  And **at all times**, as the government vigorously contested Dr.
          Ibrahim's discovery requests, and lodged over two hundred objections and
8          instructions not to answer questions in depositions **the government was aware
          that she was not responsible for terrorism or any threats against the United
9          States**.

10   *Id.* at 1163 (emphasis added).

11          The Ninth Circuit noted this Court had disregarded the fact that, despite the 2006 order to

12   remove Dr. Ibrahim from all watchlist databases, "the government continued to place Dr.

13   Ibrahim on and off federal watchlists, providing no reasonable explanation for Dr. Ibrahim's

14   never-ending transitions in watchlist status[,]" and no reason was provided why she was ever

15   placed on any watch list to begin with.  *Id.* at 1182.

16          **2.      The Government Prevented Dr. Ibrahim's U.S. Citizen Daughter from
                      Traveling to the United States to Testify at Her Mother's Trial.**

17          The Ninth Circuit found that this Court "unreasonably concluded, at least with respect to

18   Raihan, that there was no evidence that the government" obstructed Raihan from traveling to the

19   United States to testify at Dr. Ibrahim's trial.  *Id.* at 1181.  "That conclusion by the district court

20   is 'without support in inferences that may be drawn from the facts in the record' and is thus

21   clearly erroneous."  *Id.* at 1181-1182 (quoting *Crittenden v. Chappell*, 804 F.3d 998, 1012 (9th

22   Cir. 2015)).  "Dr. Ibrahim's daughter, a U.S. citizen with a U.S. passport, was flagged by the

23   National Targeting Center (NTC) as potentially inadmissible" under the Immigration and

24   Nationality Act.  *Ibrahim III*, 912 F.3d at 1182.  "But, as a U.S. citizen, Dr. Ibrahim's daughter

25   clearly was *not* subject to the INA."  *Id.* (italics in original).  Even though she "carried a U.S.

26   passport and U.S. Customs and Border Protection recognized that she appeared to be a U.S.

27   citizen," she was not allowed to board her flight, "causing her to miss her mother's trial, where

28

she had been listed as a witness." *Id.*

### 3. The Government Repeatedly Sought Dismissal of Dr. Ibrahim's Action on Standing Grounds Post *Ibrahim II*.

The Ninth Circuit further noted that "[t]he district court also **wrongly** rejected as a basis for bad faith the government's numerous requests for dismissal on standing grounds post-*Ibrahim II*, where we determined unequivocally that Dr. Ibrahim had Article III standing even though she voluntarily left the United States." *Id.* (emphasis added).

After *Ibrahim II,* and the Ninth Circuit's remand of this action, "[d]espite the unequivocal pronouncement from our court and the district court that Dr. Ibrahim had adequately pleaded Article III standing, the government argued over the next year that Dr. Ibrahim lacked standing." *Ibrahim III*, 912 F.3d at 1162. The government argued standing "in its third motion to dismiss, its motion for summary judgment, its statements during trial, and its proposed findings of fact and conclusions of law." *Id.* At the start of trial, "[t]he government raised lack of standing, yet again, and was denied, yet again." *Id.* at 1163. The government raised this argument again and again, "even though it was abundantly clear that 'the standing issue had gone the other way on appeal.'" *Id.* at 1162. The Ninth Circuit concluded this Court's failure to account for this unreasonableness in evaluating bad faith "was contrary to our longstanding precedent that when an attorney knowingly or recklessly raises frivolous arguments, a finding of bad faith is warranted.'" *Id.* at 1183.

### 4. The Government Tried to Use State Secrets as a Basis for Dismissal after Representing that It Would Not Do So.

"The government announced on at least two occasions that if it invoked the state secrets privilege to withhold information, then that evidence could not be relied upon by either side at trial." *Id.* at 1163. The government made this representation in response to an order from this Court. *Id.* Yet, contrary to its representations, the government tried to get the case dismissed based on state secrets, first in its motion for summary judgment, and then again at the final pretrial conference. *Id.* at 1163-1164.

Although the district court concluded that it was wrong for the government to do this, "it **incorrectly** found that the error was not knowingly or recklessly made." *Id.* at 1183 (emphasis

added).  "The government falsely represented to both the district court and to Dr. Ibrahim's counsel – orally in court and in written filings – that it would not rely on evidence withheld on the basis of a privilege to 'prevail in this action.'"  *Id.*  In spite of this, "the government raised the *very* argument it had promised to forego."  *Id.* (italics in original).  The Ninth Circuit noted that this is "precisely the type of 'abusive litigation' disavowed in the EAJA, which is focused on 'protecting the integrity of the judicial process.'"  *Id.* (quoting *Copeland v. Martinez*, 603 F.2d 981, 984 (D.C. Cir. 1979)).

### 5. The Government's Meritless Privilege Assertions and its Refusal to Produce Discovery Were Not Made in Good Faith.

The Ninth Circuit also found the Court "clearly erred in concluding the government's privilege assertions were made in good faith[,]" and ignoring the government's stubborn refusal to produce discovery even after the Court had ordered it.  *Ibrahim III*, 912 F.3d at 1183.  But, as the Ninth Circuit pointed out, "'willful disobedience of a court order' supports a bad faith finding."  *Id.* (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557 (2014).  The government refused to produce discovery it designated "sensitive security information" (SSI), "even after Dr. Ibrahim's attorneys obtained the requisite security clearance and the court ordered the government to produce discovery."  *Ibrahim III*, 912 F.3d at 1183.  In its December 20, 2012, Order, this Court chastised the government for its "'persistent and stubborn refusal to follow the statute' that required the government to produce this information in these circumstances."  *Id.* at 1183.

After this order, the government continued to refuse to produce discovery "because it wanted to renegotiate an already-in-place protective order."  *Id.* at 1184.  This Court itself noted that the government had "'once again miss[ed] a deadline to produce materials in this long-pending action.'"  *Id.*

### 6. The Government's Refusal to Produce Dr. Ibrahim's Watchlist Status Supports a Finding of Bad Faith.

At every step of the way, the government fought Dr. Ibrahim's attempts to learn her watchlist status.  On March 24, 2005, Dr. Ibrahim submitted a Passenger Identity Verification Form ("PIVF"), to determine her watchlist status and clear her name.  *Id.* at 1154-1155.  She

1  received nothing more than a meaningless response a year later, and after she filed this action.

2  *See id.* at 1155.  The government would not produce Dr. Ibrahim's watchlist status until it was

3  compelled to do so.  *Id.* at 1184.

4     On April 19, 2013, the Court finally ordered the government to provide information

5  related to Dr. Ibrahim's watchlist history, "in addition to her current watchlist statuses," and it

6  required the government to produce 30(b)(6) witnesses.  *Id.* at 1162.  On May 2, 2013, the

7  government disclosed that Dr. Ibrahim was inadvertently placed on the No-Fly list, with no other

8  detail.  *Id.* at 1162-1163.  The government also vigorously objected to Agent Kelley's deposition,

9  which finally went forward on September 12, 2013, almost eight years after Dr. Ibrahim filed her

10  lawsuit.  *Id.* at 1163.  As the Ninth Circuit said:

> Dr. Ibrahim should not have been required to pursue a motion to compel to
> require the government to produce this information, especially when **the
> government's justifications for refusing to produce it were baseless**.  The
> government first argued that Dr. Ibrahim did not have standing to assert a right to
> learn the status of her No Fly list placement – **a meritless reassertion of a settled
> issue**.  The government alternatively argued that her historical watchlist status
> was irrelevant to this case – **a plainly frivolous contention** given that Dr.
> Ibrahim's watchlist status is at the heart of this dispute.

16  *Id.* at 1184 (emphasis added).  The Ninth Circuit concluded, "[t]hese actions, too, support a bad

17  faith finding."  *Id.*

18     **7.**  **The Ninth Circuit Directed the Court to Consider Other Relevant Bad
        Faith Conduct.**

19     In closing, the Ninth Circuit directed the Court to consider other conduct by the

20  government that amounts to bad faith, including the following:

21  - That "although no classified information was used at trial, the government made
22  numerous privilege assertions and motions to close the courtroom[,]" requiring the
district court to close the courtroom at least ten times.  *Id.* at 1164, 1184.

23  - That the government engaged in other abuses of the discovery process, for example, by
24  making depositions "exceedingly difficult by lodging over 200 objections and
instructions not to answer to questions."  *Id.* at 1184, n.37.

25  - That the government misused the summary judgment hearing to argue tangential issues
26  until time ran out to discuss the substantive issues of its motion.  *See id.* at 1184.

27     There was additional bad faith conduct by defendants.  *See McManis Decl., Exh. A.*

*///*

28

PLAINTIFF'S RENEWED MOTION FOR ATTORNEY'S FEES AND COSTS IN ACCORDANCE WITH EN
BANC OPINION; Case No. C 06-0545 WHA

For these reasons, and in accordance with the en banc opinion, this Court should find that the government's conduct with respect to Dr. Ibrahim's watchlisting, and its litigation of this action, was done in bad faith, and should award Dr. Ibrahim her attorney's fees at market rates, for the entire litigation.

## IV.   THE NINTH CIRCUIT DIRECTED THE COURT TO REDETERMINE COMMENSURATE COSTS.

The Ninth Circuit noted that its en banc Opinion, "will require a **substantial redetermination** of the fee award, **as well as commensurate costs**." *Ibrahim III*, 912 F.3d at 1186, n.40 (emphasis added).

This Court should award Dr. Ibrahim the vast majority of her costs and expenses incurred in the course of this massive litigation, and in accordance with the en banc opinion.  Dr. Ibrahim submitted her bill of costs, in the amount of $58,615.31, with more than 100 pages of invoices. Doc. 693.  She also submitted spreadsheets detailing both the items in her bill of costs, and her expenses in the amount of $293,860.18.  Doc. 693; Doc. 699, Exh. B; Docs. 704-707; Doc. 712, Exs. A-K; Doc. 756-10.[6]  Initially, the clerk taxed costs at $53,699.13.  Doc. 741, p. 2:9.  The Court, however, reviewed the clerk's taxation of costs and reduced the amount of taxed costs to $20,311.25.  Doc. 741, p. 8:16-17.  The Court allowed Dr. Ibrahim to seek untaxed costs as part of her expenses.  *Id.,* p. 8:23.  Dr. Ibrahim submitted her remaining untaxed costs as part of her expenses.  *See* Doc. 756-10.  The special master recommended an award of a total of $34,768.71 in expenses, which the Court ultimately adopted.  Doc. 789, p. 2:6-7; Doc. 803, p. 7:11-12.

In its order taxing costs, the Court stated that "plaintiff's counsel are entitled to recover reasonable fees and expenses incurred for the procedural and substantive due process claims, Administrative Procedure Act claim, and defendant's lack-of-standing arguments following the remand in 2012."  Doc. 741, p. 1:23-26.  Similarly, the special master's report and

---

[6] Although this Court struck some of Dr. Ibrahim's submissions during the course of the adjudication of her fees and costs, (e.g., Doc. 741, p. 2:20-25), given that the Ninth Circuit has vacated the Court's orders and directed that costs be re-determined, Dr. Ibrahim is reincorporating her prior submissions, detailing her fees and costs, and she requests that the Court consider those submissions in support of her motion for fees and costs in accordance with the en banc opinion.

1   recommendation noted that she arrived at her recommendations by deducting expenses that

2   "have already been ruled to be non-recoverable by the Court or solely relate to work identified as

3   non-recoverable in the Entitlement Order[.]"  Doc. 789, p. 4:12-15.  Thus, the Court's

4   determination of Dr. Ibrahim's expenses was based on its now overturned decision on Dr.

5   Ibrahim's motion for fees, which limited her recovery to only certain claims and certain aspects

6   of the litigation.  Dr. Ibrahim's costs and expenses must be recalculated in accordance with the

7   decision of the Ninth Circuit in the en banc opinion so that Dr. Ibrahim is reimbursed for all of

8   her expenses.

9          Additionally, although the Court essentially awarded Dr. Ibrahim the majority of her

10  taxed costs (both as part of the Court's review of her Bill of Costs, and as part of its adoption of

11  the Special Master's Report and Recommendations on Expenses), the Court declined to award

12  Dr. Ibrahim the overwhelming majority of her expenses.  These expenses included:

13      • Online research costs (about $98,000);
        • Expert Fees (about $88,500);
14      • Travel expenses (about $40,000);
        • Photocopy expenses (about $40,000);
15      • Messenger/delivery services (about $11,500);
        • Court transcript expenses (about $9,000);
16      • Outside copy service (about $5,000);
        • Fax costs ($232);
17      • "Privileged investigation cost" ($50); and
        • Long distance phone services relating to Dr. Ibrahim's deposition in London ($21.48).
18
    Doc. 789, pp. 9-16.
19
20         The Court should award the overwhelming majority of these expenses.  First, these

21  expenses were clearly reasonable in light of the size and difficulty of this now fourteen-year

22  litigation, which the Ninth Circuit described as an "uphill battle."  *Ibrahim III*, 912 F.3d at 1177.

23  For example, counsel's online research costs were not excessive given that Dr. Ibrahim had to

24  overcome two appeals, three motions to dismiss, extensive discovery battles, a motion for

25  summary judgment, and a week-long trial, all of which involved complicated issues of federal

26  and constitutional law, and claims of various federal privileges, such as state secrets and SSI.

27         The expert witness fees were clearly warranted.  The majority of the fees pertained to the

28  testimony of Jeffrey Kahn, who supported Dr. Ibrahim's due process claim by providing

26

1   historical background about government watchlists from a credible expert, and other facts

2   showing that existing procedures carried an undue risk of error.  Similarly, Dr. Ibrahim's counsel

3   necessarily had to incur travel expenses for depositions in Washington DC and for Dr. Ibrahim's

4   deposition in London.  Doc. 756-10, Exh. 7-O.

5       It is important to note that the Ninth Circuit found it was defendants' conduct that drove

6   up both fees and costs, specifically pointing out that Dr. Ibrahim had to be deposed in London,

7   England, a cost for which this Court declined to reimburse Dr. Ibrahim.  *Ibrahim III*, 912 F.3d at

8   1171-1172.

9       The Ninth Circuit has found expenses to be broadly recoverable under the EAJA,

10  including all out-of-pocket expenses that are ordinarily billed to a paying client, such as

11  telephone calls, photocopying, postage, air courier, and attorney travel expenses.  *International*

12  *Woodworkers of America v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1986).  While the special

13  master did not assert that any of the claimed categories of expenses could not be recovered under

14  the EAJA, she denied the vast majority of Dr. Ibrahim's expenses without justification.

15      The special master claimed there was insufficient documentation on which she could base

16  an award of expenses.  Doc. 789, pp. 11-16.  The special master penalized Dr. Ibrahim's counsel

17  for not including invoices, receipts, and credit card statements to support these expenses.  *Id.*

18  But Dr. Ibrahim's counsel provided charts explaining the expenses incurred, which were

19  sufficient to allow the special master to determine the reasonableness of those expenses.  These

20  charts included the specific dates and the reasons the expenses were incurred, and were attached

21  to the sworn declaration of plaintiff's counsel, signed under penalty of perjury.  Doc. 712, Exs.

22  A-K; Doc. 756-10, pp. 218-233; Doc. 791, pp. 1-2.  They should have been reimbursed.  *See*

23  *Lozano v. Astrue*, 2008 WL 5875573, *3 (9th Cir. 2008) (rejecting the government's argument

24  that the prevailing EAJA plaintiff was required to provide airline and hotel receipts, and

25  awarding travel expenses based solely upon counsel's declaration under penalty of perjury that

26  the claim was true and correct).

27      Contrary to the special master's suggestion, Dr. Ibrahim's counsel was not required to

28  submit all supporting details for an analysis of Dr. Ibrahim's expenses to be conducted.  For

1   example, it was unreasonable for the special master to claim that plaintiff's counsel should have

2   provided a description of every "independent research event" that McManis Faulkner attorneys

3   performed in support of Dr. Ibrahim's case.  Doc. 789, pp 13-14.  Dr. Ibrahim's counsel

4   adequately set out the monthly research expenses incurred according to the client code specific to

5   Dr. Ibrahim's case that each attorney had to enter before performing any research.  Doc. 791, pp.

6   8-9.  This showing was done consistently with McManis Faulkner's normal billing practices for

7   fee-paying clients.  It is neither industry practice nor reasonable as a practical matter to record

8   nine years of "independent research events."

9          Similarly, with respect to the claimed travel expenses, Dr. Ibrahim's counsel was not

10   required to provide detailed airline and hotel receipts.  *Lozano*, 2008 WL 5875573 at *3.  The

11   chart provided by Dr. Ibrahim's counsel included the dates, descriptions, and reasons for the

12   expenses.  *See* Doc. 756-10, pp. 231-232.

13          All of Dr. Ibrahim's claimed expenses were provided to the special master in the same

14   format as would appear on a fee-paying client's bill, or in even more detail.  The special master

15   erroneously held Dr. Ibrahim's counsel to a heightened standard of proof not supported by case

16   law.  In addition, the government failed to present evidence challenging any specific expenses,

17   and instead chose to rely on its unsuccessful blanket objection that Dr. Ibrahim's counsel's

18   documentation should not be considered at all by the special master.  Doc. 792-18, pp. 4-8;

19   *Nadarajah v. Holder*, 569 F.3d 906, 917-18 (9th Cir. 2009) (rejecting the government's objection

20   to plaintiff's fees where the government offered no legal authority or evidence to rebut plaintiff's

21   counsel's declarations that their rates were below market).  Thus, this Court should recalculate

22   Dr. Ibrahim's costs and expenses, commensurate with a "full fee award," as required by the en

23   banc opinion.  *See Ibrahim III*, 912 F.3d at 1179, 1186, n.40.

24          Since defendants do not object to the January 11, 2019, Bill of Costs for $505, for filing

25   and docketing her notice of appeal, the Court should tax this cost in full.  Docs. 826, 863.

26   ///

27   ///

28   ///

PLAINTIFF'S RENEWED MOTION FOR ATTORNEY'S FEES AND COSTS IN ACCORDANCE WITH EN
BANC OPINION; Case No. C 06-0545 WHA

**V.      THIS COURT SHOULD AWARD DR. IBRAHIM HER ATTORNEY'S FEES INCURRED ADJUDICATING HER MOTION FOR FEES.**

As set forth in the chart of fees and expenses above, Dr. Ibrahim incurred hundreds of thousands of dollars in attorney's fees just to litigate her motion for fees.  Doc. 699, Exs. A & B; Doc. 756-1; Doc. 756-2; Doc. 792-23, p. 14; McManis Decl., ¶ 3a, Exh. C.  She also incurred an additional $69,270.00 for work in this Court after the Supreme Court denied certiorari, including but not limited to, preparing and filing this motion for fees in accordance with the en banc opinion.  McManis Decl., Exh. D.  The Court should award Dr. Ibrahim these fees incurred in adjudicating her fees both before and after the appeal to the Ninth Circuit, which resulted in *Ibrahim III.*

As set forth above, Dr. Ibrahim's motion for fees was vigorously contested from January 28, 2014, through the date of this Court's November 7, 2014, Order on Dr. Ibrahim's fees, and after over 100 docket entries.  *See* Docs. 693-811.  Dr. Ibrahim's counsel spent hundreds of hours preparing and adjudicating her motion for fees, costs and expenses; providing detailed and revised reports of both fees and expenses; adjudicating her fees before the special master; and finally, objecting to and responding to defendants' objections to the Special Master's Reports and Recommendations on fees and costs.

The en banc panel referenced the decision in *Brown v. Sullivan*, 916 F.2d 492 (9th Cir. 1990),[7] which held that a court "may award attorney fees at market rates for the entire course of litigation **including time spent preparing, defending, and appealing the two awards of attorney fees**, if it finds that the fees incurred during the various phases of litigation are in some way traceable to … bad faith."  *Id.* at 497 (emphasis added).  In turn, the *Brown* court relied on *General Federation of Women's Clubs v. Iron Gate Inn, Inc.,* 537 A.2d 1123 (D.C. App. 1988).  *Brown*, 916 F.2d at 497.

In *General Federation,* the court stated that "[t]he law is well established that, when fees are available to the prevailing party, that party may also be awarded fees on fees, *i.e.*, the reasonable expenses incurred in the recovery of its original costs and fees."  *General Fed'n*, 537

---

[7] *Ibrahim III*, 912 F.3d at 1180 (quoting *Brown*, 916 F.2d at 497).

1  A.2d at 1129-1130 (italics in original).  The court went on to clarify that "**no separate showing**
2  **of bad faith in the recovery proceeding is required.**"  *Id.* at 1130 (emphasis added).

3      Thus, given the Ninth Circuit's direction that there is significant evidence of bad faith,
4  right from the beginning of the litigation when the government knew Dr. Ibrahim was not a
5  threat to national security, this Court should award Dr. Ibrahim's market rates for her time spent
6  adjudicating her fees and expenses.  Dr. Ibrahim's fees are reasonable.

7      The Ninth Circuit found that this Court's "piecemeal award of attorneys' fees in this case
8  runs afoul of the Supreme Court's admonition that '[a] request for attorney's fees should not
9  result in a second major litigation.'"  *Ibrahim III*, 912 F.3d at 1185 (quoting *Hensley*, 461 U.S. at
10  437) (alteration in original).  "In this request for attorneys' fees alone, three courts, both a three-
11  judge panel of our court and an en banc panel, fifteen judges, and one special master have had to
12  consider the merits of this claim while the attorneys' fees and costs continue to mount."  *Ibrahim*
13  *III*, 912 F.3d at 1185.  "The district court and original panel's substantive determination of issues
14  are precisely the type of 'second major litigation' that the *Hensley* court directed us to avoid."
15  *Id.*  The Ninth Circuit further noted that it has "already engaged in the 'unusual expense' of
16  reviewing over 7,000 pages of record and over 1,000 pages of trial exhibits[.]"  *Id.* at 1172, n.21
17  (quoting *Pierce v. Underwood*, 487 U.S. 552, 560 (1988)).

18      Dr. Ibrahim and her counsel should not have to bear the burden of carrying the cost of
19  adjudicating her fees since January, 2014, in light of the Ninth Circuit's opinion.  Similarly, Dr.
20  Ibrahim should not have to bear the greater percentage of the special master's fees, as the Court
21  ordered earlier (*see* Doc. 803, p. 7:1-6), in light of the Ninth Circuit's opinion that it was not Dr.
22  Ibrahim or her attorneys who created a "second major litigation," in the fee dispute.

23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

PLAINTIFF'S RENEWED MOTION FOR ATTORNEY'S FEES AND COSTS IN ACCORDANCE WITH EN
BANC OPINION; Case No. C 06-0545 WHA

1

**CONCLUSION**

2          For the reasons set forth herein, Dr. Ibrahim requests that this Court re-determine her

3    award of fees and costs and expenses, in accordance with the en banc opinion of the Ninth

4    Circuit, including finding that the government's litigation conduct, from the outset, was in bad

5    faith.  Dr. Ibrahim asks that this Court grant her the vast majority of her attorney's fees and

6    expenses incurred in this hard-fought litigation, including fees spent adjudicating her motion for

7    fees, which to date amount to $4,030,981.69.

8

9    Dated:  August 20, 2020                    McMANIS FAULKNER

10                                              /s/ James McManis

11                                              JAMES McMANIS

12                                              Attorneys for Plaintiff, RAHINAH IBRAHIM

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28